COOLEY LLP
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
KELSEY R. SPECTOR (321488)
(kspector@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, EDWARD MLAKAR, MICK CLEARY, and EUGENE ALVIS, individually and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br><br>          v.<br><br>GOOGLE LLC,<br><br>                     Defendant. | Case No. 5:20-cv-07956-VKD<br><br>**GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:      March 30, 2021<br>Time:      10:00 a.m.<br>Judge:     Hon. Virginia K. DeMarchi |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD**

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

STATEMENT OF RELIEF SOUGHT ............................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITY ......................................................................... 2

I.  INTRODUCTION ................................................................................................................. 2

II.  FACTUAL BACKGROUND ................................................................................................. 3

    A.  The Android Operating System. ....................................................................... 3

    B.  Android Data Transfers. .................................................................................... 3

    C.  The Google Terms and Policies. ....................................................................... 4

    D.  Plaintiffs' Experiences with Android. .............................................................. 5

III.  LEGAL STANDARD ........................................................................................................... 6

IV.  ARGUMENT ........................................................................................................................ 6

    A.  Plaintiffs Lack Standing to Pursue Their Claims. ............................................ 7

    B.  Plaintiffs Fail to Allege Facts Sufficient to State A Conversion Claim. ......... 9

        1.  Plaintiffs do not have a property interest in their data plans. ............ 9

            a.  Plaintiffs' contractual right to receive cellular data services is not property subject to conversion. ............................... 10

            b.  Plaintiffs' interest in their data plans bear none of the other traditional hallmarks of property. ........................... 11

        2.  Plaintiffs allege no facts to show that passive data transfers interfered with the use of their data plans and caused resulting damages. ................. 13

            a.  No interference. ............................................................ 13

            b.  No damages .................................................................. 15

        3.  Plaintiffs' conversion claim fails because they consented to the data transfers at issue. ......................................................... 16

    C.  Plaintiffs' Common Count for Quantum Meruit Also Cannot Survive Dismissal. ......................................................................... 19

V.  CONCLUSION ..................................................................................................................... 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................. 6

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 6

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................................................... 7

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
688 F. Supp. 2d 940 (N.D. Cal. 2010) ............................................................................... 10

*Cellco P'ship v. F.C.C.*,
700 F.3d 534 (D.C. Cir. 2012) ........................................................................................... 11

*Cellphone Termination Fee Cases,* 193 Cal. App. 4th 298 (2011) ............................................. 11

*DIRECTV, Inc. v. Pahnke*,
405 F. Supp. 2d 1182 (E.D. Cal. 2005) .............................................................................. 10

*English & Sons, Inc. v. Straw Hat Restaurants, Inc.*,
176 F. Supp. 3d 904 (N.D. Cal. 2016) ............................................................................... 16

*Farmers Ins. Exch. v. Zerin*,
53 Cal. App. 4th 445 (1997) ......................................................................................... 10, 19

*Farrington v. A. Teichert & Son, Inc.*,
59 Cal. App. 2d 468 (1943) ........................................................................................... 9, 16

*In re Forchion*,
198 Cal. App. 4th 1284 (2011) ..................................................................................... 10, 12

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
148 Cal. App. 4th 97 (2007) ......................................................................... 9, 13, 15, 19

*French v. Smith Booth User Co.*,
56 Cal. App. 2d 23 (1942) .................................................................................................. 16

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
958 F.2d 896 (9th Cir. 1992) .............................................................................................. 11

*Infuturia Global Ltd. v. Sequus Pharms., Inc.*,
No. C 08-4871, 2009 WL 440477 (N.D. Cal. Feb. 23, 2009) ............................................ 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................ 12, 13

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................... 7

*Jordan v. Talbot*,
55 Cal. 2d 597 (1961) ....................................................................................... 13, 14, 15

*Levi Strauss & Co. v. Aetna Cas. & Sur. Co.*,
184 Cal. App. 3d 1479 (1986) ................................................................................... 17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................... 6

*McAfee v. Francis*,
No. 5:11-cv-00821-LHK, 2011 WL 3293759 (N.D. Cal. Aug. 1, 2011) .............................. 19

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) .................................................................................... 19

*McKell v. Wash. Mut. Inc.*,
142 Cal. App. 4th 1457 (2006) ................................................................................ 9, 19

*Monster Energy Co. v. Vital Pharms., Inc.*,
No. EDCV 18-1882 JGB, 2019 WL 2619666 (C.D. Cal. May 20, 2019) ....................... 10, 13

*Moore v. Regents of Univ. of Cal.*,
51 Cal. 3d 120 (1990) ....................................................................................... 10, 11, 13, 19

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ...................................................................................... 6

*Opperman v. Path*,
84 F. Supp. 3d 962 (N.D. Cal. 2015) ......................................................................... 8, 9

*Opperman v. Path*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................................ 8

*PCO, Inc. v. Christen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
150 Cal. App. 4th 384 (2007) ................................................................................ 15, 16

*In re Section 1031 Exch. Litig.*,
716 F. Supp. 2d 415 (D.S.C. 2010) ............................................................................ 10

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ............................................................................................... 7

*Steel Co v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..................................................................................................... 6

Cooley LLP
Attorneys at Law
San Francisco

iii

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

*Supply Pro Sorbents, LLC v. Ring Central, Inc.*,
  No. 16-cv-02113-JSW, 2017 WL 4685705 (N.D. Cal. July 17, 2017), *aff'd* 743
  F. App'x 124 (9th Cir. 2018) ................................................................................. 15

*Tsai v. Wang*,
  No. 17-cv-00614-DMR, 2017 WL 2587929 (N.D. Cal. June 14, 2017) ............................... 19

*Valley Forge Christian College v. Ams. United for Sep. of Church and State, Inc.*,
  454 U.S. 464 (1982) ............................................................................................... 7

