COOLEY LLP
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
KELSEY R. SPECTOR (321488)
(kspector@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   +1 415 693 2000
Facsimile:   +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, EDWARD MLAKAR, MICK CLEARY, and EUGENE ALVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-07956-VKD<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br>Date:   February 16, 2021<br>Time:   1:30 PM<br>Ctrm:   2<br>Judge:  Hon. Virginia K. DeMarchi |

Pursuant to Fed. R. Civ. P. 26(f) and Civil Local Rule 16-3, the Parties met and conferred on January 25, 2021, to discuss a case management and discovery plan. Plaintiffs were represented by Michael Klenov and Ryan Cortazar. Defendant was represented by Whitty Somvichian and Max Bernstein.

### 1. Jurisdiction and Service.

The Parties agree that there are no issues regarding personal jurisdiction or venue. The Parties disagree about whether the Court has subject matter jurisdiction over Plaintiffs' claims.

**Plaintiffs' Position.** This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d), because (1) this action is a "class action," which contains class allegations and expressly seeks certification of a proposed Class of individuals; (2) the proposed Class consists of more than one hundred class members; (3) the citizenship of at least one Class member is different from Google's citizenship; and (4) the aggregate amount in controversy of the claims of Plaintiffs and the putative Class exceeds $5,000,000, exclusive of interest and costs.

Plaintiffs have Article III standing. Injury in fact is the invasion of a legally protected interest. California common law protects Plaintiffs' property interest in their purchased bytes of data, which Plaintiffs have the exclusive right to consume. Google's unauthorized consumption of these bytes invades Plaintiffs' legally protected interest, causing concrete injury. Article III does not require Plaintiffs to allege an out-of-pocket loss or consequential damages as a result of Google's unauthorized taking of their property.

**Defendant's Position.** This Court lacks subject matter jurisdiction because Plaintiffs lack Article III standing to bring their claims. Plaintiffs allege that their Android devices sent and received data transmissions using their cellular data plans, but do not identify any concrete injury they suffered as a result. Plaintiffs do not allege, for example, that the data transmissions at issue caused them to incur any additional charges or detrimentally affected their own use of their data plans. Absent any concrete injury, Plaintiffs fail to meet the requirements of Article III.

### 2. Facts.

**Plaintiffs' Position.** Plaintiffs and the putative Class they seek to represent are users of mobile devices that run on Google's Android Operating System who reside in States other than

California. Plaintiffs allege that they have a property interest in the cellular data that they buy from their wireless service providers, such as Verizon, AT&T, and Sprint. Plaintiffs further allege that Google has programmed its Android Operating System in a manner that causes various types of data to be transmitted from Plaintiffs' mobile devices to Google's servers, and vice versa, while Plaintiffs are not actively engaged with their devices or the Google applications initiating the transfers, thereby consuming the cellular data that Plaintiffs purchased and for which they contracted. Plaintiffs did not consent to Google's use of Plaintiffs' cellular data to engage in such passive data transfers. Plaintiffs assert that Google's appropriation of the cellular data that Plaintiffs purchased and for which they contracted constitutes a conversion of personal property under California law. In the alternative, Plaintiffs assert that Google should compensate them under a quantum meruit theory for the value of Plaintiffs' cellular data that Google appropriated for its benefit.

**Defendant's Position.** Plaintiffs are alleged owners of cell phones that use the Android operating system. Like all modern cell phones, Android devices must transmit data to and from servers in order to support their functioning. Many of these data transmissions—like sending security updates to the device or receiving diagnostics to check on device health—may not be triggered by a user's active engagement with their device, but are nonetheless critical to the normal operation of modern cell phones. Google discloses these practices in detail, explaining the types of data it sends to, and receives from, Android devices, and requires all users to agree to these data transmissions. While Plaintiffs concede they consented to these agreements, they attempt to write into their contracts a requirement that Google must only use Wi-Fi to transmit data and may not use cellular networks to effect "passive" transfers of data—a limitation found nowhere in the contracts themselves. Plaintiffs' conversion and quantum meruit claims are based on this illogical premise that Plaintiffs did not understand their *cell* phones could use *cellular* data to implement the data transmissions needed for the normal operation of their devices.

