UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 20-cv-07956-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 33 |

Plaintiffs sue Google LLC ("Google"), individually and on behalf of a putative class of Android mobile device owners, for conversion and quantum meruit based on alleged "passive" data transfers performed by Google over its Android operating system without consent. Google moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint. Plaintiffs oppose the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants Google's motion to dismiss with leave to amend as discussed below[1]

**I.　BACKGROUND**

According to the complaint's allegations, plaintiffs Joseph Taylor, Edward Mlakar, Mick Cleary, and Eugene Alvis are non-California residents[2] who own Android mobile devices that they use with a monthly cellular data plan purchased from various service providers, including T-

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 16, 23.

[2] The complaint states that Messrs. Taylor and Mlakar are residents and domiciliaries of Illinois, Mr. Cleary is a resident and domiciliary of Wisconsin, and Mr. Alvis is a resident and domiciliary of Iowa. Dkt. No. 1 ¶¶ 8-11.

Mobile, Verizon and U.S. Cellular. Dkt. No. 1 ¶¶ 8-11. Messrs. Taylor, Mlakar, and Cleary each have unlimited data plans. Mr. Alvis has a limited data plan he purchased from one service provider, as well as an unlimited data plan he purchased from another service provider. *Id*.

Plaintiffs allege that Google "designed the Android operating system to collect vast amounts of information about users, which Google uses to generate billions in profit annually by selling targeted digital advertisements." *Id*. ¶ 1. Much of this information-gathering activity, say plaintiffs, takes place "secretly," is "not initiated by any action of the user" and is "performed without their knowledge," including at times when their devices are seemingly idle. *Id*. ¶¶ 3, 33. Indeed, according to the complaint, "Google deliberately designed and coded its Android operating system and Google applications to indiscriminately take advantage of Plaintiffs' data allowances and passively transfer information at all hours of the day—even after Plaintiffs move Google apps to the background, close the programs completely, or disable location-sharing." *Id*. ¶ 3. In performing these so-called "passive" data transfers, plaintiffs allege that Google "secret[ly] appropriate[es] . . . Android users' cellular data allowances," even though the transfers are "not time-sensitive and could be delayed until Plaintiffs are in Wi-Fi range to avoid consuming Plaintiffs' cellular data allowances." *Id*. ¶¶ 2, 3. Plaintiffs further allege that they never consented to these data transfers, and that Google's various policies and terms of service are contracts of adhesion that do not in any way provide users with notice of these passive data transfers. Instead, say plaintiffs, mobile device users only consent to Google's use of their cellular data when they are actively using Google's products. *Id*. ¶¶ 4, 5, 29-31, 45-50.

Claiming that they have property interests in their cellular data allowances, plaintiffs contend that the alleged passive data transfers "depriv[e] them of data for which they, not Google, paid" and benefit "[Google]'s product development and lucrative targeted advertising business" at plaintiffs' expense. *Id*. ¶¶ 6, 7. As noted above, plaintiffs assert claims for conversion and quantum meruit for themselves and on behalf of a proposed class of "[a]ll natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data plans provided by mobile

carriers." *Id.* ¶ 54.[3] The complaint asserts jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), on the grounds that the amount in controversy exceeds $5 million, exclusive of interest and costs, there are 100 or more class members, and the parties are minimally diverse. *Id.* ¶ 13. Plaintiffs seek an injunction "directing Google to stop using cellular data purchased by consumers without their consent," as well the "fair market value of the cellular data converted by Google," the "reasonable value of the cellular data used by Google to extract and deliver information that benefited Google," and fees and costs. *Id.* ¶ 78.

Google moves to dismiss the complaint pursuant to Rule 12(b)(1), arguing that plaintiffs lack standing to pursue their claims because they have not alleged facts indicating that they have suffered any injury. Even if plaintiffs have standing, Google moves to dismiss pursuant to Rule 12(b)(6), arguing that (1) plaintiffs' conversion claim fails because the complaint does not allege a cognizable property interest, interference, or damages and because plaintiffs consented to the alleged data use and (2) plaintiffs' quantum meruit claim fails because it is merely derivative of plaintiffs' conversion claim. For the reasons discussed below, the Court grants Google's motion to dismiss with leave to amend as specified below.[4]

## II. DISCUSSION

### A. Rule 12(b)(1) Motion to Dismiss

Google argues that plaintiffs lack standing to bring their claims because they have not alleged an injury-in-fact. Standing is a jurisdictional issue properly addressed under a Rule 12(b)(1) motion. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

---

[3] The proposed class excludes Google, "its officers, directors, management, employees, subsidiaries, and affiliates" and "any judges or justices involved in this action and any members of their immediate families or their staff." *Id.* ¶ 55.

