```
 1                IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                        SAN JOSE DIVISION

 4
       TAYLOR, ET AL,                )   CV-20-7956-VKD
 5                                   )
                     PLAINTIFF,      )   SAN JOSE, CALIFORNIA
 6                                   )
              VS.                    )   APRIL 20, 2021
 7                                   )
       GOOGLE, LLC,                  )   PAGES 1-64
 8                                   )
                     DEFENDANT.      )
 9                                   )
       _____ )
10
                     TRANSCRIPT OF PROCEEDINGS
11           BEFORE THE HONORABLE VIRGINIA K. DEMARCHI
                  UNITED STATES MAGISTRATE JUDGE
12

13                     A P P E A R A N C E S

14

15      FOR THE PLAINTIFF:     BY:  RYAN Z. CORTAZAR
                               KOREIN TILLERY
16                             205 NO. MICHIGAN AVE, SUITE 1950
                               CHICAGO, IL 60601
17

18      FOR THE DEFENDANT:     BY:  WHITTY SOMVICHIAN
                                    KELSEY SPECTOR
19                             COOLEY LLP
                               3 EMBARCADERO CENTER, 20TH FLOOR
20                             SAN FRANCISCO, CA 94111

21

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23      OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

1       APPEARANCES CONTINUED:

2       FOR THE PLAINTIFF:       **BY:  MICHAEL KLENOV**
                                 KOREIN TILLERY, LLC
3                                505 N 7TH STREET, SUITE 3600
                                 ST. LOUIS, MO 63101
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    APRIL 20, 2021 |
| 2 | P R O C E E D I N G S |
| 3 | (COURT CONVENED AT 10:00 A.M.) |
| 4 | THE CLERK:  CALLING THE MATTER OF TAYLOR VERSUS |
| 5 | GOOGLE.  CASE 5-20-CV-7956. |
| 6 | THE COURT:  THANK YOU. |
| 7 | MAY I HAVE APPEARANCES, PLEASE, STARTING WITH PLAINTIFFS. |
| 8 | MR. CORTAZAR:  RYAN CORTAZAR AND MICHAEL KLENOV ON |
| 9 | BEHALF OF PLAINTIFFS. |
| 10 | THE COURT:  OKAY.  THANK YOU.  GOOD MORNING. |
| 11 | AND FOR THE DEFENDANT. |
| 12 | MR. SOMVICHIAN:  GOOD MORNING, YOUR HONOR. |
| 13 | WHITTY SOMVICHIAN.  MY COLLEAGUE, KELSEY SPECTOR, IS ON AS |
| 14 | WELL, WITH COOLEY, AND WE REPRESENT GOOGLE TODAY. |
| 15 | THE COURT:  OKAY.  GOOD MORNING TO YOU AS WELL. |
| 16 | SO WE ARE HERE ON GOOGLE'S MOTION TO DISMISS THE COMPLAINT |
| 17 | AND ALSO FOR A CASE MANAGEMENT CONFERENCE. |
| 18 | I WILL TEND TO THE MOTION TO DISMISS FIRST.  AND AS IT'S |
| 19 | GOOGLE'S MOTION, I HAVE A FEW QUESTIONS THAT I WOULD LIKE TO |
| 20 | START WITH FOR GOOGLE. |
| 21 | I WOULD LIKE TO LET YOU ALL KNOW THAT YOU ARE WELCOME TO |
| 22 | ARGUE WHATEVER YOU ALL LIKE THAT I DON'T ASK YOU ABOUT, BUT I |
| 23 | DO HAVE SOME QUESTIONS FROM THE BRIEFING THAT I WOULD LIKE TO |
| 24 | START WITH. |
| 25 | FIRST, I WOULD LIKE TO BETTER UNDERSTAND THE NATURE OF THE |

1    DATA TRANSMISSION THAT'S AT ISSUE IN THE CASE.

2         BOTH PARTIES ARGUE ABOUT THE PURPOSE OF THE TRANSMISSION.

3    FOR EXAMPLE, GOOGLE DESCRIBES IT AS PRACTICES NECESSARY TO

4    ENSURE THE FUNCTIONALITY OF THE DEVICE AND THE FEATURES ON THE

5    DEVICE, AND PLAINTIFFS CHARACTERIZE IT AS EXTRACTING A LOT OF

6    INFORMATION FOR GOOGLE'S BENEFIT.

7         I'M NOT SURE IT MATTERS, AND I WOULD REALLY LIKE FOR YOU

8    ALL TO ADDRESS THAT QUESTION.  SO LET ME JUST START WITH GOOGLE

9    AND ASK, DOES THE PURPOSE FOR WHICH THIS DATA IS TRANSFERRED

10   MATTER?

11         MR. SOMVICHIAN:  I DON'T THINK IT ULTIMATELY MATTERS

12    FOR PURPOSES OF THE MOTION, YOUR HONOR.

13         THERE MAY BE SOME ASPECTS FOR WHICH THE PURPOSE MAY MATTER

14    IF THIS CASE WERE TO PROCEED WAY DOWN THE READ, WITH RESPECT TO

15    MERITS.  BUT ON THE QUESTION OF WHETHER THERE IS A PROPERTY

16    INTEREST IN PLAINTIFF'S CONTRACTUAL ALLOWANCES, WITH RESPECT

17    TO WHETHER THERE HAS BEEN A SUBSTANTIAL INTERFERENCE WITH ANY

18    PROPERTY INTEREST, I DON'T THINK, ULTIMATELY, THE PURPOSE OF

19    THE DATA TRANSMISSION SPEAKS DIRECTLY TO EITHER OF ONE OF THOSE

20    QUESTIONS WHICH ARE, IN OUR VIEW, DISPOSITIVE.

21         AND WE ARE HAPPY TO ADDRESS ANY OF THOSE OTHER ISSUES, BUT

22    I THINK WE PREFER TO ADDRESS YOUR QUESTIONS DIRECTLY FIRST,

23    YOUR HONOR.

24         THE COURT:  OKAY.  GOOD.

25         WELL, I DO HAVE A FEW MORE.  I'M TRYING TO ALSO UNDERSTAND

1      ACCURATELY, WHEN THE DATA TRANSMISSION OCCURS.

2          IT APPEARS TO ME, FROM THE ALLEGATIONS IN THE COMPLAINT,

3      AND I WILL CERTAINLY ASK THE PLAINTIFFS THIS QUESTION AS WELL,

4      THAT THE ISSUE IS WHEN THE PHONE OR DEVICE IS POWERED ON, BUT

5      NOT ACTIVELY BEING USED.

6          IN OTHER WORDS, THE USER IS NOT INTERACTING WITH THE

7      PHONE, IS NOT -- THE APPLICATIONS AREN'T OPEN, BUT THE PHONE IS

8      POWERED ON, ITS JUST SITTING THERE, I THINK IT'S DESCRIBED AS

9      IN IDLE MODE.

10          IS THAT GOOGLE'S UNDERSTANDING AS WELL, THAT THAT'S WHEN

11      THE ALLEGED DATA TRANSMISSION OCCURS?

12              MR. SOMVICHIAN:  YES, YOUR HONOR.

13          TO THE EXTENT THAT WE CAN UNDERSTAND THE CONTOURS OF

14      PLAINTIFF'S THEORY, WHICH IN OUR VIEW ARE NOT CLEARLY DEFINED

15      WITH RESPECT TO EXACTLY WHAT CONSTITUTES A PASSIVE DATA

16      TRANSFER.

17          ONE OF THE EXAMPLES WE UNDERSTAND WOULD FALL WITHIN THE

18      SCOPE OF THEIR CLAIM WOULD BE A SITUATION WHERE, FOR EXAMPLE,

19      THE DEVICE IS ON, ITS ON SOMEBODY'S DESK, THEY ARE NOT ACTIVELY

20      ENGAGING WITH IT, BUT THEY ARE NOT CONNECTED TO WIFI, THERE'S A

21      NEED TO SEND A SECURITY UPDATE, FOR EXAMPLE, TO ADDRESS A

22      SECURITY ISSUE, AND THAT IS SENT VIA A CELLULAR NETWORK.

23          THAT IS AN EXAMPLE THAT WE BELIEVE WOULD FALL WITHIN THE

24      PLAINTIFF'S CONCEPT OF WHAT IS A PASSIVE DATA TRANSFER.

25              THE COURT:  AND GOOGLE DOESN'T UNDERSTAND THE

1    ALLEGATIONS OF THE COMPLAINT AS CONTESTING DATA TRANSMISSION

2    WHEN THE DEVICE IS COMPLETELY POWERED OFF.  I'M NOT EVEN SURE

3    THERE COULD BE ANY DATA TRANSMISSION WHEN THE DEVICE IS POWERED

4    OFF, BUT I DIDN'T READ THE COMPLAINT THAT WAY, AND I'M

5    WONDERING IF GOOGLE DID.

6        MR. SOMVICHIAN:  I DIDN'T READ IT THAT WAY EITHER,

7    YOUR HONOR.

8        IN ORDER TO TRANSMIT DATA, THE RADIO TRANSMITTERS ON THE

9    DEVICE HAVE TO BE ABLE TO DO THAT.  I'M NOT AWARE OF A

10   SITUATION WHERE SOMETHING COULD BE TRANSMITTED FROM THE DEVICE

11   WHEN IT'S ACTUALLY POWERED OFF.

12       THE COURT:  OKAY.

13       SO IN OTHER WORDS, POTENTIALLY USERS OF THESE ANDROID

14   DEVICES COULD POWER THE DEVICES COMPLETELY OFF AND THERE WOULD

15   BE NO DATA TRANSMISSION VIA CELLULAR NETWORK OR WIFI, OR ANY

16   OTHER MEANS.

17       MR. SOMVICHIAN:  YES.  OR THEY COULD CONNECT TO THE

18   WIFI NETWORK, IN WHICH CASE THE WIFI NETWORK WOULD BE USED, NOT

19   CELLULAR DATA, AND VARIOUS OTHER USER CONTROLS THAT WOULD AVOID

20   THE TYPES OF DATA TRANSMISSIONS THAT THE PLAINTIFFS ARE

21   COMPLAINING ABOUT, YES.

22       THE COURT:  OKAY.

23       SO TURNING TO THE QUESTION OF WHETHER WHAT THE PLAINTIFFS

24   ARE COMPLAINING ABOUT IS PROPERLY CHARACTERIZED AS PROPERTY, OF

25   COURSE IS THE KEY ISSUE HERE, AND I WOULD LIKE TO HEAR YOUR

