COOLEY LLP
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
KELSEY R. SPECTOR (321488)
(kspector@cooley.com)
LIZ SANCHEZ SANTIAGO (333789)
(lsanchezsantiago@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, EDWARD MLAKAR, MICK CLEARY, EUGENE ALVIS, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>GOOGLE LLC,<br><br>          Defendant. | Case No.  5:20-cv-07956-VKD<br><br>**GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:      March 29, 2022<br>Time:     10:00 a.m.<br>Judge:   Hon. Virginia K. DeMarchi |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD**

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF RELIEF SOUGHT ....................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITY ................................................................. 1

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND .......................................................................................................... 3

     A.   The Android Operating System. ..................................................................... 3

     B.   The Google Terms and Policies. .................................................................... 3

     C.   Procedural History. ........................................................................................ 4

     D.   Plaintiffs' Current Allegations. ..................................................................... 6

III. LEGAL STANDARD .................................................................................................. 7

IV.  ARGUMENT ............................................................................................................... 7

     A.   Plaintiffs Have Failed to State a Claim for Conversion. .............................. 7

          1.   The FAC offers no new allegations to alter the Court's holding that cellular data allowances are not personal property. ................................................................................................. 8

          2.   Plaintiffs have not alleged the remaining elements of conversion. ........................................................................................... 11

               a.   No interference. ................................................................. 11

               b.   No damages. ...................................................................... 13

               c.   Plaintiffs' conversion claim fails because they consented to the data transfers at issue. ........................... 14

     B.   Plaintiffs Are Not Entitled to Recover in Quantum Meruit. ....................... 16

          1.   The Court correctly ruled that Plaintiffs' quantum meruit claim is a common count that falls with their conversion claim. ..................................................................................... 16

          2.   Even if Plaintiffs' quantum meruit count were considered independently of conversion, it would still fail. ........................... 18

V.   CONCLUSION ........................................................................................................... 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Engineering Solutions Co., LLC v. Personal Corner, LLC*,
No. CV 20-5955-JFW (PLA), 2021 WL 1502705 (C.D. Cal. Feb. 25, 2021) ........................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 7

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 7

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
688 F. Supp. 2d 940 (N.D. Cal. 2010) ................................................................................. 8

*Chen v. Fleetcor Techs., Inc.*,
No. 16-CV-00135-LHK, 2017 WL 1092342 (N.D. Cal. Mar. 23, 2017) .............................. 18

*E.J. Franks Constr., Inc. v. Sahota*,
226 Cal. App. 4th 1123 (2014)........................................................................................ 18, 19

*English & Sons, Inc. v. Straw Hat Restaurants, Inc.*,
176 F. Supp. 3d 904 (N.D. Cal. 2016) ................................................................................. 14

*Farmers Ins. Exch. v. Zerin*,
53 Cal. App. 4th 445 (1997).................................................................................................. 8

*Farrington v. A. Teichert & Son, Inc.*,
59 Cal. App. 2d 468 (1943)............................................................................................... 7, 14

*In re Forchion*,
198 Cal. App. 4th 1284 (2011)............................................................................................. 8

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
148 Cal. App. 4th 97 (2007)...................................................................................... 7, 13, 15

*French v. Smith Booth User Co.*,
56 Cal. App. 2d 23 (1942)................................................................................................... 14

*Ikeda v. San Francisco Firemen Credit Union*,
No. 20-cv-08071-TSH, 2021 WL 4776705 (N.D. Cal. Oct. 13, 2021)................................. 18

*Jogani v. Super. Ct.*,
165 Cal. App. 4th 901 (2008)........................................................................................ 16, 18

*Jordan v. Talbot*,
55 Cal. 2d 597 (1961) .................................................................................................... 11, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Leadsinger, Inc. v. BMG Music Publ'g,*
512 F.3d 522 (9th Cir. 2008)..................................................................................... 19

*Levi Strauss & Co. v. Aetna Cas. & Sur. Co.,*
184 Cal. App. 3d 1479 (1986)................................................................................... 15

*McBride v. Boughten,*
123 Cal. App. 4th 379 (2004).................................................................................... 17

*McKell v. Wash. Mut., Inc.,*
142 Cal. App. 4th 1457 (2006).................................................................................. 15

*MKB Mgm't, Inc. v. Melikian,*
184 Cal. App. 4th 796 (2010).................................................................................... 16

*Monster Energy Co. v. Vital Pharms., Inc.,*
No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666 (C.D. Cal. May 20, 2019) ..................................................................................................................... 8

*Moore v. Regents of Univ. Cal.,*
51 Cal. 3d 120 (1990) ......................................................................................... 11, 15

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001)...................................................................................... 7

*PCO, Inc. v. Christen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,*
150 Cal. App. 4th 384 (2007).................................................................................... 13

*In re S and B Surgery Center,*
No. 20-56171, 2021 WL 4706214 (9th Cir. Oct. 8, 2021)........................................ 17

*San Joaquin Light & Power Corp. v. Costaloupes,*
96 Cal. App. 322 (1929)............................................................................................ 10

*In re Section 1031 Exch. Litig.,*
716 F. Supp. 2d 415 (D.S.C. 2010)............................................................................. 8

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016)................................................................................................... 10

*Supply Pro Sorbents, LLC v. RingCentral, Inc.,*
No. 16-cv-02113-JSW, 2017 WL 4685705, (N.D. Cal. July 17, 2017), *aff'd*
743 F. App'x 124 (9th Cir. 2018) .............................................................................. 12

*Sutherland v. Francis,*
No. 12-CV-05110-LHK, 2013 WL 2558169 (N.D. Cal. 2013)............................... 18

Cooley LLP
Attorneys at Law
San Francisco

iii

**Google's Motion to Dismiss**
**Plaintiffs' FAC**
**Case No. 5:20-cv-07956-VKD**

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Terrace Water Co. v. San Antonio Light & Power Co.*,
   1 Cal. App. 511 (1905).................................................................................... 10

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ................................................................................... 10

*Virtanen v. O'Connell*,
   140 Cal. App. 4th 688 (2006)............................................................................ 7

*Wade v. Sw. Bank*,
   211 Cal. App. 2d 392 (1962)........................................................................... 14

