UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 20-cv-07956-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 65 |

Defendant Google LLC ("Google") moves pursuant to Rule 12(b)(6) to dismiss plaintiffs' first amended complaint ("FAC"). Plaintiffs oppose the motion. Upon consideration of the moving and responding papers,[1] as well as the oral arguments presented, the Court grants Google's motion to dismiss without leave to amend.[2]

**I.   BACKGROUND**

Plaintiffs Joseph Taylor, Edward Mlakar, Mick Cleary, and Eugene Alvis, each of whom are non-California residents and domiciliaries, filed this putative class action against Google, asserting claims for conversion and quantum meruit based on alleged "passive" data transfers performed by Google over its Android operating system. The alleged passive data transfers are made without plaintiffs' knowledge or consent, and at times when their mobile devices are idle,

---

[1] In resolving the present motion, the Court finds it unnecessary to consider the various terms of service and policies Google submitted for judicial notice (Dkt. No. 65-1), or the declaration of Marc A. Wallenstein submitted in support of plaintiffs' opposition (Dkt. No. 67-1). Google's request for judicial notice is denied as moot.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 16, 23.

1  stationary, untouched and with all applications closed.[3]  Plaintiffs assert their conversion and
2  quantum meruit claims for themselves and on behalf of a putative class of "[a]ll natural persons in
3  the United States (excluding citizens of the State of California) who have used mobile devices
4  running the Android operating system to access the internet through cellular data networks
5  operated by mobile carriers." Dkt. No. 60 ¶ 84.[4]  Plaintiffs invoke federal jurisdiction under the
6  Class Action Fairness Act, 28 U.S.C. § 1332(d). *Id*. ¶ 18.

7  On October 1, 2021, the Court granted Google's motion to dismiss the original complaint,
8  with limited leave to amend.  Google moved to dismiss that complaint pursuant to Rule 12(b)(1),
9  arguing that plaintiffs lack Article III standing to pursue their claims because they did not allege
10 facts indicating that they have suffered any injury.  Even if plaintiffs have standing, Google argued
11 that dismissal was warranted under Rule 12(b)(6) because the complaint failed to allege sufficient
12 facts supporting claims for conversion or quantum meruit.  Dkt. No. 33.  With respect to their
13 Article III standing, the Court noted that no plaintiff alleged any facts demonstrating injury, i.e.,
14 that he was charged an overage fee or experienced throttled connection speeds.  Dkt. No. 51 at 5.
15 The Court nonetheless addressed Google's Rule 12(b)(6) motion to dismiss the conversion and
16 quantum meruit claims, finding that the issue of plaintiffs' Article III standing was intertwined
17 with the parties' dispute about whether the complaint stated plausible claims for relief.  *Id*. at 6.

18 The Court dismissed the conversion claim, finding that plaintiffs did not allege facts
19 demonstrating that their "cellular data allowances" are personal property capable of exclusive
20 possession or control.  *Id*. at 7-13.  The Court dismissed the quantum meruit claim as merely
21 derivative of the conversion claim.  *Id*. at 13-15.  Although plaintiffs did not articulate any
22 additional facts that could be alleged on amendment to support a plausible claim for conversion,
23 the Court nonetheless granted leave to amend that claim.  The Court also gave plaintiffs leave to

---

[3] The Court assumes the parties' familiarity with the general background facts as described in its prior order on Google's motion to dismiss plaintiffs' original complaint (Dkt. No. 51 at 1-3) and does not repeat those facts in this order.

[4] There is a parallel proceeding pending in the Santa Clara County Superior Court concerning a putative class of California citizens, *Csupo, et al. v. Alphabet, Inc.*, Case No. 19CV352557.

1  amend their quantum meruit clam to the extent plaintiffs believed they plausibly could assert such
2  a claim based on their cellular data allowances. *Id*. at 15. However, plaintiffs were not given
3  leave to amend their quantum meruit claim based on the alleged use of "personal information,"
4  because they "not only failed to articulate additional facts that could be asserted on amendment,
5  but have also not explained why they did not plead those allegations in their original complaint."
6  *Id*.

