ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile:  (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile:  (312) 641-9751

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
ALISON G. WHEELER (180748)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile:  (314) 241-3525

*Attorneys for Plaintiffs Joseph Taylor,*
*Edward Mlakar, Mick Cleary,*
*Eugene Alvis, and Jennifer Nelson*

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JOSEPH TAYLOR, EDWARD MLAKAR, MICK CLEARY, EUGENE ALVIS, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-CV-07956-VKD<br><br>~~[PROPOSED]~~ **STIPULATED ORDER ON PROTOCOL FOR DISCOVERY OF ESI**<br><br>Complaint Filed:  Nov. 12, 2020<br>First Amended Compl Filed: Dec. 13, 2021<br>Courtroom:  2<br>Judge:  Hon. Virginia K. DeMarchi<br><br>Re:  Dkt. No. 103<br><br>MODIFIED BY THE COURT |

Plaintiffs Joseph Taylor, Edward Mlakar, Mick Cleary, and Eugene Alvis, individually and on behalf of the putative class, and Google LLC (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate to the following procedures and protocols that shall govern the form of production of documents and electronically stored information ("ESI") in this matter.

IT IS HEREBY ORDERED as follows:

1.      The procedures and protocols set forth in this Stipulated Order on Protocol for Discovery of ESI ("ESI Protocol") govern the search and production of documents and ESI in this matter unless the Parties agree in writing to change them or they are changed by the Court at the request of a Party.

**A.      SCOPE**

2.      This ESI Protocol shall govern the production of documents and ESI. The Parties agree that the claims and defenses at issue in this matter should be resolved in the most just, speedy and inexpensive manner, and that discovery measures that do not reasonably or meaningfully promote the resolution of the claims and defenses in this matter should be avoided to reduce cost and time. To the extent that third parties may produce documents in this case, the Parties agree to request that such third parties adopt this Agreement. This ESI Protocol shall govern the Parties in the above-captioned case whether they currently are involved or become so in the future, and any related actions that may later be consolidated with this case (collectively, the "Litigation").

3.      Nothing in this ESI Protocol shall supersede the provisions of any Stipulated Protective Order. All productions shall be made pursuant to the Stipulated Protective Order.

4.      Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, relevance, or confidentiality of documents

and ESI. All objections to discovery requests are expressly preserved and shall be raised in due course as permitted by the applicable civil and local rules.

5.     Nothing in this ESI Protocol is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to discovery requests or a subpoena.

6.     This Stipulation and Order is not intended to define all of the rights and obligations of the Parties regarding the preservation of potentially discoverable documents and ESI or the production of discoverable and responsive documents and ESI; to narrow or enlarge any Party's obligations under applicable law to preserve potentially discoverable documents and ESI; or to limit or enlarge any remedy that may be available under the applicable civil or local rules for the breach of any such obligation.

7.     To further facilitate the timely, efficient, and economical production of documents and ESI in this case and to limit the Court's involvement in the discovery process to circumstances where such involvement is necessary, the Parties may at any time, by an agreement confirmed in writing, waive, modify, or resolve any ambiguity in any provision of this Stipulation and Order.

8.     To the extent any documents or data that previously were produced in any litigation, investigation, or other proceeding are discoverable in this action, no Party shall be required to reformat such previously produced documents or data, and all documents or data produced in the same format as they were produced or collected in such other matters are deemed to be in compliance with this Stipulation and Order when produced or otherwise made available for use in this action, notwithstanding other provisions in this Stipulation and Order. A Party may re-Bates stamp such materials. To the extent documents or other discovery were produced in the matter *Csupo v. Google LLC*, Case No. 19-cv-352557 (Superior Ct., County of Santa Clara) ("*Csupo*"), those materials may be used by any Party in the above-captioned matter in their current form, without the need for those materials to be "reproduced" or re-Bates

stamped. Any documents, other discovery, or information produced or otherwise developed or provided in the *Csupo* matter will remain subject to the protective orders entered in that matter.

9.      E-discovery will be limited to ESI in the Parties' custody, possession, or control created on or after (or, for policies, procedures, rules, or regulations, regardless of when created, those in force beginning on or after) August 9, 2016 for all other documents or ESI.

