1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3      Before The Honorable Virginia K. DeMarchi, Magistrate Judge

4

5    TAYLOR, et al.,              )
                                  )
6         Plaintiffs,             )
                                  )
7    vs.                          ) No. C 20-07956-VKD
                                  )
8    GOOGLE, LLC,                 )
                                  )
9         Defendant.              )
     _____)

10
                                     San Jose, California
11                                   Tuesday, June 25, 2024

12
        TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13              RECORDING 1:30 - 2:12 = 42 MINUTES

14

15   APPEARANCES:

     For Plaintiffs:
16                                   Korein Tillery, LLC
                                     205 North Michigan Avenue
17                                   Suite 1950
                                     Chicago, Illinois 60601
18                        BY:   MARC A. WALLENSTEIN, ESQ.

19   For Defendant:
                                     Cooley, LLP
20                                   3 Embarcadero Center
                                     20th Floor
21                                   San Francisco, California
                                      94111
22                        BY:   WHITTY SOMVICHIAN, ESQ.

23   Transcribed by:                 Echo Reporting, Inc.
                                     Contracted Court Reporter/
24                                   Transcriber
                                     echoreporting@yahoo.com

25

*Echo Reporting, Inc.*

2

1  <u>Tuesday, June 25, 2024</u>                                    <u>1:30 p.m.</u>

2                          P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4          THE CLERK:  Calling Case 20-CV-7956-VKD, Taylor,

5  et al. versus Google, LLC, on for further Case Management

6  Conference.

7      If the parties could state their appearances, please,

8  beginning with Plaintiffs' counsel.

9          MR. WALLENSTEIN (via Zoom):  Good afternoon, your

10  Honor.  Marc Wallenstein for the putative class from Korein

11  Tillery.

12          THE COURT:  Good afternoon.

13          MR. SOMVICHIAN (via Zoom):  Good afternoon, your

14  Honor.  Whitty Somvichian with Cooley, representing Google.

15          THE COURT:  Good afternoon.

16      I have reviewed the Joint Case Management Statement.

17  Thank you for submitting that.  The statement reveals that a

18  number of disagreements remain between the parties about how

19  this case should proceed.  So, that's what we're going to

20  attend to today.

21      Let me start with the question of Google's proposal for

22  a further motion -- Rule 12 motion regarding the consent

23  issue.  And let me just walk through some -- some points

24  here and see if I can understand exactly where we are.

25      So, first, I want to confirm that both parties agree

3

1  that the consent issue remains an issue in the case and that

2  the disagreement is about whether Google ought to be

3  permitted to address the matter in a Rule 12 motion or

4  whether it may be addressed only in a motion for summary

5  judgment or a trial or some other effort after a more

6  complete factual record has been developed.

7       Is that -- am I correct that that's the dispute?

8            MR. WALLENSTEIN:  Yes, your Honor.

9            MR. SOMVICHIAN:  Yes.

10           THE COURT:  Okay.  Very good.  So, let me just

11  share some observations based on what you provided in your

12  joint statement and some looking into the authorities you

13  referred to that we did.

14      So, my view is that Google is correct that the consent

15  issue was raised in its earlier motion to dismiss and that I

16  did not reach that issue in deciding the motion on other

17  grounds.  And, so, I'm not persuaded that Google was

18  required to raise this issue on appeal as the Appellee.  So,

19  there is no waiver of that defense, and I think nobody's

20  really contending it has been waived based on your remark

21  just a moment ago.

22      So, then I proceed to the question of whether Rule

23  12(b) applies here.  The consent issue was not omitted from

24  Google's prior motion.  So, that's one of the predicates of

25  Rule 12(g).  So, I don't think that applies either.  And I'm

4

1  specifically referring to the provision at 12(g)(2),

2  limitation on further motions.

3      So, I went back and looked at the earlier briefing, and

4  it seems to me unlikely that addressing the issue of consent

5  at the pleadings stage is really a good use of the Court and

6  the parties' time.  I just don't think that permitting yet

7  another Rule 12 motion, presumably a Rule 12(c) motion,

8  after there has been an answer will be a productive

9  exercise.

10     And, again, just looking back at what was before me

11 before, my inclination is to proceed with discovery and

12 address the consent defense on a more complete factual

13 record at some later time.  I'm -- I just -- we need to get

14 going is my view.

15     And, so, that brings me to the last observation before

16 I -- I hear from you both on this issue, which is that it

17 appears Google doesn't dispute that the answer was due to be

18 filed within 14 days of remand I think, if my calculation is

19 correct.  There has been no answer yet.  I assume that

20 Google wants to file one and that there would be no

21 objection to filing an answer, but I -- I would like to hear

22 about that issue as well, and -- and we ought to get that

23 done so that we can move on.

24     So -- so, that was my thinking on this proposal about

25 consent, and I'd like to hear from both parties in reaction

5

1 to those remarks, and let me just -- well, let me just start

2 with Google first since it was your proposal.

3          MR. SOMVICHIAN:  Yes, your Honor.  So, we believe

4 the issue -- the issue hasn't been waived.  As -- as a

5 pleadings level issue, it hasn't been addressed.  I -- I --

6 I hear you, what you're advising us as to whether it would

7 be a productive use of time, and we'll consult with our

8 client accordingly.

