KOREIN TILLERY

*Attorneys at Law*

Michigan Plaza
205 North Michigan Avenue, Suite 1950
Chicago, IL  60601-4263

www.KoreinTillery.com

Marc Wallenstein
MWallenstein@KoreinTillery.com
p: *(312) 641-9750*
f: *(312) 641-9751*

# PUBLIC REDACTED

November 5, 2024                                                                                                           via CM/ECF

The Honorable Magistrate Judge Virginia K. DeMarchi
San Jose Courthouse, Courtroom 2 – 5th Floor
280 South 1st Street, San Jose, CA 95113

*Re:*    *Taylor v. Google*
         *No. 5:20-cv-07956-VKD*

Honorable Judge DeMarchi:

Despite the parties' good faith efforts, they have not reached resolution on certain discovery disputes and therefore submit this joint letter in order to seek the Court's guidance.

**Statement of the Dispute**

The parties dispute whether Google should be compelled to produce certain information and underlying data about YouTube pre-loaded ads.

**The Parties' Positions on the Disputes**

<u>*Plaintiffs' Position*</u>

Plaintiffs are pursuing a type of network transfer called "pre-loaded" or "pre-fetched" advertisements. Google applications pre-load advertisements (including in a "cache" on Android devices), so that the ads are readily available and can be displayed to the user immediately. Plaintiffs argue that, for advertisements that were pre-fetched but never actually displayed to the user, such transfers were done without users' knowledge or consent, and constitute conversion.

In the *Csupo* litigation, Google produced a sample of advertising data for the Gmail app on June 18, 2024. Plaintiffs planned to use this data to build a damages

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 2

model, but then elected not to pursue pre-loaded advertisements on the Gmail app following a deposition.

In this case, Plaintiffs currently seek a similar sample of ads data for the YouTube app. Initially, Plaintiffs requested that Google produce the same type of advertising data that it produced for Gmail, but for four other Google applications: YouTube, Android Google Search App / Google Search App (AGSA/GSA), Maps, and a system called AdMob. *See* ECF 119-3, 1st RFPs at No 44 (Sept. 16, 2024). Each of these systems pre-loads advertisements on users' Android devices, using cellular data, where the advertisements in question are never shown to the user. Plaintiffs required the data to build a damages model. *In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714-YGR-TSH, 2024 WL 1972889, at *1 (N.D. Cal. May 1, 2024) (compelling subpoena compliance from *third party* Rocket Money because "[t]here is no real dispute that the information Plaintiffs seek is relevant for Plaintiffs' expert's impact and damages model . . . [and] only Rocket Money has it"); *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG, 2021 WL 1906464, at *6 (S.D. Cal. May 12, 2021) (compelling production of "data [that] is relevant to damages, both in how they will be ascertained and how a damages model will be provided"); *Seegert v. Rexall Sundown, Inc.*, No. 17-cv-01243-JAH-JLB, 2019 WL 12044514, at *5 (S.D. Cal. Mar. 26, 2019) (ordering production of data for a "class-wide damages model" over objections that it had "access to only a subset" of the data (citations omitted)).

In the *Csupo* case, Google affirmatively *agreed* to provide the information Plaintiffs seek—███████████████████████████████████—in written response to questions from Plaintiffs, in a summary format, instead of providing the underlying data. Google refers to these written responses to Plaintiffs' questions as "aggregate metrics." In exchange for summary information, Plaintiffs agreed to stand down on requests for the underlying data itself and forego certain depositions. *See* Email from Somvichian to Wallenstein (Sept. 25, 2024 1:59 PM) ("we will provide the requested metrics on YT (with the same caveats noted below) by a week from tomorrow where feasible").

Google breached the agreement in *Csupo* because it failed to provide the promised information. Google claimed to produce summary information for its Maps and YouTube systems, but the summaries did not answer the key questions necessary to build a damages model: ███████████████████████. And Google failed to respond at all regarding AGSA/GSA and Maps. "Courts enforce discovery deals not only because lawyers should abide by their agreements, but also because if the parties

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 3

could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-cv-5649-LAK-BCM, 2022 WL 18027565, at *6 (S.D.N.Y. Dec. 30, 2022) (quotation marks and citations omitted) (collecting cases).

