UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 20-cv-07956-VKD <br><br> **ORDER RE OCTOBER 23, 2024 DISCOVERY DISPUTE LETTER RE DOCUMENT PRESERVATION** <br><br> Re: Dkt. No. 122 |

The parties ask the Court to resolve their dispute concerning plaintiffs' efforts to obtain discovery of defendant Google LLC's ("Google") document preservation efforts or lack thereof. Dkt. No. 122. The Court held a hearing on this dispute on November 19, 2024, after which the Court directed the parties to make a supplemental filing regarding the deposition testimony of Google employee Garry Boyer, which they did. *See* Dkt. Nos. 140, 145, 150-3, 152.

## I. BACKGROUND

Although plaintiffs refer to their Requests for Production Nos. 22-26,[1] the scope of this dispute is both narrower and broader than those requests. As presented to the Court, the parties disagree about whether Google should be required to provide documents and information about the following topics: (1) whether Google preserved chat messages for Mr. Boyer and other witnesses; (2) whether Google timely implemented a litigation hold for custodial documents for Mr. Boyer and other witnesses; and (3) whether Mr. Boyer and other witnesses participated in Google's "communicate with care" trainings. Dkt. No. 122 at 1. Plaintiffs argue that this discovery is necessary so that they may ascertain whether and to what extent Google spoliated

---

[1] The parties do not attach the document requests at issue, but plaintiffs refer to them elsewhere in the record. *See* Dkt. No. 119-2 at 7.

relevant evidence and/or asserted improper privilege claims. *Id.* at 2-5. They ask that the Court order Google to run certain search terms through all current custodians' and deponents' document collections, and to "produce a list of employees subject to litigation hold in this case, the dates of the hold, and when Google began preserving their [c]hats." *Id.* at 5. Google responds that plaintiffs' document requests and their present requests for relief are unreasonably broad demands for "discovery on discovery," and are unsupported by any showing that relevant evidence is missing or that Google's production is deficient or otherwise improper. *Id.* at 6-9.

## II.   LEGAL STANDARD

The legal requirements that govern Google's document preservation obligations are clear. Google had a duty to take reasonable steps to preserve relevant evidence as soon as it learned of the complaint in this action, which was filed on November 12, 2020. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) (obligation to preserve evidence for use in litigation arises when litigation is "pending or reasonably foreseeable[.]"). The duty to preserve evidence includes an obligation to identify, locate, and maintain information relevant to this action, including identifying key employees likely to have relevant information. *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012). Further, if Google had a document retention/document destruction policy that would otherwise result in the destruction of relevant documents, it had an obligation to suspend that policy and implement a litigation hold to ensure that documents that might otherwise be destroyed are instead preserved. *See id.* ("[I]t generally is recognized that when a company or organization has a document retention policy, it is obligated to suspend that policy and implement a litigation hold to ensure the preservation of relevant documents after the preservation duty has been triggered.") (quotations and citation omitted).

Rule 26 limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). As a general matter, discovery of another party's evidence preservation and collection efforts—or "discovery on discovery"—is disfavored, as such discovery is typically not relevant to the merits of a claim or defense, and is rarely proportional to the needs of a case. *See LKQ Corp. v. Kia Motors Am., Inc.*,

345 F.R.D. 152, 158, 161 (N.D. Ill. 2023); *Uschold v. Carriage Services, Inc.*, No. 17-cv-04424-JSW (EDL), 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019). However, such discovery may be warranted if the party requesting it demonstrates that there is a specific deficiency in the other party's production of documents or other information. *See LKQ Corp.*, 345 F.R.D. at 161–63 (collecting cases); *Uschold*, 2019 WL 8298261, at *4. "Mere speculation about missing evidence is insufficient to allow discovery on discovery." *LKQ Corp.*, 345 F.R.D. at 163.

