COOLEY LLP
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
MAX A. BERNSTEIN (305722)
(mbernstein@cooley.com)
ANUPAM DHILLON (324746)
(adhillon@cooley.com)
CAROLINE A. LEBEL (340067)
(clebel@cooley.com)
3 Embarcadero Center, 20th floor
San Francisco, CA 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

COOLEY LLP
ARIANA E. BUSTOS (345918)
(ABustos@cooley.com)
355 South Grand Avenue, Suite 900
Los Angeles, California 90071
Telephone:    (213) 561-3250
Facsimile:    (213) 561-3244

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, EDWARD MLAKAR, MICK CLEARY, EUGENE ALVIS, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 5:20-cv-07956-VKD<br><br>**GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT DAMAGES TESTIMONY**<br><br>Date:      July 22, 2025<br>Time:      10:00 a.m.<br>Judge:     Hon. Virginia K. DeMarchi |

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................... 6

II.     BACKGROUND ............................................................................................................ 7

    A.      Plaintiffs' Damages Expert Roger Entner & His Calculations Of FMV ............... 7

    B.      Google's Damages Expert Anindya Ghose ............................................................. 8

III.    LEGAL STANDARD ................................................................................................... 12

IV.     ARGUMENT ................................................................................................................ 13

    A.      Dr. Ghose Offers Proper Rebuttal Opinions Regarding Economic Damages ...... 13

        1.      Plaintiffs provide no coherent basis for cherry-picking the opinions
                challenged in their Motion ......................................................................... 13

        2.      Dr. Ghose does not opine on questions of law ......................................... 14

        3.      Dr. Ghose does not assume an incorrect legal theory of damages ........... 16

        4.      There is no basis to strike Dr. Ghose's corrections to Dr. Entner's
                "average price" calculations ...................................................................... 19

    B.      Dr. Jeffay's Opinions Are Not Legal Conclusions ............................................... 20

V.      CONCLUSION ............................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Booth v. People's Finance & Thrift Co. of Modesto*,
    124 Cal. App. 131 (1932)..................................................................... 16

*Cohorst v. BRE Properties, Inc.*,
    No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011),
    *report and recommendation adopted as modified*, No. 10CV2666 JM BGS,
    2012 WL 153754 (S.D. Cal. Jan. 18, 2012).............................................. 13

*Dolby Laboratories Licensing Corp. v. Adobe Inc.*,
    No. 18-CV-01553-YGR, 2019 WL 6327210 (N.D. Cal. Nov. 26, 2019).................. 22

*Duke v. Superior Court*,
    18 Cal. App. 5th 490 (2017) ............................................................. 17

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000).............................................................. 23

*Fran-Well Heater Co. v. Robinson*,
    182 Cal. App. 2d 125 (1960)............................................................. 16

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ................................................... 22

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) ................................................................. 17

*Keds Corp. v. Goldstreet Holdings, Inc.*,
    19 F.3d 27 (9th Cir. 1994)............................................................ 12, 16

*Khraibut v. Chahal*,
    No. 15-CV-04463-CRB, 2021 WL 1164940 (N.D. Cal. Mar. 26, 2021) ................. 16

*In re Kia Hyundai Vehicle Theft Litigation*,
    No. 8:22-ML-03052-JVS, 2023 WL 8126849 (C.D. Cal. Nov. 3, 2023) ................ 13

*Lessin v. Ford Motor Co.*,
    No. 19-CV-01082-AJB-AHG, 2024 WL 5007092 (S.D. Cal. Oct. 31, 2024)............. 19, 20

*Lueter v. State of California*,
    94 Cal. App. 4th 1285 (2002) ......................................................... 17, 20

*Maldonado v. Apple, Inc*,
    No. 3:16-CV-04067-WHO, 2021 WL 1947512 (N.D. Cal. May 14, 2021) ......... 12, 16, 19, 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

*McClaran v. Plastic Industries, Inc.*,
  97 F.3d 347 (9th Cir. 1996) .................................................................................... 23

*Myers v. Stephens*,
  233 Cal. App. 2d 104 (1965) .................................................................................. 18

*In re MyFord Touch Consumer Litigation*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ................................................................... 12

*NorthBay Healthcare Group-Hospital Division v. Blue Shield of California Life &*
  *Health Insurance*,
  No. 17-CV-02929-WHO, 2019 WL 7938444 (N.D. Cal. Apr. 2, 2019) .............. 12

*Polar Bear Productions, Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) *opinion amended on denial of reh'g*, No. 03-
  35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) ............................................. 12

*Pro-Com Products v. King's Express LA, Inc.*,
  No. CV 18-6035-DMG (SKX), 2020 WL 1652277 (C.D. Cal. Feb. 13, 2020) .... 12

*Stop Staring! Designs v. Tatyana, LLC*,
  625 F. App'x 328 (9th Cir. 2015) .......................................................................... 23

*United States v. Bacon*,
  979 F.3d 766 (9th Cir. 2020) .................................................................................. 23

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) ................................................................................ 12

*United States v. Lucero*,
  849 F. App'x 631 (9th Cir. 2021) ........................................................................... 12

*United States v. Russell*,
  No. 22-50056, 2024 WL 4054382 (9th Cir. Sept. 5, 2024) ................................... 23

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products*
  *Liability Litigation*,
  2020 WL 13228418 (N.D. Cal. Feb. 21, 2020) ..................................................... 14

*White v. Molfetta*,
  64 Cal. App. 5th 628 (2021) ............................................................................. 17, 20

**Statutes**

California Civil Code
  § 3336 .................................................................................................................. 17, 18
  § 3359 .................................................................................................................. 16, 18

Cooley LLP
Attorneys at Law
San Francisco

4

**Google's Opposition to Exclude
Expert Damages Testimony
Case No. 5:20-cv-07956-VKD**

**Court Rules**

Fed. R. Evid. 702 ................................................................................................................. 12

Fed. R. Evid. 704 ................................................................................................................. 12

**Other Authorities**

CACI No. 2102 ............................................................................................................... *passim*

1    **I.    INTRODUCTION**

2         Plaintiffs move to exclude certain opinions offered by Google's experts Dr. Anindya Ghose

3    and Dr. Kevin Jeffay, arguing that both experts offer legal opinions or apply the wrong law. These

4    arguments are meritless. Dr. Ghose (an economist) identifies various factual errors that Plaintiffs'

5    industry expert made in calculating the fair market value ("FMV") of cellular data, and explains why

6    those calculations are unreliable as a matter of economics. Dr. Jeffay (a computer scientist) explains

7    that there is no difference between the use of an unlimited cellular data plan (which Plaintiffs

8    challenge in this case) and a Wi-Fi network (which Plaintiffs do not) from the user's perspective, and

9    that no amount of cellular network usage can negatively impact an individual's use of their unlimited

10   data plan. None of these opinions purports to apply the law or makes an assumption about the

11   appropriate legal standard, as Plaintiffs claim.

