1   COOLEY LLP
    WHITTY SOMVICHIAN (194463)
2   (wsomvichian@cooley.com)
    MAX A. BERNSTEIN (305722)
3   (mbernstein@cooley.com)
    ANUPAM DHILLON (324746)
4   (adhillon@cooley.com)
    EMILY J. BORN (360427)
5   (eborn@cooley.com)
    CAROLINE A. LEBEL (340067)
6   (clebel@cooley.com)
    3 Embarcadero Center, 20th Floor
7   San Francisco, CA 94111-4004
    Telephone:    +1 415 693 2000
8   Facsimile:    +1 415 693 2222

9   COOLEY LLP
    ARIANA E. BUSTOS (345918)
10  (ABustos@cooley.com)
    355 South Grand Avenue, Suite 900
11  Los Angeles, California 90071
    Telephone:    (213) 561-3250
12  Facsimile:    (213) 561-3244

13  Attorneys for Defendant
    GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, EDWARD MLAKAR, MICK CLEARY, EUGENE ALVIS, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-cv-07956-VKD<br><br>**AMENDED[1] [PROPOSED] SUPPLEMENTAL BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL, IN OPPOSITION TO PLAINTIFFS' CLASS CERTIFICATION MOTION, DKT. 181**<br><br>Judge:    Hon. Virginia K. DeMarchi |

---

[1] The [Proposed] Supplemental Brief Re: *Csupo v. Google LLC Trial*, In Opposition To Plaintiffs' Class Certification Motion, Dkt. 181 was originally filed on August 6, 2025. This Amended [Proposed] Supplemental Brief remains identical to that filed on August 6, 2025, but includes the addition of a Table of Authorities and Table of Contents in accordance with L.R. 7-4(a)(2).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 1

    A. The Csupo Trial Proved that Individualized Issues Regarding Consent Predominate........................................................................................................... 1

        1. The Csupo Plaintiffs' Theory of Nonconsent Turned on Highly Individualized Evidence. ............................................................................. 2

        2. Settings that Control Challenged Traffic Pose Individualized Issues. ......... 6

    B. The Csupo Trial Focused on Individualized Evidence of Specific Cell Plan Terms and Confirmed the Elements of Conversion Cannot Be Resolved Through Common Proof. ...................................................................................... 7

        1. During the Trial, Plaintiffs' Counsel Openly Admitted that Throttling and Overages are Central to Plaintiffs' Claim. .......................... 7

        2. The Csupo Trial Confirms that Throttling and Overages Necessarily Present Individualized Questions. ............................................................... 9

        3. Plaintiffs' Counsel Also Conceded that Plan Terms Matter When Determining Whether Class Members have a Property Interest. ............... 13

III. CONCLUSION .............................................................................................................. 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: CSUPO V. GOOGLE LLC TRIAL
CASE NO. 5:20-CV-07956-VKD

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple iPhone Antitrust Litig.*,
  2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) .................................................................. 5

*Beckwith v. Dahl*,
  205 Cal. App. 4th 1039 (2012) ......................................................................................... 4

*Csupo v. Google LLC*
  missing cite info ............................................................................................................ 1, 7

*Downey v. Pub. Storage, Inc.*,
  44 Cal. App. 5th 1103 (2020) ....................................................................................... 3, 4

*In re: First Am. Home Buyers*,
  313 F.R.D. 578 (S.D. Cal. 2016) ...................................................................................... 4

*Marlo v. United Parcel Serv., Inc.*,
  251 F.R.D. 476 (C.D. Cal. 2008), *aff'd* 639 F.3d 942 (9th Cir. 2011) ............................. 5

*Moore v. Apple Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015) .................................................................................... 12

*Pfizer Inc. v. Super. Ct.*,
  182 Cal. App. 4th 622 (2010) ........................................................................................... 4

*Picus v. Wal-Mart Stores, Inc.*,
  256 F.R.D. 651 (D. Nev. 2009) ........................................................................................ 4

*Singh v. Google LLC*,
  2022 WL 94985 (N.D. Cal. Jan. 10, 2022) ...................................................................... 4

*Sloan v. Gen. Motors LLC*,
  287 F. Supp. 3d 840 (N.D. Cal. 2018) ............................................................................. 3

