1  COOLEY LLP
   WHITTY SOMVICHIAN (194463)
2  (wsomvichian@cooley.com)
   MAX A. BERNSTEIN (305722)
3  (mbernstein@cooley.com)
   ANUPAM DHILLON (324746)
4  (adhillon@cooley.com)
   EMILY J. BORN (360427)
5  (eborn@cooley.com)
   CAROLINE A. LEBEL (340067)
6  (clebel@cooley.com)
   3 Embarcadero Center, 20th floor
7  San Francisco, CA 94111-4004
   Telephone:    +1 415 693 2000
8  Facsimile:    +1 415 693 2222

9  COOLEY LLP
   ARIANA E. BUSTOS (345918)
10 (ABustos@cooley.com)
   355 South Grand Avenue, Suite 900
11 Los Angeles, California 90071
   Telephone:    (213) 561-3250
12 Facsimile:    (213) 561-3244

13 Attorneys for Defendant
   GOOGLE LLC

14

15               UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                    SAN JOSE DIVISION

18

19 JOSEPH TAYLOR, EDWARD MLAKAR,        Case No. 5:20-cv-07956-VKD
   MICK CLEARY, EUGENE ALVIS, and
20 JENNIFER NELSON, individually and on  **DEFENDANT GOOGLE LLC'S OPPOSITION**
   behalf of all others similarly situated,  **TO PLAINTIFFS' MOTION FOR STAY**
21
                  Plaintiffs,           Date:      October 7, 2025
22                                       Time:      10:00 a.m.
          v.                             Dept:      Courtroom 2 – 5th Floor
23                                       Judge:     Hon. Virginia K. DeMarchi
   GOOGLE LLC,                           Trial:     April 1, 2026
24
                  Defendant.
25

26

27

28

**TABLE OF CONTENTS**

Page

I.    Introduction ................................................................................................................. 6

II.   Background .................................................................................................................. 7

      A.    Plaintiffs' Dual-Court Strategy ....................................................................... 7

      B.    The Timing and Circumstances of Plaintiffs' Motion ............................... 8

III.  Legal Standard ............................................................................................................ 9

IV.   Argument .................................................................................................................... 10

      A.    Plaintiffs Cannot Seek a Stay to Avoid an Adverse Ruling................................ 10

      B.    Plaintiffs Move for a Stay Under the Wrong Standard, and the Motion Can
            Be Denied on This Basis Alone. .................................................................... 11

            1.    *Colorado River*, not *Landis*, governs. ..................................... 11

            2.    The Motion should be denied on this basis alone. ................................... 14

      C.    Even if the Court Reaches the Issue, a Stay Cannot Be Granted Under
            *Colorado River*............................................................................................. 15

      D.    Even if the Court Could Apply *Landis*, a Stay Is Not Supported Under That
            Standard Either. .............................................................................................. 20

            1.    Google will suffer significant harm from a stay. ..................................... 20

            2.    Plaintiffs will suffer no cognizable hardship from proceeding................. 22

            3.    A stay would not simplify issues or promote judicial economy. .............. 23

V.    Conclusion ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Abrahamson v. Berkley*,
    2016 WL 8673060 (E.D. Cal. Sept. 2, 2016) ........................................................................ 15

*Ally Bank v. Castle*,
    2012 WL 3627631 (N.D. Cal. Aug. 20, 2012) ...................................................................... 10

*Arias v. Super. Ct.*,
    46 Cal.4th 969 (2009) .......................................................................................................... 18

*Associated Indus. Ins. Co., Inc. v. Bay Area Drainage, Inc.*,
    2025 WL 2263682 (N.D. Cal. July 30, 2025) ...................................................................... 12

*Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*,
    2023 WL 5957178 (N.D. Cal. Sept. 12, 2023) ..................................................................... 18

*Bechhold v. Bogner*,
    2008 WL 170688 (N.D. Cal. Jan. 17, 2008) ........................................................................ 22

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
    2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ............................................................... 13, 17

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ..................................................................................... 20, 22, 24

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ...................................................................................................... *passim*

*Conway v. City of Palm Desert*,
    2022 WL 19237935 (C.D. Cal. Sept. 6, 2022) .................................................................... 13

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ................................................................................................ 17

*Csupo v. Google*,
    No. 19-cv-352557 (Cal. Super. Ct. Aug. 9, 2019) ......................................................... *passim*

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
    498 F.3d 1059 (9th Cir. 2007) ........................................................................................ 20, 21

*Doe v. Uber Techs., Inc.*,
    2022 WL 2267568 (N.D. Cal. June 23, 2022) ..................................................................... 21

*Ernest Bock, LLC v. Steelman*,
    76 F.4th 827 (9th Cir. 2023) ......................................................................................... *passim*

*Feneck v. SBHU Life Agency Inc.*,
    2025 WL 821851 (D. Ariz. Mar. 14, 2025) ........................................................................ 13

*Fitbit, Inc. v. Laguna 2, LLC*,
    2018 WL 422891 (N.D. Cal. Jan. 16, 2018) ............................................................... 14

*Flores v. Bennett*,
    675 F. Supp. 3d 1052 (E.D. Cal. 2023)..................................................................... 24

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
    2021 WL 1433454 (C.D. Cal. Feb. 25, 2021) ......................................................... 17

*Greenmount LLC v. Cleanline Mgmt. LLC*,
    2025 WL 1288960 (C.D. Cal. Apr. 11, 2025) ......................................................... 10

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
    485 U.S. 271 (1988)............................................................................................... 16

*Hartwell v. Sw. Cheese Co., LLC*,
    WL 9777151 (D.N.M. June 7, 2016) ..................................................................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    12 F.3d 908 (9th Cir. 1993)............................................................................. 16, 19

*Johnson v. GlaxoSmithKline, Inc.*,
    166 Cal. App. 4th 1497 (2008)............................................................................... 19

*JW Gaming Dev., LLC v. James*,
    2021 WL 1091520 (N.D. Cal. Jan. 14, 2021), *clarified on denial of
    reconsideration*, 2021 WL 1164763 (N.D. Cal. Mar. 26, 2021) ........................... 10

*Landis v. North American Co.*,
    299 U.S. 248 (1936)...................................................................................... *passim*

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005)................................................................ 14, 22, 24

*Maharaj v. Charter Commc'ns, Inc.*,
    2021 WL 689915 (S.D. Cal. Feb. 23, 2021) ......................................................... 13

*Mai Katy Xiong v. G4S Secure Solutions (USA) Inc.*,
    2019 WL 3817643 (E.D. Cal. Aug. 14, 2019) ....................................................... 17

*Marin v. Marshall*,
    2025 WL 1082745 (S.D. Cal. Apr. 10, 2025) ....................................................... 14

*Mayen v. W.M. Bolthouse Farms, Inc.*,
    2022 WL 3567191 (E.D. Cal. Aug. 18, 2022) ....................................................... 17

*McAdams v. Daedong Indus. Co.*,
    2019 WL 1924263 (S.D. Ill. Apr. 30, 2019) ......................................................... 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Mediterranean Enter. Inc. v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983)....................................................................... 14, 22, 24

