| | |
|---|---|
| ELIZABETH M. PIPKIN (243611) | MARC A. WALLENSTEIN (*pro hac vice*) |
| ANN M. RAVEL (62139) | GEORGE A. ZELCS (*pro hac vice*) |
| McMANIS FAULKNER | CHAD E. BELL (*pro hac vice*) |
| 50 West San Fernando Street, 10th Floor | RYAN Z. CORTAZAR (*pro hac vice*) |
| San Jose, CA 95113 | PAMELA I. YAACOUB (*pro hac vice*) |
| Telephone: (408) 279-8700 | KOREIN TILLERY LLC |
| Facsimile:  (408) 279-3244 | 205 North Michigan Avenue, Suite 1950 |
| epipkin@mcmanislaw.com | Chicago, IL 60601 |
| aravel@mcmanislaw.com | Telephone: (312) 641-9750 |
| | Facsimile:  (312) 641-9751 |
| GLEN E. SUMMERS (176402) | |
| KARMA M. GIULIANELLI (184175) | CAROL L. O'KEEFE (*pro hac vice*) |
| LINDLEY J. BRENZA (*pro hac vice*) | MICHAEL E. KLENOV (277028) |
| JONATHAN JACOB MARSH (*pro hac vice*) | KOREIN TILLERY LLC |
| BARTLIT BECK LLP | 505 North Seventh Street, Suite 3600 |
| 1801 Wewatta Street, Suite 1200 | St. Louis, MO 63101 |
| Denver, CO 80202 | Telephone: (314) 241-4844 |
| Telephone: (303) 592-3100 | Facsimile:  (314) 241-3525 |

*Attorneys for Plaintiffs Joseph Taylor,
Mick Cleary, and Jennifer Nelson*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 5:20-CV-07956-VKD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY** <br><br> Date:   October 7, 2025 <br> Time:   10:00 a.m. <br> Judge: Hon. Virginia K. DeMarchi |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 5

ARGUMENT ........................................................................................................................ 6

    I.    Plaintiffs Properly Seek a *Landis* Stay to Streamline the Issues in this Case and to Promote Efficiency for the Court and the Parties .................. 6

    II.   The *Colorado River* Test Does Not Apply to this Case ................................. 9

    III.  Applying the *Landis* Factors, the Court Should Stay this Case ..................... 14

        A.   The Proceedings in *Csupo* will Dramatically Simplify the Issues for this Court ........................................................................ 15

        B.   Google Will Suffer No Harm from a Stay ......................................... 17

        C.   Plaintiffs Will Suffer Hardship from the Denial of a Stay ................ 18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AirDoctor, LLC v. Xiamen Qichuang Trade Co.*,
  134 F. 4th 552 (9th Cir. 2025) ................................................................................................ 13

*Ambrosia Coal & Const. Co. v. Pagés Morales*,
  368 F.3d 1320 (11th Cir. 2004) ............................................................................................. 12

*Blain v. Liberty Mutual Fire Insurance Co.*,
  No. 22-cv-970, 2025 WL 886966 (S.D. Cal. Mar. 21, 2025) ................................................ 12

*Boblitt v. Boblitt*,
  190 Cal. App. 4th 603 (2010) ................................................................................................. 8

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ................................................................................................ 17

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ......................................................................................................... *passim*

*Cottrell v. Duke*,
  737 F.3d 1238 (8th Cir. 2013) .............................................................................................. 13

*Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*,
  No. 24-cv-8280, 2025 WL 1090941 (C.D. Cal. Apr. 9, 2025) .............................................. 10

*Env't Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*,
  257 F.3d 1071 (9th Cir. 2001) .............................................................................................. 13

*Ernest Bock, LLC v. Steelman*,
  76 F.4th 827 (9th Cir. 2023), ................................................................................. 9, 11, 12, 13

*Feldman v. Allstate Ins. Co.*,
  322 F.3d 660 (9th Cir. 2003) ................................................................................................ 16

*Fireside Bank v. Super. Ct.*,
  40 Cal. 4th 1069 (2007) ........................................................................................................ 19

*Gebreseralse v. Columbia Debt Recovery, LLC*,
  No. 19-cv-1909, 2020 WL 12812297 (W.D. Wash. Oct. 30, 2020) ....................................... 9

*In re Ocwen Loan Servicing, LLC*,
  No. 16-cv-200, 2018 WL 10529509 (D. Nev. Feb. 6, 2018) .................................................. 9

*In re PG&E Corp. Sec. Litig.*,
  100 F.4th 1076 (9th Cir. 2024) ....................................................................................... 14, 18

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ......................................................................................................... *passim*

*Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*,
   90 Cal. App. 4th 64 (2001) ................................................................................................... 17

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) ............................................................................................................. 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................. 11

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ............................................................................................. 12

*Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*,
   570 F. Supp. 3d 866 (S.D. Cal. 2021) ................................................................................. 12

*Ohio Cas. Ins. Co. v. Cal.-Pac. Ann. Conf. of United Methodist Church*,
   No. 23-cv-2850, 2023 WL 9004987 (C.D. Cal. Nov. 17, 2023) .......................................... 12

