ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
LINDLEY J. BRENZA (*pro hac vice*)
JONATHAN JACOB MARSH (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
PAMELA I. YAACOUB (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs Joseph Taylor,
Mick Cleary, and Jennifer Nelson*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-CV-07956-VKD<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT**<br><br>Date: February 17, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Virginia K. DeMarchi |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on February 17, 2026 at 10:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Magistrate Judge Virginia K. DeMarchi located at the Robert F. Peckham Federal Building & United States Courthouse, Courtroom 2, 280 South 1st Street, San Jose, CA, 95113, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23, for an order: (1) granting preliminary approval of the settlement of this class action lawsuit; (2) certifying a settlement class; (3) appointing Glen E. Summers of Bartlit Beck LLP and Marc A. Wallenstein of Korein Tillery LLC as Settlement Class Counsel; (4) appointing the named Plaintiffs as representatives of the Settlement Class; (5) appointing Angeion Group LLC as Settlement Administrator; and (6) approving the form and manner of notice to Settlement Class members.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support of this Motion, declarations and exhibits filed in support thereof, the complete records and files of this action, all other matters of which the Court may take judicial notice, and any other such evidence and oral argument as may be presented at the hearing of this matter.

1

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................ 2

GLOSSARY OF TERMS ................................................................................... 8

STATEMENT OF ISSUES TO BE DECIDED ...................................................... 9

INTRODUCTION ............................................................................................. 9

BACKGROUND ............................................................................................. 11

    I.    History of the Litigation ......................................................... 11

        A.    Complaint, Dismissal, and Appeal ................................. 11

        B.    Fact and Expert Discovery ............................................. 11

        C.    Class Certification and *Daubert* Briefing ...................... 12

    II.    The Settlement Negotiations ................................................. 13

    III.    The Settlement Terms ........................................................... 14

        A.    Monetary Relief .............................................................. 14

        B.    Injunctive Relief ............................................................ 14

        C.    Scope of Release ............................................................ 16

        D.    Plan of Allocation .......................................................... 16

        E.    Notice of Settlement ...................................................... 17

        F.    Opt-Out Right ................................................................. 17

        G.    Objections ...................................................................... 18

LEGAL STANDARD ...................................................................................... 18

    I.    The Court Should Grant Preliminary Approval Because the Settlement is Fair, Reasonable, and Adequate ........................ 19

        A.    The Strength of the Case and Risks of Litigation .......... 20

        B.    The Amount and Benefits Offered in Settlement ........... 22

        C.    The Stage of Proceedings, Arm's Length Negotiations, and Views of Counsel .................................................... 26

        D.    Adequacy of Notice and Plan for Distribution ............... 27

        E.    Proposed Attorneys' Fee Award ..................................... 28

        F.    Equitable Treatment and Service Awards ....................... 29

        G.    Adequacy of Representation and Absence of Collusion ... 29

    II.    The Court Should Also Grant Preliminary Approval Based on the Northern District's Procedural Guidance for Class Action Settlements .......................................................................... 30

        A.    The Settlement Class is Substantially Identical to the Complaint's Class ........................................................... 30

        B.    The Scope of the Release Is Properly Limited ............... 30

| | | C. | Other Cases That Will Be Affected by the Settlement | 31 |
| | | D. | The Settlement Administrator Was Selected in a Competitive Bidding Process | 31 |
| | | E. | Expected Payment Rate | 32 |
| | | F. | Class Action Fairness Act Notice Will be Provided | 33 |
| | | G. | Comparable Outcomes | 33 |
| | III. | | The Court Should Certify the Proposed Settlement Class | 33 |
| | | A. | Numerosity | 34 |
| | | B. | Commonality | 34 |
| | | C. | Typicality | 34 |
| | | D. | Adequacy | 35 |
| | | E. | Predominance | 36 |
| | | F. | Superiority | 36 |
| | IV. | | Settlement Class Representatives and Settlement Class Counsel Should Be Appointed | 37 |
| | V. | | Final Approval Hearing and Briefing Schedule | 37 |
| **CONCLUSION** | | | | **38** |

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT & MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Amchem Prods., Inc. v. Windsor*,

5
   521 U.S. 591 (1997)......................................................................................... 34, 37

6

*B.K. by next Friend Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ................................................................................ 35

7

*Bayat v. Bank of the West*,

8
   2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...................................................... 24

9

*Bellinghausen v. Tractor Supply Co.*,

10
   306 F.R.D. 245 (N.D. Cal. 2015)......................................................................... 25

11

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .............................................................................. 26

12

*Churchill Vill., L.L.C. v. Gen Elec.*,

13
   361 F.3d 566 (9th Cir. 2004) ........................................................... 19, 20, 22, 26

14

*Class Plaintiffs v. City of Seattle*,

15
   955 F. 2d 1268 (9th Cir. 1992) ............................................................................ 18

16

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................................ 20

17

*Custom LED, LLC v. eBay, Inc.*,

18
   2014 WL 2916871 (N.D. Cal. June 24, 2014) ..................................................... 24

19

*Hanlon v. Chrysler Corp.*,

20
   150 F.3d 1011 (9th Cir. 1998) ....................................................................... 19, 35

21

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ............................................................................... 35

22

*Harris v. Vector Mktg. Corp.*,

23
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ..................................................... 29

24

*Hesse v. Sprint Corp.*,

25
   598 F.3d 581 (9th Cir. 2010) ............................................................................... 31

26

*Hubbard v. RCM Techs. (USA), Inc.*,
   2020 WL 6149694 (N.D. Cal. Oct. 20, 2020)...................................................... 34

27

28

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................................... 19, 20, 29

*In re Facebook Biometric Information Privacy Litig.*,
  522 F.Supp.3d 617 (N.D. Cal. 2021) ...................................................................................... 17

*In re Facebook Internet Tracking Litig.*,
  2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ...................................................................... 17

*In re Google Location History Litig.*,
  2024 WL 1975462 (N.D. Cal. May 3, 2024) .......................................................................... 26

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ........................................................................ 25

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .................................................................................................. 18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................................. 24

*In re TracFone Unlimited Service Plan Litig.*,
  112 F. Supp. 3d 993 (N.D. Cal. 2015) ................................................................................... 26

*In re Uber FCRA Litig.*,
  2017 WL 2806698 (N.D. Cal. June 29, 2017) ........................................................................ 24

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................................ 18

*In re: Volkswagen "Clean Diesel" Mktg. Sales Practices and Prods. Liab. Litig.*,
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) ................................................................................. 33

*Johnson v. Moss Bros. Auto Grp., Inc.*,
  2021 WL 4556052 (C.D. Cal. June 25, 2021) ........................................................................ 24

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................................ 24

*Nen Thio v. Genji*,
  14 F. Supp. 3d 1324 (N.D. Cal. 2014) ............................................................................. 27, 30

*Noroma v. Home Point Fin. Corp.*,
  2019 WL 1589980 (N.D. Cal., Apr. 12, 2019) ...................................................................... 27

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................................... 26

*In re Plaid Inc. Privacy Litig.*,
    340 F.R.D. 356 (N.D. Cal.) ................................................................................. 32

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) (citations omitted), *abrogated on other grounds by Diaz v.*
    *Garland*, 53 F.4th 1189 (2022) ........................................................................ 35

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................ 18

*Saucillo v. Peck*,
    2022 WL 414692 (9th Cir. Feb. 11, 2022) ...................................................... 18

*Schofield v. Delta Air Lines, Inc.*,
    2019 WL 955288 (N.D. Cal. Feb. 27, 2019) ................................................... 24

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................. 18, 19, 35

*Torrist v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .............................................................................. 19

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..................................................................................... 36

*Vataj v. Johnson*,
    2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................... 34

*Wolin v. Jaguar Land Rover N. Am.*, LLC,
    617 F.3d 1168 (9th Cir. 2010) ........................................................................ 35

**Statutes**

28 U.S.C. § 1715(b) ................................................................................................. 33
Cal. Civ. Code § 3336 ............................................................................................. 21

**Rules**

Federal Rule of Civil Procedure 23 ............................................................... *passim*
Federal Rule of Civil Procedure 48 ........................................................................ 22

**Regulations**

Treasury Regulation § 1.468B-1 ............................................................................. 14

# GLOSSARY OF TERMS

| Term | Definition |
|------|------------|
| Settlement | The resolution of this litigation in accordance with the terms of the Settlement Agreement between Plaintiffs and Google dated December 23, 2025 (hereinafter "Settlement Agreement"). Ex. 10.[1] |
| Settlement Class | All natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order and Judgment, excluding persons who are class members in *Csupo et al. v. Google LLC*, Santa Clara Superior Court Case No. 19CV252557. The Settlement Class excludes: (a) Defendant, and its officers, directors, management, employees, subsidiaries, and affiliates; (b) any judges or justices involved in this action and any members of their immediate families or their staff; and (c) any persons who timely opt out of the Settlement Class. |
| Settlement Class Period | The period from November 12, 2017 to the date of the Final Order and Judgment. |
| Named Plaintiffs / Settlement Class Representatives | Joseph Taylor, Mick Cleary, and Jennifer Nelson. |
| Settlement Class Counsel | Glen E. Summers of Bartlit Beck LLP and Marc A. Wallenstein of Korein Tillery LLC. |
| Settlement Fund | $135 million non-reversionary fund paid by Google from which attorneys' fees, costs, incentive awards, costs of administering the Settlement, and individual settlement payments are to be paid. |

---

[1] Unless otherwise specified, "Ex. _" refers to exhibits attached to the concurrently filed January 27, 2026 Declaration of Glen E. Summers in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT & MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Court should preliminarily approve the proposed Settlement.

