# Exhibit 12

## SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement") is made by and among (1) Plaintiffs Attila Csupo, Andrew Burke, and Kerry Hecht (the "Class Representatives"), on behalf of themselves and the Class as defined below (collectively the "Plaintiffs"), (2) Class Counsel, as defined below, to the extent the provisions of this Agreement impose obligations on them, and (3) Google LLC, a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California ("Google" or "Defendant"). Plaintiffs and Google (the "Parties") intend this Agreement to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), subject to the terms and conditions of this Agreement, and subject to approval of the Court.

WHEREAS, in August 2019, Plaintiffs filed a putative class action against Defendant in Santa Clara County Superior Court, captioned *Csupo, et al. v. Google LLC*, Case No. 19CV352557, alleging violations of state law (the "Action");

WHEREAS, between August 2019 and the present, the Parties extensively litigated the case, which led to certification of a class and completion of a jury trial;

WHEREAS, on July 1, 2025, a jury rendered a verdict in favor of Plaintiffs and the class on their conversion claim and awarded them $314,626,932 in damages;

WHEREAS, following the jury's verdict, Plaintiffs filed several motions, which Google opposed, seeking to increase the Plaintiffs' recovery on behalf of the class, including motions seeking post-verdict damages, pre-judgment interest, and post-judgment interest, as well as injunctive relief;

WHEREAS, following the jury's verdict, Google filed motions for judgment notwithstanding the verdict and for new trial, which were denied, and announced its intention to take an appeal to the California Court of Appeal and perhaps also to seek review by the California Supreme Court;

WHEREAS, on November 13, 2024 and October 6 and 7, 2025, the Parties engaged in arms-length mediation sessions in person with mediators Kenneth R. Feinberg and Camille Biros;

WHEREAS, in the weeks and months that followed, the Parties continued their arms-length negotiations, including through the mediators, and reached an agreement in principle to settle the Action;

WHEREAS, Defendant has denied and continues to deny each allegation and all charges of wrongdoing or liability of any kind whatsoever asserted or that could have been

1

asserted in the Action; and

WHEREAS, while Plaintiffs believe their claim is meritorious and while Defendant vigorously disputes the claim, without in any way agreeing as to any fault or liability, the Parties have agreed to enter into this Settlement Agreement as an appropriate compromise of all claims, to put to rest all controversy, and to avoid the uncertainty, risk, expense, and burden of protracted and costly litigation that would be involved in continuing to litigate the Action, including through appeal;

NOW, THEREFORE, it is hereby agreed by the Parties that, in consideration of the undertakings, promises, releases, and payments set forth in this Agreement, and upon the entry by the Court of a Final Order and Judgment approving and directing the implementation of the terms and conditions of this Agreement, the Action shall be settled, compromised, and dismissed with prejudice, without costs to Plaintiffs, Class Members, or Defendant except as provided herein, upon the terms and conditions set forth below.

## 1.    DEFINITIONS

Whenever the following capitalized terms are used in this Agreement and in the attached exhibits (in addition to any definitions elsewhere in this Agreement) they shall have the following meanings:

**1.1**    "Action" means the case entitled *Csupo, et al. v. Google LLC*, Case No. 19CV35255, pending in Santa Clara County Superior Court.

**1.2**    "Affiliates," with respect to a Party, shall mean (i) all entities now or in the future controlling, controlled by or under common control with that party; (ii) all entities in the past controlling, controlled by or under common control with that party, for the period of time that such control exists or existed; and (iii) predecessors, successors or successors in interest thereof, including all entities formed or acquired by that party in the future that come to be controlled by that party. For purposes of this definition, "control" means possession directly or indirectly of the power to direct or cause the direction of management or policies of a company or entity through the ownership of voting securities, contract, or otherwise, and "entities" includes all Persons, companies, partnerships, corporations, associations, organizations, and other entities.

**1.3**    "Agreement," "Settlement," or "Settlement Agreement" means the settlement embodied in this Settlement Agreement and Release, including all exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference).

**1.4**    "Approval Hearing" means the hearing before the Court where (i) the Parties request that the Court approve this Agreement as fair, reasonable, and adequate; and (ii) the

2

Parties request that the Court enter a Final Order and Judgment in accordance with this Agreement.

**1.5**    "Class" means the existing certified class in this case, defined by the Court as: "All natural persons who, while residing in the State of California, have used a mobile phone running a Google-licensed version of the Android operating system with a cellular data plan from August 9, 2016 to" the date of the Final Order and Judgment, excluding any persons who timely opted out of the class in advance of the trial in this Action.

**1.6**    "Class Counsel" means Bartlit Beck LLP and Korein Tillery LLC.

**1.7**    "Class Member'' means any Person who qualifies under the definition of "Class," excluding: (i) Defendant, its subsidiaries and affiliates, officers, and directors; (ii) the judges to whom this case is or has been assigned and any member of the judges' immediate family; and (iii) Class Counsel.

**1.8**    "Class Action Complaint" means the Complaint filed by Plaintiffs on August 9, 2019 in the Action and all amended complaints filed thereafter.

**1.9**    "Court" means Santa Clara County Superior Court, the Hon. Charles F. Adams presiding, any judge who preceded him as the judge in this Action, or any judge who succeeds him as the judge in this Action.

**1.10**    "Day" or "days" refers to calendar days. Should a deadline fall on a California state court holiday or weekend day, the deadline shall shift to the next court day.

**1.11**    "Defendant's Counsel" means the law firm of Cooley LLP.

**1.12**    "Electronic Payment" means payment via an electronic payment processor or network, such as Venmo, PayPal, or Zelle.

**1.13**    The "Escrow Agent" will be jointly selected by the Parties at a later date.

**1.14**    "Escrow Release Date" means the first day after all of the conditions specified in Paragraph 14.1 have been met, all deadlines to terminate the Settlement Agreement have lapsed, and no termination has occurred.

**1.15**    "Fee Award" means any attorneys' fees, reimbursement of expenses, and other costs awarded by the Court to Class Counsel from the Settlement Fund.

**1.16**    "Final Order and Judgment" is the final judgment and order to be entered by the Court following the Approval Hearing, approving the Settlement set forth in this Agreement under Rule 3.769(h) of the California Rules of Court.

3

**1.17** "Google" means Google LLC and its Affiliates, agents, assigns, attorneys, directors, divisions, employees, officers, members, or other representatives.

**1.18** "Net Settlement Proceeds" means the Settlement Fund, reduced by the sum of the following amounts: Notice and Administrative Costs, Fee Award, Service Awards, and any other administrative fees and expenses in connection with this Agreement.

**1.19** "Notice" means the notice of this proposed Settlement disseminated to the Class as contemplated in the Notice Plan approved by the Court.

**1.20** "Notice and Administrative Costs" means all costs and expenses incurred in the dissemination of Notice and any subsequent communications with the Class; the operation of the Settlement Website; the administrative processing, handling, and review of Payment Forms and payment of Settlement Payments and other distributions of the Settlement Fund; and all other expenses reasonably necessary for effective Notice and administration of the Settlement pursuant to any orders approving the Notice Plan and Agreement, and any other Court orders.

**1.21** "Notice Date" means the date on which Notice shall be initiated, which will occur no later than seven (7) days after the latter of (i) court approval of the Initial Notice and (ii) the full execution of the Settlement Agreement.

**1.22** "Notice Plan" means the process by which Notice will be disseminated to the Class, as approved by the Court.

**1.23** "Objection" means the written notice that a Class Member may submit to the Court in order to object to the Settlement, as set forth in Section 7.

**1.24** "Objection Deadline" means the date by which a Class Member must submit any Objections to this Agreement, as set forth in Section 7. The Objection Deadline will be no earlier than (14) days prior to the Approval Hearing and will be set so that Class Members shall have at least thirty-five (35) days in which to submit an Objection from the date when Notice is completed.

**1.25** "Party" means any one of the Plaintiffs or Defendant, and "Parties" means Plaintiffs and Defendant.

**1.26** "Payment Election Email" means an email which will notify Class Members of the Final Order and Judgment and provide access to the Payment Form.

**1.27** "Payment Election Email Date" means the date by which transmission of the Payment Election Email shall be initiated, which will be no later than fifteen (15) days after the Escrow Release Date.

**1.28** "Payment Form" means the document Class Members may submit to designate a method to receive a Settlement Payment pursuant to this Agreement.

**1.29** "Payment Form Deadline" means the date by which Class Members must submit any Payment Forms for the Payment Forms to be timely.

**1.30** "Person" means an individual or legal entity, including an association or his, her, or its respective successors or assigns.

**1.31** "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Proceeds to Class Members.

**1.32** "Released Claims" means any and all claims, liabilities, rights, demands, arbitrations, suits, actions, causes of action, obligations, damages, penalties, costs, attorneys' fees, losses, and remedies of every kind or description against the Releasees—whether known or unknown, existing or potential or that hereafter may exist or might have existed, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that were asserted in the Action, could have been asserted in the Action, and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s), to the maximum extent allowed by law, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law. For the avoidance of doubt, the Released Claims include all claims reasonably related to any alleged use or consumption of cellular data by Defendant "in the background" or when a user is not directly engaging with their Android mobile device(s) or apps, products, or software thereon, and/or in connection with "passive" transfers of any kind between Android mobile devices and Defendant and/or its servers. Released Claims do not include any claims relating to the enforcement of the Settlement. Released Claims also do not include any claims already specifically alleged in any operative complaint in a pending action that was served on Google as of November 26, 2025, other than this Action.

**1.33** "Releasees" means Defendant, its Affiliates, and Defendant's and its Affiliates' officers, directors, employees, members, agents, attorneys, insurers, reinsurers, trustees, shareholders, investors, divisions, predecessors, successors, assigns, transferees, and all other individuals and entities acting on Defendant's behalf in connection with the Released Claims.

**1.34** "Releasing Party" means Plaintiffs and all Class Members and each of their respective trustees, beneficiaries, assigns, heirs, estates, and all other individuals or entities acting or claiming to act on a Releasing Party's behalf.

**1.35** "Residual Settlement Payment" means the amount, if any, to be paid to the Residual Cy Pres Recipient after all distributions to Class Members.

**1.36** "Residual Cy Pres Recipient" means the entity, to be approved by the Court, that will receive the Residual Settlement Payment, if any. The Parties will jointly propose a cy pres recipient for approval by the Court at a later date if a Residual Settlement Payment is to be made.

**1.37** "Service Award" means any amount awarded by the Court to the Class Representatives for their time and effort serving as Class Representatives.

**1.38** "Settlement Administrator" means the third-party class action settlement administrator to be recommended by Class Counsel and approved by the Court, whose responsibilities will include overseeing and implementing the Notice Plan and managing expenditures from the Settlement Fund until all financial obligations under this Agreement have been satisfied and no funds remain in the Settlement Fund. Subject to the Court's approval, Class Counsel intends to request the appointment of Angeion Group as Settlement Administrator.

**1.39** "Settlement Fund" means the total sum that Defendant will pay in connection with this Agreement, which will be deposited into an account as described in Paragraph 3.1.

**1.40** "Settlement Payment" means the amount of money an individual Class Member will be paid out of the Net Settlement Proceeds.