*Virtanen v. O'Connell*,
  140 Cal. App. 4th 688 (2006)................................................................................. 9

*Voris v. Lampert*,
  7 Cal. 5th 1141 (2019) ........................................................................................ 12

*Wade v. Sw. Bank*,
  211 Cal. App. 2d 392 (1962)................................................................................. 16

*Warth v. Seldin*,
  422 U.S. 490 (1975) .............................................................................................. 7

*White Lightning Co. v. Wolfson*,
  68 Cal. 2d 336 (1968) ......................................................................................... 19

*White v. Lee*,
  227 F.3d 1214, 1242 (9th Cir. 2000)..................................................................... 6

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
  No. 14-CV-00155-BAS (DHB), 2015 WL 1013704 (S.D. Cal. Mar. 9, 2015) ..................... 18

*In re Yahoo Mail Litigation*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................. 17, 18

*Yunker v. Pandora Media, Inc.*,
  No. 11-cv-03113 JSW, 2013 WL 1282980 (N.D. Cal. 2013)............................... 8, 9

*Zaslow v. Kroenert*,
  29 Cal. 2d 541 (1946) ......................................................................................... 14

**Statutes**

Cal. Civ. Code § 3336............................................................................................. 16

///

///

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

**Other Authorities**

5 Witkin, Summary 11th Torts § 810 (2020)....................................................................... 14, 15

Cal. Rules of Court 8.1115............................................................................................................ 6

3 California Torts § 40.48 ............................................................................................................ 16

Federal Rule of Civil Procedure
    Rule 12 ..................................................................................................................... 1, 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 30, 2021 at 10:00 a.m., or as soon thereafter as the motion may be heard, in the United States District Court for the Northern District of California, Defendant Google LLC ("Google") will move to dismiss Plaintiffs' Complaint ("Complaint" or "Compl."). Google's Motion to Dismiss ("Motion") is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Google's Request for Judicial Notice, the Declaration of Kelsey Spector, and all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Google requests that the Court dismiss Plaintiffs' Complaint in its entirety, and all claims therein, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether Plaintiffs have standing under Article III of the U.S. Constitution, where they fail to allege they suffered any concrete harm from the practices at issue.

2.    Whether Plaintiffs have stated a cause of action for conversion, where Plaintiffs fail to allege a cognizable property interest, any interference with that purported interest, or resulting damage, and where Plaintiffs consented to the challenged conduct.

3.    Whether Plaintiffs have stated a cause of action for quantum meruit, where that cause of action is dependent on Plaintiffs' conversion claim.

Cooley LLP
Attorneys at Law
San Francisco

1

Google's Motion to Dismiss
Plaintiffs' Complaint
Case No. 5:20-cv-07956-VKD

**MEMORANDUM OF POINTS AND AUTHORITY**

## I.    INTRODUCTION

Plaintiffs' Complaint should be dismissed because it seeks to manufacture liability for fully disclosed practices that are necessary to enable common features of mobile devices. Plaintiffs are owners of cell phones that use Google's Android operating system. Like all modern cell phones, Android devices cause data to be transmitted from the device to various servers. These data transmissions serve an array of useful functions, from ensuring that devices have up-to-date security protocols to enabling features of Google applications like Maps and Gmail. Plaintiffs, however, claim that Google has "converted" their property and unjustly enriched itself because data transmissions sometimes occur over cellular data networks and utilize a portion of Plaintiffs' cellular data allowances.

Plaintiffs' claims fail at the starting gate, as they fail to establish Article III standing. While Plaintiffs make general references to hypothetical types of harm that might arise from the data transmissions at issue, no Plaintiff claims to have actually suffered these injuries. Instead, Plaintiffs appear to claim that the alleged use of their cellular data allowances is a *per se* injury regardless of any concrete impact. This abstract theory of standing contravenes established precedent and should be rejected.

To the extent the Court reaches the merits, Plaintiffs' claims fail as a matter of law for three independent reasons. First, Plaintiffs' cellular data plans are not property that can be "converted." Indeed, Plaintiffs' contractual right to receive cellular data services under their data plans—the alleged "property" that Google "converted"—does not meet the basic requirements for property that can be subject to conversion. Plaintiffs offer no reason to extend the doctrine of conversion to account for such a novel, intangible interest.

Second, Plaintiffs allege no facts showing a substantial interference with their cellular data allowances, or any resulting damages, both of which are required to state a conversion claim. For example, no Plaintiff alleges that they were forced to use less data or pay more money under their cellular data plans because the Android system caused information to be sent from their devices to Google. In fact, the three Plaintiffs with unlimited data plans could not have suffered any

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

substantial interference or resulting damages because they would have paid the same amount to their carriers, and retained the right to use unlimited data, with or without the challenged data transmissions to Google.

Third, Plaintiffs expressly agreed, as a condition of using their Android devices and Google's services, that information would be sent from their devices to Google's servers. This agreement is fatal to Plaintiffs' claims because consent is a complete bar to conversion. While Plaintiffs complain that Google should have designed the Android operating system to transmit information only when Plaintiffs were connected to Wi-Fi networks, there is no such limitation in the consent that Plaintiffs provided, and they cannot rewrite the terms to which they agreed.

For all these reasons, Plaintiffs' conversion claim and the derivative claim for quantum meruit should be dismissed as a matter of law.

## II.    FACTUAL BACKGROUND

### A.    The Android Operating System.

Modern cell phones, like other computers, use an operating system to support software applications. In 2008, Google introduced the Android operating system for cell phones. (*Id.* ¶¶ 17, 20.) Since then, the Android system has become "the most popular mobile platform in the world." (*Id.*) Due to its popularity, most of the world's cell phone manufacturers, and virtually all cellular network carriers, sell or support Android phones. (*Id.* ¶¶ 20-21.)