3.      **Legal Issues.**

**Plaintiffs' Position.** The key legal issues will include whether Plaintiffs have a personal property interest in the cellular data they purchased and for which they contracted from their

wireless service carriers; whether Google's appropriation of Plaintiffs' cellular data constitutes conversion under California law; whether, under a quantum meruit theory, Google should pay Plaintiffs for the cellular data that it appropriated and used for its own benefit; whether Plaintiffs consented to or authorized Google to consume Plaintiffs' cellular data for passive data transfers; when the statute of limitations began to run on Plaintiffs' claims under California law; whether the statute of limitations should be tolled under the doctrine of self-concealing conduct or fraudulent concealment; whether the market value of the consumed cellular data is the appropriate measure of damages; and whether Plaintiffs' claims are appropriate for certification as a class action.

There is a substantially similar putative class action pending in Santa Clara County, California on behalf of California mobile device users: *Csupo et al. v. Google LLC*, 19-cv-352557. On August 21, 2020, the court presiding over that action denied Google's demurrer to the substantially similar complaint, finding that plaintiffs had sufficiently pleaded (1) a property interest in the cellular data they purchase from wireless carriers; (2) that they did not consent to Google's "passive" data transfers by accepting Google's various terms and conditions governing the use of Google's products; (3) that Google interfered with plaintiffs' property rights, causing them harm and damages; and (4) a claim for quantum meruit. That decision is attached as Exhibit 1 to this Joint Case Management Statement.

**Defendant's Position.**  The key legal issues presented in this case include: (1) Whether Plaintiffs have Article III standing;  (2) whether Plaintiffs consented, either expressly or impliedly, to the transmissions of data between their Android device and Google; (3) whether Plaintiffs' contractual right to receive cellular data services is property that can be subject to conversion; (4) if Plaintiffs' mobile data plans are property, whether Google interfered with Plaintiffs' ability to use their mobile data plans; (5) whether Plaintiffs can show damages resulting from any such interference; (6) whether Plaintiffs are entitled to recover under a quantum meruit theory for the data transmissions between their Android devices and Google; (7) when the statute of limitations began to run on Plaintiffs' claims; and (8) whether Plaintiffs' claims are appropriate for certification as a class action.

As Plaintiffs note, the Court denied Google's demurrer in the nearly identical class action pending in California State Court. *See Csupo v. Google LLC*, No. 19CV352557 (Sup. Ct. of Santa Clara). That decision, however, "must not be cited or relied on by a court or a party in any other action." See Cal. Rules of Court 8.1115(a). In any event, Google respectfully maintains that plaintiffs in both cases have failed to state a conversion claim for the reasons given in this brief and notes that the plaintiffs in Csupo were not subject to Article III.

### 4. Motions.

On February 1, 2021, Google moved to dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing. *See* Doc. 33. Plaintiffs' opposition is due on March 1, 2021. No other substantive motions have been filed, and the Parties do not anticipate filing any in the near future other than motions for entry of a Protective Order and ESI Protocol.

### 5. Amendment of Pleadings.

The Parties do not currently anticipate that any parties, claims, or counter-claims will be added or voluntarily dismissed. The Parties have proposed a deadline for amending the pleadings in their proposed case schedule at the end of this Joint Case Management Conference.

### 6. Evidence Preservation.

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that they have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps that should be taken to preserve evidence relevant to the issues reasonably evident in this action.

### 7. Initial Disclosures.

The Parties have not yet made initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). The Parties have met and conferred about the date by which initial disclosures should be made, and have proposed a deadline for making such disclosures in their proposed case schedule at the end of this Joint Case Management Statement.

**8.    Discovery.**

No discovery has been taken to date. Plaintiffs in the substantially similar Santa Clara County action are currently engaged in discovery with Google and non-parties concerning their claims. The Parties expect that most of that discovery will also be applicable in this action, and have met and conferred and continue to meet and confer about a Protective Order and discovery protocol that will enable discovery to be shared between the two actions.

The Parties have discussed entering into an agreed ESI Protocol and anticipate submitting a proposal to the Court in the next several weeks.

The Parties agree that discovery in this action should proceed pursuant to the Federal Rules of Civil Procedure—at this point, without modification. The Parties reserve their rights to ask for modifications, if appropriate, at later stages of the litigation.