[4] In resolving the present motion, the Court finds it unnecessary to consider the various terms and policies Google submitted and the Form 10-K, and website materials submitted by plaintiffs (Dkt. No. 39-1, Exs. 3-5). The parties' respective motions for judicial notice of those materials (Dkt. Nos., 33-7, 39-2) are denied as moot.

pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Because Google's arguments focus on the sufficiency of the complaint's allegations, the Court construes the present motion as a facial attack on plaintiffs' standing. As such, the record is limited to the complaint and materials that may be judicially noticed. *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). Additionally, the Court must accept well-pled allegations of the complaint as true, draw all reasonable inferences in plaintiffs' favor, and determine whether their allegations are sufficient to support standing. *See id*. As the parties asserting federal subject matter jurisdiction, plaintiffs bear the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Article III of the Constitution, federal courts have jurisdiction to decide only actual "Cases" or "Controversies," U.S. Const., art. III, § 2, and plaintiffs have standing to sue if they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' claimed injury must be both "particularized" and "concrete." A "particularized" injury is one that "'affect[s] the plaintiff in a personal and individual way.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). A "concrete" injury is not limited to one that is tangible. *Id*. at 1549. "Various intangible harms can also be concrete," and "[c]hief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Nevertheless, a "concrete" injury "must actually exist" and must be "real, and not

4

abstract." *Spokeo, Inc.*, 136 S. Ct. at 1548.

"The Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally," and "[a] federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal quotations and citation omitted). Thus, in the class action context, plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong and which they purport to represent." *Id*. at 502.

Google argues that the complaint merely speculates about harms that other Android device users may have experienced, and fails to allege facts demonstrating that the plaintiffs themselves have suffered any injury. For example, Google points out that while the complaint alleges that individuals with limited data plans typically are charged an overage fee if they exceed their data allowances, Mr. Alvis (the only plaintiff with a limited data plan) does not allege that he was ever charged such fees. *See* Dkt. No. 33 at 7; *see also* Dkt. No. 1 ¶¶ 11, 26. Similarly, Google notes that the complaint alleges that individuals with unlimited data plans are "typically subject to quotas on their usage and will have their cellular connection speeds throttled if they exceed such quotas," resulting in lost functionalities, such as video streamlining, or in significantly impaired device performance. *See* Dkt. No. 33 at 7; *see also* Dkt. No. 1 ¶¶ 8-11, 26. However, no plaintiff alleges that his unlimited data plan was subject to such quotas or that his connection speed was ever throttled.

Citing *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), plaintiffs argue that their "interest in disgorging Google's unjust enrichment" is sufficient to establish Article III standing. Dkt. No. 39 at 13-14. In *Facebook Internet Tracking*, Facebook admittedly used plug-ins to track logged-out users' browsing histories, and compiled those browsing histories into personal profiles that Facebook sold to advertisers to generate revenue. 956 F.3d at 596. The district court dismissed several common law claims, including trespass to chattels and fraud, for lack of standing on the ground that the plaintiffs failed to allege that they

suffered any economic injury deemed necessary to assert such claims. *Id*. at 599. Noting that the plaintiffs alleged that Facebook was unjustly enriched through the company's admitted use of their browsing histories, the Ninth Circuit rejected Facebook's argument that plaintiffs' allegations regarding Facebook's unjustly earned profits were insufficient to confer Article III standing. In reaching that conclusion, the Ninth Circuit explained that "'state law can create interests that support standing in federal courts,'" and "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Id*. at 599 (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)). The Ninth Circuit found that the plaintiffs sufficiently alleged that Facebook profited from their personal data by citing to studies valuing users' browsing histories at $52 per year, as well as research panels that pay users for access to their browsing histories, and by alleging that Facebook's ad sales constituted over 90% of the company's revenue during the relevant period. *Id*. at 600-01.