```
1      ARGUMENT.  I MEAN, I'VE READ THE PAPERS, I'VE READ THE CASES,

2      BUT ONE OF THE THINGS THAT I WILL TELL YOU I AM STRUGGLING WITH

3      IS HOW IS THIS CELLULAR SERVICE, IF YOU WANT TO CALL IT A

4      SERVICE OR ACCESS TO CELLULAR DATA, HOW IS THIS DIFFERENT FROM,

5      SAY, ELECTRICITY?  AND HOW WOULD YOU DISTINGUISH THE

6      ALLEGATIONS OF THE COMPLAINT IN THIS CASE FROM ALLEGATIONS OF,

7      YOU KNOW, IN A SEPARATE MATTER WHERE SOMEONE WOULD SAY, MY

8      NEIGHBOR TAPPED INTO MY ELECTRICAL WIRE AND STOLE MY

9      ELECTRICITY, YOU KNOW, IF THE ELECTRICITY SITUATION IS

10     CONVERSION, HOW DO YOU DISTINGUISH THIS CASE?

11            MR. SOMVICHIAN:  YES, YOUR HONOR.

12        THE DISTINCTION IS BETWEEN PROPERTY THAT EXISTS

13     INDEPENDENTLY OF A CONTRACT AND A SITUATION WHICH WE HAVE HERE

14     OF A PROPERTY INTEREST, OR AN ALLEGED PROPERTY INTEREST, THAT

15     IS CREATED SOLELY BY THE CONTRACT AND DOESN'T EXIST

16     INDEPENDENTLY OF THE CONTRACT.

17        SO THERE ARE -- THE ANALOGIES MADE IN THE PLAINTIFF'S

18     BRIEF AS TO VARIOUS UTILITY EXAMPLES YOU POINTED TO OR

19     REQUIREMENTS FOR CONTRACTS FOR APPLE AND SO FORTH.

20        AND SO IT'S IMPORTANT TO DRAW A DISTINCTION, YOUR HONOR,

21     BETWEEN A SITUATION WHERE YOU HAVE PROPERTY, PERSONAL PROPERTY

22     THAT CAN BE OWNED, POSSESSED, CONTROLLED, AND THEN IT BECOMES

23     SUBJECT TO A CONTRACT, VERSUS A SITUATION WHERE THE ALLEGED

24     PROPERTY INTEREST IS SOLELY A CREATION OF THE CONTRACT.

25        SO IN THE UTILITY, FOR EXAMPLE, WATER EXISTS INDEPENDENTLY
```

1    OF THE CONTRACTS THAT GOVERN THE TRANSMISSION OR OWNERSHIP OF

2    WATER, SAME THING WITH NATURAL GAS OR ELECTRICITY.  ALL OF

3    THOSE GOODS EXIST INDEPENDENTLY OF THE CONTRACT.  AND THE FACT

4    THAT THERE IS A CONTRACT THAT GOVERNS THE TRANSMISSION OF IT

5    DOESN'T CHANGE THE FACT THAT THERE IS SOME UNDERLYING PROPERTY.

6         HERE, WE DON'T HAVE ANY UNDERLYING PROPERTY, ALL WE HAVE

7    ARE THE CONTRACTURAL BENEFITS THAT THE PLAINTIFFS ALLEGE THEY

8    ARE ENTITLED TO UNDER THEIR DATA PLANS.

9         AND IT'S IMPORTANT TO TIE IT BACK TO THE COMPLAINT,

10   YOUR HONOR.  THE ANALOGIES AND SORT OF THE BRIEFING --

11            THE COURT:  CAN I JUST -- BEFORE I LOSE MY TRAIN OF

12   THOUGHT ON THIS, I DO WANT TO PRESS ON THIS EXAMPLE.

13        YOU SAY ELECTRICITY AND OTHER UTILITIES EXIST INDEPENDENT

14   OF A CONTRACT.  WELL, SO DOES THE CELLULAR DATA NETWORK.  IT

15   EXISTS LIKE THE ELECTRICAL GRID, INDEPENDENT OF ANYONE

16   CONTRACTING TO USE IT.  IT EXISTS.  CELL TOWERS TRANSMITTING

17   ALL THE TIME.

18        SO HOW -- AND I THINK THE ELECTRICITY IS THE HARDEST

19   BECAUSE, YOU KNOW, THE WATER CASES ARE INTERESTING IN THAT

20   WATER IS NOT PERSONAL PROPERTY UNTIL IT'S CAPTURED AND BECOMES

21   A PRODUCT.  SO MAYBE THAT'S NOT -- THAT'S AN EASIER ANALOGY FOR

22   YOU TO DISAGREE WITH, BUT I THINK THE ELECTRICITY GRID AND THE

23   CELLULAR DATA NETWORK SEEM TO HAVE A LOT OF SIMILARITIES.

24        SO CAN YOU HELP ME WITH THAT?

25            MR. SOMVICHIAN:  I CAN TRY, YOUR HONOR.

1      AND YOU'VE ACTUALLY HIT ON A VERY IMPORTANT DISTINCTION

2   HERE WHICH IS BETWEEN THE ALLEGED PROPERTY OR THE PROPERTY, OR

3   PROPERTY INTEREST, AND THE MEANS OF TRANSMITTING THAT PROPERTY.

4      SO HERE, IF WE ARE TALKING ABOUT WATER OR ELECTRICITY OR

5   GAS, THOSE ARE CATEGORIES OF PROPERTY.  DISTINGUISH THAT FROM

6   THE MEANS OF TRANSMITTING IT, THE ELECTRICAL WIRES, PIPES, THE

7   METHOD OF DISTRIBUTION.

8      SO IF YOU TAKE THAT IMPORTANT DISTINCTION AND YOU APPLY IT

9   TO OUR CASE, THE DISTINCTION WOULD BE BETWEEN THE ACTUAL DATA

10  FILES THAT ARE BEING TRANSFERRED, THOSE ARE THE CRASH REPORTS,

11  THE LOGGED FILES, THE SECURITY UPDATES THAT ARE BEING

12  TRANSMITTED BETWEEN THE GOOGLE SERVER AND THE ANDROID DEVICE.

13      THE PLAINTIFFS AREN'T COMPLAINING ABOUT THAT.  THEY ARE

14  NOT ASSERTING A PROPERTY INTEREST IN THOSE DATA FILES, THEY ARE

15  NOT SAYING THAT GOOGLE CONVERTED THOSE DATA FILES.  WHAT THEY

16  ARE COMPLAINING ABOUT IS AN INTERFERENCE WITH THEIR

17  CONTRACTURAL RIGHT TO ACCESS THE MEANS OF TRANSMISSION, THEIR

18  ABILITY TO CONTRACTUALLY ACCESS A CELLULAR NETWORK WITH THEIR

19  MOBILE CARRIER.

20          THE COURT:  SO YOU ARE SAYING THAT THE DATA FILES ARE

21  LIKE THE ELECTRICITY, AND THE ELECTRICAL WIRES ARE LIKE THE

22  MEANS OF ACCESS.

23          MR. SOMVICHIAN:  YES.

24      AND THEN THE CONVERSION CASE ADDRESSING ELECTRICITY OR

25  WATER OR ANY OF THESE UTILITIES, THERE'S NO CLAIM, OF COURSE,

1          THAT THE PLAINTIFF HAS SOME OWNERSHIP INTEREST OR PROPERTY

2     INTEREST IN THE MEANS OF TRANSMISSION.

3          BUT THAT'S EXACTLY WHAT THE PLAINTIFFS ARE CLAIMING HERE.

4     THEY ARE NOT CLAIMING ABOUT THE THING BEING TRANSMITTED, THEY

5     ARE NOT COMPLAINING ABOUT THE DATA FILES AS BEING THE PROPERTY

6     INTEREST THAT WAS INTERFERED WITH, THEY ARE COMPLAINING ONLY

7     ABOUT AN ALLEGED INTERFERENCE WITH THEIR ABILITY TO ACCESS THE

8     NETWORK.  THEIR ABILITY TO UTILIZE THEIR CONTRACTURAL

9     ALLOWANCES TO ACCESS THEIR MOBILE CARRIER'S CELLULAR NETWORKS.

10          AND JUST AS IT'S NONSENSICAL TO TALK ABOUT CONVERSION

11     THEORY, AS APPLIED TO THE MEANS OF TRANSMITTING WATER OR

12     ELECTRICITY, IT ALSO DOESN'T MAKE SENSE, YOUR HONOR, HERE, TO

13     TALK ABOUT A CONVERSION PLAN OR A PROPERTY INTEREST IN THE

14     MEANS OF TRANSMISSION.  AND THAT'S THE FUNDAMENTAL PROBLEM WITH

15     THIS ANALOGY TO A UTILITY.

16          AND ALL THAT THEY HAVE, AGAIN, IT COMES BACK TO THIS

17     NOTION OF CONTRACT RIGHTS.  WHAT THEY HAVE ARE CONTRACTURAL

18     RIGHTS TO A SERVICE.

19          AND YOUR HONOR, I THINK IT'S REALLY IMPORTANT TO TIE THIS

20     BACK TO THE COMPLAINT, BECAUSE ANOTHER WAY THAT THE PLAINTIFFS

21     HAVE TRIED TO ANALOGIZE THEIR SITUATION TO THESE UTILITY

22     SITUATIONS IS BY CHARACTERIZING WHAT THEY RECEIVED AS DISTINCT

23     BYTES OF CELLULAR DATA AS IF THEY GOT DISTINCT UNITS OF

24     PERSONAL PROPERTY THAT THEY COULD OWN.  BUT THAT'S NOT HOW THEY

25     DESCRIBE THE PROPERTY INTEREST IN THE COMPLAINT.

1    SO IF YOU LOOK AT PARAGRAPH 24, FOR EXAMPLE, THERE ARE

2    SIMILAR REFERENCES IN OTHER PARTS OF THE COMPLAINT, INCLUDING

3    26, BUT IF YOU JUST TAKE 24 AS AN EXAMPLE, I WILL JUST READ IT,

4    IT SAYS, "TO USE THEIR MOBILE DEVICES, PLAINTIFFS CONTRACTED

5    WITH MOBILE CARRIERS.  AS PART OF THESE CONTRACTS, PLAINTIFFS

6    PURCHASED CELLULAR DATA PLANS THAT PROVIDED THEM WITH DATA

7    ALLOWANCES.  THESE PLANS ALLOWED PLAINTIFFS TO ACCESS THE

8    CARRIER'S CELLULAR DATA NETWORKS, THEREBY PROVIDING USERS WITH

9    THE ABILITY TO SEND AND RECEIVE INFORMATION OVER THE INTERNET

10   WITHOUT A WIFI CONNECTION."

11   SO THAT'S HOW THEY DESCRIBE THE CONTRACTURAL ALLOWANCES,

12   WHICH IN TURN IS THE ALLEGED PROPERTY AT ISSUE IN THEIR CLAIM,

13   YOUR HONOR.

14   SO THERE'S NO REFERENCE TO RECEIVING SOME DISTINCT -- AN

15   IDENTIFIABLE SET OF BYTES OF DATA.  AS THEY CHARACTERIZE IT,

16   IT'S A CONTRACT THAT GIVES THEM THE ABILITY TO SEND AND RECEIVE

17   INFORMATION OVER A NETWORK.

18   THEY ARE NOT CLAIMING A PROPERTY INTEREST IN THE NETWORK.

19   THAT'S WHAT WE TALKED ABOUT BEFORE.  THEY ARE NOT COMPLAINING

20   ABOUT INTERFERENCE OR CONVERSION OF THEIR DATA FILES THAT ARE

21   BEING TRANSMITTED.  AGAIN, IT'S SOLELY A CLAIM ABOUT

22   INTERFERENCE WITH A CONTRACTURAL RIGHT.  THAT FALLS WITHIN WHAT

23   WE WOULD SAY IS A FAIRLY ESTABLISHED RULE WITH MANY

24   APPLICATIONS IN OTHER CASES IN WHICH THE ALLEGED PROPERTY

25   CONSISTED SOLELY OF CONTRACTURAL RIGHTS.

1        THE MONSTER ENERGY CASE, A CONTRACTURAL RIGHT TO ACCESS

2    CERTAIN DISCREET SHELVING WITHIN A STORE AND HAVE THEIR

3    PRODUCTS DISPLAYED ON THOSE SHELVES.

4            THE COURT:  SO LET ME ASK YOU A QUESTION.

5        SO LET'S ASSUME THAT, YOU KNOW, THAT WE ADOPT YOUR THESIS

6    OF WHAT, YOU KNOW, WHAT THE CONVERSION CLAIM IS ABOUT.  IN

7    OTHER WORDS, A MEANS OF ACCESS.  IF IT WERE THE SITUATION WHERE

8    THIS DATA TRANSMISSION, THAT IS THE SUBJECT OF THE COMPLAINT,

9    IN FACT RESULTED IN USERS EXPERIENCING PERFORMANCE DEGRADATION,

10   THE SPEED OF THEIR DATA TRANSMISSION WAS THROTTLED, OR THEY

11   EXCEEDED THEIR DATA ALLOWANCE AND HAD TO PAY AN OVERAGE CHARGE.

12   WOULD YOU STILL SAY THERE'S NO STANDING BECAUSE THERE'S NO

13   PERSONAL PROPERTY TO CONVERT, AND THE CLAIM IS A CONVERSION

14   CLAIM?

15           MR. SOMVICHIAN:  YES, YOUR HONOR.

16       SO WE HAVE TO THINK ABOUT THE ELEMENTS DISTINCTLY BECAUSE

17   THEY ARE DISTINCT ELEMENTS OF THE CLAIM.

18       AND THE FIRST QUESTION IS, IS THERE A PROPERTY INTEREST

19   HERE.  WE TALKED ABOUT THAT, IN OUR VIEW, A CONTRACTURAL RIGHT

20   TO RECEIVE A SERVICE IS NOT PROPERTY INTEREST.  THE MONSTER

21   ENERGY CASE, THE CONTRACTURAL RIGHT TO RECEIVE A CONTRACT TO

22   RECEIVE UNPAID WAGES, FOR EXAMPLE, IN THE BORIS CASE CALIFORNIA

23   SUPREME COURT, ALSO NOT A PROPERTY INTEREST.  A CONTRACTURAL

24   RIGHT TO IMPORT AND DISTRIBUTE BEER, ALSO NOT A PROPERTY

25   INTEREST SUBJECT TO CONVERSION.

1          THE COURT:  SO THE PLAINTIFF WOULD HAVE TO BRING AN

2     INTERFERENCE CLAIM, OR SOMETHING LIKE THAT.

3          MR. SOMVICHIAN:  YES.

4          AND THAT'S THE DISTINCTION BETWEEN CONVERSION THEORY AND

5     ANY OF THE OTHER NUMBER -- ANY OTHER BODIES OF LAW THAT COULD

6     POTENTIALLY HAVE BEEN INVOKED HERE.

7          AND THE FACT THAT THERE MAY HAVE BEEN INTERFERENCE IN SOME

8     SITUATIONS, NOT ALLEGED HERE, BUT YOU COULD CONCEIVE OF,

9     THEORETICALLY, A SITUATION WITH A PASSIVE DATA TRANSFER COULD

10    BE THE LAST LITTLE BIT OF TRANSMISSION THAT PUTS SOMEBODY OVER

11    THEIR LIMIT AND THEY HAVE TO PAY ANOTHER FIVE DOLLARS OR THEY

12    HIT A THRESHOLD AND THEIR DATA SPEEDS WERE DIMINISHED SO THEY

13    COULDN'T WATCH THAT YOUTUBE VIDEO AT THE HIGHEST QUALITY

14    SETTING.  IF THERE WERE SOME CONCRETE HARM, THAT GOES TO THE

15    SUBSTANTIAL INTERFERENCE ELEMENT.

16         BUT YOUR HONOR, YOU HAVE TO FIRST ASK THE QUESTION OF

17    WHETHER THERE'S A PROPERTY INTEREST IN THE FIRST PLACE.  AND

18    EVEN IF THERE IS, THEN YOU MOVE TO THE QUESTION OF WHETHER

19    THERE'S BEEN SUBSTANTIAL INTERFERENCE.

20         BUT TO THE FIRST POINT OF PROPERTY INTEREST, YOU HIT ON

21    ANOTHER IMPORTANT CONSIDERATION HERE, AND IT'S A CONCERN THAT'S

22    EXPRESSED THROUGHOUT THE CASE LAW, INCLUDING BY THE CALIFORNIA

23    SUPREME COURT IN THE MOORE CASE AND THE BORIS CASE AND OTHERS,

24    WHERE THE QUESTION THE COURTS ARE GRAPPLING WITH IS, SHOULD WE

25    EXPAND THE CONVERSION TORT TO ADDRESS A NEW NOVEL CIRCUMSTANCE

1      WHEN THERE'S ALREADY A SUITABLE BODY OF LAW FOR ADDRESSING THE

2      TYPE OF ISSUE?  AND THE COURTS HAVE SAID NO.

3          SO IN THE BORIS CASE, A CONTRACTURAL RIGHT TO RECEIVE

4      WAGES, THE COURT ACKNOWLEDGED THAT THERE WAS AN EXISTING

5      FRAMEWORK FOR ADDRESSING THOSE TYPES OF ISSUES.

6          IN OTHER CONTRACTURAL CIRCUMSTANCES, THERE ARE BODIES OF

7      LAW FOR DEALING WITH EITHER A DIRECT BREACH CLAIM OR AN

8      INTERFERENCE WITH CONTRACT CLAIM.  ANY OF THOSE COULD HAVE BEEN

9      MORE SUITABLY THE FOCUS OF THIS CLAIM, YOUR HONOR.

10          FOR EXAMPLE, THE PLAINTIFFS COMPLAIN THAT GOOGLE DIDN'T

11      ACCURATELY TELL CONSUMERS THE EXTENT OF THE TYPES OF DATA

12      TRANSFERS THAT WOULD OCCUR, WHEN THEY WOULD OCCUR AND WHETHER

13      THEY COULD IMPLICATE CELLULAR DATA.  THERE'S A FAMILIAR BODY OF

14      LAW TO DEAL WITH CONSUMER CLAIMS.  THEY CONCEIVE OF THAT ALSO

15      AS CONTRACTURAL IN NATURE.  THEY SAY THAT THOSE REPRESENTATIONS

16      ARE PART OF A CONTRACTURAL RELATIONSHIP.  THERE'S AN EXISTING

17      FRAMEWORK FOR DEALING WITH THOSE ISSUES, YOUR HONOR.

18              THE COURT:  OKAY.  YOU BETTER STOP NOW BEFORE YOU GET

19       AN AMENDED COMPLAINT.

20          SO LET ME -- THIS IS THE INTERESTING LINE OF ARGUMENT

21      THOUGH, BECAUSE I DID NOTE THAT TO YOUR POINT ABOUT THE CASE

22      LAW ON CONVERSION, THAT THERE IS -- YOU KNOW, THERE DOES APPEAR

23      TO BE SOME EXPANSION OF THE DOCTRINE.  I NOTED THAT IN THE

24      NINTH CIRCUIT'S RASMUSSEN CASE IN 1992, THIS TYPE OF

25      CERTIFICATE FROM THE FAA WAS DESCRIBED BY THE COURT AS AN

1    INTERESTING AND PECULIAR INTEREST AND ONE THAT HADN'T REALLY

2    BEEN SEEN BEFORE AND YET WAS SUFFICIENT, WAS DESCRIBED AS

3    SOMETHING THAT HAS VALUE ONLY BECAUSE IT HELPS SECURE A

4    GOVERNMENT PRIVILEGE TO DO SOMETHING THAT WOULD OTHERWISE BE

5    FORBIDDEN.

6        I MEAN, THESE ARE THE KINDS OF THINGS THAT AREN'T SORT OF

7    TYPICAL CONVERSION-TYPE CASES, AT LEAST HISTORICALLY TYPICAL.

8    AND THE WELCO CASE ALSO, I THINK IS PARTICULARLY CHALLENGING

9    FOR GOOGLE, WHERE THE COURT FOUND THAT THE PLAINTIFF HAD A

10    PROPERTY RIGHT IN ITS CREDIT CARD ACCOUNT, SPECIFICALLY THE

11    CREDIT BALANCE.

12        YOU COULD ARGUE THAT'S VERY ANALOGOUS TO THE SITUATION

13    HERE.  I DON'T THINK IT WAS BASED, AS YOU DESCRIBE IT, SIMPLY

14    ON THE IDEA THAT THERE'S MONEY AND MONEY CAN BE SUBJECT TO

15    CONVERSION, IT WAS THE CREDIT BALANCE, AT LEAST AS THE

16    CALIFORNIA COURT DESCRIBED IT.

17        SO I THINK THOSE CASES ARE PUTTING PRESSURE ON THE

18    CONVENTIONAL MOTION OF WHAT CONVERSION CAN EXTEND TO.

19        MR. SOMVICHIAN:  YOUR HONOR, YES, THE CONVERSION

20    DOCTRINE HAS EVOLVED ALONG WITH EVOLVING TECHNOLOGY AND

21    CIRCUMSTANCES AND BUSINESS PRACTICES AND SO FORTH.  BUT NONE OF

22    THOSE CASES HAS EXTENDED THE CONVERSION THEORY INTO A SITUATION

23    WHERE THE ALLEGED PROPERTY INTEREST IS SOLELY A CREATION OF A

24    CONTRACT AND WHERE THERE'S NO SUBSTANTIAL INTERFERENCE WITH THE

25    PLAINTIFF'S ABILITY TO RECEIVE THE BENEFITS OF THAT CONTRACT.

1    IN THE RASMUSSEN CASE, THE FAA SUPPLEMENTAL TYPE

2    CERTIFICATE, THAT WAS A BUNDLE OF RIGHTS CREATED BY OPERATION

3    OF LAW UNDER FAA REGULATIONS.  AND TO THE POINT OF OUR

4    DISCUSSION EARLIER ABOUT OTHER SUITABLE BODIES OF LAW THAT CAN

5    PROVIDE AN ENFORCEMENT MECHANISM, THE NINTH CIRCUIT, IN THAT

6    CASE, WENT OUT OF ITS WAY TO NOTE THAT THERE WAS A PECULIAR

7    SITUATION WHERE THE FAA REGS DOESN'T ALLOW FOR ENFORCEMENT OF

8    THIS TYPE OF SITUATION WHERE THE DEFENDANT ACTUALLY JUST STOLE

9    THE SUPPLEMENTAL TYPE CERTIFICATE INFORMATION AND USED IT FOR

10   ITS OWN BENEFIT TO DO AN END RUNAROUND WHAT THE PARTIES WERE

11   NEGOTIATING, WHICH WAS A LICENSE TO USE IT.

12    SO NUMBER ONE, THE TYPE OF PROPERTY INTEREST AT ISSUE

13   THERE WAS DISTINCT FROM WHAT WE HAVE HERE, AND THE INTERFERENCE

14   AND RESULTING HARM IN THAT CASE WAS ALSO VERY CLEAR.  WE HAVE

15   NO INTERFERENCE HERE, WE HAVE NO CONCRETE HARM HERE.

16    IN THE WELCO CASE, AGAIN, THE CIRCUMSTANCE THERE INVOLVED

17   THEFT OF CREDIT CARD INFORMATION THAT LEAD TO CONCRETE HARM

18   THAT THE PLAINTIFF HAD A CREDIT CARD BALANCE THAT WAS RUN UP BY

19   A DEFENDANT, BASED ON ITS ABILITY TO USE THE CREDIT CARD

20   INFORMATION THAT IT HAD STOLEN.

21    SO VERY SIMILAR, VERY ANALOGOUS TO A SITUATION INVOLVING

22   THEFT OF MONEY FOR ALL INTENTS AND PURPOSES.

23    BUT NEITHER ONE OF THOSE SITUATIONS FOLLOWS THE

24   CIRCUMSTANCES HERE OF A PROPERTY INTEREST ARISING SOLELY FROM

25   CONTRACT AND WHERE THERE HAS BEEN NO INTERFERENCE WITH THE

1    PLAINTIFF'S ABILITY TO RECEIVE AND ENJOY ALL OF THE BENEFITS OF

2    THE CONTRACT THAT THEY HAVE THE WITH ANOTHER PARTY.

3             THE COURT:  ALL RIGHT.  THAT'S HELPFUL.

4         LET ME ASK YOU ONE OTHER QUESTION BEFORE I LET YOU TELL ME

5     ANY OTHER ARGUMENTS THAT YOU WOULD LIKE TO TELL ME IN THIS

6     CASE.

7         SO THE SUPREME COURT HAS GRANTED CERTIORARI IN RAMIREZ V.

8     TRANSUNION ON THE QUESTION OF ARTICLE III STANDING BASED ON THE

9     INCORRECT CREDIT REPORTING IDENTIFYING PEOPLE AS BEING ON A

10    TERRORIST WATCH LIST WHEN THEY ARE NOT.  AND I WAS JUST

11    WONDERING WHETHER THAT CASE IS LIKELY TO HAVE IMPLICATIONS FOR

12    THIS CASE ON THE ARTICLE III STANDING POINT.

13         AND, YOU KNOW, I HEARD YOUR ARGUMENT THAT YOU DON'T NEED

14    IT, I CAN SIMPLY FIND THERE'S NO PROPERTY RIGHT, AND THEN IT

15    DOESN'T MATTER WHETHER THE NATURE OF THE INJURY IS NOT REALLY

16    AT ISSUE HERE.  BUT I WAS WONDERING ABOUT THAT, AND I DON'T

17    KNOW IF YOU HAVE AN ANSWER READY FOR THAT, BUT I WAS CURIOUS AS

18    TO WHETHER THAT STANDING QUESTION, WHICH IS A DIFFERENT

19    STANDING QUESTION OR DIFFERENT FACTS MIGHT NEVERTHELESS HAVE

20    IMPLICATIONS FOR WHAT I NEED TO DECIDE.

21             MR. SOMVICHIAN:  YEAH.

22         SO YOUR HONOR, AS I UNDERSTAND THE ISSUE BEFORE THE

23     SUPREME COURT, IT'S WHETHER THE PRESENCE OR POTENTIAL PRESENCE

24     OF ABSENT CLASS MEMBERS WHO LACK ARTICLE III STANDING CAN

25     UNDERMINE THE CERTIFICATION OF THE CLASS AS A WHOLE.

1          THE COURT:  WELL, THAT'S ONE OF THEM.  BUT IT'S

2    WHETHER THE PEOPLE WHO ARE IN THE DATABASE, AND IF THE REPORT

3    WAS ISSUED, THEY WOULD BE REPORTED AS BEING ON THE TERRORIST

4    WATCH LIST WHEN THEY ARE REALLY NOT, IF THEY SUFFERED A

5    CONCRETE INJURY OR NOT.

6          THE CLASS REP HAD A CONCRETE INJURY POTENTIALLY, YES, BUT

7    THESE OTHER PEOPLE WHO, THEIR INJURY HADN'T HAPPENED YET, NO

8    CONCRETE IMPACT ON THEIR CREDIT REPORTING OR ANYTHING LIKE

9    THAT.

10          MR. SOMVICHIAN:  YEAH.

11          SO YOUR HONOR, I DON'T SEE A DIRECT IMPACT FROM THE

12    RAMIREZ CASE.

13          AND TO BE CLEAR, OUR VIEW OF HOW THE SUBSTANTIVE ELEMENTS

14    OF A CONVERSION THEORY INTERACT WITH THE ARTICLE III STANDING

15    ISSUE, WE DON'T SEE THE ARTICLE III STANDING REQUIREMENT AS

16    IMPOSING A SEPARATE AND ADDITIONAL REQUIREMENT IF THE

17    PLAINTIFFS OR ABSENT CLASS MEMBERS CAN ESTABLISH, AS THEY HAVE

18    TO, ALL OF THE ELEMENTS OF A CONVERSION TORT UNDER STATE LAW.

19          SO IF THEY CAN ESTABLISH A PROPERTY INTEREST, AND A

20    SUBSTANTIAL INTERFERENCE WITH THAT PROPERTY INTEREST, WHICH