*Warth v. Seldin*,
   422 U.S. 490 (1975)........................................................................................ 10

*Worldwide Travel, Inc. v. Travelmate US, Inc.*,
   No. 14-cv-00155-BAS (DHB), 2015 WL 1013704 (S.D. Cal. Mar. 9, 2015) ........................ 15

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................. 15

*Zaslow v. Kroenert*,
   29 Cal. 2d 541 (1946) ..................................................................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)........................................................................... 19

**Statutes**

Cal. Civ. Code § 3336............................................................................................. 13, 14

Federal Rules of Civil Procedure 12(b)(6)....................................................................... 1, 7

**Other Authorities**

3 California Torts § 40.48(2) (2019)................................................................................ 14

4 Witkin Cal. Proc. 6th Plead § 572 (2021) ................................................................... 16

5 Witkin, Summary 11th Torts § 810 (2020)................................................................. 11, 12, 13

1 Corbin on Contracts (rev. ed. 1993) § 1.18.................................................................. 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE THAT** on March 29, 2022, at 10:00 a.m., or as soon thereafter as the motion may be heard, in the United States District Court for the Northern District of California, Defendant Google LLC ("Google") will move to dismiss Plaintiffs' First Amended Complaint ("FAC"). Google's Motion to Dismiss ("Motion") is made pursuant to Federal Rules of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Google's simultaneously filed Request for Judicial Notice, the Declaration of Kelsey Spector in support of Google's prior Motion to Dismiss Plaintiffs' Complaint and the exhibits thereto, (*see* ECF No. 33-1 ("Spector Decl.") & ECF Nos. 33-2-33-6)), all pleadings and papers on file in this matter, and such matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Google requests that the Court dismiss Plaintiffs' FAC in its entirety and with prejudice for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs have stated a cause of action for conversion where (a) this Court has already held Plaintiffs do not have a cognizable property interest in their cellular data allowances, (b) Plaintiffs fail to allege any interference with that purported interest or resulting damage, and (c) Google disclosed and Plaintiffs consented to the challenged conduct.

2.      Whether Plaintiffs have stated a common count for quantum meruit where (a) that claim is derivative of Plaintiffs' conversion claim, and (b) Plaintiffs fail to allege the parties understood Google would pay Plaintiffs for cellular data transmissions from their Android devices.

**MEMORANDUM OF POINTS AND AUTHORITY**

**I.      INTRODUCTION**

Plaintiffs' FAC fails to cure the fundamental deficiencies that led this Court to dismiss their Complaint the first time. Like before, Plaintiffs allege that their cell phones, which run on the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD**

Android operating system, function by communicating with Google's servers over cellular networks at times when users are not "actively" engaged with their device. But Plaintiffs offer no new allegations that can demonstrate that these data transfers entitle them to recover under the conversion and quantum meruit claims this Court previously rejected.

First, as this Court previously held, Plaintiffs do not have a personal property interest in their cellular data allowances, which are contractual rights to receive a service that is not exclusive to any one user. Because there are no new facts that could change that conclusion, Plaintiffs instead offer a series of cosmetic revisions in the FAC, including a change to the verbiage used to describe Plaintiffs' purported property interest and the introduction of a new Plaintiff who has a pay-per-gigabyte plan. These allegations, however, do not change the fundamental nature of Plaintiffs' cellular data plans. Nor do Plaintiffs' new allegations analogizing their cellular data allowances to utilities, which merely rehash Plaintiffs' prior failed legal arguments made when opposing Google's prior motion to dismiss. The Court rejected that argument before and should do so again.[1]

Second, in response to this Court's prior holding that cellular data plans do not constitute property, Plaintiffs pivot and focus their FAC on their quantum meruit count, contending that this claim survives independent of their conversion claim. But this too fails to save Plaintiffs' FAC. As this Court already held, Plaintiffs' quantum meruit claim, as a common count under California law, falls alongside their conversion claim because it is based on the same facts and seeks the same recovery. The FAC offers no new facts that could change that conclusion. Moreover, even if the quantum meruit claim could be considered on its own, it would still fail because Plaintiffs have not alleged that Google and Plaintiffs understood Google would pay Plaintiffs for data transmissions occurring over cellular data.

In sum, Plaintiffs' FAC suffers from the same basic defects of their original Complaint. That is no surprise, as the Court itself expressed skepticism that Plaintiffs could cure those

---

[1] For these reasons, Plaintiffs again have failed to demonstrate any property interest in their cellular data plans, which is sufficient reason to dispose of their conversion claim for a second time. But should the Court reach the remaining elements of Plaintiffs' conversion claim, Plaintiffs have failed to demonstrate those elements are satisfied either, as explained in Google's original Motion to Dismiss and as explained again here for convenience.

Cooley LLP
Attorneys at Law
San Francisco

2

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

deficiencies when granting Plaintiffs leave to amend.  The Court should not grant Plaintiffs a third bite at the apple and should dismiss their FAC with prejudice.

## II.    BACKGROUND

### A.    The Android Operating System.[2]

Google operates the Android operating system for mobile devices, which supports software applications and other modern smartphone functions.  (FAC ¶¶ 17, 25.)  To enable these features, Android devices are in regular communication with Google via the Internet.  (FAC ¶ 55; Spector Decl., Ex. B at 3 (describing "check ins" between Android devices and Google's servers aimed as confirming device health and providing security updates, bug fixes, new content, and other data).)  These data transfers happen automatically as part of the day-to-day functioning of Android devices.

Additionally, many of the mobile applications ("apps") that run on Android also must communicate with Google servers.  For example, the Gmail app must communicate with Google servers to send and receive emails, and Chrome must communicate with Google servers to "check for updates" and to "validate the current time."   (FAC ¶ 58; *see also* Spector Decl., Exs. B at 3, E at 2.)  Further, third-party applications that run on the Android operating system rely on Android's services, and these application-related data exchanges are also handled by the Android operating system.  (FAC ¶ 52.)