7  Plaintiffs' FAC names an additional plaintiff, Jennifer Nelson, identified as a resident and
8  domiciliary of Wisconsin who has a data plan that requires her to pay a fixed price for up to one
9  gigabyte of data per month, plus an additional charge for each additional gigabyte of data she uses
10 in that month. *See* Dkt. No. 60 ¶ 16. The FAC reasserts a conversion claim, this time based on
11 the theory that "cellular data" (rather than "cellular data allowances") is property subject to
12 conversion. *Id*. ¶¶ 3-4, 28-34. The FAC also reasserts a quantum meruit claim, which plaintiffs
13 contend is not a common count and is not derivative of their conversion claim. *See id*. ¶¶ 3, 5, 10,
14 77-83, 92-99. In plaintiffs' view, "[e]ither cellular data is property subject to conversion, or it is a
15 contractual right of access to a service subject to quantum meruit. It may even be both—but it
16 must at least be one or the other." *Id*. ¶ 5; *see also* Dkt. No. 67 at 1.

17 Google contends that the FAC must be dismissed pursuant to Rule 12(b)(6) because
18 plaintiffs still fail to state sufficient facts supporting a plausible claim for conversion or quantum
19 meruit. Although Google does not directly challenge plaintiffs' standing, Google maintains that
20 plaintiffs have not alleged any facts demonstrating that they personally suffered any concrete
21 injury resulting from Google's alleged conduct. *See* Dkt. No. 65 at 10 n.4.

22 **II.   LEGAL STANDARD**

23 A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal
24 sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).
25 Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts
26 alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901
27 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be
28 taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

### III.  DISCUSSION

#### A.  Conversion

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc*., 958 F.2d 896, 906 (9th Cir. 1992); *see also Fremont Indem. Co. v. Fremont Gen. Corp.,* 148 Cal. App. 4th 97, 119 (2007) ("The basic elements of the tort [of conversion] are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages."). Courts apply a three-part test to determine whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established

4

a legitimate claim to exclusivity." *GS Rasmussen*, 958 F.2d at 903 (footnotes omitted). "Although the question was once the matter of some controversy, California law now holds that property subject to a conversion claim need not be tangible in form; intangible property interests, too, can be converted." *Voris v. Lampert*, 7 Cal. 5th 1141, 1151 (2019); *see also Kremen v. Cohen*, 337 F.3d 1024, 1033 (9th Cir. 2003) (stating that insofar as "California retains some vestigial merger requirement, it is clearly minimal, and at most requires only *some* connection to a document or tangible object[.]").

In their original complaint, plaintiffs' conversion claim asserted a property right in "their purchased data allowances" created by contract with their respective service providers. *See* Dkt. No. 1 ¶¶ 6, 27, ¶ 60.b., 63. The Court dismissed the conversion claim because plaintiffs did not allege facts demonstrating exclusive possession of the "purchased data allowances" for which they contract:

> Although plaintiffs argue that their data plans confer ownership of "[p]urchased [b]ytes of [c]ellular [d]ata" (Dkt. No. 39 at 14), they have not plausibly alleged facts demonstrating a right to exclusive access to unique or specific bytes of data. Rather, the complaint's allegations indicate that plaintiffs' data allowances provide them with a contractual right to access their service provider's cellular data network—a right that is not exclusive of others' rights to access the same network. Plaintiffs confirm that they "use the term 'data allowances' to refer to the quantity of cellular data bytes that they have purchased" through contracts with their respective service providers. Dkt. No. 39 at 16 n.5. In other words, a data allowance provides subscribers, such as plaintiffs, with a contractual right of access to a service, i.e., access to a service provider's cellular data network that enables users "to send and receive information over the internet without a Wi-Fi connection." *See* Dkt. No. 1 ¶ 24. For some subscribers that right of access is limited to a certain volume of data transmission per month (measured in bytes of data), and for others it is unlimited. *See* Dkt. No. 1 ¶¶ 8-11. In any event, that right of access is not exclusive of others' right of access to the same network, and no subscriber possesses or controls a particular byte or bytes of data in the network. Indeed, plaintiffs acknowledge that the purported property right of access to a cellular data network grants them the ability to access "quantities of cellular data available to all of [a carrier's] customers." Dkt. No. 39 at 17.