10.     This ESI Protocol may be modified by a Stipulated Order of the Parties for good cause shown or by the Court.

**B.      ESI LIAISONS**

11.     **Designation**.  Each party agrees to designate one or more ESI Liaisons within ten (10) days after entry of this ESI Protocol. Any party is free to change its designated ESI Liaisons by providing written notice to the other parties.

12.     **Duties of ESI Liaisons**.  Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible), be knowledgeable about the party's eDiscovery efforts, have reasonable access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, explain those systems and answer relevant questions, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter, and have reasonable access to those who are knowledgeable about the technical aspects of eDiscovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**C.      PRESERVATION**

13.     The Parties are aware of their preservation obligations as set forth in the Federal Rules of Civil Procedure and the case law of this Circuit, and have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is

preserved, the Parties agree that they will take reasonable steps to preserve information and documents (including metadata) that are potentially relevant to this litigation, subject to reasonable limitations, which includes the limitations on—and consequences for—automatic deletion of temporary data encompassed by Federal Rule of Civil Procedure 37(e).

14.     The Parties agree that the following data sources, although they may contain relevant information, are not reasonably accessible because of undue burden or cost, and need not be preserved, searched, reviewed, or produced absent a good cause showing of a particularized need for the data as established by the facts and legal issues of the case:

> a.     Deleted, slack, fragmented, or other data only accessible by forensics;
>
> b.     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
>
> c.     On-line access data such as temporary internet files, history, cache, cookies, and the like;
>
> d.     Back-up data that is substantially duplicative of data that are more accessible elsewhere;
>
> e.     Data remaining from systems no longer in use that is unintelligible on the systems in use;
>
> f.     Viruses; and
>
> g.     Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

15.     To the extent a Party identifies potentially responsive ESI that falls under subparts (e) or (g) of ~~this Paragraph~~ Paragraph 14, it shall inform the Requesting Party in writing of its existence and identify how it may be relevant. Should the Requesting Party believe the information may be relevant to the claims and defenses and proportional to the needs of the case, the Requesting Party can request a meet and confer to discuss.

16.     Notwithstanding paragraph 14, the Parties shall preserve the data sources identified in paragraph 14 if required by their respective document retention policies and/or procedures.

17.     Whether or not ESI is password protected does not impact obligations with regard to preservation. Upon request from the Receiving Party, Producing Party shall provide the requested password(s) if reasonably available. If the Producing Party determines in good faith that the Receiving Party's request(s) for the password(s) becomes too burdensome, then the Producing Party shall follow the dispute procedures in Judge DeMarchi's Standing Order for Civil Cases (effective April 10, 2024) as set forth at https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Standing-Order-for-Civil-Cases-April-2024.pdf.

18.     Subject to the Parties' responses and objections to written discovery, should relevant, responsive, non-privileged documents no longer exist in the Party's possession or control due to deletion, destruction, or other means of disposal, the Producing Party will endeavor to describe the contents or subject matter of the documents or ESI to the extent such information is known or knowable through reasonable efforts, as well as endeavor to identify the date upon which the documents or ESI were deleted or destroyed.

**D.     IDENTIFICATION AND COLLECTION**

19.     The Parties agree to meet and confer in an effort to agree upon the following: (a) custodians from whom information will be collected or produced (including their job title, description of duties, and employment dates); (b) data sources, including custodial, non-custodial, and third-party documents, which will be collected or produced; (c) the identity and scope of sources of documents and ESI to be produced without the use of technology-assisted review or search terms; (d) applicable timeframe for collection and review of documents; and (e) prioritization of categories of documents and ESI to be collected, reviewed, and produced.

20.     Nothing in this stipulation is intended to augment or limit the rights of a party to pursue information similar to the information identified in Paragraph 19 in the usual course of discovery and any such discovery requests will be governed by existing law and standards.

21.     **Databases, Structured, Aggregated or Application Data**.  The Parties will meet and confer to discuss their own databases and non-custodial sources that they believe contain information that is relevant to the claims and defenses and proportional to the needs of the case, and to discuss search methods for the same when the parties meet and confer to discuss custodians. The Parties reserve all rights in connection with database discovery responsive to any future-served Request for Production.