9      I do think -- just -- just to be clear, I think there

10 -- there was a little bit of disconnect in terms of how we

11 are thinking of the -- the consent issue and how the

12 plaintiffs were construing it in -- in their -- in their

13 portion of the CMC statement and describing -- trying to

14 explain why they didn't think it was appropriate for being

15 resolved as a pleadings argument.

16      There -- there may be other layers of the consent

17 argument, but what we are proposing to address is the

18 express consent argument based on users' agreement to -- to

19 the terms.  There may be other factual issues related to

20 other variations of a consent argument around implied

21 consent based on knowledge and -- and conduct and so forth.

22      We -- we aren't contemplating addressing that or

23 raising that as a -- as a Rule 12 motion, and it would be

24 limited to the express consent issues.  All -- everything

25 that you need to consider is in the record.  The terms are

6

1 attached to the complaint.  If -- if, your Honor, you're

2 trying to telegraph what -- what your views may be, again,

3 we will consider that.  But in terms of a motion that's

4 appropriate for being addressed at a pleadings stage, I

5 think it is something that has not been addressed, can be

6 addressed, is appropriate to be addressed at the pleadings,

7 deferring other variations of -- of the consent issue for --

8 for later, which we agree with.

9      In terms of the -- the answer, the timing that I think

10 we're referring to, we construe the rule as -- as not

11 dictating the timing for a remand from -- from the Court of

12 Appeal and when the remand reaches the District Court but,

13 rather, the timing once a motion to dismiss is -- is denied

14 in the District Court.  And if there's a -- a disconnect

15 between our interpretation, we, of course, will -- will

16 hustle and get an answer prepared.  That would -- that

17 doesn't resolve the issue of whether there should be a

18 motion, but the motion then would be a Rule 12(c) motion for

19 judgment on the pleadings.

20      So, if -- if your Honor is -- is concerned with further

21 delay in the case based on, you know, our proposal to have

22 another round of motion practice while deferring discovery,

23 those things can proceed in parallel, and things can get

24 moving, as you said, and we can attend to other matters, get

25 the -- get the discovery process started, resolve issues,

7

1  figure out a schedule, and start working towards the next

2  steps in the case.  That's not mutually exclusive to

3  presenting an argument that we think could potentially

4  resolve the case and having that addressed at least at a

5  juncture before we get into the class cert case.  So, all

6  those things could proceed in parallel, your Honor, if

7  that's your primary concern is that we ought to get things

8  started without further delay or a stay in the case

9       THE COURT:  So, thank you.  Let me just ask a

10  follow-up question before I let Mr. Wallenstein comment.  Is

11  the motion that you have in mind on the express consent

12  issue different than the one you presented in your prior

13  motions?

14       MR. SOMVICHIAN:  Not materially.  So, your Honor,

15  I can't say that -- there may be some -- you know, that was

16  briefed years ago I think at this point.  So, there

17  certainly would be additional authorities to present to you.

18  The -- the thrust of the argument is -- is similar.  So,

19  it's not dramatically different.

20       THE COURT:  All right.  Thank you for that.

21     Let me hear from Mr. Wallenstein, please.

22       MR. WALLENSTEIN:  Yes, your Honor.  I appreciate

23  your inclination, and I just want to briefly highlight

24  reasons why I think it's correct.  Ultimately, the decision

25  whether to allow another round of motions practice is up to

8

1  your discretion, and the reason you should exercise your

2  discretion to not allow it is most basically, we haven't

3  amended our complaint.  Typically, you only get one bite at

4  the apple.  There has already been an appeal to the Ninth

5  Circuit.  Google could have easily raised this argument

6  before the Ninth Circuit if it wanted to.  It raised two

7  other arguments that your Honor didn't decide as alternative

8  bases to appeal.  Had it done that, the Ninth Circuit would

9  have had an opportunity to decide it.

10      If your Honor were to allow Google to pursue that

11  motion now, if you were to rule in Google's favor, that

12  could lead to another Ninth Circuit appeal before we've even

13  gotten to the discovery phase.  And the reason why that's

14  particularly prejudicial -- that's prejudicial in any case,

15  kind of two rounds to the Ninth Circuit at the motion to

16  dismiss stage is unusual, but that would be extremely

17  prejudicial in this case because a class has been certified

18  in California.  So, the rights of the putative class in this

19  case, although it's a totally different class, they've

20  crystalized, I would suggest, and there is some urgency to

21  get things moving, as your Honor said.

22          THE COURT:  Well, I really hope that it has

23  crystalized.  We'll get to that next, but -- but, yes.

24  Okay.  So, all those matters were addressed in the statement

25  on your behalf.  So, I appreciate that point.

9

1      I didn't mean to cut you off.  If there's anything --

2           MR. WALLENSTEIN:  No.  Minor point of order.

3  Whether you decide this issue just as a matter of your

4  discretion or -- or not is neither here nor there.  But, to

5  clarify, we actually do believe that Google waived the

6  argument because they didn't raise it on appeal.  It's not

7  because they didn't raise it in the brief before, and you

8  may -- I understand -- yeah.

9           THE COURT:  See, here's -- I don't want to have

10 briefing on that.