The agreement in *Csupo* does not bind this Court—it applies only in *Csupo*. Plaintiffs highlight the fact that Google breached the agreement in *Csupo* in order to prevent Google from claiming that the parties have already resolved this issue. This Court is the appropriate forum to resolve this dispute because it relates to RFPs issued in this case and discovery that Plaintiffs seek in this case. Having failed to provide the information sought in summary fashion, Google should produce the *underlying data* that will allow Plaintiffs to calculate the information themselves, just as it previously did for the Gmail app.

Google was the first to *affirmatively propose* this form of discovery if Plaintiffs would agree not to take certain depositions in the *Csupo* case, not seek the underlying data in the *Csupo* case, and to use a particular video platform and document display platform for depositions in the *Csupo* case. On September 25, 2024, Google's Counsel proposed, "Can we agree you will use Drive/Meet for just the YT depo tomorrow and we will provide the requested metrics on YT (with the same caveats noted below) by a week from tomorrow where feasible . . . ?" Email from Somvichian to Wallenstein (Sept. 25, 2024 1:59 PM).

Five days later, Plaintiffs submitted their targeted requests to Google, listing the information that Google would need to provide. Email from Wallenstein to Somvichian (Sept. 30, 2024 12:25:45 PM). Google's counsel proposed:

- Plaintiffs agree not to take depos on Maps or AdMob issues in *Csupo* (reserving rights in *Taylor*)
- Plaintiffs agree to use Meet/Drive for remaining *Csupo* depos (reserving rights in *Taylor*)
- Google agrees to respond in writing to information requests for metrics on ads-related issues for Maps and AdMob similar to what Plaintiffs requested for YouTube, with similar caveats including that Google will provide such information only to the extent it can be generated from existing Google sources used in the ordinary course of business and without undue burden.

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 4

Email from Somvichian to Wallenstein (Sept. 30, 2024 7:18 PM). Plaintiffs responded: "We have a deal." Email from Wallenstein to Somvichian (Oct. 1, 2024 8:58:46 AM).

Plaintiffs relied on these assurances in forgoing depositions and using Google's platforms that are not designed for supporting the display of exhibits during remote depositions. Google has not held up its end of the bargain—it has not provided the agreed-upon summary information.

Plaintiffs could reasonably demand production of the underlying data for each of YouTube, AGSA/GSA, Maps, and AdMob. But in an effort to narrow the scope of this dispute, Plaintiffs merely seek the underlying data for the YouTube app—only *one* of the four systems.

Google's written response to Plaintiffs' requests regarding YouTube did not provide an estimate regarding the ███████ YouTube advertisement (or a pre-fetched YouTube advertisement). Google instead responded: "Information regarding the ███████ YouTube ad cannot be generated using existing Google systems used in the ordinary course of business and/or without imposing undue burden on Google." Google's Written Response, *YouTube Ads Metrics* at 3 (Oct. 30, 2024).

Google is wrong. Google's Person Most Qualified deponent regarding YouTube Pre-Loaded Ads, Christophe Faucon, testified that Google maintains ███████ ███████ ███████ Plaintiffs seek production of these ███████.

Mr. Faucon also testified that ███████ ███████ ███████ Plaintiffs seek production of these ███████.

███████ ███████

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 5



Separately, Mr. Faucon identified data logs pertinent to the Plaintiffs' inquiry that Google maintains, but whose names may have changed since 2021, including:

*See* Faucon Tr: 86:8-99:19.

**Plaintiffs' Proposed Resolution**

To resolve this dispute, Plaintiffs ask this Court to compel Google to produce a sample of the underlying YouTube data, including a sample of each of logs named in this letter, for 10,000 US users of the Android YouTube application, and any documents needed to explain the structure and content of the data.

In the past, Google has taken months to "negotiate parameters" of data production. The Court should direct Google to promptly produce the data in question, in whatever forms Google currently possesses it, without redactions or modifications.