### III. DISCUSSION

#### A. Chat Messages

With respect to Google chat messages, plaintiffs seek an order directing Google to search its existing custodians' records using certain "spoliation-related" search terms, and to identify the dates it began preserving those custodians' chat messages. They point to Judge Donato's decision in *In re Google Play Store Antitrust Litigation*, finding that Google employees involved in that case deliberately communicated via chat messages using the "history off" setting to avoid the possibility that sensitive messages would be subject to discovery, and that Google failed to take reasonable steps to disable the "history off" functionality as necessary to preserve the messages. Dkt. No. 122 at 3 (citing *In re Google Play Store Antitrust Litigation*, 664 F. Supp. 3d 981, 993-95 (N.D. Cal. 2023)). Plaintiffs contend that this use of "off the record" chat messages was a company-wide practice during the time period relevant to this action and that, as a result, Google likely failed to preserve custodians' chat messages here as well. *Id.* at 2-3. Plaintiffs also point out that Google produced only three chat messages during discovery in this action. *Id.* at 2.

During the hearing, Google acknowledged that it did not take affirmative steps to automatically preserve chat messages for any custodians in this action until May 2023. Dkt. No. 156 at 43:22-44:15. However, Google argues plaintiffs have not shown that any particular Google custodian used chat messages to communicate regarding any matters relevant to this action. Dkt. No. 122 at 7. Google contends that plaintiffs had ample opportunity to explore this issue in depositions and otherwise, but "made no genuine attempt to determine whether [c]hats were used in a manner that would be responsive to [p]laintiffs' discovery requests[.]" *Id*. Google does not say whether it has determined, based on its own investigations, that any custodian's relevant chat

3

messages were lost due to a failure to suspend the "history off" functionality.

Plaintiffs have the burden to show that there is some factual basis to conclude that relevant evidence was not preserved. Their showing on this point is thin. With one exception discussed below, nothing in plaintiffs' portion of the discovery dispute letter suggests that any custodian's chat messages are likely to contain any information relevant to any claim or defense in this case. While plaintiffs have shown that Google engaged in a company-wide practice that failed to prevent the automatic destruction of chat messages, and that this company-wide practice resulted in destruction of information that was relevant in another case, plaintiffs have not shown that Google failed to preserve relevant chat messages across custodians in this case. Google's failure to automatically preserve chat messages in other matters has been well-publicized since at least March 2023, and yet plaintiffs did not ask any of the Google employees whom they deposed whether those employees used "off the record" chat messages to communicate relevant information. More importantly, plaintiffs do not identify any category of information that they sought in discovery that was not produced because it was in chat messages Google failed to preserve.

The one exception concerns Mr. Boyer, a senior staff software engineer for Google who at one point led the quality engineering team for GMS Core.[2] *See* Dkt. No. 122 at 2; Dkt. No. 150-3 at 22:3-23:3. According to plaintiffs, Mr. Boyer testified that he uses chat messages for "work purposes" and that he has "communicated regarding network traffic in GMS Core over chat." Dkt. No. 122 at 2. Plaintiffs claimed during the hearing, that Mr. Boyer "may be the most important witness in the case by far." Dkt. No. 156 at 23:20-21. They did not include or support this argument in their portion of the discovery dispute letter.

Google disputes plaintiffs' characterization of Mr. Boyer's role and his use of chat messages, contending that "[h]e's not a senior part of the GMS Core team," and that he uses both chat and email to communicate at work. *Id.* at 47:5-6; Dkt. No. 122 at 7. Google acknowledges that it did not issue a litigation hold with respect to Mr. Boyer until April 2024, when plaintiffs

---

[2] According to plaintiffs, "[t]he [network] transfers at issue in this case are triggered by GMS Core." Dkt. No. 156 at 9:22-24.

4

first asked for his deposition. Dkt. No. 122 at 8; Dkt. No. 156 at 50:12-18.

The Court has considered the parties' supplemental submissions of excerpts from Mr. Boyer's deposition, as well as their separate discovery dispute letter regarding the experiment Mr. Boyer conducted. *See* Dkt. Nos. 135, 150-3, 152. The deposition excerpts reflect that during the period 2017 through 2024, Mr. Boyer "looked at network data used by GMS Core" at least once per year. Dkt. No. 150-3 at 25:3-20; *see also id.* at 142:11-16. He testified that he communicated with co-workers "regarding network traffic in GMS Core over chat," but he was not asked any additional questions about the contents of those communications—*e.g.,* whether they were substantive or merely administrative. *See id.* at 142:17-144:7. He testified that once he received a litigation hold he lost the ability to change his history on/off settings, and that as of the date of his deposition his chat message history was set to "on." Dkt. No. 152 at 145:3-11. Mr. Boyer did not recall whether his chat message history was set to "on" or "off" during prior occasions on which he communicated with co-workers over chat regarding network traffic from 2020 to 2023. *Id.* at 145:15-23.