12        With respect to Dr. Ghose, Plaintiffs go to great lengths to selectively quote and

13   mischaracterize his report to create the impression that his opinions involve legal matters or apply the

14   wrong legal standard for conversion damages. But Dr. Ghose provides direct rebuttals to Dr. Roger

15   Entner's opinions on the FMV of cellular data, including noting relevant facts that Dr. Entner failed

16   to consider and applying various adjustments to correct Dr. Entner's errors. These rebuttals are

17   grounded in established economic principles, do not reflect any legal opinions, and are entirely

18   consistent with the Federal Rules of Evidence and California law, including the jury instruction that

19   Dr. Entner cites in his report.

20        Plaintiffs' arguments regarding Dr. Jeffay's opinions also fail. They claim that Dr. Jeffay

21   improperly opined that class members with unlimited data plans did not suffer harm—but Dr. Jeffay's

22   opinions, concerning how cellular networks work, are well within his technical expertise and are in

23   no way legal conclusions. If the Court grants the Plaintiffs' pending class certification motion, a jury

24   may be asked to determine whether Plaintiffs and class members suffered harm from the Challenged

25   Transfers. Google is entitled to present Dr. Jeffay's testimony on this factual issue at trial. Courts

26   regularly permit computer scientists to opine on the risks and harms associated with various

27   technologies, and the Court should do the same with Dr. Jeffay's opinions.

28        In sum, Plaintiffs' Motion should be denied in its entirety because Dr. Ghose and Dr. Jeffay

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

1   offer straightforward rebuttal testimony that the jury should be allowed to evaluate when considering

2   Plaintiffs' multi-billion dollar damages demands.

3   **II.    BACKGROUND**

4       **A.    Plaintiffs' Damages Expert Roger Entner & His Calculations Of FMV**

5           While Plaintiffs seek to obscure this point, nearly all the expert opinions they challenge in the

6   Motion are direct rebuttals to the damages-related opinions of their own expert, Dr. Roger Entner,

7   who proposes various ways to measure the FMV of cellular data.

8           First, Dr. Entner calculates an "average price" of cellular data "by taking the service revenue

9   [for cellular carriers] in a given year and dividing it by the number of MB consumed in a given year."

10  (Entner Rpt. ¶ 68.)[1] In other words, Dr. Entner calculates an average of what consumers pay per MB

11  for *all* cellular data usage, including cellular data Android users consume to download apps, watch

12  videos, stream music, and all other types of active use beyond the scope of this case. He does not try

13  to determine the FMV for the *marginal* units of cellular data consumed by the network transfers

14  Plaintiffs actually challenge in this case (the "Challenged Transfers").

15          Second, the "service revenue" that Dr. Entner uses as the numerator in his "average price"

16  calculation is not limited to revenues for cellular data services alone. For example, Dr. Entner does

17  not account for the fact that many consumers pay for cellular data plans that are bundled with

18  additional services, like subscriptions to streaming services Netflix, Hulu, and Spotify. (*Id.* ¶ 25

19  (acknowledging these types of services were not disaggregated from revenue because "[n]o cellular

20  company accounts for revenue from these sweeteners as a separate line item").)

21          Third, in addition to calculating an "average price," Dr. Entner offers two alternative measures

22  of FMV that substantially increase damages. Dr. Entner says these two approaches are based on *his*

23  interpretation of the Judicial Council of California Civil Jury Instruction No. 2102 ("CACI No.

24  2102"), which generally defines FMV as the "highest price that a willing buyer would have paid to a

25  willing seller" for that property. (*Id.* ¶¶ 7–8.) Applying that jury instruction, Dr. Entner opines that

26  the following are each an additional "reasonable measure of the fair market value of cellular data":

27

28  ---
    [1] (*See* ECF No. 173-27, Expert Report of Roger Entner (Nov. 6, 2024) (adopting in full his expert report filed in the parallel state court litigation); ECF No. 173-23, Expert Report of Roger Entner ("Entner Rpt.") (Oct. 15, 2024).)

(a) the $15/GB penalty under certain historical data plans that was charged when users exceeded a certain amount of data usage, (*id*. ¶¶ 35–41) and (b) the $10/GB term under one type of "Google Fi" plan offered by Google, which applies up to a certain threshold of use, (*id*. ¶¶ 31–34).[2] In each case, Dr. Entner justifies the alternative measure of FMV based on his interpretation of the "highest price" concept in CACI No. 2102.  (*E.g.*, Entner Rpt. ¶ 8.)

### B.   Google's Damages Expert Anindya Ghose

Google submits an expert report from Dr. Ghose to rebut Plaintiffs' damages claims, including the specific points from Dr. Entner.  Dr. Ghose is the Chair Professor of Business at New York University's School of Business and serves in various capacities at his institution. (Ghose Rpt. ¶ 1.)[3] His academic research focuses on the economic consequences of the internet and mobile technologies on industries, firms, and markets, and he has published over 120 articles. (*Id.* ¶ 2.) He has worked on economic issues arising in digital platforms, 5G telecom services, and the monetization of the mobile economy, among others. (*Id.*) Dr. Ghose's research includes analyzing users' cellular data activities and was involved in an award-winning research project that analyzed how access to 5G telecom providers reshapes consumers' behavior on mobile devices. (*Id.* ¶ 3.)

In his report, Dr. Ghose shows that Dr. Entner's calculations of the FMV of cellular data are based on various factual errors and explains why those errors render Dr. Entner's opinions unreliable as a matter of economics.