**Other Authorities**

Rule 23 ................................................................................................................... 5, 7, 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

## I.   INTRODUCTION

The trial proceedings in the *Csupo v. Google LLC* matter in Santa Clara Superior Court are highly relevant to this Court's consideration of Plaintiffs' Motion for Class Certification ("Class Cert. Motion", Dkt. 181)—but for the opposite reason that Plaintiffs claim. In their reply brief in support of the Class Cert. Motion ("Reply", Dkt. 212-5), Plaintiffs tell the Court that "[t]he *Csupo* trial record abundantly confirms that Plaintiffs' claims and Google's defenses will be tried with common evidence." (*Id*. at 3.) But the actual record shows otherwise and confirms what Google explained in its Opposition ("Opposition", Dkt. 191): There is no possible way to fairly litigate Plaintiffs' conversion theory on a classwide basis using common proof.

Throughout the *Csupo* trial, Plaintiffs' counsel relied on highly individualized evidence applicable to only some class members—precisely because there was no feasible way to prove their claims through common proof. For example, Plaintiffs' counsel attempted to prove nonconsent at trial with evidence that *a tiny fraction* (less than 1%) of class members turned off a particular toggle on their Android devices. Plaintiffs' counsel claimed this toggle amounted to a "material misrepresentation" that "void[ed]" consent, and this theory was a centerpiece of Plaintiffs' case. (Bernstein Decl., Ex. A ("*Csupo* Trial Tr.") at 1404:6-10. As another example, Plaintiffs' counsel attempted to prove the existence of a property interest, substantial interference, and harm through evidence that *some* data plans throttle speeds after a certain threshold and *some* plans may impose overage charges. The reliance on these types of inherently individualized evidence at the *Csupo* trial confirms there is no feasible way to resolve the key issues in this case from **common proof**.

In short, the very individualized issues Google identified in the Opposition took center stage at the *Csupo* trial, underscoring why class certification should be denied here.

## II.   ARGUMENT

### A.   The *Csupo* Trial Proved that Individualized Issues Regarding Consent Predominate.

The *Csupo* trial showed that Plaintiffs' counsel cannot litigate the issue of non-consent without resorting to individualized evidence. First, in an effort to oppose users' express consent through the Google Privacy Policy and Google Play Terms ("Agreements"), Plaintiffs' counsel relied on two inherently individualized theories: (a) that any consent that might apply is, in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

Plaintiffs' counsel's words, "void[ed]" by an alleged "***material misrepresentation***" involving an Android setting that only a *fraction* of class members were exposed to and an even smaller fraction may have relied on (*Csupo* Trial Tr. at 1404:6-10 (emphasis added); *see also id.* at 1401:12-14); and (b) a theory that *some* users' idiosyncratic device setup experiences mean they did not accept the Agreements. Second, trial testimony regarding Android device settings confirms users are able to control, and thus consent to, much of the challenged network traffic—raising inherently individualized issues that Plaintiffs offer no meaningful way to address.

### 1. The *Csupo* Plaintiffs' Theory of Nonconsent Turned on Highly Individualized Evidence.

Plaintiffs argue that class certification is proper here because their theory of nonconsent rests on evidence common to the putative class, namely the Agreements and the Android setup process. (*See* Class Cert. Motion at 2, 13-14 (discussing "standard form language" "presented" when users "purchased an Android phone and initiated the setup process").) But in the *Csupo* trial, Plaintiffs' counsel mounted a furious attack to *invalidate* any user consent by relying on individualized evidence relevant to only a tiny fraction of the class—belying their repeated representations that they can prove non-consent on a classwide basis.

**"*Background Data*" *Toggle*:** Specifically, the *Csupo* plaintiffs pressed a "misrepresentation" theory of non-consent based on a setting (the "background data toggle") that allows Android users to stop Google Play services[2] from using "mobile data while running in the background," which Plaintiffs claim did not work as Google promised. The undisputed evidence at trial showed that only a fraction of users ever navigated to this setting and even fewer—just **0.3% of Android users overall**—turned the setting off to limit the use of mobile data. (*See Csupo* Trial Tr. at 2108:23-2109:5 (Mr. Sancheti explaining the toggle is not part of the setup flow for an Android device and "less than 0.3 percent [of] users per year" turn it off).) Despite its conceivable relevance to just a sliver of the class, the background data toggle was featured over ***100 times*** at trial (Bernstein Decl. ¶ 6) and became the centerpiece of the *Csupo* plaintiffs' non-consent theory,