*Migra v. Warren City School Dist. Bd. of Educ.*,
    465 U.S. 75 (1984) ......................................................................................... 18

*In re Morrison*,
    375 B.R. 179 (Bankr. W.D. Pa. 2007) ............................................................ 11

*Moses Cone Mem'l Hosp. v. Mercury Constr. Corp*,
    460 U.S. 1 (1983) ............................................................................... 16, 19, 20

*Murray v. City of Carlsbad*,
    2010 WL 4822744 (S.D. Cal. Nov. 22, 2010) ................................................ 21

*Nat'l Fire Union Fire Ins. Co. v. Stites Prof. Law Corp.*,
    235 Cal. App. 3d 1718 (1991) ........................................................................ 18

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ....................................................................................... 18

*In re PG&E Corp. Sec. Litig.*,
    100 F.4th 1076 (2024) .................................................................................... 22

*Ramachandran v. City of Los Altos*,
    2022 WL 2479652 (N.D. Cal. July 6, 2022)...................................... 22, 23, 24

*Riski Prods., Inc. v. Carrado*,
    2008 WL 4492603 (S.D. Cal. Sept. 29, 2008) ................................................ 16

*Robinson v. Brown*,
    2014 WL 1779460 (E.D. Cal. May 5, 2014).................................................... 19

*Sabbag v. Cinnamon*,
    2010 WL 8470477 (N.D. Cal. Dec. 10, 2010) ................................................ 14

*Samara v. Matar*,
    5 Cal. 5th 322 (2018) ..................................................................................... 19

*Sanchez v. Green Messengers, Inc.*,
    666 F. Supp. 3d 1047 (N.D. Cal. 2023) .................................................... 14, 15

*Sandoval v. Super. Ct.*,
    140 Cal. App. 3d 932 (1983).......................................................................... 18

*Schmidtberger v. Western Refining Retail, LLC*,
    2021 WL 5024714 (C.D. Cal. Sep. 28, 2021) ................................................ 17

*Scotts Co. LLC v. Seeds, Inc.*,
    688 F.3d 1154 (9th Cir. 2012)........................................................................ 12

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ........................................................................................... 19

*Stanley v. Novartis Pharms. Corp.*,
  2012 WL 12883839 (C.D. Cal. Apr. 13, 2012) ...................................................... 22

*Sullivan v. Delta Air Lines, Inc.*,
  15 Cal. 4th 288 (1997) ........................................................................................ 21

*Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*,
  2005 WL 701599 (N.D. Cal. Mar. 23, 2005) .......................................................... 14

*United States v. Kilpatrick*,
  2019 WL 2208347 (E.D. Mich. May 22, 2019)........................................................ 11

*United States v. State Water Resources Control Board*,
  988 F.3d 1194 (9th Cir. 2021)............................................................................... 12

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007)................................................................................. 14

**Statutes**

California Code of Civil Procedure § 382 .................................................................... 17

**Other Authorities**

Federal Rule of Civil Procedure 23 .................................................................. 7, 17, 24

1    **I.    INTRODUCTION**

2            Plaintiffs' Motion for Stay ("Motion") is an obvious effort to avoid what Plaintiffs believe

3    will be adverse rulings from this Court on pending motions to resolve class certification and the

4    admissibility of expert opinions. Plaintiffs' counsel designed the present circumstances, engaging

5    in transparent forum shopping by filing a California-only class action in state court and then a

6    second class action on the same allegations in this Court. Plaintiffs have since unabashedly used

7    the federal courts to litigate their claims, including through an appeal, never once suggesting a stay

8    was appropriate. Even after the verdict in the *Csupo v. Google* ("*Csupo*") state-court action,

9    Plaintiffs pressed ahead with their Motion for Class Certification. Only when this Court indicated

10   at the three-hour August 19, 2025 hearing that it had reservations about Plaintiffs' class-

11   certification and damages theories did Plaintiffs take a dramatic turn. Within days of the hearing,

12   Plaintiffs urgently sought a stay to try to prevent this Court from ruling on the pending motions.

13   But Plaintiffs cannot wait until a hearing to divine the Court's intentions and then scramble to block

14   the Court from issuing its orders. Plaintiffs' wait-and-see approach is the antithesis of judicial

15   economy and a misuse of the Court's resources. This attempt to get out ahead of what Plaintiffs

16   expect will be adverse rulings should not be allowed.

17           Even putting aside these tactics, the Motion fails to show why a stay is justified here.

18   Plaintiffs request a so-called docket-management stay under *Landis v. North American Co.*, 299

19   U.S. 248 (1936), but under these circumstances, the Ninth Circuit ***requires*** the application of

20   another, and much more exacting, standard, and explicitly prohibits the application of *Landis*. *See*

21   *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 843 (9th Cir. 2023) (requiring application of the

22   standard from *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976),

23   and not *Landis*, when deciding whether a stay of federal proceedings can issue in favor of state

24   proceedings). The Motion does not even mention the *Colorado River* factors, which control here,

25   and therefore cannot carry Plaintiffs' burden. Regardless, the *Csupo* proceedings (including any

26   not-yet filed appeal) will not provide for a complete and prompt resolution of the issues between

27   the Parties—a dispositive requirement for a stay under *Colorado River*. This means that had

28   Plaintiffs moved under the right standard, the Motion would still necessarily fail.

1    Even if the Court decided to apply *Landis*, and clear Ninth Circuit precedent prohibits just

2    that, Plaintiffs have failed to meet their burden under that standard as well, as (i) Google will suffer

3    substantial harm if the case is stayed; (ii) Plaintiffs will suffer no cognizable hardship from having

4    to litigate this case in the very forum they filed it in; and (iii) any *Csupo* appeal will not simplify

5    issues currently before this Court or otherwise promote judicial economy. Just by way of example,

6    nothing that might happen in *Csupo* will resolve the Rule 23(b) issues presently before this Court,

7    which turn on federal law, in particular the *Daubert* and class-certification issues surrounding

8    damages, about which the Court's comments at the August 19 hearing precipitated Plaintiffs' stay

9    request. Ultimately, granting Plaintiffs' stay motion would encourage ***inefficiency***. Litigants, like

10   Plaintiffs here, should not be encouraged to burden the opposing party and court with extensive

11   motion practice, attempt to read the tea leaves from a hearing, and then, if they anticipate an adverse

12   ruling, press the pause button.

13   Plaintiffs' sudden dash to try to stop this Court from issuing rulings on motions Plaintiffs

14   already tasked the Court with reviewing and hearing is wholly improper. The pretext, that a stay is

15   warranted under *Landis*, is independently wrong. And the only standard that could apply, that set

16   out in *Colorado River*, bars the relief sought. The Motion should be denied.