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979) ............................................................................................................. 19

*Ramachandran v. City of Los Altos*,
   No. 18-cv-1223, 2022 WL 2479652 (N.D. Cal. July 6, 2022) ............................................. 18

*Ryman v. Sears, Roebuck & Co.*,
   505 F.3d 993 (9th Cir. 2007) ................................................................................................. 5

*Samara v. Matar*,
   5 Cal. 5th 322 (2018) ............................................................................................................ 8

*Sandoval v. Super. Ct.*,
   140 Cal. App. 3d 932 (1983) ............................................................................................... 19

*Travelers Prop. Cas. Co. of Am. v. Lineage Logistics, LLC*,
   No. 24-cv-835, 2024 WL 5220880 (C.D. Cal. Dec. 23, 2024) ....................................... 11, 13

*Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*,
   231 Cal. App. 4th 134 (2014) .............................................................................................. 17

*United States v. State Water Res. Control Bd.*,
   988 F.3d 1194 (9th Cir. 2021) ............................................................................................. 10

*Williams v. United States*,
   568 F. Supp. 3d 1115 (W.D. Wash. 2021) .......................................................................... 13

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 16

**Other Authorities**

Jud. Council of Cal., *2025 Court Statistics Report: Statewide Caseload Trends* (2025),
   available at https://courts.ca.gov/system/files/file/2025-court-statistics-report.pdf ............... 18

4
**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY (CASE NO. 5:20-CV-07956)**

# INTRODUCTION

A stay is warranted because this case meets all the requirements of *Landis*, which sets forth the applicable legal standard. An ongoing state-court case, *Csupo v. Google*, presents numerous identical issues of controlling California law. And that case will be the subject of an imminent appeal to the California Court of Appeal, which is likely to provide binding decisions on those controlling legal issues.[1] Regardless of how the California Court of Appeal resolves those questions, its decision will considerably streamline the remaining proceedings in this Court. If Google loses the appeal, the Plaintiffs in this case will likely be entitled to collateral estoppel on numerous issues, avoiding the need for trial on those issues. If Google wins the appeal, such a decision would likely result in the termination or simplification of this case. No matter how the appeal is resolved, the California Court of Appeal will make binding decisions on pivotal issues of California law that are presented in both cases. Such a decision will materially inform the Court's resolution of class certification, *Daubert*, and summary judgment motions in this case, thereby streamlining this litigation and conserving the resources of the Court and the parties.

Faced with this reality, Google urges this Court to apply the far more stringent test for abstention under the *Colorado River* doctrine. But *Colorado River* does not apply here for several reasons. Plaintiffs do not ask the Court to surrender jurisdiction over this dispute as in *Colorado River* and its progeny. Plaintiffs instead seek a limited, finite stay under *Landis*—nothing more. While *Csupo* presents identical *issues* as this case, the *claims* are brought on behalf of distinct classes of plaintiffs, so there is no concurrent jurisdiction over the same claim as in *Colorado River*. Accordingly, the *Landis* test applies, not *Colorado River*.

This Court should grant a stay under *Landis*. First, there is no question that a stay is likely to streamline the remaining litigation in this case, and will thereby promote its efficient resolution. Second, Google will not be harmed by a stay. Google has never before shown any desire to expedite the resolution of this case. To the contrary, Google has requested and/or consented to innumerable extensions of the case schedule over the years this case has been pending and has

---

[1] A "federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

continually dragged its feet, happy to delay this case as long as possible. Any additional damages that accrue will be attributable to its continuing misconduct, not the stay. And any prejudgment interest that accrues will merely compensate for the time-value of money. Given Google's virtually unlimited financial resources and refusal to modify its behavior, even in the years following the Ninth Circuit's decision confirming the legal merit of Plaintiffs' claims, Google's cries about increased damages and interest do not pass the red face test. Third, forcing Plaintiffs (who, unlike Google, have limited resources) to needlessly litigate issues that will be resolved conclusively in short order by the California Court of Appeal will cause them significant harm and will not serve the interests of justice.

## ARGUMENT

### I. Plaintiffs Properly Seek a *Landis* Stay to Streamline the Issues in this Case and to Promote Efficiency for the Court and the Parties

Plaintiffs seek a stay under *Landis* to promote judicial economy and avoid wasted judicial resources and inconsistent outcomes. As discussed in Plaintiffs' opening brief and below, if Google loses its appeal in *Csupo*, Plaintiffs will likely be entitled to collateral estoppel on many of the issues presented in this case. For any issues where collateral estoppel does not apply, the appeal in *Csupo* will significantly streamline the resolution of this case at every future stage.