2.  Whether the Court should certify the Settlement Class.

3.  Whether Named Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson should be appointed Settlement Class Representatives.

4.  Whether Glen E. Summers of Bartlit Beck LLP and Marc A. Wallenstein of Korein Tillery LLC should be appointed Settlement Class Counsel.

5.  Whether Angeion Group LLC should be appointed Settlement Administrator.

6.  Whether the Court should approve the proposed form and manner of notice.

7.  The setting of an appropriate briefing schedule and date for a hearing on final approval of the proposed Settlement.

## INTRODUCTION

Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson, on behalf of themselves and the proposed Settlement Class, bring this motion for preliminary approval of a proposed Settlement with Defendant Google LLC ("Google"). The Settlement, if approved, would resolve claims of a proposed Settlement Class (defined more fully above) consisting of users of Android mobile devices in the United States, but outside the State of California, from November 12, 2017 to the date of the Final Judgment, related to allegations that Google used Settlement Class members' cellular data to transfer a variety of information to Google, without users' permission.

Under the proposed Settlement, Settlement Class members will receive both monetary payments and significant injunctive relief. The proposed Settlement establishes a $135 million non-reversionary fund from which Settlement Class members will receive distributions. All Settlement Class members will be eligible for a *pro rata* payment from the settlement fund, to be deposited electronically by PayPal, Venmo, Zelle, or other electronic means into Settlement Class members' accounts.

In addition, the Settlement includes an injunction requiring Google to disclose the conduct at issue in this litigation to Android users and to obtain express consent in the setup flow for

Android mobile devices. As discussed more fully below, the injunctive relief includes (1) changes to the Google Play Terms of Service (the "Play Terms"), (2) changes to the appropriate Google webpage describing the relevant Android functions, (3) changes to the screens on which all users must click "accept" when setting up a new Android mobile device (known as the "setup flow"), and (4) deactivation of a setting that Plaintiffs contend has, until now, purported to allow users to turn off the transfers at issue, but that has generally not done so.

The proposed Settlement is the result of over five years of contentious, hard-fought litigation. That litigation included significant motion practice at the pleading stage; an appeal to the United States Court of Appeals for the Ninth Circuit addressing pivotal legal issues at the heart of the asserted claims; extensive fact and expert discovery; and full briefing and argument of class certification and *Daubert* motions.

The proposed Settlement is also the product of arms-length negotiations, spanning over a year, between experienced counsel for the parties, with the assistance of two of the nation's most accomplished mediators, Kenneth R. Feinberg and Camille S. Biros.

The proposed Settlement is fair, reasonable and adequate in light of the significant risks of continued litigation and uncertainty as to whether continued litigation would lead to any relief at all. The proposed Settlement will ensure that Google will disclose the conduct at issue in this litigation to Android users and obtain their express consent going forward, and also requires Google to pay significant monetary compensation which will provide Settlement Class members compensation and also deter similar conduct in the future.

Plaintiffs therefore respectfully request that the Court enter an order: (1) granting preliminary approval of the Settlement; (2) certifying the proposed Settlement Class; (3) appointing Joseph Taylor, Mick Cleary, and Jennifer Nelson as Class Representatives; (4) appointing Glen E. Summers of Bartlit Beck LLP and Marc A. Wallenstein of Korein Tillery LLC as Settlement Class Counsel; (5) appointing Angeion Group LLC as Settlement Administrator; (6) approving the form and manner of notice; and (7) setting a hearing date and briefing schedule for final approval of the proposed Settlement.

**BACKGROUND**

## I.    History of the Litigation

### A.    Complaint, Dismissal, and Appeal

Plaintiffs filed their initial Complaint on November 12, 2020. ECF 1. Plaintiffs' Complaint alleged that "[w]hile Plaintiffs' Android devices are in their purses and pockets, and even while sitting seemingly idle on Plaintiffs' nightstands as they sleep, Google's Android operating system secretly appropriates cellular data paid for by Plaintiffs . . . ." *Id.* ¶ 3. The Complaint was brought on behalf of a putative class defined as: "All natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data plans provided by mobile carriers." *Id.* ¶ 54.

On February 1, 2021, Google moved to dismiss Plaintiffs' Complaint. ECF 33. Following amendment of the complaint and additional briefing and argument, the Court granted Google's motion on September 30, 2022. ECF 74. Plaintiffs appealed, and the Ninth Circuit ultimately reversed the dismissal of Plaintiffs' conversion claim, holding that "[t]he conversion claim was pleaded properly and should not have been dismissed." Memorandum Disposition at 4-5, *Taylor v. Google, LLC*, No. 22-16654 (9th Cir. Feb. 28, 2024), ECF 38-1.

### B.    Fact and Expert Discovery

Plaintiffs took extensive discovery of the facts underlying Plaintiffs' claims, and both fact and expert discovery have been completed. Wallenstein Decl. ¶ 6. By virtue of that discovery, Plaintiffs obtained tens of thousands of pages of internal Google documents, analyzed billions of pages of data logs from Android users, and performed (through experts) nearly 50 days of in-person review of Google's proprietary source code at defense counsel's offices. *Id.* ¶ 7. The parties took and defended more than 40 depositions, including depositions of 17 Google employees and a dozen experts. *Id.* ¶ 8. The parties also exchanged voluminous expert reports and took depositions from multiple experts in computer science, the telecommunication industry, and economics. *Id.* ¶ 9. This evidence was developed independently by Plaintiffs, without relying on any prior government investigation or private litigation. *Id.* ¶ 10. Having undertaken such extensive fact and

1    expert discovery, the parties' counsel have obtained a complete picture of the strengths and

2    weaknesses of the case. *Id.* ¶ 11.

3    ### C.    Class Certification and *Daubert* Briefing

4    On March 11, 2025, Plaintiffs moved for class certification under Rules 23(b)(2) and (3).

5    ECF 181. Google opposed class certification, arguing in part that Plaintiffs cannot prove consent,

6    substantial interference, or damages on a classwide basis. ECF 191. Google also filed *Daubert*

7    motions to exclude Plaintiffs' experts. In those motions, Google argued, among other things, that

8    the industry average price of cellular data that Plaintiffs used to calculate damages did not reliably

9    measure classwide damages.[2] ECF 171. This Court held a hearing on Plaintiffs' class certification

10    motion and Google's *Daubert* motions on August 19, 2025. *See* Ex. 13, Aug. 19, 2025 Hr'g Tr.

11    (ECF 228). During that hearing, the Court questioned Plaintiffs' damages theories. For example,

12    the Court stated: "the thing that I found most compelling about Google's argument on the *Daubert*

13    damages is that the Plaintiffs' experts don't seem to be valuing the it that you have described to

14    me as the converted data." *Id.* 52:18-21. The Court further stated that Google's "marginal data

15    theory really resonated with me, that you should be trying to value the value of that marginal data

16    and not all the other stuff that might go into the plan." *Id.* 52:24-53:2. The Court further remarked

17    that "your expert seems to be valuing something other than what is converted." *Id.* 58:24-59:2.

18    The Court then went on to observe that it "could imagine there is a scenario where the fair market

19    value of data like this is like negligible, like really negligible." *Id.* 102:11-18.

20    Plaintiffs moved to stay the case on August 29, 2025 pending Google's appeal of the jury

21    verdict in the related matter of *Csupo v. Google*, No. 19CV352557, Santa Clara County Superior

22    Court ("*Csupo*"). ECF 234. The Court denied that motion on November 24, 2025. ECF 251. The

23    class certification and *Daubert* motions discussed above were fully briefed and pending decision

24    by the Court when the parties agreed to the proposed Settlement.

25    _____

26    [2] In its *Daubert* motions, Google also argued that: (1) Plaintiffs' principal computer science expert, Mr. Christopher Thompson, was unqualified and his opinions were unreliable and inadmissible; (2) Dr. Stec failed to follow Mr. Thompson's instructions regarding the amount of cellular data

27    allegedly converted when calculating damages; and (3) Dr. Christopher Jules White (another of Plaintiffs' computer science experts) offered inadmissible opinions. ECF 172.