**1.41** "Settlement Website" means the third-party website created and maintained by the Settlement Administrator to make available to Class Members, as described in Paragraph 6.5. Class Counsel shall determine the content of the Settlement Website, and Google shall have the right to approve such content before it is posted, which approval shall not be unreasonably withheld or delayed.

**1.42** "*Taylor*" means the case captioned *Taylor et al. v. Google LLC* ("*Taylor*"), Case No. 5:20-cv-07956-VDK (N.D. Cal.).

**1.43** "Taylor Settlement Agreement" means the settlement agreement the plaintiffs in *Taylor*, on the one hand, and Defendant, on the other, contemplate entering to resolve *Taylor*.

## 2.    SETTLEMENT PURPOSES ONLY

**2.1** This Agreement is for settlement purposes only, and, to the fullest extent permitted by law, neither the fact, content, or negotiation of this Agreement nor any action based on it shall constitute, be construed as, or be admissible in evidence (whether in any court or other forum) as an admission of the validity of any claim or fact alleged or asserted by Plaintiffs in the Action or in any other action, or of any wrongdoing, fault, violation of law, or liability of any Party, except to the extent necessary to effectuate and enforce the

6

Agreement. Likewise, neither the fact, content, or negotiation of this Agreement nor any action based on it shall constitute, be construed as, or be admissible in evidence (whether in any court or other forum) as an admission by any of the Parties of the validity or lack thereof of any claim, allegation, or defense asserted in this Action, or in any other action, except to the extent necessary to effectuate and enforce the Agreement. Defendant expressly denies any liability or wrongdoing whatsoever.

**2.2** Defendant acknowledges that the Court has certified a class in this matter. If for any reason this Agreement is not approved or is otherwise terminated, Defendant reserves the right to assert any and all objections and defenses to, and arguments on appeal against, certification of the class, and neither this Agreement nor any order or other action relating to this Agreement shall be offered for a purpose other than settlement pursuant to this Agreement.

## 3.    SETTLEMENT BENEFITS

**3.1    Settlement Fund.** Defendant shall deposit in an interest-bearing escrow account or, at the election of Class Counsel, a Qualified Settlement Trust ("QSF"), designated and controlled by the Escrow Agent, the total sum of three hundred-fifty million dollars ($350,000,000) as the Settlement Fund. The Settlement Fund is an "all-in" payment and will represent the full payment to be made by, and total financial commitment of, Defendant under this Agreement, from which all obligations with respect to costs related to this Agreement will be paid, including Settlement Payments, Notice and Administrative Costs, Service Awards, any Fee Award, and any other administrative fees and expenses in connection with this Agreement, including any applicable taxes. Defendant shall deposit the total sum no later than thirty (30) days after the Final Order and Judgment. The Escrow Agent shall provide wiring instructions and an executed IRS Form W-9, along with any other necessary forms, to Defendant within three (3) days of the Final Order and Judgment. If this Agreement is terminated for any reason provided herein, the Escrow Agent shall return all funds to Defendant within ten (10) days of the termination date; provided, however, that the Escrow Agent need not return any funds already spent by the Settlement Administrator on Notice and on commercially reasonable Settlement Administrator expenses before the termination date. Other than the Settlement Fund, Defendant shall have no financial obligations to Plaintiffs, the Class, or the Settlement Administrator under this Agreement.

**3.2    No Liability.** Defendant, Defendant's Counsel, and Releasees shall have no liability, obligation, or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund and shall have no liability, obligation, or responsibility with respect to any liability, obligation, or responsibility of the Escrow Agent and/or Settlement Administrator, including but not limited to, liabilities, obligations, or responsibilities arising in connection with the investment, disbursement, or other administration of the Settlement Fund. Defendant also shall have no liability whatsoever with respect to (i) any act, omission, or determination by Class Counsel, the Escrow Agent,

the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the Plan of Allocation; (iii) the determination, administration, or calculation of Settlement Payments, including any deposits, whether made at Class Members' express election or automatically, to Class Members' accounts; or (iv) the payment or withholding of taxes or related expenses, or any expenses or losses incurred in connection therewith.

**3.3    Satisfaction of Obligations.** Defendant's transfer of funds into the Settlement Fund under Paragraph 3.1 shall constitute full and complete satisfaction of its financial obligations under this Agreement. With regard to financial payment, Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Releasees of all claims that are released herein; any Fee Award; any Notice and Administrative Costs; all Service Awards; and all administrative or other costs and expenses arising out of or related to the Action or the Settlement. Class Members shall not under any circumstances be entitled to any further payment from Releasees with respect to the Released Claims, the Action, or the Settlement. If the Settlement Agreement becomes final and effective, and the Escrow Release Date occurs, payment of the Settlement Fund and Defendant's performance of any obligations relating to injunctive relief will fully satisfy any and all Released Claims.

**3.4    Custody.** All funds in the Settlement Fund shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Agreement and/or further order(s) of the Court.

**3.5    Qualified Settlement Fund.** The funds in the Settlement Fund shall be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1, and the Escrow Agent shall be designated as "administrator" of the Settlement Fund under the Internal Revenue Code and applicable regulations. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund. The Escrow Agent shall provide an accounting of any and all funds in the Settlement Fund, including any accrued interest and payments made, upon request of any Party.

**3.6    Interest.** All interest earned on the Net Settlement Proceeds while held in the QSF shall inure to the benefit, pro rata, of Class Members who ultimately receive Settlement Payments from the QSF, with the exception of any interest awarded to the Class Representatives and/or Class Counsel in connection with any Fee Award or Service Awards, which shall be paid in accordance with any such order of the Court. However, in the event that funds from the QSF are returned to Defendant, including as contemplated in Paragraph 14.5, any interest earned on the Net Settlement Proceeds shall also be returned to Defendant.

8

**3.7     Taxes.** Neither Defendant nor any Releasees nor Class Counsel shall have any liability, obligation, or responsibility whatsoever for tax obligations arising from Settlement Payments or Service Awards, or based on the activities and income of the Settlement Fund while under the control of the Escrow Agent. In addition, neither Defendant nor any Releasees shall have any liability, obligation, or responsibility whatsoever for tax obligations arising from payments to Class Counsel. The Escrow Agent will be solely responsible for tax obligations relating to the activities and income of the Settlement Fund while under the control of the Escrow Agent. Each Class Member who receives a Settlement Payment will be solely responsible for his or her tax obligations. Each Class Counsel attorney or firm will be solely responsible for his, her, or its tax obligations.

**3.8     Disposition of the Settlement Fund After Escrow Release Date.** After the Escrow Release Date, the Settlement Fund shall be applied as follows:

(A)    To pay all Notice and Administrative Costs, as approved by the Court;

(B)    To pay any Fee Award and Service Awards (with any interest accrued thereon, if awarded by the Court);

(C)    To distribute the Net Settlement Proceeds to Class Members in accordance with the Final Order and Judgment or any subsequent order of the Court, including any Plan of Allocation approved by the Court, as contemplated in Paragraph 3.12 below; and

(D)    To make the Residual Settlement Payment to the Residual Cy Pres Recipient, if the conditions specified in Paragraph 3.14 below occur.

**3.9     Limit on Payments to Individual Class Members.** No Class Member shall be entitled to or receive a Settlement Payment in excess of $100. The Plan of Allocation shall reflect this limit on the total Settlement Payment per Class Member. The Parties may jointly agree to change this limit.

**3.10    Status of Settlement Fund in Event of Appeal.** In the event an appeal is timely filed challenging the Final Order and Judgment, all distributions contemplated in Paragraph 3.8 above shall be held in abeyance until the appeal is resolved and the Final Order and Judgment is affirmed without material modification, where the materiality of any modification will be reasonably determined by Defendant in good faith. No distributions, whether to Class Members or otherwise, shall be made until the occurrence of the Escrow Release Date.

**3.11    No Reversion.** No portion of the Settlement Fund or interest thereon will revert to Defendant, other than as set out in Paragraphs 3.1 and 14.5. All or substantially all

of the Settlement Fund, net of the Notice and Administrative Costs, Fee Award, and Service Awards, shall be distributed, as set forth in Paragraphs 3.8 and 3.12-3.14.

**3.12    Plan of Allocation.** The Net Settlement Proceeds shall be distributed to Class Members on a pro rata basis.

**3.13    Method of Payment:** The Payment Form shall provide Class Members the option to select an electronic payment method, which may include options such as Zelle, PayPal, Venmo, ACH transfer, or Virtual Mastercard.

(i)     Settlement Payments shall first be issued to Class Members in accordance with the payment method selected, if the Payment Form is received by the Payment Form Deadline.

(ii)    For those Class Members whose selected payment method failed and for those who did not select a payment method by the Payment Form Deadline, the Settlement Administrator shall attempt to send the Settlement Payment via one of the available payment processers (e.g., Zelle, PayPal, or Venmo), based on data provided by Google to the extent reasonably available.

(iii)   The Settlement Administrator shall then attempt to send Settlement Payments via one or more other available payment processers, to the extent reasonably feasible.

(iv)    The Settlement Administrator may decide the order in which payments are attempted through each of the payment processers, in consultation with Class Counsel, to minimize transaction costs.

(v)     The funds remaining from Class Members who cannot be issued a Settlement Payment via this Plan of Allocation shall be considered residual funds.

**3.14    Disposition of Residual Amounts.** If feasible, any residual amount that remains after an initial distribution, as set forth in Paragraph 3.13, less administrative costs to perform a residual distribution, shall be distributed on a pro rata basis to those Class Members whose initial payments were successfully delivered via the same payment method used to issue the initial payment, up to the amount specified in Paragraph 3.9. Funds remaining after a second distribution, or if a second distribution is not feasible, shall be issued to an approved cy pres recipient(s).

## 4.    OPTIONAL PAYMENT FORM SUBMISSION PROCESS

**4.1**    On or before the Payment Election Email Date, which will be no later than fifteen (15) days after the Escrow Release Date, the Settlement Administrator shall transmit the Payment Election Email to Class Members, informing them of the available means of receiving their Settlement Payment and providing Class Members with electronic access to the Payment Form.

**4.2**    At the direction of Class Counsel, the Settlement Administrator may cause the Payment Election Email to be re-sent up to two additional times, including in ways that target Class Members who have not yet completed the Payment Form.

**4.3**    **Payment Form.** Class Members may, but need not, submit a Payment Form.

> (A)    The Payment Form will allow Class Members to elect an Electronic Payment method and request the information needed to effectuate such payment.

> (B)    Payment Forms must be submitted personally by the Class Member. No Payment Forms will be accepted from third parties.

> (C)    The Payment Form will be made available on the Settlement Website and linked in the Payment Election Email, and may be completed and submitted online.

**4.4**    **Deadline to submit Payment Forms.** To be considered timely, all Payment Forms must be submitted by the Payment Form Deadline, which shall be 30 days after the transmission of the Payment Election Email. The Payment Form Deadline shall be clearly stated in the Payment Election Email, on the Payment Form, and on the Settlement Website.

> (A)    Payment Forms submitted electronically on the Settlement Website must be submitted by 11:59 p.m. Pacific Time on the Payment Form Deadline.

> (B)    The Settlement Administrator, in consultation with Class Counsel, shall have the discretion to honor Payment Forms received after the Payment Form Deadline, where feasible, but shall not be required to do so unless otherwise ordered by the Court.