### B.    Android Data Transfers.

Android devices are in regular communication with Google via the Internet for myriad reasons. For example, Android devices "check in" with Google servers periodically to confirm device health, to communicate usage statistics and crash reports, and to ensure that the device has been updated with the latest software patches. (Compl. ¶ 47; Spector Decl., Ex. B at 3) Google servers, in turn, may send security updates, bug fixes, new content, or a range of other data to Android devices. (Compl. ¶ 47; Spector Decl., Ex. B at 3.) These data transfers happen automatically as part of the day-to-day functioning of Android devices.

Additionally, many of the mobile applications ("apps") that run on Android also must communicate with Google servers. For example, the Gmail app must communicate with Google

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

servers to send and receive emails, and Chrome (Google's Internet web browser) must communicate with Google servers to "check for updates" and to "validate the current time," among other reasons. (Compl. ¶ 50; *see also* Spector Decl., Exs. B at 3, E at 2.) These data exchanges are also handled by the Android operating system.

Transmissions of data from Android devices can occur over Wi-Fi networks when a Wi-Fi network is available and the device is connected. Otherwise, when a user is not connected to Wi-Fi, data will generally be transmitted over cellular data networks, pursuant to a user's cellular data plan. (Compl. ¶ 24.) For example, a user may receive a security patch from Google, even while out for the day and not connected to Wi-Fi, or may get routing information in Google Maps, even while driving. (*See id.* ¶¶ 24, 47, 49.) Some users do not regularly connect their Android devices to Wi-Fi networks at all, instead relying on their cellular data networks. (*Cf. id.* ¶ 25.)

**C.    The Google Terms and Policies.**

That Android devices communicate with Google is no secret. Google expressly discloses as much and requires Android users to consent to these data transfers. Plaintiffs are no exception. (Compl. ¶ 45 (admitting that Android users must enter various agreements with Google to use Android and other Google services).) Specifically, among other contracts, Plaintiffs and other users agree to the Terms of Service, the Privacy Policy, the Managed Google Play Agreement, the Google Play Terms of Service, and the Google Chrome Privacy Notice (collectively, "the Terms and Policies"). (Compl. ¶ 46.) The Terms and Policies contain a number of provisions and disclosures regarding the transfer of data between Android devices and Google. Examples include:

- "If you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services. This information includes things like your device type, carrier name, crash reports, and which apps you've installed." (Spector Decl., Ex. B at 3; *see also* Compl. ¶ 47.)

- "We collect information about the apps, browsers, and devices you use to access Google services . . . . We collect this information when a Google service on your device contacts our servers—for example, . . . when a service checks for automatic

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

updates." (Spector Decl., Ex. B at 3; *see also* Compl. ¶ 47.)

- "Chrome periodically sends information to Google to check for updates, get connectivity status, validate the current time, and estimate the number of active users." (Spector Decl., Ex. E at 2; *see also* Compl. ¶ 50.)

- "[U]sage statistics and crash reports are sent to Google to help us improve our products." (Spector Decl., Ex. E at 3; *see also* Compl. ¶ 50.)

None of these terms requires Google to transfer data only over Wi-Fi. That is, there is no requirement that Google must wait until a user is connected to Wi-Fi—which for some users may not occur for prolonged periods—before the Android device communicates with a Google server.

### D. Plaintiffs' Experiences with Android.[1]

Plaintiffs are individuals who purchased cell phones that run on the Android operating system. (Compl. ¶ 23.) Plaintiffs also contracted with various mobile providers to receive cellular data services: Plaintiff Taylor purchased a monthly unlimited data plan from Metro by T-Mobile; Plaintiff Mlakar purchased a monthly unlimited plan from Sprint; Plaintiff Cleary purchased a monthly unlimited plan from Verizon; and Plaintiff Alvis purchased a monthly limited plan from Verizon. (*Id.* ¶¶ 8-11.) Plaintiffs Taylor, Mlakar, and Cleary—by virtue of having an unlimited plan—have no caps on their data usage and incur no additional charges based on the volume of data they use. (*Id.* ¶ 26.) While Plaintiff Alvis is theoretically subject to such a cap, he does not specify how much data is included in his allowance. (*Id.* ¶¶ 11, 26.)

Plaintiffs allege that Google committed tortious conversion of their property when their Android devices transmitted information to Google servers using cellular data at times when they were not "actively" using their devices. (Compl. ¶¶ 32, 65-66.) Plaintiffs seek damages for this alleged conversion of their data allowances. (*Id.* ¶ 78.) However, Plaintiffs do not allege what damages they suffered. No Plaintiff alleges that he or she was prevented from using his or her cellular data plan due to the alleged "conversion." Nor does any Plaintiff allege that he or she paid any amount, *i.e.,* overage fees, or was in any other way damaged because information was

---

[1] Google denies Plaintiffs' allegations and characterizations in their Complaint. Nevertheless, even assuming the truth of Plaintiffs' factual allegations, Plaintiffs' claims fail.

transmitted from their devices to Google over cellular networks. In fact, as discussed further below, it is unclear how the three Plaintiffs with unlimited plans could have suffered any injury or damages at all, and the Complaint does not clarify that issue.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," the claim must be dismissed. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A court must also dismiss claims under Rule 12(b)(1) where a plaintiff has failed to establish standing under Article III of the U.S. Constitution. *See, e.g.*, *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). It is the plaintiff's burden, even at the pleadings stage, to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.    ARGUMENT