The Parties have included a proposed timeline for conducting fact and expert discovery in their proposed case schedule at the end of this Joint Case Management Statement.
The Parties agree that there are no discovery disputes at this time that are ripe for resolution.

**Plaintiffs' Position.** Plaintiffs disagree that a stay of discovery until the resolution of Google's motion to dismiss is appropriate. Such stays are disfavored and rarely granted under ordinary circumstances. Here, Google is already engaged in discovery on the same subject matters in a separate state-court action that has survived Google's demurrer. That weighs strongly against a discovery stay, not in favor of it.

Plaintiffs already agreed that the Parties should take steps to ensure that discovery across the two actions is efficient and not duplicative. Those steps include using substantially the same Protective Order and ESI Protocol, agreeing that Google's document productions and discovery responses made in one case be treated as having been made in both, and making arrangements to avoid having fact witnesses sit for a deposition more than once. Plaintiffs' counsel have no interest in receiving the same discovery or deposing the same witnesses twice in the two actions. A stay would actually be counterproductive to achieving discovery efficiencies because the plaintiffs in the *Csupo* action would presumably proceed with the discovery necessary to prepare

their case, including depositions, which will not have been served or simultaneously noticed in this action.

Google's characterization of the discovery served in the *Csupo* action is neither accurate nor appropriate for this Joint Case Management Statement. It is also not a valid basis for seeking a discovery stay. Google likewise errs in claiming that Plaintiffs "have never articulated a workable definition" of the concept of "passive transfers." As in the discovery served in *Csupo*, Plaintiffs below describe a "passive transfer" as one initiated when a device was not being used—such as when the device was locked, sleeping, or otherwise not contemporaneously engaged by the user—or initiated by a Google application while it was closed or not on the viewing screen of a device that was being used.

Plaintiffs anticipate that discovery in this action will encompass at least the following subject matters:

(1) The number of mobile devices in States other than California that have run the Android Operating System;

(2) The types of information Google sends to and collects from mobile devices running the Android Operating System;

(3) When and how Google sends information to and collects information from mobile devices running the Android Operating System;

(4) How Google uses the information that it collects from mobile devices;

(5) What details can be discerned about the information Google sends to and receives from mobile devices running the Android Operating System, including the type of information transferred, whether the transfer occurred via cellular data, and whether the transfer was initiated when a device was not being used—such as when the device was locked, sleeping, or otherwise not contemporaneously engaged by the user—or initiated by a Google application while it was closed or not on the viewing screen of a device that was being used;

(6) Google's retention, aggregation, and storage policies for data collected from mobile devices running the Android Operating System;

(7) Differences, if any, in collection, storage, or use of data by device manufacturer, model, or wireless carrier;

(8) Whether there are any means for users to stop passive information transfers that use cellular data, and if so, when such means were implemented and how they were disclosed to users;

(9) Information on all agreements or actions that Google claims constitute consent to passive information transfers using cellular data;

(10) The actual data and information collected from the Plaintiffs' mobile devices, and those of Class members; and

(11) The market value of cellular data.

**Defendant's Position.** Google seeks a stay of discovery in this action, pending resolution of its Motion to Dismiss. Discovery is already underway in the *Csupo* state court action, where plaintiffs have propounded requests for production, interrogatories, and deposition notices, and Google has answered interrogatories and made an initial production of documents. Given the almost complete overlap in allegations, and the identical nature of the claims brought, the plaintiffs' discovery needs in both cases are virtually the same, and plaintiffs in Csupo have not limited their discovery requests geographically. As such, Google seeks coordination of discovery to avoid redundancies, inconsistent discovery rulings, and multiple depositions of the same witnesses on the same topics. To that end, the parties have agreed to use a common Protective Order and ESI stipulation to govern both cases.

Because discovery is already proceeding in *Csupo* and involves the same counsel representing Plaintiffs here, Google requests that any additional discovery in this case be deferred until after the pleadings are resolved. In the event Plaintiffs are allowed to proceed past the pleading stage here, Google (1) would agree that discovery provided by Google in *Csupo* (interrogatory responses and responses to other written discovery, documents produced, and Google depositions) will become available for use in this action without the need to serve additional discovery requests and (2) requests an order that Plaintiffs not be allowed to seek separate discovery in this case without a showing of good cause demonstrating that such

discovery is necessary and not redundant of discovery already sought in *Csupo*, with the exception of additional discovery relating specifically to the named Plaintiffs and the size and composition of the proposed class in this action. Google further requests an order confirming that to the extent a discovery dispute has been resolved in the *Csupo* action, the resolution will be deemed presumptively binding in this action, in order to avoid burdening the Court with redundant discovery disputes.