The Court does not read *Facebook Internet Tracking* to stand for the proposition that simply alleging a demand for disgorgement of profits or an unjust enrichment theory is, by itself, sufficient to establish Article III standing where plaintiffs have not otherwise pled sufficient facts establishing that they personally suffered a particular and concrete injury. Here, plaintiffs also argue that allegations regarding the deprivation of their "property interest in the bytes [of cellular data] they purchased" are sufficient to establish standing because deprivation of a property interest is a particularized, concrete injury. Dkt. No. 39 at 13-14. They seek both monetary relief (the value of the cellular data used by Google) and injunctive relief (an order directing Google to stop using plaintiffs' cellular data allowances without their consent). Dkt. No. 1 at 21-22. "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." *Warth*, 422 U.S. at 500 (citation omitted). It is clear from the parties' arguments that the issue of plaintiffs' Article III standing turns on the parties' fundamental disagreement about whether plaintiffs' cellular data allowances properly are the subject of a conversion claim or a claim for quantum meruit, and that the questions of standing and failure to state a claim are intertwined.

6

For the reasons discussed below, the Court finds that plaintiffs do not have a property interest in their cellular data allowances that was harmed by Google's alleged conduct, and therefore do not state a claim for conversion or for quantum meruit.

### B. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

#### 1. Conversion Claim

As noted above, the parties dispute whether plaintiffs have a property interest in their

7

cellular data allowances that provides a cognizable basis for a conversion claim under California law.  *See* Dkt. No. 1 ¶ 60.b. (stating that an issue common to the putative class is "[w]hether the cellular data allowances that Plaintiffs purchase are property interests recognized by California law[.]").  "In California, conversion has three elements:  ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc*., 958 F.2d 896, 906 (9th Cir. 1992); *see also Fremont Indem. Co. v. Fremont Gen. Corp.,* 148 Cal. App. 4th 97, 119 (2007) ("The basic elements of the tort [of conversion] are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages.").

Google argues that plaintiffs cannot state a conversion claim because they do not have personal property rights in their cellular data allowances.  Courts apply a three-part test to determine whether a property right exists:  "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity."  *GS Rasmussen*, 958 F.2d at 903 (footnotes omitted).  "Although the question was once the matter of some controversy, California law now holds that property subject to a conversion claim need not be tangible in form; intangible property interests, too, can be converted." *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019); *see also Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (stating that insofar as "California retains some vestigial merger requirement, it is clearly minimal, and at most requires only some connection to a document or tangible object[.]").

As alleged in their complaint, plaintiffs assert a property right in "their purchased data allowances" created by contract with their respective service providers.  *See* Dkt. No. 1 ¶ 6 ("Whether Plaintiffs pay for a specific number of gigabytes or unlimited access subject to speed restrictions above a certain data usage threshold, the contracts between Plaintiffs and their mobile carriers create for Plaintiffs concrete property interests in their purchased data allowances."); ¶ 27 ("The purchase of data plans from mobile carriers creates a property interest for Plaintiffs in their cellular data allowances."); ¶ 63 ("Plaintiffs have property interests in the cellular data allowances

8

that they purchase from their mobile carriers."). The parties dispute whether, in view of the fact that data plans may provide for limited or unlimited data allowances, these "purchased data allowances" represent a precisely defined property interest that is capable of exclusive possession or control. *See* Dkt. No. 33 at 11-13; Dkt. No. 39 at 15-19. Even assuming, without deciding, that plaintiffs' purported property right is precisely defined, their conversion claim fails because they do not allege facts demonstrating exclusive possession of the "purchased data allowances" for which they contract.

Although plaintiffs argue that their data plans confer ownership of "[p]urchased [b]ytes of [c]ellular [d]ata" (Dkt. No. 39 at 14), they have not plausibly alleged facts demonstrating a right to exclusive access to unique or specific bytes of data. Rather, the complaint's allegations indicate that plaintiffs' data allowances provide them with a contractual right to access their service provider's cellular data network—a right that is not exclusive of others' rights to access the same network. Plaintiffs confirm that they "use the term 'data allowances' to refer to the quantity of cellular data bytes that they have purchased" through contracts with their respective service providers. Dkt. No. 39 at 16 n.5. In other words, a data allowance provides subscribers, such as plaintiffs, with a contractual right of access to a service, i.e., access to a service provider's cellular data network that enables users "to send and receive information over the internet without a Wi-Fi connection." *See* Dkt. No. 1 ¶ 24. For some subscribers that right of access is limited to a certain volume of data transmission per month (measured in bytes of data), and for others it is unlimited. *See* Dkt. No. 1 ¶¶ 8-11. In any event, that right of access is not exclusive of others' right of access to the same network, and no subscriber possesses or controls a particular byte or bytes of data in the network. Indeed, plaintiffs acknowledge that the purported property right of access to a cellular data network grants them the ability to access "quantities of cellular data available to all of [a carrier's] customers." Dkt. No. 39 at 17.