21    AGAIN, JUST TO NOTE SOME OF THE CONTOURS OF THAT, YOUR HONOR,

22    THAT CAN'T CONSIST MERELY OF USE OF THE PROPERTY, OR

23    INTERMEDDLING IS A PHRASE THAT'S USED WITH THE PROPERTY, BUT AN

24    ACTUAL SUBSTANTIAL INTERFERENCE WITH THE OWNERSHIP AND

25    POSSESSION OF PROPERTY.

1        IF THE PLAINTIFFS CAN ESTABLISH THOSE TYPES OF CONCRETE

2   HARMS, THAT WOULD ALSO SATISFY ARTICLE III CONCRETENESS

3   REQUIREMENT, IN OUR VIEW.

4        THE ONLY CIRCUMSTANCE IN WHICH THERE COULD BE A

5   DISTINCTION BETWEEN THE CONVERSION ELEMENTS AND THE ARTICLE III

6   STANDING, MIGHT BE UNDER THE PLAINTIFF'S CONCEPT OF SUBSTANTIAL

7   INTERFERENCE.

8        SO IF YOU WERE TO FIND THAT, AS A MATTER OF STATE LAW,

9   THERE CAN BE SOME ABSTRACT TYPE INTERFERENCE, AND IT DOESN'T

10  NEED TO BE ACTUAL, DOESN'T NEED TO BE SUBSTANTIAL OR CAN BE

11  BASED ON SOME ABSTRACT INTANGIBLE NOTION, THEN ARTICLE III

12  WOULD STILL REQUIRE THAT AS A MATTER OF CONSTITUTIONAL

13  REQUIREMENTS.

14       BUT AS WE ARE CONCEIVING IT, YOUR HONOR, IN ORDER TO STATE

15  A CLAIM, THEY HAVE TO ALLEGE SUBSTANTIAL INTERFERENCE, WHICH

16  ESSENTIALLY WOULD ALSO SATISFY THE ARTICLE III STANDING OF A

17  REQUIREMENT OF A CONCRETE INJURY.  SO I DON'T SEE A DISTINCTION

18  HERE THAT WOULD IMPACT THE CASE.

19            THE COURT:  SO IF I DID FIND THAT THE CELLULAR DATA

20   ALLOWANCE WAS PERSONAL PROPERTY, FOR PURPOSES OF CONVERSION, IF

21   I MADE THAT FINDING THAT IT WAS IN THE NATURE OF PERSONAL

22   PROPERTY, AND THEN WE TURN TO THE QUESTION OF, HAS THERE BEEN

23   SUBSTANTIAL INTERFERENCE WITH THAT PROPERTY RIGHT, THEN DOES

24   THE AMOUNT OF DATA THAT'S TRANSMITTED, ALLEGEDLY WITHOUT

25   CONSENT, OR THE PURPOSE FOR WHICH THE DATA IS TRANSMITTED, DOES

1    THAT THEN MATTER?

2          MR. SOMVICHIAN:  AGAIN, I DON'T SEE THE PURPOSE OF

3    THE DATA TRANSMISSION DRIVING THE ANALYSIS OF WHETHER THERE'S A

4    SUBSTANTIAL INTERFERENCE, YOUR HONOR.

5          THE SUBSTANTIAL INTERFERENCE QUESTION, AND IT TIES BACK TO

6    HOW THE PROPERTY INTEREST IS CONCEIVED IN THE FIRST PLACE.

7    ONCE YOU DEFINE A PROPERTY INTEREST, OR IF YOU'VE FOUND A

8    PROPERTY INTEREST, THE TYPES OF IMPACTS THAT COULD COUNT AS A

9    SUBSTANTIAL INTERFERENCE HAVE TO FLOW FROM THAT.

10          AND LET ME MAKE MYSELF MORE CLEAR ON THAT.  IT WOULD GO

11    BACK TO PARAGRAPH 24, IF YOU FIND THAT THE CONTRACTURAL RIGHTS

12    HERE AREN'T JUST CONTRACTURAL RIGHTS FALLING OUTSIDE OF THE

13    CONVERSION TORT, BUT CAN BE A FORM OF PERSONAL PROPERTY, AND

14    WHAT THAT PROPERTY INTEREST WOULD BE, WOULD BE "THE ABILITY TO

15    SEND AND RECEIVE INFORMATION OVER THE INTERNET WITHOUT A WIFI

16    CONNECTION."

17          SO THEN THE QUESTION WITH RESPECT TO SUBSTANTIAL

18    INTERFERENCE, YOUR HONOR, IS WAS THERE AN INTERFERENCE WITH THE

19    ABILITY TO SEND AND RECEIVE INFORMATION OVER THE INTERNET.

20          AND THERE HAS BEEN NONE.  NONE ALLEGED IN THE COMPLAINT.

21    WHATEVER AMOUNT OF DATA WAS TRANSMITTED THROUGH THIS PASSIVE

22    MEANS THAT THE PLAINTIFFS ARE COMPLAINING ABOUT, IT DID NOT

23    AFFECT THEIR ABILITY TO SEND AND RECEIVE INFORMATION OVER THE

24    INTERNET IN ANY WAY THEY WANTED TO UNDER THEIR PARTICULAR DATA

25    PLANS, OR AT LEAST IT'S NOT ALLEGED IN THE COMPLAINT.

1          THE COURT:  I THINK WHAT THE PLAINTIFFS MIGHT SAY,

2     AND I WILL LET THEM SAY IT, IS THAT WHAT'S ACTUALLY HAPPENING

3     IN THAT SITUATION IS THAT GOOGLE IS FREELOADING ON THE VALUE

4     THAT'S BEEN PAID FOR BY THE PLAINTIFFS FOR THAT PROPERTY RIGHT.

5          SO THE FREELOADING IS THE HARM.  THE UNJUST ENRICHMENT

6     FROM THE FREELOADING IS HARM THAT'S BEEN EXPERIENCED.  SO IT

7     DOESN'T HAVE TO BE THE KIND OF DISRUPTION OR INTERFERENCE THAT

8     CAUSES THE USER OF THE ANDROID DEVICE TO SUFFER SOME

9     DEGRADATION IN THE SERVICE THAT THEY EXPERIENCE, BUT RATHER IT

10    WOULD BE SUFFICIENT FOR GOOGLE TO UNJUSTLY BENEFIT BY

11    FREELOADING ON THE SERVICE THAT HAS BEEN PAID FOR BY THE USER.

12         SO I JUST WANT TO MAKE SURE I UNDERSTAND YOUR POSITION.

13    IF THAT'S THE ARGUMENT, IS SUCH -- IS SUCH FREELOADING NOT

14    SUFFICIENT TO INTERFERE WITH THE PROPERTY RIGHT?

15          MR. SOMVICHIAN:  NOT IN THE CONTEXT OF A CONVERSION

16    CLAIM, YOUR HONOR, BECAUSE THE CONVERSION TORT EXISTS TO

17    PROTECT INTEREST IN PROPERTY, NOT TO PREVENT OTHER ACTIVITIES

18    THAT MIGHT BENEFIT A DEFENDANT IN SOME WAY.

19         SUBSTANTIAL INTERFERENCE IS A -- HAS TO BE A SUBSTANTIAL

20    INTERFERENCE WITH THE RIGHTS IN THE PROPERTY.  THAT'S WHY I TIE

21    IT BACK TO HOW THEY CONCEIVED OF THE PROPERTY INTEREST, WHICH

22    IS THE ABILITY TO SEND AND RECEIVE DATA.  AND SO THAT IS THE

23    RELEVANT QUESTION, NOT WHETHER THERE WERE SOME ADDITIONAL

24    BENEFITS TO THE DEFENDANT FROM DOING SO.

25         THAT MIGHT BE ADDRESSED IN OTHER LEGAL FRAMEWORKS, BUT NOT

1    UNDER A CONVERSION THEORY WHERE THE PLAINTIFFS HAVE ATTEMPTED

2    TO SHOEHORN THIS CASE, BUT BY DOING THAT, THE THRUST HAS TO BE

3    ON AN ALLEGED IMPACT TO THEIR PROPERTY INTEREST, NOT SOME OTHER

4    ALLEGED HARM OR REMEDY.

5            THE COURT:  RIGHT.

6        BUT WHAT ABOUT THEIR QUANTUM MERUIT CLAIM, AND DOES NOT

7    THE IN RE FACEBOOK LITIGATION, THE NINTH CIRCUIT'S DECISION,

8    GIVE YOU SOME PROBLEM THERE?

9            MR. SOMVICHIAN:  YEAH.  SO YOUR HONOR, I SHOULD HAVE

10   MADE THIS CLEAR AT THE OUTSET.  MY COLLEAGUE, KELSEY SPECTOR,

11   IS GOING TO ADDRESS THE QUANTUM MERUIT CLAIM AND RELATED

12   ISSUES, SO I WILL LET HER FIELD THAT ONE.

13           THE COURT:  OKAY.  SO I WILL SWITCH GEARS THEN.

14       SO I AM INTERESTED IN GOOGLE'S VIEW ON THE IN RE FACEBOOK

15   LITIGATION MATTER, AND IN PARTICULAR, THE STATEMENT IN THAT

16   CASE THAT THERE IS A BASIS FOR STANDING WHERE THE CLAIM IS

17   ENTITLEMENT TO -- THERE IS A CLAIM THAT THERE HAS BEEN UNJUSTLY

18   EARNED PROFITS, AND THE REMEDY IS TO EITHER DISGORGE THOSE

19   PROFITS AND SOMEHOW COMPENSATE THE PLAINTIFFS FOR THAT UNJUST

20   ENRICHMENT, AND IS THAT NOT VERY SIMILAR TO THE QUANTUM MERUIT

21   CLAIM IN THIS CASE?

22           [!EZ SPEAKER 04]:  YOUR HONOR, I HOPE --

23           THE COURT:  I CAN HEAR YOU.  GO AHEAD.  NO, NOW YOU

24   ARE ON MUTE.

25           [!EZ SPEAKER 04]:  WAS THERE AN ECHO AT ALL?

1          THE COURT:  I DON'T HEAR AN ECHO.

2          [!EZ SPEAKER 04]:  OKAY.  I HEAR AN ECHO, BUT THAT'S

3     OKAY.

4       I RECOGNIZE THAT IN RE FACEBOOK TRACKING LITIGATION

5     ADDRESSES LOST -- OR DISGORGEMENT OF PROFITS.

6       HOLD ON ONE SECOND, THIS ECHO IS QUITE BAD.  LET ME

7     CONNECT TO THE COMPUTER.

8          THE COURT:  YEAH, THAT MIGHT BE EASIER.

9       OKAY.  NOW I CAN'T HEAR YOU, SO YOU MIGHT NEED TO SWITCH

10    YOUR AUDIO SYSTEM.

11         [!EZ SPEAKER 04]:  CAN YOU HEAR ME NOW?

12         THE COURT:  YES, VERY GOOD.

13         [!EZ SPEAKER 04]:  PERFECT.  SORRY, I THINK I WAS

14    CONNECTED TO BOTH.

15         THE COURT:  YES, THAT'S OKAY.

16         [!EZ SPEAKER 04]:  SO I RECOGNIZE THAT FACEBOOK

17    INTERNET TRACKING ADDRESSES DISGORGEMENT OF LOST PROFITS, BUT

18    THAT'S NOT ACTUALLY WHAT THE PLAINTIFFS ARE SEEKING IN THIS

19    CASE.

20       IF YOU LOOK AT THEIR COMPLAINT AT PARAGRAPHS 74 AND 78,

21    THEY ARE ACTUALLY SEEKING THE REASONABLE VALUE OF THE CELLULAR

22    DATA WHICH IS DIFFERENT THAN A DISGORGEMENT OF LOST PROFITS.

23       AND FOR THAT REASON, WE WOULD NOT THINK THAT FACEBOOK

24    INTERNET TRACKING IS ON ALL FOURS WITH THIS CASE.  AND AGAIN,

25    WE DO NOT BELIEVE THAT CASE ESTABLISHES A RULE THAT AN

1    ALLEGATION OF ABSTRACT INTERFERENCE WITH THE COMMON LAW RIGHT,

2    IS SUFFICIENT TO ESTABLISH --

3                THE COURT:  BUT I DON'T THINK THAT'S REALLY A FAIR

4    READING OF IN RE FACEBOOK LITIGATION, BECAUSE WHAT THE

5    NINTH CIRCUIT HELD IS THAT CALIFORNIA LAW WILL RECOGNIZE THAT

6    YOU CAN HAVE A CLAIM FOR PROFITS THAT ARE UNJUSTLY EARNED BY

7    SOMEBODY ELSE, AND THAT'S SUFFICIENT TO ESTABLISH STANDING.

8        SO IN THAT CASE, THE PLAINTIFFS SAID THAT THERE WERE

9    PROFITS EARNED BY FACEBOOK FROM FACEBOOK'S USE OF THEIR

10   BROWSING HISTORIES.  AND IT WAS UNJUST FOR FACEBOOK TO RETAIN

11   THOSE PROFITS USED FROM THERE, IN THAT CASE, PERSONAL

12   INFORMATION, THEIR BROWSING HISTORY.

13       SO EVEN IF IT'S NOT FRAMED PRECISELY, THE PLAINTIFFS, IN

14   THE SAME WAY AS IN RE FACEBOOK LITIGATION, THE PLAINTIFFS IN

15   THIS CASE DO ACTUALLY ASK FOR THE FAIR MARKET VALUE OF THE

16   CELLULAR DATA THAT GOOGLE USED.

17       AND YOU CAN QUIBBLE ABOUT, WELL, IN AN UNLIMITED DATA

18   PLAN, WOULD THERE BE FAIR MARKET VALUE, BUT I THINK THOSE ARE

19   ANCILLARY ISSUES.  THE CONCEPT IS YOU FREERIDE ON MY DATA

20   PURCHASE AND YOU SHOULDN'T GET TO, YOU BENEFITTED UNJUSTLY FROM

21   THAT AND THE USER SHOULD BE COMPENSATED FROM THAT FREERIDING.

22                [!EZ SPEAKER 04]:  I WILL ALSO LET MR. SOMVICHIAN

23   JUMP IN IF HE WANTS TO, BECAUSE I KNOW HE'S VERSED ON STANDING.

24       BUT WITH THIS, AGAIN, WE JUST -- WE DO NOT THINK THAT

25   FACEBOOK INTERNET TRACKING ESTABLISHES A RULE THAT ANY KIND OF

1      ABSTRACT INTERFERENCE WITH A COMMON LAW RIGHT IS SUFFICIENT.

2          HERE, PLAINTIFF'S QUANTUM MERUIT CLAIM IS ENTIRELY

3      DERIVATIVE OF THEIR CONVERSION CLAIM.  AND WITHOUT A PROPERTY

4      INTEREST OR INTERFERENCE WITH THAT RIGHT, THE QUANTUM MERUIT

5      CLAIM FAILS AS WELL.

6          THE COURT:  WELL, I MEAN, IT'S NOT NECESSARILY,

7      BECAUSE THIS QUANTUM MERUIT CLAIM, YOU COULD SAY, IS ACTUALLY

8      NOT AGNOSTIC AS TO THE PURPOSE.

9          SO PARAGRAPH 69 SAID GOOGLE HAS USED PLAINTIFF'S CELLULAR

10     DATA ALLOWANCES TO COLLECT AND TRANSMIT INFORMATION THROUGH

11     PASSIVE TRANSFERS TO DEVELOP AND SUPPORT ITS ADVERTISING

12     BUSINESS AND OTHER VENTURES.

13         AND SO IT'S CLAIMING THAT THERE'S A BENEFIT TO GOOGLE FROM

14     THE USE OF THIS PASSIVE DATA TRANSFER; WHEREAS AS, AS

15     MR. SOMVICHIAN EXPLAINED, AT LEAST IN HIS VIEW, THAT'S NOT

16     ESSENTIAL TO THE CONVERSION CLAIM, THAT THERE BE -- THAT THE

17     PURPOSE MATTERS.

18         SO HERE, I THINK IT IS ESSENTIAL THAT THERE IS SOME

19     BENEFIT TO GOOGLE, THEY ARE DERIVES SOME BENEFIT FOR WHICH THEY

20     ARE NOT PAYING.

21         [!EZ SPEAKER 04]:  WELL, TO ADDRESS THE QUANTUM

22     MERUIT COMMON COUNT, EVEN IF YOU WERE PERSUADED IT COULD

23     SURVIVE INDEPENDENTLY FROM THE CONVERSION CLAIM, THAT COMMON

24     COUNT WOULD STILL FAIL FOR TWO DIFFERENT REASONS.

25         THE FIRST POINT IS COMMON COUNT IS NOT A SPECIFIC CAUSE OF

1    ACTION, IT'S A GENERALIZED FORM OF PLEADING INDEBTEDNESS.  AND

2    SO THEREFORE WHILE IT CAN SEEK A DIFFERENT FORM OF RECOVERY, IT

3    HAS TO BE SUPPORTED BY THE FACTS ALLEGED IN SUPPORT OF THE

4    SPECIFICALLY PLED CAUSES OF ACTION.

5        AND TO MAINTAIN A COMMON COUNT FOR QUANTUM MERUIT, THE

6    PARTIES HAVE TO ESTABLISH THAT THERE WAS A MUTUAL UNDERSTANDING

7    THAT THE PLAINTIFF WOULD BE COMPENSATED FOR THE SERVICES THAT

8    WERE RENDERED, AND TO DO THAT, THAT THEY HAVE TO SHOW THAT THE

9    SERVICES WERE NOT RENDERED FORTUITOUSLY.

10        HERE, THE COMPLAINT DOES NOT ALLEGE THAT PLAINTIFFS OR

11    GOOGLE UNDERSTOOD THAT PLAINTIFFS WOULD BE COMPENSATED FOR

12    THEIR CELLULAR DATA.  IN FACT, THE COMPLAINT CONTRADICTS ANY

13    SUCH NOTION.  PLAINTIFFS HERE CONTEND THAT THEY HAD NO IDEA

14    THAT THESE DATA TRANSFERS WERE HAPPENING, AND THAT'S AT ODDS

15    WITH ANY CONTENTION THAT THEY EXPECTED COMPENSATION FOR THAT

16    DATA.

17        AND BECAUSE OF THAT, I THINK THAT WOULD ALSO ADDRESS THE

18    STANDING ISSUE HERE.  THEY CAN'T SAY THAT ANY DATA TRANSFERS

19    WERE WITHHELD BY -- OR GOOGLE'S UNJUSTLY PROFITING FROM THOSE.

20        AND THE SECOND POINT BY THE QUANTUM MERUIT -- COMMON COUNT

21    QUANTUM MERUIT WOULD FAIL, ADDRESSES THAT STANDING ISSUE AS

22    WELL.

23        SO AS THE NINTH CIRCUIT HAS RECOGNIZED, QUANTUM MERUIT

24    ESSENTIALLY OPERATES TO SUPPLY MISSING CONTRACT TERMS, BUT IT

25    CANNOT SUPPLY MISSING CONTRACT TERMS WHERE THE PARTIES HAVE AN

1    EXPRESS AGREEMENT WITH PROVISIONS ADDRESSING THE SAME SUBJECT

2    MATTER.

3         AND HERE, AS OUR BRIEFING DETAILS, THERE ARE A LOT OF

4    PROVISIONS, AND A NUMBER OF AGREEMENTS ADDRESSING BOTH THESE

5    PASSIVE DATA TRANSFERS, AND THAT MAKE CLEAR, PLAINTIFFS ARE

6    SOLELY RESPONSIBILE FOR DATA FEES INCURRED IN CONNECTION WITH

7    THEIR USE IN VIEWING OF CONTENT AND GOOGLE PLAY, WHICH IS ONE

8    OF THE MAIN INFRASTRUCTURES OF AN ANDROID DEVICE.  AND

9    SPECIFICALLY, THAT'S THE GOOGLE PLAY TERMS OF SERVICE, WHICH IS

10   EXHIBIT B TO MY DECLARATION, AT PAGE 2.

11        AND BECAUSE THOSE CONTRACTS ADDRESS BOTH THESE DATA

12   TRANSFERS AND THE SUBJECT MATTER OF WHO IS RESPONSIBLE FOR

13   CELLULAR DATA FEES, PLAINTIFFS CANNOT NOW CLAIM THAT IT'S

14   UNJUST FOR GOOGLE TO RETAIN THE BENEFITS OF THE DATA TRANSFERS,

15   WHICH WOULD BAR THEIR COMMON COUNT INDEPENDENTLY FROM THE

16   CONVERSION CLAIM, BUT WOULD ALSO ADDRESS YOUR QUESTION ON THE

17   ISSUE OF STANDING.

18        THE COURT:  AND DOES THAT DEPEND ON ME FINDING, AT

19   THIS STAGE, THAT THE VARIOUS TERMS OF SERVICE OR AGREEMENTS

20   THAT GOOGLE SAYS PROVIDE CONSENT ARE NOT AMBIGUOUS AND ARE ONLY

21   SUSCEPTIBLE TO THE INTERPRETATION THAT GOOGLE ADVOCATES?

22        [!EZ SPEAKER 04]:  I DON'T THINK YOU WOULD HAVE TO

23   FIND THAT TO HOLD THAT THE CONTRACT PROVISIONS STILL BAR THE

24   QUANTUM MERUIT THEORY, AND THAT'S BECAUSE THE QUANTUM MERUIT

25   DOCTRINE IS CLEAR, YOU CANNOT SUPPLY MISSING SUBJECT -- OR, YOU

1    KNOW, ALLEGED MISSING PROVISIONS ON A SUBJECT MATTER THAT'S

2    ALREADY ADDRESSED IN THE EXPLICIT PROVISIONS.

3        AND HERE, THE SUBJECT MATTER IS ADDRESSED IN THE

4    PROVISIONS I JUST POINTED OUT.  AND BECAUSE OF THAT, THE

5    COURT -- PLAINTIFFS CANNOT SEEK TO AMEND THEIR COMPLAINT

6    THROUGH A QUANTUM MERUIT THEORY.

7            THE COURT:  OKAY.  THANK YOU.  THAT'S HELPFUL.

8        ALL RIGHT.  I WILL LET GOOGLE, WHICHEVER ONE OF YOU WANTS

9    TO, RAISE ANY OTHER MATTERS OR ARGUE ANY OTHER POINTS THAT YOU

10   FEEL YOU WOULD LIKE TO ADDRESS AT THIS TIME.

11           MR. SOMVICHIAN:  JUST ONE QUICK POINT ON STANDING,

12   YOUR HONOR.

13       IN THE FACEBOOK INTERNET TRACKING CASE, IT'S ALSO WORTH

14   POINTING OUT A FOOTNOTE IN THE NINTH CIRCUIT'S DECISION,

15   FOOTNOTE FOUR WHERE THE COURT GOES OUT OF ITS WAY TO NOTE THAT

16   THE ELEMENTS OF THE TRESPASS TO CHATTELS THEORY IN THAT CASE,

17   WHICH THE CLOSEST THEORY TO A CONVERSION THEORY, IT WENT ON IN

18   THE FOOTNOTE TO CLARIFY THAT THE PLAINTIFFS MUST DEMONSTRATE,

19   "SOME ACTUAL INJURY MAY HAVE OCCURRED, AND THAT THE OWNER OF

20   THE PROPERTY AT ISSUE MAY ONLY RECOVER THE ACTUAL DAMAGES

21   SUFFERED AS A RESULT OF THE DEFENDANT'S ACTIONS."

22       AND SO THE POSTURE IN WHICH THE COURT WAS CONSIDERING THE

23   STANDING ISSUE FOR THAT SET OF COMMON LAW ACTIONS, WAS A

24   CIRCUMSTANCE WHERE THE COURT BELOW HAD DISMISSED THOSE CLAIMS

25   ONLY ON STANDING GROUNDS, I BELIEVE.

1          SO THERE WAS AN ASSUMPTION, ESSENTIALLY, THAT THE ELEMENTS

2     OF THE CLAIM COULD BE ESTABLISHED, OR WOULD AT SOME POINT IN

3     THE LITIGATION, THAT PLAINTIFF WOULD BE REQUIRED TO DEMONSTRATE

4     ACTUAL INJURY AND ACTUAL DAMAGES.

5          SO YOU CAN'T READ THE FACEBOOK CASE WITH RESPECT TO A

6     CONVERSION THEORY AS SUPPORTING THE NOTION THAT THERE CAN BE

7     ARTICLE III STANDING BASED JUST SOLELY ON A DEMAND TO DISGORGE

8     PROFITS, OR SOME UNJUST ENRICHMENT THEORY, WITHOUT A SHOWING OF

9     ACTUAL DAMAGES TO THE PLAINTIFF OR ACTUAL INJURY TO THE

10    PLAINTIFF, BECAUSE THE COURT ASSUMED THAT THAT WAS A NECESSARY

11    ELEMENT OF THE CLAIM THAT WOULD BE ESTABLISHED ON THE MERITS.

12          THE COURT:  YOU ARE SAYING THAT THE DISCUSSION THAT

13    PRECEDES THE DISCUSSION OF UNJUST ENRICHMENT THAT I WAS

14    SPEAKING WITH MS. SPECTOR ABOUT, DEPENDS ON SOME ADDITIONAL

15    FINDING THAT THE PLAINTIFFS SUFFERED ACTUAL DAMAGES IN ADDITION

16    TO THE UNJUST ENRICHMENT?  AM I UNDERSTANDING YOUR POINT?

17          MR. SOMVICHIAN:  THE COURT ASSUMED THAT IN ORDER FOR

18    THE PLAINTIFF TO MAKE OUT ITS COMMON LAW CLAIMS, AND

19    SPECIFICALLY THE TRESPASS CLAIM, THAT IT WOULD HAVE TO

20    DEMONSTRATE SOME ACTUAL INJURY.  THAT'S QUOTED IN FOOTNOTE

21    FOUR.  SO THAT WAS AN ASSUMPTION IN THE COURT'S ANALYSIS THAT

22    THAT WOULD HAVE TO BE PROVEN AT SOME POINT IN THE CASE.

23          THE COURT:  YES.  BUT MAYBE I'M MISREADING THIS

24    DECISION.

25          BUT AFTER MAKING THAT POINT, THEY GO ON TO SAY THE UNJUST

1    ENRICHMENT IS SUFFICIENT.  THEY GO ON TO MAKE THAT ARGUMENT.

2    THEY DISAGREE WITH THE DISTRICT COURT'S VIEW THAT THEY HAD

3    FAILED TO DEMONSTRATE ECONOMIC INJURY SUFFICIENT TO SUPPORT

4    STANDING, AND GO ON TO DESCRIBE THE DISGORGEMENT OF UNJUSTLY

5    EARNED PROFITS.

6        MR. SOMVICHIAN:  YES, AS A REMEDY, YOUR HONOR, IF ALL

7    OF THE ELEMENTS OF THE CLAIM COULD BE PROVED.

8        AND SO THAT'S THE DISTINCTION I'M DRAWING, WHICH IS THE

9    COURT WAS NOT REPORTING TO ELIMINATE SOME OF THE STEPS ALONG

10   THE WAY TO ESTABLISHING AN ENTITLEMENT TO RECOVERY, IT WAS

11   SAYING THAT IF YOU CAN ESTABLISH THESE ELEMENTS, WHICH WOULD

12   INCLUDE ACTUAL INJURY, YOU CAN SEEK DISGORGEMENT OF PROFITS,

13   AND THE DISGORGEMENT OF PROFITS WOULD BE AN ECONOMIC HARM THAT

14   WOULD SATISFY ARTICLE III STANDING.  BUT IT WASN'T PURPORTING

15   TO ALLOW SOME SHORTCUTS ALONG THE WAY TO ELIMINATE SOME

16   REQUIRED ELEMENT OF THE CLAIM.

17       THE COURT:  OKAY.

18   I THINK I UNDERSTAND THAT.  IS THERE ANYTHING FURTHER FROM

19   GOOGLE?  AND I WILL LET YOU RESPOND TO ANYTHING THAT COMES UP

20   IN THE ARGUMENTS THAT PLAINTIFFS MAKE.

21       MR. SOMVICHIAN:  NOT AT THIS POINT, YOUR HONOR.

22       THE COURT:  OKAY.  THANK YOU.

23   ALL RIGHT.  SO I'M NOT SURE WHO WILL BE ARGUING ON BEHALF

24   OF THE PLAINTIFFS.

25       MR. CORTAZAR:  I WILL BE, YOUR HONOR.