Transmissions of data from Android devices can occur over Wi-Fi networks when a Wi-Fi network is available and the device is connected.  Otherwise, when a user is not connected to Wi-Fi, data will generally be transmitted over cellular data networks, pursuant to a user's cellular data plan.  (FAC ¶ 29.)  For example, a user may receive a security patch from Google, even while out for the day and not connected to Wi-Fi, or may get routing information in Google Maps, even while driving.  (*See id.* ¶¶ 29, 55, 57.)  Some users do not regularly connect their Android devices to Wi-Fi networks at all, instead relying on their cellular data networks.  (*Cf. id.* ¶ 30.)

### B.    The Google Terms and Policies.

That Android devices communicate with Google is no secret.  Google expressly discloses

---

[2] While Google recognizes the Court is already familiar with the facts of this case, *see* ECF No. 51, Google repeats the basic background facts for context.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

as much, which Plaintiffs acknowledge.  (FAC ¶ 53 (admitting that Android users must enter various agreements with Google to use Android and other Google services).)  Specifically, among other contracts, Plaintiffs and other users agree to the Terms of Service, the Managed Google Play Agreement, and the Google Play Terms of Service, and Google also presents users with its Privacy Policy and the Google Chrome Privacy Notice  (collectively, "the Terms and Policies").  (*Id.* ¶ 54.) The Terms and Policies contain a number of provisions and disclosures regarding the transfer of data between Android devices and Google, none of which require Google to wait until the user is connected to Wi-Fi for the transfer to occur.  Examples include:

- "If you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services.  This information includes things like your device type, carrier name, crash reports, and which apps you've installed." (Spector Decl., Ex. B at 3; *see also* FAC ¶ 55.)

- "We collect information about the apps, browsers, and devices you use to access Google services . . . .  We collect this information when a Google service on your device contacts our servers—for example, . . . when a service checks for automatic updates." (Spector Decl., Ex. B at 3; *see also* FAC ¶ 55.)

- "Chrome periodically sends information to Google to check for updates, get connectivity status, validate the current time, and estimate the number of active users." (Spector Decl., Ex. E at 2; *see also* FAC ¶ 58.)

- "[U]sage statistics and crash reports are sent to Google to help us improve our products." (Spector Decl., Ex. E at 3; *see also* FAC ¶ 58.)

- "You may incur access or data fees from third parties (such as Your internet or mobile carrier) in connection with Your use of Applications and Service.  You are responsible for all such fees." (Spector Decl., Ex. C at 6.)

**C.  Procedural History.**

In their original Complaint, Plaintiffs Taylor, Mlakar, Cleary, and Alvis—four individuals who use Android cell phones—alleged that Google stole their cellular data allowances when their

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

Android devices transmitted information to Google servers over cellular networks at times when they were not "actively" using their devices.  (ECF No. 1 ¶¶ 32, 65-66.)  Plaintiffs asserted claims for conversion and quantum meruit.  (*Id.* ¶¶ 62-74.)

Google moved to dismiss the Complaint in its entirety, which the Court granted on October 1, 2021. (*See generally* ECF No. 51.)  Regarding the conversion claim, the Court found that Plaintiffs lack a property interest in their cellular data plans, explaining as follows:

> [A] data allowance provides subscribers, such as plaintiffs, with a contractual right of access to a service, i.e., access to a service provider's cellular data network that enables users to send and receive information over the internet without a Wi-Fi connection. . . . [T]hat right of access is not exclusive of others' right of access to the same network, and no subscriber possesses or controls a particular byte or bytes of data in the network. . . .Thus, while plaintiffs assert that their service provider contracts give them a possessory interest in cellular data that exists independent of the contacts, the complaint's allegations indicate that plaintiffs' purported property right in purchased data allowances is a right to obtain services conferred by their contracts with the service providers.

(*Id.* at 9-10 (quotations and citations omitted).)  Because cellular data allowances are not "personal property" but rather contractual rights, the Court dismissed the conversion claim as a matter of law. (*Id*. at 13.)  The Court did not reach Google's remaining arguments for why Plaintiffs' conversion claim fails as the Court's finding on Plaintiffs' lack of a property interest was dispositive.  (*Id.*)  Further, while the Court granted leave to amend, it expressed skepticism that Plaintiffs could successfully amend to state the facts needed to support a conversion claim: "Plaintiffs have not articulated any additional facts that could be alleged on an amendment to support a plausible claim for conversion. For the reasons stated above, the Court doubts whether they can do so." (*Id*. at 15.)

The Court next held that Plaintiffs' common count of quantum meruit claim fell alongside their conversion claim. (*See* ECF No. 51 at 13-14.)  For context, Google had argued that Plaintiffs' quantum meruit claim—as a common count under California law—failed along with the conversion claim because it relied on the same facts (the alleged use of cellular data) and sought the same recovery (the value of that cellular data) as did their conversion claim. (ECF No. 33 at 19.)  In their opposition, Plaintiffs did not contest that quantum meruit is a common count or meaningfully contest this characterization of their quantum meruit claim. (ECF No. 39 at 27-28; ECF No. 51 at

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

14-15.) At oral argument, however, Plaintiffs argued that their quantum meruit theory entitles them to recover not just the value of their cellular data allowances (the same remedy sought on their conversion claim) but also the value of the personal data contained in the alleged passive transfers. (*See* ECF No. 51 at14-15.)  The Court rejected Plaintiffs' arguments across the board.  Applying the standard for common counts, the Court held the quantum meruit theory failed because it "indisputably is based on all the same facts as the conversion claim" and "appears to seek precisely the same monetary recovery." (*See* ECF No. 51 at 14-15.)  Further, the Court held there was no support in the Complaint or Plaintiffs' opposition for the theory that Plaintiffs were entitled to recover the purported value of their personal data and barred Plaintiffs from pursuing any such theory in their FAC.  (*See id.* at 15.)  Given its ruling, the Court did not reach Google's additional arguments that Plaintiffs' quantum meruit claim would still fail even if it could survive independently.  (*See id.* at 13-14.)