Dkt. No. 51 at 9.

1       The FAC now bases the conversion claim on a purported property right in "cellular data,"
2   rather than "cellular data allowances," and alleges that "[c]ellular data is property subject to
3   conversion because, just like electricity or water, cellular data is capable of exclusive possession."
4   Dkt. No. 60 ¶¶ 3-4, 28-34.

5       The omission of "allowances" from the description of the claimed property interest does
6   not change the nature of that alleged property interest or plaintiffs' claim, which continues to rest
7   on their contractual right of access to a service that is measured in bytes of data. As noted above,
8   plaintiffs previously confirmed that they used "the term '*data allowances*' to refer to the quantity
9   of *cellular data* bytes that they have purchased' through contracts with their respective service
10  providers." Dkt. No. 51 at 9 (citing Dkt. No. 39 at 16 n.5) (emphasis added). Plaintiffs have not
11  persuasively demonstrated that they are using the term "cellular data" any differently now. The
12  FAC states that "cellular data" does not include a users' underlying personal information, but
13  rather "describes the *transmission* of such information over cellular networks *charged against*
14  *consumers' cellular data plans*." Dkt. No. 60 ¶ 11 (emphasis added). This definition of "cellular
15  data" refers to both the means of transmission of information over a cellular network and the
16  measurement of that use of the cellular network, and thus appears to be identical to "cellular data
17  allowance" alleged in the original complaint.

18      Plaintiffs nonetheless contend that even though all customers have non-exclusive access to
19  their carriers' cellular network, cellular data is "capable of exclusive possession and control
20  because it represents a unique quantum of energy that, once used, is gone." Dkt. No. 60 ¶ 73.
21  Plaintiffs further assert that because cellular carriers' networks do not have infinite bandwidth,
22  "the energy used to transmit a quantum of information over a cellular network is unique" and
23  "cannot be consumed for transmission of a different byte." *Id*. ¶ 72. Plaintiffs argue that cellular
24  data thus is analogous to the consumption of electricity and cite authority indicating that electricity
25  is considered property under California law. *See id*. ¶¶ 63-76; *see also Terrace Water Co. v. San*
26  *Antonio Light & Power Co*., 1 Cal. App. 511, 513 (1905).

27      The FAC's allegations, however, indicate that a user does not actually possess cellular data
28  until the user sends or receives a transmission of information. *See* Dkt. No. 60 ¶ 70 ("Similarly,

6

when a customer consumes cellular data, the information [sic] the customer deprives others of the ability to consume that exact same cellular data."); ¶ 71 ("One user's use and attribution of cellular data prevents another user (or Google) from using that same cellular data."); ¶ 72 ("Once a network consumes the energy needed to move a particular byte from an Android phone to Google's servers, the same energy cannot be consumed for transmission of a different byte."). Thus, as in the original complaint, the FAC suggests that there is nothing that customers possess that is separate and apart from their use of a particular or unlimited quantum of access to the network, which is measured in these bytes of data—i.e., a right of access that is entirely defined by their respective contracts with their cellular carriers. The FAC's allegations concerning an authentication process using SIM (subscriber identity module) cards and IMEI (international mobile equipment identity) numbers does not change that conclusion. Indeed, the FAC indicates that SIM cards and IMEI numbers are simply a way in which a customer's use of cellular data is measured. *See id.* ¶ 66 ("These unique identifiers allow carriers to precisely meter the amount of cellular data that each wireless device has consumed."). For the reasons discussed in the Court's prior order dismissing plaintiff's conversion claim, the Court again concludes that "the benefits of contractual rights are not personal property capable of conversion." *Monster Energy co. v. Vital Pharm., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666, at *13 (C.D. Cal. May 20, 2019) (citing cases); *see also Boon Rawd Trading Int'l Co. Ltd. v. Paleewong Trading Co. Inc.*, 688 F.Supp.2d 940, 955 (N.D. Cal. 2010) (concluding that exclusive importation right "is an intangible *contractual* right protected under contract law, not tort law.").