22.     **Chats and Instant Messaging**.  To the extent instant messages (e.g., text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Google Chat, Google Groups communications, Google Conversations, Bloomberg, etc.) are produced, a Party shall produce such messages, whenever reasonably feasible, with other contemporaneous messages in the same thread—and no party will cause messages that are already associated in a thread to be produced individually. However, nothing in this paragraph is intended to require a party to create new threading if messages are not stored in threaded formats or to produce messages other than in the manner in which they are stored. Such instant messages will also be produced with the metadata consistent with the requirements and procedures set forth in Appendix 1 and to the extent feasible.

23.     **Hyperlinks and network location**.  Plaintiffs on the one hand, and Google on the other, are presumptively limited to requesting 500 hyperlinks each in the *Taylor* matter. Should a Party believe in the future that additional hyperlink requests are reasonable and proportional to the needs of the case at the time, the Parties can agree to an additional number of requests. If the Parties do not agree, the Requesting party can initiate the dispute procedures in Judge DeMarchi's Standing Order for Civil Cases (effective April 10, 2024) as set forth at https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Standing-Order-for-Civil-Cases-April-2024.pdf. Parties may request hyperlinks only where they have a good faith belief that the hyperlinks link to documents that are relevant to this matter and proportional to the needs of discovery. When such requests are made, the Party that produced the document containing the hyperlink will have 21 days to collect and, where appropriate and reasonably feasible, produce

the requested hyperlinks, along with an index associating the produced document with the document that contained the hyperlink from which it was collected. The Parties further recognize that a motion pending before the court in the *Csupo* matter seeks the relief that requested hyperlinks, that can be feasibly collected and that are not privileged, be produced, regardless of whether the producing party deems them responsive to a Request for Production, and that a producing party provide an index showing when a hyperlink was not produced due to a technical or other issue. The Parties agree that in the event that the *Csupo* court orders this relief, the Parties will act consistently with such order in connection with hyperlinks requested under this paragraph in the above-captioned matter.

**E.     SEARCH METHODOLOGIES**

24.     The parties agree to meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

25.     The parties will meet and confer in good faith regarding search terms or use of technology-assisted review or a similar tool (collectively "TAR") to identify responsive documents. In the event a party elects to use search terms, if a requesting party objects to the sufficiency of the Producing Party's terms, the requesting Party may propose modifications or a list of additional terms. The parties will meet and confer in good faith regarding any proposed changes. Any disputes over search terms that cannot be resolved between the parties during a meet and confer may be consequently raised with the Court.

26.     **Hit Reports**.  When a Requesting Party proposes additional search terms, the Producing Party will provide within two weeks a hit report for each document collection where the terms were applied, including the following with respect to each proposed or modified search term in the collection:

        a.     The number of documents with hits for that term;

        b.     The number of unique documents, i.e., documents which do not have hits for any other term;

c.    The number of family members, including the documents with hits, of the documents with hits for that term.

27.    Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact responsive to the requesting party's request. No party will use TAR to identify documents responsive to search terms in use in the case that will not be reviewed without first disclosing as much, and the nature of the TAR procedures to be used, and meeting and conferring with the other Parties.

28.    The fact that one or more search terms is found in a file, document, or other ESI does not establish relevance, responsiveness, or discoverability.

29.    A Party's use of search terms (or TAR) to identify relevant ESI for review and production will not relieve it of its obligations under the applicable rules of civil procedure to produce materials properly within the scope of discovery. A Party will produce documents and ESI it knows to be responsive and discoverable, regardless of whether the materials hit on any agreed-upon search terms (or TAR).

30.    If a Producing Party has reason to believe that responsive documents are in a language other than English, the Party will include in its proposed search terms any translated search term it proposes to use.

31.    **Cooperation**.  The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of search terms, TAR, or a combination of the search terms and TAR, or some other method, or for documents that cannot be searched electronically.

**F.    PRODUCTION**

32.    The Parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

33.     In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the Producing Party, or any of its employees, agents or contractors, so long as the agent or contractors' work was performed in connection with a project, assignment or clinical trial sponsored by the Producing Party. No further evidence to establish authenticity need be provided.