11           MR. WALLENSTEIN:  Right.

12           THE COURT:  I don't think that's a -- this is not

13 a good use of anyone's time.  And while I am reluctant to

14 tell a party you cannot file this motion even if you have

15 theoretically a right to file a motion or to make an

16 argument, I'm trying to signal pretty strongly that I do

17 view it as not an effective use of our time.  But first

18 things first.  Google has to answer.

19      Can Google get the answer done -- I don't know how long

20 you need, but you need an answer.  So, how long will it take

21 you to get an answer on file?

22           MR. SOMVICHIAN:  Can we have 30 days, your Honor?

23           THE COURT:  How about July 9th?  That's two weeks.

24 Does that work?

25           MR. SOMVICHIAN:  I've got folks on my side who are

10

1  out.  I -- I know you want to get things moving.  Can we get

2  the -- the week after that?

3          THE COURT:  Okay.  So, that would be the 13th.

4  right.  Yes.  All right.  July 13th.

5          MR. SOMVICHIAN:  I've got that as a Saturday.

6          THE COURT:  Oh, I'm sorry.  Maybe I'm counting

7  wrong.  The 16th, excuse me.

8          MR. SOMVICHIAN:  Okay.

9          THE COURT:  July 16th.  All right.  And I don't

10 view this as introducing any prejudice for anyone because

11 there will be no stay of discovery.  We're going to get

12 going.  No matter what, Mr Somvichian, you acknowledge that

13 that's an option at least, even if not Google's preference.

14    So, we will go ahead and proceed with all the things we

15 need to do in the case, regardless of what else happens on

16 the motion practice side.

17    So, let me just ask, have the parties exchanged initial

18 disclosures or is that still to be done?

19          MR. SOMVICHIAN:  That was done a long time ago.

20          THE COURT:  Long time ago.

21          MR. SOMVICHIAN:  There was a round of initial

22 disclosures.

23          THE COURT:  Okay.  So, that already --

24          MR. SOMVICHIAN:  I think Mr. Wallenstein may have

25 -- may have forgotten that.

1          THE COURT:  Right.  All right.  Well, obviously,

2  if you need to update something in light of intervening

3  events and things you've learned, you, of course, would be

4  permitted to do that and are required to do that as the

5  Rules require.

6       Okay.  So, that's -- the initial disclosures have been

7  done.  I did have some questions about to tell me of the

8  discovery obtained in the Chupo (phonetic) action.  So, let

9  me just again see if I can crystalize where we are.

10      Do the parties agree that the discovery that has

11  already been obtained by either side in the Chupo action may

12  be used in this case?

13          MR. WALLENSTEIN:  Yes, Plaintiffs do, your Honor.

14          THE COURT:  And -- and, Mr. Somvichian, I know you

15  have reservations that maybe this is a contingent question

16  because you have some reservations about the discovery

17  rulings and that kind of thing, but if it's already been

18  obtained, produced by Google, for example, in the Chupo

19  litigation, do you agree that it can be used in this case,

20  without having to reask for it?

21          MR. SOMVICHIAN:  It is -- yes with a caveat, your

22  Honor.

23          THE COURT:  Okay.

24          MR. SOMVICHIAN:  So, the -- the record in the case

25  that's -- the record in Chupo is the result of -- we're

12

1  about four and a half years into the case, with lots of

2  heavily contested discovery and motion practice, compromises

3  along the way, things that we gave the Plaintiffs that we

4  felt we -- that were outside the scope of discovery but we

5  made judgment calls to -- to provide.

6      I'm sure on the other side Mr. Wallenstein will say

7  there are things not in the record that they feel they're

8  absolutely entitled to and we stiffed them, but they made a

9  judgment call not to fight for it.

10     The point is the record is -- is a -- is a reflection

11 of a long course of litigation and compromises on both sides

12 and -- and rulings that we've done that have gone both ways.

13 And, from our perspective, if -- if the entirety of that

14 comes into the record here and the Plaintiffs are also, on

15 top of that, allowed to pursue things that they were

16 precluded from -- from getting in the Chupo case, pursuing

17 new discovery that they decided to forego in the Chupo case,

18 now it's a -- there's a one-way benefit to -- to the

19 efficiencies here.  They get everything that was -- was

20 fought over in the -- in the Chupo case and the ability to

21 -- to ask for more.

22     So, I'll -- I'll give you a specific example.

23         THE COURT:  No, I don't need a specific example.

24 Let me just pause you there because I think there might be

25 some sort of misconception about what I have in mind I

13

1  should share with you, and then we can address this -- this

2  concern that Google has.

3      So, I -- I chuckled because you refer to information

4  coming into the record.  If something is not relevant as an

5  evidentiary matter, it is not in the record, right.  So,

6  there may be a pile of discovery in the State Court matter

7  that is not relevant to this case.  Maybe they obtained it

8  from you.  You had to produce it because you were ordered to

9  do that, and it just is not relevant.

10     I'm -- I'm not really getting into that issue.  We're

11 talking about discovery only and whether that material can

12 be considered discovery and not have to be resought in this

13 case.  That's the efficiency I'm -- I'm focusing on at sort

14 of a very basic level.  And, so, maybe there's still a

15 dispute about that because of the unfairness and discovery

16 burden and the fact that it's asymmetrical discovery here.