<u>*Defendant's Position*</u>

Plaintiffs' statement conflates two issues: (1) an agreement in *Csupo,* in which Google committed to provide certain aggregate metrics on ads served to Android devices, and (2) Plaintiffs' demand for data samples going beyond these aggregate metrics, which would involve data for tens of thousands of users. On this latter issue, Plaintiffs suggest Google agreed to produce the requested data samples, but that is false, and the Court should reject Plaintiffs' demand on numerous grounds as set forth below. On the first issue, Plaintiffs repeatedly claim that Google did not comply with the *Csupo* agreement (this is false; Google has complied) but seek no relief from this Court on that issue, so Plaintiffs' discussion on this point can be ignored.

    I.    **Ads Data Samples.**

*No Prior Agreement*: Google timely objected to RFP 44 on October 21, 2024, and Plaintiffs can point to no subsequent agreement to waive those objections, because there was none. The earlier September 2024 correspondence that Plaintiffs reference does <u>not</u> involve RFP 44 or even the subject of data samples, but rather an arrangement in *Csupo*

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 6

involving certain aggregate metrics, as discussed below. If anything, Plaintiffs' misleading effort to rely on this distinct *Csupo* agreement underscores they have no valid basis to demand the data sample(s) they now seek.

*Plaintiffs' Demands Are Untimely*: Plaintiffs have known of Google's refusal to produce additional data samples for months, yet sat on their hands. In *Csupo*, Plaintiffs' counsel demanded data samples encompassing the requests made in RFP 44 earlier this year. Google refused, with the exception of a Gmail ads data sample. When Plaintiffs presented this dispute to the *Csupo* court over five months ago on May 2, 2024, they understood Google's position, stating, "Google is willing to produce records regarding only one of the foregoing types of network transfers (relating to ads) …" (Plaintiffs' May 2, 2024 Informal Discovery Conference Brief at 6.) Google never agreed to provide data samples beyond that "one" and the *Csupo* court never ordered such productions. Despite these developments, Plaintiffs did not serve RFP 44 until September 16, 2024.

This request came far too late. Plaintiffs' counsel are well aware that producing data samples of this magnitude requires months to negotiate parameters, resolve technical issues, and generate the data. Indeed, one data sample in *Csupo* took over a year to negotiate and implement, requiring the case schedule be reset twice. When Plaintiffs served RFP 44 on September 16, they knew full well this immensely complex process could not be completed by the October 29 close of fact discovery. Worse still, Plaintiffs' request has now morphed to call for not one but multiple YouTube data samples derived from, by Plaintiffs' own description, over a dozen different kinds of YouTube logs. This far exceeds the scope of RFP 44 (which is itself overly broad and unduly burdensome).

The Court should reject Plaintiffs' data samples demand as untimely, just as it did Plaintiffs' demand for custodial productions. *See* ECF No. 118 at 1-2 (denying Plaintiffs' demands related to requests served in mid-September 2024 because "[n]othing prevented plaintiffs from serving some or all of these document requests earlier in the discovery period.").

*Plaintiffs' Demands Are Unduly Burdensome*. Plaintiffs' demands would impose an immense burden on Google's engineering teams. Dr. Christophe Faucon, a Google engineer who testified regarding YouTube ads during his deposition, explained that —which Plaintiffs claim they need

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 7

Producing raw data from the <u>dozen-plus categories of logs</u> Plaintiffs now name in this letter brief is not a solution to this burden problem. Even putting aside that certain logs, such as ▓▓▓▓▓▓▓▓, bear no rational relation to Plaintiffs' professed need for information on ▓▓▓ to generate such samples, the parties would first need to negotiate the specific parameters and Google's engineers would then need to create the samples, which generally requires ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This process would need to be repeated for each of the kinds of ▓▓▓▓▓▓▓▓ they seek, as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ All told, this process would impose substantial burdens over a span of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ including at least one individual who has already devoted days to responding to Plaintiffs' discovery demands. The Court should not subject Google's teams to this immense burden.