Based on this record, the Court concludes that Mr. Boyer likely has documents and information relevant to a claim or defense—specifically, his periodic analyses of network traffic. However, plaintiffs have not shown that relevant information is likely contained in Mr. Boyer's *chat messages*. At the hearing, plaintiffs speculated that Mr. Boyer's chat messages may contain information about what investigations or experiments he might have done regarding network transfers. *See* Dkt. No. 156 at 25:9-27:1. But they cite no evidentiary support for this argument, save that Mr. Boyer used chat messages for "work purposes" including his work relating to network traffic in GMS Core. Plaintiffs had an opportunity to question Mr. Boyer about *what* he put in his chat messages, but they did not ask those questions.

### B. Litigation Holds

As plaintiffs correctly observe, the question of whether Google timely implemented a litigation hold for Mr. Boyer is distinct from the question of how Mr. Boyer and Google treated his chat messages. There appears to be no dispute that Mr. Boyer's chat messages were preserved at least as of the date he was placed on a litigation hold in or around April 2024. Plaintiffs

5

contend that Mr. Boyer should have been placed on a litigation hold earlier, but apart from referring to him as a "key" employee in the discovery dispute letter, they offer very little support for this contention. *See* Dkt. No. 122 at 3-4. Thus, it is not possible to conclude from the parties' discovery dispute letter alone that Google improperly delayed implementation of a litigation hold with respect to Mr. Boyer. Further, except for the "experiment" that is the subject of a separate disputed privilege claim, *see* Dkt. No. 135, plaintiffs do not contend that Google failed to preserve or produce the network data analyses Mr. Boyer said he conducted at least once per year.

Plaintiffs do not offer any persuasive argument or support for the proposition that Google failed to timely issue litigation holds for any other document custodian.

### C. Improper Privilege Claims

With respect to Google's privilege claims, plaintiffs seek an order directing Google to search its existing custodians' records using certain search terms, like "Vegas" and "fake privilege," so that plaintiffs may ascertain whether Mr. Boyer or any other witnesses participated in Google's "communicate with care" trainings. Dkt. No. 122 at 4-5. Plaintiffs again cite *In re Google Play Store Antitrust* Litigation, in which Judge Donato found that Google had engaged in a disturbing practice of instructing its employees to copy counsel on communications and other documents to manufacture claims of "fake privilege" where the documents were not, in fact, privileged. *Id.* at 4 (citing *In re Google Play Store Antitrust Litigation*, 664 F. Supp. 3d at 984).

Plaintiffs' demand for relief is premature. Google has not asserted any claims of privilege so far, apparently because the parties agreed to defer an exchange of privilege logs until after the close of discovery. *See* Dkt. No. 156 at 60:10-18. As plaintiffs do not identify any privilege claims that they believe reflect the improper manufacture of "fake privilege," they provide no justification for the order they seek. As discussed during the hearing, the Court expects Google's outside counsel to rigorously scrutinize any documents with indicia of privilege—such as counsel being copied on an email—to ensure that Google's privilege log contains only genuine claims of privilege or work product. *See id.* at 61:4-63:23.

## IV. CONCLUSION

For the reasons explained above, the Court concludes that plaintiffs have not shown a specific deficiency in Google's document production or a factual basis to believe that Mr. Boyer's (or anyone else's) chat messages contain relevant evidence that was not properly preserved, and thus there is no justification for an order requiring Google to run the search terms plaintiffs propose through the documents collections for all Google custodians and witnesses. As for the other information plaintiffs seek, Google has already disclosed that it took affirmative steps to automatically preserve chat messages for all custodians in this action in May 2023 and that it did not issue a litigation hold for Mr. Boyer until April 2024. On the record presented, the Court concludes that Google need not make further disclosures regarding its efforts to preserve Mr. Boyer's documents. Finally, with respect to plaintiffs' concern regarding the propriety of Google's privilege claims, as no privilege claims have been asserted at this time (apart from the dispute at Dkt. No. 135), the Court finds no justification for the relief plaintiffs seek on this point.

**IT IS SO ORDERED.**

Dated: December 3, 2024

Virginia K. DeMarchi
United States Magistrate Judge