***First***, Dr. Ghose explains that Dr. Entner calculated the FMV of the wrong alleged "property" – he analyzed the "average price" of all cellular data consumed, when he should have analyzed the FMV of only the marginal units of cellular data consumed by the Challenged Transfers since these marginal units are the only converted "property" at issue in this case. (*Id.* ¶¶ 66–74.) As Dr. Ghose explains, "Dr. Entner is attempting to value the wrong data – the average price per GB of all data used instead of the value of the marginal data allowance allegedly converted by Google. This makes

---

[2] Under the Google Fi Flexible Plan, individuals pay $10 per GB of cellular data up to 6 GBs each billing cycle. (*See* ECF No. 173-26, Declaration of Meaghan Eichmann ISO Google's Opposition to Plaintiffs' Motion to Exclude Expert Opinions, ¶¶ 7–8.) If a subscriber uses more than 6 GBs in one billing cycle, he or she can use additional data at no charge, but the cellular data speed is reduced until the next billing cycle after 15 GBs are consumed. (*Id.*)

[3] (*See* ECF No. 173-28, Expert Report of Anindya Ghose ("Ghose Rep.") (Jan. 15, 2025).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

no sense from an economic perspective," including "because it is removed from the way most consumers actually purchased wireless data during the proposed class period, not based on an 'average price' per GB, but based on a given plan allowance." (*Id*. ¶¶ 75–76.)

**Second**, and relatedly, Dr. Ghose explains that consumers with unlimited data plans, who comprise the great majority of the class, have experienced no economic damages from the marginal cellular data consumed by the Challenged Transfers. In reaching these conclusions, Dr. Ghose applies established principles of economics, including those set forth in the *Reference Manual on Scientific Evidence*, which explains that an economic approach to calculating damages "considers the difference between the plaintiff's economic position if the harmful event had not occurred and the plaintiffs' actual economic position." (*Id*. ¶ 29.) As Dr. Ghose summarizes: "[A]bsent some adjustment, a Fair Market Value estimated as Dr. Entner does will provide most of the class members with a substantial windfall," including because Dr. Entner "fails to account for how cellular data allowances are typically sold in the primary market – through plans with monthly data allowances (sometimes unlimited) and often packaged with other services." (*Id*. ¶ 41; *see also id*. ¶ 42 ("in most cases, class members are no worse off economically as compared to the but-for scenario. This is so because, under Plaintiffs' theory, there is no difference in how class members used and benefitted from their Android devices and the benefits they received from their use, as between the actual and but-for worlds").)

Plaintiffs do not seek to strike these opinions but oddly take issue with related paragraphs that state similar opinions or provide further context. (*See id*. ¶ 29–31 (basic background on economic damages);  ¶ 34 (explaining the need to account for the "particular facts and circumstances at issue" when using FMV to measure damages; ¶ 39 (explaining that Dr. Entner's damages calculations would not serve the purpose of making class members whole); ¶¶ 42–44 (explaining that users who do not pay for their own data plans also have not suffered economic damages); ¶¶ 46, 49 (explaining that class members on unlimited plans and those on limited plans who do not use their full data allowance have zero damages from an economic perspective.)

**Third**, because Dr. Entner calculated only an "average price" for all cellular data consumed and did not consider the FMV of *marginal* units of cellular data, Dr. Ghose performed an empirical analysis to address this gap in Dr. Entner's analysis. To do so, Dr. Ghose reviewed the terms of over

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

100 mobile data plans and compared how the average price per GB of cellular data under a given data plan compares to the marginal price for increasing the amount of available cellular data. Based on that empirical analysis, Dr. Ghose estimates that the price of marginal units of cellular data is approximately *71% lower* than the average price of all units. (*Id.* ¶¶ 141–48.)

**Fourth**, because Dr. Entner's "average" price analysis includes amounts that consumers paid for non-cellular data services (including subscription services like Netflix or Hulu often bundled with mobile data plans), Dr. Ghose performed a more sophisticated version of the analysis above to correct this factual error in Dr. Entner's opinions. Specifically, Dr. Ghose performed a regression analysis to isolate the impact that non-cellular data services have on the pricing of mobile data plans. He found that when these factors are accounted for, the price of marginal units of cellular data is actually *93% lower* than the average price for all units. (*Id.* ¶¶ 149–56.)

**Fifth**, Dr. Ghose also addresses Dr. Entner's two additional FMV calculations, which are based on taking the overage penalties pricing terms of cherry-picked plans and applying them to measure the FMV of cellular data under all other plans, including those with significantly different terms. For example, Dr. Ghose points out that overage penalties do not apply to all consumers on unlimited plans, which comprise the vast majority of the market, so Dr. Entner's overages method effectively values the wrong property. (*Id.* ¶ 133.) As to Dr. Entner's additional FMV opinion based on the $10/GB pricing for one type of Google Fi plan, Dr. Ghose observes that "[t]here is no basis to assume that all wireless users, or even all Google Fi subscribers, would be willing to accept the same price for the allegedly converted data, given the widely differing terms of their plans." (*Id.* ¶ 137.) Again, Dr. Entner measures the wrong "property" by taking a pricing term from one isolated plan with unique terms affecting pricing and applying it as a one-size-fits-all measure for the FMV of cellular data under all data plans for the class as a whole.

In fact, even under the plans Dr. Entner identifies, the price of cellular data is not what he claims. For instance, under the Google Fi Flexible plan, as explained above, (*see supra* note 1), a consumer who uses 50 GBs in one month pays $60 for cellular data—or just $1.20/GB. Dr. Entner completely ignores the fact that any data usage under the Flexible plan exceeding 6 GBs costs nothing. Similarly, consider one of the overage plans that Dr. Entner identifies offered by Verizon

1    from the mid-2010s: $100 a month for 18 GBs with a $15/GB overage penalty. (Entner Rpt. ¶ 37.) If

2    a consumer with that plan uses 19 GBs in a month, and incurs an overage penalty, she pays just

3    $6.05/GB. Yet Dr. Entner identifies the penalty as the FMV as a classwide measure of damages for

4    all plans offered by all carriers. In short, Dr. Entner offers no methodology to isolate the value of a

5    GB of data *even under the terms of the plans he cherry picked*.

6           **A.**     **Google's Technical Expert Kevin Jeffay**

7          Google also served a technical expert report authored by Dr. Kevin Jeffay, who opines that

8    the passive data transfers at issue in this case are necessary and justified based on security and other

9    concerns and have a de minimis, or even nonexistent, impact on many class members. Dr. Jeffay is a

10    Professor of Computer Science at the University of North Carolina, Chapel Hill, and the former

11    Chairman of the department, with nearly 40 years of experience in the research and development of

12    networked computing systems. (*See, e.g.*, Jeffay Rpt. ¶¶ 3, 5.)[4] As relevant to Plaintiffs' motion, Dr.