---

[2] Google Play services is the external name for GMS Core, which Plaintiffs allege causes all the challenged traffic. (Class Cert. Motion at 4.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

from the opening statement,[3] to expert testimony,[4] to the cross-examination of Google witnesses[5], to the repeated emphasis on internal documents regarding the toggle[6], to counsel's argument opposing Google's non-suit motion,[7] to closing argument.[8]

Critically, Plaintiffs' counsel's explanation as to why Plaintiffs repeatedly invoked the background data toggle made clear the toggle could be relevant only to the subset of users who were allegedly misled by it. Specifically, Plaintiffs' counsel claimed the toggle was "***a material misrepresentation which voids any purported contract***" and "***any consent***." (*Csupo* Trial Tr. 1404:2-7 (emphasis added)). The most basic premise of a "material misrepresentation" that "void[s] user consent" (as Plaintiffs' counsel put it) or that "actively . . . deceive[s]" (as Plaintiffs' expert put it) (*see* notes 6 and 3 *supra*) is that a user actually (1) saw the allegedly false statement associated with the toggle, and (2) detrimentally relied on it. (*Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018) (a plaintiff asserting a misrepresentation "obviously must plead that they in fact viewed or were exposed to the misleading misrepresentation; otherwise, they could not have relied on it."); *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020) (finding that "[u]nless the class members were *exposed* to the advertisement, they could not have been deceived by it").)

Accordingly, for the vast majority of the *Csupo* class and the proposed class here, the "misrepresentation" theory of non-consent is entirely irrelevant. Even assuming Plaintiffs' claim

---

[3] *See, e.g.*, *Csupo* Trial Tr. at 304:6-307:7 (extensive discussion of the background data toggle and related emails as a concluding point in Plaintiffs' opening presentation).
[4] For example, Plaintiffs' expert Dr. White claimed the toggle was "actively [ ] deceiv[ing]" users, that he did not "know how [users] can consent" given that alleged deception, and that it did not matter that only a few users turned the toggle off because it was "absolutely wrong" to have a "deceptive" toggle. (*Id.* at 2211:2-2212:16.) (*See also id.* at 589:2-21 (Dr. White testimony claiming the toggle gave users a false "illusion of being able to control" the use of their cellular data.)
[5] *See Csupo* Trial Tr. at 1057:16-1061:10, 1068:14-1073:11, 2119:27-2121:11 (cross-examination of Google's corporate representative witness about the background data toggle).
[6] *See Csupo* Trial Tr. at 305:11-306:21, 1062:6-1066:14, 1124:7-18, 1403:15-17, 2121:12-27 (Plaintiffs' cross-examination regarding internal emails related to the background data toggle).
[7] *See Csupo* Trial Tr. at 1402:27-28 ("Now I'd like to talk about the material misrepresentation. This is the background data usage toggle."), 1404:9-10 ("any residual consent would be voided by that misrepresentation").
[8] *Csupo* Trial Tr. at 2529:18-2530:10 (referring to background data toggle and arguing that it contradicts "the privacy policy" because Google is "misrepresenting things and deceiving users").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

that the toggle does not work as represented (which Google disputes[9]), only those few users who (1) actually navigated to the setting (which is not in the required setup process for a device and is only accessed in optional settings screens[10]), *and* (2) turned it off, could possibly have been "materially" deceived.[11] That presents plainly individualized issues that make class certification improper. *See, e.g.*, *Downey*, 44 Cal. App. 5th at 1115 (affirming denial of class certification where there was no common exposure to alleged misleading advertising); *Singh v. Google LLC*, 2022 WL 94985, at *10, *12 (N.D. Cal. Jan. 10, 2022) (denying certification where challenged statements were "buried" on Google webpages putative class members would not necessarily see, and thus "the Court would need to conduct individual inquiries to determine if [ ] class members did view them"); *In re: First Am. Home Buyers*, 313 F.R.D. 578, 606 (S.D. Cal. 2016) (denying certification where "[t]here are significant individual issues as to whether the putative class members were even exposed to, much less relied on, the alleged misrepresentations"); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 659 (D. Nev. 2009) (predominance lacking where court would have to individually evaluate whether class members "relied on or even saw" misrepresentation); *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 632 (2010) (certification improper where plaintiff offered "no evidence that a majority of [] consumers viewed" and were deceived by the challenged representations).