## II.  BACKGROUND

### A.  Plaintiffs' Dual-Court Strategy

19   On August 9, 2019, Plaintiffs' counsel filed *Csupo* in Santa Clara Superior Court. Compl.,

20   *Csupo v. Google*, No. 19-cv-352557 ("*Csupo*") (Cal. Super. Ct. Aug. 9, 2019) (Bernstein Decl. Ex.

21   A). Plaintiffs' counsel designed the *Csupo* complaint, which alleges claims on behalf of a class of

22   California residents, to be immune to jurisdiction under the Class Action Fairness Act ("CAFA")—

23   and therefore to be unremovable. (*See id*. ¶ 49.) This was part of a two-step strategy. Once the

24   *Csupo* plaintiffs survived demurrer, the exact same lawyers, just weeks later, brought the present

25   action in federal court, alleging the same two causes of action, but this time on behalf of a class of

26   all other U.S. Android users, to allow both actions to proceed in tandem. (ECF No. 1.) Plaintiffs

27   and their counsel made a strategic choice to file in two separate courts—this was naked forum

28   shopping that they believed would redound to their benefit.

Plaintiffs in this action have since made full use of the federal courts, litigating this case for *five years*. In fact, when Google moved to dismiss and raised issues of state law, Plaintiffs did not propose a stay then, but rather litigated that motion and appealed those same state-law issues to a *federal* appellate court. (ECF No. 76 (notice of appeal).) Plaintiffs were notably silent on the merits of abstention and federalism when the Ninth Circuit reached conclusions of state law that allowed Plaintiffs' claims to advance. Since then, Plaintiffs have pressed for an expedited case schedule, at all times pushing for the fastest feasible trial date *in this court*. (Bernstein Decl. ¶ 3.)

### B.  The Timing and Circumstances of Plaintiffs' Motion

Trial began in *Csupo* on June 2, 2025, and the jury delivered its verdict on July 1, 2025. On July 10, 2025, the *Csupo* parties agreed to stay execution of the monetary judgment pending an appeal. Joint Stipulation to Stay Execution of Judgment Pending Appeal, *Csupo* (Cal. Super. Ct. July 10, 2025) (Bernstein Decl. Ex. B). At no point before, during, or in the wake of the *Csupo* trial did Plaintiffs in this action mention the possibility of a stay while any appeal in *Csupo* was litigated. To the contrary, Plaintiffs pressed ahead with their pending Motion for Class Certification and the parties' related expert challenges (collectively, the "Pending Motions"), tasking this Court with reviewing the thousands of pages of argument, reports, and exhibits filed in connection with these motions. In fact, *after* the Csupo trial and stay of execution of monetary judgment pending appeal, Plaintiffs stipulated to reset the hearing date on the Pending Motions to August 19, 2025, recommitting to resolving the Pending Motions in the near term, with no mention of seeking a stay instead. (ECF No. 206.)

Plaintiffs then attended the three-hour hearing on August 19—a hearing for which Google and, undoubtedly, the Court expended significant resources preparing. At the outset of the hearing, Plaintiffs told the court that resolving the Motion for Class Certification was their "priority." (Bernstein Decl. Ex. C, 8/19/2025 Hr. Tr. at 5:5.) Plaintiffs' counsel argued forcefully, throughout the hearing, that the Motion for Class Certification should be granted on its merits. (*E.g.*, *id*., 8/19/2025 Hr. Tr. at 39:2-4 ("I think the key point is that everything is going to be shown with common evidence, and that includes all of the elements of conversion.").) However, at the hearing, the Court indicated reservations about Plaintiffs' class-certification and damages theories. (*E.g.*, *id*.

at 52:18-21 ("[T]he thing that I found most compelling about Google's argument on the *Daubert* damages is that the Plaintiffs' experts don't seem to be valuing the it that you have described to me as the converted data."); 54:10 ("I'm troubled by that"); 59:2-4 ("I was worried about that because your expert seems to be valuing something other than what is converted.").)

Immediately after the Court's comments at the hearing, and seemingly acknowledging the weakness of their class-certification and damages arguments, Plaintiffs abruptly changed course. While still on the record at the hearing, Plaintiffs noted for the first time that after a class was certified and "before the schedule for summary judgment," a stay may be appropriate *once Plaintiffs make a motion for collateral estoppel*. (Bernstein Decl. Ex. C, 8/19/2025 Hr. Tr. at 129:16-19, 130:15-20.) But this position rapidly shifted following the three-hour hearing on class certification. Plaintiffs suddenly insisted that a stay motion, which they had never mentioned before the August 19 hearing, must now be heard *as soon as possible*. (Bernstein Decl. ¶ 4.) In fact, Plaintiffs requested that Google agree to an expedited briefing schedule for the Motion, so a hearing could be set at an earlier date than the default rules would otherwise allow. (*Id*.) Plaintiffs now argue that a stay should issue *before* the Court rules on the already briefed and heard Pending Motions—a position they had never taken before. Plaintiffs do not even try to explain this about-face in the Motion, but the reason for it is obvious. Only one thing has changed: Plaintiffs now believe they might face adverse decisions on the Pending Motions. That is, Plaintiffs do not bring the present Motion because of a suddenly new-found interest in judicial economy, but rather because they are desperate to avoid the Court's rulings.[1]

## III.    LEGAL STANDARD

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. The *Colorado River* doctrine governs whether a stay can issue in federal litigation in the context of "simultaneous and related federal and state actions." *Ernest Bock*, 76 F.4th at 843. "[A] stay of federal litigation in favor of state court proceedings 'is the exception, not the rule,'" and is only appropriate in "exceptional circumstances." *Id*. at 836

---

[1] Google does not presume to know how this Court will rule on the Pending Motions. But that Plaintiffs perceive danger in the Court issuing rulings on the Pending Motions is obvious.

(quoting *Colorado*, 424 U.S. at 813). There is a "strong presumption *against* federal abstention." *Ernest Bock*, 76 F.4th at 837. The moving party bears the burden of establishing a stay is warranted. *See, e.g.*, *Ally Bank v. Castle*, 2012 WL 3627631, at *3 (N.D. Cal. Aug. 20, 2012).[2]

## IV.  ARGUMENT

### A.    Plaintiffs Cannot Seek a Stay to Avoid an Adverse Ruling.

If Plaintiffs believed a stay were proper, they would have sought one following the conclusion of the *Csupo* trial (or much earlier still). Instead, Plaintiffs had the parties finish briefing the Pending Motions, tasked the Court with reviewing these motions and the voluminous accompanying materials, and then extensively argued at a lengthy hearing for a decision on the merits. (*See* Section II. B, *supra*.) Only ***after*** the Court signaled at the hearing that it had concerns about Plaintiffs' positions on key issues, did Plaintiffs rush to file the present Motion to stay all proceedings before a ruling on the pending class-certification and *Daubert* motions. In these circumstances, there is no doubt that Plaintiffs' Motion has nothing to do with judicial efficiency, as Plaintiffs contend in the Motion itself (*e.g.*, Mot. at 6, 11), and is instead intended to avoid what Plaintiffs anticipate as adverse rulings on the motions already briefed, heard, and pending before this Court. *See Greenmount LLC v. Cleanline Mgmt. LLC*, 2025 WL 1288960, at *9 (C.D. Cal. Apr. 11, 2025) (inferring from time of motion an improper intent to avoid an adverse ruling); *JW Gaming Dev., LLC v. James*, 2021 WL 1091520, at *8 (N.D. Cal. Jan. 14, 2021), *clarified on denial of reconsideration*, 2021 WL 1164763, at *1 (N.D. Cal. Mar. 26, 2021) (inferring from circumstances bad faith attempt to avoid adverse ruling). Indeed, it is hard to imagine an approach that would be less efficient than briefing these complex motions, engaging in an hours-long hearing on them, and only then staying the case just before decisions issue. Nor is it plausible, given these circumstances, that Plaintiffs would seek a stay in advance of these rulings, if they believed that the Court's orders would favor them.