Google's appeal in *Csupo* will require the California Court of Appeal to resolve numerous issues that would assist this Court in resolving this case. Google has announced its intent to appeal in *Csupo* and has filed a motion for new trial or judgment notwithstanding the verdict, previewing the issues it will raise on appeal, and demonstrating that the appellate issues in *Csupo* will streamline the resolution of this case. Dkt. 234-9, "JNOV". For example, Google argues that the harm element of conversion requires some consequential harm above and beyond the mere taking of property, and that the loss of property itself is not a "harm" under California law. *Id.* at 3-7. No matter how the Court of Appeals views Google's argument, its decision on this issue of California law will provide critical guidance allowing this Court to properly adjudicate the pending class certification and *Daubert* motions, and the forthcoming summary judgment motions. For instance, the Court of Appeal's decision whether consequential harm is required will help this Court to

6
**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY (CASE NO. 5:20-CV-07956)**

evaluate whether substantially all class members suffered the same type of harm for the purposes of class certification. Likewise, the Court of Appeal's decision on that question will aid this Court in determining whether Plaintiffs' experts' opinions on damages align with the permissible legal theories of harm and damages under California law. And it will aid this Court at summary judgment by allowing this Court to evaluate whether a reasonable juror could conclude that Plaintiffs were harmed, under California law, by Google's taking of their property. Regardless of how the Court of Appeal resolves this issue and other pivotal legal issues Google will raise on appeal, the Court of Appeal's binding determinations of California law will be at least informative (and perhaps dispositive) at all remaining stages of this case.

In its opposition here, Google attempts to confuse the issues by making the outrageous argument (at 10) that Plaintiffs seek a stay to "avoid an adverse ruling" on the pending class certification and *Daubert* motions. Nothing could be more incorrect.

At the hearing on the pending motions, the Court squarely rejected Google's arguments on liability, harm, and consent, and seriously questioned Google's arguments on class certification and damages. The Court correctly acknowledged that the Ninth Circuit's decision in this case establishes the first three elements of conversion, including liability and harm. Dkt. 231, Aug. 19, 2025 Hr'g Tr. ("Tr.") 96:3-8 ("It's straight up data is like water. You used my water. You owe me."); Tr. 97:8-19 ("Google takes that data without the user's permission allegedly, and that is sufficient for conversion for the first two elements. And then the question of harm is just what—by virtue of having your data taking that you possesses, you have been harmed."). The Court also intimated that it agrees with Plaintiffs that "consent" can be "treated on a class-wide basis," and that "implied consent could be an objective standard." Tr. 40:16-21, 90:15-20.

The Court rejected Google's principal arguments against class certification, explaining that "overinclusiveness" does not "defeat class certification." Tr. 78:6-21; *see* Tr. 82:14-22. The Court correctly framed this issue as a "dispute of fact" not appropriate for resolution at class certification. Tr. 83:19-84:3. The Court rejected Google's leading arguments opposing class certification, including its arguments that variability in cellular data plans precludes certification, Tr. 98:3-8 ("I don't think I will find in your favor on that point."), as well as Google's attempt to rely on the

*Hamidi* case regarding trespass to chattels, Tr. 100:7-16 ("*Intel v. Hamidi* was really focused on the computer itself . . . nobody argued that the computer was taken."). The Court also pointed out how none of Google's arguments would preclude an injunctive class. Tr. 109:23-34 ("But it would still work for purpose of the injunctive class."). Significantly, the Court also rejected Google's main arguments regarding damages, explaining that "[i]n every damages case I've ever seen there are vastly different views of what the damages are and the value of whatever it is we're trying to value. So, why is that a basis for defeating class certification or for excluding the expert if the experts just disagree?" Tr. 117:5-16.

Google's melodramatic suggestion (at 6-7) that Plaintiffs made some "dramatic turn" to "scramble to block the Court from issuing its orders" is also wrong. Plaintiffs promptly informed the Court of their intention to seek a stay as soon as the discussion at the hearing turned to the *Csupo* case for the first time. *See* Tr. 128:3-132:6. During that discussion, the Court commented that it would be "delighted to hear" that a "judge in the State Court system has made a binding decision." Tr. 128:22-25 ("But unless and until you tell me that some judge in the State Court system has made a binding decision, and I would be delighted to hear that—then I just—don't expend your time on it."). Plaintiffs then immediately noted that the outcome in *Csupo* will have preclusive effect under controlling California law *after* the appeal in *Csupo* is resolved, and explained that they intended to seek a stay in order to allow the appeal to run its course so issue preclusion can properly be applied.[2] *See* Tr. 130:15-20 ("[W]e will be making a motion for collateral estoppel, which might necessitate a stay for the appeal because under California law, the decision is not fully binding for collateral estoppel purposes at least until the appeal through the California Court of Appeal has been decided.").

Google attempts to create the false impression (at 6-7) that the Court has already made final decisions on the class certification and *Daubert* motions, which are on the cusp of being made orders of the Court. But the Court made clear at the hearing that it would require considerable time

---

[2] *See Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 606 (2010) ("[A] judgment that is on appeal is not final for purposes of applying the doctrines of claim and issue preclusion."); *Samara v. Matar*, 5 Cal. 5th 322, 335 (2018) ("[A]n unsatisfied trial court judgment has no preclusive effect until the appellate process is complete.").