28

## II.        The Settlement Negotiations

The proposed Settlement is the product of more than a year of serious, informed, arms-length negotiations between the parties. The parties began formal settlement discussions following the close of fact discovery, after the parties had thoroughly investigated the facts underlying Plaintiffs' claims. Summers Decl. ¶ 12. On November 13 and 14, 2024, the parties engaged in two days of in-person mediation with the assistance of renowned mediators Kenneth R. Feinberg and Camille S. Biros. *Id.*[3] Following the jury verdict in *Csupo* and briefing of the parties' respective post-trial motions in that case, the parties resumed their settlement negotiations with the assistance of the same mediators. *Id.* In addition to various mediation discussions conducted by videoconference and telephone, the parties participated in two days of in-person mediation with Mr. Feinberg and Ms. Biros on October 6 and 7, 2025. *Id.*

In early November 2025, Plaintiffs engaged Grame W. Bush of Zuckerman Spaeder to serve as Special Settlement Counsel exclusively for the putative class in this case. *Id.* ¶ 13. At the same time, the plaintiffs in *Csupo* also engaged Phillip C. Korologos of Boies Schiller Flexner LLP to serve as Special Settlement Counsel for the certified class in *Csupo*. *Id.* Mr. Bush and Mr. Korologos each conducted their own independent evaluation of the merits of the cases, including the potential recoveries and risks to those potential recoveries, and ultimately provided direction to proposed Settlement Class Counsel as to the appropriate settlement terms for their respective cases. *Id.*

After weeks of further negotiations, on November 26, 2025, the parties executed a term sheet outlining the principal terms of the proposed Settlement (and a similar term sheet regarding the proposed settlement in *Csupo*). *Id.* at 14. On December 23, 2025, after additional negotiations, the parties executed a definitive long-form Settlement Agreement documenting the proposed

---

[3] Mr. Feinberg has been called "America's go-to mediator in times of crisis" for "help[ing] mediate and resolve seemingly intractable crises." David Lat, *Resolving The Unresolvable: Kenneth Feinberg*, *available at* https://davidlat.substack.com/p/mediator-kenneth-feinberg-special-master-ken-feinberg-podcast-interview. Mr. Feinberg is "most well-known for how he and his colleague Camille Biros designed and administered the September 11th Victim Compensation Fund." *Id.*

Settlement (and a similar definitive settlement agreement in Csupo). *Id.* at 14; Ex. 10 ("Settlement Agreement"); Ex. 12 ("*Csupo* Settlement Agreement").

## III.    The Settlement Terms

### A.    Monetary Relief

Under the Settlement Agreement, Google will pay a total of $135 million into a non-reversionary Settlement Fund. Ex. 10, Settlement Agreement § 3.1. These monies will be deposited into an interest-bearing qualified settlement trust within the meaning of Treasury Regulation § 1.468B-1, to be administered by J.P. Morgan as escrow agent, no later than 45 days after entry of the preliminary approval order by this Court. *Id.* §§ 3.1 and 3.5. The Net Settlement Proceeds, after payment of any attorney's fees, costs, incentive awards and administrative costs approved by the Court, will be distributed *pro rata* to members of the Settlement Class, after final approval of the Settlement and the expiration of all contingencies.[4] *Id.* §§ 3.8-3.9, 3.12.

Individual settlement payments will be made to Settlement Class members via an electronic payment method, which may include Zelle, PayPal, Venmo, ACH transfer, or a Virtual Mastercard. *Id.* § 3.13. Using email addresses provided by Google,[5] the Settlement Administrator will email members of the Settlement Class requesting that they use an online form to select their preferred method of payment and relevant account information. *Id.* The Settlement Administrator will also attempt to automatically pay Settlement Class members who do not respond by pushing payments to Settlement Class members' PayPal, Venmo, or Zelle accounts, based on their email addresses and other information provided by Google. *Id.*

### B.    Injunctive Relief

The Settlement Agreement includes substantial, multi-faceted injunctive relief that requires Google to disclose the conduct at issue to Android users and to require users to expressly consent

---

[4] Individual settlement payments are capped at $100 per Settlement Class member, but Settlement Class Counsel does not expect the cap to be reached.

[5] Google will provide Angeion with data concerning Settlement Class Members (specifically, names, emails, and phone numbers, to the extent reasonably available) that will assist with the notice and payment process. However, the parties recognize that Google cannot warrant that this data is accurate or that it will result in payment to the intended Settlement Class Member in every instance.

1   to it when they set up new Android phones. *Id.* § 5. Google will update the Google Play Terms of

2   Service and the "Learn about Google Play services" Help Center page to include clear disclosures

3   of the challenged transfers at issue in this case, as well as the fact that they may consume Android

4   users' cellular data. *Id.* § 5.1. Sections 1 and 2 of Exhibit A to the Settlement Agreement set forth

5   in tracked changes the precise language Google will be required to change in these documents.

6        For example, Google will be required to change the Google Play Terms of Service to

7   disclose that its system services "often require network connectivity and may use your cellular

8   data" and that these network communications "may happen in the background, when you are not

9   directly interacting with your device, including when the device's screen is locked." Ex. 10,

10  Settlement Agreement at 34. In addition, Google will be required to change the "Learn about

11  Google Play services" Help Center page to explain that Google Play Services "causes Android

12  devices to exchange information with Google over cellular networks if the device is not connected

13  to Wi-Fi, meaning Google Play services may use your mobile data" and that these transfers "cannot

14  be turned off." *Id.* at 47.

15       Google will also be required to revise the screens shown to users when setting up a new

16  Android device (known as the "setup flow"). Google will add a new section entitled "Use of

17  cellular data," which will contain the following disclosure:

> By tapping "Accept" at the bottom of this screen and continuing, you agree that
> software and apps on your device may automatically communicate with Google
> servers for a range of purposes, including using your cellular data when you are not
> connected to Wi-Fi – learn more. These purposes include, but are not limited to,
> safely rolling out new features, fixing problems on your device, maintaining and
> monitoring your device's health, developing new products, protecting the Android
> ecosystem, supporting advertising, and automatically downloading and configuring
> software, possibly using cellular data. Some of these communications may happen
> in the background, when you are not directly interacting with your device, including
> when the device's screen is locked. You can control some of the communications
> through user settings, including the settings on this screen, but some of the
> communications cannot be turned off. You are responsible for any fees incurred
> from third parties (such as your mobile carrier) in connection with these cellular
> communications.

*Id.* at 52.

26       Finally, the Settlement Agreement requires Google to take the steps technically feasible to

27  deactivate the Google Play services "allow background data usage" toggle. *Id.* § 5.1. Plaintiffs

understand that, until now, this toggle has purported to give users the ability to turn off Google Play Service's use of mobile data in the background, but generally has not disabled the transfers at issue in this case. By graying out this toggle and not allowing it to be moved by users into the "off" position, this Settlement will require Google to avoid creating the false impression that the relevant transfers can be turned off with the toggle. These changes will remain in effect for at least two years, subject to reasonable modifications if changes in Google's practices or technologies render the agreed-upon language no longer accurate. *Id.* § 5.2.

### C.    Scope of Release

Consistent with Ninth Circuit law, the scope of the release provided in the Settlement Agreement is limited to:

> [A]ny and all claims, liabilities, rights, demands, arbitrations, suits, actions, causes of action, obligations, damages, penalties costs, attorneys' fees, losses, and remedies of every kind or description against [Google]—whether known or unknown, existing or potential or that hereafter may exist or might have existed, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that were asserted in the Action, could have been asserted in the Action, and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s), to the maximum extent allowed by law, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law.

Ex. 10, Settlement Agreement §§ 1.33 and 13. The release expressly excludes claims "already specifically alleged in any operative complaint in a pending action that was served on Google as of November 26, 2025," other than this case. *Id.*

### D.    Plan of Allocation

The net settlement proceeds will be distributed to Settlement Class members on a *pro rata* basis, after payment of any attorneys' fees, litigation costs and expenses, service awards, and administrative costs allowed by the Court. Ex. 10, Settlement Agreement §§ 3.8, 3.12. Settlement Class members will be provided the option to select one of several electronic payment methods, such as Zelle, PayPal, Venmo, ACH transfer, and Virtual Mastercard. *Id.* § 3.13. The Settlement Administrator will also attempt to automatically pay Settlement Class members who do not elect a payment method, or for whom payment fails, by pushing payments to Settlement Class members' existing PayPal, Venmo, or Zelle accounts, based on their email addresses and other information

provided by Google. *Id.* The Settlement Administrator will send payments in the most cost-effective manner possible.[6] Any residual amount after initial distribution, less costs to perform a residual distribution, will be distributed on a *pro rata* basis to Settlement Class members whose initial payments were successfully delivered, if it is economically feasible to do so. *Id.* §§ 3.14, 3.9. Any funds remaining after that will be donated to a Court-approved *cy pres* recipient or recipients. *Id.*

### E.    Notice of Settlement

The Settlement Administrator will implement a comprehensive notice plan. Ex. 10, Settlement Agreement § 7. Under the Settlement Agreement, Google will be required to provide the Settlement Administrator with the email addresses associated with Settlement Class members' Android accounts. *Id.* § 7.3. Using those email addresses, the Settlement Administrator will attempt to email all Settlement Class members. *Id.* Based on email notices used in the *Csupo* matter, the Settlement Administrator expects to receive valid email addresses for approximately 77.4% percent of the Settlement Class members. Jan. 27, 2026 Weisbrot Decl. ¶ 23. In addition, the Settlement Administrator will employ an on-line advertising campaign and dedicated website to reach members who do not receive notice by email. *See id.* ¶¶ 26-36.