**4.5**    **Processing of Payment Forms.** As soon as reasonably possible after the Payment Form Deadline, the Settlement Administrator will provide Class Counsel and Defendant's Counsel with a list of Class Members who submitted timely Payment Forms, along with information regarding how many Class Members elected each available form of payment and the resulting transaction processing fees.

**4.6    Reporting and Payments Database.** The Settlement Administrator will maintain a database with all relevant information captured from the Payment Forms and any information provided by Defendant to facilitate distribution of Settlement Payments.

## 5.    INJUNCTIVE RELIEF.

**5.1    Timing.** The Final Order and Judgment will provide that Google will perform the following actions no later than 45 days after the Escrow Release Date:

(A)    Revise the relevant portions of the Google Play Terms of Service as shown in Section 1 of Exhibit A to this Agreement.

(B)    Revise the "Learn about Google Play services" Help Center webpage as shown in Section 2 of Exhibit A to this Agreement.

The Final Order and Judgment will also provide that Google will perform the following actions by the date of the release of the first major version (other than a pre-release or beta version) of Android that is released six (6) months or more after the Escrow Release Date:

(A)    Take the steps technically feasible by Google to (i) deactivate the Google Play services mobile background data toggle so that users cannot "turn off" the use of mobile data in the background by Google Play services, and (ii) state on the screen bearing the deactivated toggle that users are not able to disable the use of mobile data by Google Play services in the background.

(B)    Take the steps technically feasible by Google to revise the relevant sections of the Android device setup flow on new Google-certified Android devices as shown in Section 3 of Exhibit A to this Agreement, which may be subject to intervening changes to the setup flow in the ordinary course of business that do not remove the agreed-upon changes contemplated in Exhibit A.

**5.2    Injunctive Relief Term & Limitations.** Defendant shall maintain the changes described in Paragraph 5.1 for a period of at least 2 years from when the changes are implemented in full, but (i) Defendant may modify the precise language contemplated in Paragraph 5.1 above and Exhibit A if changes in Defendant's practices or technologies render the agreed-upon language no longer accurate, and (ii) Defendant may make other modifications to the language of the Google Play Terms of Service, "Learn about Google Play services" Help Center webpage, and the relevant sections of the setup flow in the ordinary course of business, so long as such modifications do not remove the agreed-upon changes contemplated in Paragraph 5.1 and Exhibit A. Except as set forth in this Paragraph

12

and Paragraph 5.1, the Settlement will not subject Defendant to any other injunctive relief absent Defendant's express agreement.

## 6. NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

6.1    The Parties jointly filed, for the Court's consideration and approval, the proposed Notice Plan, including the Parties' proposed Notice. The specific text and content of the proposed Notice was mutually agreed upon by the Parties, and the Court approved it on December 22, 2025. In the event the Court orders additional notice(s) to the Class not currently contemplated in this Agreement, the parties will confer in good faith to mutually agree on the specific text of the notice(s).

6.2    The Settlement Administrator will be allocated up to $200,000 out of the Settlement Fund to implement the Notice Plan, subject to Court approval.

6.3    Notice will be sent by email to the email addresses previously used for class notice in this case, with the process to be completed by the Notice Date. Additionally, the Settlement Website will be updated by posting the Notice and the executed Settlement Agreement by the Notice Date.

6.4    The Settlement Administrator will oversee and implement the Notice Plan. Although the Settlement Administrator may purchase commercial services at standard rates from Defendant as part of the Notice Plan, Defendant otherwise has no obligation to implement the Notice Plan or otherwise facilitate delivery of the Notice. All costs associated with the Notice Plan and Settlement Administrator will be paid from the Settlement Fund as set forth in Section 3.

6.5    The Settlement Website shall (i) post, without limitation, the Class Action Complaint, this Settlement Agreement, the Notice, the Payment Election Email, and the Payment Form; (ii) notify Class Members of their rights to object; (iii) inform Class Members that they should monitor the Settlement Website for developments; and (iv) to the extent reasonably practicable provide estimates or estimated ranges of the Settlement Payments based on the number of Class Members and other relevant factors. The Settlement Website also will include answers to frequently asked questions; a list of important deadlines; case documents; and contact information for the Settlement Administrator. Class Counsel shall determine the content of the Settlement Website, and Google shall have the right to approve such content before it is posted, which approval shall not be unreasonably withheld or delayed.

6.6    The Settlement Website will remain active until all Settlement Funds have been distributed or otherwise disposed of in accordance with this Agreement.

13

**6.7**   The Settlement Administrator will establish appropriate means by which Class Members may submit questions regarding the Settlement to the Settlement Administrator. The Settlement Administrator will respond promptly to administrative inquiries received from Class Members and may direct substantive inquiries to Class Counsel.

## 7.   OBJECTIONS

**7.1**   Any Class Member may object to the fairness, reasonableness, or adequacy of this Agreement.

**7.2**   **Submission of Objections.** Any Class Member who wishes to object to any aspect of this Agreement must mail a written statement of the objection(s) with the Court by the Objection Deadline, or through counsel file a written statement of objection with the Court. The written statement of the objection(s) must (a) clearly identify the case name and number; (b) be submitted to the Court either by mailing the objection to: Clerk of the Court, Superior Court of California, County of Santa Clara, 191 N. 1st Street, San Jose, California 95113, or by filing in person at the same location; (c) also be mailed to the Settlement Administrator; and (d) be filed or postmarked on or before the Objection Deadline.

**7.3**   Class Members may raise an objection either on their own or through an attorney hired at their own expense. If a Class Member retains an attorney other than Class Counsel to represent him or her, the attorney must file a notice of appearance with the Court. If a Class Member makes an Objection through an attorney, that Class Member shall be solely responsible for his or her attorneys' fees and costs.

**7.4**   A Class Member who has submitted a timely written Objection may attend the Approval Hearing at his or her own expense.

**7.5**   Objections must be submitted by the Objection Deadline.

   (A)   Objections submitted by counsel through the Court's electronic filing system must be submitted by 11:59 p.m. Pacific Time on the date of the Objection Deadline.

   (B)   Objections submitted by mail must be postmarked by the Objection Deadline. The date of the postmark on the envelope containing the written statement objecting to the Settlement shall be the exclusive means used to determine whether a postmarked Objection was timely submitted. If a postmark is illegible or unavailable, the date of mailing shall be deemed to be three (3) days before the date that the Court scans the Objection into the electronic case docket.

14

**7.6**    Any Class Member who fails to comply with the provisions of Paragraphs 7.2 through 7.5 shall waive and forfeit any and all rights he or she may have to appear at the Approval Hearing and/or to object to this Settlement; shall be bound by all the terms of this Agreement if it is approved by the Court; and shall be forever barred from making any objection to the Settlement at the Approval Hearing, on appeal, by way of collateral attack, or otherwise.

## 8.    SETTLEMENT ADMINISTRATION

**8.1    Duties of Settlement Administrator.** The Settlement Administrator, in conjunction with the Escrow Agent, shall perform the functions specified in this Agreement, including, but not limited to, overseeing administration of the Settlement Fund; coordinating Notice to Class Members; operating the Settlement Website and a toll-free number; administering the Payment Form and payments processes; and distributing Settlement Payments according to the processes and criteria set forth herein. In addition to other responsibilities that are described in this Agreement, the duties of the Settlement Administrator include:

(A)    Effecting Notice in accordance with the procedures set forth herein (and in the proposed Notice Plan, which is subject to Court approval);

(B)    Establishing and maintaining the Settlement Website that, among other things, allows (but does not require) Class Members to submit Payment Forms electronically;

(C)    Establishing and maintaining a toll-free telephone line for Class Members to call with Settlement-related inquiries, and answering the questions of Class Members who call with or otherwise communicate such inquiries;

(D)    Responding to any mailed or emailed Class Member inquiries;

(E)    Providing periodic reports with information requested by Class Counsel and/or Defendant's Counsel;

(F)    Before the Approval Hearing, preparing affidavits to submit to the Court that attest to implementation of the Court-approved Notice Plan;

(G)    Distributing the Payment Election Email to the email addresses referenced in Paragraph 6.3, with the process to be completed by the Payment Election Email Date;

15

(H) Updating the Settlement Website by posting the Payment Election Email and making available the Payment Form;

(I) Distributing the Settlement Payments;

(J) Providing any information as may be needed for a post-distribution accounting, to the extent ordered by the Court; and

(K) Verifying that Settlement Payments have been distributed in accordance with this Agreement.

### 9.    SUBMISSION FOR FINAL APPROVAL

**9.1** At least thirty-five (35) days before the Approval Hearing, Plaintiffs, jointly and/or in consultation with Defendant, shall move the Court for entry of the Final Order and Judgment. The Parties will jointly agree on the form and content of the Final Order and Judgment, and it will provide for:

(A) Final approval of the Settlement, finding the terms of this Settlement to be fair, reasonable, and adequate and in the best interest of Class Members;

(B) Distribution of the Settlement Fund in accordance with the terms of this Agreement;

(C) Conditional vacatur of the existing jury verdict and related judgment on the verdict as described further in Paragraph 14.1(B) below and Exhibit B;

(D) Injunctive relief as specified in Section 5, which will not impose any obligations or related terms less or more than the Parties have agreed to in Section 5;

(E) Approval of the Release as specified in, and subject to the terms and conditions of, Section 11 of this Agreement;

(F) Entry of judgment pursuant to Rule 3.769(h) of the California Rules of Court retaining jurisdiction to enforce the terms of this Settlement; and

(G) Such other terms that the Parties may mutually agree upon.

16

## 10.    CLASS COUNSEL FEES AND COSTS AND SERVICE AWARDS

**10.1**    Class Counsel has applied to the Court for a Fee Award in the amount of $115.5 million, representing 33% of the Settlement Amount, plus approximately $7 million in costs and expenses incurred as of September 15, 2025 in connection with this litigation. At a later date, Class Counsel will seek reimbursement of any additional costs and expenses incurred since September 15, 2025. Any Fee Award approved by the Court will be paid out of the Settlement Fund, as specified in Paragraphs 3.1 and 3.8. It is not a condition of this Settlement that any particular Fee Award or Service Award be approved by the Court, or that such fees, costs, expenses or awards be approved at all, and the finality and effectiveness of the Settlement, and the occurrence of the Escrow Release Date, will not be dependent on the Court awarding any particular amount for the Fee Award or the Service Awards.

**10.2**    Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or service awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate, or cancel this Settlement Agreement, or affect or delay the finality of the Final Order and Judgment or the occurrence of the Escrow Release Date, except that any modification, order, or judgment cannot result in Defendant's overall obligations exceeding the Settlement Fund specified in Paragraph 3.1.

**10.3**    Any Fee Award approved by the Court shall be paid to Class Counsel out of the Settlement Fund, after the occurrence of the Escrow Release Date, as described in Paragraphs 3.1 and 3.8.

**10.4**    Defendant shall have no responsibility for, or liability whatsoever with respect to, any distribution or allocation of any Fee Award. Defendant takes no position on the appropriateness of Class Counsel's requested Fee Award.