Plaintiffs lack standing to pursue their claims, because they have failed to allege that they personally suffered an injury in fact. For this reason alone, their Complaint should be dismissed in its entirety. Moreover, should the Court consider the Complaint on the merits, Plaintiffs also fail to state a claim. Specifically, Plaintiffs' conversion claim fails because they do not allege a cognizable property interest, interference, or damages and because they consented to the alleged data use. Plaintiffs' claim for quantum meruit is derivative of their conversion claim and, as such, fails as well. Accordingly, should the Court reach the merits, Plaintiffs' Complaint should be dismissed in its entirety for failure to state a claim.[2]

---

[2] Plaintiffs' counsel previously brought a nearly identical complaint on behalf of a putative class of California users in California state court. *See Csupo v. Google LLC*, No. 19CV352557 (Sup. Ct. of Santa Clara). While the court there denied Google's demurrer, *see id.* (Aug. 24, 2020 Order), that decision "must not be cited or relied on by a court or a party in any other action." *See* Cal. Rules of Court 8.1115(a). In any event, Google respectfully maintains that plaintiffs in both cases

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

**A.      Plaintiffs Lack Standing to Pursue Their Claims.**

"[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he has personally suffered some actual or threatened injury." *Valley Forge Christian College v. Ams. United for Sep. of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotations and citation omitted); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). In a putative class action, the named plaintiffs "must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Where plaintiffs attempt to rely on purported harms to a proposed class without demonstrating they personally suffered a concrete injury, courts routinely dismiss complaints for lack of standing. *See, e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (affirming dismissal for lack of standing where plaintiffs alleged "a potential risk of hearing loss not to themselves, but to other unidentified iPod users"); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *5 (N.D. Cal. Sept. 20, 2011) (dismissing complaint for lack of standing where "Plaintiffs have stated general allegations about the Mobile Industry Defendants, but Plaintiffs have not identified an actual injury to themselves sufficient for Article III standing").

The Complaint here fails for precisely this reason. While Plaintiffs speculate about harms that other unidentified Android device users may have experienced, the Complaint is devoid of any allegation that Plaintiffs ***themselves*** suffered these injuries. For example, Plaintiffs allege that individuals with limited data plans may be subject to overage fees if they exceed their data allowance, but the one named Plaintiff with a limited plan (Plaintiff Alvis) does not allege he was ever subject to such fees, much less due to any alleged data transfer involving Google. (Compl. ¶¶ 11, 26.) Similarly, while Plaintiffs allege that individuals with unlimited plans may have their "cellular connection speeds throttled if they exceed" their usage quotas, the three named Plaintiffs with unlimited plans (Plaintiffs Taylor, Mlakar, and Cleary) do not allege their mobile data plans are subject to such quotas or that their connection speeds were ever "throttled." (*Id.* ¶¶ 8-10, 26.)

have failed to state a conversion claim for the reasons given in this brief and notes that the plaintiffs in *Csupo* were not subject to Article III.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

And while Plaintiffs make generalized references to markets for resale of unused data allowances, they do not allege they were personally prevented from participating in such markets due to the alleged conversion or even that such markets were available to them (indeed, virtually all carriers prohibit resale of data). (*Id.* ¶ 28.)

Having failed to allege they personally suffered any of the types of harms identified in the Complaint, Plaintiffs are left with conclusory allegations that the alleged use of their data allowances was a *per se* injury, regardless of any actual impact on them. For example, Plaintiffs allege they were "injured in fact and . . . deprived of [their] property as a result of Google's unlawful conversion of their cellular data." (*See* Compl. ¶¶ 8-11.) Such bald allegations of injury are insufficient to establish standing.

*Opperman v. Path, Inc.*, is particularly instructive on this point. There, plaintiffs alleged a conversion claim based on the defendants' alleged use of data stored on their mobile devices. 87 F. Supp. 3d 1018, 1040, (N.D. Cal. 2014). The Court held plaintiffs lacked standing to pursue this conversion claim because they failed to show that the "value" of their data was "diminished by the App Defendants' conduct." *Id.* at 1057. In reaching this result, the court surveyed the relevant case law and concluded that "the copying of [a plaintiff's] information without any meaningful economic injury to consumers is insufficient to establish standing on that basis." *Id.* at 1056 n. 22. After plaintiffs amended the complaint, they argued in a subsequent round of briefing that California law entitled them to a presumption of injury based on the fact of the alleged conversion alone. *See Opperman v. Path*, 84 F. Supp. 3d 962, 990 (N.D. Cal. 2015). The court rejected that argument as well and again dismissed the plaintiffs' conversion claim for lack of standing, this time with prejudice. *See id.* at 990-91.

Similarly, in *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113 JSW, 2013 WL 1282980 (N.D. Cal. 2013), the court dismissed a trespass to chattels claim for lack of standing. *Id.* at *5. There, the plaintiff alleged that the Pandora app installed "certain code components . . . on his Android mobile device, which consumed portions of the 'cache' and/or gigabytes of memory on his device," and that this installation interfered with his right of "exclusive use of the memory on his Android device." *Id.* at *1, *5. The court concluded these bare allegations of use and

Cooley LLP
Attorneys at Law
San Francisco

8

Google's Motion to Dismiss
Plaintiffs' Complaint
Case No. 5:20-cv-07956-VKD

interference by the defendant were insufficient to establish an injury in fact, as the plaintiff did not allege that "he noticed any performance problems or that he had problems with his phone because of the diminished memory space." *Id.* at \*5.

Just as in *Opperman* and *Yunker*, Plaintiffs here appear to assert that the alleged conversion (the use of their cellular data allowances to transmit data to Google) is a *per se* injury that automatically satisfies Article III without more. But as these cases show, merely alleging that Google used their data allowances does not entitle Plaintiffs to a presumption of injury—Plaintiffs instead must allege that the purported conversion actually injured them in some concrete way. Plaintiffs make no effort to allege this necessary element, and their Complaint should be dismissed in its entirety for lack of Article III standing.