Given discovery practice in the Csupo state court action to date, Google is concerned with the breadth and burden posed by Plaintiffs' discovery approach. Plaintiffs purport to challenge cellular data transmissions initiated by the Android operating system or any Google-developed application (such as Gmail or Google Maps). Plaintiffs limit their claims to "passive transfers," but have never articulated a workable definition of that concept that could be applied to define an appropriate scope of discovery. As loosely articulated, the concept of "passive transfers" could implicate hundreds or even thousands of distinct types of data transfers, across multiple Google products. As Plaintiffs make clear, they intend to seek discovery into, among other things, how each of these transfers is programmed, the circumstances in which transfers may take place, how the data transferred is used, how Google retains transferred data and data about such transfers, and how these facts may vary across device types and carriers. Without appropriate limits, this approach to discovery would require Google to produce sensitive and confidential technical materials on virtually every aspect of the Android operating system and each Google-developed application, and would require Google to seek out information from hundreds of internal stakeholders with knowledge of these diverse functions and processes. Google does not view such an approach as necessary or proportional to the needs of the case. Instead, Plaintiffs should be required to identify the specific data transmissions that they contend are "passive" so that the parties can confer on the appropriate scope of discovery.

Google intends to seek discovery from Plaintiffs, including on the following topics:

1. Plaintiffs' past and present understanding of the alleged data transfers;
2. Plaintiffs' consent and agreement to the alleged data transfers;
3. Plaintiffs' data plans;

  4.  Plaintiffs' data usage; and

  5.  Any damages or injury Plaintiffs contend they suffered.

**9.  Class Action.**

**Plaintiffs' Position.** Plaintiffs anticipate seeking class certification under Fed. R. Civ. P. 23(b)(3) on behalf of citizens of all States other than California who used mobile devices running Google's Android Operating System to access the internet through cellular data plans purchased from wireless carriers. Class certification is appropriate for at least the following reasons: There are millions of Class members geographically dispersed throughout the United States. Joinder of all Class members before this Court would be impracticable. The names, contact information, and other unique identifiers of the members of the Class are readily obtainable from Google, which requires users to log in to their Google accounts to download apps from the Google Play store and sets up profiles for users of Android phones who do not have Google accounts.

Plaintiffs' claims are typical of and fairly encompass the claims of Class members. Plaintiffs are members of the Class. During the past three years, Plaintiffs have used mobile devices running the Android Operating System to access the internet using cellular data from plans they purchased from wireless carriers. The members of the Class were similarly harmed by Google's conversion of their cellular data.

Plaintiffs and their Counsel will fairly, adequately, and vigorously protect the interests of the members of the Class. There are no material conflicts between the claims of Plaintiffs and the members of the Class. Plaintiffs are represented by Counsel who are competent and experienced in the prosecution of consumer class action litigation.

Numerous questions of law and fact are common to Plaintiffs and all members of the Class. These common questions will yield common answers for all Class members that impact the resolution of the claims on grounds equally applicable to all Class members. The common questions of law and fact for the Class include, but are not limited to:

  (1)  Whether Google misappropriates the cellular data of Android mobile-device users
      to conduct passive information transfers—e.g., transfers initiated when a device is

not being used—such as when the device is locked, sleeping, or otherwise not contemporaneously engaged by the user—or initiated by a Google application while it is closed or not on the viewing screen of a device that is being used;

(2) Whether, under California law, Plaintiffs and Class members have a property interest in the cellular data they purchase from wireless carriers;

(3) Whether Plaintiffs and Class members consented to Google's use of their cellular data to conduct passive information transfers;

(4) Whether Plaintiffs and Class members are entitled to recover damages for Google's conversion of their cellular data under California law, which governs Plaintiffs' and Class members' claims under the choice-of-law provision contained in the terms and conditions governing Plaintiffs' use of the Android operating system;

(5) Whether passive information transfers provided Google with a valuable benefit at Plaintiffs' and Class members' expense;

(6) The amount of damages due to Plaintiffs and Class members, which is readily ascertainable through economic analysis of the fair market value of cellular data based on market transactions; and

(7) Whether Google fraudulently concealed its scheme to misappropriate without consent Plaintiffs' and Class members' cellular data through passive information transfers.