Thus, while plaintiffs assert that their service provider contracts give them "a possessory interest in cellular data that exists independent of the contacts" (Dkt. No. 39 at 9), the complaint's allegations indicate that plaintiffs' purported property right in "purchased data allowances" is a right to obtain services conferred by their contracts with the service providers. Courts have held

9

"that the benefits of contractual rights are not personal property capable of conversion." *Monster Energy co. v. Vital Pharm., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (citing cases). While plaintiffs allege that their right of access nonetheless "includes the right to exclude other persons and entities from using Plaintiffs' cellular data allowances" (Dkt. No. 1 ¶ 27), the same could be said of other rights granted by contract that do not provide a basis for a conversion claim. *See, e.g., Boon Rawd Trading Int'l Co. Ltd. v. Paleewong Trading Co. Inc.*, 688 F.Supp.2d 940, 955 (N.D. Cal. 2010) (concluding that exclusive importation right "is an intangible *contractual* right protected under contract law, not tort law."). In some contexts, contract provisions may inform whether a plaintiff has a possessory right. For example, in a suit over non-payment of wages the California Supreme Court observed that "[c]ontractual provisions may, of course, determine whether the plaintiff has a possessory right to certain funds in the defendant's hands." *Voris*, 7 Cal. 5th at 1152. Here, however, for the reasons discussed, plaintiffs have not plausibly alleged facts demonstrating a right to exclusive access to unique or specific bytes of cellular data.

Plaintiffs nonetheless contend that access to a service provider's cellular data network is akin to the consumption of public utilities such as water, natural gas, or electricity that can be subject to a conversion claim. Here, plaintiffs argue that "users consume discrete bytes of cellular data on demand" in much the same way people use water or other utilities and that "each cellular byte that a device uses" is allocated specifically to that device and is not available for use by any other device. Dkt. No. 39 at 16-17, 20. Plaintiffs thus contend that they have a property interest in a product (i.e., bytes of data), not a service. Plaintiffs further argue that once accessed, each byte of data becomes the personal property of the user. *Id.* at 17, 20. The Court finds plaintiffs' analogy to the use of water, gas, or electricity unpersuasive. A utility customer may plausibly be said to consume a discrete quantum of water, gas, or electricity in a manner that makes that specific quantum of water, gas, or electricity unavailable to any other customer. The allegations of the complaint do not plausibly establish that use of a cellular data network involves the exclusive consumption of a quantum of data or that plaintiffs have exclusive possession or control of unique or specific bytes of data; rather, the plaintiffs allege non-exclusive access to a service provider's

10

network, where the extent of such access is simply measured in bytes of data. *See* Dkt. No. 1 ¶¶ 6, 27, 63.

Maintaining that "bytes of cellular data are property" independent of a contract, plaintiffs further analogize to a small grocer's purchase of apples from a commercial farmer. Dkt. No. 39 at 16. In plaintiffs' analogy, apples are the grocer's property, whether the grocer pays the farmer on a per-apple basis, or whether the grocer pays a fixed sum under a requirements contract for all the apples the grocer can sell in a given month. Plaintiffs argue that "bytes of cellular data" similarly "are property regardless of whether they are acquired through a pay-as-you-use plan, a monthly cap plan, or a monthly requirements plan." *Id*. The problem with plaintiffs' argument is that apples, by their nature, can be possessed and controlled as property and exist independently of the contract. By contrast, plaintiffs' claimed property interest is not in "bytes of cellular data," which is simply the measure of a user's access to a given network. Rather, the alleged property right is "purchased data allowances," an interest that is based solely on the contractual right to use a service, i.e., to "access the carriers' cellular data networks, thereby providing users with the ability to send and receive information over the internet without a Wi-Fi connection." Dkt. No. 1 ¶¶ 6, 24.