```
 1              THE COURT:  ALL RIGHT.  THANK YOU.

 2         SO I WONDER IF YOU COULD START ALSO BY EXPLAINING TO ME

 3    YOUR VIEW, PLAINTIFF'S VIEW, ABOUT THE NATURE OF THE INJURY

 4    SUFFERED, AND WHAT I'M PARTICULARLY INTERESTED IN, FIRST OF

 5    ALL, THE QUESTION OF, DOES THE PURPOSE FOR WHICH THE DATA

 6    TRANSMISSION OCCURS, DOES IT MATTER?

 7              MR. CORTAZAR:  THE PURPOSE DOESN'T MATTER, BECAUSE

 8    WHETHER THE INJURY THAT'S SUFFERED IS THE USAGE OF THE BYTES OF

 9    CELLULAR DATA THAT THE PLAINTIFFS PURCHASED EVERY MONTH FROM

10    THEIR WIRELESS CARRIER.  SO THE INABILITY TO USE DATA THEY

11    PURCHASED, THAT, IN ITSELF, CONFIRMS THE INJURY AND DAMAGES.

12              THE COURT:  OKAY.  BUT WHEN YOU SAY IT IN THAT WAY,

13    THE INABILITY TO USE DATA THAT THEY PURCHASED, I DON'T READ THE

14    COMPLAINT AS MAKING ANY ALLEGATION THAT ANY PARTICULAR

15    PLAINTIFF WAS UNABLE TO USE DATA.

16              MR. CORTAZAR:  THAT'S CORRECT.  THEY WERE UNABLE TO

17    USE THE DATA THAT WAS APPROPRIATED BY GOOGLE.

18         SO FOR EXAMPLE, THERE'S A CASE, FARRINGTON, WHERE THE

19    PLAINTIFF OWNS A PLOT OF LAND THAT INCLUDES SOME GRAVEL.

20    THERE'S NO INDICATION THAT HE WOULD PLAN TO USE THE GRAVEL, BUT

21    THE APPROPRIATION OF THAT GRAVEL BY THE DEFENDANT, WAS ENOUGH

22    TO STATE A CLAIM.  I THINK IT'S IMPORTANT TO NOTE YOU DON'T

23    HAVE TO SHOW THAT YOU WERE GOING TO USE IT, IT'S THE

24    OPPORTUNITY LOST THAT IS, IN ITSELF, INJURY.  AND THAT'S

25    IMPORTANT, I THINK, IN TERMS OF PROPERTY RIGHTS.
```

 1                THE COURT:  SO YOU ARE SAYING THAT THE DATA ALLOWANCE

 2      IS LIKE GRAVEL?

 3                MR. CORTAZAR:  THE DATA ALLOWANCE IS LIKE GRAVEL.

 4          I MEAN, I THINK THAT IT'S IMPORTANT IF YOU WERE TALKING

 5      ABOUT WHAT THE ACTUAL PROPERTY IS, THAT WE MAKE SURE THAT

 6      ANALYSIS IS GROUNDED IN CALIFORNIA STATUTE AND IN THE

 7      NINTH CIRCUIT'S BINDING PRECEDENT IN RASMUSSEN.

 8          SO CALIFORNIA STATUTE DEFINES PROPERTY AS ANYTHING THAT IS

 9      CAPABLE OF OWNERSHIP.  AND IT FURTHER CLARIFIES THAT ANYTHING

10      CAN BE CAPABLE OF OWNERSHIP IF IT CAN BE APPROPRIATED.

11          NOW RASMUSSEN TAKES THAT STATUTE, IT QUOTES 654, AND IT

12      CREATES A DISTINCT THREE-PART TEST THAT ASKS FIRST, WHETHER

13      IT'S CAPABLE OF PRECISE DEFINITION.  AND I THINK IN THIS CASE

14      IT CLEARLY IS, IT'S A FLUCTUATION OF A RADIO WAVE THAT'S

15      MEASURED BY GOOGLE, IT'S MEASURED BY YOUR CARRIERS, AND IT'S

16      MEASURED BY INTERNATIONAL ASSOCIATIONS OF MEASUREMENT.

17          THE SECOND IS WHETHER IT'S CAPABLE OF EXCLUSIVE

18      POSSESSION.  AND AGAIN, I THINK THAT THIS IS A VERY CLEAR

19      APPLICATION IN THIS CASE.

20          SO IF YOU IMAGINE THAT YOU AND A FAMILY MEMBER ARE BOTH

21      WATCHING A VIDEO, AND YOU ARE USING YOUR CELLULAR DATA TO WATCH

22      THE VIDEO AT THE SAME TIME, WHEN YOU GO AND YOU LOOK AT YOUR

23      DATA TRACKER ON YOUR PHONE, OR IF YOU LOOK AT YOUR CELLULAR

24      BILL FOR THAT MONTH AND YOU FIND THE TIMESTAMP, YOU ARE GOING

25      TO HAVE TWO SEPARATE USES OF CELLULAR BYTES.  IT'S NOT GOING TO