### D.  Plaintiffs' Current Allegations.

Plaintiffs' FAC largely repeats the same allegations that this Court previously found insufficient to state a claim for relief.  Specifically, Plaintiffs are individuals who use cell phones that run on the Android operating system and who contracted with various providers to receive cellular data services: Plaintiff Taylor purchased a monthly unlimited data plan from Metro by T-Mobile; Plaintiff Mlakar purchased a monthly unlimited plan from Sprint; Plaintiff Cleary purchased a monthly unlimited plan from Verizon; Plaintiff Alvis purchased a monthly limited plan from Verizon; and Plaintiff Nelson, a new addition to this case, purchased a pay-per-gigabyte plan from Spectrum Mobile.  (FAC ¶¶ 12-16.)  Plaintiffs Taylor, Mlakar, and Cleary—by virtue of having an unlimited plan—have no caps on their data usage and incur no additional charges based on the volume of data they use.  (*Id.* ¶ 31.)  Plaintiff Alvis is subject to a limit on his monthly data usage and has changed that limit "from time to time." (*Id.* ¶ 15.)  Plaintiff Nelson pays a fixed price for each gigabyte of data she uses and is charged for an additional gigabyte each time she exceeds the prior gigabyte of data.  (*Id.* ¶ 16.)  Plaintiffs allege their "cellular data" is property that Google tortiously converts when Plaintiffs' Android devices transmit data to Google over cellular networks.  (*Id.* ¶¶ 100-104.)  Like before, no Plaintiff alleges that these data transfers ever interfered

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
6
GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

with the use of their devices or data plans, or that they were charged more due to the alleged "conversion."

The FAC also introduces a few categories of nominally new allegations. First, Plaintiffs introduce Plaintiff Nelson and describe how her data plan differs from the other Plaintiffs'. (FAC ¶¶ 16, 31.) Second, Plaintiffs change the nomenclature they use to refer to their "property interest" from one in "cellular data allowances" to one in "cellular data." (*See, e.g.*, *id.* ¶¶ 6-7.) Third, Plaintiffs introduce new allegations that analogize their cellular data allowances to utilities in an attempt to show they have a property interest. (*Id.* ¶¶ 4, 53-76.) Fourth, Plaintiffs contend their quantum meruit claim is not a common count and does not depend on a viable conversion claim. (*See id.* ¶¶ 3, 5, 10, 77-83.) Fifth, Plaintiffs introduce allegations purporting to show Google benefits from the data transfers at issue. (*Id.* ¶¶ 1, 51-52.) For the reasons given below, these new allegations do not cure the threshold deficiencies that caused Plaintiffs' original Complaint to fail.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a claim from dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," the claim must be dismissed. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## IV.    ARGUMENT

### A.    Plaintiffs Have Failed to State a Claim for Conversion.

To plead conversion, a plaintiff must demonstrate: "(1) the plaintiff's ownership or right of possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007). A plaintiff must also show that they did not consent to the alleged conduct, as consent defeats a conversion claim. *See, e.g.*, *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 716-17 (2006); *Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468, 474 (1943). Plaintiffs' conversion claim fails at each of these gateways.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

**1. The FAC offers no new allegations to alter the Court's holding that cellular data allowances are not personal property.**

This Court previously ruled, consistent with established authority, that Plaintiffs cannot bring a conversion claim based on purported interference with their contractual rights to receive services under their cellular data plans. (*See* ECF No. 51 at 9-13); *see also, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (dismissing conversion claim based on contractual right to shelf space in stores because "the benefits of contractual rights are not personal property capable of conversion"); *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) ("a mere contractual right to payment, without more, will not suffice" to support a claim for conversion); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010) (holding contractual importation rights were contract rights and therefore not subject to conversion); *In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 426 (D.S.C. 2010) (interpreting California law and finding "intangible contract rights" were not property and therefore not subject to conversion); *cf. also In re Forchion*, 198 Cal. App. 4th 1284, 1308-10 (2011) (reasoning that contractual right to services are not property).

Plaintiffs offers no new facts in the FAC to support a contrary finding. In particular, the FAC is devoid of any new "facts demonstrating a right to exclusive access to unique or specific bytes of cellular data." (ECF No. 51 at 10; *see also id.* at 9 (emphasizing that the conversion claim failed because Plaintiffs did not "allege facts demonstrating exclusive possession of the 'purchased data allowances' for which they contract").) Instead, the FAC's new allegations are comprised of superficial changes in wording and recycled legal arguments that were previously rejected by this Court—none of which cure the basic deficiency in Plaintiffs' conversion theory.

***First***, Plaintiffs have removed all references to "cellular data allowances"—which the Court held cannot support a claim for conversion—and replaced it with the shorter phrase "cellular data." (*Compare, e.g.*, ECF No. 1 ¶¶ 3-4, *with* ECF No. 60 ¶¶ 6-7.) But that cosmetic change in no way changes the substance of Plaintiffs' theory. Regardless of whether the purported property interest is labeled one in "cellular data" or one in "cellular data allowances," Plaintiffs are claiming an

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

interest in a right to receive services that would not exist but-for their contracts with their cellular providers. As this Court previously recognized, such "benefits of contractual rights are not personal property capable of conversion" because Plaintiffs' contracts with their carriers do not "confer ownership of . . . unique or specific bytes of data" and instead gives them "a contractual right to access the carrier's network . . . that is not exclusive of others' rights to access the same network." (ECF No. 51 at 9-10 (quotation omitted).) The FAC contains no new facts about Plaintiffs' cellular data plans that could undermine this straightforward conclusion.

*Second*, and relatedly, the FAC contains a new section in which Plaintiffs make various analogies to utilities in an effort to explain how Plaintiffs purportedly have exclusive possession and control of their "cellular data." (FAC ¶¶ 63-72.) But these are not new facts; they are simply recycled legal arguments the Court already considered and rejected in dismissing Plaintiffs' conversion claim before. For example, the FAC alleges that "[e]lectricity is considered property under California law, and cellular data is analogous to electricity." (FAC ¶ 63.) That merely repackages the argument Plaintiffs made before in opposing Google's opposition, when they claimed that "wireless carriers are delivering . . . a product not a service . . . in the same way that utility companies provide customers with . . . recognized personal property like electricity, water, or natural gas." (ECF 39 at 20.) The Court rightly rejected this analogy to utilities because, unlike cases involving utilities, Plaintiffs' complaint did not establish "that use of a cellular data network involves the exclusive consumption of a quantum of data or that plaintiffs have exclusive possession or control of unique or specific bytes of data." (ECF No. 51 at 10). The Court need not revisit that finding simply because Plaintiffs have repackaged their rejected legal arguments as new allegations in their FAC.[3]

---

[3] Moreover, Plaintiffs' description of how cellular data services are authenticated and measured through the use of SIM cards, as well as their assertion that cellular data attributed to a user's plan constitutes a "unique quantum of energy," do not cure their prior failures. (*See, e.g.*, FAC ¶ 65 ("[T]he carrier uses unique identifiers to track and tally all consumption of cellular data as information is transmitted to or from a mobile device."); *id.* ¶ 66 ("These unique identifiers allow carriers to precisely meter the amount of cellular data that each wireless device has consumed.").) These allegations establish only the way in which Plaintiffs' use of cellular data services are *measured and the manner by which they access a cellular service.* But once again, Plaintiffs do not assert (nor could they) that they have a claim or legal entitlement to "exclusive" bytes of data under their contracts with their carriers. (ECF No. 51 at 9.)