In any event, the FAC still does not allege facts that any plaintiff suffered any injury. While the FAC alleges that carriers have moved toward providing customers with unlimited data plans, the FAC continues to assert that "[u]sers with limited data plans are typically charged an overage fee if they use more data than they have purchased in a given month" and that users with unlimited data plan may be "throttled" and experience reduced connection speeds and impaired or lost phone functions. *See* Dkt. No. 60 ¶¶ 31, 73. Yet nowhere does the FAC allege that any plaintiff had to pay more money for data or suffered a degradation in service because of Google's alleged passive data transfers. Indeed, at oral argument plaintiffs stated that they could not allege

1  such facts because they do not know whether they have been negatively affected by Google's

2  alleged conduct. *See* Dkt. No. 73 at 28:24-29:6; *see also* Dkt. No. 60 ¶ 31.

3  Google's motion to dismiss plaintiffs' conversion claim is granted.

### B. Quantum Meruit

Plaintiffs maintain that if their cellular data plans provide a right of access to a service, and not property subject to conversion, then Google's alleged passive transfers necessarily must be subject to a claim for quantum meruit. Dkt. No. 60 ¶ 5; *see also* Dkt. No. 67 at 1. The parties disagree whether the quantum meruit claim, as pled in the FAC, is merely derivative of the conversion claim. Google contends that the quantum meruit claim is a common count that falls with plaintiffs' conversion claim. Dkt. No. 65 at 16-18; Dkt. No. 68 at 7-11. Plaintiffs argue that their quantum meruit claim is not pled as a common count. They further contend that the quantum meruit claim is sufficiently pled as a separate and independent claim for relief based on a theory that cellular data represents a right of access to a service. *See* Dkt. No. 67 at 9-15.

Even assuming that the FAC does not plead quantum meruit as a common count that is merely derivative of plaintiffs' conversion claim, the Court agrees that plaintiffs have not sufficiently pled an independent claim for relief.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.'" *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004) (quoting *Long v. Rumsey* (1938) 12 Cal. 2d 334, 342 (1938)). "To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Id*. (internal quotations and citations omitted).

Noting that quantum meruit is not the same as an implied-in-fact contract, plaintiffs contend that California law does not require plausible allegations of an expectation of payment for services to sustain a claim for quantum meruit. Dkt. No. 67 at 2-4. Quantum meruit, often referred to as quasi-contract, is indeed distinct from a contract implied in fact. "Unlike the 'quasi-contractual' quantum meruit theory which operates *without* an actual agreement of the parties, an

8

implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998). However, the Court disagrees that a claim for quantum meruit does not require an expectation of compensation. Plaintiffs' argument is based on a mischaracterization of *In re De Laurentiis Entm't Group, Inc.*, 963 F.2d 1269 (9th Cir. 1992). In *De Laurentiis*, the National Broadcasting Co. ("NBC") sought to recover in quantum meruit the reasonable value of advertising, contracted through an intermediary and provided to the De Laurentiis Entertainment Group, for which NBC had not been paid. The Ninth Circuit held that the law does "not require that a plaintiff expect compensation *from the defendant himself* in order to prove a quantum meruit claim." *Id*. at 1273. Drawing a distinction between quantum meruit and implied-in-fact contracts, the Ninth Circuit further explained that "[t]o require a plaintiff seeking quantum meruit recovery to prove that the parties intended that the defendant compensate her *directly* for her services would conflate quantum meruit with implied-in-fact contracts by requiring the plaintiff to prove an implicit agreement to pay for services." *Id*. (emphasis added). "The whole point of quantum meruit recovery is to compensate plaintiffs who have provided a benefit to defendants but who do not have a contract—express or implied—with those defendants." *Id*. To the extent plaintiffs contend that *De Laurentiis* stands for the principle that no expectation of compensation is required *at all*, their arguments are not persuasive. *See Chavez v. City of Hayward*, No. 14-cv-00470-DMR, 2015 WL 3562166 at *6 n.6 (N.D. Cal. June 8, 2015) ("In *De Laurentiis*, the Ninth Circuit held that a plaintiff is not required to 'expect compensation *from the defendant himself* in order to prove a quantum meruit claim' under California law. Instead, a plaintiff may recover under a quantum meruit theory even when he or she expected payment or compensation from a different party, and not from the defendant.") (quoting *De Laurentiis*, 963 F.2d at 1273).