**G.     THIRD-PARTY ESI**

34.     A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this ESI Protocol with the subpoena and state that the Parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein. If a Party issued a non-party subpoena prior to the execution of this Stipulation and Order, that Party shall promptly forward a copy of this Stipulation and Order to the non-party and request that the non-party produce documents in accordance with the specifications set forth herein.

35.     The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties within 21 days.

36.     If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this ESI Protocol, and then produce the processed documents to all other Parties.

37.     However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

38.     Reproductions or productions acquired from non-parties may be produced in the electronic format that they were originally produced or received from the non-party, and need not otherwise be produced in accordance with the terms of this Stipulation and Order. If the non-

party production is not Bates-stamped, the Issuing Party may endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

39.    Nothing in this Stipulation and Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

**H.    PRIVILEGE AND PRIVILEGE LOGGING**

40.    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

41.    Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

42.    The Parties agree to produce a privilege log no later than 30 days after the date of a production from which the document would otherwise have been produced but was withheld. A Party's failure to provide a privilege log within the time set forth herein shall not by itself constitute a waiver of any privilege. However, the Parties shall not unreasonably fail to provide a privilege log within the time set forth herein.

43.    The Party producing a privilege log will indicate persons identified on the log that are attorneys either by providing a list of such persons or otherwise marking such persons with a symbol or other method.

44.    The Party producing a privilege log will provide the privilege log in Excel format, upon request.

45.    If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court in accordance with the Court's procedure for discovery disputes.

46.     The Parties agree that redactions made solely on the basis that content within a document is not responsive are not proper absent special circumstances. If a party seeks to redact on responsiveness grounds, it must disclose as much. If the parties are unable to agree, the dispute will be resolved pursuant to the procedures in Judge DeMarchi's Standing Order for Civil Cases (effective April 10, 2024) as set forth at https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Standing-Order-for-Civil-Cases-April-2024.pdf.

**I.      MISCELLANEOUS PROVISIONS**

47.     **Motions**.  The parties shall raise discovery disputes in accordance with the Individual Practices of Judge Virginia K. DeMarchi, including but not limited to Judge DeMarchi's Standing Order for Civil Cases (effective April 10, 2024) as set forth at https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Standing-Order-for-Civil-Cases-April-2024.pdf.

48.     **Costs of Document Production**.  Unless this Court orders otherwise, each party and non-party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

49.     **Integration/Appendices**.  The following documents are incorporated herein by reference: "Appendix 1" is a document describing the production format and fields to be included in the documents produced by each party.

50.     To the extent relevant and deemed admissible, and consistent with Paragraph 8, supra, ESI produced in the *Csupo* litigation may be used in this litigation. Nothing in this paragraph is intended, however, to waive any objections the Parties may raise as to the production, discoverability, admissibility, relevance, or confidentiality of documents and ESI.

1        **IT IS STIPULATED.**

2

3    Dated:  August 2, 2024                              Respectfully submitted,

4

5    COOLEY LLP                                          KOREIN TILLERY LLC

     */s/ Whitty Somvichian*                             */s/ Marc A. Wallenstein*
6
     Whitty Somvichian (194463)                          Marc A. Wallenstein (*pro hac vice*)
7    Max A. Bernstein (305722)                           George A. Zelcs (*pro hac vice*)
     Kelsey R. Spector (321488)                          Ryan Z. Cortazar (*pro hac vice*)
8    Elizabeth Sanchez Santiago (333789)                 Chad E. Bell (*pro hac vice*)
     COOLEY LLP                                          KOREIN TILLERY LLC
9    3 Embarcadero Center, 20th Floor                    205 North Michigan Avenue, Suite 1950
     San Francisco, CA 94111                             Chicago, IL 60601
10   Telephone: (415) 693-2000                           Telephone: (312) 641-9750
     Facsimile:  (415) 693-2222                          Facsimile:  (312) 641-9751
11
     *Attorneys for Defendant*                           Carol L. O'Keefe (*pro hac vice*)
12   *Google LLC*                                        Michael E. Klenov (277028)
                                                         KOREIN TILLERY LLC
13                                                       505 North Seventh Street, Suite 3600
                                                         St. Louis, MO 63101
14                                                       Telephone: (314) 241-4844
                                                         Facsimile:  (314) 241-3525
15
16                                                       Glen E. Summers (176402)
17                                                       Alison G. Wheeler (180748)
                                                         Karma M. Giulianelli (184175)
18                                                       BARTLIT BECK LLP
                                                         1801 Wewatta Street, Suite 1200
19                                                       Denver, CO 80202
                                                         Telephone: (303) 592-3100
20
21                                                       Elizabeth M. Pipkin (243611)
                                                         Ann M. Ravel (62139)
22                                                       McMANIS FAULKNER
                                                         50 West San Fernando Street, 10th Floor
23                                                       San Jose, CA 95113
                                                         Telephone: (408) 279-8700
24                                                       Facsimile:  (408) 279-3244
25
                                                         *Attorneys for Plaintiffs*
26                                                       *Joseph Taylor, Edward Mlakar, Mick Cleary,*
                                                         *Eugene Alvis, and Jennifer Nelson*
27
28