17 I mean, Google is by far more greatly burdened than the

18 Plaintiffs are by virtue of the fact that you have all the

19 information or most of the information.  So, I appreciate

20 that point.  But the -- the disagreement between the parties

21 I think maybe should be thought of in -- in the following

22 context.

23     So, I can't resolve your dispute about whether

24 something's fair or not fair or, you know, whether a

25 particular ruling in the State Court action should be

14

1  adopted in this -- in this case or what have you, in a

2  vacuum.  Just can't do that.  And I won't do that.

3      But the way discovery is going to work in this case is

4  the way it works in every federal case, which is the Federal

5  Rules of Civil Procedure and, in particular, Rule 26 will

6  apply.  Your discovery has to be relevant and proportional

7  to the needs of the case.  I'm not inclined to impose some

8  additional threshold beyond what Rule 26 requires.  However,

9  I do expect the parties to be efficient, and if relevant

10 discovery has already been obtained in the Chupo action,

11 then I would expect the parties not to duplicate that effort

12 here.  So, that's the efficiency is to not duplicate stuff.

13 Maybe there's other stuff that isn't relevant here, and

14 that's neither here nor there.  It's just I don't want you

15 to duplicate discovery.  I don't want you to serve the same

16 interrogatories and document requests when you've already

17 obtained that information in the State Court matter and you

18 can simply agree to use it here.  That's what I am -- what

19 I'm focusing on.

20     I don't see any reason to conclude that the discovery

21 rulings in the State Court are binding on discovery disputes

22 before me.  Google suggests I ought to find these decisions

23 binding.  Without more information or context, I simply

24 can't do that.  However, I would expect that the reasoning

25 of the State Court might be persuasive in a given case, and

15

1 I would invite the parties, if they think it bears on a

2 matter before me, a discovery dispute, to share that with me

3 so I can consider it.  And, in fact, if that reasoning is

4 really persuasive, I would expect the parties to exercise

5 some restraint and not ask me to redecide the same thing

6 where you already had a considered decision and, you know, a

7 well reasoned outcome and you're just like trying to take

8 another whack of it, that's not a good use of somebody's

9 time either.

10      So, if you -- if you take a look at a decision the

11 State Court has made on a particular discovery point that

12 comes up again here, and, you know, I would -- I would

13 encourage you to just reflect before you file that matter

14 before me.  But it should be obvious that I am not legally

15 bound by a discovery decision made in the State Court, and

16 there is no presumption that arises from the fact that the

17 State Court has decided something.  That's just not the law,

18 and I'm not going to conduct discovery that way.

19      So, on the point that Google raises, I really -- I

20 really want to emphasize the distinction between discovery

21 that already has happened.  You've already, for lack of a

22 better word, been prejudiced by having to produce it in the

23 State Court case, something you didn't want to produce.  It

24 already exists in the world, and you may disagree about

25 whether it has relevance or any kind of evidentiary

16

significance in this case, but those matters can be

addressed when they arise in terms of summary judgment or

trial or any of those things where the -- the things that

exist in the discovery milieu that you all have accumulated

over the last four and a half years actually bear on any

issue in this case.

So, that's the way I've been thinking about it.  And,

you know, again, I'm not -- I'm not really able to resolve

any particular dispute in -- in a kind of vacuum or at a

high level abstract way, but that's how I see it -- it sort

of shaking out.  And I just -- in case it's not abundantly

clear to the parties, you know, there are -- there are

things that have happened in the State Court case.  I may or

may not find them persuasive.  It should be clear to you all

that I am not going to just follow whatever the State Court

does.  It should be clear that I make my own decision.

Right or wrong, I will make my independent decision about

that, and that should be clear from the history of the case

so far.

So, I will say another word to Mr. Wallenstein in

particular.  It is not appropriate to use the discovery

process in this case to take discovery of matters that are

relevant solely to the State Court case.  So, that would be

an inappropriate use of the federal discovery process.

However, if an issue arises about whether the Plaintiffs may

17

1  use discovery properly obtained in this case in the State

2  Court case, that is a matter for the State Court to decide.

3  Okay.  So, I would only expect, and I will insist and

4  require that the discovery that you all take of each other

5  in this federal case is for this federal case and not in aid

6  of the State Court case.  Maybe there's overlap.  And if

7  there's a problem with use of that in the State Court case,

8  that is for the State Court judge to decide.

9      So, that's -- that's how I'm thinking about it.  I will

10  -- I will now invite you all to be heard, having heard those

11  -- those remarks.  And, Mr. Somvichian, maybe you wish to

12  continue your thought process on some of these issues,

13  especially about the prejudice point, but I did want to just

14  share my perspective.