*Irrelevant to Plaintiffs' Claims of "Passive Transfers."* Moreover, Plaintiffs' demand involves a Google app—YouTube—that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and is therefore irrelevant to this case. As defined in Plaintiffs' complaint, "passive transfers" are "information transfers that occur <u>in the background or which do not result from Plaintiffs' direct engagement with Google products on their devices</u>." (FAC ¶ 37 (emphasis added).) Plaintiffs concede they "do not contest Google's right to use Plaintiffs' cellular data allowances pursuant to their consent when Plaintiffs are <u>actively using Google's various products</u>." (*Id.* ¶ 36 (emphasis added).) The requested YouTube data samples fall beyond this scope because YouTube ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dr. Faucon confirmed as much at deposition. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ny tangential relevance Plaintiffs may claim could not justify the disproportionate burden that generating these samples would entail. *See, e.g.*, *Weeks v. Google LLC*, 2018 WL 11323715, at *1 (N.D. Cal. Dec. 21, 2018) (denying motion to compel data that, while "generally relevant," was not necessary for plaintiff's economic analysis).

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 8

*Plaintiffs' Request is Unintelligible*. RFP 44 ambiguously seeks production of data "analogous" to what Google produced regarding Gmail ads. This Gmail data involved ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because YouTube ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ there is no "analogous" data to produce. Further, although RFP 44 seeks only "analogous" data to what was produced for Gmail, Plaintiffs demand categories of data—like ▮▮▮▮▮▮▮▮▮▮—that were never produced for Gmail and therefore are not covered by RFP 44.

For all the above reasons, the Court should not compel production of data samples as sought in RFP 44, much less the production of samples of the dozen-plus logs Plaintiffs demand in this letter brief, which <u>far</u> exceeds the scope of even RFP 44.

**II.     Aggregate Metrics.**

Plaintiffs' discussion of an agreement the parties reached in *Csupo* regarding certain ads-related metrics is immaterial to the dispute before this Court, but Google responds briefly to address certain misrepresentations of the record. Most importantly, contrary to Plaintiffs' suggestions, Google has complied with this *Csupo* agreement, which was limited only to specific metrics to the extent they could be "generated from existing Google sources used in the ordinary course of business and without undue burden." As to two systems—YouTube and Maps—Google has already provided responses where available and identified the other aggregate metrics requests ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for which responses were not reasonably available. For example, for ▮▮▮▮▮▮▮▮▮▮ Google provided



As such, Google has provided substantial information regarding the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and has solely declined to produce information regarding ▮▮▮▮ due to burden—as specifically contemplated in the parties' agreement.[1]

---

[1] As for the Android Google Search app, Plaintiffs' counsel indicated that they decided "not to pursue Search pre-loaded ads." Email from M. Wallenstein to W. Somvichian (October 11, 2024 10:03 AM). As to AdMob, Google understands based on recent discussions that Plaintiffs similarly are no longer seeking discovery into AdMob-related metrics.

The Honorable Virginia K. DeMarchi
November 5, 2024
Page 9

**Google's Proposed Resolution**

The Court should not compel additional data samples related to any ads system, including but not limited to YouTube.

**The Parties' Position on Whether the Court Should Conduct a Hearing**

*Plaintiffs' Position*

Plaintiffs respectfully request that the Court decide this issue without a hearing, so that if Plaintiffs prevail, they may obtain the underlying data in time to utilize it in expert discovery.

*Defendant's Position*

Google defers to the Court as to whether a hearing would help the Court resolve this dispute.

**Current Discovery Cut-Off Dates:**
Fact Discovery: October 29, 2024
Expert Discovery: February 10, 2025

The parties attest that they have complied with the requirements of the Court's standing order regarding discovery dispute resolution. Lead counsel for both Plaintiffs and Defendant met and conferred on October 18, 2024 via web conference. Attendees for Plaintiffs were Marc Wallenstein, Ryan Cortazar, and non-attorney staff members. Attendees for Defendant were Whitty Somvichian and Max Bernstein.


Respectfully submitted,


*/s/ Marc Wallenstein*_____        */s/ Whitty Somvichian*_____
Marc Wallenstein, Korein Tillery LLC             Whitty Somvichian, Cooley LLP
Counsel for Plaintiffs                           Counsel for Defendant


310401952

## ATTESTATION IN CONCURRENCE OF FILING

I, Marc A. Wallenstein, am the ECF user whose ID and password are being used to file this document. In compliance with Local Rule 5-1(i)(3), I hereby attest that all other signatories listed have concurred in this filing.

Dated: November 5, 2024

/s/ *Marc A. Wallenstein*
Marc A. Wallenstein (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
mwallenstein@koreintillery.com