13    Jeffay's testimony addresses the factual issue of harm (or lack thereof). Of note, Dr. Jeffay has studied

14    methods measuring network traffic to understand how various applications use networks, has

15    authored 100 peer-reviewed articles on these and similar topics, and has obtained four patents related

16    to computer networking and service delivery over networks. (*Id.* ¶¶ 8, 12, 15.)

17          Dr. Jeffay reviewed extensive documentation, source code, network usage data, and the

18    deposition testimony of Google engineers, and drew on his four decades of research into networks,

19    as noted above. Based on these inputs, Dr. Jeffay opined that  the amount of data used by the

20    Challenged Transfers is de minimis and pales in comparison to other types of regular usage of cellular

21    data. While the Challenged Transfers typically use less than 0.5 megabytes of data service per day

22    (per Plaintiffs' own calculations), scrolling popular social media apps can use more cellular data

23    service *per second*—and just a few minutes of scrolling will result in hundreds of times more cellular

24    network usage. (*Id.* ¶¶ 189–90 (quantifying average amount of cellular data consumed by Challenged

25    Transfers), ¶ 186 (291.28 megabytes for 10 minutes of scrolling on TikTok), ¶ 187 (40.4 megabytes

26    for 10 minutes of scrolling on Facebook).)  Dr. Jeffay also explains that there is no technical sense in

27    which a user with an unlimited cellular data plan is better off if the Challenged Transfers "wait for

28

---

[4] (*See* ECF No. 173-11, Expert Report of Kevin Jeffay ("Jeffay Rpt.") (Jan. 15, 2025).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

**GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD**

Wi-Fi," as there is no difference between an unlimited cellular network and an unlimited Wi-Fi network from the user's perspective—they provide the same network service. (*Id.* ¶¶ 19, 43.) Finally, Dr. Jeffay explained that a user that has an unlimited cellular data plan is not set back by marginal use of that plan—that is, there is no technical sense in which such use will impair the user or device in any way.  (*Id.* ¶¶ 20, 39–43.)

## III.   LEGAL STANDARD

"An opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704. Thus, Federal Rule of Evidence 704 specifically allows testimony on an ultimate issue, and "it is sometimes impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." *United States v. Lucero*, 849 F. App'x 631, 633 (9th Cir. 2021) (citing *United States v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017)).

Federal courts routinely permit experts to opine on the value of personal property. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (admitting expert testimony on valuation of vehicles with and without a defect even though this was an ultimate issue in several claims). *NorthBay Healthcare Grp.-Hosp. Div. v. Blue Shield of California Life & Health Ins.*, No. 17-CV-02929-WHO, 2019 WL 7938444, at *2 (N.D. Cal. Apr. 2, 2019) (analyzing extensive evidence of fair market value of hospital services).

In addition, federal courts have held that "expert opinion can be proper evidence of a plaintiff's damages." *Pro-Com Prods. v. King's Express LA, Inc.*, No. CV 18-6035-DMG (SKX), 2020 WL 1652277, at *4 (C.D. Cal. Feb. 13, 2020); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004) *opinion amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004). It is uncontroversial that expert testimony on valuation of property as a measure of damages is admissible if it satisfies Federal Rule of Evidence 702 and "is helpful to the trier of facts." *Keds Corp. v. Goldstreet Holdings, Inc.*, 19 F.3d 27 (9th Cir. 1994) (affirming admission of expert evidence on valuation in support of a damages verdict); *see also Maldonado v. Apple, Inc*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at *24 (N.D. Cal. May 14, 2021) (admitting expert testimony on FMV differences between iPhones and iPads in support of damages opinions).

Finally, courts regularly permit computer scientists to testify about the adverse consequences

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

1   (or lack thereof) that individuals suffer from conduct of a technical nature. *See, e.g.*, *In re Kia Hyundai*

2   *Vehicle Theft Litig.*, No. 8:22-ML-03052-JVS (KESX), 2023 WL 8126849, at *4 (C.D. Cal. Nov. 3,

3   2023) (instructing the parties "to demonstrate the technology used in the Software Upgrade through

4   a competent expert"). Indeed, courts have even held that "[c]omputer or website programming and/or

5   engineering are areas *clearly reserved for expert testimony*." *Cohorst v. BRE Props., Inc.*, No. 3:10-

6   CV-2666-JM-BGS, 2011 WL 7061923, at *11 (S.D. Cal. Nov. 14, 2011), *report and*

7   *recommendation adopted as modified*, No. 10CV2666 JM BGS, 2012 WL 153754 (S.D. Cal. Jan. 18,

8   2012) (emphasis added) (rejecting lay witness testimony regarding coded programming).

9   **IV.    ARGUMENT**

10      Plaintiffs' Motion should be denied in its entirety because it is a thinly disguised effort to

11   avoid damning rebuttals to their own expert's opinions. Dr. Ghose relied on recognized principles of

12   economics to address the flaws in Dr. Entner's FMV calculation of cellular data. And Dr. Jeffay

13   explains how class members have not been harmed by the challenged practices from a technical

14   perspective, based on his extensive experience as a computer scientist. None of these opinions are

15   legal conclusions and none apply an incorrect legal framework.

16      **A.    Dr. Ghose Offers Proper Rebuttal Opinions Regarding Economic Damages**

17          **1.    *Plaintiffs provide no coherent basis for cherry-picking the opinions***
18              ***challenged in their Motion***

19      As an initial matter, Plaintiffs' Motion should be denied because it asks the Court to parse Dr.

20   Ghose's expert opinions in a seemingly random way that would unfairly prejudice Google's

21   presentation at trial. As noted above, Plaintiffs do not contest all of Dr. Ghose's opinions (1) that Dr.