The *Csupo* plaintiffs' heavy reliance on a misrepresentation theory of non-consent that applies to *less than 1% of users each year* confirms the unavoidable prejudice to Google of certifying a class here. Despite assuring the *Csupo* court that the consent issues would turn on common evidence applicable to the *Csupo* class as a whole (spanning some 14 million users), Plaintiffs' counsel then litigated this critical element of their claim at trial using evidence that

---

[9] Mr. Sancheti—director of engineering for Google Play services—testified that the toggle "does work." (*Csupo* Trial Tr. at 983:12-21, 1093:24-26.)

[10] *See Csupo* Trial Tr. 2108:9-27 (Mr. Sancheti explaining that the background data toggle is not contained in the setup flow).

[11] The fraction of users who navigate to the toggle and leave it *on* to allow background data usage necessarily consent to Google Play services using data in the background, even under Plaintiffs' conception of how users understand that toggle. For those users, Plaintiffs' "misrepresentation" theory would not apply. Such a user would have understood that they were leaving *on* all background mobile data usage, and thus there was no detrimental reliance. *See, e.g.*, *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1062 (2012) (fraud by misrepresentation requires detrimental reliance). And while Plaintiffs might dispute that all such users have consented, any such dispute would further underscore the individualized nature of the issue.

4

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

applied only to a tiny portion of that class. Moreover, this reliance on the background data toggle at the *Csupo* trial reflects a broader problem that could manifest here in a number of other ways. Because the relevant factors regarding consent for any given user are individualized and fact-intensive (*see* Opposition at 12) there is no conceivable way for Plaintiffs to try to prove non-consent at trial, or for Google to fairly defend itself against Plaintiffs' theories, using predominantly common proof. In *Csupo*, this was most evident in Plaintiffs' reliance on the toggle, but a class trial here will likely implicate other individualized proof, as described in detail in Google's opposition. This is precisely what Rule 23 is intended to guard against.

**_Device Setup Assistance:_** The *Csupo* plaintiffs also tried to prove nonconsent with evidence that some users rely on other people to help set up their Android device. Testimony in the *Csupo* trial confirms that Android users accept the Agreements in the process of setting up a new Android phone (the "setup flow"). (*See Csupo* Trial Tr. at 2162:5-14, 19-23 ("a hundred percent of users" accept the Agreements during the setup flow).) Without directly disputing this fact, Plaintiffs' counsel tried to muddy the waters by repeatedly eliciting testimony that **some** users have store clerks or others assist with the setup process. (*See Id.* at 504:8-20 (Plaintiffs' expert, Dr. Christopher White, testifying clerks have assisted his mother with device setup), 895:19-21 (named plaintiff Kerry Hecht stating "[a] Verizon store clerk" has done the same for her), 2146:12-28 (Google engineer Sundeep Sancheti acknowledging during cross examination some users receive assistance).)

Plaintiffs' counsel relied on variation among users' device setup experiences to suggest some users are not bound by the Agreements, injecting obviously individualized issues into the case. Class certification is improper under these circumstances. *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 485 (C.D. Cal. 2008), *aff'd* 639 F.3d 942 (9th Cir. 2011) (predominance lacking "when a plaintiff brings a claim on a class-wide basis that raises individualized issues, but fails to provide common proof that would have allowed a jury to determine those issues on a class-wide basis"); *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *14 (N.D. Cal. Mar. 29, 2022) (at class certification, plaintiffs must "show that the elements of their claims are capable of proof at trial through evidence that is common to the class").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

\*\*\*

In sum, that Plaintiffs' counsel repeatedly resorted to plainly individualized evidence to oppose Google's consent arguments at trial confirms class treatment is unworkable and inappropriate here.