Under any legal standard, Plaintiffs' attempt to avoid an adverse ruling is not just transparent but also improper. A party cannot file a motion, get a preview of the Court's likely

---

[2] Plaintiffs move for a stay under the standard set forth in *Landis v. North American Co.*, 299 U.S. 248 (1936), but as described below (*see* Section IV. B. 1, *infra*), that standard is inapplicable here.

ruling, and only then take steps to avoid that ruling from issuing, as Plaintiffs transparently attempt to do here. *See McAdams v. Daedong Indus. Co.*, 2019 WL 1924263, at *3 fn.2 (S.D. Ill. Apr. 30, 2019) ("Litigation does not work that way. Litigants cannot wait until the verge of an imminent adverse decision, then withdraw the motion that sparked that decision."); *United States v. Kilpatrick*, 2019 WL 2208347, at *3 (E.D. Mich. May 22, 2019) ("Defendant cannot bring a disqualification motion merely to 'try[ ] to avoid an impending adverse decision.'"); *Hartwell v. Sw. Cheese Co., LLC*, WL 9777151, at *7 (D.N.M. June 7, 2016) ("A motion to amend is in bad faith when the party uses it as a dilatory tactic or when the party seeks to avoid an adverse ruling."); *In re Morrison*, 375 B.R. 179, 188 (Bankr. W.D. Pa. 2007) (explaining the potential for "mischief" if a party is allowed to unilaterally withdraw a motion after a hearing on the merits). Such gamesmanship, in which a party either wins or avoids a ruling, undermines due process, wastes party and Court resources, and makes a mockery of the Court's duties to resolve motions— particularly motions filed *by* the very party that now seeks to prevent the ruling. Parties do not have an on/off switch to stop and start litigation at their pleasure.

The Court should not reward such behavior here. Instead, the Court should deny the present Motion due to this gamesmanship alone—and rule on the Pending Motions. These motions have already been briefed and heard, and the Court has already expended considerable effort preparing its rulings on them. To the extent that Plaintiffs still seek a stay after the resolution of these Pending Motions, the Court can consider the issue then, in light of the posture of the case at that time.

### B.    Plaintiffs Move for a Stay Under the Wrong Standard, and the Motion Can Be Denied on This Basis Alone.

#### 1.    *Colorado River*, not *Landis*, governs.

As discussed above, this Court should not entertain Plaintiffs' brazen tactics to avoid rulings on already briefed and heard motions. To the extent the Court looks beyond Plaintiffs' gamesmanship (and it should not), Plaintiffs' Motion is faulty for many additional reasons. To start, Plaintiffs ask this Court to issue a stay of federal proceedings in favor of concurrent state proceedings under *Landis v. North American Co.*, 299 U.S. 248 (1936), but application of that standard in the present context is years out of date.

In 2023, the Ninth Circuit held that a district court can "'stay or dismiss a federal case in favor of related state proceedings' in only two circumstances: '(1) when an action seeks only declaratory relief, or (2) when exceptional circumstances exist [under *Colorado River Water Conservation District v. United States*].'"[3] *Ernest Bock*, 76 F.4th at 842 (quoting *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012)).

Critically, in *Ernest Bock*, which Plaintiffs do not mention, the Ninth Circuit explicitly rejected application of the *Landis* standard—the standard Plaintiffs invoke here—where a district court considers whether to stay a federal case pending parallel state-court proceedings. The *Ernest Bock* defendants argued that even if a stay under *Colorado River* were unwarranted (as the court held), the district court nevertheless should have exercised its authority to stay the federal proceedings pursuant to its general docket management powers under *Landis*. *Ernest Bock*, 76 F.4th at 842. The Ninth Circuit unequivocally rejected this proposition, holding for the first time that the *Colorado River* factors—not the *Landis* standard—**solely "control whether a stay can issue in favor of parallel state proceedings."** *Id.* at 843 (emphasis added). There is no ambiguity in *Ernest Bock*: "[a] docket management stay may not issue in favor of parallel state proceedings if the *Colorado River* factors do not support a stay." *Id.*; *see also Associated Indus. Ins. Co., Inc. v. Bay Area Drainage, Inc.*, 2025 WL 2263682, at *2 (N.D. Cal. July 30, 2025) (citing *Ernest Bock* and explaining "where the *Colorado River* factors do not support a stay [of federal proceedings in favor of a concurrent state action], a court may not issue a stay under *Landis* in the alternative"). That is, this Court cannot issue a *Landis* stay to allow for resolution of a concurrent state-court action— exactly what Plaintiffs request in error. Because Plaintiffs invoke the wrong standard and fail to address *Colorado River* at all, the Motion should be denied. (*See* Section IV. B. 2, *infra*.)

In an attempt to dodge *Colorado River*, Plaintiffs may argue that *Csupo* and this action are not "related" because the classes in the two actions differ. As an initial matter, the Ninth Circuit does not require so exact a parallel and applies the *Colorado River* standard even where the parties

---

[3] The *Colorado River* doctrine comes into play where a district court considers whether to "dismiss or stay 'a federal suit due to the presence of a concurrent state proceeding.'" *United States v. State Water Resources Control Board*, 988 F.3d 1194, 1202 (9th Cir. 2021) (quoting *Colorado River*, 424 U.S. at 817-18).