8
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY (CASE NO. 5:20-CV-07956)

and effort after the hearing for the Court to resolve them. *See* Tr. 136:4-10 ("I will do my best to get you an order as soon as I can, but you have briefed a ton of stuff, and it's going to take me a while."); Tr. 136:23-137:2 ("I'm just flagging for you that you've presented a lot of material . . . . I can't really make any promises about how quickly I'm going to get this order."); Tr. 130:22-131:1 ("I'd rather not do a lot of work on something that is not going to matter because there are other events that will have or have already overtaken what I'm doing here.").

Under such circumstances, courts in the Ninth Circuit have not hesitated to grant stays under *Landis* notwithstanding the pendency of motions were fully briefed and argued. *See, e.g.*, *In re Ocwen Loan Servicing, LLC*, No. 16-cv-200, 2018 WL 10529509, at *2 (D. Nev. Feb. 6, 2018) (granting stay even though "the parties have already fully briefed Plaintiffs' Motion to Certify Class and Defendant's Motion for Summary Judgment"); *Gebreseralse v. Columbia Debt Recovery, LLC*, No. 19-cv-1909, 2020 WL 12812297, at *2-3 (W.D. Wash. Oct. 30, 2020) (granting stay pending resolution of state court action under *Landis* despite fully briefed and argued summary judgment motion). The Court should reject Google's histrionic arguments that Plaintiffs' motion is brought for an improper purpose, and should instead decide the motion on its merits.

## II.     The *Colorado River* Test Does Not Apply to this Case

Google argues that this Court cannot issue a temporary stay of the litigation under *Landis* and that it must instead apply the *Colorado River* factors. But the *Colorado River* test is only implicated when a court intends to surrender jurisdiction to a different court exercising concurrent jurisdiction over the same dispute between the same parties. Both *Colorado River* and Google's primary case applying it—*Ernest Bock*—involved a common dispute between same parties, and therefore concerned the federal court's potential surrender of its jurisdiction over a dispute. That is not the procedural posture here. The Plaintiffs in this case and the *Csupo* plaintiffs are different parties, asserting separate claims, so there is no occasion for this Court to surrender jurisdiction to the state of California—only an opportunity to issue a temporary stay to streamline this litigation.

This Court has both (1) the inherent power to manage the Court's docket recognized in *Landis*, which includes the power to stay a case pending the resolution of a related case in the

9

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY (CASE NO. 5:20-CV-07956)**

1  interests of efficiency; and (2) the power to abstain from exercising jurisdiction over a duplicative
2  suit under *Colorado River*. But these two powers arise from two distinct sources, and apply in
3  different situations.

4        Federal district courts have the inherent power "to manage their own affairs so as to achieve
5  the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31
6  (1962). Among those inherent powers is the power to manage the Court's docket, including by
7  staying litigation proceedings in appropriate circumstances to conserve scarce judicial resources.
8  As the Supreme Court recognized in *Landis*, there is a "power inherent in every court to control
9  the disposition of the causes on its docket with economy of time and effort for itself, for counsel,
10 and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This Court unquestionably has
11 the discretionary power "to stay proceedings" in its "exercise of judgment." *Id.*

12       The Supreme Court has also made clear that district courts also have a different (and far
13 more circumscribed) power to "surrender" their jurisdiction over a duplicative federal action
14 involving the same dispute that is also pending in state court. *United States v. State Water Res.*
15 *Control Bd.*, 988 F.3d 1194, 1202-03 (9th Cir. 2021) (citation modified). When there is a
16 "contemporaneous exercise of concurrent jurisdiction" over a dispute in two courts, a federal court
17 may employ the *Colorado River* doctrine, which "shares the qualities" of "an abstention doctrine."
18 *Id.* The *Colorado River* doctrine permits a federal court in effect to "surrender" its jurisdiction by
19 declining to exercise jurisdiction over duplicative litigation that is also pending in state court. *Id.*

20       Because the *Colorado River* doctrine concerns surrender of jurisdiction to a state court, the
21 *Colorado River* test applies only in the rare circumstance when state and federal courts "exercise
22 [] concurrent jurisdiction" over the same dispute, between the same parties, involving the same
23 claim. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). In
24 other words, the *Colorado River* factors come into play only when a "stay would effectively
25 abdicate the federal court's jurisdiction," because the state-court proceeding will entirely resolve
26 the dispute, and "there will be nothing more for this Court to do once a stay is entered." *Elec.*

27
28

1  *Solidus, Inc. v. Proton Mgmt. Ltd.*, No. 24-cv-8280, 2025 WL 1090941, at *18 (C.D. Cal. Apr. 9, 2025).[3]

Abstention under *Colorado River* and stays under *Landis* are mutually exclusive and apply under distinct circumstances. *Colorado River* allows a court to surrender its jurisdiction to another court that will resolve the co-pending dispute between the parties. When a court is entertaining such a surrender of jurisdiction, it must apply the strict *Colorado River* test, because the power to manage the Court's docket does not allow a court to fully abdicate jurisdiction over a dispute. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 843 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 554 (2024). But a docket-management stay under *Landis* is not a surrender of jurisdiction; it is intended to make the court's exercise of jurisdiction more effective and efficient once litigation resumes. Accordingly, where a surrender of jurisdiction is not sought, the *Colorado River* doctrine is not implicated, and it does not displace this Court's inherent authority to issue a docket-management stay under *Landis*. *See Travelers Prop. Cas. Co. of Am. v. Lineage Logistics, LLC*, No. 24-cv-835, 2024 WL 5220880, at *4 n.7 (C.D. Cal. Dec. 23, 2024).