### F.    Opt-Out Right

Settlement Class members may request exclusion up until the objection and exclusion deadline in the manner set forth in Section 8 of the Settlement Agreement, which is consistent with the Northern District's Procedural Guidance for Class Action Settlement (the "N.D. Cal. Guidance"), and settlement agreements previously approved by this Court. *See* N.D. Cal. Guidance, Preliminary Approval § 4; *In re Facebook Biometric Information Privacy Litig.*, 522 F.Supp.3d 617, 629 (N.D. Cal. 2021); *In re Facebook Internet Tracking Litig.*, No. 5:12-MD-02314-EJD, 2022 WL 16902426 at *3 (N.D. Cal. Nov. 10, 2022).

---

[6] The various methods of electronic transfer entail varying third-party transaction fees, which Angeion has diligently negotiated down with the relevant banking service providers. Angeion will seek to use the lower costs methods to transfer funds to the extent possible for users who have not selected a preferred method. Wallenstein Decl. ¶ 15.

1

### G.     Objections

2      Settlement Class Members may file written objections to the Settlement Agreement, on

3 their own or through counsel, pursuant to Section 9 of the Settlement Agreement. *See also* N.D.

4 Cal. Guidance, Preliminary Approval § 5.

5

### LEGAL STANDARD

6      Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action

7 settlement. While there is a strong judicial policy favoring the settlement of class actions, *Class*

8 *Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992), no broad presumption of fairness

9 automatically attaches to such settlements, *see Saucillo v. Peck*, No. 20-55119, No. 20-55159,

10 2022 WL 414692, at *7-10 (9th Cir. Feb. 11, 2022); *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035,

11 1049 (9th Cir. 2019). In particular, when the parties reach a settlement before the Court has ruled

12 on class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and

13 "peruse the proposed compromise to ratify both the propriety of the certification and the fairness

14 of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

15      Preliminary approval of a class settlement involves two steps. First, the court must

16 determine whether it is likely to certify the proposed settlement class pursuant to Fed. R. Civ. P.

17 23(e)(1)(B)(ii), consistent with the requirements set forth in Fed. R. Civ. P. 23(a) and (b). *Staton*,

18 327 F.3d at 952. However, the requirements of Rule 23 are "applied differently in litigation classes

19 and settlement classes,"—the court does not need to be concerned with manageability at trial for

20 purposes of assessing certification of a settlement class because "by definition, there will be no

21 trial" and settlement may "obviate[] the need to litigate individualized issues." *In re Hyundai &*

22 *Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-58 (9th Cir. 2019). Second, the Court must assess whether

23 it is likely to approve the proposed settlement pursuant to Fed. R. Civ. P. 23(e)(1)(B)(i) and

24 23(e)(2). *Staton*, 327 F.3d at 952; *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.RD. 607, 610

25 (S.D. Cal. 2008). These rules in turn require the Court to assess whether the settlement is "fair,

26 reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making that determination, the Court cannot

27 "delete, modify or substitute certain provisions"; instead "[t]he settlement must stand or fall in its

28

1    entirety.'" *Staton*, 327 F.3d at 969 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

2    Cir. 1998)). The Court must also consider whether "the class representatives and class counsel

3    have adequately represented the class," whether "the proposal was negotiated at arm's length,"

4    whether "the relief provided for the class is adequate," and whether "the proposal treats class

5    members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).

## ARGUMENT

**I.    The Court Should Grant Preliminary Approval Because the Settlement is Fair, Reasonable, and Adequate**

The Settlement is fair, reasonable, and adequate, because it provides class members with certain and significant injunctive relief and monetary compensation, in the face of substantial risk that they will receive no recovery if the litigation continues.

The Ninth Circuit has identified the following factors that a court may consider in evaluating the fairness of a proposed settlement: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrist v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).[7]

When "a settlement agreement is negotiated prior to formal class certification," it is subject to "scrutiny for evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Signs of collusion include: (1) class counsel's receipt of a disproportionate distribution of the settlement, (2) a "clear sailing" provision that provides "payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for

---

[7] Rule 23(e)(2) also sets forth a similar list of factors "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve."

counsel accepting an unfair settlement on behalf of the class," and (3) arrangements where settlement funds may revert to the defendants. *Id.* at 947.

The requirements of Rule 23(e) and relevant *Churchill* factors favor approval of the proposed Settlement as "fair, reasonable, and adequate" here. Moreover, as discussed below, there are no indicia of collusion or conflicts of interest. The proposed Settlement should be granted preliminary approval.

### A.     The Strength of the Case and Risks of Litigation

The Settlement fairly accounts for the substantial risks of continued litigation in this case. The first three *Churchill* factors require a court to consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; [and] (3) the risk of maintaining a class action status throughout the trial." *Churchill*, 361 F.3d at 575. Similarly, Fed. R. Civ. P. 23(e)(2)(C)(i) requires the court to consider "the costs, risks, and delay of trial and appeal."

Plaintiffs face significant risks, costs, and delays from continued litigation of this case. As an initial matter, Plaintiffs face substantial risk that a damages class would not be certified. Google zealously opposed class certification and presented several non-trivial arguments in its opposition papers. Among other arguments, Google insists that Plaintiffs' proposed method for proving damages on a classwide basis, which is based on the industry average price of cellular data, is improper given the wide variety of cellular data plans. ECF 194-1 at 22-24 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). This argument exposed Plaintiffs to significant risk that the court would not certify a damages class at all, which would prevent Plaintiffs from obtaining any monetary recovery. That risk was highlighted to the parties when the Court stated that *Comcast* requires the damages model to measure only those damages attributable to Plaintiffs' theory of liability. Ex. 13, Tr. 42:14-43:1 ("I have *Comcast* in mind—there needs to be a model that . . . measures only those damages that are attributable . . . to the Plaintiffs' theory of liability. . . . The model has to measure the right thing.").

Plaintiffs also face substantial risk that their damages methodology would be excluded on *Daubert* grounds. Consistent with its arguments opposing class certification, Google filed a

1   *Daubert* motion arguing that Plaintiffs' reliance on the industry average price of cellular data in

2   calculating damages improperly obscures "immense variation in what consumers actually pay

3   under their particular data plans." ECF 171 at 10. Google further argued that Plaintiffs' damages

4   methodology improperly failed to limit the damages to the value of "the incremental or marginal

5   amount of cellular data consumed by the Challenged Transfers." *Id.* at 10-14. At the August 19,

6   2025 argument on the class certification and *Daubert* motions, the Court described this argument

7   as "compelling," said that it "really resonated" with the Court, and observed that under such an

8   approach the damages could be "negligible." Ex. 13, Tr. 67:18-21, 52:18-53:2, 102:11-18.

9        Plaintiffs' damages theory also faces other risks. California's conversion statute states that

10   the "detriment" from conversion "is presumed to be: First—The value of the property at the time

11   of the conversion . . . or, an amount sufficient to indemnify the party injured for the loss . . . .".

12   Cal. Civ. Code § 3336. Plaintiffs' damages theory is based on the first part of this paragraph, the

13   "value of the property at the time of the conversion." Google argued that damages should be based

14   on the second part of this paragraph—the amount of the actual economic loss or consequential

15   damages to Android users, which is arguably zero. *See* ECF 171 at 10-11. At the hearing, the Court

16   stated that "I think Google's right that in—under the case law and in appropriate circumstances,

17   that—I'm going to call it second part of the way to value conversion damages could be available."

18   Ex. 13, Tr. 68:1-4. Under this "indemnification point of view," the Court explained that "you can't

19   actually put a fair market value on this sort of incremental marginal data . . . It has no value really

20   . . . ." *Id.* 120:22-121:5.

21        The Court's questions and comments do not necessarily predict the outcome of the pending

22   class certification and *Daubert* motions, of course. They do, however, underscore the considerable

23   risks of continued litigation.