**10.5**    In recognition of the Class Representatives' efforts on behalf of the Class, Class Counsel has applied to the Court for a Service Award for each Class Representative as follows: $75,000 for Ms. Hecht, $50,000 for Mr. Csupo, and $50,000 for Mr. Burke (the higher amount requested on Ms. Hecht's behalf reflects the fact that she testified live at a lengthy trial). Any order or proceeding relating to the amount of any Service Awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate, or cancel this Settlement Agreement, or affect or delay the finality of the Final Order and Judgment or the occurrence of the Escrow Release Date, except that any modification, order, or judgment cannot result in Defendant's overall obligations exceeding the Settlement Fund specified in Paragraph 3.1. Any Service Awards approved by the Court will be distributed from the Settlement Fund as set forth in Paragraphs 3.1 and 3.8, if the Escrow Release Date occurs. Defendant shall have no responsibility for or liability whatsoever with respect to any distribution or allocation of any Service Award.

17

**10.6**    Except as otherwise provided in this section, each Party will bear its own costs, including attorneys' fees, incurred in connection with the Action.

## 11.    RELEASES

**11.1**    Upon the Escrow Release Date, the Releasing Parties shall release, forever discharge, will not in any manner pursue this Action, and shall be forever barred from asserting, instituting, or maintaining against the Releasees, any and all Released Claims, as defined in this Agreement.

**11.2**    The Parties, including Plaintiffs, fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by the Parties and their counsel to be true. The Parties expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts. The Parties intend to hereby fully, finally, and forever settle this Action and release all of the Released Claims, known or unknown, suspected or unsuspected, that the Releasing Parties have against the Releasees. In furtherance of such intention, the release provided herein shall be and remain in effect as a full and complete release of the Released Claims notwithstanding the discovery or existence of any such additional different claims or facts.

**11.3**    The Parties stipulate and agree that, upon the Escrow Release Date, Releasing Parties shall expressly, knowingly, and voluntarily waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § l542 (and all other similar provisions of federal and state law) to the full extent that these provisions may be applicable to this release. The Parties further agree that this waiver is an essential and material term for this Settlement. The Releasing Parties understand that California Civil Code § 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

**11.4**    Upon the Escrow Release Date, the Releasing Parties will be deemed to have, and will have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, except those Claims that are not releasable under the law or any claims or defenses arising from enforcement of this Agreement.

18

**11.5**    Actions bringing a claim released by this Agreement (the Released Claims) will constitute a breach of this Settlement Agreement.

**11.6**    Release of the Released Claims shall not bar a claim, complaint, action, or proceeding for breach of this Settlement Agreement.

## 12.    EXCLUSIVE REMEDY; JURISDICTION OF COURT

**12.1**    This Agreement shall be the sole and exclusive remedy for any and all Released Claims. Upon the Escrow Release Date, each Releasing Party shall be barred from initiating, asserting, or prosecuting any Released Claims against Defendant or other Releasees. If any Releasing Party attempts to prosecute an action in contravention of the Final Order and Judgment and this Agreement, counsel for any of the Parties may forward this Agreement and the Final Order and Judgment to such Releasing Party and advise him, her, or it of the release provided pursuant to this Agreement.

**12.2**    Before pursuing relief or submitting any dispute relating to this Agreement or the Action to the Court, the Parties agree to mediate the dispute.

**12.3**    The Court shall retain exclusive jurisdiction to enforce, interpret, and implement the Settlement Agreement, including any dispute, action, suit or proceeding arising out of or related to this Agreement.

## 13.    SUCCESSORS AND ASSIGNS

**13.1**    This Agreement and the obligations and benefits of this Agreement will be binding upon and inure to the benefit of, and be enforceable by and against, each of the Parties and their respective successors and assigns. The Parties have an affirmative duty to ensure that this Agreement and the obligations and benefits of this Agreement will be binding upon and inure to the benefit of and be enforceable by and against, each of the Parties and their respective successors and assigns.

## 14.    CONTINGENCIES AND TERMINATION OF THE AGREEMENT

**14.1    Escrow Release Date Contingencies & Related Termination Rights.** Distribution of the Settlement Fund (including any accrued interest) and the effective date of the Releases described herein are expressly contingent on the occurrence of the Escrow Release Date. The Escrow Release Date will occur only if and when all of the following conditions are met and all deadlines to terminate the Settlement Agreement have lapsed and no termination has occurred. If one or more of the following conditions is not met, and one or both of the Parties has a right to terminate (as specified below), the relevant Party or Parties holding that termination right can either waive the condition(s) or terminate the Settlement:

(A)    **Final Court Approval:** The Escrow Release Date shall not occur unless and until (i) the Court enters the Final Order and Judgment, granting final approval of the Settlement and, in the event the Court orders additions or modifications to this Agreement, neither party has exercised a termination right under Paragraphs 14.2 or 14.3 below, and (ii) the time period for the filing of a notice of appeal therefrom has passed without the filing of any appeal or, in the event an appeal is timely filed, the Final Order and Judgment is affirmed on the appeal (if any) such that no party has exercised any termination right under Paragraph 14.3 below, and no further appeal or challenge to that Final Order and Judgment is possible.

(B)    **Vacatur:** The Parties agree to jointly seek vacatur of the verdict and judgment in this matter ("Vacatur Motion"), to be made conditional on approval of the Settlement and satisfaction of all other contingencies set forth in this Paragraph 14.1, such that this Settlement is fully consummated and the Escrow Release Date has come to pass. The Parties will lodge this request by including it in the proposed Final Order and Judgment, using language approved by Defendant and attached hereto as Exhibit B. Plaintiffs and the certified class in this Action agree to take all actions necessary to secure such vacatur and findings, including, if necessary, seeking remand of any appeal to the Court. The Settlement and the Escrow Release Date are expressly conditioned on entry of a vacatur order that is the same or materially the same as the proposed order the Parties submit, where material similarity will be determined by Defendant in good faith. In the event entry of a vacatur order as described in the preceding sentence does not occur, Defendant has the right to terminate this Agreement. If the Parties learn that Judge Charles F. Adams will be unable to address the Parties' final approval motion himself, the Parties agree to make all reasonable efforts to bring whatever matters can be adjudicated by Judge Adams himself, including through indicative orders or their equivalent, before him promptly, including a motion seeking vacatur of the jury verdict and judgment, provided that the vacatur only occur after all contingencies have expired and the Escrow Release Date has passed.

(C)    **Comprehensive Settlement:** The Parties acknowledge that Defendant is also entering a settlement agreement in the *Taylor* case. Both this Agreement and the contemplated Taylor Settlement Agreement provide for identical injunctive relief that is applicable to residents of different geographic regions of the United States.

20

(i)    Given the need for nationwide uniformity in the relevant Defendant business practices, and Defendant's insistence on comprehensive resolution of the issues presented in both cases on a nationwide basis, the Parties agree that both Plaintiffs and Defendant shall have the right to terminate this Settlement if any of the following events occur: (1) the Taylor Settlement Agreement is not approved by the United States District Court for the Northern District of California ("District Court"); (2) the Taylor Settlement Agreement is approved by the District Court but with, or subject to, material modification (where materiality will be determined based on the standards set forth in the Taylor Settlement Agreement); (3) one or more objectors file a notice of appeal related to the Taylor Settlement Agreement; or (4) the number of opt-outs, or individuals who exercise a right to exclude themselves, from the Taylor Settlement Agreement exceeds the number agreed to by the parties in that matter. The termination of this Settlement pursuant to this Paragraph 14.1(C)(i) shall preclude the occurrence of the Escrow Release Date.

(ii)    In the event Plaintiffs or Defendant decide to exercise the termination right under subsection (i)(1) of the preceding paragraph, the relevant Party must exercise such right by providing written notice to the other Party within fourteen (14) days after the issuance of an order denying approval of the Taylor Settlement Agreement. In the event Plaintiffs or Defendant decide to exercise the termination right under subsection (i)(2) of the preceding paragraph, the relevant Party must exercise such right by providing written notice to the other Party within fourteen (14) days after the issuance of the order materially modifying of the Taylor Settlement Agreement. In the event Plaintiffs or Defendant decide to exercise the termination right under subsection (i)(3) of the preceding paragraph, the relevant Party must exercise such right by providing written notice to the other Party within fourteen (14) days after the deadline has expired for any objector to file a notice of appeal related to the Taylor Settlement Agreement. In the event Plaintiffs or Defendant decide to exercise the termination right under subsection (i)(4) of Paragraph 14.1(C), the relevant Party must exercise such right by providing written notice to the other Party within fourteen (14) days after any termination of the Taylor

21

> Settlement Agreement due to excessive opt outs becomes effective.

> (iii)    Further, the Parties acknowledge that the Taylor Settlement Agreement may allow plaintiffs in *Taylor* to terminate the Taylor Settlement Agreement upon certain conditions; in the event the *Taylor* plaintiffs terminate the Taylor Settlement Agreement pursuant to such a right, this Settlement will also immediately terminate (and the Escrow Release Date will not occur), unless Defendant elects to waive this condition.

**14.2    Termination Based on Changes to the Agreement.** If the Court orders additions or modifications to this Agreement deemed material by any Party adversely affected by the additions or modifications, that Party will have the right to terminate the Agreement within fourteen (14) days from the date of the Court's order or proposal. If the other Party contests the materiality of the addition or modification to the Agreement, the Parties shall mediate the issue before Kenneth R. Feinberg. If any Party elects to terminate the Settlement Agreement pursuant to this Section, the Agreement will be deemed null and void ab initio and the provisions of Paragraph 14.5 will apply.

**14.3    Termination Based on Changes to the Final Order.** If the Final Order and Judgment is vacated, modified in a manner deemed material by any Party adversely affected by the modification, or reversed, in whole or in part, this Agreement will be deemed terminated, unless the Party or Parties who are adversely affected thereby, within fourteen (14) days of receipt of such ruling, agree in writing to proceed with this Agreement as modified by the Court or on appeal. For the avoidance of doubt, if any order contemplates further proceedings in which the Final Order and Judgment might be modified, the Parties' termination rights remain intact at least until the conclusion of those proceedings.

**14.4    Limitations on Termination.** Notwithstanding the foregoing, Plaintiffs and/or Class Counsel will not be entitled to terminate this Settlement Agreement based on any order relating to Class Counsel's anticipated motion for a Fee Award or motion for Service Awards, nor any appeal from such order or reversal or modification thereof, except to the extent such a reversal or modification materially impacts other provisions of the Settlement.

**14.5    Effect of Termination**. If this Agreement is deemed terminated pursuant to any provision, it (including the releases contained herein) and any vacatur ordered by the Court will have no force or effect whatsoever and shall be null and void ab initio, and will not be admissible as evidence for any purpose in any pending or future litigation in any jurisdiction; the amounts in the escrow account or QSF, and any accrued interest, shall be promptly returned to Defendant; and the vacatur order and any related judgment shall be

void ab initio; and litigation of this Action shall resume as it existed prior to the execution of this Agreement, and the Parties' appellate rights shall be unaffected.

**14.6    Extending Time for Termination.** The Parties may jointly agree to extend the time period for exercise of their termination rights, to facilitate discussions or negotiations in an effort to preserve the Settlement and avoid its termination.