### B.     Plaintiffs Fail to Allege Facts Sufficient to State A Conversion Claim.

To plead conversion, a plaintiff must demonstrate: "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007).[3] A plaintiff must also show they did not consent to the alleged conduct, as consent defeats a conversion claim. *See, e.g.*, *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 716-17 (2006); *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468, 474 (1943).

### 1.     Plaintiffs do not have a property interest in their data plans.

As an initial matter, Plaintiffs' conversion claim fails for the fundamental reason that their contractual rights in their cellular data plans are not property that can be converted. *See McKell v. Wash. Mut. Inc.,* 142 Cal. App. 4th 1457, 1491 (2006) ("A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property."). Historically, courts "refused to recognize as conversion the unauthorized taking of intangible interests." *See Fremont Indem.*, 148 Cal. App. 4th at 119. While that rule has been relaxed in certain circumstances, courts still caution against extending the conversion tort to novel forms of "intangible" interests. *See, e.g.*, *id.* (cautioning against expanding conversion to intangible interests where "other, more suitable

---

[3] Plaintiffs purport to bring claims under California law. (Compl. ¶ 60(b).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

law" applies); *Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 142-44 (1990) (in bank) (similar). Here, Plaintiffs offer no reason for this Court to extend the tort of conversion to Plaintiffs' cellular data allowances, which bear none of the traditional hallmarks of a property right.

### a.   Plaintiffs' contractual right to receive cellular data services is not property subject to conversion.

First, courts have consistently rejected conversion claims based solely on contractual rights. *See e.g. Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB, 2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (finding contractual right to shelf space in store not subject to conversion); *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) ("a mere contractual right to payment, without more, will not suffice" to support a claim for conversion). That is because a contractual right standing alone is not itself "property" under California law. *See Monster Energy Co.*, 2019 WL 2619666, at *13 (reaching "the common sense conclusion which is also supported by ample precedent: that the benefits of contractual rights are not personal property capable of conversion"); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010) (holding contractual importation rights were contract rights—not property—and therefore not subject to conversion); *In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 426 (D.S.C. 2010) (interpreting California law and finding "intangible contract rights" were not property and therefore not subject to conversion); *cf. also In re Forchion*, 198 Cal. App. 4th 1284, 1308-10 (2011) (reasoning that contractual right to services are not property). While a contractual right *to* property may inform whether a plaintiff has a "property interest" capable of being converted, a contractual right by itself is *not* property.[4]  *See Monster Energy Co.*, 2019 WL 2619666, at *13-14.

Here, Plaintiffs' cellular data allowances—the alleged "property" at issue—are solely a

---

[4] While some cases have considered contractual rights when assessing whether a party has a property interest capable of conversion, those cases all involved contracts for long-recognized forms of property that existed independently from the contract at issue—*i.e.*, the contract simply establish the rights of the party to property that existed independent of the contract. *See, e.g.*, *DIRECTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal. 2005) (intellectual property rights); *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, No. C 08-4871 SBA, 2009 WL 440477, at *5 (N.D. Cal. Feb. 23, 2009) (same).  Unlike those cases, Plaintiffs' rights under their contracts with carriers are created by, and exist solely because of, their data contracts.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

*contractual right* to receive a *service*. *See*, *e.g.*, *Cellphone Termination Fee Cases*, 193 Cal. App. 4th 298, 303 (2011) ("Sprint is a national cellular service carrier, providing cellular telephone service in California"); *Cellco P'ship v. F.C.C.*, 700 F.3d 534, 542 (D.C. Cir. 2012) (noting that federal regulations treat Verizon as a "mobile-data service" provider and describing rules governing the provision of such "service"). Plaintiffs' cellular data plans do not confer rights to any underlying property. Instead, they allow Plaintiffs to access their mobile carriers' cellular data networks to send and receive data. These rights do not exist independently of Plaintiffs' contracts with their mobile carriers and are not any recognized form of property that can be subject to conversion. The Court should accordingly refuse to expand conversion doctrine to account for Plaintiffs' interests in this case, which would otherwise represent an unprecedented expansion of the law of conversion. Indeed, allowing Plaintiffs' conversion theory to proceed would impact legitimate business activities that allow mobile devices to function, like security updates and other common functions. *Moore*, 51 Cal. 3d at 142-46 (concluding policy considerations counseled against expansion of conversion doctrine to account for novel conversion claim).

> **b.    Plaintiffs' interest in their data plans bear none of the other traditional hallmarks of property.**

That Plaintiffs' contractual rights are not property is made clearer still by the relevant case law defining the characteristics of property. California courts have found that to demonstrate a property right, a plaintiff must allege an interest (1) that is "capable of precise definition," (2) that is "capable of exclusive possession or control," and (3) to which they have "a legitimate claim of exclusivity." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902-03 (9th Cir. 1992). Plaintiffs' purported interest meets none of these basic requirements.

***Plaintiffs have not precisely defined their purported property interest.*** To begin, Plaintiffs have failed to identify any property interest with "precise definition." Indeed, Plaintiffs vacillate between alleging that they have a property interest in their cellular data allowances and suggesting that they might have a property interest in particular units of data used to effect particular data transmissions. (*Compare* Compl. ¶ 27 ("The purchase of data plans from mobile carriers creates a property interest for Plaintiffs in their *cellular data allowances*) (emphasis added), *and id.* ¶ 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

(referencing "property interests in their purchased *data allowances*) (emphasis added), *with id.* ¶ 1 ("[T]here is also an unlawful taking of Android users' property—namely, *their cellular data*.") (emphasis added), *and* ¶ 6 (describing "property interests" in "*data* for which they . . . paid") (emphasis added).)  Plaintiffs cannot purport to have rights to particular units of cellular data, as there is no sense in which a data plan makes specific units of cellular data exclusive to any one user.  That is, a customer does not purchase specific "data" from a carrier, but instead contracts for the right to access a cellular data network.