Certification under Fed. R. Civ. P. 23(b)(3) is appropriate because these common questions of fact and law predominate over any individual questions.

A class action is superior to all other available means for the fair and efficient adjudication of the claims of the members of the Class. The damages suffered by individual members of the Class are small compared to the burden and expense of individual prosecution. It would be virtually impossible or impractical for most, if not all, Class members to redress the wrongs done to them on an individual basis. Further, individual litigation would be unmanageable for the court system as it would result in thousands or millions of individual lawsuits creating the risk of

inconsistent or contradictory judgments and increasing the delay and expense to all parties and the court system. In contrast, a class action would present far fewer management difficulties. Class action treatment provides the benefits of a single adjudication, economies of scale, and supervision by a single court.

**Defendant's Position.** Google will oppose class certification because common questions do not predominate and a host of individualized inquiries would be needed to resolve the claims in this case. To determine whether each individual in the proposed class has a viable claim for conversion, the Court would need to determine, among other issues, (1) whether the individual expressly or impliedly consented to the data transmissions at issue, which in turn depends on whether they knew of various Google disclosures, whether they interacted with various Android settings that enable users to prevent data transmissions over cellular networks, and other factors, (2) whether the data transmissions at issue interfered in some way with the individual's ability to use their mobile data plans, which in turn depends on the particular terms and conditions of the particular plan at issue, (3) if there was such interference, whether the individual suffered any resulting damages. All of these issues turn on the unique experiences and circumstances of each putative class member and cannot conceivably be litigated on a classwide basis.

### 10. Related Cases.

As noted above, there is a substantially similar putative class action pending in Santa Clara County, California on behalf of California mobile device users: *Csupo et al. v. Google LLC*, 19-cv-352557. Google's demurrer to that complaint was overruled, and the parties are currently engaged in discovery.

### 11. Relief.

**Plaintiffs' Position.** Plaintiffs seek, on their own behalf and on behalf of Class members, compensatory relief reflecting the market value of Class members' cellular data that Google converted through passive information transfers from the time it began programming its Android Operating System and applications to initiate such transfers. Plaintiffs do not currently have sufficient information to calculate the amount of such damages, but they believe damages to be in the hundreds of millions or billions of dollars.

**Defendant's Position.** Google denies that Plaintiffs have Article III standing, denies that Plaintiffs have stated a claim, denies that Plaintiffs have been injured or suffered damages as a result of the challenged conduct, and denies that Plaintiffs are entitled to any relief of any kind.

12. **Settlement and ADR.**

Pursuant to the ADR Local Rules, the Parties have met and conferred about the prospects of settlement and ADR. All Parties are open to engaging in settlement discussions and ADR. But given the early stage of this case, and the relative dearth of information that would allow the Parties to assess its settlement value, the Parties would like to defer settlement discussions and ADR until a later stage in the litigation.

13. **Consent to Magistrate for All Purposes.**

The Parties have consented to having Magistrate Judge DeMarchi conduct all further proceedings, including trial and entry of judgment.

14. **Other References.**

The Parties agree that referring this case elsewhere is not appropriate at this time.

15. **Narrowing Issues.**

The Parties believe that the Court's resolution of Google's motion to dismiss (Doc. 33) will help narrow the issues. The Parties are not aware of other opportunities to narrow the disputed issues at this time.

16. **Expedited Trial Procedure.**

The Parties agree that this action is not suitable for Expedited Trial Procedure under General Order No. 64, Attachment A.