The parties have not cited, and the Court has not found, cases addressing the question of whether cellular service subscribers have a property interest in their cellular data allowances. Plaintiffs, however, note that in a parallel proceeding in the Santa Clara County Superior Court concerning a putative class of California citizens, the court overruled Google's demurrer to the complaint and concluded that the plaintiffs stated a claim for conversion based on an alleged property right in their data allowances. *See* Dkt. No. 39-1, Ex. 1 (Order After Hearing on July 17, 2020 issued in *Csupo, et al. v. Alphabet, Inc.*, Case No. 19CV352557).[5] The unpublished *Csupo*

---

[5] The parties dispute whether California Rule of Court 8.1115(a) applies and if so, whether the rule prohibits plaintiffs from citing the *Csupo* order here. Nevertheless, the Court concludes that it properly may take judicial notice of the order, except as to facts stated therein that may be subject to reasonable dispute. Fed. R. Evid. 201; *Bradford v. Flagship Facility Servs., Inc.*, No. 17-cv-01245-LHK, 2017 WL 3130072, at *1 n.1 (N.D. Cal. July 24, 2017).

11

order is not binding precedent, and this Court respectfully disagrees with its conclusion.[6] The *Csupo* court found analogous or persuasive several cases that this Court concludes are inapposite.

For example, in *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202 (2014), the Court of Appeals affirmed that the plaintiff had a property right in his credit card account where the defendant obtained a specific amount of money through the use of the plaintiff's credit card, notwithstanding that the sums in question were not taken directly from the plaintiff, but through the third-party credit card company. *Welco Elecs, Inc.*, 223 Cal. App. 4th at 211-12. Fraudulent credit card charges, however, immediately result in a discrete loss of a specific sum of money to the credit card holder and corresponding indebtedness to the credit card company. By contrast, in the present case, the complaint is devoid of allegations that plaintiffs' right of access is or has been diminished in any way by Google's access to a cellular data network, whether through the imposition of overage charges, throttled data speeds, or anything else. Insofar as plaintiffs contend that their interest in "disgorging Google's unjust enrichment" is sufficient under *Facebook Tracking Litigation* to establish an injury sufficient to support a claim for conversion, as well as Article III standing (*see* Dkt. No. 39 at 13-14), their arguments presuppose that a property interest exists in the first place. For the reasons stated in this order, this Court concludes that no such property right exists. Moreover, the complaint does not allege facts demonstrating that Google's alleged unjust enrichment from use of cellular data networks is an injury to plaintiffs' right of access to those networks, which the complaint's allegations indicate remained unimpaired. *See generally Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1348 (2003) (concluding that plaintiff's trespass to chattels claim failed because such claims "may not, in California, be proved without evidence of an injury to the plaintiff's personal property or legal interest therein," and the consequential damage plaintiff claimed to have suffered was not an injury to the plaintiff's "interest in its computers—which worked as intended and were unharmed by the [defendant's

---

[6] At the motion hearing, the Court inquired about any potential preclusive effect of the state court proceedings on the present action. Dkt. No. 46. Although plaintiffs believe there is the possibility for issue preclusion on final judgment in the state court action (the parties advised that they currently are conducting discovery in the state court case), no one noted any current proceedings in the state court action that would have preclusive effect here.

emails].")

Plaintiffs' cellular data allowances are also not comparable to *DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182 (E.D. Cal. 2005), in which the plaintiff satellite broadcaster's television programming (i.e., content) was found to be "personal property" subject to conversion through pirating devices.

*Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996), is factually closer on point. That case concerned the plaintiff telephone company's conversion claim based on automated searches of its telephone system for long-distance authorization codes, which overburdened plaintiff's system and resulted in some subscribers being denied access to phone lines. However, the alleged personal property in *Thrifty-Tel* was not telephone services or minutes, but "the intangible computer access code . . . and the tie-up of Thrifty–Tel's system." *Id*. at 1565-66. Moreover, the court did not reach the question whether such matters could be the subjects of a conversion claim because it concluded that the evidence supported liability under a trespass theory. *Id*. at 1566.

In sum, plaintiffs have not alleged facts demonstrating that their cellular data allowances are "personal property" capable of exclusive possession or control that properly may support a claim for conversion. Accordingly, Google's motion to dismiss the conversion claim is granted on that ground, and the Court finds it unnecessary to address whether plaintiffs satisfy the remaining requirements for a conversion claim.