```
1      BE SHARED, EVEN THOUGH THE SAME VIDEO WAS SENT TO PHONES ON THE

2      SAME PLAN, THEY ARE BOTH EXCLUSIVE TO THAT SPECIFIC USER AT

3      THAT SPECIFIC TIME.  AND THE FACT THAT IT CAN BE ALIENATED DOES

4      NOT CHANGE THAT, THAT YOU CAN SHARE IT.

5                  THE COURT:  RIGHT.  BUT CAN I ASK YOU A QUESTION?

6                  MR. CORTAZAR:  YES.

7                  THE COURT:  SO THAT ARGUMENT WAS MADE IN THE BRIEFING

8      AS WELL, THAT IT'S EXCLUSIVE, YOU OWN IT.  IS A USER'S DATA

9      ALLOWANCE TRANSFERRABLE?

10                 MR. CORTAZAR:  YES, I THINK, FACTUALLY, IT IS.

11                 THE COURT:  WHAT DO YOU MEAN FACTUALLY?  LIKE I SAID,

12     SELL MY DATA ALLOWANCE TO YOU?

13                 MR. CORTAZAR:  WELL, YOU COULD CREATE A HOT SPOT.

14                 THE COURT:  BUT THAT'S NOT THE SAME, THAT'S SHARING.

15         CAN I SELL IT?  CAN I SELL MY DATA ALLOWANCE THAT I GET

16     FROM VERIZON OR WHOEVER, CAN I SELL THAT TO YOU?

17                 MR. CORTAZAR:  NO, I DON'T BELIEVE THAT YOU CAN.

18                 THE COURT:  DOES THAT MATTER?

19                 MR. CORTAZAR:  NO, IT DOES NOT, BECAUSE IT DOES NOT

20     GO TO EXCLUSIVITY.  WHETHER OR NOT YOU CAN EXCLUSIVELY POSSESS,

21     NOT WHETHER OR NOT YOU CAN ALIENATE IT IN A SEPARATE WAY.

22                 THE COURT:  BUT ISN'T IT ONLY -- ISN'T THAT ARGUMENT

23     ONLY WORKING FOR YOU BECAUSE YOU'VE ASSUMED IT'S PROPERTY IN

24     THE FIRST PLACE?

25             IN OTHER WORDS, YOU COULD MAKE THE SAME ARGUMENT ABOUT
```

1    WHAT MR. SOMVICHIAN CALLS JUST A CONTRACT FOR SERVICE, A MEANS

2    OF ACCESS.  YOU COULD MAKE THE EXACT SAME ARGUMENT.  IT DOESN'T

3    NECESSARILY IMPLY PROPERTY, BECAUSE IT'S EXCLUSIVE TO YOU, YOU

4    COULD HAVE EXCLUSIVE CONTRACT RIGHTS, IN OTHER WORDS.

5         MR. CORTAZAR:  RIGHT.  BUT I THINK THAT THAT'S ALSO

6    WHY IT HAS TO BE PRECISELY DEFINED.

7         SO I THINK IT'S IMPORTANT TO LOOK AT THE THREE DIFFERENT

8    FACTORS THAT WORK TOGETHER.  SO THE FACT THAT IT'S PRECISELY

9    DEFINED AS SERVICE, A RIGHT TO A SERVICE CANNOT NECESSARILY BE

10   PRECISELY DEFINED.

11        THE COURT:  HOW IS IT PRECISELY DEFINED?

12        MR. CORTAZAR:  IT'S PRECISELY DEFINED AS A BYTE OF

13   DATA THAT'S ASSIGNED TO YOUR PHONE AND THAT GOES THROUGH YOUR

14   SIM CARD.

15        THE COURT:  OKAY.  I DON'T WANT TO DERAIL YOUR

16   ARGUMENT, BUT KIND OF I DO, BECAUSE ONE OF THE THINGS I FOUND

17   COMPELLING WAS IN GOOGLE'S REPLY.

18        AND THAT -- AND I WILL TELL YOU EXACTLY THE PLACE WHERE I

19   AM REFERRING TO SO YOU CAN HAVE IT, IT'S AT PAGE 5, AND

20   MR. SOMVICHIAN ALSO REFERRED TO THIS IN HIS ARGUMENT.  AND, YOU

21   KNOW, DISTINGUISHING BETWEEN THE MEANS OF TRANSMITTING THE

22   DATA, THE AMOUNT OF INFORMATION, THE QUANTUM OF IT AND HOW IT'S

23   MEASURED AND THE UNDERLYING INFORMATION THAT'S CARRIED, THAT

24   SEEMS A USEFUL CONCEPTUAL TOOL.

25        AND SO WHEN YOU SAY PRECISELY DEFINED, WHAT IS PRECISELY

1    DEFINED?  THE AMOUNT OF DATA YOU GET, THE BYTES ARE UNIQUE, IS

2    THAT WHAT YOU ARE SAYING?  IT'S LIKE A UNIQUE MOLECULE OF

3    WATER, A UNIQUE BYTE?  IS THAT THE KIND OF PRECISION THAT YOU

4    ARE DESCRIBING?

5              MR. CORTAZAR:  YES.

6         AND SPECIFICALLY, I THINK THAT IT'S IMPORTANT TO TAKE INTO

7    ACCOUNT SPECIFIC FACTS FROM OTHER CASES WHERE YOU TALK ABOUT

8    PRECISE DEFINITION, AND WHEN IT BECOMES APPROPRIATED TO A

9    SPECIFIC PERSON.

10        SO FOR EXAMPLE, YOU TALKED ABOUT MOLECULES OF WATER, OR

11   YOU CAN TALK ABOUT ELECTRONS FLOWING THROUGH A LINE.  THOSE ARE

12   PRECISELY DEFINED AS A MATTER OF PHYSICS.  BUT ALSO, IN TERMS

13   OF PROPERTY, THEY BECOME PRECISELY DEFINED AT THE MOMENT OF

14   ALLOCATION AND APPROPRIATION.

15        SO FOR EXAMPLE, IF YOU HAVE A CONVERSION CLAIM THAT GOES

16   TO ELECTRICITY, IT BECOMES THE PROPERTY OF THE OWNER WHO HAS A

17   CONTRACT WITH THE POWER COMPANY, THE MOMENT IT GOES THROUGH

18   THEIR METER AND IT'S ASSIGNED TO THEIR BILL.

19        THE SAME IS TRUE HERE.  ONCE THAT INFORMATION, THE

20   FLUCTUATION OF THE RADIO WAVE, FLOWS THROUGH THE SIM CARD, IT

21   BECOMES APPROPRIATED AND ASSIGNED TO THAT USER AND IT BECOMES

22   THEIR PROPERTY.

23        AND SO I THINK MR. SOMVICHIAN WAS SPEAKING ABOUT TRYING TO

24   DISTINGUISH BETWEEN ELECTRICITY AND THE WAVES, BUT I DON'T

25   THINK THAT'S A MEANINGFUL DISTINCTION HERE.

1       HE SAID THAT -- I THINK IF I UNDERSTOOD HIM CORRECTLY,

2   THAT THE WAVES HERE ARE CARRYING SOME OTHER PROPERTY.  BUT

3   THAT'S REALLY JUST TWO TYPES OF PROPERTY.  IT DOESN'T RUIN THE

4   FACT THAT THE CARRIER PROPERTY ALSO IS ABLE TO ATTACH ANOTHER

5   PROPERTY TO IT.  JUST LIKE, FOR EXAMPLE, THE ELECTRONS THAT ARE

6   TRANSMITTED OVER A LINE, THEY ARE CARRYING ENERGY.  THAT'S

7   ESSENTIALLY WHAT THEY ARE DOING.  BUT WE ARE NOT SAYING THAT

8   YOU ARE APPROPRIATING THE ENERGY THAT ALREADY EXISTS OR IS HARD

9   TO DEFINE OR WHAT HAVE YOU.  WHAT YOU ARE SAYING IS THAT YOU

10  ARE MEASURING THOSE ELECTRONS, THOSE KILOWATT HOURS.  AND THAT

11  IS ULTIMATELY WHAT'S BEING APPROPRIATED WHEN THIS HAPPENS.  IT

12  DOESN'T MATTER THAT IT'S ALSO CARRYING ENERGY.

13      SO HERE, THE FACT THAT YOU HAVE RADIO WAVES THAT ARE

14  CARRYING PRECISE PACKAGES OF INFORMATION, WHICH IS DIFFERENT

15  FROM THE CELLULAR DATA, DOES NOT CHANGE THE FACT THAT THOSE

16  FLUCTUATIONS, ONCE THEY ARE REGISTERED AT THAT METER ON YOUR

17  SIM CARD, ARE THE SAME TYPE OF PROPERTY AS ELECTRICITY WOULD

18  BE.

19          THE COURT:  SO IN THE SITUATION THAT YOU ARE

20  COMPLAINING ABOUT IN THE COMPLAINT, THE DATA TRANSMISSION IS

21  FROM THE PHONE TO GOOGLE, AND THAT'S WHAT CONSUMES THE DATA

22  ALLOWANCE, CORRECT?

23          MR. CORTAZAR:  THEY ACTUALLY GO BOTH WAYS.

24      SO IF YOU LOOK AT THE COMPLAINT, IT SAYS THAT IT'S BETWEEN

25  A DEVICE AND GOOGLE SERVERS.  SO IT ACTUALLY GOES IN BOTH

1    DIRECTIONS.  SOMETIMES GOOGLE PUSHES THINGS TO A PHONE AND

2    SOMETIMES IT PULLS THINGS FROM A PHONE.

3            THE COURT:  AND IN WHICH CIRCUMSTANCE IS THE DATA

4    ALLOWANCE CONSUMED?

5            MR. CORTAZAR:  IN BOTH.  IT'S CONSUMED IN BOTH

6    CIRCUMSTANCES, YOUR HONOR.

7            THE COURT:  AND DOES THIS DATA TRANSMISSION HAPPEN IF

8    THE USER POWERS THE DEVICE OFF?

9            MR. CORTAZAR:  THAT, I THINK, HAS TO BE DETERMINED

10   THROUGH DISCOVERY.  WE DON'T HAVE ENOUGH FACTS AT THIS TIME TO

11   SAY ONE WAY OR THE OTHER WHETHER OR NOT THAT'S THE CASE.

12           THE COURT:  WELL, YOU'VE DONE THIS TESTING, AS

13   ALLEGED IN THE COMPLAINT.  WAS THE PHONE TESTED WHEN THE DEVICE

14   WAS OFF?

15           MR. CORTAZAR:  I DO NOT BELIEVE THE PHONE WAS TESTED

16   WHEN THE DEVICE WAS OFF.

17           THE COURT:  SO AT THIS TIME, YOU DON'T HAVE ANY BASIS

18   TO BELIEVE THAT THERE'S ANY DATA TRANSMISSION WHEN THE DEVICE

19   IS OFF?

20           MR. CORTAZAR:  AT THIS TIME WE DO NOT KNOW ONE WAY OR

21   THE OTHER, THAT'S CORRECT.

22           THE COURT:  AND THE ALLEGATIONS IN THE COMPLAINT ARE

23   SPECIFICALLY WHEN THE PHONE IS ON, BUT IDLE.

24           MR. CORTAZAR:  WHEN IT IS ON AND THE SCREEN IS IDLE,

25   YES.

1          THE COURT:  OKAY.

2      SO IF THE DATA TRANSMISSION OCCURS, YOU'VE TOLD ME THAT

3   THE FUNCTIONALITY, THE PURPOSE DOESN'T MATTER.  BUT IF THE DATA

4   TRANSMISSION OCCURS BECAUSE IT'S NECESSARY FOR THE PHONE TO

5   OPERATE, DO YOU HAVE A COMPLAINT?

6          MR. CORTAZAR:  I THINK WE STILL HAVE A COMPLAINT,

7   YOUR HONOR.

8      THIS GOES BEYOND THE FOUR CORNERS OF THE COMPLAINT ITSELF,

9   BUT I THINK IT'S IMPORTANT TO NOTE THAT THIS HAS TO DO WITH A

10  MATTER OF CONSENT.  AND CONSENT IS A VERY PRECISELY DEFINED

11  THING UNDER CALIFORNIA LAW.  AND IT'S NOT THE SAME THING AS

12  ASSENT OR ACQUIESCENCE, IT'S AN INTELLIGENT CHOICE AND A

13  VOLUNTARY AGREEMENT ON THE PARTY THAT'S GIVING THE CONCEPT.

14      AND SO WHEN YOU HAVE A CONTRACT LIKE THIS, IN PARTICULAR,

15  WHERE IT'S DRAFTED BY A COMPANY LIKE GOOGLE AND IT'S GIVEN TO

16  CONSUMERS WHERE THERE'S NO NEGOTIATION OF THE TERMS, THERE'S NO

17  OUTSIDE KNOWLEDGE OF WHAT THIS RELATIONSHIP IS GOING TO BE, AND

18  PARTICULARLY ALSO WHERE IT INVOLVES TECHNOLOGY THAT, TO THE

19  NORMAL PERSON, IS SOMEWHAT -- HOW IT WORKS IS SOMEWHAT

20  MYSTERIOUS, THE OBLIGATION IS ON GOOGLE TO INFORM CONSUMERS

21  PRECISELY WHAT THEY ARE GOING TO DO AND TO GET THEIR CONSENT IN

22  THAT MANNER.

23      AND THAT'S WHAT JUDGE KOH SAID IN BROWN V. GOOGLE, THE

24  CASE THAT WE FILED IN THE STATEMENT OF RECENT DECISION, IS THAT

25  WHEN THERE'S TWO PLAUSIBLE INTERPRETATIONS OF A CONTRACT, YOU

1    HAVE TO GO WITH THE PLAINTIFF'S INTERPRETATION, YOU CANNOT HAVE

2    CONSENT, THERE'S NO SUCH THING AS A BACKDOOR, TROJAN HORSE

3    CONSENT.

4         SO I THINK IN THIS CASE, THERE'S CLEARLY NO CONSENT FOR

5    GOOGLE'S APPROPRIATION OF THIS CELLULAR DATA.

6         THE COURT:  AND YOU ARE RELYING ON THE LANGUAGE THAT

7    REFERS TO "USING THE DEVICE," IF YOU ARE USING THE ANDROID

8    DEVICE WITH GOOGLE APPS?

9         MR. CORTAZAR:  THAT'S RIGHT, YES.

10        THE COURT:  SO LET ME MAKE SURE I UNDERSTAND YOUR

11   POSITION FOR PURPOSES OF THE COMPLAINT AND THE MOTION TO

12   DISMISS.  "USING A DEVICE" MEANS HAVING IT ON, BUT NOT ACTIVELY

13   INTERACTING WITH IT, AND HAVING ALL THE APPS CLOSED.

14        MR. CORTAZAR:  THAT'S CORRECT.  BUT IT COULD ALSO

15   MEAN HAVING IT OFF IF, IN FACT, THERE ARE TRANSFERS HAPPENING

16   WHEN IT'S OFF.

17        HOWEVER, I THINK IT'S IMPORTANT -- SO AS WE LOOK AT WHAT

18   "USE" MEANS, I THINK IT'S IMPORTANT TO LOOK AT IT IN THE

19   CONTEXT OF THAT SPECIFIC SENTENCE, ACONTEXTUALLY, BUT ALSO

20   BROADEN IT AND LOOK AT THE CONTEXT IN TERMS OF THE CONTRACT AS

21   A WHOLE.  ACONTEXTUALLY, IT SAYS IF YOU ARE USING YOUR PHONE

22   WITH AN ANDROID DEVICE.

23        SO FOR EXAMPLE, IF I AM IN ONE ROOM AND I HAVE A FAMILY

24   FRIEND OR FAMILY MEMBER IN ANOTHER ROOM AND I ASK IF THEY ARE

25   USING THEIR DEVICE, THAT QUESTION IS GOING TO BE CURRENT IF

1    IT'S IN THEIR HAND AND THEY ARE INTERACTING WITH IT OR IF IT'S

2    IN THEIR POCKET.  SO I THINK ACONTEXTUALLY, JUST ON ITS OWN, IT

3    AT LEAST HAS TWO MEANINGS, AND I THINK THAT THE PLAINTIFF'S

4    MEANING IS BETTER.  BUT WHEN YOU EXPAND AND YOU LOOK AT THE

5    RULES OF CONTRACT INTERPRETATION IN THE STATE OF CALIFORNIA,

6    SECTION 1641 SAYS YOU HAVE TO LOOK AT THE WHOLE OF THE CONTRACT

7    TO DETERMINE WHAT SPECIFIC CLAUSES MEAN.

8         THIS SO CALLED OVERARCHING CONSENT DOES NOT HAPPEN IN A

9    SECTION OF THE CONTRACT THAT DISCUSSES THIRD PARTY DATA OR

10   PLAINTIFF'S PURCHASE DATA.  THAT, INSTEAD, HAPPENS IN A

11   SEPARATE PART OF THE CONTRACT THAT HAS TO DO WITH GOOGLE PLAY,

12   AND GOOGLE WAS DISCUSSING HOW THIRD PARTIES' APPS MIGHT USE

13   YOUR DATA.  BUT WHEN IT'S TALKING ABOUT ITS OWN DATA OR ITS OWN

14   PROPERTIES, IT'S CONSPICUOUSLY ABSENT.

15        THE COURT:  OKAY.  I DON'T WANT TO GET BOGGED DOWN ON

16   THE CONTRACTURAL INTERPRETATION.  SO IF THERE REALLY IS

17   SOMETHING THAT'S LEFT FOR -- IF IT'S REALLY AMBIGUOUS OR IT'S

18   SUSCEPTIBLE OF MULTIPLE INTERPRETATIONS, THEN I CAN'T RESOLVE

19   IT AT THE PLEADING STAGE, EVEN IF I BELIEVE THAT ONE SIDE OR

20   THE OTHER HAD THE BETTER ARGUMENT, I DON'T THINK IT WOULD BE

21   APPROPRIATE FOR ME TO RESOLVE THAT AT THE PLEADING STAGE.

22        SO THE QUESTION THAT I THINK IS MORE TROUBLING TO ME IS

23   THE COMPLAINT CHALLENGES WHAT IS REFERRED TO AS THE "PASSIVE

24   DATA TRANSMISSION," BUT ONLY USING CELLULAR SERVICE.  SO THIS

25   IS INDEPENDENT OF ANY CONTRACTURAL DISPUTE OR DISPUTE ABOUT

1    CONSENT OR NOT CONSENT.  THE COMPLAINT CHALLENGES ONLY PASSIVE

2    DATA TRANSMISSION USING CELLULAR SERVICE, AND NOT WIFI.  WHY

3    NOT?  WHY DOES IT MATTER?

4           MR. CORTAZAR:  SO YOUR HONOR, I THINK THAT'S AN

5    EXCELLENT QUESTION, IT'S ONE THAT PLAINTIFFS WERE DISCUSSING IN

6    DRAFTING THIS COMPLAINT.

7           AND THE REASON IT DOESN'T GO WITH WIFI IS BECAUSE AS A

8    MATTER OF ORDER OF PROOF, IT WOULD BE MORE DIFFICULT TO

9    ESTABLISH DAMAGES IN THAT CLAIM.

10          AND THE REASON FOR THAT IS BECAUSE YOU MAY BE ON MULTIPLE

11   WIFI NETWORKS IN A DAY.  IF YOU GO TO A COFFEE SHOP, YOU ARE ON

12   THEIR WIFI NETWORK.  IF YOU GO TO A FRIEND'S HOUSE, YOU ARE ON

13   THEIR WIFI NETWORK.  SO THE PASSIVE DATA TRANSFERS ARE GOING TO

14   IMPLICATE THE PROPERTY RIGHTS OF DIFFERENT PERSONS, DEPENDING

15   ON WHO OWNS THE WIFI NETWORK THAT'S HAPPENING ON YOUR PHONE.

16          HOWEVER, WHEN YOU ARE DISCUSSING A CELLULAR -- A PASSIVE

17   DATA TRANSFER THAT HAPPENS OVER A CELLULAR NETWORK, THAT CAN

18   ONLY BE ATTRIBUTED TO ONE PROPERTY OWNER, AND THAT'S THE OWNER

19   OF THE PHONE AND THEIR ONE CELLULAR PLAN.

20          THE COURT:  BUT CONCEPTUALLY, YOU WOULD SAY THERE IS

21   STILL AN INJURY TO A PERSONAL PROPERTY RIGHT, NO MATTER WHETHER

22   YOU ARE USING CELLULAR DATA OR WIFI, FOR THIS PASSIVE DATA

23   TRANSMISSION.  IT DOESN'T MATTER.  THE SAME PERSONAL PROPERTY

24   MAY JUST BE PERSONAL PROPERTY OF DIFFERENT PEOPLE, AND THERE'S

25   A SAME EXACT INJURY.

```
1              MR. CORTAZAR:  THAT'S CORRECT.

2         I THINK, CONCEPTUALLY, IT IS THE SAME.  THE INJURY, NO

3    MATTER WHAT, BECAUSE THERE'S NO CONSENT AND GOOGLE DOES NOT

4    ADVISE PLAINTIFFS TO THE USAGE, THAT THESE THINGS ARE

5    HAPPENING.

6              THE COURT:  SO IF IT TURNED OUT THAT THE DATA

7    TRANSMISSION WAS IN FACT NECESSARY TO THE -- AS ADVERTISED

8    OPERATION OF THE PHONE.

9         FOR EXAMPLE, WHEN YOUR PHONE IS ON, AND YOU ARE NOT

10   INTERACTING WITH IT, IT'S NEVERTHELESS TRYING TO FIGURE OUT IF

11   YOUR E-MAIL IS UP-TO-DATE OR VARIOUS OTHER SERVICES OR MAYBE

12   THE SECURITY UPDATES AND ALL OF THOSE THINGS.

13        AND IF WHAT YOU ARE SAYING IS, THAT'S FREELOADING, AREN'T

14   YOU SAYING THAT EVEN IF IT WOULD COMPLETELY UNDERMINE THE

15   EXPECTED OPERATION OF THE DEVICE, IT'S STILL CONVERSION OF

16   PERSONAL PROPERTY TO USE THAT DATA TRANSMISSION TO ACCOMPLISH

17   THOSE PURPOSES.

18             MR. CORTAZAR:  SO I THINK CALIFORNIA LAW IS FAIRLY

19   CLEAR ON THIS.

20        FIRST, I WANT TO CHALLENGE A LITTLE BIT, THE PREMISES OF

21   THE QUESTION, BECAUSE I THINK THAT MOST OF THESE, AS WE HAVE

22   LOOKED AT THESE LOG FILES, DO NOT IMPLICATE SECURITY PATCHES.

23   THE VAST MAJORITY OF IT IS LOCATION INFORMATION, OR IT MIGHT BE

24   PRELOADED ADS THAT A PERSON MIGHT NEVER SEE FOR APPS THEY DON'T

25   USE.
```

1    SO IT'S NOT THE CASE THAT THE MAJORITY, OR EVEN A

2    SIGNIFICANT MINORITY OF THESE ARE NECESSARY TO THE FUNCTIONING

3    OF THE DEVICE; HOWEVER, EVEN UNDER CALIFORNIA LAW, THIS IS

4    CLEAR THAT A PARTY THAT CONVERTS THE PROPERTY -- THIS JUST

5    SHOWS HOW IMPORTANT PROPERTY RIGHTS ARE IN CALIFORNIA.  YOU

6    CANNOT SUBTRACT THE AMOUNT OF DAMAGE THAT YOU CAUSED SIMPLY BY

7    APPLYING IT TO THE BENEFIT OF THE PERSON WHOSE PROPERTY YOU

8    CONVERTED.  AND THAT'S STATUTORY LAW UNDER SECTION 33 AND 37 OF

9    THE CIVIL CODE.

10    THE COURT:  SO THE ANSWER TO MY QUESTION WOULD BE,

11    EVEN IF IT WAS NECESSARY, STILL CONVERSION.

12    MR. CORTAZAR:  EVEN IF IT WERE NECESSARY, IT WOULD

13    STILL BE CONVERSION.

14    NOW IT COULD BE RECTIFIED QUITE EASILY IF GOOGLE HAD

15    INCLUDED THAT INFORMATION IN ITS TERMS OF SERVICE BY SAYING

16    THAT IN ORDER FOR YOUR PHONE TO FUNCTION PROPERLY, YOU WILL

17    NEED TO CONSTANTLY EXECUTE THESE TYPES OF PASSIVE DATA

18    TRANSFERS OCCASIONALLY.  THAT'S NOT WHAT WE HAVE HERE THOUGH,

19    YOUR HONOR.

20    THE COURT:  SO THINKING ABOUT THE UTILITY COMPANY

21    ANALOGY THAT WE HAVE BEEN TALKING ABOUT, IF THE UTILITY COMPANY

22    IS SELLING A HOMEOWNER ELECTRICITY, AND THEY USE A LITTLE BIT

23    OF THE ELECTRICITY FLOWING THROUGH THE WIRE TO POWER THE METER,

24    AND I FRANKLY DON'T EVEN KNOW IF THIS IS HOW IT WORKS, BUT YOU

25    USE THE ELECTRICITY THAT'S COMING INTO THE HOUSE TO POWER THE

```
1    METER SO YOU CAN REGISTER HOW MUCH ELECTRICITY IS ACTUALLY

2    BEING USED, THE UTILITY COMPANY IS CONVERTING PERSONAL PROPERTY

3    BY USING THE ELECTRICITY TO POWER THE METER SO IT KNOWS HOW

4    MUCH TO CHARGE THE HOMEOWNER.

5             MR. CORTAZAR:  YOUR HONOR, I RESPECTFULLY DISAGREE

6    WITH THIS.  I THINK THIS PARTICULAR HYPOTHETICAL GOES TO A LOT

7    OF THE CONFUSION THAT'S IN GOOGLE'S BRIEF.

8        IN THIS CASE, YOU WOULD ACTUALLY HAVE A CONTRACT DISPUTE

9    BETWEEN THE ELECTRICAL COMPANY AND THE CONSUMER, BECAUSE THESE

10   ARE PARTIES IN PRIVITY ABOUT A SPECIFIC PROPERTY THAT'S

11   NEGOTIATED EXPLICITLY BETWEEN THEM.

12       AND IN THIS CASE WHAT WE ARE TALKING ABOUT IS A THIRD

13   PARTY COMING IN AND APPROPRIATING THAT PROPERTY.

14            THE COURT:  SO YOU ARE SAYING THAT BECAUSE GOOGLE'S

15   CONTRACT IS ONLY FOR THE PHONE AND THE SERVICES ON THE PHONE,

16   AND THE CONTRACT BETWEEN THE USER -- AND IT WAS A SEPARATE

17   CONTRACT BETWEEN THE USER AND THE CELLULAR SERVICE PROVIDER,

18   THAT THAT'S WHAT MAKES IT PERSONAL PROPERTY IN ONE SITUATION

19   AND CONVERSION, AND NOT PERSONAL PROPERTY AND CONVERSION IN THE

20   UTILITY COMPANY SITUATION.

21            MR. CORTAZAR:  CORRECT.  CORRECT.

22       AND THAT'S WHAT I THINK THE DIFFERENCE IS BETWEEN THE

23   CASES THAT GOOGLE CITES WHERE IT SAYS THAT PROPERTY RIGHTS

24   CANNOT BE CONVERTED.  WHAT THAT'S REALLY ABOUT IS TORT LAW

25   INTRUDING ON THE REALM OF CONTRACT LAW WHERE YOU HAVE PARTIES
```

1    AGREEING TO A SPECIFIC TYPE OF PROVISION.

2        AND IN THIS CASE, WE KNOW FROM THE CONTRACTS, THAT GOOGLE

3    WAS NOT MAKING CELLULAR DATA AN OBJECT OF THE CONTRACT BETWEEN

4    THE TWO.  INSTEAD, WE HAVE CONTRACTS ABOUT PERSONAL INFORMATION

5    THAT GOOGLE WAS ABLE TO COLLECT, THAT'S NOT IMPLICATED IN THIS

6    LAWSUIT.

7        THE COURT:  SO WHAT EXACTLY IS THE VALUE OF THE

8    CELLULAR DATA ALLOWANCE?

9        MR. CORTAZAR:  SO THE VALUE OF THE CELLULAR DATA

10    ALLOWANCE, I THINK IS DEFINED BY STATUTE, AND IT'S THE FAIR

11    MARKET VALUE OF THE PROPERTY AT THE TIME OF CONVERSION.

12        AND THAT'S A PRESUMPTION THAT'S ENSHRINED IN STATUTE.  AND

13    SO YOU LOOK AT SOMEBODY'S CELLULAR DATA AND YOU DETERMINE,

14    BASED ON THAT, HOW MUCH THEY PAID FOR IT, AND THAT'S WHAT THE

15    AMOUNT OF DAMAGES IS.

16        THE COURT:  AND FOR UNLIMITED DATA PLANS, HOW DOES

17    THAT WORK?

18        MR. CORTAZAR:  FOR UNLIMITED DATA PLANS, I THINK YOU

19    WOULD STILL BE ABLE TO DETERMINE ON A BYTE BY BYTE BASIS, WHAT

20    THE ACTUAL MARKET VALUE WAS FOR THE DATA THEY PURCHASED.

21    BECAUSE AN UNLIMITED DATA PLAN, I THINK AS WE MENTIONED, IT'S

22    NOT ACTUALLY UNLIMITED, THERE ARE LIMITS AS TO HOW MUCH DATA

23    YOU CAN USE.

24        AND AGAIN, IT'S ESSENTIALLY A MARKETING STRATEGY BY THE

25    CELLULAR CARRIERS.  AND SO IF YOU HAVE, FOR EXAMPLE, A

1    REQUIREMENTS CONTRACT AND SOMEBODY STEALS A MORE CONCRETE PIECE

2    OF PROPERTY, YOU WOULD STILL BE ABLE TO DETERMINE THE FAIR

3    MARKET VALUE BASED ON THE REQUIREMENTS CONTRACT AND THE AMOUNT

4    OF THAT PROPERTY THAT'S CONSUMED OR USED OR PURCHASED.

5            THE COURT:  BUT THE MARKET ISN'T A MARKET IN THE

6    SENSE THAT YOU MIGHT THINK OF IT IN TERMS OF OTHER PERSONAL

7    PROPERTY, BECAUSE YOU ACKNOWLEDGE THAT I COULDN'T SELL MY DATA

8    ALLOWANCE TO YOU OR ANYONE ELSE, RIGHT?

9            MR. CORTAZAR:  CORRECT.  ALTHOUGH YOU COULD SELL IT

10   THROUGH, FOR EXAMPLE, THROUGH TETHERING, THROUGH PRIVATE

11   CONTRACTS.  THERE'S NOTHING TO SAY YOU COULD NOT DO THIS IF YOU

12   WERE SO INCLINED.

13           THE COURT:  SO I COULD SELL IT TO SOMEONE ELSE IF

14   THEY WERE WILLING TO PAY ME FOR THE OPPORTUNITY TO USE MY HOT

15   SPOT OR SOMETHING.

16           MR. CORTAZAR:  AND I BELIEVE THE COMPLAINT MENTIONS

17   THERE ARE CERTAIN TECHNOLOGIES THAT ALLOW YOU TO DO THAT.  YOU

18   COULD DOWNLOAD AN APP AND ALIENATE IT IN THAT WAY.

19           THE COURT:  OKAY.

20        WELL, LET ME ASK YOU THE SAME QUESTION I ASKED GOOGLE, IS

21   THERE ANY REASON WHY THE RAMIREZ V. TRANSUNION CASE, WHICH IS

22   BEFORE THE SUPREME COURT, IS THAT GOING TO BE AT ALL RELEVANT

23   TO OUR CASE HERE?

24           MR. CORTAZAR:  NOT AT ALL, BECAUSE I THINK THAT THAT

25   CASE INVOLVES INJURY TO A PROCEDURAL RIGHT.

1          AND I THINK THAT THERE IS A CLEAR DEFERENCE BETWEEN THE

2     LAW OF STANDING BETWEEN PROCEDURAL RIGHTS AND SUBSTANTIVE

3     RIGHTS.  AND WHAT PLAINTIFFS ARE ALLEGING HERE IS A SUBSTANTIVE

4     RIGHT IN PROPERTY.

5          AND THE SUPREME COURT IS CLEAR, THE NINTH CIRCUIT IS CLEAR

6     THAT EVERY INVASION OF A SUBSTANTIVE RIGHT, BY DEFINITION,

7     CREATES A CONCRETE INJURY IN FACT.

8          AND THAT'S ALSO WHY WE SUBMITTED UZUEGBUNAM V. PRECZEWSKI,

9     THE STANDING CASE FROM LAST MONTH WHERE THE COURT ACTUALLY WENT

10    ONE STEP FURTHER AND SAID, NOT ONLY DOES THE INVASION OF A

11    SUBSTANTIVE RIGHT CREATE INJURY AND FACT, IT ALSO ESTABLISHES

12    DAMAGES FOR THE PURPOSES OF THE THIRD PRONG OF THE STANDING

13    INQUIRY.

14          THE COURT:  OKAY.  THANK YOU.

15          ON THE QUANTUM MERUIT POINT, IT WOULD BE HELPFUL TO HEAR

16    YOUR RESPONSE TO THE ARGUMENTS THAT GOOGLE MADE CONCERNING WHAT

17    THAT CAUSE OF ACTION ACTUALLY REQUIRES IN TERMS OF ITS

18    ELEMENTS, SO INDEPENDENT OF ANY STANDING ISSUE, BUT ALSO THE

19    ARGUMENTS THAT GOOGLE MADE ABOUT WHY THE CIRCUMSTANCES HERE ARE

20    REALLY DIFFERENT THAN THE ONES IN THE FACEBOOK LITIGATION.

21          MR. CORTAZAR:  SO I THINK BEFORE ADDRESSING THE

22    MERITS OF THIS, I THINK IT'S TO NOTE THAT GOOGLE HAS ACTUALLY

23    WAIVED THIS ARGUMENT, BECAUSE IN THEIR BRIEFS, THEY ONLY

24    MENTION THE FACT THAT THIS IS DUPLICATIVE OF THE CONVERSION

25    CLAIM.  THEY NEVER MENTIONED, UNTIL TODAY, THAT WE SOMEHOW

1          FAILED IN THE ELEMENTS OF QUANTUM MERUIT.

2              BUT EVEN IF GOOGLE DID NOT WAIVE IT, I THINK IF YOU LOOK

3          AT THE COMPLAINT, WE ACTUALLY DO ALLEGE DISGORGEMENT.  GOOGLE

4          ALERTED TO PARAGRAPH 74, BUT RIGHT BELOW IT IS PARAGRAPH 75

5          WHERE IT SAYS, PLAINTIFFS ARE ENTITLED TO RECOVER THE

6          REASONABLE VALUE OF PLAINTIFF'S PERSONAL INFORMATION WHICH

7          GOOGLE COLLECTS AND EXPLOITS IN ITS TARGETING ADVERTISING

8          BUSINESS AND OTHER VENTURES.

9              SO THERE IS A CLAIM FOR DISGORGEMENT IN THE QUANTUM MERUIT

10         CLAIM.

11             AND AGAIN, I THINK THAT WHEN YOU LOOK AT THE ELEMENTS OF

12         QUANTUM MERUIT, WE CLEARLY PROVIDED A BENEFIT TO GOOGLE IN THE

13         FORM OF ALLOWING THEM TO FREERIDE OFF OF OUR CELLULAR DATA

14         PLANS.

15             AND ONCE AGAIN, THAT CELLULAR DATA IS NOT AT ISSUE IN THE

16         PRIVACY POLICY, WHICH TALKS ABOUT INFORMATION -- I WANT TO BE

17         CLEAR TOO, THAT WHAT GOOGLE CALLS THE OVERARCHING CONSENT, IT

18         IS PLACED IN A SECTION THAT SAYS, "INFORMATION THAT WE COLLECT

19         AS YOU USE OUR SERVICES."  SO THAT HAS TO INFORM THE MEANING OF

20         WHAT THAT WAS ACTUALLY NEGOTIATED BETWEEN THE PARTIES OR WHAT

21         WAS ACTUALLY MEMORIALIZED BETWEEN THE PARTIES.

22             I KNOW GOOGLE SAYS IN ITS REPLY BRIEF THAT YOU CANNOT USE

23         THE TITLES OF THE CONTRACT TO INTERPRET THE TERMS, BUT THE LAW

24         IS ACTUALLY TO THE CONTRARY.  THE CALIFORNIA SUPREME COURT IN

25         AUGUST BURN V. TRAVELLERS INSURANCE, AND THE NINTH CIRCUIT IN

1    AZTECA FILMS SAID THAT SECTION 1641, WHICH SAYS YOU LOOK AT THE

2    WHOLE OF THE CONTRACT BY INTERPRETING, BOTH THOSE CASES SAY

3    THAT YOU HAVE TO ALSO LOOK AT THE HIDINGS AND TITLES WHEN

4    INTERPRETING OPERATIVE TERMS.

5              THE COURT:  OKAY.

6         SO TWO THINGS.  FIRST OF ALL, I WANT TO GET BACK TO THE

7    QUANTUM MERUIT AND YOUR REMARK ABOUT PARAGRAPH 75.

8         BUT I COULD SEE A SITUATION WHERE "USE" INCLUDES LEAVING

9    YOUR PHONE ON AND ALLOWING IT TO DO WHAT IT DOES TO MAKE IT

10   USEABLE WHEN YOU DO ACTUALLY ENGAGE IN IT.

11        SO YOU HAVE THE PHONE ON, YOU ARE NOT USING IT IN ACTIVE

12   SENSE, BUT YOUR EXPECTATION IS THAT IT WILL BE READY TO USE THE

13   MINUTE YOU PICK IT UP, INCLUDING TELLING YOU WHERE YOU ARE,

14   SHOWING YOU WHAT E-MAILS YOU HAVE, AND IF YOU'VE HAD YOUR PHONE

15   IDLE FOR HOURS, THE EXPECTATION I THINK MOST USERS HAVE IS YOU

16   DON'T WANT TO WAIT FOR IT TO DO ALL THAT STUFF BEFORE YOU ARE

17   READY TO USE IT.

18        SO I COULD IMAGINE A SITUATION WHERE "USE" IS CONSTRUED

19   AND UNDERSTOOD BY EVERYBODY AS MEANING THE PHONE IS ON, I'M

20   USING IT.

21             MR. CORTAZAR:  SO THERE MAY BE AN EXPECTATION, BUT

22   THERE'S NO EXPECTATION BASED ON WHAT GOOGLE HAS SAID THAT IT'S

23   ACTUALLY GOING TO BE, IN ORDER FOR YOUR PHONE TO USE IT, YOU

24   HAVE TO SUBSIDIZE GOOGLE'S --

25             THE COURT:  RIGHT.

1          SO I DON'T WANT TO GET INTO THE CONTRACT INTERPRETATION IN

2     THE WEEDS SO MUCH RIGHT NOW, BUT HERE'S SOMETHING THAT YOU JUST

3     SAID THAT CAUGHT MY ATTENTION.

4          YOU REFERRED TO PARAGRAPH 75 OF THE COMPLAINT, AND

5     PARAGRAPH 75 OF THE COMPLAINT ACTUALLY REFERS TO PLAINTIFF'S

6     PERSONAL INFORMATION, NOT ITS DATA ALLOWANCE, WHICH IS PRETTY

7     MUCH THE ONLY PLACE, I THINK, THAT THIS IS THE THING THAT'S

8     COMPLAINED ABOUT, AS OPPOSED TO THE DATA ALLOWANCE, WHICH IS

9     PARAGRAPH 74.

10         SO WHICH IS IT?  IS IT THE DATA ALLOWANCE THAT'S THE

11    SUBJECT OF THE QUANTUM MERUIT, OR THE PERSONAL INFORMATION, OR

12    BOTH?

13              MR. CORTAZAR:  I THINK IT'S BOTH, AND THAT'S WHY THEY

14    ARE IN SEPARATE PARAGRAPHS.

15              THE COURT:  OKAY.  SO IF I JUST FOCUS ON THE QUANTUM

16    MERUIT FOR THE DATA ALLOWANCE, LET ME ASK IT DIFFERENTLY.

17         HOW IS YOUR QUANTUM MERUIT CLAIM FOR USE OF THE DATA

18    ALLOWANCE DIFFERENT FROM YOUR QUANTUM MERUIT CLAIM FOR USE OF

19    PERSONAL INFORMATION?  OR IS IT?

20              MR. CORTAZAR:  THE USE FOR THE DATA ALLOWANCE GOES TO

21    THE MEASURE OF THE DAMAGES, IT WILL BE MORE TIED TO THE VALUE

22    OF THE DATA.

23         AND THE QUANTUM MERUIT FOR THE PERSONAL INFORMATION WOULD

24    GO TO THE ACTUAL -- WOULD GO MORE TOWARD DISGORGEMENT FOR THE

25    VALUE OF THAT DATA FOR GOOGLE'S BUSINESSES, MUCH LIKE THE IN RE

1    FACEBOOK TRACKING LITIGATION.

2            THE COURT:  AND IS THERE ANY SUPPORTING ALLEGATION

3    ELSEWHERE IN THE COMPLAINT ABOUT THE PERSONAL INFORMATION PIECE

4    OF THIS?

5            MR. CORTAZAR:  NO, BECAUSE TO BE CLEAR, THE PERSONAL

6    INFORMATION RELATES ONLY TO QUANTUM MERUIT, IT HAS NO BEARING

7    ON THE CONVERSION CLAIM.

8            THE COURT:  BUT THAT'S MY POINT.

9        ARE THERE ANY ALLEGATIONS ANYWHERE ELSE THAT SAY WHAT THE

10   NATURE OF THE PERSONAL INFORMATION WAS AND ANY OF THAT STUFF,

11   ON WHICH YOU ARE RELYING?  BECAUSE THE QUANTUM MERUIT CLAIM

12   JUST INCORPORATES BY REFERENCE EVERYTHING THAT CAME BEFORE.

13       SO I JUST WANT TO MAKE SURE THAT I'M UNDERSTANDING WHAT

14   THE BASIS IS FOR THAT PART OF YOUR QUANTUM MERUIT CLAIM, APART

15   FROM THAT ONE SENTENCE.

16           MR. CORTAZAR:  SO I THINK IN THE REST OF THE

17   COMPLAINT, THAT IT DISCUSSES WHAT PART OF THE PURPOSE OF MANY

18   OF THESE PASSIVE DATA TRANSFERS ARE FOR, AND THAT IT'S TO FEED

19   INFORMATION THAT'S NOT RELATED TO ACTUAL ENGAGEMENT WITH YOUR

20   PHONE, TO HELP FEED GOOGLE'S ADVERTISING EMPIRE.

21           THE COURT:  SO PURPOSE DOES MATTER.

22           MR. CORTAZAR:  PURPOSE MATTERS FOR THE PURPOSE OF THE

23   QUANTUM MERUIT CLAIM.

24           THE COURT:  OKAY.

25       OKAY.  ANYTHING ELSE ON QUANTUM MERUIT?

1          MR. CORTAZAR:  NOTHING FURTHER ON THAT, YOUR HONOR.

2          THE COURT:  OKAY.  AND IS THERE ANYTHING ELSE YOU

3    WOULD LIKE TO ARGUE ON ANY ASPECT OF THE MOTION?

4          MR. CORTAZAR:  YOUR HONOR, I THINK THAT ONE ISSUE

5    THAT GOOGLE BROUGHT UP IN IT'S REPLY BRIEF WAS SECTION 3333,

6    WHEN IT WAS SAYING THAT THERE WAS NO PRESUMPTION OF DAMAGES,

7    THAT 3336 ONLY SPOKE TO THE MEASURE OF DAMAGES.  I THINK THAT'S

8    WRONG FOR TWO REASONS.

9          FIRST, IT CONTRADICTS THE MAXON THAT THE SPECIFIC GOVERNS

10   THE GENERAL, IN THAT 3333 TALKS ABOUT MEASURE OF DAMAGES FOR

11   GENERAL TORTS, WHILE 3336 TALKS ABOUT THE PRESUMPTION OF

12   DAMAGES FOR, SPECIFICALLY, CONVERSION.

13         IT ALSO FAILS FOR A SECOND REASON.  SO SECTION 3333 SHOWS

14   THAT GOOGLE -- OR SORRY, THE CALIFORNIA LEGISLATURE KNEW HOW TO

15   SPEAK TO JUST THE MEASURE OF DAMAGES, WHEN IT WANTS TO.  AND

16   THE FACT THAT IT DID NOT ECHO THAT LANGUAGE IN 3336, THE FACT

17   THAT IT SAID THE PRESUMPTION, THE DETRIMENT CAUSED BY

18   CONVERSION IS PRESUMED TO BE, MEANS THAT IT ACTUALLY MEANT

19   SOMETHING DIFFERENT AND THAT IT ACTUALLY MEANT WHAT IT SAID.

20   IT MEANT THAT THERE WAS A PRESUMPTION OF DAMAGE.

21         AND THAT, I THINK, GOES INTO THE, I THINK THE SACRED RIGHT

22   OF PERSONAL PROPERTY UNDER CALIFORNIA LAW.

23         THE COURT:  ALL RIGHT.

24         THANK YOU.  LET ME JUST SEE IF GOOGLE HAS ANY BRIEF

25   MATTERS ON WHICH IT WANTS TO RESPOND.

1          MR. SOMVICHIAN:  YES, YOUR HONOR.  AND I WILL TRY TO

2    BE BRIEF.

3          ON THE QUESTION OF PROPERTY INTEREST, COUNSEL REFERRED TO

4    THIS THREE-PART TEST.  I JUST WANT TO EMPHASIZE, AND I THINK

5    THIS IS A POINT YOU PICKED UP ON, THOSE ARE NECESSARY

6    CONDITIONS IN ORDER TO HAVE A PROPERTY INTEREST, BUT SIMPLY

7    HAVING SOMETHING THAT YOU CAN PRECISELY DEFINE, HAVE IT BE

8    EXCLUSIVE AND SO FORTH, DOES NOT MAKE IT PROPERTY.

9          AND THAT'S CLEAR IN THE CASES THAT REJECT THE FINDING OF A

10   PROPERTY INTEREST BASED ON A CONTRACTURAL RIGHT.

11         FOR EXAMPLE, IN THE MONSTER ENERGY CASE, THAT REFERRED TO

12   PRECISELY DEFINED AND DESIGNATED SET OF SHELVING.  IT WAS

13   EXCLUSIVE IN THE SENSE THAT YOU WERE ONLY SUPPOSED TO SHOW THE

14   MONSTER ENERGY DRINKS THERE, AND IT WAS EXCLUSIVE TO THE

15   COMPANY.

16         THAT DIDN'T CHANGE THE FACT THAT THOSE WERE CONTRACTURAL

17   RIGHTS.  AND THE NATURE OF THE DISPUTE WAS CONTRACTURAL IN

18   NATURE, TAKING IT OUT OF THE REALM OF A CONVERSION.

19         SO THE FACT THAT THE PLAINTIFFS CAN ARTICULATE A WAY TO

20   JAM THIS CASE INTO THOSE THREE ELEMENTS, DOESN'T GET THEM TO A

21   SHOWING OF A PROPERTY INTEREST.  AND IN ANY CASE, I THINK THE

22   DISCUSSION SHOWS THAT THOSE ELEMENTS AREN'T MET HERE WITH

23   RESPECT TO THE PRECISE DEFINITION.

24         WE TALK ABOUT A WAY TO MEASURE THE AMOUNT OF ENERGY AFTER

25   A CERTAIN METERING STEP, THE AMOUNT OF THE DATA THAT IS

1    TRANSMITTED.  BUT AGAIN, THAT'S NOT THE PROPERTY AT ISSUE HERE.

2    THE PROPERTY -- ALLEGED PROPERTY INTEREST, IS THE ABILITY TO

3    ACCESS THIS CELLULAR NETWORK TO SEND AND RECEIVE DATA TO

4    UTILIZE THESE RADIO WAVES, AND AS THEY CALL THEM, BYTES OF

5    CELLULAR DATA.

6         THERE'S NO SENSE IN WHICH THAT IS DEFINED, MUCH LESS

7    PRECISELY DEFINED IN ANY CONTRACT.  YOU DON'T KNOW WHAT BYTES

8    OF DATA YOU ARE GOING TO GET OR WHAT RADIO WAVES, THAT'S JUST

9    NOT THE NATURE OF THE CONTRACT.

10        AND IT BECOMES EVEN MORE INCOHERENT, YOUR HONOR, WHEN THEY

11   TALK ABOUT AN UNLIMITED ALLOTMENT.  IT MAKES SENSE AS A

12   CONTRACTURAL RIGHT, WHEN WE TALK ABOUT A CONTRACTURAL ALLOWANCE

13   UP TO A CERTAIN LIMIT OR YOU HIT A CERTAIN AMOUNT AND WE GET

14   THROTTLED, BUT AGAIN, THAT REINFORCES THE FACT THAT WE ARE

15   TALKING ABOUT CONTRACTURAL INTEREST HERE EXCLUSIVELY.

16        AND WITH RESPECT TO THE INTERFERENCE POINT, THERE IS NO

17   PRESUMPTION OF INTERFERENCE.  THERE IS NO PRESUMPTION OF

18   DAMAGE.

19        AND COUNSEL JUST DESCRIBED WHAT YOU WOULD NORMALLY

20   CONSIDER TO BE THE TYPES OF INTERFERENCE THAT YOU WOULD NEED TO

21   ALLEGE.  THE "INABILITY TO USE" WAS A PHRASE, THE OPPORTUNITY

22   LOST.  I COULDN'T USE THAT PIECE OF GRAVEL.

23        THERE'S NO ALLEGATIONS OF ANY SORT OF INABILITY TO USE

24   THEIR DATA PLANS, ANY INABILITY TO SEND AND RECEIVE DATA, NO

25   LOST OPPORTUNITY TO DO SO.  AND THAT'S WHY THERE'S NO

1    SUBSTANTIAL INTERFERENCE OR DAMAGES AS NEEDED TO STATE, EVEN IF

2    YOU FIND THAT THE CONTRACT RIGHTS HERE COULD BE DEEMED PERSONAL

3    PROPERTY, YOUR HONOR.

4         LAST POINT, THE WHOLE DISCUSSION ABOUT CONSENT ISSUES AND

5    THE DISCLOSURES, WE HAVE LAID THAT OUT, OUR VIEW OF HOW BEST TO

6    INTERPRETER THOSE.  WE AGREE WITH YOU THAT REFERENCE TO USE

7    CAN'T REASONABLY BE INTERPRETED AS, I HAVE IT IN MY HAND AND

8    I'M TOUCHING MY PHONE, BUT IT'S A BROADER CONCEPT OF USE.

9         BUT THE MORE IMPORTANT POINT, I THINK, IS THIS WHOLE

10   DISCUSSION, AGAIN, REINFORCES THAT WHAT WE ARE TALKING ABOUT

11   HERE IS A DIFFERENT KIND OF DISPUTE.  WE CAN HAVE A DEBATE

12   ABOUT WHETHER THE TERMS WERE SUFFICIENTLY CLEAR UNDER THE

13   FRAMEWORK OF ANY NUMBER OF CONSUMER PROTECTION FRAMEWORKS.

14        PLAINTIFFS DON'T WANT TO LITIGATE UNDER THAT FRAMEWORK,

15   PRESUMABLY BECAUSE THEY THINK THAT AVAILABLE DAMAGES MAY BE

16   PREFERRED HERE OR THIS CASE CONCEIVED AS A CONVERSION THEORY

17   MIGHT SET THEM UP BETTER FOR CLASS CERTIFICATION, BUT THOSE ARE

18   TACTICAL DECISIONS, AND THAT'S HARDLY A REASON TO EXTEND THE

19   CONVERSION TORT INTO A REALM THAT IT'S NEVER BEEN EXTENDED TO

20   BEFORE, YOUR HONOR.

21        THE COURT:  EXCEPT IN THE STATE COURT, RIGHT?

22        THANK YOU ALL FOR YOUR ARGUMENTS.  THIS IS A VERY

23   INTERESTING ISSUE AND I'M NOT ENTIRELY SURE WHAT I'M GOING TO

24   DECIDE YET, BUT YOUR ARGUMENTS HAVE BEEN VERY HELPFUL, AS IS

25   YOUR BRIEFING.

1          I WOULD LIKE TO SHIFT GEARS AND TALK ABOUT THE CASE

2     MANAGEMENT ISSUE.  AND WHEN I SAID THE STATE COURT, I DID HAVE

3     IN MIND THE ACTION THAT'S IN THE STATE COURT, THE CSUPO ACTION.

4          AND SO I WANTED TO -- I HAVE YOUR CASE MANAGEMENT

5     STATEMENT AND THE SUPPLEMENTAL STATEMENT THAT WAS SUBMITTED,

6     AND I JUST WANTED TO UNDERSTAND, WHAT IS GOING ON IN THE STATE

7     COURT?  WHAT IS THE STATUS OF THAT ACTION?

8          LET ME ASK MR. SOMVICHIAN.  YOU ARE REPRESENTING GOOGLE IN

9     THAT ACTION AS WELL?

10              MR. SOMVICHIAN:  YES, YOUR HONOR.

11              THE COURT:  OKAY.

12              MR. SOMVICHIAN:  SO WE ARE ACTIVELY ENGAGED IN

13     DISCOVERY.  WE PROVIDED RESPONSES TO WRITTEN DISCOVERY.  WE

14     HAVE PROVIDED AN INITIAL WAVE OF PRODUCTION OF DOCUMENTS.  WE

15     HAVE BEEN CONFERRING, ALMOST WEEKLY, ON VARIOUS

16     DISCOVERY-RELATED MATTERS TO DEFINE A SET OF INFORMATION TO

17     PROVIDE.  SO WE ARE KNEE DEEP IN DISCOVERY WORKING TOWARDS A

18     CLASS CERTIFICATION BRIEFING PROCESS.

19              THE COURT:  AND DO YOU HAVE A DATE FOR THAT?

20              MR. SOMVICHIAN:  WE DO.  I DON'T HAVE IT AT MY

21     FINGERTIPS.

22              [!EZ SPEAKER 02]:  I BELIEVE IT'S IN AUGUST, AND WE

23     HAVE A BRIEFING SCHEDULE, AND THE HEARING IS SET FOR DECEMBER.

24              THE COURT:  I'M SORRY, MR. KLENOV, YOU WERE SAYING

25     THE BRIEFING BEGINS IN AUGUST WITH A HEARING IN DECEMBER?

```
 1              [!EZ SPEAKER 02]:  CORRECT.

 2              MR. SOMVICHIAN:  AND I WORKED WITH MR. KLENOV

 3    RECENTLY TO MODIFY THAT SCHEDULE BY AGREEMENT, YOUR HONOR.

 4              THE COURT:  OKAY.

 5              MR. SOMVICHIAN:  SO WHAT I MIGHT SUGGEST IS THE

 6    PLAINTIFFS RECENTLY PROPOSED A MODIFICATION TO THEIR PROPOSED

 7    CASE SCHEDULE.  WE HAVE PROPOSED A DIFFERENT FRAMEWORK WHERE

 8    DISCOVERY WOULD BE STAYED AND THE TIME FRAMES WOULD START UPON

 9    AN ANSWER, BUT WHAT WE HAVE TRIED TO DO WAS TO MATCH THE TIME

10    FRAMES TO WHAT THE PLAINTIFFS HAD PROPOSED.  SO WE WERE TALKING

11    ABOUT THE SAME INTERVALS OF TIME, THEY WOULD JUST START AT

12    DIFFERENT TRIGGERING DATES.

13         BASED ON THE PLAINTIFF'S MOST RECENT PROPOSAL, I THINK

14    THERE'S PROBABLY SOME MORE ROOM FOR SOME FURTHER MEET AND

15    CONFER AMONG THE PARTIES TO SEE IF WE CAN GET TO A POTENTIALLY

16    AGREED UPON SCHEDULE.

17         I DON'T THINK WE HAVE HAD THE OPPORTUNITY TO DO THAT, BUT

18    THE PLAINTIFFS HAVE PROPOSED THIS MODIFICATION, AT LEAST WHEN I

19    WAS IMMERSED IN PREPARING FOR THE HEARING.  SO I THINK THERE

20    MIGHT BE ADDITIONAL ROOM FOR THE MATTERS TO CONNECT ON THOSE.

21              THE COURT:  AND ARE YOU REFERRING JUST TO THE

22    DISCOVERY PORTION OF THE CASE, OR ARE YOU REFERRING TO SOME

23    COORDINATION THAT GOES BEYOND DISCOVERY?

24              MR. SOMVICHIAN:  I'M REFERRING TO THE SCHEDULE.

25              THE COURT:  THE SCHEDULE BEFORE ME ONLY.
```

1          MR. SOMVICHIAN:  YES.

2          IN PARTICULAR, THE SUPPLEMENTAL CASE MANAGEMENT PROPOSAL

3     THAT HAD THE PLAINTIFF'S UPDATED CASE SCHEDULE.  I DON'T THINK

4     WE HAVE HAD THE CHANCE TO REALLY -- I HAVEN'T HAD A CHANCE TO

5     CALL UP MR. KLENOV, FOR EXAMPLE, AND TRY TO HASH IT OUT IN A

6     WAY THAT WE WERE ABLE TO IN THE CSUPO CASE.

7          THE COURT:  I SEE.  OKAY.  WELL, THANK YOU.

8          LET ME HEAR FROM THE PLAINTIFFS.  YOU KNOW, I DON'T KNOW

9     IF YOU AGREE WITH MR. SOMVICHIAN'S CHARACTERIZATION OF WHAT'S

10    GOING ON IN THE STATE COURT PROCEEDING AND HOW THAT COMPARES TO

11    WHAT WE HAVE HERE.

12         WHO WOULD LIKE TO ADDRESS THAT?

13         [!EZ SPEAKER 02]:  WE ARE MOVING SLOWLY BUT STEADILY

14    TOWARDS OUTLINING THE BOUNDARIES OF DISCOVERY THAT WE ARE GOING

15    TO DO IN THE STATE COURT CASE.  AND EVERYTHING WE ARE DOING IN

16    THE STATE COURT CASE INURES TO THE PARTIES' BENEFITS HERE.  SO

17    THAT'S WHY WE HAVE KIND OF DECIDED THAT, LET'S FOCUS ON THE

18    ONGOING MEET AND CONFER DISCUSSIONS THAT WE ARE HAVING, WHICH

19    ARE PRODUCTIVE.

20         AND WHILE THEY ARE MOVING SLOWLY, I THINK WE ARE MAKING

21    PROGRESS.  AND AS MR. SOMVICHIAN SAID, WE ARE HAVING ALMOST A

22    STANDING WEEKLY ONE TO TWO-HOUR MEET AND CONFER CALL, BECAUSE

23    WE ARE TRYING TO BREAK THROUGH THE BREADTH OF INFORMATION AND

24    THE VARIOUS PEOPLE INVOLVED AT GOOGLE AND FIND THE RIGHT

25    INDIVIDUALS.

```
1        AND WE ARE WORKING COOPERATIVELY TO DEFINE A SUBSET OF
2    PASSIVE TRANSFERS THAT WE CAN DO A DEEP DIVE ON SO THAT WE
3    DON'T HAVE TO TACKLE THE ENTIRE UNIVERSE.  BECAUSE FROM OUR
4    PERSPECTIVE, IF THERE'S A SET TYPE OF PASSIVE TRANSFER THAT WE
5    CAN ESTABLISH AS A BASELINE, WHERE EVERY CLASS MEMBER
6    EXPERIENCED THAT TYPE OF PASSIVE TRANSFER, FOR EXAMPLE, IF
7    EVERY TIME SOMEBODY MOVES WITH A PHONE IN THEIR POCKET, GOOGLE
8    IS COLLECTING LOCATION DATA CONSTANTLY AND SENDING IT BACK TO
9    THE MOTHER SHIP EVERY SO OFTEN, WE WOULD SAY OKAY, LET'S FOCUS
10   ON THAT, WE CAN ESTABLISH INJURY FOR EVERY CLASS MEMBER, WE CAN
11   GET THE CLASS CERTIFIED AND WE CAN TALK ABOUT WHAT THE SCOPE OF
12   ALL OF THE PASSIVE TRANSFERS IS.
13        SO THAT'S KIND OF WHAT WE ARE WORKING TOWARDS.
14        THE ONE DISTINCTION IN THE STATE COURT CASE IS THAT THE
15   PARTIES DID AGREE TO A TYPE OF BIFURCATED DISCOVERY.  SO I WILL
16   SAY THAT THE PLAINTIFFS HAVE LEFT A LOT OF POTENTIAL DISCOVERY
17   ON THE TABLE IN THE HOPES OF MOVING FASTER.
18        WE SAW SOME DISCOVERY DISPUTES BREWING IN TERMS OF THE
19   BREADTH OF INFORMATION ASSOCIATED WITH THE TYPES OF TRANSFERS
20   THAT OCCUR BETWEEN GOOGLE SERVERS AND A MOBILE DEVICE.  AND WE
21   DON'T ANTICIPATE DOING THAT HERE, SO IT IS A DIFFERENT TYPE OF
22   DISCOVERY, BUT OUR THOUGHT WAS, LET'S FOCUS ON WHAT WE ARE
23   DOING ON A WEEKLY BASIS THERE, LET'S NOT COMPLICATE MATTERS BY
24   SERVING A BUNCH OF DISCOVERY IN THE FEDERAL CASE RIGHT NOW
25   WHERE IT'S JUST GOING TO -- IT'S NOT GOING TO BE HELPFUL,
```

1    NECESSARILY.

2         SO I THINK THE BEST THING TO DO FOR US IS TO LET THE

3    CURRENT PROCESS PLAY OUT, SEE YOUR HONOR'S THOUGHTS ON THE

4    MOTION TO DISMISS, AND THEN I THINK WE WILL BE ABLE TO PICK UP

5    DISCOVERY IN A MORE COMPREHENSIVE WAY IN THIS CASE.  IT PERHAPS

6    INVOLVES MORE CLASS MEMBERS, CITIZENS OF OTHER STATES,

7    ET CETERA, ET CETERA, ONCE WE HAVE HAD AN IDEA OF WHAT

8    YOUR HONOR IS GOING TO DO.

9         THE COURT:  SO THAT WAS GOING TO BE MY NEXT QUESTION

10   IS HOW DOES THE PROPOSED CLASS HERE COMPARE TO THE PROPOSED

11   CLASS IN THE STATE COURT CASE?

12        [!EZ SPEAKER 02]:  THE STATE COURT CASE CONSISTS

13   SOLELY OF CALIFORNIA RESIDENTS, AND THIS CASE CONSISTS SOLELY

14   OF CITIZENS AND RESIDENTS OF STATES OTHER THAN CALIFORNIA.

15        THE COURT:  BUT OTHERWISE THE CRITERIA FOR BEING A

16   MEMBER OF THE CLASS, IN TERMS OF YOUR USE OF THE DEVICE, THE

17   PURCHASE OF A DEVICE, YOUR USE OF A DATA PLAN, THOSE ARE ALL

18   THE SAME CRITERIA IN BOTH CASES; IS THAT CORRECT?

19        [!EZ SPEAKER 02]:  CORRECT.

20        THE COURT:  OKAY.

21        SO HERE'S A QUESTION, IS THE STATE COURT CASE GOING TO

22   HAVE A PRECLUSIVE EFFECT ON ANYTHING IN THIS CASE, GIVEN THAT

23   IT'S PROCEEDING AHEAD OF THIS CASE?

24        SO THIS CASE PROCEEDS, IS IT LIKELY THERE ARE GOING TO BE

25   ISSUE PRECLUSION OR CLAIM PRECLUSION, AT LEAST AS TO SOMETHING?

1          [!EZ SPEAKER 02]:  I THINK THERE'S THE POSSIBILITY OF

2     ISSUE PRECLUSION UPON A FINAL JUDGMENT IN THE STATE COURT CASE

3     THAT WOULD BE, IF I RECALL MY ISSUE PRECLUSION LAW OFF THE TOP

4     OF MY HEAD, I THINK DISCRETIONARY TO THE COURT, BASED ON THE

5     CIRCUMSTANCES.  THERE'S NO CLAIM PRECLUSION, CERTAINLY, BUT IF

6     A CALIFORNIA JURY WERE TO FIND THAT PASSIVE TRANSFERS ARE

7     PROPERTY THAT WAS CONVERTED BY GOOGLE, AND THAT PLAINTIFFS ARE

8     ENTITLED TO DAMAGES IN THAT CLASS, IN THAT CASE, I WOULD

9     IMAGINE THAT, YES, WE WOULD RAISE THAT WITH YOUR HONOR AND TRY

10    TO USE IT OFFENSIVELY, IF THAT WERE TO HAPPEN.

11          THE COURT:  OKAY.

12       MR. SOMVICHIAN?

13          MR. SOMVICHIAN:  YOUR HONOR, IN TERMS OF THE MOST

14    IMPORTANT UPCOMING MILESTONE IN THE CASE, THERE WILL NOT BE ANY

15    PRECLUSIVE EFFECT WITH RESPECT TO CLASS CERTIFICATION, FOR

16    EXAMPLE.  IN CSUPO, THAT WOULD TAKE PLACE -- IF WE GET TO CLASS

17    CERT AT ALL, WHICH WE DON'T THINK WE SHOULD GET THERE, BUT IF

18    THE CASES PROCEED, WE WILL GET THAT FIRST IN CSUPO.

19          WHATEVER THE RULING IS THERE, OBVIOUSLY IT WILL BE OF

20    INTEREST HERE, BUT AS A MATTER OF PRECLUSIVE EFFECT, IT WOULD

21    NOT BE, GIVEN THE DIFFERENT STANDARDS UNDER RULE 23 AND FOR

22    OTHER REASONS.

23          THE COURT:  OKAY.

24          AND THE FINDING THAT THERE IS A PROPERTY RIGHT IN THIS

25    DATA ALLOWANCE, I MEAN, THAT FINDING HAS BEEN MADE AT THE

1    DEMURRER STAGE BY THE STATE COURT.

2          MR. SOMVICHIAN:  WELL, THE COURT OVERRULED OUR

3    DEMURRER AND ALLOWED THE CLAIM THAT PROCEED.  I DON'T THINK

4    THAT'S A FINDING THAT THERE IS A PROPERTY RIGHT IN ANYTHING.

5          THE COURT:  RIGHT, BUT AT LEAST THERE WAS SUFFICIENT

6    STATEMENT OF A CLAIM, RIGHT?

7          MR. SOMVICHIAN:  YES.

8          THE COURT:  THAT'S ALL THAT WE CAN CONCLUDE FROM

9    THAT.

10         SO IN THE CLASS CERT CONTEXT, IS THERE LIKELY TO BE -- ARE

11   YOU SUGGESTING THAT'S GOING TO BE A QUESTION FOR THE JURY

12   EVENTUALLY, WHETHER IT IS OR ISN'T A PERSONAL PROPERTY RIGHT?

13         [!EZ SPEAKER 02]:  WELL, I DON'T KNOW THAT.  IT

14   STRIKES ME AS AN ISSUE OF LAW THAT THE JUDGE WOULD INSTRUCT THE

15   JURY ON.  IT'S CONCEIVABLE THAT THERE MAY BE DISCOVERY THAT

16   MIGHT BE RELEVANT TO THAT DETERMINATION.  BUT SITTING HERE

17   TODAY, I CAN'T THINK OF WHAT THAT IS, BUT IT'S POSSIBLE.

18         THE COURT:  OKAY.

19         ALL RIGHT.  WELL, I WAS JUST TRYING TO THINK THROUGH HOW

20   THE STATE COURT PROCEEDING MIGHT IMPACT THIS PROCEEDING HERE AS

21   WE GO ALONG, IF WE GO ALONG.

22         IN TERMS OF THE SCHEDULE, AND I THINK I WON'T SET ONE

23   UNTIL I DECIDE THIS MOTION, AND I WOULD BE INTERESTED IN ANY

24   FURTHER THOUGHTS.  I MAY SOLICIT THE PARTIES' FURTHER VIEWS,

25   WHICH WOULD GIVE YOU AN OPPORTUNITY TO CONFER AFTER I REACH

1    THAT DECISION, BUT IF THE CASE DOES PROCEED, I USUALLY DON'T

2    SET A SCHEDULE BEYOND THE CLASS CERT STAGE.

3        JUST TO LET YOU KNOW, THAT'S MY USUAL PRACTICE IS WE GET

4    TO CLASS CERT AND THEN WE FIGURE OUT WHAT THE SCOPE OF THE CASE

5    IS AND THEN WE SET A FURTHER SCHEDULE FROM THERE.  AND IF THERE

6    ARE GOOD REASONS TO DO SOMETHING DIFFERENT, I WILL OF COURSE

7    HEAR FROM YOU ALL ABOUT THAT, BUT THAT'S MY NORMAL PRACTICE, SO

8    I'M LIKELY TO DO THAT.

9        BUT I THINK WHAT I MAY DO, I'M SORRY TO HAVE YOU ALL GIVE

10   THIS A GO MULTIPLE TIMES, IS I WILL DECIDE THE MOTION AND THEN

11   I WILL INVITE SOME UPDATE TO YOUR PROPOSAL FOR CASE MANAGEMENT

12   AND THEN I WILL ISSUE A CASE MANAGEMENT ORDER.

13       DOES THAT MAKE SENSE TO EVERYONE?

14           MR. SOMVICHIAN:  YES, YOUR HONOR.

15           [!EZ SPEAKER 02]:  YES, YOUR HONOR.

16           THE COURT:  OKAY.

17       ALL RIGHT.  WELL, IS THERE ANYTHING FURTHER FOR TODAY?

18       LET ME ASK THE PLAINTIFFS.

19           [!EZ SPEAKER 02]:  NO, YOUR HONOR.  THANK YOU.

20           THE COURT:  ANYTHING FURTHER FOR THE DEFENDANT?

21           MR. SOMVICHIAN:  NOT FOR US, YOUR HONOR.  THANK YOU.

22           THE COURT:  WELL, AGAIN, THANK YOU ALL VERY MUCH.  I

23    APPRECIATE THE ARGUMENTS TODAY.

24       THANK YOU.  THIS MATTER IS CONCLUDED.

25       (WHEREUPON THE MATTER WAS CONCLUDED.)

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185            DATED: 10/15/21