Cooley LLP
Attorneys at Law
San Francisco

9

Google's Motion to Dismiss
Plaintiffs' FAC
Case No. 5:20-cv-07956-VKD

In any event, Plaintiffs are wrong that California law treats utilities as unequivocal property, and their extended analogy to utilities is thus misguided.  Specifically, a California court has rejected the broad reading of *Terrace Water Co. v. San Antonio Light & Power Co.*, 1 Cal. App. 511 (1905), that Plaintiffs urged this Court to adopt in the prior round of briefing.  (*See* ECF No. 39 at 14); *see also San Joaquin Light & Power Corp. v. Costaloupes*, 96 Cal. App. 322, 327, 329-30 (1929) ("A careful reading of the *Terrace Water Company* Case will show that the court had no intention of establishing a doctrine" that a contract for electricity "was nothing more than an agreement of sale of personal property.").

**Third**, Plaintiffs add Plaintiff Nelson to their FAC and attempt to rely on her pay-per-gigabyte plan to establish that cellular data allowances are property capable of exclusive possession and control.  (*See* FAC ¶¶ 16, 31, 74-76).  But as Plaintiffs themselves admit, "[t]he type of cellular plan offered by the carrier **does not change the nature of the thing sold**, it merely changes the pricing."  (*Id.* ¶ 73 (emphasis added).)  Thus, by Plaintiffs' own logic, Plaintiff Nelson's plan does not alter the Court's prior conclusion that cellular data allowances purchased from carriers are contractual rights to receive services and not property.

For these reasons, this Court should affirm its prior conclusion that the right to receive cellular data services from cellular carriers are just that—contractual rights to receive services and not property.[4]

---

[4] While this Court held that "the questions of standing and failure to state a claim are intertwined" and addressed Google's standing arguments by relying on its conclusion that Plaintiffs lacked a property interest (*see* ECF No. 51 at 6-7), Plaintiffs would lack standing even if Plaintiffs had shown their cellular data plans are property.  To demonstrate standing under Article III, Plaintiffs must allege they "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  Thus, not all invasions of a "legally protected interest" can constitute an "injury in fact." *See id.*; *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (allegations that ERISA plan administrators violated their duties of loyalty and prudence were insufficient to create standing where plaintiffs "ha[d] not sustained any monetary injury").  Here, Plaintiffs have not alleged they personally suffered any concrete interference with their ability to use their cellular data plans or resulting damages, and their appeal to hypothetical injuries is insufficient. See *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (named plaintiffs "must allege and show that they personally have been injured").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

**2.      Plaintiffs have not alleged the remaining elements of conversion.**

Because Plaintiffs have failed to allege any facts that can change the conclusion that Plaintiffs' contractual rights in their cellular data plans are not personal property, the Court need not reach the additional elements of Plaintiffs' conversion claim.  But in the event Court finds that Plaintiffs have stated a viable property interest, Google reiterates its arguments that Plaintiffs' conversion claim fails for the additional reasons that (1) Plaintiffs have not alleged Google interfered with their rights, (2) Plaintiffs have not alleged that Google caused them resulting damages, and (3) Plaintiffs' allegations show they consented to the transfers at issue.

**a.      No interference.**

Conversion requires "actual interference with [a party's] ownership or right of possession" to property.  *Moore v. Regents of Univ. Cal.*, 51 Cal. 3d 120, 136 (1990) (citation omitted).  This interference must be "substantial"—mere "use" of or "intermeddling" with property is not sufficient.  *Jordan v. Talbot*, 55 Cal. 2d 597, 610 (1961) (holding defendants' removal and storage of plaintiff's personal property did not suffice to state a conversion claim).  Instead, the interference must be so serious that the plaintiff is justified in recovering the "full value of the property" at issue, "in effect forcing the defendant to buy it."  5 Witkin, Summary 11th Torts § 810 (2020).

Plaintiffs have not met that high bar.  Nothing in the Complaint suggests that "passive" data transfers interfered with Plaintiffs' cellular data allowances to such a degree that they amount to an "exercise of dominion or control" by Google over Plaintiffs' data plans.  *Jordan*, 55 Cal. 2d at 610.  In fact, Plaintiffs do not allege they were impacted **at all** by the alleged "conversion" of property in this case other than by **benefiting** from the security updates, enhanced reliability, and services enabled by the passive data transfers about which Plaintiffs complain.  For example, Plaintiffs do not allege that they were ever prevented from using their cellular data allowances, as they would be if an individual had transferred their data plans to another mobile device.

To illustrate, Plaintiffs Alvis and Nelson, who respectively have limited and pay-per plans, do not allege that the data transfers at issue prevented them from using as much data as they wanted or interfered with their data plan in any other way.  (*See* FAC ¶¶ 15-16.)  In fact, while Plaintiff Nelson makes a number of allegations about how she is charged for each gigabyte of data she uses

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

in a given month, she is conspicuously silent on whether the alleged transfers caused her to pay for an additional gigabyte or prevented her from enjoying a gigabyte of data she had already accrued. (*See id.* ¶ 16.)  The same goes for Plaintiff Alvis, who is also silent on whether the alleged passive transfers ever caused him overage fees or prevented him from using as much data as he wanted. (*See id.* ¶ 15.)

Further, the remaining Plaintiffs—Plaintiffs Taylor, Mlakar, and Cleary—could not possibly have suffered sufficient interference because they have unlimited plans.  (*See* FAC ¶¶ 12-14.)  In other words, no matter how much cellular data was used for "passive" transfers to and from these Plaintiffs' devices, those transfers would not have prevented the Plaintiffs from using their data plans however they wished because of their unlimited data allowances.  And while these three Plaintiffs make generalized references to "throttling," (*see id.* ¶ 31), they do not allege that their data speeds were ever throttled, much less due to any "passive" data transfers, (*see id.* ¶¶ 12-14).  Regardless, Plaintiffs do not allege how any such throttling, if it occurred at all, could possibly have interfered with Plaintiffs' use of their data plans to such a degree that they would be entitled to the "full value" of their data plans.  5 Witkin, Summary 11th Torts § 810 (2020); *see, e.g.*, *Zaslow v. Kroenert*, 29 Cal. 2d 541, 551 (1946) (in bank) (conversion does not exist "[w]here the conduct complained of does not amount to a substantial interference with possession or the right thereto").

Instead, Plaintiffs appear to take the position that Google's alleged "use" of their cellular data for passive data transfers—by itself and without more—constitutes a substantial interference. (*See, e.g.*, FAC ¶¶ 35-52.)  But the case law is clear that mere use of property is not sufficient to establish the substantial interference needed to support a conversion claim.  *See, e.g.*, *Jordan*, 55 Cal. 2d at 610 ("use" and "intermeddling" of property are not sufficient).  For example, in *Supply Pro Sorbents, LLC v. RingCentral, Inc.*, plaintiff brought a conversion claim based on the alleged use of their fax machines to "add[] an unsolicited advertisement . . . [to] documents sent by facsimile."  No. 16-cv-02113-JSW, 2017 WL 4685705, at *1 (N.D. Cal. July 17, 2017), *aff'd* 743 F. App'x 124 (9th Cir. 2018).  The court dismissed the claim with prejudice because the alleged interference "would not have seriously interfered with Plaintiff's right to control its property" and so did not "amount to a conversion."  *Id.* at *5-6.  As the Court explained, "there may be minor and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

unimportant dispossessions which do not seriously interfere with the other's right of control, and so do not amount to a conversion." *Id.* at *5 (alterations omitted). Similarly, here, the mere allegation that the Android operating system made use of Plaintiffs' cellular data allowances to service their cell phones—without any allegations showing that such transfers "seriously interfered" with Plaintiffs' use of their data plans—fails to demonstrate the substantial interference needed to support a conversion claim.

### b.    No damages.

In addition to allegations of interference, "[a] cause of action for conversion [also] requires allegations of . . . damage to plaintiff." *PCO, Inc. v. Christen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007); *see also Fremont*, 148 Cal. App. 4th at 119 (conversion requires both interference and "resulting damage"). Here, Plaintiffs have alleged no facts showing *any* damages, much less damages sufficient to entitle them to payment for the "full value" of their cellular data allowances. *See, e.g.*, Witkin § 810. In particular, the Plaintiffs with unlimited data plans could not have suffered any amount of monetary damages, as they would not be subject to increased fees no matter the amount of data used for passive transfers, nor would they be prevented from using as much data as they wanted. (*See* FAC ¶¶ 12-14.) And Plaintiffs Alvis and Nelson, who respectively have limited and pay-per plans, do not allege that Google used data in an amount that caused them to pay any more for their plans or prevented them from using the data for which they had already paid. (*See id.* ¶¶ 15-16.) For example, if Plaintiff Alvis had a data plan allowing him to use up to 10 gigabytes per month but never used more than five gigabytes, he would not have suffered any damages if the alleged passive data transfers did not cause the total use to exceed 10 gigabytes. Similarly, if Plaintiff Nelson never used more than 1 gigabyte of data, or if she used 1.6 gigabytes through her own active use of the device and the alleged passive data transfers at issue constituted another .2 gigabytes of data, she too would not have suffered any damages. Accordingly, Plaintiffs have failed to allege, as they must, that they suffered damages. *See PCO*, 150 Cal. App. 4th at 395 (party must allege damages to state a conversion claim).[5]

---

[5] California law provides that the damages for conversion is "presumed to be . . . [t]he value of the property at the time of the conversion" or other alternative measures. Cal. Civ. Code § 3336. This statute clarifying the available *measures* of damages does not excuse a plaintiff from alleging and

Cooley LLP
Attorneys at Law
San Francisco

13

Google's Motion to Dismiss
Plaintiffs' FAC
Case No. 5:20-cv-07956-VKD

**c.   Plaintiffs' conversion claim fails because they consented to the data transfers at issue.**

Even if Plaintiffs had demonstrated a property interest, inference, and damages, Plaintiffs' conversion claim would fail for the further reason that they consented to the data transfers they now challenge. "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington*, 59 Cal. App. 2d at 474; *see also French v. Smith Booth User Co.*, 56 Cal. App. 2d 23, 27-28 (1942); 3 California Torts § 40.48(2) (2019) (noting that burden is on plaintiff to show lack of consent in order to show taking was wrongful). Express consent applies where a plaintiff agreed to the challenged conduct through an oral or written agreement. *See*, *e.g.*, *Wade v. Sw. Bank*, 211 Cal. App. 2d 392, 406 (1962) (explaining, in the context of a conversion claim, that "[e]*xpress consent* is that directly given," including "in writing"). Further, where a plaintiff tacitly agrees to conduct of which they are aware, a claim for conversion also will not lie. *Farrington*, 59 Cal. App. 2d at 473-74.

As noted above, the Google Privacy Policy discloses that: "If you're using an Android device with Google apps, your device periodically contacts Google servers to provide information about your device and connection to our services." (*Id.* ¶ 55; *see also* Spector Decl., Ex. B at 3.) Google also discloses more specific transfers. For example, the Chrome Privacy Notice makes clear that Chrome may automatically send information to Google in order to check for updates and that their devices will send usage and crash reports to Google to help improve the Android system. (*See* FAC ¶ 58; *see also* Spector Decl., Ex. E at 2-3.). Plaintiffs also agreed to a range of more specific data transfers to Google, as set forth in other terms and disclosures, and that they would be responsible for mobile data fees associated with their use of an Android device. (*See* Spector Decl., Ex. C at 6.)

Plaintiffs do not deny that Google disclosed the disputed transfers in the Terms and Policies. In fact, Plaintiffs allege that Android users "must accept standardized form contracts to use"

---

proving the ***fact*** that she suffered damages. *See English & Sons, Inc. v. Straw Hat Restaurants, Inc.*, 176 F. Supp. 3d 904, 925 (N.D. Cal. 2016) (Section 3336 did not excuse party bringing conversion claim from presenting evidence of damages).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

Android and other Google services and that Google's Terms and Policies "inform[] the users of certain transfers of personal information." (FAC ¶¶ 8, 53.) In an effort to avoid Google's disclosures and their related consent, Plaintiffs claim they (1) consented *only* to data transfers transmitted over Wi-Fi and data transfers over cellular networks "when they are actively engaged with their devices" (so called "active" use), and (2) did *not* consent to data transfers over cellular networks during so-called "passive" use. (*Id.* ¶¶ 8, 43.)

The Terms and Policies, however, do not state, or even suggest, any such limitations. Plaintiffs cannot rewrite the Terms and Policies to introduce limitations regarding Wi-Fi versus cellular transmissions or "active" versus "passive" use. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1031 (N.D. Cal. 2014) (rejecting argument that Yahoo Mail users did not consent to Yahoo "collecting" and "storing" email content for "future use" where Yahoo's terms disclosed that Yahoo would "scan and analyze" emails, which "necessarily mean[t] Yahoo simultaneously collects and stores the email content"); *Levi Strauss & Co. v. Aetna Cas. & Sur. Co.*, 184 Cal. App. 3d 1479, 1486 (1986) ("The court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there."); *see also id.* ("Courts will not add a term about which a contract is silent.").

But even if Plaintiffs could plausibly dispute the scope of the disclosures included in the Terms and Policies and their related consent, such a dispute is **not** properly resolved through a claim for conversion. *See*, *e.g.*, *Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-cv-00155-BAS (DHB), 2015 WL 1013704, at *10 (S.D. Cal. Mar. 9, 2015) (finding that dispute over whether consent provided reached the alleged conduct was no basis for claim of conversion, as it was not akin to "outright theft" embodied by a conversion claim); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491-92 (2006) (finding no claim for conversion or bailment for alleged "overcharge" beyond contractual consent). Because Plaintiffs' allegations involve a dispute over their consent, the Court should refuse to recognize Plaintiffs' unprecedented conversion claim in this case. *Fremont Indem.*, 148 Cal. App. 4th at 119 (cautioning against expansion of conversion doctrine where other legal doctrines apply); *Moore*, 51 Cal. 3d at 142-46 (similar).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

**B.    Plaintiffs Are Not Entitled to Recover in Quantum Meruit.**

In an attempt to pivot away from their failed conversion claim, Plaintiffs now focus on their quantum meruit theory, making it the first count in the FAC.  But as the Court previously found, Plaintiffs' quantum meruit claim is a common count that must be dismissed along with their conversion claim because it is based on the same facts and seeks the same recovery.  (ECF No. 51 at 13-15.)  Notwithstanding a boilerplate assertion that "[t]he quantum meruit claim pleading in [their FAC] is not a common count derivative of their conversion claim," (FAC ¶ 5), the FAC offers no basis to disturb this finding.  And even if Plaintiffs' quantum meruit claim were considered independently of conversion, it would still fail because (1) Plaintiffs have not shown, as they must, that the parties mutually understood Google would compensate them for data transfers occurring over cellular data.  The Court should thus again dismiss Plaintiffs' quantum meruit claim.

**1.    The Court correctly ruled that Plaintiffs' quantum meruit claim is a common count that falls with their conversion claim.**

Rather than plead new facts to show that their quantum meruit theory is independent of the conversion claim, Plaintiffs simply proclaim in the FAC that: "The quantum meruit claim pleaded in this Amended Complaint is not a common count derivative of the conversion claim."  (*See* FAC ¶ 5.)  But simply saying as much does not make it so.

First, this Court has already ruled that quantum meruit *is* a common count, and this finding is the law of the case.  (ECF No. 51 at 13-15 (applying standard for common counts to quantum meruit).)  Even if Plaintiffs could revisit this legal issue, overwhelming authority establishes that quantum meruit is a common count under California law.  *See, e.g.*, *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 905-07 (2008) (surveying the history of the "common count for quantum meruit"); *MKB Mgm't, Inc. v. Melikian*, 184 Cal. App. 4th 796, 806-07 (2010) (analyzing plaintiff's quantum meruit claim in section addressing "common counts"); CACI No. 371, Common Count: Goods and Services Rendered (setting forth jury instructions and collecting authorities regarding quantum meruit as a common count); 4 Witkin Cal. Proc. 6th Plead § 572 (2021), *Quantum Meruit (Services)* (describing "count on quantum meruit" in chapter on Common Counts).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

As a common count, quantum meruit is "not a specific cause of action" but rather "a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." (ECF No. 51 at 13 (quoting *McBride v. Boughten*, 123 Cal. App. 4th 379, 394 (2004)).) As this Court recognized, quantum meruit thus rises or falls with the specific cause of action from which it derives when it "is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts." (*Id.*); *see also In re S and B Surgery Center*, No. 20-56171, 2021 WL 4706214, at *1 (9th Cir. Oct. 8, 2021) (same).

Second, while Plaintiffs declare that their quantum meruit claim as pled is "not … derivative of the conversion claim," (FAC ¶ 5), even a cursory review of the FAC shows otherwise. Plaintiffs introduce no new facts specific to their quantum meruit claim and instead base that claim on the same allegations supporting their conversion claim. Indeed, virtually all of the new "allegations" in the FAC consist of recycled legal arguments about why Plaintiffs supposedly have a property interest in their data plans that can support conversion, as discussed in Section IV.A.1 above, which Plaintiffs "re-allege and incorporate by reference" in their entirety to support their quantum meruit claim. (*See* FAC ¶ 92).[6] Moreover, Plaintiffs allege in the quantum meruit section of the FAC that Google "used Plaintiffs' cellular data to collect and transmit information." (FAC ¶ 94; *see also id*. ¶ 93 (alleging, as basis of quantum meruit, that Google "used valuable cellular data services that Plaintiffs purchased").) That is precisely the same allegation on which Plaintiffs base their conversion claim. (*See, e.g.*, FAC ¶ 102 (alleging Google committed conversion by "appropriating their cellular data to transfer information").) In short, the quantum meruit claim is "based on the same facts" as Plaintiffs' conversion theory, just as it was in their original Complaint. (ECF No. 51 at 13-14.)

Moreover, Plaintiffs' quantum meruit claim continues to seek the exact same recovery as their conversion claim. As the Court held, the quantum meruit and conversion claims in the prior Complaint involved duplicative remedies because both sought to recover "the value of the cellular

---

[6] The Court looked to a similar incorporation by reference in the prior Complaint when concluding that the quantum meruit claim was derivative of conversion. (*See* ECF No. 51 at 14 (noting Plaintiffs' quantum meruit claim "simply reallege[d] and incorporate[d] by reference all of the preceding allegations in the complaint").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

data used by Google." (ECF No. 51 at 14.) These allegations remain unchanged in the FAC, with Plaintiffs continuing to seek "the reasonable value of the cellular data usurped by Google" as the remedy for quantum meruit. (*See* FAC ¶¶ 99 (setting forth remedy for quantum meruit claim); *see also* ECF No. 51 at 15 (limiting Plaintiffs' right to amend relief sought in quantum meruit claim).) This redundant remedy further confirms that Plaintiffs' quantum meruit theory is a derivative common count that must be dismissed along with the conversion claim. *See, e.g.*, *Ikeda v. San Francisco Firemen Credit Union*, No. 20-cv-08071-TSH, 2021 WL 4776705, at *17 (N.D. Cal. Oct. 13, 2021) (common count sought same recovery as specific cause of action where both claims sought to recover same monetary amount); *Chen v. Fleetcor Techs., Inc.*, No. 16-CV-00135-LHK, 2017 WL 1092342, at *12 (N.D. Cal. Mar. 23, 2017) (same); *Sutherland v. Francis*, No. 12-CV-05110-LHK, 2013 WL 2558169, at *4 (N.D. Cal. 2013) (same).

### 2. Even if Plaintiffs' quantum meruit count were considered independently of conversion, it would still fail.

Even if the quantum meruit claim were considered independently of Plaintiffs' failed conversion theory, nothing in the FAC suggests that Plaintiffs would be entitled to recover under quantum meruit, which applies only in specific circumstances not applicable here. Specifically, "[q]uantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *E.J. Franks Constr., Inc. v. Sahota*, 226 Cal. App. 4th 1123, 1127 (2014) (citation and internal quotations omitted).[7] Given quantum meruit's purpose of allowing a plaintiff to recover payment for services "not gratuitously rendered" to a defendant, a plaintiff "must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Id.* at 1127 (internal quotation marks omitted). Plaintiffs allege no such facts and their quantum meruit theory fails as a result.

---

[7] Quantum meruit derives from the common law writ of assumpsit. "Assumpsit 'was available for the collection of debts, whether for reasonable value (quantum meruit for services, quantum valebant for goods) or for a sum certain." *Jogani*, 165 Cal. App. 4th at 906 (internal quotation marks omitted) (quoting 1 Corbin on Contracts (rev. ed. 1993) § 1.18)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD

*Advanced Engineering Solutions Co., LLC v. Personal Corner, LLC*, No. CV 20-5955-JFW (PLA), 2021 WL 1502705 (C.D. Cal. Feb. 25, 2021), is instructive. That case involved a complex commercial dispute between two companies engaged in a joint venture, their corporate family members, and their executives. *See id.* at *1-*2. Relevantly, the defendant filed a quantum meruit counterclaim against the plaintiff's purported alter ego, alleging that the purported alter ego "received a benefit . . . but provided no reciprocal benefit (and indeed harmed [the defendant])." *Id.* at *7. The court held such allegations were insufficient to sustain the defendant's quantum meruit counterclaim because the defendant "fail[ed] to allege that there was any implied promise to pay . . . or that [defendant] expected to be paid," which is a "required element" of a quantum meruit claim. *Id.*

Similarly here, Plaintiffs make no effort to allege facts showing either that Google made an "implied promise to pay" Plaintiffs for "passive" data transfers occurring over cellular networks or that Plaintiffs "expected to be paid" by Google for such data transmissions. *Advanced Eng'g Sols.*, 2021 WL 1502705 at *7; *see also E.J. Franks Constr.*, 226 Cal. App. 4th at 1127. In fact, the fundamental premise of Plaintiffs' FAC contradicts any such contention. Specifically, Plaintiffs repeatedly allege that they were not aware of and did not consent to the data transfers at issue.[8] (*See, e.g.*, FAC ¶¶ 53-58.) As such, Plaintiffs cannot also claim to have understood that Google would compensate them for any passive transfers of data over cellular networks.

## V.   CONCLUSION

Courts have discretion to "deny leave to amend due to . . . repeated failure to cure deficiencies by amendments previously allowed . . . and futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks omitted); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (courts need not permit amendment where "any amendment would be futile"). In dismissing the prior Complaint, the Court rightly expressed skepticism that Plaintiffs could successfully amend to state new facts to save their conversion and quantum meruit claims. (ECF No. 51 at 15 ("Plaintiffs have not

---

[8] This failure is particularly notable because Google emphasized this failure in its briefing on its prior Motion to Dismiss. (ECF No. 42 at 15.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

articulated any additional facts that could be alleged on an amendment to support a plausible claim for conversion. For the reasons stated above, the Court doubts whether they can do so.").)  The FAC confirms the Court's doubts and shows beyond question that any further amendments would be futile.  Accordingly, the Court should now dismiss the FAC with prejudice.

Dated: January 31, 2022                    COOLEY LLP


                                           By: /s/ Whitty Somvichian
                                                Whitty Somvichian

                                           Attorneys for Defendant
                                           GOOGLE LLC

261500720

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

GOOGLE'S MOTION TO DISMISS
PLAINTIFFS' FAC
CASE NO. 5:20-CV-07956-VKD