Plaintiffs are not aided by their reliance on *Precision Pay Phones v. Qwest Commc'ns Corp.*, 210 F. Supp. 2d 1106 (N.D. Cal. 2002) or *Jordan v. Wonderful Citrus Packing LLC*, No. 1:18-CV-00401-AWI-SAB, 2018 WL 4350080 (E.D. Cal. Sept. 10, 2018). The circumstances in both cases indicate that there was an expectation of compensation for the services in question. *See Jordan,* 2018 WL 4350080 at *2 (stating that the defendant employer allowed employees to use its

field workers and farming goods for the employees' personal farms, but required that employees pay the employer for those workers and goods); *Precision Pay Phones*, 210 F. Supp. 2d at 1109 (noting the passage of laws enacted "to ensure that [payphone service providers] would get paid for use of their payphones for 'dial-around' calls to non-contracted [interexchange carriers]" and which required the Federal Communications Commission to establish "'a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed intrastate and interstate call using their payphone.'") (quoting 47 U.S.C. § 276(b)(1)(A)). Here, plaintiffs do not allege that they expected compensation for services (i.e. passive data transfers) provided to Google or that Google had knowledge of circumstances indicating that plaintiffs did not intend to provide such services without compensation. By contrast, in *Precision Pay Phones* the complaint reflected that the defendant "has acquired benefits conferred by Plaintiff with full knowledge of the circumstances," which included regulations requiring payment and the plaintiff's invoices specifically requesting payment. *See* 210 F. Supp. 2d at 1109-1110, 1112. Similarly, in *Jordan* the employer's allegations detailed not only its expectation of compensation, but also the circumstances showing that the employee knew of his employer's expectation and "deceitfully" took his employer's field labor and farming goods so as to avoid compensating the employer. *See* 2018 WL 4350080 at *2, *4. Plaintiffs argue that they could not be expected to plead an expectation of compensation because they did not know, and could not have known, about Google's passive data transfers. *See* Dkt. No. 73 at 49:13-14. However, this argument is not particularly helpful here where the complaint does not plausibly allege that *anyone* (including Google) had knowledge of circumstances giving rise to an expectation of compensation owed to plaintiffs.

Equally unpersuasive is plaintiffs' contention that an expectation of compensation is an affirmative defense for which Google bears the burden of proof. Indeed, one of plaintiffs' cited cases reaffirms the general principle, stated by the California Supreme Court in *Huskinson*, that to recover in quantum meruit, "a party need not prove the existence of a contract [citations], but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" *Miller v. Campbell*,

10

*Warburton, Fitzsimmons, Smith, Mendel & Pastore*, 162 Cal. App. 4th 1331, 1344 (2008) (quoting *Huskinson*, 32 Cal. 4th at 458). *Miller* also affirms that "[t]he burden is on the person making the quantum meruit claim to show the value of his or her services and that they were rendered at the request of the person to be charged." *Id*.

Plaintiffs point out that *Miller* further noted that "unless the parties are near relatives, the recipient of the services has the burden to prove the defense that the services were rendered gratuitously or without obligation on his part to pay." *Id*. (citing *Sowash v. Emerson*, 32 Cal. App. 13, 18 (1916)). The Court does not read *Miller* and *Sowash* as establishing a general rule that an expectation of compensation is an affirmative defense to be raised and proved by the defendant. Both *Miller* and *Sowash* concerned disputes over services of a "special" nature, allegedly rendered outside the services for which the parties expressly contracted. *See Miller*, 162 Cal. App. 4th at 1344 (stating, in dispute over legal services rendered to executor of estate allegedly in her individual capacity, that "a defense that the work was performed under a *special contract* is affirmative in character and the recipient the services has the burden of proof") (emphasis added); *Sowash*, 32 Cal. App. at *14 (noting that plaintiff's claims concerned personal care services "of a special character" that allegedly were not part of the parties' contract for room and board). Indeed, *Sowash*, too, affirms that facts should always be pleaded that the services in question were not performed gratuitously. *See Sowash*, 32 Cal. App. at 17 ("*If the pleaded facts show, as should always be shown or pleaded to avoid the implication that the services were to be performed gratuitously*, that there was an agreement by one of the parties to employ the personal services of another, and it is further shown that there was no agreement as to the compensation to be paid for such services, then an implied, and not an express, contract is disclosed, and to recover thereon the plaintiff must count upon a quantum meruit, or sue for the reasonable value of his services, or, as the words describing that common count plainly signify, for whatever his services may reasonably deserve or merit.") (emphasis added). Plaintiffs argue that, at most, they need only show that services were not intended to be gratuitous—a showing that they claim is significantly different from affirmatively proving an expectation of compensation. But plaintiffs merely state two sides of the same requirement: if services are not rendered gratuitously, then compensation is expected.

11

*See De Laurentiis*, 963 F.2d at 1273 ("Compensation must be 'expected' only in the sense that the services rendered must not have been intended to be gratuitous.").

Even assuming that the FAC's allegations, viewed most favorably to plaintiffs, gives rise to an inference that plaintiffs did not intend to allow Google to gratuitously use their cellular data, Google maintains that, more fundamentally, plaintiffs' "grievances simply do not fit this framework of quantum meruit." Dkt. No. 68 at 11. Indeed, plaintiffs have not pled facts demonstrating that they provided a service to Google in the sense contemplated by a quantum meruit theory. At oral argument, plaintiffs asserted that "[t]he services rendered are the cellular data," i.e., "[t]he right of access" to cellular networks that plaintiffs say they acquire through their contracts with their cellular carriers. *See* Dkt. No. 73 at 40. Although plaintiffs allege that Android users may "explicitly grant others access to their cellular data by creating a mobile 'hotspot,'" and "can also sell unused cellular data" (Dkt. No. 60 ¶ 34), there is no allegation that plaintiffs provided any such "services" to Google. It is therefore difficult to construe the passive data transfers of which plaintiffs complain as "services rendered by" plaintiffs, as opposed to services rendered by the carriers themselves.

In any event, the fact remains that the FAC does not allege that all plaintiffs, who each have separate data plans with various cellular carriers, were affected alike—or at all. As with the conversion claim, the lack of allegations of injury dooms their claim for quantum meruit. *See generally, e.g., In re Apple Inc. Device Performance Litig.*, — F.4th —, Nos. 21-15758, 21-15761, 21-15762, 21-15763, 2022 WL 4492078, at *7 (9th Cir. Sept. 28, 2022) (observing at class settlement stage that "[i]f a class member did not perceive and could not otherwise detect the throttling, then the class member's inability to make the attestation relinquished a valueless claim."); *Wade v. OnePlus USA Corp.*, No. 21-cv-05811-BLF, 2022 WL 3549590, at *1 (N.D. Cal. Aug. 17, 2022) (dismissing complaint for lack of Article III standing where "the throttling is alleged to affect only certain applications and functions, and therefore it is not clear that each named Plaintiff was affected alike."). *Cf. In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1174 (N.D. Cal. 2019) (concluding that plaintiffs had standing to pursue computer intrusion claims, where they alleged that operating system updates affected all plaintiffs alike).

12

Because the FAC does not allege facts from which it may be inferred that plaintiffs provided services to Google that were not provided gratuitously and for which compensation was expected to be made, the Court finds that plaintiffs fail to state a claim for quantum meruit.

## IV. LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already been given leave to amend and have provided no basis for the Court to conclude that there are additional facts that could be alleged on a further amendment that would state a plausible claim for relief. Accordingly, the Court finds that amendment would be futile and therefore dismisses the FAC without leave to amend.

## V. CONCLUSION

Based on the foregoing, the Court grants Google's motion to dismiss the FAC without leave to amend. The Clerk shall enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated: September 30, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge

13