[PROPOSED] STIPULATED ORDER ON PROTOCOL FOR DISCOVERY OF ESI
Case No. 5:20-CV-07956-VKD

PURSUANT TO THE PARTIES' STIPULATION, AS MODIFIED BY THE COURT,

**IT IS SO ORDERED.**

^

Dated: _____August 5, 2024_____                    _Virginia K. DeMarchi_____

VIRGINIA K. DEMARCHI
United States Magistrate Judge

[PROPOSED] STIPULATED ORDER ON PROTOCOL FOR DISCOVERY OF ESI
Case No. 5:20-CV-07956-VKD

**APPENDIX 1: PRODUCTION FORMAT**

1.      **Load File Formats**.  When reasonably feasible, ESI will be produced with a standard Relativity (*.dat) load file format and an image load file that is in .OPT format. The Relativity (*.dat) load file shall be provided with UTF-8 encoding.

2.      **Metadata Fields and Metadata File**.  Each of the metadata and coding fields set forth below that can be reasonably extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document or otherwise alter their standard collection methods for ESI to capture fields that are otherwise not captured, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, ALLCUSTODIANS, CONFIDENTIALITY, and REDACTIONS, which should be populated by the party or the party's vendor. If a particular field is not applicable to a particular document and is not otherwise required to be populated, the field will be left blank.

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B). |
| ALL CUSTODIANS | All persons or data where the document was found prior to deduplication. |
| BEGBATES | Bates (number) of the first page of the document. |
| ENDBATES | Bates number of the last page of the document. |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail). |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment). |
| FILESIZE | File Size. |
| FILENAME | Filename of an electronic document (Edoc or attachment). |
| FILE EXTENSION | The file extension. |

| Field | Definition |
|---|---|
| FILEPATH | Original file/path of the location where the item was located at the time of collection. If an email extracted from a container, e.g., from a .pst file, it should contain the name and location of the email container, and the folder within the container from which the email was collected. |
| ALL FILEPATHS | The locations where copies of the item were located at the time of collection. |
| TITLE | Title provided by user within the document. |
| AUTHOR | Creator of a document. |
| DATE/TIME CREATED | Date Create & Time (MM/DD/YYYY HH:MM)* may be produced as two separate fields. |
| LAST MODIFIED BY | Last person who modified (saved) a document. |
| DATE/TIME LAST MODIFIED | Last Modified Date & Time (MM/DD/YYYY HH:MM)* may be produced as two separate fields. |
| FROM | Sender. |
| TO | Recipient. |
| CC | Additional Recipients. |
| BCC | Blind Additional Recipients. |
| SUBJECT | Subject line of e-mail. |
| FAMILY DATE | If the document was part of a family, e.g., an email attachment, the date of the parent document. |
| DATE/TIME SENT | Date Sent & Time (MM/DD/YYYY HH:MM)* may be produced as two separate fields (Date Sent and Time Sent). |
| DATE/TIME RECEIVED | Date Received & Time (MM/DD/YYYY HH:MM)* may be produced as two separate fields. |
| ATTACHCOUNT | Number of attachments to an e-mail. |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons. |
| EMAIL OUTLOOK TYPE | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task. |
| HASHVALUE | MD5 hash value. |
| IMPORTANCE | High Importance - indicates Priority E-mail message. |

| Field | Definition |
|---|---|
| PAGE COUNT | Page count or image count. |
| REDACTED | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for un-redacted documents. |
| DOCLINK | Metadata tying linked and linking documents. |
| NATIVEFILELINK | For documents provided in native format only. |
| TEXTPATH | File path for OCR or Extracted Text files. |
| CONFIDENTIALITY | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. |
| TIME ZONE PROCESSED | Time zone (i.e. UTC) data was processed. |
| HASHIDDENTEXT | Y, N or empty. |
| HASHIDDENSLIDES | Y, N or empty. |
| HASSPEAKERNOTES | Y, N or empty. |
| HASHIDDENROWS | Y, N or empty. |
| HASHIDDENCOLUMNS | Y, N or empty. |
| HASHIDDENWORKSHEETS | Y, N or empty. |
| DOCUMENT TYPE | The file type for Google files. |
| DOC ID | Google Drive unique identifier. |
| DRIVE OTHERS | The accounts from a Google Drive query that have indirect access to the file. |
| DRIVE SITES TITLE | Metadata included with Google Drive exports for sites, including the name of the page. |
| DRIVE PUBLISHED URL | Metadata included with Google Drive exports for sites, including the web address of the published page. |
| DRIVE DOC PARENT ID | Metadata included with Google Drive exports for sites, including a unique identifier for the site. |
| DRIVE SHARED DRIVE ID | The Google Drive identifier of the shared drive that contains the file. |
| DRIVE CLIENT SIDE ENCRYPTED | In Google Drive, indicates the file was encrypted with Google Workspace Client-side encryption. |

3

| Field | Definition |
|---|---|
| DRIVE REVIEWS | Google Drive metadata regarding file approvals. |
| DRIVE USER QUERY | The Google Drive query submitted by the Vault user that retrieved the files included in the export. |

3.     **TIFF Images**.  Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The imaged data shall retain all attributes of the native or hard-copy file to the extent reasonably practicable, and all produced documents shall not be rasterized in such a manner that they become unreadable. To the extent reasonably practicable, a produced TIFF image will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of portions redacted for privilege. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, be produced in native or Microsoft-equivalent format, or be imaged so that such content is viewable on the image file. Where hidden content, tracked changes or edits, comments, notes, or other similar information is not readable in its produced format, a party that received the document may make reasonable requests that a more readable version, such as a native or Microsoft-equivalent version, be produced when helpful to interpret the contents of the relevant document. To the extent a response to discovery requires production of Document(s) accessible only through proprietary or enterprise software, the Parties shall meet and confer to finalize the appropriate production format. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents where reasonably possible, with corresponding multi-page text and necessary load files. A Party may request that the other Party produce specific, identified documents at a higher dpi, if reasonably necessary to review the document. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

1    Documents that are difficult to render in TIFF because of technical issues, or any other

2    documents that are impracticable to render in TIFF format, may be produced in their native

3    format with a placeholder TIFF image stating "Document Produced Natively." A Producing

4    Party retains the option to produce ESI in alternative formats if so agreed by the requesting party,

5    which may include native format, or a combination of native and TIFF formats. For future

6    productions of documents responsive to properly propounded requests issued pursuant to Fed. R.

7    Civ. P. 34 and 45, the Producing Party will make reasonable efforts to identify documents with

8    readability issues in advance of production and, where issues are detected, to produce the

9    document(s) in a more readable format (such as in native or Microsoft-equivalent form). To the

10   extent the TIFF image is unreadable or has materially degraded the quality of the original, the

11   Producing Party shall, when requested and where possible and proportionate, provide a higher

12   quality TIFF image, or the native, Microsoft-equivalent, or original file. The provisions of this

13   Appendix 1 apply to any type of document (including emails, presentations, spreadsheets, and

14   other types of documents).

15         4.      **Native Files**.  Spreadsheets (e.g. MS Excel), audio or video media files,

16   documents that contain images in scalable graphics formats, and structured data will be produced

17   in native format unless redacted for privilege. The Parties reserve the right to request, and oppose

18   a request, that PowerPoint presentations be produced in native. In the event spreadsheets require

19   redactions for privilege, they shall be produced in Microsoft-equivalent format (.xls, .xlsx). In

20   the event structured data requires redactions for privilege, it should be produced in JSON or a

21   suitable delimited format, where each redacted structure and any substructures are identified by

22   name and the redacted data is clearly marked to reflect the redaction. If a Requesting Party

23   reasonably determines that a redacted file is not reasonably usable, the Requesting Party and the

24   Producing Party will discuss an alternative method to produce the file in a reasonably usable

25   format.

26         5.      Native files shall be produced with a link in the NATIVEFILELINK field, along

27   with extracted text (where extracted text is available) and applicable metadata fields set forth

28

above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Any file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media.

6. **Request for Other Native Files**.  Other than as specifically set forth above, a Producing Party need not produce documents in native format. If a party would like a particular document produced in native format and this ESI protocol does not require the production of that document in its native format, the party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. The Producing Party need only produce such a document in native format if reasonably practicable. Any native files that are produced should be produced with a link in the NATIVEFILELINK field, along with all extracted text and applicable metadata fields set forth above.

7. **Text Files**.  Each document, whether produced in Native or in TIFF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or Optical Character Recognition ("OCR"), as described herein.

8. Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3)

who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the names of any attachments.

9. In the event a document, other than spreadsheets, e.g., Excel files, contains text that is to be redacted for privilege, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed, text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language, (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

10. The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 TXT files provided in a separate folder.

11. **Document Numbering**. Document numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a document number or set of document numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned document numbers that directly follow the document numbers on the documents to which they were attached. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image. The document number will:

    a. Be consistent across the production;

    b. Contain no special characters (for the avoidance of doubt, Bates numbering may include hyphens); and

    c. Be numerically sequential within a given document.

12.    **De-NISTing**.  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

13.    **Deduplication**.  The Parties shall make reasonable efforts to de-duplicate ESI. ESI produced by the Parties shall be globally de-duplicated across all collected custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field.

14.    **Email Threading**.  A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across Custodians. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment.

15.    **Time Zone**.  All provided metadata pertaining to dates and times will be standardized to UTC.

16.    **Production Format for Hard Copy Documents**.  Documents that exist in hardcopy will be scanned to *.tiff image format and produced with a load file, single page TIFF images in the same format as electronic files, except the metadata fields provided will be limited to those above to the extent the metadata is reasonably available. For a scanned hard copy, OCR text will be provided instead of extracted text. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple

records (*i.e.*, paper documents should be logically unitized[1]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. A Producing Party will make their best efforts to unitize the documents correctly.

17.     **Confidentiality Designation**.  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file, indicated on its corresponding TIFF placeholder, and contained in the Confidentiality metadata field.

18.     **Redactions**.  Any redactions for privilege shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the document contains redactions and the basis for the redaction (***e.g.***, "Privilege"). Where a responsive document contains both redacted and non-redacted content, the parties shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions. Nothing in this Order prevents any party from redacting personal data and personally identifying numbers or sensitive information from produced documents.

19.     All TIFF images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application. Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable

---

[1]  Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.

20.     **Non-English Documents**.  To the extent that Documents are produced that contain languages other than English, in whole or in part, the Producing Party shall produce each such Document in the original language or languages in which it was written when collected. The Producing Party has no obligation to create a translation of the Documents or any portion. The Parties will meet and confer concerning procedures for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

21.     **Mobile and Handheld Device Documents and Data**.  If responsive data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device.

22.     **Embedded Files**.  Embedded files, except for images embedded in emails, are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

23.     **Parent-Child Relationships**.  Parent-child relationships (the association between an attachment and its parent document or between embedded documents or linked internal or non-public documents and their parents) shall be preserved. Attachments should be consecutively produced with their parent.

24.     **Family Groups**.  A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.

25.     **Color**.  For any document not produced in color in the first instance, if good cause exists for the Receiving Party to request production of certain documents color, the Receiving Party may request production of such documents in color by providing: (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests and will produce the color documents promptly following a request.

26.     **Proprietary Software**.  To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.