15          MR. SOMVICHIAN:  Yes.  Thank you, your Honor.

16  That's very helpful as a guide for us.  I do have some

17  questions on how you envision your framework working with

18  respect to certain disputes that I -- that I, unfortunately,

19  anticipate in terms of what discovery materials from Chupo

20  could be used for what purpose.  So --

21          THE COURT:  Okay.

22          MR. SOMVICHIAN:  -- in connection with the Chupo

23  matter, we have produced certain data relating to the named

24  Plaintiffs in the Chupo case.

25          THE COURT:  Um-hmm.

18

1        MR. SOMVICHIAN:  Now, there's some awkwardness

2   between just there in terms of using data about certain

3   named Plaintiffs in a different matter in -- in a different

4   case that doesn't -- in which they're not parties.  There's

5   no certified class here.  But, setting that aside,

6   significant portions of that data we don't view as being

7   within the proper scope of discovery.  We produced it as a

8   compromise and to address a court order in the Chupo matter.

9        What I hear you saying is that's in the record, don't

10  duplicate that work, and if there are disputes about whether

11  it can be used, maybe that can be addressed in some separate

12  process here, but if -- if our -- if in our view that should

13  not be part of the record, that shouldn't be something that

14  the experts in this case consider, for example, on class

15  certification or as a -- as a grounds to, you know, seek

16  additional follow-up discovery in this matter, is there a

17  vehicle that, you know, short of some <u>Daubert</u> motion down

18  the road against the expert, that seems too far down the --

19  the road to -- to address something like that.

20        THE COURT:  Yeah.  I mean, I have been thinking

21  about this, and it's a good question, solely in the context

22  of discovery practice and not whether an expert would rely

23  on X, Y or Z, and, so, the rule about using discovery in one

24  case in another case is the subject of multiple Ninth

25  Circuit opinions.  And, generally, discovery is available.

19

1 It's not part of the record until it's part of the record.

2 Do you see what I mean?  So, it's not part of the

3 evidentiary record for any decision in the case until it is.

4      So, if there's been -- I would not expect that all of

5 the information that is obtained in the State Court case

6 actually has any bearing on anything in this case.  In other

7 words, if it's about the named Plaintiffs in that case, it

8 has nothing to do with the named Plaintiffs in this case.  I

9 don't know how you all anticipate using it, but the question

10 you raise is about using information obtained in discovery,

11 not whether it can be had in the first place.

12      So, you know, so, I think that it -- I'm not entirely

13 sure when that will first come up, but if there's a need to

14 address that, I -- I think we can crystalize that.  But I'm

15 speaking really about discovery, and I have an expedited

16 discovery dispute procedure that is in place, and both

17 parties should be familiar with it.  It's in my standing

18 order.  I know Mr. Somvichian is very familiar with it, and

19 that's how we'll deal with discovery disputes.  If there's

20 something from the State Court, like a decision from the

21 State Court that one or the other parties thinks I should

22 consider and it's not available to me and you want to attach

23 it, I'm happy to let you attach it if that will be helpful

24 as a clarification for -- otherwise, you can't attach things

25 except the -- the material itself, the interrogatory, the

20

1  document request or whatever, without leave of court.  So,

2  if -- if you need that permission in advance in order to

3  share these decisions with me, that's fine.  Usually I just

4  look up whatever I need to look up based on the citations.

5  But if I can't access it and it seems like there are some

6  informal rulings I may not be able to access, then, fine,

7  you can attach it.

8       But I think, Mr. Somvichian, your question is more to

9  use, not discovery in the first place.  And I'm -- you know,

10 I'm happy to have the parties talk about how they think

11 those kinds of issues might best be addressed in what time

12 frame and what format by the Court if it will be important

13 for you to know, say, in advance of expert reports or -- I

14 don't know what -- summary judgment motions or something

15 like that.  Otherwise, I'll deal with it when I have the --

16 the Daubert motion or the summary judgment motion, but I --

17 you know, whatever would be least disruptive to your

18 preparation, I'm happy to entertain that issue.

19      But I would like for you to confer about it first,

20 okay.  And I don't want someone to say, The Judge said, no,

21 you can't contest this ever because I -- I'm really -- my

22 remarks are really directed to the normal ordinary process

23 of obtaining discovery, most of which never makes it into

24 the record, right, never, when we talk about an evidentiary

25 record, right.

21

1    So -- so, that's -- that's how I -- I don't know if I

2 answered your question, but I -- it's probably a function of

3 not -- not really being able to do it in a vacuum.  So --

4 so, feel free to raise the particular concern, you know, in

5 -- in some different -- some different fashion.  You can

6 make it as a motion.  We can talk about it that way.  That's

7 fine.  But I do want you to talk to each other first.  Okay?

8             MR. SOMVICHIAN:  Understood, your Honor.

9             THE COURT:  Is there anything else that you wanted

10 to -- to raise on that point before I turn to Mr.

11 Wallenstein on the discovery issue and how we handle

12 discovery?

13             MR. SOMVICHIAN:  No.

14             THE COURT:  Okay.  So, Mr. Wallenstein, any

15 thoughts about discovery?  Any questions about my remarks

16 about it?

17             MR. WALLENSTEIN:  No, your Honor.  Your remarks

18 were very clear.  I appreciate them.  I agree with them, and

19 I will take to heart your direction to not seek discovery in

20 this case for use -- solely for use in Chupo.

21             THE COURT:  Yeah.

22             MR. WALLENSTEIN:  And it may be that discovery

23 produced in this case is or is not allowed to be used in

24 Chupo.  Then that's up to the State Court judge, but I -- I

25 -- I will ensure that all the discovery requests lodged in

22

1  this case are for this case.

2        THE COURT:  Okay.  All right.  Well, we'll see how

3  it goes.

4     Let me turn to a question I had for you all about the

5  status of the Chupo matter, and I just didn't understand

6  what was going on.  Probably it's because I'm not as

7  familiar with State Court practice, but also this wasn't

8  entirely elaborated on in your statement.

9     The parties refer to an initial class certification

10 proceeding and also to a second class certification

11 proceeding.  Is the State Court conducting multiple serial

12 class certification proceedings?  I don't know who wants to

13 take that.

14        MR. WALLENSTEIN:  Well, I feel like Whitty talked

15 a lot.  So, maybe I should explain this one, though I'm

16 happy to have him do it if you like.

17        THE COURT:  I just want to try to understand

18 what's going on.

19        MR. SOMVICHIAN:  I'll let Mr. Wallenstein take a

20 crack at it.

21        THE COURT:  Okay.  There you go.

22        MR. WALLENSTEIN:  So, early in the Chupo case,

23 actually, before my tenure on the case, the parties decided

24 to narrow the scope of the case to really laser focus on

25 class certification, and they limited the case to three

1 exemplar types of network transfers.  Those were the subject

2 of a class certification motion -- discovery and a class

3 certification motion.  A class was certified.

4     The parties then had a dispute about what happens next.

5 The Plaintiffs argued that now we're allowed to pursue other

6 types of network transfers.  That was the whole idea is to

7 relieve Google's discovery burden.  And then, if we won, we

8 would get merits discovery, damages discovery.

9         THE COURT:  Beyond the three examples?

10        MR. WALLENSTEIN:  Beyond the three exemplars.

11 Google opposed that.  I would welcome Shitty to -- Mr.

12 Somvichian to explain his position.  Ultimately, the Court

13 ruled in Plaintiffs' favor mostly.  We didn't think we

14 needed another round of class certification briefing.  We

15 did not win that point.  So, we're now engaged in a second

16 phase of discovery about additional types of network

17 transfers, and there will be another round of class

18 certification about those types of network transfers.

19        THE COURT:  I see.  And is it classes, like, is it

20 just the nature and boundary of the class or are you all

21 addressing like subclasses?

22        MR. WALLENSTEIN:  So, there was one class

23 certified initially.  It may be that that same class will be

24 -- still have to be certified in the new round of motions

25 practice.  It may be that we would propose subclasses.

24

1  We're still working those issues out.

2          THE COURT:  I see.  Okay.  All right.

3      Mr. Somvichian, anything you'd like to add or dispute

4  about that description?

5          MR. SOMVICHIAN:  No.  That -- I think that's an

6  accurate description.  I mean, I think the -- the need for

7  the second round of class cert relates to a dispute that we

8  had on the scope of the first order.

9          THE COURT:  Okay.

10          MR. SOMVICHIAN:  They -- the Plaintiffs construed

11 it as there's a certified class which just defines a group

12 of people, and now we can litigate on a class-wide basis any

13 and all data transfers that might have impacted those

14 people.  Our view was we litigated three specific things

15 going into the class cert phase.  That's the only -- those

16 are the only transfers that can be litigated on a class-wide

17 basis.  The Court said, well, you -- it was kind of a win or

18 loss for -- for both of us.  The Court said you, Plaintiffs,

19 can try to add to the class, but I'll let you do that in a

20 second round of class certification.  So, that -- that's

21 what we're litigating.

22          THE COURT:  I see.  Got it.  Okay.  Well, that was

23 helpful.  Thank you for explaining that, and I'll just leave

24 it there.

25      With respect to a case schedule, I do need you all to

25

1  propose a case schedule.  So, typically, in a class -- class

2  action matter, I would have a schedule that includes up to,

3  you know, briefing and hearing on a motion for class

4  certification and then sort of leave the rest of it for

5  later.  However, you know, it may be that given that you

6  have a perhaps well developed understanding of how long

7  things might take in this case based on your experience in

8  the State Court case, it might be appropriate for the

9  parties to have a proposed schedule that goes beyond class

10  certification and includes a merits phase, if we get there,

11  and a trial date, if we get there.

12      So, you know, I -- I invite you to confer about that,

13  and I believe it was the Plaintiff that was pressing for

14  something that gets set through trial.  I will just tell you

15  for your information that in 2025, the months of September,

16  October, and November are mostly open.  And, of course,

17  there is availability in 2026 as well.  I have one matter in

18  late October.  I think the 22nd through the 28th is already

19  set for trial, but, otherwise, no trials.  And those are not

20  criminal duty months for me as a Magistrate Judge.  And I

21  have forgotten when my criminal duty months are in -- in

22  2026, but if you need that information, you can check with

23  my courtroom deputy.

24      So, what I would encourage you to do is, you know, be

25  as comprehensive as possible.  If you want to have a

1 schedule that is formulated through class certification and

2 then have sort of contingent deadlines after that, that's

3 fine too, but you can kind of get a sense of what my

4 calendar looks like and what might be possible.  That's why

5 I share that information with you.

6      So, I would ask you to submit a proposed schedule.  And

7 I would say -- I would ask at least that your proposed

8 schedule included deadlines for submission of a proposed

9 protective order.  I don't think we have one in this case,

10 and perhaps you need an ESI protocol as well or you could

11 just file those things.  You don't need to have a schedule

12 that says when you're going to do them.  You can -- if

13 you're ready to go on those -- those matters, you can, but I

14 don't want those kinds of things to hold up progress.  So,

15 you should consider adding that to your schedule.

16      And then, finally, Rule 16 requires me to set a

17 deadline to amend pleadings.  I don't think there's any

18 indication from the parties that there is an anticipated

19 amendment of the pleadings, but I will put a deadline in

20 there.  And if you want to confer about that and suggest

21 one, you can do that as well.  But that's what I'd like to

22 see in your proposed schedule.

23      How long do you all think you need in order to get

24 something to me after conferring with each other?  Can we do

25 two weeks from today, July 9th?

27

1          MR. WALLENSTEIN:  We can.  We have three

2     depositions in the Chupo case in that time.  Doesn't mean we

3     can't do both, but both sides are focused on those things.

4     It may make sense to add one more week.

5          THE COURT:  Okay.  So, that would be the 16th.

6     So, that would be the same date that the answer is due.

7     Does that work for Google?

8          MR. SOMVICHIAN:  Yes, your Honor.

9          THE COURT:  Okay.  So, I'll give you until the

10    16th of July to get me a proposed case schedule.

11         The other matter I wanted to raise with you is ADR.  I

12    don't think you've done any ADR, at least not in my case.

13    And I don't know if there is any reason to have some notion

14    or coordination with the State Court case, which is much

15    much farther along.  But, ordinarily, we need to do some

16    ADR, and I need a proposal for ADR.

17         Have you all talked about that?  Have you engaged in

18    something that might -- that has already happened that might

19    bear on this case?  Where are we on ADR?  Let me just ask

20    that open-ended question.

21         Mr. Wallenstein, I'll ask you first.

22         MR. WALLENSTEIN:  The Plaintiffs would welcome any

23    discussion Google wishes to have.  We have not to date

24    engaged in ADR.

25         THE COURT:  Okay.  And, Mr. Somvichian, any

1  thoughts?

2          MR. SOMVICHIAN:  We're -- we're happy to have that

3  discussion, your Honor, but Mr. Wallenstein's right.  The

4  parties have not -- certainly haven't scheduled a mediation

5  or had much meaningful discussion about a process.

6          THE COURT:  Okay.  Well, why don't you consider

7  that, and when you submit your case schedule, why don't you

8  just include your thoughts about ADR, when it might make

9  sense, what form.  You know, I'm -- I'm not going to require

10  that you do it immediately if it doesn't make sense or

11  anything like that.  I'm going to be guided by what you

12  think is going to be a good use of your time.  Okay.  So --

13  so, let me know in your -- in your further submission.

14      All right.  So, that was pretty much the agenda that I

15  had based on your statement.  Is there anything else that

16  you all would like to talk about while we're here -- while

17  we're all here?  Mr. Wallenstein?

18          MR. WALLENSTEIN:  No, your Honor.

19          THE COURT:  Mr. Somvichian, anything else?

20          MR. SOMVICHIAN:  I -- I -- just to clarify some of

21  your comments, your Honor, and the guidance that you were

22  giving us.

23      In terms of the overarching directive, which I took

24  away, was don't -- don't duplicate work here.  Don't

25  duplicate discovery.

29

1      With respect to potentially duplicating redundant

2  discovery disputes that have been already fully litigated

3  and resolved in the State Court case, is -- is it your view

4  that, you know, if  Plaintiffs were precluded from getting

5  something in the State Court case, still fair game in -- in

6  this case?  You're certainly not bound by that, and we were

7  never suggesting that you were, but as a matter of

8  efficiency and just overall case management, having

9  certainty on that would be helpful.  And if -- and if it's

10  -- well, it is fair game and -- and if something needs to be

11  litigated a second time, then, you know -- then so be it.

12  We understand that guidance, but I think that -- that would

13  be helpful to have certainty on in terms of whether there

14  remains an ability for both sides to -- to relitigate issues

15  that were already fully resolved.

16          THE COURT:  Well, technically, yes, because this

17  is a totally different case.  And maybe the State Court got

18  it wrong for this federal case.  So, the State Court is

19  deciding matters under State Court discovery procedures and

20  rules and whatever was presented to the State Court.  So,

21  theoretically, yes, you could have, I guess, what is mostly

22  the same dispute that could legitimately be brought before

23  me, but I -- I'm going to tell you that if you lost in the

24  State Court and the reasoning of the State Court was

25  persuasive and you really think about it and you think, You

30

1  know what?  This is a loser issue for me, don't waste my

2  time with it.  Don't waste your time with it.  You know, you

3  have to exercise some judgment.  I know it's really hard.

4  You're tempted to like relitigate everything, but you will

5  quickly find out that's not a good use of your time if the

6  State Court's analysis and judgment and conclusion is

7  persuasive.  And that's why I'm inviting you to share it

8  with me.

9       So, I don't think -- and this is maybe something I

10 should have elaborated on with Mr. Wallenstein.  I think it

11 was the Plaintiffs' point.  I -- I hope it's not the case

12 that as to these informal discovery rulings that there's a

13 prohibition on sharing that with me.  I don't know if the

14 informal decisions include a rationale, but if there's a

15 rationale that's articulated, I -- I wasn't sure that I

16 understood exactly what the Plaintiffs were saying about

17 that, but somehow they're not available to be used or shared

18 or cited.  I would hope that you could so that I can have

19 the benefit of that.

20           MR. WALLENSTEIN:  So, your Honor, I will -- I'll

21 answer that question at least to the best of my ability.

22 But I just want to reiterate something we wrote in our

23 brief, which is for the -- there are three formal motions to

24 compel.  Two have been decided.  Plaintiffs do not currently

25 plan to relitigate those issues.  We very much take to heart

31

1  the notion that it is, although perhaps legally possible,

2  often ill advised to --

3        THE COURT:  Yes.

4        MR. WALLENSTEIN:  -- relitigate issues that have

5  already been decided.  I can't promise that we won't seek to

6  relitigate anything.  Maybe there's something that's really

7  important that we genuinely believe the State Court judge

8  got wrong.  Right now, that isn't the case with respect to

9  the -- the written decisions that he's issued on the formal

10 motions to compel.

11    So, with respect to the informal discovery conferences,

12 all but one don't have written decisions.  So, they have

13 briefs and an off-the-record, no court reporter discussion.

14 I think the parties could discuss whether we can communicate

15 the judge's inclinations to you or not.  We would probably

16 need to get his permission.  I'm sure -- I'm not sure he --

17 perhaps he would allow it.  We could work something out so

18 that you would know, but there is -- only one of those has a

19 written decision, and it is a tentative ruling.  It's not a

20 final enforceable decision.

21        THE COURT:  Yeah.  I mean, I don't want us to get

22 into a place where we're trying to reconstruct and having an

23 argument about what the judge thought or meant or said to

24 you.  Like, that -- we're not going to do that.

25        MR. WALLENSTEIN:  Yes, your Honor.

32

1          THE COURT:  So, I do not want to go down that road

2   at all.  I don't want to see the briefing.  What I don't

3   want is briefing in front of the State Court and then here's

4   the result and, therefore, the State Court must have adopted

5   my argument in this -- in this brief.  No, no.  We're not

6   doing that.  So, if that's -- if that's what you're seeking

7   clarification on, I'll just put the kabosh on it right now.

8   Don't do that.  That's just not helpful.

9          MR. WALLENSTEIN:  Yes, your Honor.

10          THE COURT:  If there's some --

11          MR. WALLENSTEIN:  Yes.

12          THE COURT:  -- clear statement, whether it's a

13   transcript or an order or something of the State Court's

14   rationale for a particular outcome in -- in a particular

15   dispute that is also before me, yes, please share that.

16   Otherwise, don't.  And I'll just -- I'll just deal with it

17   in the context in which it's appropriately dealt with in

18   Federal Court, which is Rule 26.

19          MR. WALLENSTEIN:  Very well, your Honor.

20          THE COURT:  And that's how we'll proceed.  Okay.

21      Okay.  So, if we're all done with the agenda items, I

22   do have one little thing to say to you all, which is that I

23   was disappointed to see references to lack of cooperation in

24   the Case Management Statement.  And I don't want to hear

25   about whose fault it was.  I just don't want it to happen

33

1    again.  Okay.

2              MR. WALLENSTEIN:  Very well, your Honor.

3              THE COURT:  So, in the unlikely event that you

4    have discovery disputes, you know, the -- the main message

5    from my -- that I hope to convey in my standing order about

6    discovery disputes is that you must confer in advance and

7    try to reach agreement on a resolution.  And, if not, you

8    shall crystalize your positions so that when I get a joint

9    discovery letter, it's not as if someone's making an

10   argument for the first time, the other party hasn't had an

11   opportunity to address it and can't respond to it.  The

12   whole point of the joint submission is that I see both

13   parties' positions crystalized in one place.

14        It's also -- my order is intended to deter foot

15   dragging.  So, think about what I need to resolve your

16   dispute, and make sure it's in the motion.  I don't want to

17   read about who said what to whom.  I don't want to know

18   about your discovery correspondence.  I don't want to know

19   about the back and forth.  I just want the issue

20   crystalized.

21        And, so, when -- when you're doing your joint letter,

22   just omit the adjectives and adjectives -- adjectives and

23   adverbs about each other and the conduct and whatever and

24   just like get to the point, the law and the facts that I

25   need.  Okay.  And that's -- that's really what I try to

34

1  accomplish with that expedited dispute resolution procedure,

2  which, you know, it's not -- it's not perfect, but it's the

3  best thing I've come up with.  So -- so, I just -- I just

4  wanted to give that little -- little lecture while I had you

5  both here, and hopefully we won't -- we won't have to

6  revisit that issue.  Okay.

7       All right.  So, I will go ahead and issue a Case

8  Management Order, and we'll look for your further submission

9  so we can get a case schedule in place, and we'll go from

10 there.  Thank you very much.

11           ALL:  Thank you, your Honor.

12           THE CLERK:  Court is concluded.

13      (Proceedings adjourned at 2:12 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

35

CERTIFICATE OF TRANSCRIBER

    I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Tuesday, October 8, 2024