22   Entner erred by calculating the average price for all cellular data consumed and should have instead

23   focused on the FMV of the marginal units of cellular data used by the Challenged Transfers, and (2)

24   that certain users, including those on unlimited plans, have not experienced economic damages. (*See*

25   Mot. at 13–14 (identifying the paragraphs Plaintiffs seek to exclude and omitting various paragraphs

26   setting forth these opinions, as noted in Section II.B).) Instead, Plaintiffs ask the Court to strike

27   isolated paragraphs that reiterate these opinions or provide necessary context. Plaintiffs offer no basis

28   for this incoherent approach, and the Motion should be denied on this ground.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

### 2. *Dr. Ghose does not opine on questions of law*

Plaintiffs claim that Dr. Ghose provides improper legal and policy arguments for why CACI No. 2102 is "incorrect, improper, and irrelevant." (*See* Mot. at 4–5, § I.A.) But the specific opinions Plaintiffs challenge on this basis all address factual issues with Dr. Entner's analysis and are all grounded in economic (not legal) principles. Plaintiffs' arguments to the contrary are based on badly mischaracterizing Dr. Ghose's report.

***First***, Plaintiffs selectively quote Dr. Ghose's report, claiming he "argues at length about what interpretation of the jury instruction' . . . 'makes [] sense,'" as if Dr. Ghose were providing standalone opinions about the law. (Mot. at 4.) But Dr. Ghose actually stated, "***Dr. Entner's interpretation*** of the jury instruction makes no sense ***from an economic perspective***,"[5] and he explains the economic reasons why. (Ghose Rpt. ¶ 117 (emphasis added).) In other words, Dr. Entner advances a specific interpretation of CACI No. 2102 that Dr. Ghose rebuts using economic principles.[6]  Nothing about these rebuttal points constitutes a legal opinion.

***Second***, Plaintiffs partially quote Dr. Ghose's statement (offered to illustrate a flaw in Dr. Entner's analysis) that it would make little sense to base the FMV of "water based on the maximum amount some 'willing buyer' would pay for <u>any</u> unit of good," suggesting that this point is somehow legal commentary inconsistent with California law. (Mot. at 4 (emphasis in original).) But Plaintiffs again ignore the remaining text in which Dr. Ghose explains that it is important to consider "the other part of the jury instructions about 'willing sellers' of the good." (Ghose Rpt. ¶ 120.) That is, Dr. Ghose is merely clarifying that the FMV is determined based not just on the subjective willingness

---

[5] The only reason that Dr. Ghose references CACI No. 2102 in his report at all is because Dr. Entner used a specific interpretation of that instruction to assess classwide damages and Dr. Ghose, as a rebuttal expert, must address those opinions. (*E.g.*, Ghose Rpt. ¶ 116 (explaining Dr. Entner's "two new measures of FMV" based on the "California jury instruction"), ¶¶ 32–33 (setting forth the basis of Dr. Entner's position).)

[6] To the extent Plaintiffs and Dr. Entner claim that CACI No. 2102 permits them to use the "highest price" of property that is ***unlike*** the property allegedly converted by Google (*i.e.*, Google Fi Flexible plans that Plaintiffs did not have and overage fees they did not pay), that interpretation is flawed. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, 2020 WL 13228418, at *1–2 (N.D. Cal. Feb. 21, 2020) (interpreting a California civil jury instruction defining FMV nearly identically to CACI No. 2102).  In *In re Volkswagen*, Judge Breyer permitted plaintiffs to present "evidence of actual transactions in the marketplace . . . ***for TDI vehicles***," not other vehicles that shared similarities with TDI vehicles. *Id.* CACI No. 2102 does not permit Plaintiffs to value their allegedly converted property based on prices in the market for materially different property.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

**GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD**

1  of isolated individual buyers (as Dr. Entner claims) but by overall market conditions involving buyers

2  and sellers more broadly. This is a straightforward point that is grounded in both economic principles

3  and the text of CACI No. 2102. For example, it would make little sense to measure the FMV of water,

4  not by the prevailing price between buyers and sellers in the market overall, but by some higher price

5  that some individuals might be willing to pay because of an emergency need for water or other

6  unusual circumstances.

7    *Third*, Plaintiffs point to Dr. Ghose's opinion that there is no basis to conclude that "all

8  wireless users, or even all Google Fi users would be willing to accept the same price" for cellular

9  data, and they suggest this shows Dr. Ghose is trying to refute "California law that only the market

10  price is relevant." (Mot. at 4.) But Dr. Ghose is not refuting the relevance of market prices; he is

11  simply pointing out that buyers pay different market prices for different plans with different terms,

12  which in turn "imply different prices for data" that undermine Dr. Entner's one-size-fits-all approach.

13  For example, Dr. Entner's use of the $10/GB term under one type of Google Fi plan as a measure of

14  FMV for all data plans ignores that the Google Fi Simply Unlimited plan has an effective market

15  price of $1.42/GB and the Google Fi Unlimited Plus plan has an effective market price of $1/30/GB

16  (up to the high speed data thresholds of those plans–to say nothing of data plans offered by other

17  carriers that involve myriad other market prices).  (*See, e.g.*, Ghose Rpt. ¶¶ 136, 138.) Far from trying

18  to refute the relevance of market prices, the thrust of Dr. Ghose's opinion that Plaintiffs attack is to

19  show that *Dr. Entner* failed to properly account for different market prices, which reflect the widely

20  varying terms, bundled services, and perceived quality of cellular data sold by different carriers in

21  the market.

22    In short, Plaintiffs have identified nothing in Dr. Ghose's report in which he purports to offer

23  a legal opinion on "the meaning of the legal standard or the jury instructions," (Mot. at 5), and the

24  statements they point to merely explain the flaws in how Dr. Entner attempted to calculate the FMV

25  of the cellular data that Google allegedly converted. Indeed, all of Dr. Ghose's opinions that Plaintiffs

26  challenge as legal opinions (*see* Mot. at 4) are based on economic analysis and are offered in direct

27  rebuttal to specific points raised by Dr. Entner. (*See also* Ghose Rpt. ¶ 121 (explaining that "Dr.

28  Entner's interpretation of Fair Market Value" would require an analysis that is not feasible and

Cooley LLP
Attorneys at Law
San Francisco

15

Google's Opposition to Exclude
Expert Damages Testimony
Case No. 5:20-cv-07956-VKD

1   explaining why "[f]rom my experience as an economist, for most goods, such an effort would be

2   extremely challenging").) Courts have regularly held this is the proper subject of expert testimony.

3   *See, e.g.*, *Keds Corp.*, 19 F.3d at 27 (affirming admission of expert evidence on valuation of inventory

4   in support of a damages verdict); *Maldonado*, 2021 WL 1947512, at *24 (admitting expert testimony

5   on fair market value differences of iPhones and iPads in support of damages opinions).

### 3. *Dr. Ghose does not assume an incorrect legal theory of damages*

7   Next, Plaintiffs argue that Dr. Ghose offers "several opinions that contradict the settled law

8   of California with respect to damages for conversion." (*See* Mot. at 5–7, § I.B.) Specifically, Plaintiffs

9   take issue with some (but not all, as noted above) of Dr. Ghose's opinions that some class members

10  have suffered no economic damages and that awarding damages as proposed by Dr. Entner would

11  confer a windfall. (*Id.*) Plaintiffs' arguments on this point center on the assertion that the jury should

12  not be allowed to consider lack of harm at all when addressing conversion damages. Such a position

13  is not only contrary to the law but meritless for many independent reasons.

14  **First**, under established California law, lack of harm is relevant in determining damages for

15  tort claims, including conversion. Specifically, California Civil Code § 3359 dictates that "***[d]amages***

16  ***must, in all cases, be reasonable***, and where an obligation of any kind appears to create a right to

17  unconscionable and grossly oppressive damages, contrary to substantial justice, no more than

18  reasonable damages can be recovered." (emphasis added); *see also Khraibut v. Chahal*, No. 15-CV-

19  04463-CRB, 2021 WL 1164940, at *18 (N.D. Cal. Mar. 26, 2021) (applying Cal. Civ. Code § 3359

20  to damages award). This principle has been applied in conversion cases to reduce "excessive"

21  damages. *See Booth v. People's Finance & Thrift Co. of Modesto*, 124 Cal. App. 131, 137–143 (1932)

22  (holding that $1,350 damages for detaining an automobile, valued at $650, for nine months was

23  excessive); *Fran-Well Heater Co. v. Robinson*, 182 Cal. App. 2d 125, 133 (1960) (citing § 3359 to

24  reduce "excessive" damages as "a matter of law"). Dr. Ghose's opinion that many class members

25  suffered no economic harm is relevant under § 3359 for the jury to evaluate whether the damages

26  sought by Plaintiffs are reasonable or excessive.[7]

27

28  _____

[7]  Many class members have Android devices that are associated with cellular data plans that they do
not pay for. This includes Android users on family plans or who have employer-issued devices. (*See,*

Cooley LLP
Attorneys at Law
San Francisco

16

**Google's Opposition to Exclude
Expert Damages Testimony
Case No. 5:20-cv-07956-VKD**

***Second***, these general principles are reinforced by the law of conversion, which requires a plaintiff to demonstrate harm before they can seek damages in any amount. "[W]here the fact of proximately caused injury is not proven with reasonable certainty, the plaintiff cannot recover regardless of how much evidence was introduced to show the measure of recovery sought by the plaintiff." *White v. Molfetta*, 64 Cal. App. 5th 628, 634–35 (2021) (analyzing elements of conversion under California law); *see Lueter v. State of Cal.*, 94 Cal. App. 4th 1285, 1302 (2002) ("Actions for the taking and damaging of private property are . . . in the field of tortious action, and hence are subject to the rule that proof of damage is an essential part of the plaintiff's case."). Dr. Ghose's opinions that certain class members have suffered no economic damages—an issue of fact—are directly relevant to this fundamental element of conversion. In attempting to support their argument that Dr. Ghose's opinions assume an incorrect legal theory, Plaintiffs cite case law (including the order on Google's demurrer in the *Csupo* case) stating that a defendant may be liable for conversion for using property in excess of authorization. (*See* Mot. at 7.) But those decisions, all decided at the pleading stage, simply held that the plaintiffs had plausibly stated that the defendant engaged in the wrongful taking of property, not whether plaintiffs are excused from proving actual harm at later stages in the case, including at trial. *See, e.g.*, *Duke v. Super. Ct.*, 18 Cal. App. 5th 490, 506, 508 (2017). Because Plaintiffs must prove that *all* class members suffered harm from the alleged conversion, Google is entitled to contest any such proof, including through Dr. Ghose's expert testimony that large groups of class members have experienced no economic loss. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1351, 1357 (2003) (requiring an "actual injury" for the lesser tort of trespass to chattels: "Intel must, but does not, demonstrate some measurable loss from the use of its computer system").

***Third***, Plaintiffs argue Dr. Ghose's opinions are only relevant to the "alternative" method of calculating conversion damages under California Civil Code § 3336 and should therefore be excluded because they have elected not to pursue that measure. (*See* Mot. at 6.) Not so. Section 3336 provides that damages in a conversion case are based either on the value of the converted property "or, an

---

*e.g.*, Ghose Rpt. ¶ 166.) As Google further notes, class members with unlimited data plans suffer no economic harm from the use of marginal data by the Challenged Transfers.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act . . ." California courts have held that this latter measure for calculating conversion damages applies where recovering the FMV of the property would lead to "unjust" results. *See Myers v. Stephens*, 233 Cal. App. 2d 104, 116 (1965) ("The determination of damages under the alternative provision is resorted to only where the determination on the basis of value at the time of conversion would be manifestly unjust."). Significantly, the case law does not limit application of the alternative method to where the primary method would create unjust results *for a plaintiff*. Instead, where an award based on the FMV of property would lead to unjust results (or create a windfall) for *either the plaintiff or defendant*, a jury may consider the alternative method of conversion damages. This principle of avoiding unjust results for either the plaintiff or defendant comports with the general limitations on damages discussed above. *See* Cal. Civ. Code § 3359 ("[d]amages must, in all cases, be reasonable"). While Plaintiffs can elect the damages measure they wish to pursue under § 3336, they cannot unilaterally preclude Google from presenting evidence to show, based on the alternative measure of damages, that large swaths of the class were not "injured" and suffered no "loss" from the alleged "wrongful act." *See* Cal. Civ. Code § 3336. Dr. Ghose's opinions are directly relevant to this aspect of § 3336.[8]

**Fourth**, Dr. Ghose's opinion that some class members suffered no economic damages is not an attempt to disclaim the FMV measure of damages for conversion, as Plaintiffs claim, but are part of his rebuttals to Dr Entner's errors in calculating FMV. While Plaintiffs try to make it seem as if Dr Ghose is disputing the FMV standard altogether and applying a different economic measure of damage, his report belies this mischaracterization. For example, in one of the paragraphs of Dr. Ghose's report that Plaintiffs challenge, Dr Ghose states that "basing damages on the FMV of a good, *without accounting for a particular facts and circumstances at issue*" may overstate damages. (Ghose Rpt. ¶ 34 (emphasis added).) The italicized text—which Plaintiffs notably omit in their

---

[8] Plaintiffs mischaracterize Dr. Ghose's opinion by claiming that he opined that the Court "must" apply a "but for" theory of damages similar to the alternative measure of damages under § 3336, (Mot. at 5–6)—but Dr. Ghose never said that. Dr. Ghose mentions the principle of avoiding windfalls to provide an additional reason for why Dr. Entner's FMV calculation is problematic from an economist's perspective, but Dr. Ghose explicitly takes no position on whether this is a legal requirement of measuring conversion damages. (Ghose Rpt. ¶ 38.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

1    selective quotation (*see* Mot. at 5)—confirms Dr. Ghose is not attempting to disclaim the FMV legal

2    standard. Rather, Dr. Ghose is merely pointing out that Plaintiffs' particular determination of FMV

3    fails to account for relevant "facts and circumstances," including that certain class members have

4    suffered no actual loss. As just one example, Dr. Ghose explains that Dr. Entner's reliance on one

5    Google Fi plan to calculate the FMV of the cellular data under all plans makes no economic sense,

6    including because that plan has unique benefits affecting price (including international roaming) that

7    are not relevant to the vast majority of the class. (Ghose Rpt. ¶¶ 137–38 (comparing Google Fi to

8    Verizon's plan).) Similarly, Dr. Ghose rebuts Dr. Entner's reliance on overage penalties as a measure

9    of FMV by pointing out the obvious fact that overages don't apply to the great majority of class

10   members who have unlimited data plans or who never exceeded their plan's limits. (*Id*. ¶ 133–34

11   (explaining overage charges were "set to deter consumers from exceeding the limit, not to extract

12   revenue").) These are direct rebuttal points that Google is entitled to present to the jury and not an

13   effort to apply an "impermissible  measure of damages," as Plaintiffs claim. (Mot. at 7.)

14       ***Fifth***, because Dr. Ghose did not assume any incorrect legal theory in formulating the

15   opinions in his report, the Court can and should disregard Plaintiffs' scattershot of other arguments,

16   such as that Dr. Ghose's opinions are "irrelevant," are not based on a "proper basis," are based on

17   matters precluded by law, will not "assist the trier of fact," and "create substantial danger of undue

18   prejudice, of confusing the issues, and of misleading the jury." (*See* Mot. at 10–11.) All five

19   arguments rest on the unfounded premise that Dr. Ghose assumes the wrong legal theory of damages,

20   which is incorrect. Regardless, countless courts have repeatedly found that testimony regarding the

21   valuation of property is admissible and useful to the jury. *See, e.g.*, *Lessin v. Ford Motor Co.*, No. 19-

22   CV-01082-AJB-AHG, 2024 WL 5007092, at *2 (S.D. Cal. Oct. 31, 2024) (denying motion to exclude

23   expert opinions regarding the difference in value between vehicles with and without a defect at issue);

24   *Maldonado*, 2021 WL 1947512, at *21–24 (admitting expert damages opinions involving a method

25   of determining the value of a product despite opposing party's challenge to calculations).

26       **4.    *There is no basis to strike Dr. Ghose's corrections to Dr. Entner's "average price" calculations***

28       Plaintiffs further challenge Dr. Ghose's opinions at ¶¶ 116–121 and 141–156 of his Report in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

which he determines the 71% and 93% adjustments to Dr. Entner's "average" price calculations by comparing the pricing terms of various data plans and performing a regression analysis to account for non-cellular data services. (*See* Mot. at 13–14.)   In these sections of his report, Dr. Ghose addresses and corrects fundamental errors in Dr. Entner's "average price" calculations, specifically the failure to (1) calculate the FMV of the "property" actually at issue (*i.e.*, only the marginal amounts of data consumed by the Challenged Transfers) and (2) account for non-cellular services bundled with many mobile data plans (*e.g.*, subscriptions to streaming services, international roaming, etc.). There is no basis to strike these rebuttal opinions.

Plaintiffs claim in passing that Dr. Ghose's calculation applied "a legally erroneous definition of Fair Market Value" but they do not explain what is "legally erroneous" about Dr. Ghose's corrections.  Plaintiffs seem to take issue with the fact that these adjustments are based on estimating the price for *marginal* units of cellular data, which they point out is "'substantially lower than the average price,' not to mention the highest price." (Mot. at 7.) But they cite no authority to support their position that FMV can only be measured by the average price for all units of a good or service even where (as here) only the marginal units of a service are at issue. The only source Plaintiffs point to elsewhere in their Motion, CACI No. 2102, is silent on this issue.

Plaintiffs may want the jury to only hear one side of this issue, but that is hardly a reason to strike Dr. Ghose's opinions. *See, e.g.*, *Lessin v. Ford Motor Co.*, No. 19-CV-01082-AJB-AHG, 2024 WL 5007092, at *5 (S.D. Cal. Oct. 31, 2024) ("Ford may dispute whether these opinions [regarding valuation] are sufficient, but . . . these disagreements go to the merit of the issue and the weight of the competing expert opinions."). Dr. Ghose's adjustments to Dr. Entner's FMV calculations plainly fall within the scope of proper expert testimony and there is no valid basis to exclude this highly relevant testimony. *See, e.g.*, *Maldonado*, 2021 WL 1947512, at *21–24.

## B.    Dr. Jeffay's Opinions Are Not Legal Conclusions

Plaintiffs do not advance any theory of classwide harm, which is fatal to their conversion claim. *See, e.g.*, *Molfetta*, 64 Cal. App. 5th at 634–35 (requiring "proximately caused injury . . . proven with reasonable certainty"); *Lueter*, 94 Cal. App. 4th at 1302 ("proof of damage is an essential part of the plaintiff's case"). They never explain how the majority of the class, who have unlimited

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

cellular data plans, were adversely affected by the de minimis, marginal network usage associated with the Challenged Transfers. Plaintiffs may argue that there was some form of constructive injury or an injury that should be assumed by law, rather than a concrete, actual injury. They would be wrong, but such a dispute would be the domain of lawyers. However, Google is entitled to show as a threshold matter—and in Google's view a dispositive matter—that class members with unlimited data plans simply suffered no harm whatsoever. These opinions are directly relevant to two elements of Plaintiffs' claim—substantial interference and harm—and go to the reasonableness of any damages sought by Plaintiffs.

Dr. Jeffay provides *technical* expert opinions that go to this factual issue.  Plaintiffs attempt to exclude these technical opinions to hide their failure to advance any coherent theory of harm. First, Dr. Jeffay analyzes the network usage data produced in the case to show just how de minimis the Challenged Transfers are, even for users with limited cellular data plans, and how they are a drop in the bucket compared to everyday cellular network usage, such as the network usage associated with scrolling Facebook or sending a single photo by text message. (*Compare* Jeffay Rpt. ¶ 190 (Challenged Transfers), *with* ¶ 187 (40.4 megabytes for 10 minutes of scrolling on Facebook), *and* ¶ 188 (at least two to five megabytes for sending one photo via text.).) In other words, Dr. Jeffay opines that most class members did not suffer any harm as a technical matter or from a network-systems perspective.  These analyses are not legal conclusions of any type; rather, they are technical opinions based on Dr. Jeffay's expertise in analyzing and measuring network usage. Indeed, Plaintiffs' own experts have offered many opinions on the size of the Challenged Transfers. (*See, e.g.*, Stec Rpt. ¶ 31 (recognizing "average amount of data" used by Challenged Transfer and applying various adjustments).)[9]

Next, because "marginal use of a cellular data plan has no consequence for the user," Dr. Jeffay addresses users with unlimited cellular data plans, explaining there is no "sense in which a user with an unlimited cellular data plan is injured by software on their phone using their plan to send network transfers. (Mot. at 8 (citing Jeffay Rpt. ¶ 20).) Notably, this too was *rebuttal* testimony, contesting the main thrust of *Plaintiffs'* expert opinions—that the Challenged Transfers hurt users

---

[9] (*See* ECF No. 173-3, Expert Report of Jeffrey Stec ("Stec Rpt.") (Nov. 12, 2024).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

and should have been designed differently to avoid that harm. (*See, e.g.*, Jeffay Rpt. ¶ 99 (disagreeing with Plaintiffs' experts' suggestion that the "software should instead always wait for Wi-Fi, indefinitely, to send logs")). Plaintiffs' objection makes no sense in this light, as they never explain why their experts are entitled to suggest harm to users but Google is not allowed to show that no such harm ever occurred.

Regardless, Dr. Jeffay is providing a well-reasoned technical opinion, not a legal conclusion. That is, when a user has an unlimited cellular data plan, there is just no sense from a computer science or networking science perspective that the user or device are impaired by marginal use of the network. Dr. Jeffay concludes "[a]s a matter of computer science," not as a matter of law, "there is simply no obvious way in which initiating a network transfer over a cellular network instead of a Wi-Fi network 'injures' a user with an unlimited cellular data plan. (*Id.* ¶ 42.) Dr. Jeffay, a leading researcher in the field of networking science and who has spent his entire career researching network usage, is imminently qualified to give such an empirical opinion.

Indeed, courts regularly allow technical experts to apply their expertise and specialized knowledge to explain how individuals can (or cannot) be harmed by a challenged practice. For example, in *Dolby Laboratories Licensing Corp. v. Adobe Inc.*, a computer engineering expert gave an opinion on whether source code provided to defendant included plaintiff's copyrighted code was "expressive" or "merely functional," which is an ultimate issue regarding whether the copyright had been violated and whether the plaintiff was harmed. No. 18-CV-01553-YGR, 2019 WL 6327210, at *4 (N.D. Cal. Nov. 26, 2019). The Court denied the challenge because although opinions on "expression" or "creativity" are legal concepts, they were delivered "as a matter of software engineering." *Id.* Also, due to their "highly technical nature," they were helpful to the jury. *Id.*; *see also Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 646 (N.D. Cal. 2020) (holding that cyber security expert provided relevant factual information that informed the determination that harm was more likely where a data breach exposed certain information could be pieced together to allow a hacker to pose as a plaintiff and commit fraud or identity theft, and therefore did not invade the province of the court or jury). To argue otherwise, Plaintiffs cite completely irrelevant cases

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD

about DNA profiling and psychological examinations.[10] The cases they do cite about damages are completely irrelevant to their arguments here.[11] Dr. Jeffay does not form any opinion regarding legal damages or their measure at all, let alone use the wrong framework.

Accordingly, Dr. Jeffay's opinions are within the proper scope of expert testimony and the Court should reject Plaintiffs' arguments to the contrary.

## V.    CONCLUSION

For all these reasons, the Court should deny Plaintiffs' Motion to Exclude the opinions offered by Google's experts Dr. Anindya Ghose and Dr. Kevin Jeffay.

Dated: May 7, 2025                    COOLEY LLP


                                      By: /s/ Whitty Somvichian
                                          Whitty Somvichian

                                      Attorneys for Defendant
                                      GOOGLE LLC

---

[10] *United States v. Bacon*, 979 F.3d 766, 770 (9th Cir. 2020) (ordering new criminal trial where expert psychological evaluation evidence was improperly excluded); *United States v. Russell*, No. 22-50056, 2024 WL 4054382, at *2 (9th Cir. Sept. 5, 2024) (vacating criminal conviction where district court admitted expert testimony on DNA profiling without making explicit reliability finding).

[11] *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 357, 364 (9th Cir. 1996) (remanding where plaintiffs failed to meet their burden to show their damages calculation method was not speculative); *Stop Staring! Designs v. Tatyana, LLC*, 625 F. App'x 328, 330 (9th Cir. 2015) (ordering new trial where expert, who testified beyond his expertise, offered theories that lacked factual foundations, were not disclosed in his expert report, and amounted to legal opinions on causation); *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir. 2000) (expert's conclusions lacked any foundation and conflated evidence regarding economic and non-economic damages).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

GOOGLE'S OPPOSITION TO EXCLUDE
EXPERT DAMAGES TESTIMONY
CASE NO. 5:20-CV-07956-VKD