### 2. Settings that Control Challenged Traffic Pose Individualized Issues.

*Csupo* trial testimony regarding Android device settings provides further support for Google's position that many *Taylor* class members consented to the challenged transfers by choosing to enable settings that cause such transfers to occur. (*See* Opposition at 11-12.) For example, in unrebutted testimony, a Google location engineer explained that the general Location setting shown to users when setting up an Android device controls the Location Uploads that Plaintiffs complain of—and that a substantial majority of users keep it on (and thus consented[12]) despite the option to turn it off.[13] (*Csupo* Trial Tr. at 1911:13-1912:12.) As for the disputed Clearcut logs, Plaintiffs' counsel themselves conceded during their opening statement that users have the ability to stop the transmission of at least some Clearcut logs. (*Id.* at 288:8-9.) Google's expert, Dr. Kevin Jeffay, then explained that based on one of the Plaintiffs' experts' own analysis, "two-thirds to three-quarters of the data" transmitted between an Android device and Google "went away when [the expert] turned off" the Usage & Diagnostics setting in an experiment, confirming that Android users have a choice to block or allow (and thus consent to) a majority of the disputed Clearcut logs. (*Id.* at 1989:28-1990:13.) This testimony underscores what Google argues in its Opposition—that individual users' selections of different optional settings render the consent issue inherently individualized and makes class treatment inappropriate.

---

[12] Plaintiffs might argue that users who turned on Location Uploads did not consent because they just maintained the default option and did not make a conscious choice or they did not understand what leaving the setting on would allow—but any arguments along those lines would again only underscore the individualized nature of the consent issue.

[13] Plaintiffs' counsel tried to downplay the Location setting at trial by eliciting testimony that the "only way to turn [the Location Uploads] off ***in the setup flow*** is to completely disable" location. (*Csupo* Trial Tr. at 701:7-9.) But that doesn't change that users ***can*** turn off Location Uploads while setting up their phone, and many users do. Moreover, as Google's location engineer explained, users have ***yet further ways*** to adjust location settings, including those that control Location Uploads specifically. (*See id.* at 1913:25-28, 1914:19-23, 1917:8-11.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

### B. The Csupo Trial Focused on Individualized Evidence of Specific Cell Plan Terms and Confirmed the Elements of Conversion Cannot Be Resolved Through Common Proof.

The *Csupo* trial proved a second issue that Google explained in its Opposition: The specific terms of cell plans, including those governing if and when users can experience "throttling" or pay overages, are critical to resolving the elements of substantial interference, harm, and the existence of property. And because the proposed class encompasses users on thousands of distinct plans that differ in material ways, these elements cannot be resolved classwide through common evidence. The *Csupo* court should not have allowed the case to be tried as a class action under California rules for this reason alone, and this Court certainly should not permit this case to proceed to trial as a class action under Rule 23.

#### 1. During the Trial, Plaintiffs' Counsel Openly Admitted that Throttling and Overages are Central to Plaintiffs' Claim.

Plaintiffs have no common proof of harm or substantial interference. In *Csupo*, as here, Plaintiffs' counsel first assured the court at class certification that their theories of harm and substantial interference did not concern throttling or overages, and therefore could be proven classwide. (*See e.g.*, Bernstein Ex. B, *Csupo*, 7/3/2023 Plaintiffs' Reply ISO Class Cert. ("Plaintiffs' theory is predicated upon Google's appropriation of the cellular data itself, not subsequent overages or throttling."); Reply at 11 (explaining that they need not prove harm through overages or throttling). Plaintiffs' counsel had to take this position because, as the *Csupo* court concluded, throttling and overages turn on individualized issues, namely each class member's plans and data usage, and therefore individualized inquiries would predominate under any theory based on throttling or overages. (Bernstein Ex. C, *Csupo*, 10/26/2023 Order at 12 ("Plaintiffs are relying solely on Google's misappropriation of cellular data to show harm, not throttling or overages (*both of which concededly might require individualized inquiries*).") (emphasis added).)

However, Plaintiffs' counsel promptly reversed course at trial, admitting that throttling and overages *were* necessarily at issue. Even before a jury was empaneled, in briefing motions *in limine*, Plaintiffs' counsel argued: "Evidence about throttling and overages is therefore ***centrally relevant evidence of property, injury, and harm***." (Bernstein Ex. D, *Csupo*, 5/19/2025 Plaintiffs' Opposition to MIL at 15 (emphasis added).) Plaintiffs' counsel explained "Google cannot seriously

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

dispute that the prospect of overage charges and throttling are … part what makes Google's conduct harmful and injurious to Plaintiffs." (*Id*.) They then proposed using the below slide in their opening statement, expressly arguing that overages and throttling *were* the harms at issue.



(Bernstein Decl., ¶ 4.) When Google objected, Plaintiffs' counsel maintained that throttling is "relevant to substantially all of the elements of conversion." (*Csupo* Trial Tr. at 247:14-15.)

The *Csupo* plaintiffs ultimately agreed to omit this slide to avoid an adverse ruling, but then argued throughout trial that throttling and overages were evidence of substantial interference and harm: from their opening statement, through most witness examinations, and again in closing. (*See, e.g.*, *Csupo* Trial Tr. at 301:18-25 (arguing in opening that users on limited plans "had to ration their own use [of data] for fear of overcharges"); 302:4-6 (arguing in opening: "They basically disabled your phone from being able to do high-speed internet or broadband internet."); 2465:16-18 (arguing in closing: "Then people got some unlimited plans that were kind of unlimited, but once you reached a certain point your data got throttled."); 271:22-26 (similar); 1147:23-25 (similar).) Then, when resolving jury instructions, plaintiffs explained to the court: "*[T]he fact of throttling and overcharges are therefore important context that goes to substantial interference*." (*Id.* at 2387:21-23 (emphasis added).) These unequivocal representations throughout the Csupo trial—made to the Court and to the jury—leave no doubt: Plaintiffs' conversion claim puts throttling and overages centrally at issue.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

### 2. The *Csupo* Trial Confirms that Throttling and Overages Necessarily Present Individualized Questions.

The *Csupo* trial showed not only that throttling and overages are inextricably intertwined with the interference and harm elements of Plaintiffs' claim, but also that these elements cannot be resolved through common proof, just as Google forecast in its Opposition. (*See* Opposition at 13-15.) The *Csupo* plaintiffs' trial evidence demonstrated that throttling turns on a host of individualized issues, including (1) whether throttling can occur at all under a given plan; (2) if a plan does contemplate throttling, after what level of usage; (3) if a user hits a throttling threshold, is throttling only possible or will it necessarily occur; (4) if a class member could show they experienced throttling, what was the degree and impact; and (5) did the challenged conduct cause the throttling. These issues, discussed further below, all turn on the specific terms of the thousands of different cell plans available during the class period along with many other relevant facts about a class member's data usage and circumstances, rendering classwide treatment impossible.

**_Whether a Throttling Threshold Existed:_** Many unlimited plans have no throttling at all. Plaintiffs' counsel used faulty evidence to suggest to the jury that most unlimited plans impose some form of throttling, but even plaintiffs' expert admitted that not all do. (*Csupo* Trial Tr. at 1151:13-17 (Do 5G plans have throttling caps? Not all of them.") Since throttling is "central evidence" of Plaintiffs' claims, as counsel asserted to the *Csupo* court (*see* Section 1, *supra*), then this alone introduces an individualized inquiry that will predominate—namely, whether a user had a plan that even contemplates throttling, or if instead they could use any amount of data without consequence. Users with the latter type of plan would have a fundamentally different claim than those with the former, since they could not even theoretically have suffered any harm or interference from the challenged conduct even under Plaintiffs' theories of harm and interference.[14]

**_What is the Threshold (if Any):_** Plaintiffs' experts conceded that even those unlimited plans that allow a carrier to throttle have widely differing thresholds before throttling might apply. (*Csupo*

---

[14] Plaintiffs may argue that what they call "5G premium plans" are irrelevant to this case because they are not captured in Google's logs as "metered" data. This is not accurate. Regardless, Plaintiffs in *Csupo* suggested only that *some* plans of this type operate this way, not all. (Csupo Trial Tr. 2465:16-24. This argument therefore presents only an additional individualized issue: whether a particular 5G plan was treated as unmetered and therefore included in damages–an issue that is both disputed and, even under Plaintiffs' understanding, specific to each user.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

Trial Tr. at 1148:4-8 (explaining throttling thresholds could be set at: "5 gigabyte, 10, 15, 20. They come in different shapes and flavors.").) One plan may allow for throttling after only limited usage while other plans may not throttle unless the usage grossly exceeds normal levels of activity, such that the threshold has no practical impact on the vast majority of users. This again raises an individualized issue.

**_What Happens if the Threshold is Reached:_** Plaintiffs' counsel repeatedly argued to the jury that certain plans not only allow for throttling but *automatically* throttle *all* traffic after a certain level of usage is reached. Plaintiffs' counsel used these rare plans (including in closing) to suggest to the jury that throttling was likely classwide. (*Csupo* Trial Tr.at 1630:4-6 ("after use of all of your high-speed data amounts, all data speeds are reduced to a max 128 kbps, 2G speeds").) But in contrast, most plans with throttling terms simply *allow* a carrier to throttle after a threshold is reached, if the carrier needs to do so given network congestion. For example, a plan that applied to Ms. Hecht (the only named *Csupo* plaintiff to testify) indicated that only after her high-speed allowance was exhausted, her service "*may* be temporarily slower *during times of high network congestion*." (*Csupo* Trial Tr. 1571:20-24 (emphasis added).) As Google's expert Dr. Jeffay[15] explained, "for certainly modern cell phone plans, you know, a very specific set of conditions all have to occur at the same time in order for you to be throttled, and I think the likelihood of these conditions occurring at the same time is incredibly low." (*Id*. at 2013:22-27.) This means that any number of users may have exceeded throttling thresholds, but still never have been throttled at all. To determine if an individual user was throttled would therefore require an individualized inquiry into not just the terms of someone's specific plan and their total data usage for a given period to determine if a threshold had been exceeded, but *also* the actual cell congestion at the relevant time for the relevant geographic area to determine if throttling actually occurred, as it most often would not have. None of these issues can be resolved classwide.

**_What was the Impact:_** Nor is all throttling the same. At trial, Plaintiffs' counsel focused on the most extreme plan they could find which imposed, after a small allowance was used, automatic

---

[15] Dr. Jeffay helped design the technology used by cellular carriers to implement throttling. (*Csupo* Trial Tr. at 2012:17-2013:3.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

throttling to speeds of "128 kbps," to suggest that throttling would debilitate the user experience, causing harm and interference. (*Csupo* Trial Tr. at 1630:16-28 (arguing "none of the things we know of today as being possible on a phone with broadband internet can be done" at these speeds).) But there is no evidence that even a small percentage of users had such draconian plans, and other plans may only marginally and briefly reduce speeds in a way that a user would not even notice, meaning the user could not have been harmed or interfered with. This too would require individualized inquiries into plan specifics, as well as the effect on each individual's own use.

***Did the Challenged Conduct Cause the Threshold to be Reached:*** Even if a user was throttled, and even if this throttling impacted them in a concrete way, that *still* would not be sufficient. The user would need to show that the miniscule data usage from the challenged conduct *caused* the throttling, and that it would not have occurred anyway because the user had earlier surpassed a throttling threshold due to streaming videos, texting images, or any other commonplace usage that can be hundreds of times more data intensive than the *de minimis* transfers at issue here.[16] (*See* Csupo Trial Tr. at 924:23-927:12 (explaining that named plaintiff Hecht used hundreds of times more data for streaming videos than the challenged transfers caused).) Causation is an element of a conversion claim but can never be proven through common evidence.

***Limited Plans and Overages:*** These throttling-related issues do not even capture the full extent of individualized issues at play. The *Csupo* plaintiffs introduced *separate* individualized evidence pertaining to class members on "limited" plans, alluding to distinct harms and forms of interference. For example, the *Csupo* Plaintiffs argued that because some data plans had restrictive limits, "[p]eople had to ration their own use for fear of overcharges." (*Csupo* Trial Tr. at 301:24-25 (opening statement).) Plaintiffs' counsel asserted that "people were often very, very careful about their use of cellular data." (*Id*. at 301:19-20.) To make these points, Plaintiffs' counsel cherry picked certain limited plans with unusually low data allowances, highlighting for the jury those

---

[16] Named Plaintiff Ms. Hecht's testimony demonstrated many of these individualized issues. She claimed injury because she felt her data had been used in a way inconsistent with her personal desires. (*Csupo* Trial Tr. at 898:3-22.) But she was uncertain if she had ever been throttled at all and admitted that she was not aware of any instance in which *Google's* challenged conduct had interfered with her own use of her plan and device. (*Id*. at 935:12-936:20.) This evidence was necessarily specific to Ms. Hecht's plan, data usage, and memory.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD

with "sometimes one gigabyte a month, two gigabytes a month, all sorts of numbers" (*Id.* at 271:25-26) and "very, very small data allowances" (*Id.* at 301:17). But these arguments about rationing and overages introduce still further individualized issues, including (1) did a Class Member have a limited plan; (2) was the allowance so generous that the Class Member never reached it (or feared reaching it); (3) did the class member ever "ration" their data usage; and (4) even if a class member did exceed their limit—and even if they paid overages as a result—would they have done so regardless of the de minimis data usage resulting from the challenged conduct.[17]

But if the elements of harm and substantial interference turn on the specifics of a user's plan and their particularized usage and circumstances—as it did in the *Csupo* trial—then individualized issues will predominate. *Moore v. Apple Inc.*, 309 F.R.D. 532, 545 (N.D. Cal. 2015), cited in the Opposition (at 14), dealt with highly analogous issues in the context of unlimited and limited text messaging terms in cell plans. The Court explained: "In order to determine the fact of injury, the Court would therefore have to evaluate each individual's wireless service agreement. Where determining the fact of injury would require examining each individual class member's contract, other courts have also concluded that 'legal and factual questions common to the class, significant as they may be,' are insufficient to overcome the individualized inquiries necessary to determine liability." *Id.* In fact, the terms governing throttling and overages, and the individualized conditions underlying both, are *much more* varied and complex than those governing text messaging.

The *Csupo* trial elided these variations in a way that deeply prejudiced Google. Plaintiffs' counsel cherry picked plans with aggressive and mandatory throttling or unusually small data allowances and onerous overages, and then suggested these terms were the norm or were relevant on a classwide basis. In this way, the *Csupo* plaintiffs injected issues that *may* have affected *some* unidentified class members (interference with their own use due to slowed down internet, rationing in light of a restrictive limit, costs paid out of pocket for more data, etc.), even though these issues did not affect many (or likely the vast majority of) class members. Google, in contrast, had no practical way to present evidence about the individual circumstances of each class member to show that throttling or overages did not apply to their plans, had not occurred, or did not impact them.

---

[17] If Plaintiffs argue that throttling caused "rationing" the issue would also be individualized.

This is precisely the prejudice that Rule 23 is designed to prevent.

### 3. Plaintiffs' Counsel Also Conceded that Plan Terms Matter When Determining Whether Class Members have a Property Interest.

The *Csupo* plaintiffs defended their extensive use of evidence of throttling and overages by arguing that these issues were critical for proving that class members had a property interest. For example, when Google moved *in limine* to prevent plaintiffs from discussing throttling or overages at trial, Plaintiffs' counsel responded that "the prospect of being throttled or charged an overage is (in part) what makes cellular data plans limited and defined, and, thus, property…" (Bernstein Ex. D, *Csupo*, 5/19/2025 Plaintiffs' Opposition to MIL at 15.) During argument at trial, Plaintiffs' counsel explained that evidence of throttling "goes to a few issues including the fact that cellular data and cellular data plans are property. It's a limitation on the property itself, which is one of the things you look at when you're trying to examine whether something is property, whether it's scarce, whether it's defined, things like that. Throttling goes to that." (*Csupo* Trial Tr.at 858:2-10.)

But Plaintiffs' argument backfires. If evidence of throttling and overages is relevant to prove a property interest, then users with plans without throttling or overages must rely on different evidence to prove their property interest (if they have one). On Plaintiffs' own theory, an individualized issue will thus predominate. Plaintiffs' counsel should be taken at their word: A plan-by-plan analysis is required not just to understand interference and harm, but also (according to Plaintiffs) to determine if there is property at all.

### III. CONCLUSION

For the foregoing reasons, and those set out in Google's Opposition, the Court should deny Plaintiffs' motion for class certification.

Dated: August 12, 2025                         COOLEY LLP

                                               By: */s/Whitty Somvichian*
                                                   Whitty Somvichian

                                               Attorneys for Defendant
                                               GOOGLE LLC

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

AMENDED [PROPOSED] SUPPLEMENTAL
BRIEF RE: *CSUPO V. GOOGLE LLC* TRIAL
CASE NO. 5:20-CV-07956-VKD