across the two actions are not the same. *Ernest Bock*, 76 F.4th at 841 n.20; *see, e.g.*, *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *12-13 (N.D. Cal. Mar. 29, 2021) (conducting stay analysis under *Colorado River*, and explaining *Landis* did not apply, where class members were different across each lawsuit). Moreover, Plaintiffs' own Motion forecloses any such evasion. The Motion makes three arguments in favor of a stay, all of which, if true, squarely require application of *Colorado River*. First, Plaintiffs argue that *Csupo* involves "the same claims and same evidence against the same defendant" and that this case should therefore be stayed pending resolution of the same issues in *Csupo*. (Mot. at 8). This is the quintessential request for a stay governed by *Colorado River*. *See Maharaj v. Charter Commc'ns, Inc.*, 2021 WL 689915, at *6 (S.D. Cal. Feb. 23, 2021) (threshold similarity of actions was established, and thus the court would consider the *Colorado River* test, where the federal and state actions featured "several overlapping claims . . . against the same or related corporate entities"); *Feneck v. SBHU Life Agency Inc.*, 2025 WL 821851, at *2 (D. Ariz. Mar. 14, 2025) (explaining "[t]he federal and state proceedings need only be 'simultaneous and related'" for *Colorado River* to be implicated, and concluding the doctrine would "guide the Court's analysis" where the moving party conceded there were "overlapping factual determinations" between the two suits). Second, and relatedly, Plaintiffs argue that the resolution of *Csupo* may have preclusive effects in this action. (Mot. at 8.) Plaintiffs are wrong, for the reasons discussed in Section IV. C, *infra*, but a motion for a stay pending resolution of a state-court proceeding that the movant argues will be preclusive is unquestionably governed by *Colorado River*. *See, e.g.*, *Conway v. City of Palm Desert*, 2022 WL 19237935, at *7 (C.D. Cal. Sept. 6, 2022) (concluding "the narrower *Colorado River* doctrine—and not *Landis*—is the appropriate standard to apply when considering whether to stay a federal proceeding in deference to a parallel state court proceeding that may have binding preclusive effect"). Third, Plaintiffs argue that delaying resolution of this case in favor of a state-court action respects "comity and federalism"—*i.e.*, Plaintiffs invoke abstention principles that are not appropriately resolved under *Landis*. (Mot. at 8.) *Colorado River*, not *Landis*, controls the abstention analysis.[4] In fact, the

---

[4] In *Ernest Bock*, the Ninth Circuit recognized that *Colorado River* stays are distinct from "traditional abstention doctrines," but that *Colorado River* nevertheless "shares the qualities of [an abstention doctrine]." 76 F.4th at 836.

lesson of *Ernest Bock* is that if the court determines a stay is improper under *Colorado River*, it **cannot** issue a stay on other grounds. *See Ernest Bock*, 76 F.4th at 843.[5]

### 2.    The Motion should be denied on this basis alone.

That Plaintiffs move under the wrong standard is alone a basis to deny the Motion. That is, Plaintiffs have advanced no arguments as to why the *Colorado River* standard is met and therefore have failed to carry their exacting burden under that standard. *See Marin v. Marshall*, 2025 WL 1082745, at *6 (S.D. Cal. Apr. 10, 2025) ("[T]he party moving for a stay under *Colorado River* bears a heavy burden in justifying such an order."); *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599, at *3 (N.D. Cal. Mar. 23, 2005) (same).

Nor should Plaintiffs be allowed to attempt to cure their error by arguing for a stay under the *Colorado River* standard for the first time in reply. This would severely prejudice Google by denying it a chance to respond in briefing to whatever arguments and factors Plaintiffs may try to invoke under a standard that is not even raised in the Motion. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 422891, at *4 (N.D. Cal. Jan. 16, 2018) (refusing to consider new arguments made in reply, which were omitted from opening brief).

The decision in *Abrahamson v. Berkley* is instructive. 2016 WL 8673060, at *20 (E.D. Cal. Sept. 2, 2016). There, the court considered whether a stay of a federal case should issue in favor of a state court case, but the moving party addressed only *Landis* in his opening brief, with no mention

---

[5] In their opening brief, Plaintiffs identify no basis for this Court to disregard the Ninth Circuit's holding in *Ernest Bock*. Instead, Plaintiffs rely on a medley of cases granting or upholding stays under *Landis*, all of which pre-date *Ernest Bock*, and most of which do not concern whether federal proceedings should be stayed in favor of state ones. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1100 (9th Cir. 2005) (considering propriety of stay of action brought by California Attorney General pending resolution of Chapter 11 petitions in federal bankruptcy court); *Mediterranean Enter. Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (concerning stay of federal case "pending receipt of the results of arbitration"); *Sabbag v. Cinnamon*, 2010 WL 8470477, at *7-8 (N.D. Cal. Dec. 10, 2010) (in pre-*Ernest Bock* decision, considering whether stay could issue under both *Colorado River* and *Landis* standards, but without discussing whether *Landis* can be applied where *Colorado River* is not satisfied). In *Sanchez v. Green Messengers, Inc.*, 666 F. Supp. 3d 1047 (N.D. Cal. 2023)—Plaintiffs' *only* authority in which the court specifically considers whether *Colorado River* or *Landis* is the appropriate standard when a party requests a stay of federal proceedings in favor of a state action—the district court applied *Landis* after explaining "[t]he law on this issue is unsettled in the Ninth Circuit." 666 F. Supp. 3d at 1050. But *Ernest Bock* resolved the issue just four months later, holding *Colorado River*, not *Landis*, applies in circumstances like those presented here.

of the *Colorado River* standard.[6] *Id.* at *20. In opposing the stay, the non-movant raised *Colorado River*, as Google does here, and argued that at least one factor disfavored a stay under that standard. *Id.* at *18, 20. Then, on reply, the movant "attempt[ed for the first time] to apply each of the eight *Colorado River* factors." *Id.* at *20. The court concluded no stay could issue under *Colorado River* under such circumstances, as "granting the stay without giving [the non-movant] a legitimate opportunity to address the other seven factors [would] not [be] appropriate." *Id.* The same logic applies here: Plaintiffs should not be allowed to benefit from their decision to address only *Landis* in their opening brief. Indeed, Plaintiffs' failure to discuss the *Colorado River* factors is all the more troubling given that one of their own case authorities notes the law in the Ninth Circuit was, at the time, "unsettled" as to whether *Landis* or *Colorado River* applies in circumstances like these—and the Ninth Circuit subsequently settled that issue over two years ago. *See Sanchez*, 666 F. Supp. 3d at 1050; *Ernest Bock*, 76 F.4th at 832 (resolving the issue).

### C.    Even if the Court Reaches the Issue, a Stay Cannot Be Granted Under *Colorado River*.

Even if this Court considers the *Colorado River* standard, and it need not for the reasons set out in Sections IV. A and B, *supra*, this case does not present the exceptional circumstances needed to justify staying this case in favor of concurrent state court proceedings in *Csupo*. Federal courts bear a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. As the Ninth Circuit reiterated in *Ernest Bock*, "[g]enerally, as between state and federal courts, the rule is that the 'pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Ernest Bock*, 76 F.4th at 835 (quoting *Colorado River*, 424 U.S. at 817). "Only the clearest of justifications will warrant a stay, . . . and the circumstances justifying a stay are ***exceedingly rare***." *Ernest Bock*, 76 F.4th at 836 (emphasis added) (internal quotation marks and citations omitted); *see also, e.g.*, *Riski Prods., Inc. v. Carrado*, 2008 WL 4492603, at *4 (S.D. Cal. Sept. 29, 2008) (explaining concerns regarding

---

[6] Although the district court also considered whether a stay of federal litigation could issue in favor of state proceedings in *Abrahamson* under the *Landis* standard, the decision pre-dates *Ernest Bock*. *Abrahamson*, 2016 WL 8673060, at *19-20. In any event, the court concluded a *Landis* stay was not warranted either, including because "the possibility of inconsistent results is a risk that is present every time there are two related cases proceeding in two separate courts." *Id.* at *19.

the "best or most efficient use of judicial resources," and the risk that "concurrent actions could result in conflicting results," "are an inadequate basis on which to grant a stay under *Colorado River*"). Given the "strong presumption *against* federal abstention," "[a]ny doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Ernest Bock*, 76 F.4th at 837 (emphasis in original).

Google cannot rebut arguments Plaintiffs have not made under *Colorado River*, but notes that the eighth factor considered in the analysis, which looks to whether the state-court action will fully resolve all issues before the federal court, is alone dispositive. *See Ernest Bock*, 76 F.4th at 840 (explaining "substantial doubt as to whether the state proceedings w[ill] resolve the federal action" is "dispositive," and ultimately denying stay on that ground); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir. 1993) (explaining doubt as to resolution of the federal action mandates denial of a *Colorado River* stay without consideration of the other factors). In considering this factor, the Ninth Circuit has explained that "[i]f there is any substantial doubt as to" whether the "parallel state-court litigation will be an adequate vehicle for the ***complete and prompt resolution*** of the issues between the parties," "it would be a serious abuse of discretion to grant the stay or dismissal." *Ernest Bock*, 76 F.4th at 838 (quoting *Moses Cone Mem'l Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 28 (1983)) (emphasis added). That is, a stay is *only* appropriate if "the federal court will have nothing further to do in resolving any substantive part of the case." *Id.*; *see also Intel Corp.*, 12 F.3d at 913 (explaining a court "may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation" (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). The Court need not even consider the other factors under *Colorado River* if this factor is not satisfied. Even if Plaintiffs had addressed the *Colorado River* factors, they could never have satisfied the eighth factor here for at least five independent reasons.

***First***, no matter the outcome of the appeal in *Csupo*, this Court will need to rule on Plaintiffs' pending class-certification motion and the Parties' pending *Daubert* motions, which turn on federal procedural standards that do not apply in state court. *See, e.g.*, *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 2021 WL 1433454, at *2 (C.D. Cal. Feb. 25, 2021) (holding "material differences

exist" between California and federal standards for class certification, and therefore "the state court's certification order [was] inapplicable" in the federal proceedings); *Schmidtberger v. Western Refining Retail, LLC*, 2021 WL 5024714, at *15 n.9 (C.D. Cal. Sep. 28, 2021) ("[T]he legal standard for granting class certification is more permissive in some respects under California Code of Civil Procedure § 382 than the more stringent standard set by Rule 23."); *Cooper v. Brown*, 510 F.3d 870, 944 n.28 (9th Cir. 2007) (explaining "[t]he state-court *Kelly/Frye* standard . . . is less rigorous than *Daubert*").

**Second**, *Csupo* will not necessarily resolve the issues between the parties for the further reason that the named plaintiffs and putative classes differ across *Csupo* and *Taylor*. Courts in the Ninth Circuit have repeatedly declined to issue stays under *Colorado River* where putative classes in concurrent federal-state actions do not overlap and/or named plaintiffs in the federal action are not part of the state action's class. *See, e.g.*, *Mayen v. W.M. Bolthouse Farms, Inc.*, 2022 WL 3567191, at *9 (E.D. Cal. Aug. 18, 2022) (noting "the court has no assurance that the [state] action encompasses [the federal named plaintiff] as a class member," and concluding a stay was inappropriate given the eighth *Colorado River* factor, with no need to "address the other relevant factors"). Courts have found in circumstances like these—with insufficient overlap between the plaintiffs and putative classes in the two actions—adjudication of the state class action cannot possibly resolve all issues in the federal class action, and a *Colorado River* stay is thus inappropriate. *See, e.g.*, *Mai Katy Xiong v. G4S Secure Solutions (USA) Inc.*, 2019 WL 3817643, at *2 (E.D. Cal. Aug. 14, 2019) (*Colorado River* stay was "precluded" where the state court class action's putative class was "underinclusive" as to the federal court class action and the named plaintiff in the federal action was "not a member of the putative class for whom a judgment w[ould] be rendered" in the state action); *Cal. Gasoline Spot Mkt.*, 2021 WL 1176645, at *12 (denying stay where the federal action asserted claims against corporate defendants on behalf of California and non-California residents, as well as businesses, while the state action only asserted claims on behalf of California residents).

**Third**, Plaintiffs have come nowhere close to establishing that *Csupo* will have preclusive effect on all or even any issues in this case. As a preliminary matter—as Plaintiffs apparently

recognize (Mot. at 8)—now is not the time for the Court to decide whether preclusion applies. California law determines the preclusive effect of a California state court judgment in federal court. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). Under California law, a judgment is not preclusive when it is "still open to direct attack by appeal or otherwise." *Nat'l Fire Union Fire Ins. Co. v. Stites Prof. Law Corp.*, 235 Cal. App. 3d 1718, 1726 (1991). And the Court should not attempt to determine which, if any issues, will be preclusive—particularly when Plaintiffs spend just two sentences of their Motion on this issue. (*See* Mot. 9.) The Court should await full briefing regarding the preclusive effect of *Csupo*—if any—and only when this issue is before the Court.

However, there are several good reasons to doubt that *Csupo* could have significant, let alone complete, preclusive consequences in this case—all of which would need to be resolved at a later time, with full briefing, to the extent preclusion is ever raised at all. For one thing, the "general rule" is that preclusion does not apply where a plaintiff "could easily have joined in [an] earlier action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979); *see also Sandoval v. Super. Ct.*, 140 Cal. App. 3d 932, 942 (1983) (citing this rule from *Parklane* as a matter of state preclusion law). There is no reason the *Taylor* plaintiffs could not have been part of the *Csupo* class action. *See Arias v. Super. Ct.*, 46 Cal.4th 969, 933 (2009) (explaining that "[u]nfairness may result from application of collateral estoppel" under such circumstances). The *Csupo* plaintiffs—represented by the same attorneys who represent the class here—filed the operative version of their state-court complaint over a year after this action was already underway. *See* Fourth Am. Compl., *Csupo* (Cal. Super. Ct. Feb. 1, 2022). Courts have rejected preclusion when plaintiffs adopt this "'wait and see' approach" by sitting on the sidelines during the initial "class litigation and then assert[ing] offensive collateral estoppel in a later suit." *Aurora Astro Prods. LLC v. Celestron Acquisition, LLC*, 2023 WL 5957178, at *10 n.6 (N.D. Cal. Sept. 12, 2023).

Should they someday bring a motion seeking preclusion, Plaintiffs would need to overcome many other substantial barriers to applying preclusion, none of which are ready for resolution now. For example, the issues in the two cases are not genuinely "identical," as required for preclusion to

apply. *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1507-08 (2008). The parties have not even filed their summary judgment motions in this case, meaning there is no basis to assess whether evidence about this entirely different group of plaintiffs will differ from *Csupo*, where plaintiffs relied at trial on the testimony of a single named plaintiff to attempt to prove substantial interference and harm. Moreover, many of the critical questions in this case—including class certification and the admissibility of expert testimony—arise under *federal* procedural law, and therefore cannot be controlled by *Csupo*. *See Smith v. Bayer Corp.*, 564 U.S. 299, 309-10 (2011) (noting federal courts and state courts "using a different standard [are] thus deciding a different issue" for preclusion purposes). Additionally, because Google's *Csupo* appeal is not yet complete, it is impossible to know what issues will be "necessarily decided" for purposes of applying preclusion. *Id.* And it is inappropriate to accord preclusive effect to a non-unanimous jury verdict in federal court. *See Robinson v. Brown*, 2014 WL 1779460, at \*9 (E.D. Cal. May 5, 2014) (noting different "procedural opportunities" in state and federal court can defeat preclusion).

**Fourth**, issue preclusion would not apply if Google prevails in the *Csupo* appeal. *See Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (explaining issue preclusion can only be "asserted against one who was a party in the first suit or one in privity with that party"). Under *Ernest Bock*, where even "**one possible outcome** of parallel state court proceedings is continued federal litigation," there is "'substantial doubt' that the state court action will provide a 'complete and prompt resolution of the issues,' because the federal court may well have something 'further to do.'" *Ernest Bock*, 76 F.4th at 841 (quoting *Moses Cone*, 460 U.S. at 28) (emphasis added); *Intel Corp.*, 12 F.3d at 913 (concluding there was "substantial doubt sufficient to preclude a *Colorado River* stay" where only one possible outcome of concurrent state court proceedings would resolve all issues in the federal action, but if the state court overturned an arbitration award, the case would "return to federal court for the adjudication of the underlying copyright claims (having been delayed for the entire period of the stay)").

**Fifth**, and finally, even assuming for argument's sake that *Csupo* would necessarily resolve all the issues in *Taylor* (it will not), the standard timeline for the California Court of Appeal to hear the appeal in *Csupo* would prevent "**prompt** resolution of the issues between the parties," thus still

1   precluding a stay under *Colorado River* regardless. *Ernest Bock*, 76 F.4th at 841 (emphasis added).

2   As discussed further below (*see* Section IV. D, *infra*), it could be multiple years before the appellate

3   process runs its course in *Csupo*.

4           For all these reasons, there is "substantial doubt as to whether the state proceedings will

5   resolve the federal action," much less do so promptly. *Ernest Bock*, 76 F.4th at 841. In these

6   circumstances, "it would be a serious abuse of discretion to grant [a *Colorado River*] stay." *Id.*

7   (quoting *Moses Cone*, 460 U.S. at 28).

8           **D.      Even if the Court Could Apply *Landis*, a Stay Is Not Supported Under That
                      Standard Either.**
9

10          Even if this Court could apply *Landis* rather than *Colorado River*, which it cannot under

11  *Ernest Bock*, Plaintiffs have still failed to demonstrate that a stay is warranted. The *Landis* test

12  requires courts to weigh: (1) the possible damage from granting a stay, (2) the hardship or inequity

13  a party may suffer in being required to go forward, and (3) the orderly course of justice. *CMAX,*

14  *Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Each factor weighs against a stay here.

15                      **1.      Google will suffer significant harm from a stay.**

16          To start, granting a stay would expose Google to substantial and increasing damages. Most

17  critically, every day this case remained stayed would extend the potential class period, thereby

18  expanding Google's potential liability. Moreover, Plaintiffs will argue, as they have in *Csupo*, that

19  any judgment against Google would include prejudgment interest that continues to accrue

20  throughout the stay period, adding further to damages. This accrual of alleged damages and interest

21  means that staying this case could cost Google dramatically more than a prompt resolution of the

22  claims with the same outcome, precluding a stay under *Landis*.[7] *See Dependable Highway Exp.,*

23  *Inc. v. Navigators Ins. Co*., 498 F.3d 1059, 1066-67 (9th Cir. 2007) (finding that accrual of "legal

24  and equitable penalties" constitutes harm and that "[b]ecause the stay is likely to do damage to

25  [party], and it is unclear when the stay might lift, if at all," it was an abuse of discretion for the

26  _____

27  [7] In *Csupo*, for example, Plaintiffs' counsel contend that Google should pay $107,744.56 ***per day***
    until Google complies with the Superior Court's potential injunctive relief or otherwise ceases the
    challenged practices—and that number corresponds to a class consisting of Android users in just
28  ***one state***, whereas the putative class in *Taylor* includes the ***remaining 49***. (*See* Pls.' Motion for
    Equitable Relief at 19.)

1   district court to issue a stay under *Landis*)

2       Exacerbating both issues, the timeline for resolution of *Csupo* is far from "finite." The

3   *Csupo* post-trial motions are not scheduled for hearing until October 7, 2025. (Pls.' Mot. at 5.) The

4   timeline for the Superior Court's ruling on the *Csupo* plaintiffs' motion for equitable relief—which

5   will only be heard on October 24, 2025—is unknown, and judgment will not be final until the

6   parties' dispute over injunctive relief is resolved. *See Sullivan v. Delta Air Lines, Inc.*, 15 Cal. 4th

7   288, 304 (1997) (explaining a judgment is only final "when it terminates the litigation between the

8   parties on the merits of the case and leaves nothing to be done but to enforce by execution what has

9   been determined"). Any appeal to the California Court of Appeal could then take 18 months or

10  more. If review is sought from the California Supreme Court, nearly a certainty no matter the result

11  of the Court of Appeal's decision, the total appellate process could extend beyond 2027. And this

12  does not account for the possibility that the appellate courts may remand the *Csupo* action for

13  further proceedings in the Superior Court. *See Dependable Highway Exp.*, 498 F.3d at 1066, 1070

14  (noting that "[g]enerally, stays should not be indefinite in nature"); *Murray v. City of Carlsbad*,

15  2010 WL 4822744, at *1 (S.D. Cal. Nov. 22, 2010) (denying plaintiff's motion to stay, finding that

16  delay of trial qualified as "damage" to defendants). Such an extensive delay is particularly

17  unwarranted given the late stage of this case. *See Doe v. Uber Techs., Inc.*, 2022 WL 2267568, at

18  *3 (N.D. Cal. June 23, 2022) (denying a plaintiff's motion to stay pending appellate review in

19  California state court, explaining that defendant would be harmed by a stay "given the late stage of

20  [the] litigation" where summary judgment was on the horizon). Throughout this entire period,

21  Google would face mounting exposure as the *Taylor* class period continues to run, potentially

22  adding hundreds of millions or even ***billions*** of dollars more in additional claimed damages, and

23  would be left with uncertainty regarding the important practices Plaintiffs challenge. (Bernstein

24  Decl. ¶ 5.)

25      In these ways, this case is fundamentally different from *CMAX* (on which Plaintiffs rely),

26  where the plaintiff sought only a fixed amount of damages that had already accrued. *CMAX*, 300

27  F.2d at 266 (seeking $12,696.09 in past undercharges). Similarly, *Mediterranean Enters.*, which

28  Plaintiffs also cite, involved a discrete contractual dispute over a failed joint venture with damages

limited to past events. *Mediterranean Enterprises*, 708 F.2d at 1461 (involving claims related to breach of a September 1978 agreement). The court concluded a stay could issue, presumably because the plaintiff sought only money damages for completed past conduct. *Id.* at 1465. Here, Google faces ongoing and accumulating exposure, as well as uncertainty about a key product— cognizable harms that preclude a stay.

### 2.    Plaintiffs will suffer no cognizable hardship from proceeding.

In stark contrast, Plaintiffs cannot demonstrate any legitimate hardship from being required to litigate the case they chose to file ***in the very court they strategically filed it in***. "In *Landis*, the Supreme Court made clear that 'if there is even a fair possibility that the stay ... will work damage to some one else,' the party seeking a stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1087 (2024) (quoting *Landis*, 299 U.S. at 255) (ellipsis in original). That Plaintiffs selected this forum alone precludes any argument of hardship in continuing to litigate here. *Bechhold v. Bogner*, 2008 WL 170688, at *3 (N.D. Cal. Jan. 17, 2008) (denying plaintiff's motion to stay pending resolution of a motion in another case on same conduct, explaining "***it is by choice that the plaintiff has instituted the action in this forum while also litigating in another***.") (emphasis added). In fact, the alleged burdens of litigating a case—all that Plaintiffs assert here—are not cognizable more generally. *See Stanley v. Novartis Pharms. Corp.*, 2012 WL 12883839, at *3 (C.D. Cal. Apr. 13, 2012) ("In evaluating whether such a showing [of prejudice] has been made, the hardship of litigating the suit is generally irrelevant."); *Lockyer*, 398 F.3d at 1112 (similar). Put simply, Plaintiffs' counsel intentionally designed the present circumstances, in which a CAFA-proof class advanced in state court at the same time a broader class did so in federal court—and cannot now claim prejudice the moment it becomes convenient for them to change the respective paces of these two cases.

Plaintiffs' reliance on *Ramachandran v. City of Los Altos* is misplaced. There, the court stayed a single plaintiff's First Amendment retaliation claim pending resolution of an administrative appeal that would determine the underlying factual predicate for his damages— whether code violations actually existed on his property. 2022 WL 2479652, at *4 (N.D. Cal. July 6, 2022). As an initial matter, that decision is from 2022, before the Ninth Circuit's 2023 decision

in *Ernest Bock*, which thereafter required any such stay to be decided under *Colorado River*. (See Section IV. B. 1, *supra*.) Moreover, the court found a stay appropriate because (1) resolution of the administrative proceeding would definitively resolve key factual issues between the parties (which the plaintiff opposing the stay did not dispute); and (2) certain parties requesting the stay faced potential exposure to punitive damages in the federal action (and thus they argued *not* staying the action "would be especially prejudicial to them"). *Id.* at *3-4. Neither of those factors exists here. The *Csupo* appeal will not definitively resolve factual issues in this case, given the different plaintiffs and putative classes, and Plaintiffs face no risk of something akin to the punitive damages the *Ramachandran* defendants potentially faced. Further, in *Ramachandran*, the Court also emphasized that the state proceedings were "already calendared for August 2022"—just one month after its decision. *Id.* at *3. Here, Plaintiffs seek an indefinite stay that could extend for years.

Moreover, Plaintiffs' true motivation appears to be avoiding potentially adverse rulings in this Court rather than any genuine hardship. (*See* Section IV. A, *supra*.) It should go without saying that this Court making an adverse ruling on a motion Plaintiffs brought is not a hardship that can justify a stay.

### 3.     A stay would not simplify issues or promote judicial economy.

As discussed above, *after* the Csupo trial, Plaintiffs forged ahead with their Motion to Certify a Class and stipulated to a briefing schedule and hearing on all the Pending Motions. (*See* Section II. B, *supra*.) Plaintiffs then made the Court review thousands of pages of briefing and expert reports, and moved forward with a hearing on their class-certification motion that lasted hours. (*Id*.) Now that the Pending Motions have been exhaustively briefed and argued, Plaintiffs make the audacious claim that judicial economy is best served by preventing the Court from issuing the orders that it has already been working on. (Mot. at 7-8, 10.) This makes no sense—if Plaintiffs cared about judicial efficiency, they would have sought a stay long ago, not right after a hearing where they did not like what the Court had to say.

Regardless, any appeal in *Csupo* will not simplify the issues currently before this Court. The Pending Motions are brought under Federal Rule of Civil Procedure 23(b) and the Federal Rules of Evidence. (*See* Section IV. C, *supra* (discussing variation between California and federal

1  class certification standards).) In fact, the Court has already explained that it has no intention of

2  deferring to decisions in *Csupo* on these issues, because those decisions were made under other

3  standards (and Google believes were wrongly decided at that). (Bernstein Decl. Ex. C, 8/19/2025

4  Hr. Tr. at 128:22-25 ("But unless and until you tell me that some judge in the State Court system

5  has made a binding decision, and I would be delighted to hear that -- then I just – don't expend your

6  time on it.").) But given this circumstance, there is no basis for a *Landis* stay before rulings are

7  issued on the Pending Motions, which motions do not turn on the ongoing proceedings in *Csupo*.

8  *See Flores v. Bennett*, 675 F. Supp. 3d 1052, 1063 (E.D. Cal. 2023) (quoting *Lockyer*, 398 F.3d at

9  1113) ("A *Landis* stay is inappropriate if another proceeding is 'unlikely to decide, or to contribute

10  to the decision of, the factual and legal issues before the district court.'").

11       The cases Plaintiffs cite involved fundamentally different procedural postures. In *CMAX*,

12  the stay was sought before substantial proceedings had occurred—discovery was still ongoing and

13  no dispositive motions had been briefed or heard. 300 F.2d at 266. In *Mediterranean Enterprises*,

14  the court stayed the case at an early stage, before the parties had invested substantial resources in

15  trial preparation. 708 F.2d at 1461. And in *Ramachandran*, as noted above, the plaintiff himself

16  had repeatedly sought continuances, undermining any claim of urgency. 2022 WL 2479652, at *2.

17       Here, by contrast, the Pending Motions have been fully briefed, argued, and are ripe for

18  decision. The Court has already invested significant time in understanding the complex issues. To

19  grant a stay now would waste all that effort and require the Court to re-familiarize itself with the

20  case years from now. The far more efficient path forward is for the Court to issue the rulings on the

21  Pending Motions, which will bring clarity to many key issues in this case.

22  **V.    CONCLUSION**

23       For all these reasons, the Court should deny Plaintiffs' Motion.

24  Dated: September 16, 2025                    COOLEY LLP

25

26                                   By: */s/ Whitty Somvichian*
                                         Whitty Somvichian
27

28                                       Attorneys for Defendant
                                         GOOGLE LLC