Plaintiffs seek a docket-management stay under *Landis*, not a jurisdictional surrender akin to abstention under *Colorado River*. Indeed, *Colorado River* does not apply here because no other court is currently exercising jurisdiction over these Plaintiffs' claims, so there is no occasion for this Court to surrender its jurisdiction to another. Plaintiffs instead request that this Court exercise jurisdiction and adjudicate Plaintiffs' claims with the benefit of guidance from the California Court of Appeal on numerous overlapping factual and legal issues in a case involving different plaintiffs.

---

[3] Because abstention under *Colorado River* represents a refusal to exercise jurisdiction, such a decision is typically a final appealable order, whereas a stay under *Landis* typically is not. A court's "decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case," so "there would be no further litigation in the federal forum," because the state court will entirely resolve the duplicative claims between the parties. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10, 28 (1983). Accordingly, a decision to abstain under *Colorado River* "amounts to a dismissal of the suit" from federal court. *Id.* at 10. By contrast, a stay under *Landis* "with the expectation that the federal litigation will resume" within a reasonable period of time, is not immediately appealable, because it does not put a party "effectively out of court." *Id.* (citation omitted).

1    Google suggests that the *Colorado River* test is triggered by any state-court litigation that involves the same conduct by the same defendant. Google is wrong. The *Colorado River* factors apply only when there are "parallel state proceedings" on the same dispute. *Ernest Bock*, 76 F.4th at 843. And a suit is only truly "parallel" when it involves the same parties litigating the same claims in another forum. *See Ambrosia Coal & Const. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) ("*Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues."); *see also, e.g.*, *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) ("parallel actions are those involving the same parties" and there are "no parallel state proceedings when different defendants named" (citing authorities)); *Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*, 570 F. Supp. 3d 866, 870 (S.D. Cal. 2021) (holding that "parallel" cases are those involving "substantially the same parties [] contemporaneously litigating substantially the same issues in another forum"). The *Csupo* case does not involve substantially the same parties because the plaintiffs are completely different—the *Csupo* plaintiffs are all California residents, excluded from the *Taylor* class.

In cases similar to this, other district courts in the Ninth Circuit have ruled that *Landis*, not *Colorado River*, applies. For instance, in *Blain v. Liberty Mutual Fire Insurance Co.*, the district court considered a stay pending a state-court appellate decision. No. 22-cv-970, 2025 WL 886966, at *22 (S.D. Cal. Mar. 21, 2025). The state-court appeal in *Blain*, like the *Csupo* appeal in this case, was potentially dispositive as to certain legal issues, and would likely "impact future decisions at the summary judgment stage." *Id.* In *Blain*, like here, the state-court appeal involved a materially identical dispute between non-identical parties. *Id.* at *20. Accordingly, the district court did not apply the *Colorado River* test, but instead applied the *Landis* factors and issued a docket-management stay pursuant to its inherent powers. *Id.* at *21-23. Numerous other district courts have reached the same conclusion, even after *Ernest Bock*, and have therefore applied *Landis* in similar circumstances. *See, e.g.*, *Ohio Cas. Ins. Co. v. Cal.-Pac. Ann. Conf. of United Methodist Church*, No. 23-cv-2850, 2023 WL 9004987, at *4 (C.D. Cal. Nov. 17, 2023) ("Only where the claims and parties are the same is abstention in the face of parallel state proceedings an essential surrender of jurisdiction to the parallel state court proceeding, warranting the narrower

12
**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY (CASE NO. 5:20-CV-07956)**

1  *Colorado River* test." (citation modified)); *see also Travelers*, 2024 WL 5220880, at *4 n.7. This Court should take the same path.

Google reads the Ninth Circuit's *Ernest Bock* decision to prevent any exercise of this court's inherent power when state-court proceedings are underway. That is not how other district courts have read the Ninth Circuit's decision, nor would that be a sensible way to read it.

In *Ernest Bock*, the Ninth Circuit quoted and adopted the reasoning of the Eighth Circuit's prior decision in *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013). *See Ernest Bock*, 76 F.4th at 843 (quoting *Cottrell*, 737 F.3d at 1249). The very language quoted from Cottrell makes clear that *Colorado River* applies only "when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*," which is to surrender jurisdiction to another court with concurrent jurisdiction over the same dispute between the same parties. *Id.* Moreover, the Eighth Circuit in *Cottrell* concluded that "a district court retains its inherent power to control its docket when facing concurrent state and federal litigation," and that *Colorado River* applies only when the order "amounts to a complete refusal to exercise jurisdiction." 737 F.3d at 1249.[4]

This Court has the inherent power to manage its docket and to stay proceedings under *Landis*, unless it intends to use such a stay to completely surrender its own jurisdiction over a dispute and to thereby allow it to be resolved by a state court with concurrent jurisdiction. Only then must a court apply *Colorado River*. Here, Plaintiffs seek only a limited stay to allow the Court to more efficiently resolve the case following the Court of Appeal's decision in *Csupo*. Accordingly, *Landis* controls, not *Colorado River*.

---

[4] *Ernest Bock* did not, as Google suggests, create a split with the Eighth Circuit. When the Ninth Circuit intends to "create a direct conflict with other circuits," it must articulate "a strong reason to do so." *AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F. 4th 552, 555 (9th Cir. 2025) (citation modified). A Ninth Circuit opinion must be presumed "not to create an intercircuit conflict" unless it expressly states otherwise. *Env't Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1077 (9th Cir. 2001). Accordingly, district courts should "avoid[] reading a direct conflict into the Ninth Circuit's decision[s]" unless the Ninth Circuit explicitly stated that it was creating a circuit split. *Williams v. United States*, 568 F. Supp. 3d 1115, 1126 (W.D. Wash. 2021). The Ninth Circuit held in *Ernest Bock* that it was joining the Eighth Circuit's decision in *Cottrell*, not departing from it. *Ernest Bock*, 76 F.4th at 843. Google's reading would unnecessarily impute a circuit conflict where the Ninth Circuit expressly intended not to create one.

### III. Applying the *Landis* Factors, the Court Should Stay this Case

In connection with the pending class certification and Daubert motions in this case, Google makes several novel arguments under California law. Google's arguments in this case are identical to those Google will raise on appeal in the *Csupo* case, as Google's post-trial motion in *Csupo* makes clear. Google argues that the harm element of conversion requires some consequential harm above and beyond the mere taking of property under California law. JNOV at 3-7. Google argues that the taking of property does not qualify as a pocketbook under California law, and that small value or "de minimis" harms are not cognizable under California's tort of conversion. *Id.* at 3-7, 14-15. Google argues that conversion in California requires "substantial interference" with the victim's ability to use property that the tortfeasor has not taken, not just wrongful interference with the property that the converter actually took. *Id.* at 7-8, 14-15. Google argues that the proper measure of damages is the consequential out-of-pocket cost of any conversion as a matter of California law, and that the cost of merchandise in its primary market is not an appropriate measure of its fair market value. *Id.* at 11, 16-17.

Google makes all those same arguments here, and can be expected to renew those arguments at every future stage of this case. Google invites this Court to venture an Erie guess and to rule on all of these substantive legal issues in the first instance, instead of awaiting binding guidance from the California Court of Appeal. That would be inefficient and a waste of judicial and party resources, and may lead to inconsistent outcomes.

The controlling legal standard under *Landis* warrants a stay. There are "three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (citation modified). All three factors strongly favor a *Landis* stay in this case, pending resolution of the *Csupo* appeal.

A. **The Proceedings in *Csupo* will Dramatically Simplify the Issues for this Court**

The *Csupo* appeal is certain to simplify the issues in this case because it will provide binding rulings on key questions of California law, which will assist this Court at every future stage of this case. By waiting for that binding guidance this Court will have the opportunity to get California law right the first time. This Court should not invite motions for reconsideration or interlocutory appeals. Instead, this Court should stay its hand until it has the benefit of a reasoned, precedential decision from the California courts.

Before this case is resolved, the Court will need to resolve class certification, *Daubert* motions, summary judgment motions, and trial issues, including motions *in limine* and disputes over jury instructions. All of these remaining proceedings will turn on questions of California law that will likely be addressed by the California Court of Appeal in *Csupo*.

Rather than decide Google's novel California law arguments in the first instance, this Court should let the California Court of Appeal decide them conclusively first. Take class certification for instance. Google's class certification opposition makes a number of creative arguments under California law, including that objective consent cannot be determined on a classwide basis under California law (Dkt. 191 at 10), that there is "no viable theory of substantial interference or harm that could apply on a classwide basis" under California law (*id.* at 17), and that Plaintiffs' classwide damages theory is invalid as a matter of California law (*id.* at 2, 22-24). Those same arguments are also the centerpiece of Google's motion for judgment as a matter of law or new trial in *Csupo*, (JNOV at 3-12), and will certainly be raised in Google's subsequent appeal. The California Court of Appeal will provide this Court with binding opinions on Google's legal positions, allowing this Court to decide them with finality in the first instance.

The California Court of Appeal's opinion in *Csupo* will likewise inform this Court's adjudication of Google's *Daubert* motion on damages. In Google's *Daubert* motion (Dkt. 171 at 8), Google challenges whether Dr. Entner's industry-average price for cellular data is comports with the measure of damages for conversion under California law. Google raises the same arguments in its motion for judgment notwithstanding the verdict in *Csupo*, and will almost certainly ask the California Court of Appeal to decide the same issue. JNOV at 11, 16-17. As this

Court indicated at the *Daubert* hearing, adjudicating Google's *Daubert* motion will require assessing whether the measure of damages employed by Dr. Entner is consistent with the substantive law of conversion damages in California. Tr. 102:10-103:4. The California Court of Appeal's binding opinions on the measure of damages for conversion and the legal definition of "fair market value" under California law will simplify this Court's analysis and enable this Court to determine whether Plaintiffs' experts' opinions match the underlying substantive law that the jury will be required to apply.

Google argues (at 23-24) that class certification and *Daubert* "are brought under Federal Rule of Civil Procedure 23(b) and the Federal Rules of Evidence" and are thus procedural motions that "do not turn on the ongoing proceedings in *Csupo*." Yet both of these motions require this Court to adjudicate Google's novel theories about substantive California law. For instance, as this Court recognized, "California law sets forth the framework for the damages model," and both certification of a (b)(3) class and resolution of Google's *Daubert* motion turn on that issue of California law. Tr. 102:25-103:4. Google's class certification argument also turns on the novel legal argument that the "use" of cellular data is not a cognizable form of substantial interference or harm under California law, notwithstanding that "use" of cellular data is equivalent to consumption or destruction of it. *See* Dkt. 191 at 1, 16-17. It is necessary to resolve these and other substantive California-law questions presented to this Court before resolving the Federal procedural questions.

Furthermore, while "most evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern in diversity cases," any "state evidence rules that are intimately bound up with the state's substantive decision making must be given full effect by federal courts sitting in diversity." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citation modified). Whether Dr. Entner's industry-average approach to fair market value is an appropriate measure of fair market value under California law, and thus admissible consistent with *Daubert*, is precisely the sort of question that is "intimately bound up with" California's substantive law on conversion. *Id.* Therefore, this Court will be required to apply the California Court of Appeal's binding opinions on this mixed substantive-procedural question.

For all these reasons, the decision of the California Court of Appeal in *Csupo* will simplify this Court's adjudication of every future stage of this case. This Court should therefore wait for the California Court of Appeal to address the pivotal issues of California law presented in both cases before deciding class certification, *Daubert* challenges, summary judgment or how to instruct the jury at trial.

### B.  Google Will Suffer No Harm from a Stay

Under *Landis*, a court considering whether to stay the litigation must also weigh the possible harm from granting a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Neither party would suffer any harm from a stay in this case.

Google argues (at 20) that "every day this case remained stayed would extend the potential class period, thereby expanding Google's potential liability." This argument makes no sense. Google's potential liability continues to grow every day that Google persists in converting Android users' cellular data without their consent. Google can avoid liability by either changing its data collection practices to cease using Plaintiffs' cellular data for the Challenged Transfers, or by obtaining informed consent. Unless and until Google does so, its potential damages continue to grow, regardless of whether the additional damages are included in the damages period of this case or whether they are captured by a separate case concerning Google's prospective misconduct. In any event, any such damages would flow from Google's ongoing tortious conduct, not the stay.

Google is also wrong in suggesting (at 20) that it would be harmed because prejudgment interest would "continue to accrue throughout the stay period." Google has cited no case holding that the accrual of prejudgment interest constitutes "harm" from a stay. To the contrary, prejudgment interest merely compensates for the time-value of money, so any verdict fully "compensate[s] plaintiff for loss of use of his or her property." *Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 71-72 (2001) (citation omitted); *see also Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal. App. 4th 134, 198 (2014) (prejudgment interest is "a creation of statute designed to compensate for the presumed harm caused by the inevitable delays inherent in litigation" because "the losing party enjoys the use of the funds in question as the lawsuit winds its way through the courts"). In other words, prejudgment interest

17

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR STAY (CASE NO. 5:20-CV-07956)**

effectively preserves the status quo, so that neither the plaintiff nor the defendant is richer for delays in litigation.

Nor should this Court credit Google's argument (at 21) that the "timeline for resolution of *Csupo* is far from finite," and that Google would be harmed because it "would face mounting exposure as the *Taylor* class period continues to run." Google's post-trial motions in *Csupo* will be resolved no later than October 8, 2025, meaning that Google's appeal will be commenced very soon. A civil appeal in California typically takes less than 17 months to resolve. *See* Jud. Council of Cal., *2025 Court Statistics Report: Statewide Caseload Trends* at 40 (2025), *available at* https://courts.ca.gov/system/files/file/2025-court-statistics-report.pdf. That timing would not unduly delay this case, which currently has an August 2026 trial date that the Court has already indicated may move further back, particularly given that two other trials are currently scheduled to begin on the same date.

Furthermore, a *Landis* stay is discretionary, both in its beginning and in its ending. Plaintiffs' proposed stay would require the parties to submit regular reports so the Court can determine whether the stay should continue. If that does not fully address Google's stated concern that the stay is not sufficiently "finite," the Court could also limit the initial term of the stay to 18 months. The Ninth Circuit has consistently viewed stays of such a limited duration to be appropriate under *Landis*, and has further held that stays beyond 18 months may be permissible in some circumstances. *See In re PG&E*, 100 F.4th at 1084.

### C.    Plaintiffs Will Suffer Hardship from the Denial of a Stay

Finally, a court determining whether to issue a stay must consider "the hardship or inequity a party may suffer if a stay is not granted and the party is required to proceed." *Ramachandran v. City of Los Altos*, No. 18-cv-1223, 2022 WL 2479652, at *4 (N.D. Cal. July 6, 2022). Here, Plaintiffs would suffer significant harm from the denial of a stay, which would force them to needlessly litigate—at great expense—issues that are likely to be conclusively resolved in *Csupo*.

Regardless of how the *Csupo* appeal is resolved, Plaintiffs will suffer hardship and inequity by being required to proceed now. This Court will be required to adjudicate Google's numerous novel theories of California law to resolve this case. The California Court of Appeal is highly

18

1 likely to resolve at least some of those issues, and perhaps all of them. For this Court to decide these issues in the first instance would be to risk motions for reconsideration once the Court of Appeal issues its opinion, after perhaps many months of further litigation in this case. Even worse is the risk that Google (or Plaintiffs) will appeal the class certification decision or final judgment in this case, leaving the Ninth Circuit to apply the California Court of Appeal's opinion to this case in the first instance, without the benefit of this Court's interpretation of it. It is a near-certainty that denying a stay will result in this Court (or the Ninth Circuit) deciding the same motions multiple times over—first without the benefit of the California Court of Appeal opinion, and again on a motion for reconsideration or on appeal once the California Court of Appeal resolves *Csupo*.

Furthermore, a final judgment for the *Csupo* plaintiffs may have preclusive effect on numerous issues here, rendering the further litigation of those issues unnecessary. There has already been a jury verdict against Google in *Csupo* on claims involving the identical conduct at issue in this case, with answers to special interrogatories addressing each and every element of conversion. *See* Dkt. 234-8. If Google loses its appeal in *Csupo*, Plaintiffs will be entitled to offensive collateral estoppel on numerous issues in this case, streamlining this litigation further. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-33 (1979). Google argues that the application of offensive collateral estoppel would be unfair in this case, but as the Supreme Court and California Courts have both held, it is only unfair if the defendant has already repeatedly prevailed and obtained favorable judgments in a series of copy-cat suits. *Id.*; *see Sandoval v. Super. Ct.*, 140 Cal. App. 3d 932, 942 (1983) (similar); *see Fireside Bank v. Super. Ct.*, 40 Cal. 4th 1069, 1078 (2007) (Like "being pecked to death by ducks," "one plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone else would ride on that single success." (citation modified)). That principle is inapposite here, where only two cases encompass nearly all Android users in the United States. This Court need not resolve the parties' preclusion arguments to stay this case, but it is highly likely that issue preclusion will apply here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court should grant Plaintiffs' Motion for Stay.

| | |
|---|---|
| Dated: September 23, 2025 | Respectfully submitted, |
| | KOREIN TILLERY LLC |
| | */s/ Chad E. Bell* |
| | Marc A. Wallenstein (*pro hac vice*) |
| | George A. Zelcs (*pro hac vice*) |
| | Chad E. Bell (*pro hac vice*) |
| | Ryan Z. Cortazar (*pro hac vice*) |
| | Pamela I. Yaacoub (*pro hac vice*) |
| | KOREIN TILLERY LLC |
| | 205 North Michigan Avenue, Suite 1950 |
| | Chicago, IL 60601 |
| | Telephone: (312) 641-9750 |
| | Facsimile:  (312) 641-9751 |
| | |
| | Carol L. O'Keefe (*pro hac vice*) |
| | Michael E. Klenov (277028) |
| | KOREIN TILLERY LLC |
| | 505 North Seventh Street, Suite 3600 |
| | St. Louis, MO 63101 |
| | Telephone: (314) 241-4844 |
| | Facsimile:  (314) 241-3525 |
| | |
| | Glen E. Summers (176402) |
| | Karma M. Giulianelli (184175) |
| | Lindley J. Brenza (*pro hac vice*) |
| | Jonathan Jacob Marsh (*pro hac vice*) |
| | BARTLIT BECK LLP |
| | 1801 Wewatta Street, Suite 1200 |
| | Denver, CO 80202 |
| | Telephone: (303) 592-3100 |
| | |
| | Elizabeth M. Pipkin (243611) |
| | Ann M. Ravel (62139) |
| | McMANIS FAULKNER |
| | 50 West San Fernando Street, 10th Floor |
| | San Jose, CA 95113 |
| | Telephone: (408) 279-8700 |
| | Facsimile:  (408) 279-3244 |
| | |
| | *Attorneys for Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson* |