24        Even if the Court certified a damages class and denied Google's *Daubert* motions,

25   Plaintiffs faced substantial further risks on summary judgment and at trial not only with respect to

26   their damages claims but also with respect to essential elements of their liability case. Google

27   maintains that it did not substantially interfere with Plaintiffs' use of their cellular data plans, or

28

harm any user, because it consumed only small amounts of cellular data. Wallenstein Decl. ¶ 11. In addition, Google asserts a variety of consent defenses, express and implied. *Id.* Some of these arguments are arguably amenable to summary judgment. *See, e.g.*, Ex. 13, Tr. 40:10-40:21 ("But it does seem to me that the—if the question of consent depends on particular materials being shown to people or not, the problem would be if I were to find as a matter of law maybe on summary judgment some day that a particular disclosure was consent."). If the Settlement is not approved, Plaintiffs will face these issues and more at summary judgment, in trial, and on appeal.

Trial would have brought additional risks. Google argues that the transfers at issue are industry standard, and that they are not harmful and actually benefit users. It also argues that they must use cellular networks when Wi-Fi is unavailable for security and other reasons. While the *Csupo* plaintiffs prevailed at trial and secured a 9-3 jury verdict in state court in their favor, there is a real risk that Plaintiffs would not obtain the same outcome in this case, because different federal procedural and evidentiary rules would apply, including stricter rules regarding expert testimony, and the requirement of Federal Rule of Civil Procedure 48 that any jury verdict be unanimous.

Google has tenacious counsel and vast resources. It has vigorously contested liability, damages and class certification, and would continue to do so through trial and appeal, which would require years of additional litigation. The proposed Settlement secures monetary relief and significant injunctive relief, which is preferable to the costs, delays, and risk inherent with proceeding further in the uncertain hope of a larger monetary recovery.

## B.    The Amount and Benefits Offered in Settlement

The fourth *Churchill* factor is "(4) the amount offered in settlement." *Churchill*, 361 F.3d at 575; *see also* Fed. R. Civ. P. 23(e)(2)(C). Here, the Settlement Fund is $135 million, and is completely non-reversionary. This is a very significant recovery in aggregate terms. Plaintiffs believe $135 million to be the largest class action settlement ever of a conversion claim in federal court.

The Court should of course consider the amount of the proposed Settlement not only in aggregate terms, but also in relation to the potential recovery in litigation. In his most recent expert

report, Plaintiffs' damages expert calculated Google's total potential damages through December 31, 2023, using the industry average price of cellular data, to be $1,047,474,258 (or $9.98 per person based on an estimated class of 105 million people).[8] ECF No. 179-3, Summary of Plaintiffs' Damages prepared by expert Jeffery A. Stec, Ph.D, dated January 31, 2025.[9] Using this damages claim as the measure of Google's potential exposure, the $135 million settlement fund represents 12.9% of Google's potential exposure.[10]

Google's damages expert estimates that limiting damages to the marginal value of the cellular data used by Google would reduce Plaintiffs' damages by an amount between 71% and 93%. *See* ECF 173-28, January 15, 2025 Ghose Rpt. ¶¶ 147, 153-154. Applying this one adjustment alone would reduce Plaintiffs' damages from $1.05 billion to between $73,323,198 and $303,767,534.[11] *Id.* ¶¶ 157-165, Exh. E-1. Under the marginal value approach, the $135 million

---

[8] Dr. Stec's damages report also presents larger potential damages figures based on other approaches to determining the price of cellular data. Those approaches were rejected by the jury in *Csupo*, and Google sought their exclusion in its pending *Daubert* motion. *See* ECF 214-4 (Jury Verdict, *Csupo v. Google LLC*, No. 19CV352557 (Santa Clara Cty. Ct. July 1, 2025)); ECF 171 (Google LLC's Motion to Exclude Expert Opinions Re Damages), at 2-3 (summarizing argument). In addition, Dr. Stec also calculates damages for time periods that go back before the applicable statute of limitations. However, Plaintiffs previously withdrew any claim for damages prior to the class period, which begins in November 2017, as such damages would have required proof of fraudulent concealment and presented other insurmountable evidentiary challenges. As discussed at the August 17, 2025 hearing, if litigation continues, Plaintiffs intend to seek damages based on the industry average price of cellular data (subject of course to the Court's ruling on Google's pending *Daubert* motions). *See* Ex. 13, Tr. 129:16-130:6.

[9] Plaintiffs calculate this figure using Dr. Stec's January 20, 2025 Updated Calculation Table 1 per sampled/active device for the class period ($1,067,000,925), subtracting the value of CheckIn transfers ($19,526,667), which Plaintiffs are no longer pursuing.

[10] Assuming Plaintiffs are permitted to update their expert reports to add damages for the period from January 1, 2024 through December 31, 2025—and that the Court denies Google's *Daubert* motion with respect to the industry average pricing methodology—Plaintiffs anticipate that they could potentially seek damages of approximately $2 billion (or about $19.05 per class member). Using $2 billion as the measure of Google's potential exposure, the $135 million settlement fund represents 6.8% of Google's maximum potential exposure.

[11] Google also disputes the amount of cellular data used in Plaintiffs' damages calculations. *See* ECF 172 at 8-14 (detailing alleged overstatements in Mr. Thompson's calculation of the cellular data converted). Those arguments, if accepted by the Court or jury, would further reduce Plaintiffs' damages claim.

Settlement Fund represents a recovery of 44.4% to 184.1% of Google's maximum potential exposure.

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (cleaned up). Indeed, settlements involving far less substantial recoveries in relation to the amount claimed are frequently approved. *See, e.g.*, *Custom LED, LLC v. eBay, Inc.*, No. 12–cv–00350, 2014 WL 2916871 at *14 (N.D. Cal. June 24, 2014) (approving $4,750,000 settlement representing 1.8% to 16% of potential damages and explaining that "courts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement"); *Johnson v. Moss Bros. Auto Grp., Inc.*, 2021 WL 4556052, at *8-9 (C.D. Cal. June 25, 2021) (approving $2.5 million class settlement representing 9.2% of single damages exposure and around 3% of treble damages exposure); *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288, at *5-6 (N.D. Cal. Feb. 27, 2019) (approving class settlement of $2.3 million representing 5.2% of total potential recovery); *In re Uber FCRA Litig.*, 2017 WL 2806698, *7 (N.D. Cal. June 29, 2017) (preliminary approval), *final approval at* 2018 WL 2047362 (N.D. Cal. May 2, 2018) (approving $7.5 million class settlement representing 1% to 7.5% of the total possible exposure); *Bayat v. Bank of the West*, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (approving class settlement of $2.485 million plus injunctive relief, where money damages were 0.57% of the theoretical $435 million statutory damages–a "good result for the class members" in view of the litigation risks); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a 9% recovery); *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (approving class settlement of $10 million, or 2% of the potential damages, and citing study showing "this percentage is consistent with the typical recovery in securities class action settlements"); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *8-9 (C.D. Cal. June 10, 2005) (citing study showing that median amount recovered in shareholder class action lawsuits was 2-3% from 2002 to 2006).

1    Here, the non-reversionary $135 million Settlement Fund represents a very large monetary

2    recovery in aggregate terms, and a significant percentage of the potential recovery. The recovery

3    rate is warranted in view of the significant liability and damages issues that remain to be litigated,

4    which could result in Plaintiffs receiving no recovery at all, and compares favorably to other

5    settlements that have been approved under similar circumstances. *See, e.g.*, Jan. 27, 2026

6    Wallenstein Decl. at Ex. 2, chart of comparable outcomes.

7    Importantly, the proposed Settlement would not merely recover monetary damages. The

8    proposed Settlement also secures important injunctive relief that must be factored into an

9    assessment of the fairness of the proposed Settlement. *Bellinghausen v. Tractor Supply Co.*, 306

10    F.R.D. 245, 256 (N.D. Cal. 2015).

11    The injunctive relief that Plaintiffs obtained via the proposed Settlement requires Google

12    to clearly disclose the conduct at issue in this case, and the fact that it consumes cellular data.

13    Google will be required to add new language that describes how the transfers at issue occur "in

14    the background, when you are not directly interacting with your device." Settlement Agreement at

15    34, 47, 50. Google will clearly disclose that the transfers at issue "may use your cellular data," *id.*

16    at 34, particularly when "the device is not connected to Wi-Fi," *id.* at 47. Google will also disclose

17    that some of the transfers "cannot be turned off." *Id.* at 47, 50. The injunctive relief will also require

18    Google to obtain Android users' affirmative consent before using their cellular data, by adding a

19    new section to the "setup flow," with an "accept" button, that is displayed to all Android users

20    who set up a new device. In addition, the proposed Settlement will require Google to take steps to

21    deactivate the "allow background data usage" toggle, to ensure that it is no longer misleading.

22    The injunctive relief is perhaps even more important than monetary consideration in this

23    case, because it ensures that Android users are informed of Google's practices so they can make

24    informed decisions whether to continue using Android mobile devices. That is a resounding

25    victory for transparency and has meaningful value to members of the Settlement Class. *See*

26    *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (finding that injunctive relief

27    requiring similar disclosure for only one year "had value" because "it provides information to users

28

about Facebook's message monitoring practices"); *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) (finding that injunctive relief requiring changes to terms and conditions had "significant value for both class members and the general public"); *In re Google Location History Litig.*, No. 5:18-cv-05062, 2024 WL 1975462 at *6 (N.D. Cal. May 3, 2024) (holding that injunctive relief that requiring notification of information collected by Google through certain settings "provide[] meaningful benefits to the Settlement Class").

It is of course hard to place a monetary value on the transparency provided to Android users. Having said that, Plaintiffs' economist has calculated that the injunctive relief provided by the Settlement Agreement will avoid the prospective conversion of approximately $300 million worth of cellular data per year using the industry average price. *See* Jan. 27, 2026 Stec Decl. ¶ 10. This data point suggests that the injunctive relief provided by the Settlement Agreement has at least $600 million in economic value given the minimum 2-year term of the injunctive relief.

## C.    The Stage of Proceedings, Arm's Length Negotiations, and Views of Counsel

The fifth and sixth *Churchill* factors requires a court to assess the "(5) the extent of discovery completed and the stage of the proceedings" and "(6) the experience and views of counsel" before approving a class action settlement. *Churchill*, 361 F.3d at 575. In the context of class action settlements, the Court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted). Fed. R. Civ. P. 23(e)(2)(B) also requires the Court to inquire into whether the settlement "proposal was negotiated at arm's length."

The parties here reached the proposed Settlement after a hard-fought appeal to the Ninth Circuit regarding critical legal issues, after completing fact and expert discovery, and after briefing and arguing class certification and *Daubert* motions. The parties also had the benefit of the month-long trial and jury verdict in the *Csupo* case as well as post-trial motions in that case, which involved generally the same evidence and merits issues presented in this case, to inform their settlement decision. Given the advanced stage of this litigation and the parties' fulsome understanding of the relevant facts and evidence, the parties were in an excellent position to assess the potential benefits and risks of continued litigation.

The Settlement Agreement is the result of multiple, arms-length mediation sessions over a period spanning more than a year with the assistance of highly experienced mediators. Summers Decl. ¶¶ 12-15. In addition, prior to entering into the proposed Settlement, Plaintiffs had the benefit of Special Settlement Counsel focused exclusively on protecting the interests of the proposed Settlement Class in this case. *Id.* ¶ 13. Plaintiffs' lead counsel and Special Settlement Counsel have all reached the professional opinion that the proposed Settlement is fair, reasonable, adequate and in the best interests of the proposed class. *Id.* ¶ 16; Wallenstein Decl. ¶ 4; Bush Decl. ¶ 6.

These circumstances weigh strongly in favor of granting preliminary settlement approval. *See Noroma v. Home Point Fin. Corp.*, No. 17-cv-07205-HSG, 2019 WL 1589980, at *7 (N.D. Cal., Apr. 12, 2019) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); *Nen Thio v. Genji*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (concluding that a settlement appeared to be the product of serious, informed and non-collusive negotiations where the settlement was reached after a thorough investigation of the facts and settlement negotiations occurred with the assistance of a mediator).

### D. Adequacy of Notice and Plan for Distribution

For settlement classes, Fed. R. Civ. P. 23(e)(1)(B) requires that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Likewise, Fed. R. Civ. P. 23(c)(2)(B) requires that a Court direct to class members the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The proposed notice plan satisfies these requirements. *See* Weisbrot Decl. at Ex. F, Notice Plan and Plan of Allocation.

The proposed Settlement requires Google to provide the Settlement Administrator with the email addresses of Settlement Class members. Settlement Agreement § 7.3. Based on prior experience with such emails from the *Csupo* case, the Settlement Administrator anticipates that it will obtain valid email addresses for approximately 77.4% of the Settlement Class members. Weisbrot Decl. ¶ 23. Using these email addresses, the Settlement Administrator will attempt to send emails to each member of the Settlement Class. *Id.* ¶¶ 16-25. In addition, the Settlement Administrator will conduct a state-of-the-art digital media campaign to alert Settlement Class

1   members to the Settlement, which will direct them to a dedicated website and toll-free telephone

2   line for more information about the Settlement and their options.[12] *Id.* ¶¶ 26-36, 39-42.

3           Under the proposed plan of distribution, Settlement Class members will be afforded an

4   opportunity to select the manner in which they prefer to receive their settlement payment, but will

5   not be required to submit a claim form. The available payment options will include Zelle,

6   PayPal/Venmo, ACH transfer, or Virtual Mastercard. Settlement Agreement § 3.13. For

7   Settlement Class members who do not make an election (or in the event the selected payment

8   method fails), the Settlement Administrator will attempt to send payments automatically through

9   Zelle, PayPal, and/or Venmo using information provided by Google, without requiring the

10  submission of a claim form. *Id.* Any residual funds after initial distribution shall be distributed *pro*

11  *rata* to Settlement Class members whose initial payments were successfully delivered, via the

12  same payment method as the successful first distribution. *Id.* § 3.14. Should any funds remain after

13  a second distribution, or should a second distribution not be feasible, the remaining funds shall be

14  issued to a Court-approved *cy pres* recipient or recipients. *Id.*

15          **E.    Proposed Attorneys' Fee Award**

16          In evaluating the adequacy of a proposed class settlement, courts also consider the

17  attorneys' fees that may be requested. Consistent with the N.D. Cal. Guidance, Plaintiffs will file

18  a request for reasonable attorneys' fees and reimbursement of litigation costs and expenses in

19  connection with their motion for final approval of the Settlement. The requested fees will not

20  exceed 29.5% of the Settlement Fund ($39,825,000), and Plaintiffs currently expect to seek

21  reimbursement of approximately $750,000 in costs and expenses.

22

23

24

---

25  [12] The settlement website will provide background information about the litigation, and important

26  dates and deadlines pertinent to the Settlement. Copies of the Long Form Notice will be available for download. Settlement Agreement at § 7.5. The website will also have a "Contact Us" page

27  where Settlement Class members can send an email with any additional questions to a dedicated email address. *Id.* The website will also include a link to the optional payment form, which can be

28  completed and submitted online. *Id.*

### F.    Equitable Treatment and Service Awards

Fed. R. Civ. P. 23(e)(2)(D) requires that a court considering a class settlement inquire into whether "the proposal treats class members equitably relative to each other." The proposed Settlement calls for Settlement Class members to receive *pro rata* allocations from the Settlement Fund. Settlement Agreement § 3.12. Such a distribution does not grant preferential treatment to any Settlement Class members.

The proposed Settlement also contemplates that Plaintiffs may request service awards for each of the three Named Plaintiffs. Any such service awards, however, would be subject to the Court's approval. Other than any service awards approved by the Court, no Named Plaintiff will derive any benefit from the Settlement beyond their *pro rata* individual settlement payment. Any such service awards approved by the Court "do not render [the] settlement unfair or unreasonable." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011).

### G.    Adequacy of Representation and Absence of Collusion

The Named Plaintiffs and Settlement Class Counsel are qualified to serve as class representatives and class counsel, respectively. They have zealously prosecuted this case for more than five years at great effort and expense, and have achieved significant success to date, including the proposed Settlement.

There are no indicia of collusion that would call into question the proposed Settlement. *In re Bluetooth*, 654 F.3d at 947 (describing circumstances suggesting collusion). The proposed Settlement does not include a so-called "clear sailing" provision that allows the early payment of Plaintiffs' attorneys' fees; it does not set the amount of attorneys' fees to be paid to Plaintiffs' counsel; and it is not contingent on any award of attorneys' fees to Plaintiffs' counsel. In addition, the Settlement Fund is non-reversionary and therefore cannot revert to Google. Ex. 10, Settlement Agreement § 3.11. Moreover, the proposed Settlement was reached only after multiple arms-length mediations assisted by Kenneth Feinberg and Camille Biros, further suggesting an absence of collusion. *Nen Thio*, 14 F. Supp. 3d at 1334 (concluding that settlement appeared to be the product of a serious, informed, and non-collusive negotiations when it was reached after a thorough investigation of the facts and settlement negotiations were assisted by a mediator). As a further

1   safeguard, as discussed above, the Zuckerman Spaeder and Boies Schiller firms were engaged to

2   separately represent the proposed Settlement Class in this case and the class in *Csupo*, respectively.

3   *See* Summers Decl. ¶ 13; Jan. 26, 2026 Bush Decl. ¶ 3.

4   **II.     The Court Should Also Grant Preliminary Approval Based on the Northern District's Procedural Guidance for Class Action Settlements**

5       The N.D. Cal. Guidance instructs parties to address certain additional factors in any motion

6   for preliminary approval of a class settlement. While many of these factors have already been

7   addressed above, additional factors from the Guidance are addressed below.

8       **A.     The Settlement Class is Substantially Identical to the Complaint's Class**

9       The N.D. Cal. Guidance requires a motion for preliminary approval to address "any

10  differences between the settlement class and the class proposed in the operative complaint and

11  [provide] an explanation as to why the differences are appropriate." N.D. Cal. Guidance § 1.1.

12      Here, the Settlement Class is substantially identical to the class definition in the First

13  Amended Complaint. The First Amended Complaint sought to certify a class defined as "All

14  natural persons in the United States (excluding citizens of the State of California) who have used

15  mobile devices running the Android operating system to access the internet through cellular data

16  networks operated by mobile carriers." (ECF 60 ¶ 60.) The only difference in the Settlement Class

17  definition is that it replaces "excluding citizens of the State of California," with "excluding persons

18  who are class members in *Csupo et al. v. Google LLC*, Santa Clara Superior Court Case No.

19  19CV352557 ("*Csupo*")." Settlement Agreement § 1.5. The certified class in *Csupo* consists of

20  California Android users, so the two class definitions are substantially identical.[13]

21      **B.     The Scope of the Release Is Properly Limited**

22      The Guidance requires identification of "any differences between the claims to be released

23  and the claims in the operative complaint and an explanation as to why the differences are

24  appropriate in the instant case." N.D. Cal. Guidance § 1.2. The release in the proposed Settlement

25  _____

26  [13] The certified class in *Csupo* is defined as "All natural persons who, while residing in the State of California, have used a mobile phone running a Google-licensed version of the Android operating system with a cellular data plan from August 9, 2016 to" the date of the Final Order and Judgment, excluding any persons who timely opted out of the class in advance of the trial in this Action. *See* Ex. 12, *Csupo* Settlement Agreement § 1.5.

1    is limited to claims that "were asserted in the Action, could have been asserted in the Action, and/or

2    that reasonably relate to or arise from the same predicate facts alleged" in the First Amended

3    Complaint. Settlement Agreement § 1.33. This is an appropriate release, as the Ninth Circuit has

4    recognized that a release may properly extend to "claims not alleged in the underlying complaint

5    where those claims depended on the same set of facts as the claims that gave rise to the settlement."

6    *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Moreover, out of an abundance of

7    caution, the release expressly excludes "claims already specifically alleged in any operative

8    complaint in a pending action that was served on Google as of November 26, 2025." Ex. 10,

9    Settlement Agreement § 1.33.

10    **C.      Other Cases That Will Be Affected by the Settlement**

11    The Guidance requires disclosure of any other cases that will be affected by the proposed

12    Settlement. N.D. Cal. Guidance § 1.4. The only other case that might be affected by the proposed

13    Settlement is *Csupo v. Google*, Case No. 19CV352557, pending in Santa Clara County Superior

14    Court. As the Court is aware, the *Csupo* case involves the same claims asserted in this case but

15    involves a class limited to California Android phone users. As previously discussed with the Court,

16    the parties in *Csupo* have also entered into an agreement to settle the *Csupo* case. In the event

17    either settlement is not approved, or material modifications are required as a condition of approval,

18    the parties in each settlement would have the right to terminate. This approval cross-contingency

19    was required by Google to obtain a complete resolution of the issues presented in the two cases

20    and to ensure uniformity of the resulting injunctive relief, which as a practical matter must be

21    implemented identically on a nationwide basis.

22    Proposed Settlement Class Counsel in this case were previously appointed as Class

23    Counsel in the *Csupo* matter, and negotiated both settlements with Google. As discussed above,

24    Grame W. Bush of Zuckerman Spaeder also served as Special Settlement Counsel to represent

25    exclusively the interests of the proposed Settlement Class in this class.

26    **D.      The Settlement Administrator Was Selected in a Competitive Bidding Process**

27    The Guidance requires the solicitation of multiple, competing bids for potential settlement

28    administrators, and for information to be provided to the court about the settlement administrator.

1    N.D. Cal. Guidance § 2. Class Counsel solicited bids from eight reputable firms, ultimately

2    received three competing bids, and chose Angeion Group LLC, the low bidder.

3          Angeion's estimated administrative costs of $9.3 million are considerably lower than the

4    other two firms, by 60-70%. Wallenstein Decl. ¶ 14. Angeion's estimated costs are reasonable and

5    represent only 6.8% of the settlement fund. *Id.* ¶ 14. Importantly, the administrative costs consist

6    largely of the transaction fees charged by electronic payment processors for individual settlement

7    payments, which are far lower than the costs of issuing hard copy checks disseminated by mail.

8    *Id.* ¶ 15. In fact, Angeion was able to negotiate the lowest per-transaction fees that Class Counsel

9    is aware of, in any prior case. *Id.* ¶ 15. The anticipated administrative costs are consistent with

10   those approved in similar cases. *See, e.g.*, *In re Plaid Inc. Privacy Litig.*, 340 F.R.D. 356 (N.D.

11   Cal.) (approving $58 million settlement for 98 million class members where estimated

12   administrative costs of $3.9 million amounted to 6.72% of the common fund).

13         **E.      Expected Payment Rate**

14         The N.D. Cal. Guidance requires an estimate of the expected claim rate. *See* N.D. Cal.

15   Guidance § 1(6). The Settlement Administrator estimates that 55-80% of class members will

16   receive payment in this case. *See* Weisbrot Decl. ¶ 67. First, the Settlement Administrator will

17   attempt to send an email to each Settlement Class member, which will link to an online Payment

18   Form that allows them the option to select their preferred payment method. Settlement Agreement

19   §§ 1.28, 3.13, 4.3. The Settlement Administrator estimates that approximately 1-5% of class

20   members will affirmatively elect a payment option using this Payment Form and receive payment.

21   *Id.* For Settlement Class members who do not make an election (or in the event the selected

22   payment method fails), the Settlement Administrator will attempt to send payments automatically

23   through Zelle, PayPal, and/or Venmo using information provided by Google. *Id.* The Settlement

24   Administrator estimates that an additional 50-75% of class members will receive automatic

25   payments in this fashion. *Id.* In total, the payment rate is estimated to be 55-80%, a very high rate

26   that compares favorably to comparable cases. *See* Wallenstein Decl. at Ex. 2, chart of comparable

27   outcomes.

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT & MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

### F.    Class Action Fairness Act Notice Will be Provided

The Guidance requires the parties to address whether notice under the Class Action Fairness Act (CAFA) is required and, if so, when it will be given. N.D. Cal. Guidance § 10. CAFA requires that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each state in which a class member resides and the appropriate Federal official, a notice of the proposed settlement." 28 U.S.C. § 1715(b).

In compliance with this requirement, the settlement administrator will mail notice of the proposed Settlement and Release to the U.S. Attorney General, the State Attorneys General in all states other than California, the Attorney General of the District of Columbia, and the Attorneys General of all five major U.S. territories, within ten days of the filing of this proposed Settlement. Weisbrot Decl. ¶ 47; *see* 28 U.S.C. § 1715(b); *In re: Volkswagen "Clean Diesel" Mktg. Sales Practices and Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017).

### G.    Comparable Outcomes

The N.D. Cal. Guidance instructs Settlement Class Counsel to provide certain "information about comparable cases, including settlements and litigation outcomes" for "as many as feasible (and at least one) comparable class settlements (i.e. settlements involving the same or similar claims, parties, issues)" in "easy-to-read charts that allow for quick comparison with other cases." N.D. Cal. Guidance § 11. Exhibit 2 to the Wallenstein Declaration provides a table summarizing ten such comparable cases, many of which have been discussed elsewhere in this motion.

## III.    The Court Should Certify the Proposed Settlement Class

A party seeking class certification must demonstrate that the requirements of Rule 23(a) are satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Those requirements are numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Plaintiffs must also satisfy one of the bases for certification under Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Because Plaintiffs in this case seek certification of a damages class under Rule 23(b)(3), they must show that "questions of law or fact common to [Settlement] Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

1   controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs incorporate by reference the more fulsome

2   analysis of each of these requirements from their class certification brief, ECF 175-6 at 3-25, and

3   discuss only the central issues here.

### A.    Numerosity

5       To satisfy the numerosity requirement, the class must be "so numerous that joinder of all

6   members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is generally

7   satisfied if the class contains at least 40 members. *See Hubbard v. RCM Techs. (USA), Inc.*, No.

8   19-cv-6363, 2020 WL 6149694, at *1 (N.D. Cal. Oct. 20, 2020). Here, the numerosity requirement

9   is met because more than 100 million Americans used Android smartphones with cellular data

10  plans during the Class Period. *See* ECF 176-1 at Ex. A, Expert Report of Dr. Roger Entner at Fig.

11  13; ECF 176-1 at Ex. B, Supplemental Expert Report of Dr. Roger Entner at Fig. 18-A.

### B.    Commonality

13      To satisfy the commonality requirement, there must be questions of law or fact common to

14  the class. Fed. R. Civ. P. 23(a)(2). "Even a single [common] question will do," and any question

15  is common if it "is capable of classwide resolution" *Dukes*, 564 U.S. at 350, 359. This case presents

16  numerous common questions. *See* ECF 175-6 at 10-16 (class certification motion discussing

17  commonality). For example, the question whether Google consumes Plaintiffs' cellular data in a

18  manner inconsistent with Plaintiffs' rights is common and will be resolved on the basis of

19  classwide evidence because the transfers at issue are all caused by the same software (GMS Core

20  a/k/a "Google Play Services"), which is installed on substantially all Android phones sold in the

21  United States. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citations omitted),

22  *abrogated on other grounds by Diaz v. Garland*, 53 F.4th 1189 (2022). Because there is both a

23  "common core of facts," and all Settlement Class members "share at least one question of fact or

24  law," the "commonality requirement is met." *Rodriguez*, 591 F.3d at 1122.

### C.    Typicality

26      To satisfy the typicality requirement, it must be demonstrated that "the claims or defenses

27  of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P.

28  23(a)(3). Typicality requires that the Named Plaintiffs' claims be "reasonably coextensive with

those of absent [Settlement] class members; they need not be substantially identical." *B.K. by next Friend Tinsley v. Snyder*, 922 F.3d 957, 969-70 (9th Cir. 2019); *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, the typicality requirement is met because the Named Plaintiffs, like every other Settlement Class Member, used Android phones running GMS Core, and make the identical claim for conversion. *See e.g.*, *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."). The Named Plaintiffs' claims are coextensive with those of the Settlement Class, and thus typical of the claims of the Settlement Class.

### D.    Adequacy

To satisfy the adequacy requirement, it must be shown that "the representative parties will fairly and adequately protect the interests of the class." Specifically, Rule 23(a)(4) tests (1) whether the Named Plaintiffs have interests that are antagonistic to or in conflict with the interests of the class, and (2) whether the Named Plaintiffs are represented by counsel of sufficient diligence and competence to fully litigate the case. *Hanlon*, 150 F.3d at 1020; *Staton*, 327 F.3d at 957. Both requirements are met here.

The Named Plaintiffs have precisely the same interests in this litigation as other Settlement Class members. They have no identifiable conflicts of interest with the Settlement Class. They suffered the same alleged injury as all Settlement Class members and seek to establish liability and damages under the same theory on behalf of themselves and the Settlement Class, on equal footing.

As for Settlement Class Counsel, they and their firms have extensive experience in class action and complex litigation, including in the Ninth Circuit and Northern District of California. Wallenstein Decl. ¶¶ 21-22; Summers Decl. ¶¶ 3-11. Settlement Class Counsel have leveraged that experience to efficiently and zealously advance the Settlement Class's interests in this matter in motions practice and hearings before this Court, a successful appeal to the Ninth Circuit, extensive fact and expert discovery, and multiple mediation sessions with Kenneth Feinberg and Camille

1    Biros, which ultimately allowed the parties to reach the proposed Settlement. Wallenstein Decl.

2    ¶¶ 6-11; Summers Decl. ¶¶ 12-15.

3        **E.    Predominance**

4        The predominance requirement of Rule 23(b)(3) is met when "questions of law or fact

5    common to class members predominate over any questions affecting only individual members."

6    Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

7    representation," and "asks whether the common, aggregation-enabling[] issues in the case are more

8    prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson*

9    *Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (cleaned up). The predominance

10    requirement is satisfied here. Common, classwide issues include, among others: whether cellular

11    data is personal property susceptible to conversion; whether Google used Plaintiffs' property in a

12    manner inconsistent with Plaintiffs' property interests; whether Plaintiffs consented to the

13    Challenged Transfers; and what the fair market value of the converted cellular data is. *See* ECF

14    175-6 at 20-25 (class certification motion discussing predominance of common questions).

15        **F.    Superiority**

16        To satisfy the superiority requirement of Rule 23(b)(3), class treatment must be "superior

17    to other available methods for fairly and efficiently adjudicating the controversy," considering: (1)

18    "the class members' interests in individually controlling the prosecution or defense of separate

19    actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by

20    or against class members;" (3) "the desirability or undesirability of concentrating the litigation of

21    the claims in the particular forum;" and (4) "the likely difficulties in managing a class action."

22    Superiority is met where class treatment will "achieve economies of time, effort, and expense, and

23    promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural

24    fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615.

25        Here, the record demonstrates that individual damages are far too small to warrant the

26    prosecution of individual actions against Google. *See* Part I.B & n.6, *supra* (calculating potential

27    damages of $15.72 per class member). Accordingly, certification of a Rule 23(b)(3) Settlement

28    Class pursuant to Rule 23(e)(1)(B)(ii) is proper.

**IV.    Settlement Class Representatives and Settlement Class Counsel Should Be Appointed**

Because the Named Plaintiffs meet the Rule 23 requirements, the Court should appoint Joseph Taylor, Mick Cleary, and Jennifer Nelson as Settlement Class Representatives.

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Under Rule 23(g)(1)(A), in appointing class counsel, a court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." As discussed in the supporting declarations of Glen E. Summers Marc A. Wallenstein, Settlement Class Counsel have zealously investigated and litigated this action for over past years, and have brought considerable knowledge, experience and resources to bear for the benefit of the proposed Settlement Class. Wallenstein Decl. ¶¶ 6-11, 19-20; Summers Decl. ¶¶ 3-11. The Court should appoint Mr. Summers and Mr. Wallenstein as Settlement Class Counsel.

**V.    Final Approval Hearing and Briefing Schedule**

If the Court grants preliminary approval, Plaintiffs respectfully request that the Court set the following schedule for further settlement approval proceedings:

| Event | Deadline |
|---|---|
| Objection & Opt-Out Deadline | 84 days after issuance of preliminary approval (19 days for Google to provide email addresses and for Angeion to begin class notice; +30 days to complete class notice; +35 days for class members to object or opt out) |
| Motion for Attorney's Fees, Costs, and Service Awards | 35 days before the Objection & Opt-Out Deadline |
| Motion for Final Approval | 14 days after the Objection & Opt-Out Deadline |
| Final Approval Hearing | First week of June 2026 |

**CONCLUSION**

For the foregoing reasons, the Court should enter an order granting preliminary approval of the proposed Settlement, certifying the proposed Settlement Class, appointing the Named Plaintiffs as Class Representatives, appointing Settlement Class Counsel, appointing Angeion as the Settlement Administrator, approving the proposed form and manner of notice, and setting a date and briefing schedule for the final approval hearing.

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT & MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

1    Dated:  January 28, 2026                    Respectfully submitted,

2

3                                               BARTLIT BECK LLP

4                                               */s/ Glen E. Summers*
                                                Glen E. Summers (176402)
5                                               Karma M. Giulianelli (184175)
                                                Lindley J. Brenza (*pro hac vice*)
6                                               Jonathan Jacob Marsh (*pro hac vice*)
                                                BARTLIT BECK LLP
7                                               1801 Wewatta Street, Suite 1200
                                                Denver, CO 80202
8                                               Telephone: (303) 592-3100

9                                               Marc A. Wallenstein (*pro hac vice*)
10                                              George A. Zelcs (*pro hac vice*)
                                                Ryan Z. Cortazar (*pro hac vice*)
11                                              Chad E. Bell (*pro hac vice*)
                                                Pamela I. Yaacoub (*pro hac vice*)
12                                              KOREIN TILLERY LLC
                                                205 North Michigan Avenue, Suite 1950
13                                              Chicago, IL 60601
                                                Telephone: (312) 641-9750
14                                              Facsimile: (312) 641-9751

15                                              Carol L. O'Keefe (*pro hac vice*)
16                                              Michael E. Klenov (277028)
                                                KOREIN TILLERY LLC
17                                              505 North Seventh Street, Suite 3600
                                                St. Louis, MO 63101
18                                              Telephone: (314) 241-4844
                                                Facsimile: (314) 241-3525
19

20                                              Elizabeth M. Pipkin (243611)
                                                Ann M. Ravel (62139)
21                                              McMANIS FAULKNER
                                                50 West San Fernando Street, 10th Floor
22                                              San Jose, CA 95113
                                                Telephone: (408) 279-8700
23                                              Facsimile: (408) 279-3244

24                                              *Attorneys for Plaintiffs*
25                                              *Joseph Taylor, Mick Cleary, and*
                                                *Jennifer Nelson*

26

27

28
                                        39