## 15.    CONFIDENTIALITY AND REPRESENTATIONS OF COUNSEL

**15.1**    Other than responses to inquiries from governmental entities or as necessary to comply with federal and state tax and securities laws, no Party shall initiate any publicity relating to or make any public comment regarding this Agreement until the Agreement is executed and filed with the Court.

**15.2**    Unless and until all Parties execute this Agreement and file it with the Court, the Parties agree that all terms of this Agreement will remain confidential and subject to California Evidence Code sections 1119, 1154, 1159; Federal Rule of Evidence 408; and analogous provisions of other states' laws.

**15.3**    Plaintiffs and Class Counsel expressly acknowledge their ongoing obligations under the protective orders entered in this Action, including their ongoing obligation not to share information or documents with third parties that are protected from disclosure pursuant to the terms of such protective orders. Plaintiffs further represent that they have no plan or present intention to seek to modify the protective orders entered in this Action or seek any relief from them.

**15.4**    Class Counsel expressly confirms that they are not currently representing, or working with, any other clients, law firms, or entities in connection with potential claims not yet filed that are based on, or arise out of, the predicate facts alleged in the Class Action Complaint in this Action or any other potential claims that Defendant allegedly causes transfers of information with devices that consume data paid for by users without users' consent.

## 16.    MISCELLANEOUS PROVISIONS

**16.1**    This Agreement, including all attached exhibits, shall constitute the entire agreement among the Parties (and covering the Class) with regard to the subject matter of this Agreement and shall supersede any previous agreements and understandings between the Parties, including those set forth in any term sheets. The Parties are not relying on any statements or representations that are not contained in this Agreement (including, but not limited to, any statements or representations that are contained in any term sheets but which are not contained in this Agreement).

23

**16.2**    Each Party represents and warrants that it enters into this Agreement of his, her, their, or its own free will. Each Party is relying solely on its own judgment and knowledge and is not relying on any statement or representation made by any other Party or any other Party's agents or attorneys concerning the subject matter, basis, or effect of this Agreement.

**16.3**    This Agreement has been negotiated at arm's length by Class Counsel and Defendant's Counsel. In the event of any dispute arising out of this Agreement, or in any proceeding to enforce any of the terms of this Agreement, no Party shall be deemed to be the drafter of this Agreement or of any particular provision or provisions, and no part of this Agreement shall be construed against any Party on the basis of that Party's identity as the drafter of any part of this Agreement.

**16.4**    The Parties agree to work in good faith to effectuate this Agreement. The Parties agree to use their best efforts in cooperation with one another to secure Court approval of the Settlement and to satisfy the various terms and contingencies set forth herein, and to take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement. However, nothing in this Paragraph 16.4 is intended to abridge or modify the rights of the Parties to terminate the Settlement where such rights are expressly set out herein. The Parties further agree that they will work expeditiously to secure the Court's final approval of the settlement by February 28, 2026.

**16.5**    The headings of the sections of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

**16.6**    This Agreement shall be interpreted, enforced, construed and controlled by the laws of the State of California, without reference to principles of conflicts of law or choice of law provisions.

**16.7**    Except as set out in Section 14, the invalidity or unenforceability of any provision of this Agreement other than the Release in Section 11 shall not affect the validity or enforceability of any other provision. If any provision (or part of a provision) of this Agreement is found to be invalid, illegal, or unenforceable, the rest of the Agreement shall remain in effect, unless any Party deems the invalid or unenforceable provision material to the Agreement, in which case the Parties will follow the procedure set out in Paragraph 14.2.

**16.8**    Notwithstanding any other provision of this Agreement, the Releasees shall have the right to file the Settlement Agreement and/or the Final Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel release, good faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

**16.9**    The following specific prohibitions shall apply to the Settlement Agreement:

(A)    No Assignment: The Settlement Agreement, including any of the rights and duties of each Party under the Agreement, may not be assigned without prior written approval by the other Parties.

(B)    No Waiver: No Party will be treated as having waived any rights or privileges, including the attorney-client privilege, as the result of the Settlement Agreement. Additionally, a waiver of any breach of the Settlement Agreement by any Party shall not be deemed to be a waiver by any Party of any other breach of the Agreement.

(C)    No Third-Party Beneficiaries: With the exception of the Releasees, the Settlement Agreement does not confer any benefits on any third party.

**16.10**    This Agreement may be executed by the Parties in counterparts and exchanged by electronic means, including facsimile, PDF, and other electronic means, with the same effect as if all Parties had signed the same instrument.

**16.11**    Any amendment must be in writing, signed by the Parties, and expressly state that it is amending the Settlement Agreement.

**16.12**    Defendant reserves the right to continue any and all ordinary-course-of-business communications with Class Members. Should it become evident in the course of any such communication that a Class Member is inquiring regarding the Settlement memorialized in this Agreement, Defendant shall refer the inquiry to the Settlement Administrator or to Class Counsel.

**16.13**    Any notice, instruction, court filing, or other document to be given by any Party to any other Party shall be in writing and sent by email, delivered personally or sent by registered or certified mail, postage prepaid, or overnight delivery service to the respective representatives identified below or to other recipients as the Court may specify. As of the date of this Agreement, these respective representatives are as follows:

**For the Class:**

To Bartlit Beck LLP:
Attn: Glen E. Summers
1801 Wewatta Street, Suite 1200
Denver, CO 80202
glen.summers@bartlitbeck.com

To Korein Tillery LLC:
Attn: Marc Wallenstein
505 North 7th Street, Suite 3600
St. Louis, MO 63101
mwallenstein@koreintillery.com

**For Defendant:**

To Google:
General Counsel
Legal Department
Google LLC
1600 Amphitheatre Parkway
Mountain View, CA 94043
legal-notices@google.com

To Cooley LLP:
Attn: Whitty Somvichian
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
wsomvichian@cooley.com

**16.14**    This Agreement shall be dissolved, and shall be null and void, if the Parties do not execute this Agreement; if the Court does not finally approve this Agreement; if one or more of the Parties terminates this Agreement, or an occurrence causes the Agreement to be terminated; or if this Agreement does not become final and effective due to any ruling on any appeals or remand from any appeals.

**16.15**    The Parties each represent and warrant that they have not sold, assigned, transferred, conveyed, subrogated, or otherwise disposed of any claim or demand covered by this Agreement. If a Releasing Party has sold, assigned, transferred, conveyed, subrogated, or otherwise disposed of any claim or demand, the Person that acquired such claim or demand is bound by the terms of this Agreement to the same extent as the Releasing Party would have been but for the sale, assignment, transfer, conveyance, or other disposition.

**16.16**    Each Person who executes this Agreement represents and warrants that such Person has all the requisite authority, has obtained all necessary approvals to do so and that they are duly authorized to execute this Agreement on behalf of the Parties they purport to represent. Class Counsel has any and all authority and capacity necessary to execute this Agreement and bind all of the Plaintiffs, as if each such person had personally executed this Agreement.

26

**Agreed and Accepted**

On behalf of the Plaintiffs, including Class Representatives Attila Csupo, Andrew Burke, Kerry Hecht, and the Class:

Dated: 12/23/25          By: _____
                              Attila Csupo
                              *Class Representative*


Dated: _____          By: _____
                              Andrew Burke
                              *Class Representative*


Dated: _____          By: _____
                              Kerry Hecht
                              *Class Representative*

27

**Agreed and Accepted**

On behalf of the Plaintiffs, including Class Representatives Attila Csupo, Andrew Burke, Kerry Hecht, and the Class:

Dated:_____                        By:    _____
                                              Attila Csupo
                                              *Class Representative*


Dated: 23 DEC 2025                     By:    _____
                                              Andrew Burke
                                              *Class Representative*


Dated:_____                        By:    _____
                                              Kerry Hecht
                                              *Class Representative*

27

## Agreed and Accepted

On behalf of the Plaintiffs, including Class Representatives Attila Csupo, Andrew Burke, Kerry Hecht, and the Class:

Dated:_____        By:    _____

Attila Csupo
*Class Representative*

Dated:_____        By:    _____

Andrew Burke
*Class Representative*

Dated: 12/23/25        By:    _____

Kerry Hecht
*Class Representative*

27

Dated: Dec. 23, 2025                          BARTLIT BECK LLP

By:_____

Glen E. Summers
*Counsel for Plaintiffs*


Dated:_____                                 KOREIN TILLERY LLC


By:_____

Marc A. Wallenstein
*Counsel for Plaintiffs*

28

Dated:_____                          BARTLIT BECK LLP


                                       By:   _____
                                             Glen E. Summers
                                             *Counsel for Plaintiffs*


Dated: 12/23/25                        KOREIN TILLERY LLC


                                       By:   _____
                                             Marc A. Wallenstein
                                             *Counsel for Plaintiffs*

On behalf of Defendant:


Dated: December 23, 2025          By:   *Cassandra knight*
                                        ———————————————
                                        Cassandra Knight
                                        Vice President, Legal
                                        Google LLC

**Exhibit A to Settlement Agreement**

<u>SECTION 1: GOOGLE PLAY TERMS OF SERVICE</u>

# Google Play Terms of Service

July 1, 2024 (View archived version)

## 1. Introduction

**Applicable Terms.** Thanks for using Google Play. Google Play is a service provided by Google LLC (**"Google"**, **"we"** or **"us"**), located at 1600 Amphitheatre Parkway, Mountain View, California 94043, USA. Your use of Google Play and the apps (including Android Instant Apps), ~~system services,~~ games, movies, books, magazines, or other digital content or services <u>available through the Play Store, and system services (including, but not limited to, those provided by Google Play services)</u> (referred to as **"Content"**) ~~available through it~~ is subject to these Google Play Terms of Service ("**Play ToS**") and the Google Terms of Service (**"Google ToS"**) (together referred to as the **"Terms"**). Google Play is a "service" as described in the Google ToS. If there is any conflict between the **Play ToS** and the Google ToS, the **Play ToS** shall prevail.

## 2. Your Use of Google Play

**Access to and Use of Content.** You may use Google Play to browse, locate, view, stream, or download Content for your mobile, computer, tv, watch, or other supported device (**"Device"**). To use Google Play, you will need a Device that meets the system and compatibility requirements for the relevant Content, working Internet access, and compatible software. The availability of Content and features

30

will vary between countries and not all Content or features may be available in your country. Some Content may be available to share with family members. Content may be offered by Google or made available by third-parties not affiliated with Google. Google is not responsible for and does not endorse any Content made available through Google Play that originates from a source other than Google.

**Age Restrictions.** In order to use Google Play, you must have a valid Google account ("**Google Account**"), subject to the following age restrictions. If you are considered a minor in your country, you must have your parent or legal guardian's permission to use Google Play and to accept the Terms. You must comply with any additional age restrictions that might apply for the use of specific Content or features on Google Play. Family managers and family members must meet these additional requirements as well.

**Third-Party Fees.** You are responsible for any access or data fees incurred from third parties (such as your Internet provider or mobile carrier) in connection with your use and viewing of Content and Google Play.

**Updates.** Google Play, related support libraries, or Content may need to be updated, for example, for bug fixes, enhanced functions, missing plug-ins and new versions (collectively, "**Updates**"). Such Updates may be necessary in order for you to use Google Play or to access, download, or use Content. By agreeing to these Terms and using Google Play, you agree to receive such Updates automatically. You may be able to manage Updates to certain Content via Settings in Google Play. If it is determined, however, that the Update will fix a critical security vulnerability or critical operability issue related to the Content, or will prevent abuse, the Update may be completed irrespective of your Update settings in Google Play or your Device. If another app store attempts to update Content

31

that was initially downloaded from Google Play, you may receive a warning or such updates may be prevented entirely.

**System Services.** Google system services provide various services and updates on certified Android devices. It includes key system services provided by Google, Google Play Store, Google Play services, and updates to the Android operating system. System services often require network connectivity and may use your cellular data. Some network communications may happen in the background, when you are not directly interacting with your device, including when the device's screen is locked. You are responsible for any fees incurred from third parties (such as your mobile carrier) in connection with system services, including those described in the Learn about Google Play services page.

**Information about You.** Google's Privacy Policy explains how we treat your personal data and protect your privacy when using Google Play. Google may need to provide your personal information, such as your name and email address, to Providers for the purposes of processing your transactions or provisioning Content to you. Providers agree to use this information in accordance with their privacy policies.

If you are part of a family group on Google Play, your family members in the family group will be able to see certain information about you. If you are the family manager of a family group on Google Play, family members you invite to join the family group will see your name, photo, and e-mail address. If you join a family group as a family member, other family members will be able to see your name, photo, and e-mail address. Your family manager may also see your age and will see a record of all purchases you make using the designated family payment method, including a description of the Content purchased. If Content is available

32

for family sharing and you share it with your family group, then all family members will be able to access the Content and see that you purchased it.

**Unauthorized Access to Accounts.** You must keep your account details secure and must not share them with anyone else. You must not collect or harvest any personal data of any user of Google Play or of any user of other Google Services via Google Play, including account names.

**Disabled Accounts.** If Google disables access to your account in accordance with the Terms (for example if you violate the Terms), you may be prevented from accessing Google Play, your account details or any files or other Content that is stored with your account. See the Help Center for more information. If you are the family manager of a family on Google Play and Google disables access to your account, your family members may lose access to family features requiring a family group, such as a family payment method, family subscriptions, or Content shared by family members. If you are a family member of a family on Google Play and Google disables your account, your family members will lose access to Content you have shared with them.

**Malware protection.** To protect you against malicious third party software, URLs, and other security issues, Google may receive information about your Device's network connections, potentially harmful URLs, the operating system, and apps installed on your Device through Google Play or from other sources. Google may warn you if it considers an app or URL to be unsafe, or Google may remove or block its installation on your Device if it is known to be harmful to devices, data or users. You can choose to disable some of these protections in the settings on your Device, however, Google may continue to receive information about apps installed through Google Play, and apps installed on your Device from other sources may continue to be analyzed for security issues without sending information to Google.

33

**Android Instant Apps.** When you click on a link on your Device, Google Play may check if an applicable instant app exists and, if so, open the link within the instant app. Any code needed to run the portions of the instant app you access will be downloaded to your Device and kept on it temporarily. App details for an instant app can be found in the Google Play store. Android Instant Apps data and settings are synced to devices signed in with your Google account. You can choose to disable Android Instant Apps in the settings on your Device.

**Changes to these Terms.** If the Play ToS change, you will be given at least 30 days notice, and the new Play ToS will be effective after such notice period. Your continued use of Google Play following such notice period will indicate your acceptance of the new Play ToS. The new Play ToS will apply to your use of all Content (including Content you have installed or purchased in the past) and all subsequent installs or purchases. If you do not agree with such changes, you will be given the opportunity to download the Content you previously purchased or installed and terminate your use of the Google Play. You may continue to view that copy of the Content on your Devices in accordance with the last version of the Play ToS that you accepted.

## 3. Purchases and Payments

**Free Content.** Google may allow you to download, view or use Content free of charge on Google Play. Additional limitations may apply to your access and use of certain free Content.

**Purchase of Content**. When you buy Content on or using Google Play you will enter into a separate sale contract based on these Terms (as applicable) with the seller which will be either:

(a) Google Digital Inc. or

(b) provider of the Content (the "**Provider**"), including where Google Digital

34

Inc. is acting as an agent for the Provider.

The separate sale contract is in addition to these Terms.

For sales where Google is acting as an agent for the Provider, the statement, in the Google ToS, that the Google ToS "do not create any third party beneficiary rights", does not apply to your use of Google Play.

Your contract for the purchase and use of Content is completed once you receive the email from Google confirming your purchase of that Content, and performance of this contract begins as soon as the purchase is complete.

**Pre-orders.** When you place a pre-order for Content, your contract for the purchase and use of that item is completed when the Content is made available to you, and you will be charged for the purchase at that time. You can cancel your pre-order at any time up to the point at which the Content becomes available to you. We will need to cancel your pre-order if the Content is withdrawn from sale through Google Play before it is made available and we reserve the right to cancel your order in the event the price changes before your order is fulfilled.

**Family Payment Method**. If you are the family manager of a family group on Google Play, you will be required to set up a valid family payment method for your family members to use to purchase Content on Google Play and within apps. You will be responsible for all of your family members' purchases of Content using the family payment method. If a family group is deleted, or a family member leaves the family group, you may be charged for pending purchases made by family members using the family payment method.

**Google Payments.** In order to purchase Content through Google Play, you must have a Google Payments account and agree to the Google Payments Terms of Service.The Google Payments Privacy Notice applies whenever you purchase Content using a Google Payments account. You are responsible for all amounts payable associated with purchases made through Google Play on your Google Payments account.

**Other Payment Processing Methods.** Google may make available to you

various payment processing methods in addition to Google Payments to facilitate the purchase of Content through Google Play. You must abide by any relevant terms and conditions or other legal agreement, whether with Google or a third party, that governs your use of a given payment processing method. Google may add or remove payment processing methods at its sole discretion. You are solely responsible for all amounts payable associated with purchases you make on Google Play.

**Eligibility for Carrier Billing.** In order to determine your eligibility to have purchases of Content that you make through your Devices billed to your network provider's account, when you create a Google Play account on a Device, we will send identifiers of your Device, e.g., subscriber ID and SIM card serial number, to your network provider. To permit this you will need to accept the network provider's terms of service. The network provider may send us your billing address information. We will hold and use this information in accordance with Google's Privacy Policies and Google Payments Privacy Notice.

**Pricing.** Pricing and availability of all Content displayed through Google Play are subject to change at any time prior to purchase.

**Taxes."Taxes"** means any duties, customs fees, levies or taxes (other than income tax) associated with the sale of Content, including any related penalties or interest. You are responsible for any Taxes and must pay for Content without any reduction for Taxes. If the seller of Content or Google is obligated to collect or pay Taxes, the Taxes will be charged to you. You must comply with any and all applicable tax laws, including the reporting and payment of any Taxes arising in connection with your use of Google Play or the purchase of Content on or through Google Play. The reporting and payment of any such applicable Taxes are your responsibility.

**All Sales Final.** See Google Play's Refund Policy for more information about your rights to withdraw, cancel, or return purchases for a refund. Except as expressly set out in the Google ToS, Google Play's Refund Policy or the refund policies of the Provider, all sales are final, and no returns, replacements or refunds are permitted. If a replacement, return or refund is granted for any transaction, the transaction may be reversed, and you may no longer be able

to access the Content that you acquired through that transaction.

**Subscriptions.** Subscriptions are automatically charged each billing period (whether weekly, monthly, annually, or another period), and you may be charged no earlier than 24 hours before the beginning of each billing period.

**(a)Trials Periods.** When you subscribe to Content for a price, you may receive access to the subscription benefits at no charge for a specified trial period, after which you will be charged until you cancel your subscription. **To avoid being charged, you must cancel before the end of the trial period.** Once you cancel your trial, you will immediately lose access to the Content and any subscription privileges unless otherwise specified. Access to such trial periods may be limited to a certain number of trials for each user during a given period, or other restrictions.

**(b)Cancellations.** You may cancel a subscription at any time before the end of the applicable billing period as described in the Help Center, and the cancellation will apply to the next period. For example, if you purchase a monthly subscription, you may cancel that subscription at any time during any month of the subscription, and the subscription will be cancelled at the end of your then-current billing period. You will not receive a refund for the current billing period, except as otherwise provided in Google Play's Refund Policy (for example where Content is defective).

**(c)Reductions for Print Subscribers.** Some Providers of periodicals may allow you to purchase a subscription of periodical Content on Google Play at a reduced rate if you are already a print subscriber. If you cancel your print subscription of that periodical or your print subscription expires and you do not renew it, your reduced subscription rate of that Content on Google Play will be cancelled automatically.

**(d)Price Increases.** When you purchase a subscription, you will initially be charged at the rate applicable at the time of your agreement to subscribe. If the price of the subscription increases later, Google will notify you. The increase will apply to the next payment due from you after the notice, provided that you have been given at least 30 days' prior notice before the charge is made. If you are given less than 30 days' prior notice, the price

increase will not apply until the payment after the next payment due. If you do not wish to pay the increased price for a subscription, you may cancel the subscription as described in the Cancellations section of these Terms, and you will not be charged further amounts for the subscription, provided you have notified us before the end of the current billing period. Where the Provider increases the price of a subscription and consent is required, Google may cancel your subscription unless you agree to the new price. If your subscription is cancelled and you later decide to re-subscribe, you will be charged at the then current subscription rate.

## 4. Rights and Restrictions

**License to Use Content.** After completing a transaction or paying the applicable fees for Content, you will have the non-exclusive right, solely as expressly permitted in these Terms and associated policies, to store, access, view, use, and display copies of the applicable Content on your Devices or as otherwise authorized for your personal, non-commercial use only. All rights, title and interest in Google Play and Content not expressly granted to you in the Terms are reserved. Your use of apps and games may be governed by the additional terms and conditions of the end user license agreement between you and the Provider.

**Violation of License Terms.** If you violate any of the Terms, your rights under this license will immediately terminate, and Google may terminate your access to Google Play, the Content or your Google Account without refund to you.

**Restrictions**: You may not:

- display (in part or in whole) the Content as part of any public performance or display even if no fee is charged except (a) where such use would not constitute a copyright infringement or violate any other applicable right or (b) as specifically permitted and only in the exact manner provided.
- sell, rent, lease, redistribute, broadcast, transmit, communicate, modify, sublicense, transfer, assign any Content to any third party including with regard to any downloads of Content that you may obtain through Google Play except as specifically permitted and

only in the exact manner provided.

- use Google Play or any Content in conjunction with any stream-ripping, stream capture or similar software to record or create a copy of any Content that is presented to you in streaming format.
- use Content as part of any service for sharing, lending or multi-person use, or for the purpose of any other institution, except as specifically permitted and only in the exact manner provided.
- attempt to, or assist, authorize or encourage others to circumvent, disable or defeat any of the security features or components that protect, obfuscate or otherwise restrict access to any Content or Google Play.
- remove any watermarks, labels or other legal or proprietary notices included in any Content, or attempt to modify any Content obtained through Google Play, including any modification for the purpose of disguising or changing any indications of the ownership or source of Content.

**Third-Party Provisions.** Notwithstanding anything to the contrary in these Terms, the third parties who license their Content to Google are intended third party beneficiaries under these Terms solely with respect to the specific provisions of these Terms that directly concern their Content (**"Third-Party Provisions"**), and solely for the purpose of enabling such third parties to enforce their rights in such Content. For the avoidance of doubt, nothing in these Terms confers a third-party beneficiary right upon any party, with respect to any provision that falls outside the Third Party Provisions, which includes but is not limited to any provisions or agreements incorporated by reference, or that may be referenced without incorporation, in these Terms.

**Play Policies.**Posting reviews on Google Play is subject to the following policies. If you want to report abuse or other content violations, click here.

**Defective Content.** Once Content is available to you through your account, you should check the Content as soon as reasonably possible to ensure that it functions and performs as stated, and notify us or Provider as soon as reasonably possible if you find any errors or defect. See the Google Play Refund Policy for more information.

39

**Removal or Unavailability of Content.** Subject to the Terms, Content that you purchase or install will be available to you through Google Play for the period selected by you, in the case of a purchase for a rental period, and in other cases as long as Google has the right to make such Content available to you. In certain cases (for example if Google loses the relevant rights, a service or Content is discontinued, there are critical security issues, or there are breaches of applicable terms or the law), Google may remove from your Device or cease providing you with access to certain Content that you have purchased. For Content sold by Google Digital Inc. you may be given notice of any such removal or cessation, when possible. If you are not able to download a copy of the Content before such removal or cessation, Google may offer you either (a) a replacement of the Content if possible or (b) a full or partial refund of the price of the Content. If Google issues you a refund, the refund shall be your sole remedy.

**Multiple Accounts.** If you have multiple Google Accounts with different user names, in some cases you may transfer Content out of an account and into another account, provided you are the owner of each such account and provided Google has enabled a feature of the relevant service allowing such transfers.

**Limits on access on Devices.** Google may from time to time place limits on the number of Devices or software applications you may use to access Content. Please visit the Google Play Movies & TV/Google TV Usages Rules for more information about these limits for Google Play Movies & TV/Google TV.

**Dangerous Activities.** None of the Services or Content are intended for use in the operation of nuclear facilities, life support systems, emergency communications, aircraft navigation or communication systems, air traffic control systems, or any other such activities in which case the failure of the Services or Content could lead to death, personal injury, or severe physical or environmental damage.

**Google Play Movies & TV/Google TV.** For additional details and restrictions regarding your access and use of Google Play Movies & TV/Google TV, see the Google Play Movies & TV/Google TV Usage Rules.

**SECTION 2: "Learn about Google Play services" Help Center PAGE**

**Learn about Google Play services**

Google Play services is core system software that enables key functionality on every certified Android device, and it is different from the Google Play Store. There are three types of core device features Google Play services provides:

**Security and reliability**

Google Play services helps to ensure the security and reliability of an Android device, and keep devices updated with the latest security features. This includes:

- Google Play Protect, which can warn users if an app contains known malware.
- Identification and validation of secure connections, such as allowing a device to safely and automatically recognize and connect to other devices, or share files or apps with Android devices nearby, or verify that user activity, including interactions with ads, involves real devices.
- Protection of apps from fraud and security threats through SafetyNet.
- End to end encrypted backup of your data when users have a lock screen passcode.
- Management and protection of your passwords.

**Developer APIs**

Google Play services provides developers thousands of continually updated APIs that enable them to deliver high-quality experiences in their apps, such as:

- Streaming media using Google Cast.
- Integrating Google Maps to enhance app functionality.
- Providing accurate location information through the fused location provider when apps have permission to access location.
- Enabling services that allow developers to build advertising constructs according to user and app settings.
- Sending timely notifications via a messaging transport layer.

**Core device services**

Google Play services enables core services on Android devices. For example:

- When users make an emergency call to a supported emergency number, Google helps local emergency services directly receive the device's location.

42

- Google's autofill services help users save time and reduce typing errors.
- Nearby Share allows users to send and receive files with their contacts or anonymously.
- Find Hub makes it easy to locate, lock, or wipe a lost device.
- Fast Pair makes it easy to connect Bluetooth accessories using your Google account.

Google Play services can gradually enable new features, including experimental features, and may disable them based on Google policies. This facilitates the roll-out of new software and also allows Google to collect information to improve its products and services, potentially including services related to advertising.

Also, when a user signs into their Google account on their device, they can update their Google settings, manage the security of their account, and sync important data, such as their Google Contacts, across devices.

**Why Google Play services collects data**

Google Play services collects data on certified Android devices to support core device features.

Collection of limited basic information, such as an IP address, is necessary to deliver content to a device, app, or browser. Device manufacturers also provide Google Play services with permission to access certain data on a device, such as location and contacts, to support these features.

Actual data collection varies depending on device settings configured by a user, the apps and services installed or used on a device, the device manufacturer, and a ~~user's~~user's Google account settings. In many instances, Google Play services will access data locally on the device without collecting data off the device.

To support each of the functions described above, Google Play services may collect information for the following reasons:

**Security and fraud prevention**

Google collects data through Google Play services to help protect users, Google services, and third party developers'' apps and services from fraud, spam, and abuse. This includes:

- Information to validate that a request is coming from a real user and information about installed apps, including the results of malware scans.
- Google Account and login information if a user is signed in on a

43

device or moves their data to a new device.

- Google may collect a ~~device's~~device's phone number to provide account recovery services and to log users into phone number based services (like Google Meet).
- Hardware identifiers such as IMEI, MAC addresses, and serial numbers, to update devices with the latest security patches and to monitor trends across the Android ecosystem, such as how long different types of devices stay in service. Google's Device Configuration Service, which collects data to ensure that devices remain up-to-date and are working as well as possible, is part of Google Play services.

**Support and improve the Android ecosystem**

As described above, Google Play services provides a number of APIs and core device services that enable Android to be a feature-rich, connected platform. Google may collect data about these services and APIs to help provide, maintain and improve them. Google collects certain information about your device, the software on it, and your usage of it. Depending on device settings, Google may collect additional information about a device. Examples include:

- Google collects data to understand how these APIs are used and to help ensure that they function correctly.
- If Google Location Accuracy is enabled, in addition to providing more accurate location on a device, location information may be used in an anonymous way to improve location-based services. This includes periodically collecting information about the locations of wireless signals and sensors observed by your device to crowdsource location estimates.
- If a device's usage and diagnostics control is enabled, Google collects additional information about device usage and how well a device is working to improve products and services, like Google apps and Android devices~~.~~, potentially including services related to advertising. Turning off this control doesn't affect your device's ability to send or receive some information, including the information needed for essential services such as system updates and security, and won't affect info that apps might collect.

**Provide Google services**

If a user uses Google apps and services on Android, Google collects data through Google Play services to provide and improve those apps and services, including ads shown in those apps and services. For example:

- Depending on a user's settings, Google collects data like contacts and

44

bookmarks to sync them across devices and the cloud.

- Google Play services syncs a user's Google account settings across devices, and collects information to help protect their account.
- Google Play services may collect data to enable embedded app functionality like Google Maps.
- Google Play services help users interact and send messages directly to businesses.
- When using Google Pay, Google Play services helps users manage their payment info, make contactless payments, or use a digital car key securely.
- Google collects data when you use a Play Games profile or services.
- For users with the "Saves your activity from apps on this device" setting enabled under ~~Web & App Activity~~ Web & App Activity on their device, Google may save activity data from apps on the device to their Google Account so that it can be used to personalize Google apps and services.

**Google Play services can use cellular data**

To enable the functions described above, Google Play services causes Android devices to exchange information with Google over cellular networks if the device is not connected to Wi-Fi, meaning Google Play services may use your mobile data. This may occur multiple times a day and when you are not actively using your device. How much cellular data Google Play services uses depends on how often the device connects to Wi-Fi, device and account settings, and other factors. While certain user settings may limit the frequency and volume of some of these information exchanges, they cannot be turned off.

**How to disable Google Play services**

While not recommended, you may choose to disable Google Play services by following these steps:

1. Open the Settings app on your Android device.

2. Scroll down and tap on Apps (or Apps & notifications > App info).

3. Tap on the option to show all apps, which may be labeled All apps, App Info, or require you to tap a three-dot menu icon to show system apps.

4. Scroll through the list to find and tap on Google Play services.

5. Tap the Disable button.

6. You may receive a warning notification about the impact on your device, please review and tap to confirm and disable the app if you still choose to proceed.

45

**SECTION 3: RELEVANT SCREENS IN setup flow on new Google-certified Android devices**

**Pixel Devices:**

**Use location:**

Allow apps and services with location permission to use your device's location. Location Accuracy uses information about wireless signals, such as Wi-Fi access points, cellular network towers, and GPS, along with device sensor data, such as accelerometer and gyroscope, to estimate more accurate device location, which apps and services use to provide location-based features. To do this, Google periodically processes information about device sensors and wireless signals near you to contribute to crowdsourced wireless signal locations. This may use cellular data when you are not connected to Wi-Fi.

Google uses this information without identifying you to improve location accuracy and location-based services; and improve, provide, and maintain Google's services. Google processes this information based on the legitimate interests of Google and third parties to serve users' needs.

You can turn off location or Location Accuracy at any time in your device's location settings.

If Location Accuracy is off, no Location Accuracy data will be collected. Only GPS and device sensors are used, if available, to determine your device's location. This may impact the availability and accuracy of locations for apps and services such as Google Maps and finding a lost device.

**Send usage and diagnostic data (under Device maintenance):**

46

Help improve your Pixel device experience by automatically sending diagnostic, device, and usage data to Google. Google will associate this data with your device as well as information connected with your Google Account to optimize device performance and system stability, inform feature development, help devices last longer, understand future feedback you provide and support other improvements to the Pixel product portfolio and the Android ecosystem. For example, Google may associate usage and diagnostic data from your device with other Google devices and services you use to improve how Google devices perform together. Learn more about how Google uses this data [LINK].

Some aggregate data will help Google apps and partners, such as Android Developers. You can control this feature from Settings > Security & Privacy > More security & privacy settings.

This is general information about your device and how you use it (such as battery level, system and app activity, and errors). The data will be used to improve the Pixel Product portfolio along with the Android ecosystem and some aggregated information will also help Google apps and partners, such as Android developers, make their apps and products better.

Turning off this feature stops your device from sending certain information, but doesn't affect your device's ability to send or receive some information, including the information needed for essential services such as system updates and security.

You can control this feature from Settings > Security & Privacy > More security & privacy settings. Select Usage & diagnostics from the menu.

**Use of cellular data (under Device maintenance):**

By tapping "Accept" at the bottom of this screen and continuing, you agree that

47

software and apps on your device may automatically communicate with Google servers for a range of purposes, including using your cellular data when you are not connected to Wi-Fi – learn more. These purposes include, but are not limited to, safely rolling out new features, fixing problems on your device, maintaining and monitoring your device's health, developing new products, protecting the Android ecosystem, supporting advertising, and automatically downloading and configuring software, possibly using cellular data.  Some of these communications may happen in the background, when you are not directly interacting with your device, including when the device's screen is locked.  You can control some of the communications through user settings, including the settings on this screen, but some of the communications cannot be turned off.  You are responsible for any fees incurred from third parties (such as your mobile carrier) in connection with these cellular communications.

**Non-Pixel Devices:**

**Use location:**

Allow apps and services with location permission to use your device's location. Location Accuracy uses information about wireless signals, such as Wi-Fi access points, cellular network towers, and GPS, along with device sensor data, such as accelerometer and gyroscope, to estimate more accurate device location, which apps and services use to provide location-based features. To do this, Google periodically processes information about device sensors and wireless signals near you to contribute to crowdsourced wireless signal locations. This may use cellular data when you are not connected to Wi-Fi.

Google uses this information without identifying you to improve location accuracy and location-based services; and improve, provide, and maintain Google's services. Google processes this information based on the legitimate interests of Google and third parties to serve users' needs.

You can turn off location or Location Accuracy at any time in your device's location settings.

If Location Accuracy is off, no Location Accuracy data will be collected. Only GPS and device sensors are used, if available, to determine your device's location. This may impact the availability and accuracy of locations for apps and services such as Google Maps and finding a lost device.

Learn more about Location Accuracy [LINK]

**Send usage and diagnostic data (under Device maintenance):**

Help improve your Android device experience by automatically sending diagnostic, device, and app usage data to Google. This will help battery life, system and app stability, and other improvements. Some aggregate data will also help Google apps and partners, such as Android developers. If your additional Web & App Activity setting is turned on, this data may be saved to your Google Account.

This is general information about your device and how you use it (such as battery level, system and app activity, and errors). The data will be used to improve Android devices and some aggregated information will also help Google apps and partners, such as Android developers, make their apps and products better.

Turning off this feature stops your device from sending certain information, but doesn't affect your device's ability to send or receive some information, including the information needed for essential services such as system updates and security.

You can control this feature from Settings > Google. Select Usage & diagnostics from the menu.

49

If your additional Web & App Activity setting is turned on, this data may be saved to your Google Account. You can see ~~your~~that data, delete it, and change your account settings at account.google.com.

**Use of cellular data (under Device maintenance):**

By tapping "Accept" at the bottom of this screen and continuing, you agree that software and apps on your device may automatically communicate with Google servers for a range of purposes, including using your cellular data when you are not connected to Wi-Fi – learn more. These purposes include, but are not limited to, safely rolling out new features, fixing problems on your device, maintaining and monitoring your device's health, developing new products, protecting the Android ecosystem, supporting advertising, and automatically downloading and configuring software, possibly using cellular data.  Some of these communications may happen in the background, when you are not directly interacting with your device, including when the device's screen is locked.  You can control some of the communications through user settings, including the settings on this screen, but some of the communications cannot be turned off.  You are responsible for any fees incurred from third parties (such as your mobile carrier) in connection with these cellular communications.

50

**Exhibit B to Settlement Agreement**

**PORTION OF PROPOSED FINAL APPROVAL ORDER VACATING JURY VERDICT AND JUDGMENT**

In connection with their motion for final approval of the Settlement, the parties also request that the Court vacate the July 1, 2025 jury verdict and July 23, 2025 judgment on the verdict.[1] Specifically, the parties' Settlement Agreement provides: "The Parties agree to jointly seek vacatur of the verdict and judgment in this matter … to be made conditional on approval of the Settlement and satisfaction of all other contingencies set forth in [Paragraph 14.1 of the agreement], such that [the] Settlement is fully consummated." For the reasons set forth below, the parties' request for vacatur is GRANTED subject to the contingencies and conditions set forth below.

California Code of Civil Procedure, section 128(a)(8) affords trial courts broad discretion to vacate a judgment and jury verdict "so as to make [it] conform to law and justice." (*Redwood Coast Watersheds Alliance v. State Bd. of Forestry and Fire Protection* (1999) 70 Cal. App. 4th 962, 969.; see *Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters* (9th Cir. 1982) 686 F.2d 720, 722 [in deciding whether to grant vacatur after a settlement, the trial court weighs "the competing values of finality of judgment and right to relitigation of unreviewed disputes"].)

The Court finds that vacatur is in the public interest. The public policy in favor of settlement weighs in favor of vacatur here, particularly given the novel issues of state law raised by the parties, which would require extensive litigation to resolve in the appellate courts. (See *Redwood Coast Watersheds*, 70 Cal. App. 4th at p. 969 [describing "law and justice" standard;

---

[1] The judgment on the jury's verdict was not a final judgment because it left outstanding Plaintiffs' request for injunctive relief and other issues, and would not become certain and final until appellate proceedings conclude.

*see also In re Apollo Grp. Inc. Sec. Litig.* (D. Ariz. Apr. 20, 2012) 2012 WL 1378677, at \*10 [examining equitable factors and upholding vacatur of judgment following jury verdict]; *Hebrew Univ. of Jerusalem v. Gen. Motors LLC* (C.D. Cal. 2015) 2015 WL 9653154, at \*2-3 [upholding vacatur of judgment following settlement in part due to uncertainty of outcome on appeal].) Indeed, "vacatur would spare the parties and the judicial system the burden of further litigation, including resolution of [an] appeal on multiple novel issues of California law and any remand proceedings that may result therefrom." (*Cisco Sys., Inc. v. Arista Networks LLC* (N.D. Cal. Oct. 1, 2018) 2018 WL 11370984, at \*2); see *Union Bank of Cal. v. Braille Inst. of Am.* (2001) 92 Cal. App. 4th 1324, 1329 ["The public interest is advanced because disputes resulting in two appeals . . . will be resolved without further expense. . . ."].)

Vacatur is also in the public interest because the parties' settlement agreement will permit resolution of a separate putative class action in the Northern District of California alleging conversion under California law. (See *Taylor v. Google LLC* (N.D. Cal. 2021) No. 5:20-cv-07956-VKD.) Resolving both the state and federal litigation through settlement will promote judicial efficiency and avoid the risk of inconsistent results in state and federal court. (See *Union Bank of Cal.*, 92 Cal. App. 4th at p. 1329 [emphasizing efficiency of avoiding two appeals and a related proceeding]; *Cisco Sys., Inc.*, 2018 WL 11370984, at \*2 [describing efficiency of avoiding appeal].) It will also benefit the class members in this case, who gain the certainty of payment through the Settlement without risking reversal or remittitur of the jury's damages award on appeal, and who will gain the benefit of the stipulated injunction provided in the Settlement.

Vacatur would also serve the value of finality. The parties' Settlement "provides a mechanism to address the . . . claims underlying this action," thus finally resolving the issues in this case, including Plaintiffs' outstanding request for injunctive relief. (*Cisco Sys., Inc.*, 2018 WL

11370984, at *3; cf. *Nguyen v. Calhoun* (2003) 105 Cal. App. 4th 428, 436 [judgment not final if it "fails to complete the disposition of all the causes of action between the parties"].)

Along with the settlement in *Taylor*, the Settlement resolves state and federal actions involving consumers in all 50 states, so vacating the jury verdict and judgment will have no impact on the resolution of disputes in future cases, which are resolved through the nationwide scope of the Settlement. For the same reasons, vacatur in this case is unlikely to disincentivize pretrial settlement negotiations in other cases or otherwise affect public perception of the utility of litigation. (See *Union Bank*, 92 Cal. App. 4th at p. 1331 ["When lawyers responsibly settle litigation, public trust in the courts is advanced."].) The fact that no final judgment has been entered and no appeal has been resolved further weighs in favor of vacating the jury verdict and judgment. The parties jointly request this disposition as part of a settlement negotiated by all parties in good faith, mitigating any concern that vacatur would benefit only one party. (See *Cisco Sys., Inc.*, 2018 WL 11370984, at *2.) Further, the parties agree that no hardship to either side will result from vacating the verdict and judgment in connection with the parties' Settlement.

After taking into account the full circumstances of this case and the parties' comprehensive Settlement—including all applicable legal and equitable factors, the novel issues of state law that have not been finally resolved on appeal, the case-specific evidence that Plaintiffs submitted at trial, and the fact that no final judgment has been entered in this case—the Court concludes that the judgment and jury verdict should be vacated in accordance with the parties' Settlement, such that they will have no preclusive effect. (See *Bates v. Union Oil Co. of Cal.* (9th Cir. 1991) 944 F.2d 647, 650 [court may determine preclusive effect of judgment] [citing *Ringsby*, 686 F.2d at p. 723].)

For the reasons stated above, this Court GRANTS the parties' motion and ORDERS that

the jury verdict and judgment on the verdict entered on July 23, 2025, shall be VACATED upon satisfaction of all other contingencies set forth in Paragraph 14.1 of the parties' Settlement Agreement.  In that event, neither the jury verdict nor judgment shall have any preclusive effect. Notwithstanding anything provided elsewhere in this Order, in the event the settlement is not finally approved by this Court, is reversed or vacated on appeal (and not reinstated), or is terminated by any party for any reason, then: (1) this Order itself shall be automatically be vacated and be void ab initio; (2) the jury verdict and judgment shall be reinstated; and (3) the litigation shall resume as if this order never  existed.

## FIRST AMENDMENT TO THE SETTLEMENT AGREEMENT

Plaintiffs Attila Csupo, Kerry Hecht, and Andrew Burke (the "Class Representatives"), on behalf of themselves and the Class, as defined in the Settlement Agreement and Release ("Settlement Agreement") dated December 23, 2025 (collectively, the "Plaintiffs") and Defendant Google LLC ("Google" or "Defendant," and with Plaintiffs, the "Parties"), hereby amend the Settlement Agreement as follows:

WHEREAS, on December 22, 2025, the Court entered an order setting the Approval Hearing for the Parties' Settlement for February 24, 2026 at 1:30 p.m.;

WHEREAS, in the above-referenced order, the Court ordered all briefs and other materials submitted in support of approval of the Settlement shall be filed by February 10, 2026;

WHEREAS, on December 23, 2025, the Parties entered into the Settlement Agreement that will be the subject of the Court's February 24, 2026 hearing;

WHEREAS, Paragraph 9.1 of the Settlement Agreement states that Plaintiffs shall move for entry of the Final Order and Judgment at least thirty-five days before the Approval Hearing;

WHEREAS, thirty-five days before the Approval Hearing is January 20, 2026, which predates the Court-ordered February 10, 2026 deadline;

WHEREAS, the Parties wish to amend the Settlement Agreement to conform with the Court's order pursuant to Paragraph 16.11 of the Settlement Agreement, which allows such amendments;

NOW, THEREFORE, THE PARTIES AGREE THAT THE SETTLEMENT AGREEMENT IS AMENDED AS FOLLOWS:

The first sentence of Paragraph 9.1 shall be amended by removing the stricken language and adding the bolded language as follows:

> ~~At least thirty-five (35) days before the Approval Hearing,~~ Plaintiffs, jointly and/or in consultation with Defendant, shall move the Court for entry of the Final Order and Judgment **on or before February 10, 2026**.

1

**Agreed and Accepted**

On behalf of Plaintiffs:


Dated: January 13, 2026                           BARTLIT BECK LLP


By: _____

Glen E. Summers
*Counsel for Plaintiffs*


Dated: January 13, 2026                           KOREIN TILLERY LLC


By: _____

Marc A. Wallenstein
*Counsel for Plaintiffs*


2

On behalf of Defendant:                    COOLEY LLP


Dated: January 13, 2026            By:    _____
                                          Whitty Somvichian
                                          *Counsel for Google LLC*

3