Those contract rights to receive cellular services are not a precisely defined property interest.  In particular, the Plaintiffs with unlimited data plans cannot precisely define what their property interest consists of, as they cannot reasonably purport to have a claim to an infinite amount of cellular data usage.  *C.f., e.g.*, *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019) ("[M]oney cannot be the subject of an action for conversion unless a specific sum capable of identification is involved.").  Moreover, all of Plaintiffs' interests are contingent on the particular terms of Plaintiffs' contract with their mobile carriers and may be limited or terminated if Plaintiffs do not follow those terms, which further undermines any finding of a precisely defined property interest.  *See Forchion*, 198 Cal. App. 4th at 1308-09.  Because Plaintiffs fail to identify a precisely defined property interest, Plaintiffs' conversion claim must be dismissed.  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) (dismissing conversion claim under California law in part because the personally identifiable information at issue was not "an interest capable of precise definition").

***No exclusive possession/control or claim of exclusivity:***  As noted, Plaintiffs cannot colorably claim that they exclusively possess or control any particular units of cellular data.  *See supra*, pp. 11-12.  Plaintiffs also do not exclusively possess or control the cellular networks that transmit their data—their mobile carriers do.  Nor do Plaintiffs have exclusive rights to access the cellular networks they use, as carriers such as Verizon and ATT provide this access to millions of users simultaneously.  Again, the only plausible "property" interest Plaintiffs could assert is in their cellular data allowance, *i.e.*, their contractual right to send or receive data over their mobile carriers' cellular networks.  But that too fails to establish a property interest that can be characterized as

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

"exclusive." Many cellular data plans are *not* exclusive and allow multiple people to share a cellular data allowance (family plans, corporate plans, etc.). Plaintiffs' Complaint is notably silent on whether Plaintiffs' plans have such features, which would defeat any claim of exclusivity.

Even if Plaintiffs' data allowances are not shared, Plaintiffs still could not establish "exclusive possession or control" over their cellular data allowances. Indeed, Plaintiffs cannot use—much less exclusively possess and control—their data allowances unless their mobile carriers enable them to do so. This third-party control over Plaintiffs' purported property undermines any finding of "exclusive possession or control." *Monster Energy Co.*, 2019 WL 2619666, at *13 (concluding plaintiff lacked exclusive possession and control over shelving space that was guaranteed by contract because "retail store employees, stocking clerks, and retail customers all regularly exercise[d] control and possession over the shelving space in dispute"); *In re iPhone Application Litig.*, 844 F. Supp. at 1075 (dismissing conversion claim under California law in part because the personally identifiable information at issue was not "capable of exclusive possession or control").

\*\*\*

In sum, Plaintiffs' alleged interest in their cellular data allowances does not meet any of the requirements of a property interest capable of conversion, and they provide no reason for this Court to expand the conversion doctrine to account for that interest.

### 2. Plaintiffs allege no facts to show that passive data transfers interfered with the use of their data plans and caused resulting damages.

Even if Plaintiffs' contractual rights were property potentially subject to conversion, their claim would still fail because they do not allege that Google interfered with their rights and caused resulting damages, both of which are required to state a claim for conversion. *See, e.g.*, *Fremont*, 148 Cal. App. 4th at 119.

#### a. No interference.

Conversion requires "actual interference with [a party's] ownership or right of possession" to property. *Moore*, 51 Cal. 3d at 136 (emphasis and citation omitted). This interference must be "substantial"—mere "use" of or "intermeddling" with property ***is not sufficient***. *Jordan v. Talbot*,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

55 Cal. 2d 597, 610 (1961) (holding that defendants' removal and storage of plaintiff's personal property did not suffice to state a conversion claim). Instead, the interference must be so serious that the plaintiff is justified in recovering the "full value of the property" at issue, "in effect forcing the defendant to buy it." 5 Witkin, Summary 11th Torts § 810 (2020).

Plaintiffs have not met that high bar. Nothing in the Complaint suggests that "passive" data transfers interfered with Plaintiffs' cellular data allowances to such a degree that they amount to an "exercise of dominion or control" by Google over Plaintiffs' data plans.[5] *Jordan*, 55 Cal. 2d at 610. In fact, Plaintiffs do not allege they were impacted ***at all*** by the alleged "conversion" of property in this case—other than by ***benefiting*** from the security updates, enhanced reliability, and services enabled by the passive data transfers about which Plaintiffs complain. For example, Plaintiff Alvis, the one Plaintiff with a limited data plan, does not allege that the data transfers at issue prevented him from using as much data as he wanted for his own purposes or otherwise interfered with his rights in his data plan in any way. Further, the three other Plaintiffs could not possibly have suffered any such interference because they have unlimited plans. No matter how much cellular data was used for "passive" transfers to and from these Plaintiffs' devices, it would not have prevented them from using their data plans however they wished, given their unlimited data allowances. And while these three Plaintiffs make generalized references to "throttling," they do not allege that their data speeds were in fact throttled due to any "passive" data transfers. Regardless, Plaintiffs do not allege how any such throttling, if it occurred at all, could possibly have interfered with Plaintiffs' use of their data plans to such a degree that they would be entitled to the "full value" of their data plans. 5 Witkin, Summary 11th Torts § 810 (2020); *see, e.g.*, *Zaslow v. Kroenert*, 29 Cal. 2d 541, 551 (1946) (in bank) (conversion does not exist "[w]here the conduct complained of does not amount to a substantial interference with possession or the right thereto").

Instead, Plaintiffs appear to take the position that Google's alleged "use" of their cellular data allowances for passive data transfers—by itself and without more—constitutes a substantial

---

[5] Plaintiffs do not allege, for example, that they were entirely prevented from using their cellular data allowances, as they would be if an individual had transferred their data plans to another mobile device.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

interference. (*See, e.g.*, Compl. ¶¶ 29-46.) But the case law is clear that mere use of property is not sufficient to establish the substantial interference needed to support a conversion claim. *See, e.g.*, *Jordan*, 55 Cal. 2d at 610 ("use" and "intermeddling" of property are not sufficient). For example, in *Supply Pro Sorbents, LLC v. Ring Central, Inc.*, plaintiffs brought a conversion claim based on the alleged use of their fax machines to "add[] an unsolicited advertisement . . . [to] documents sent by facsimile." No. 16-cv-02113-JSW, 2017 WL 4685705, at \*1 (N.D. Cal. July 17, 2017), *aff'd* 743 F. App'x 124 (9th Cir. 2018). The court dismissed the claim with prejudice because the alleged interference "would not have seriously interfered with Plaintiff's right to control its property" and so did not "amount to a conversion." *Id.* at \*5-6. As the Court explained, "there may be minor and unimportant dispossessions which do not seriously interfere with the other's right of control, and so do not amount to a conversion." *Id.* at \*5 (alterations omitted). Similarly here, the mere allegation that the Android operating system made use of Plaintiffs' cellular data allowances—without any allegations showing that such transfers "seriously interfered" with Plaintiffs' use of their data plans—fails to demonstrate the substantial interference needed to support a conversion claim.

### b.    No damages

In addition to allegations of interference, "[a] cause of action for conversion [also] requires allegations of . . . damage to plaintiff." *PCO, Inc. v. Christen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007); *see also Fremont*, 148 Cal. App. 4th at 119 (conversion requires both interference and "resulting damage"). Here, Plaintiffs have alleged no facts showing *any* damages, much less damages sufficient to entitle them to payment for the "full value" of their cellular data allowances. *See, e.g.*, Witkin § 810. In particular, the Plaintiffs with unlimited data plans could not have suffered any amount of monetary damages, as they would not be subject to increased fees no matter the amount of data used for passive transfers. And Plaintiff Alvis, who has a limited plan, does not allege that Google used data in an amount that caused any

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

overage fees.[6]   Accordingly, Plaintiffs have failed to allege, as they must, that they suffered damages. *See PCO*, 150 Cal. App. 4th at 395 (party must allege damages to state a conversion claim).[7]

### 3. Plaintiffs' conversion claim fails because they consented to the data transfers at issue.

Even if Plaintiffs had demonstrated a property interest, inference, and resulting damages, Plaintiffs' conversion claim would fail for the further reason that they consented to the data transfers they now challenge.  "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington*, 59 Cal. App. 2d at 474; *see also French v. Smith Booth User Co.*, 56 Cal. App. 2d 23, 27-28 (1942); 3 California Torts § 40.48(2) (2019) (noting that burden is on plaintiff to show lack of consent in order to show taking was wrongful).  Express consent applies where a plaintiff agreed to the challenged conduct through an oral or written agreement.  *See*, *e.g.*, *Wade v. Sw. Bank*, 211 Cal. App. 2d 392, 406 (1962) (explaining, in the context of a conversion claim, that "[e]xpress consent is that directly given," including "in writing").  Alternatively, where a Plaintiff tacitly agrees to conduct she is aware of, a claim for conversion also will not lie.  *Farrington*, 59 Cal. App. 2d at 473-74.

Plaintiffs expressly agreed to the alleged data transfers at issue when they agreed to the Terms and Policies. (*See* Compl. ¶ 45 ("Users of Android must accept standardized form contracts to use the company's various [products and services].").)  As noted *supra*, the Google Privacy Policy, which is incorporated by reference in Google's Terms of Service, states:  "If you're using an Android device with Google apps, your device periodically contacts Google servers to provide

---

[6] For example, if Plaintiff Alvis had a data plan allowing him to use up to 10 gigabytes per month but never used more than five gigabytes, he would not have suffered any damages if the alleged passive data transfers did not cause the total use to exceed 10 gigabytes.

[7] California law provides that the damages for conversion is "presumed to be . . . the value of the property at the time of the conversion" or other alternative measures.  Cal. Civ. Code § 3336.  This statute clarifying the available *measures* of damages does not excuse a plaintiff from alleging and proving the *fact* that she suffered damages.  *See English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 925 (N.D. Cal. 2016) (Section 3336 did not excuse party bringing conversion claim from presenting evidence of damages).

Cooley LLP
Attorneys at Law
San Francisco

16

Google's Motion to Dismiss
Plaintiffs' Complaint
Case No. 5:20-cv-07956-VKD

information about your device and connection to our services." (*Id.* ¶ 47; *see also* Spector Decl., Ex. B at 3.) Plaintiffs thus agreed that Google could send data periodically from their Android devices to Google's servers—the very data transfers challenged in the Complaint as a purported "conversion." (Compl. ¶¶ 45, 47.) Reinforcing this overarching consent, Plaintiffs also agreed to a range of more specific data transfers to Google, as set forth in other terms and disclosures. For example, Plaintiffs agreed that Google's Chrome web browser may automatically send information to Google in order to check for updates and that their devices will send usage and crash reports to Google to help improve the Android system. *See*, *supra*, Section II(C).

Plaintiffs do not deny that they agreed to the data transfers disclosed by Google in the Terms and Policies. In fact, Plaintiffs admit that Android users must agree to Google's Terms and Policies to use Android and other Google services, and that Google's Terms and Policies "inform[] the users of certain transfers of personal information." (Compl. ¶¶ 45, 5.) In an effort to avoid their contractual consent, Plaintiffs claim they (1) consented *only* to data transfers transmitted over Wi-Fi and data transfers over cellular networks "when they are actively engaged with their devices" (so called "active" use), and (2) did *not* consent to data transfers over cellular networks during so-called "passive" use. (*Id.* ¶¶ 5, 31.)

The Terms and Policies, however, do not state, or even suggest, any such limitations. Plaintiffs cannot rewrite the Terms and Policies to limit the scope of their consent, when they expressly agreed that data can be transferred from their "Android device" to "Google servers" with no limitations regarding Wi-Fi versus cellular transmissions or "active" versus "passive" use. *See Levi Strauss & Co. v. Aetna Cas. & Sur. Co.*, 184 Cal. App. 3d 1479, 1486 (1986) ("The court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there."); *see also id.* ("Courts will not add a term about which a contract is silent.").

*In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) is instructive. In *In re Yahoo Mail Litigation*, plaintiffs claimed that Yahoo Mail users did not consent to Yahoo "collecting" and "storing" email content for "future use" because some versions of Yahoo's terms disclosed only that Yahoo would "scan and analyze" emails, without explicitly stating that Yahoo

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

would "collect and store" email content. *Id.* at 1031. The court rejected this argument and found that an express consent defense applied. As the court explained, "scanning and analyzing" emails "necessarily means Yahoo simultaneously collects and stores the email content," and it was "implausible" that users were unaware of this. *Id.*

Here, Google's Terms and Policies disclose in broad terms that data will be sent from users' Android devices to Google servers, which necessarily includes transmissions over cellular data when devices are not in active use. Indeed, Google's Terms and Policies repeatedly clarify that data is transferred to Google servers "periodically" for "automatic updates" and other reasons,[8] reinforcing that data transfers occur at intervals determined by Google and will not be limited to times when users are either connected to Wi-Fi or actively using their devices. As in *Yahoo*, it is "implausible" that users would not understand from the Terms and Policies that some data transmissions can occur over cellular networks when users are not actively using their devices.[9] In fact, transmitting data in these circumstances may be critical to the security and effective operation of Android devices. For example, Google's Terms and Policies make clear that Android devices communicate with Google servers to check for updates, including security updates. (Comp. ¶¶ 47, 50.) Requiring Android devices to wait until a user is next connected to Wi-Fi before checking for such updates could leave a device vulnerable to attack.

Accordingly, Google contends these terms provide Google with consent to the transfers at issue as a matter of law. But even if Plaintiffs could plausibly dispute the scope of the consent they provided in the Terms and Policies, such a dispute is ***not*** properly resolved through a claim for conversion. *See*, *e.g.*, *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-CV-00155-BAS (DHB), 2015 WL 1013704, at *10 (S.D. Cal. Mar. 9, 2015) (finding that dispute over whether

---

[8] (*See* Compl. ¶ 47 ("If you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services."); *see also id.* ¶ 47 ("We collect this information when a Google service on your device contacts our servers—for example, . . . when a service checks for automatic updates."); *id.* ¶ 50 ("Chrome periodically sends information to Google to check for updates, get connectivity status, validate the current time, and estimate the number of active users.").)

[9] Plaintiffs concede they understood that when their cellular phones are not connected to a Wi-Fi network, the devices will make use of cellular data. (*See* Compl. ¶ 24 (acknowledging that cellular networks make mobile phones "truly mobile").)

Cooley LLP
Attorneys at Law
San Francisco

18

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

consent provided reached the alleged conduct was no basis for claim of conversion, as it was not akin to "outright theft" embodied by a conversion claim); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006) (finding no claim for conversion or bailment for alleged "overcharge" beyond contractual consent).  Instead, the thrust of Plaintiffs' grievance is contractual in nature. *See, e.g.*, *Farmers Ins. Exch.*, 53 Cal. App. 4th at 460.  Because Plaintiffs' allegations involve a dispute over their contractual consent, the Court should refuse to recognize Plaintiffs' unprecedented conversion claim in this case. *Fremont Indem.*, 148 Cal. App. 4th at 119 (cautioning against expansion of conversion doctrine where other legal doctrines apply); *Moore*, 51 Cal. 3d at 142-46 (similar).

### C. Plaintiffs' Common Count for Quantum Meruit Also Cannot Survive Dismissal.

Quantum meruit is a common count.  *White Lightning Co. v. Wolfson*, 68 Cal. 2d 336, 341 (1968).  "When a common count is used as an alternative way of seeking the same recovery demanded in a specific claim, and is based on the same facts, it does not survive if the underlying claim does not survive."  *McAfee v. Francis*, No. 5:11-cv-00821-LHK, 2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011); *see also, e.g.*, *Tsai v. Wang*, No. 17-cv-00614-DMR, 2017 WL 2587929, at *12 (N.D. Cal. June 14, 2017) (same).  Plaintiffs predicate their common count for quantum meruit on the same grounds as their conversion claim.  (*See* Compl. ¶ 67 ("re-alleg[ing] and incorporat[ing] by reference each of the allegations set forth" previously in the Complaint)).  *See also Farmers Ins. Exch.*, 53 Cal. App. 4th at 460 (finding common count for money had and received predicated on same facts as specific claims where plaintiffs "incorporate[d] the allegations of all preceding claims").  Because Plaintiffs' claim for conversion fails, *see supra* Section IV(A), so too must their common count for quantum meruit.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 394-95 (2004) (noting that where common count is based on same facts as a specific cause of action, "common count must stand or fall with [the] first cause of action").

### V.   CONCLUSION

For the reasons herein, the Court should dismiss Plaintiffs' Complaint in its entirety.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
CASE NO. 5:20-CV-07956-VKD

Dated: February 1, 2021

COOLEY LLP

By: /s/ *Whitty Somvichian*
    Whitty Somvichian

Attorneys for Defendant
GOOGLE LLC

240128530

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20