///
///
///
///
///
///
///

**17.   Scheduling.**

The Parties propose the below schedules.

| Event | Plaintiffs' Proposed Deadline | Google's Proposed Deadline |
|---|---|---|
| Initial Disclosures | February 19, 2021 | February 19, 2021 |
| Submit Protective Order and ESI Protocol | February 26, 2021 | February 26, 2021 |
| Substantial Completion of Document Production Responsive to First Set of Requests for Production | April 30, 2021 | To be set in connection with service of specific RFPs and any necessary meet-and-confer efforts for the same |
| Exchange Initial Privilege Logs | May 14, 2021 | See above |
| Deadline to Amend or Add Parties | July 30, 2021 | March 31, 2021 |
| Plaintiffs Disclose Class Certification Experts (if any) | July 30, 2021 | 12 weeks after date Google answers a complaint, if any ("Answer Date") |
| Plaintiffs' Class Certification Experts Deposed By | August 27, 2021 | 16 weeks after Answer Date |
| Defendant Discloses Class Certification Rebuttal Experts (if any) | September 17, 2021 | 19 weeks after Answer Date |
| Defendant's Class Certification Experts Deposed By | October 15, 2021 | 23 weeks after Answer Date |
| Plaintiffs Move for Class Certification | November 5, 2021 | 25 weeks after Answer Date |
| Defendant Opposes Class Certification and Files *Daubert* Motions (if any) | December 20, 2021 | 32 weeks after Answer Date |
| Plaintiff Replies In Support of Class Certification, Opposes *Daubert* Motions (if any), Files *Daubert* Motions (if any) | January 14, 2022 | 36 weeks after Answer Date |

| | | |
|---|---|---|
| Defendant Opposes *Daubert* Motions (if any), Files *Daubert* Replies (if any) | February 11, 2022 | 39 weeks after Answer Date |
| Plaintiff Files *Daubert* Replies (if any) | February 25, 2022 | 41 weeks after Answer Date |
| Fact Discovery Closes | April 29, 2022 | Google believes further case deadlines should be deferred and set after class certification has been resolved so that the parties and the Court can assess the nature and scope of any further proceedings |
| Deadline to Disclose Trial Experts on Issues on Which Party Bears Burden of Proof at Trial | May 27, 2022 | Premature |
| Trial Experts Deposed By | June 24, 2022 | Premature |
| Deadline to Disclose Rebuttal Trial Experts | July 22, 2022 | Premature |
| Rebuttal Trial Experts Deposed By | August 19, 2022 | Premature |
| Expert Discovery Closes | September 2, 2022 | Premature |
| Deadline to File Summary Judgment and *Daubert* Motions | September 16, 2022 | Premature |
| Oppositions to Summary Judgment and *Daubert* Motions | October 28, 2022 | Premature |
| Replies in Support of Summary Judgment and *Daubert* Motions | November 11, 2022 | Premature |
| Final Pretrial Conference | February 2023 (TBD) | Premature |
| Trial (10-day Jury Trial) | March 2023 (TBD) | Premature |

**18.   Trial.**

Plaintiffs have demanded a jury trial. The Parties anticipate the jury trial will take approximately 10 full Court days.

**19.     Disclosure of Non-Party Interest Entities or Persons.**

Pursuant to Civil Local Rule 3-15, each of the Parties has filed the "Certification of Interested Entities or Persons." *See* Doc. Nos. 24 and 36.

**Plaintiffs' Certification.** Counsel for Plaintiffs have certified that, as of this date, other than the named parties, there is no such interest to report. No person or entity other than Plaintiffs and their Counsel is funding the prosecution of these claims.

**Defendant's Certification.** Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company; no publicly traded company holds more than 10% of Alphabet Inc.'s stock. Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1. Google LLC

2. XXVI Holdings Inc., Holding Company of Google LLC

3. Alphabet Inc., Holding Company of XXVI Holdings Inc.

**20.     Professional Conduct.**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

///

///

///

///

///

///

///

///

///

Dated: February 9, 2021                       Respectfully submitted,

                                              COOLEY LLP


                                              By: /s/ *Whitty Somvichian*
                                                  Whitty Somvichian (194463)

                                              Attorneys for Defendant
                                              GOOGLE LLC


Dated: February 9, 2021                       KORREIN TILLERY, LLC


                                              By: /s/ *Michael Klenov*
                                                  Michael Klenov

                                              Attorneys for Plaintiffs
                                              JOSEPH TAYLOR, EDWARD MLAKAR,
                                              MICK CLEARY, and EUGENE ALVIS

## **ATTESTATION**

Filer's Attestation:  Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attests that concurrence in the filing of this document has been obtained.

Dated: February 9, 2021                       COOLEY LLP


                                              */s/ Whitty Somvichian*
                                              Whitty Somvichian

                                              Attorneys for Defendant
                                              GOOGLE LLC

239851672