### 2. Quantum Meruit Claim

Google argues that plaintiffs' quantum meruit claim must be dismissed on that ground that it is a common count derivative of their conversion claim. In any event, Google contends that the complaint does not plead sufficient facts to support a standalone claim for quantum meruit.

"A common count is not a specific cause of action . . . rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." *McBride v. Boughten*, 123 Cal. App. 4th 379, 394 (2004). "When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the

same facts, the common count is demurrable if the cause of action is demurrable." *Id.*; *see also McAfee v. Francis,* No. 5:11-CV-00821-LHK, 2011 WL 3293759, at *2 (N.D. Cal. Aug. 1, 2011) (same). "This rule only applies to prevent a plaintiff from relying on different facts in the common count." *Crocker-Anglo Nat. Bank v. Kuchman*, 224 Cal. App. 2d 490, 497 (1964). "A plaintiff may rely on a different theory of recovery in the common count as long as that theory is fully supported in the specific facts pleaded in the other counts." *Id*.

While acknowledging that some facts are common to both the conversion and quantum meruit claims, plaintiffs contend that the quantum meruit claim is not derivative of their conversion claim because it "also turns on independent facts and legal theories" (Dkt. No. 39 at 27), namely that Google was unjustly enriched when it allegedly "used Plaintiffs' cellular data allowances to collect and transmit information through passive transfers to develop and support its advertising business and other ventures" (Dkt. No. 1 ¶ 69). The quantum meruit claim, however, indisputably is based on all the same facts as the conversion claim. Indeed, the claim simply realleges and incorporates by reference all of the preceding allegations in the complaint. Dkt. No. 1 ¶ 67. Moreover, the quantum meruit claim appears to seek precisely the same monetary recovery as the conversion claim, i.e., the value of the cellular data used by Google. Dkt. No. 1 at 21. Insofar as it thus appears to be merely derivative of plaintiffs' now dismissed conversion claim, plaintiffs' quantum meruit claim must also be dismissed.

Plaintiffs nonetheless argue that the quantum meruit claim is distinct that in that it is also based on "recover[y] [of] the reasonable value of Plaintiffs' personal information" that Google allegedly collects and exploits for its own benefit. Dkt. No. 1 ¶ 75. However, nowhere in their complaint do plaintiffs plead facts stating what that "personal information" is, how it is used, or any other facts that might support a plausible claim for relief. Indeed, other than the one reference to "personal information" plaintiffs highlight in paragraph 75 of the complaint, their pleading contains nothing more than two passing references to "personal information." S*ee* Dkt. No. 1 ¶ 5 (referencing "certain transfers of personal information when [users] are actively engaged with their devices"); ¶ 7 (seeking compensation for "the value of the personal information" that Google allegedly has acquired). Plaintiffs did not address this purported basis for their quantum meruit

14

claim in their written opposition to Google's motion to dismiss. When probed by the Court at oral argument about the basis for the personal information portion of their claim (apart from the one sentence in paragraph 75 of the complaint), plaintiffs simply referred to general allegations concerning the alleged purpose of the passive data transfers. Plaintiffs have therefore provided no basis for the Court to conclude that there are additional facts could be alleged to state a plausible claim for relief.

Accordingly, the Court concludes that plaintiffs' have failed to state a claim for quantum meruit. Google's motion to dismiss this claim is granted.

### III.   LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have not articulated any additional facts that could be alleged on an amendment to support a plausible claim for conversion. For the reasons stated above, the Court doubts whether they can do so. Nevertheless, as the law generally favors resolving matters on the merits, the Court will permit plaintiffs to amend their conversion claim. The Court also gives plaintiffs leave to amend their quantum meruit claim to the extent plaintiffs believe they plausibly can assert such a claim based on their cellular data allowances. However, the Court does not give plaintiffs leave to amend their quantum meruit claim based on the alleged use of "personal information," as to which plaintiffs have not only failed to articulate additional facts that could be asserted on amendment, but have also not explained why they did not plead those allegations in their original complaint.

## IV. CONCLUSION

Based on the foregoing, Google's motion to dismiss the complaint is granted with leave to amend the claims for conversion and quantum meruit, consistent with the rulings in this order. Plaintiffs' amended complaint shall be filed by October 18, 2021. The Court will separately address a case schedule and will provide notice if it believes a further case management conference is necessary.

**IT IS SO ORDERED.**

Dated: October 1, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge