# Exhibit 1



Korein Tillery—with offices in Chicago, St. Louis, San Diego, and Naples—is one of the country's most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 14 years. Most of our attorneys have represented both plaintiffs and defendants at some point in their careers, and, combined, we've handled cases covering virtually every conceivable substantive area of the law. We've litigated cases for clients ranging from individuals and certified classes to governmental entities and billion-dollar, multi-national corporations. Collectively, we've tried hundreds of cases to verdict, with several verdicts exceeding 10 figures. Our attorneys have been nominated for numerous regional and national trial lawyer awards, and we've won many landmark decisions in state and federal appellate courts, including the Supreme Court of the United States.

The National Law Journal has repeatedly honored Korein Tillery as one of the country's top plaintiffs' firms by naming it to its "Plaintiffs' Hot List" seven times in the past 15 years.  In 2014 and 2015, Korein Tillery was named by the NLJ as a member of its top 50 Elite Trial Lawyers. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit,* 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006). In *Kircher,* Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision.

Korein Tillery has been appointed as class counsel in more than fifty class actions and has successfully negotiated some of the country's largest class action settlements. *See, e.g., Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) ($185 million settlement); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CIV. 7789 (LGS), 2018 WL 5839691 (S.D.N.Y. Nov. 8, 2018) ($2.3 billion in combined settlements); *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ($386.5 million in combined settlements); *Parker v. Sears Roebuck & Co.,* Case No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc.*, 04-2819 (D.N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *City of Greenville v. Syngenta Crop Prot., Inc.*, 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ($105 million settlement); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

*Korein Tillery is a Limited Liability Company*

**Key Team Members:**

***George Zelcs*** focuses his practice on complex commercial litigation including antitrust, consumer fraud, securities, qui tam/whistleblower, and pharmaceutical litigation in state and federal courts. Mr. Zelcs has conducted bench and jury trials throughout the United States, including *Price, et al vs. Philip Morris USA, Inc.*, No. 001-0112 (Third Judicial Circuit, Illinois), a consumer fraud class action that resulted in a $10.1 billion dollar judgment. He frequently serves as lead counsel in complex, multi-party litigations. He currently serves on the leadership team representing digital publishers in *In re Google Digital Advertising Antitrust Litigation*, and previously represented the National Credit Union Administration in its RMBS litigation. Mr. Zelcs also played an instrumental role in developing and litigating *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y), a case that resulted in $2.3 billion in court-approved settlements. Mr. Zelcs completed his undergraduate degree at Indiana University in 1976 and received his law degree at Chicago-Kent College of Law. He serves on the Chicago-Kent Board of Overseers and as a Trustee for the Chicago-Kent Institute on the Supreme Court of the United States. In addition to serving as co-lead counsel for the publisher class in *In re Google Digital Advertising Antitrust Litigation*, Mr. Zelcs has been appointed co-lead counsel in *In re Motor Fuel Temperatures Sales Practices Litigation*, No. 07-md-1840 (D. Kan.), and *Axiom Investment Advisors LLC v. Barclay Bank Plc*, No. 15-cv-9323 (S.D.N.Y.).

### Stephen M. Tillery

Stephen Tillery is the senior and founding member of the firm. With more than 35 years of trial experience, Mr. Tillery has acted as lead counsel in hundreds of complex cases at both the trial and appellate levels that have resulted in some of the largest trial verdicts and settlements in the United States.

Mr. Tillery completed his undergraduate studies at Illinois College (B.A. *magna cum laude*, Phi Beta Kappa) in 1972. Thereafter he attended Saint Louis University School of Law (J.D. *cum laude*, Order of the Woolsack, 1976). While obtaining his law degree, Mr. Tillery was a law clerk for the Honorable James L. Foreman, United States District Court for the Southern District of Illinois. Following graduation from law school, he was a law clerk to the Honorable George J. Moran, Fifth District Court of Appeals of Illinois.

Mr. Tillery is a member of the Illinois Trial Lawyers Association, where he has been one of the elected Board of Managers since 1987, and for which he has chaired and served on numerous committees. Mr. Tillery is also a member of the Illinois Bar Association, the Missouri Association of Trial Attorneys, the St. Louis Metropolitan Bar Association, the St. Clair County Bar Association, and the American Association for Justice. He serves as a board member of Public Justice. Mr. Tillery was named one of the National Law Journal's 2023 Plaintiffs' Lawyer Trailblazers, in recognition of his 11 years of work to secure a massive settlement from Syngenta and Chevron for clients who developed Parkinson's disease and other neurological defects as a result of exposure to the weed killer Paraquat. He was also named Litigation Daily's Litigator of the Week on May 1, 2014, for successfully reinstating the trial court's $10.1 billion verdict in *Price v. Philip Morris, Inc.*, 2014 IL App (5th) 130017,

2014 WL 1696280 (Ill. App. Ct. Apr. 29, 2014).

Mr. Tillery has written numerous legal articles and has served as lecturer, moderator, and panel member at dozens of legal seminars relating to litigation and trial practice. He was an adjunct professor at Saint Louis University School of Law for eleven years, and was Co- Director of the Advanced Trial Advocacy Program there from 1983 to 1988.

**Marc Wallenstein** is a former federal prosecutor and has tried numerous cases to verdict. As an appellate advocate, Mr. Wallenstein is undefeated before the United States Court of Appeals for the Ninth Circuit, having won all ten of the appeals in which he served as lead counsel. Mr. Wallenstein won an appeal before the Ninth Circuit on behalf of Android users nationwide, reversing the district court's dismissal of the complaint, *Taylor v. Google*, No. 22-16654 (9th Cir. Feb. 28, 2024). Mr. Wallenstein previously served as trial counsel for thousands of minor league baseball players who won the right to be paid minimum wage by Major League Baseball, achieving a landmark $185 million settlement on the eve of trial. *Senne v. Office of the Comm'r of Baseball*, No. 14-cv-608-JCS (N.D. Cal.). Before joining Korein Tillery, Mr. Wallenstein served for six years as Assistant U.S. Attorney in the District of Hawaii. Mr. Wallenstein successfully prosecuted the first terrorism case ever brought against an active duty member of the U.S. military and obtained record fines in numerous environmental cases. Prior to his time at the Department of Justice, Mr. Wallenstein served for three years as a Prosecutor at the Office of the Chief Prosecutor of Military Commissions, U.S. Department of Defense. There he prosecuted violations of the law of war committed by enemy alien belligerents before a military commission in Guantanamo Bay, Cuba. Mr. Wallenstein served as an appellate and pretrial motions attorney on a range of cases, including the prosecution of Khalid Shaikh Mohammed and four others accused of perpetrating the attacks of September 11, 2001. Mr. Wallenstein is a graduate of Harvard College and Yale Law School, and previously served as a law clerk in the Southern District of New York and the Ninth Circuit Court of Appeals. In his spare time, he teaches a course in Trial Practice at Yale Law School.

**Carol O'Keefe** is a partner who focuses on complex litigation, including representing antitrust plaintiffs in foreign exchange, commodity futures, and digital economy class actions. Ms. O'Keefe currently plays a leading role in representing digital publisher plaintiffs in *In re Google Digital Advertising Antitrust Litigation*. Ms. O'Keefe works closely with economic and technology experts and taken numerous depositions of software engineers and product managers. Prior to joining Korein Tillery, Ms. O'Keefe was an associate at Harter Secrest & Emery LLP, where she focused on complex litigation, including antitrust, securities, employment discrimination, and civil rights, and worked as an Adjunct Lecturer at the State University of New York at Brockport, where she designed and taught courses in modern constitutional law and education law. Ms. O'Keefe received her B.A. from Yale College *summa cum laude* in 1983 after three years of study, and she received her J.D. from Harvard Law School *cum laude* in 1986. She then served as a law clerk for Judge Michael A. Telesca (W.D.N.Y.).

**Michael Klenov** is a partner at Korein Tillery's St. Louis office. He is licensed to practice law in New York, California, Illinois, Missouri, and the District of Columbia, as well as numerous

3

federal trial and appellate courts. Throughout his career, Mr. Klenov has prosecuted complex, high-stakes lawsuits on behalf of individuals, businesses, and governmental entities in courtrooms across the country. He has helped his clients recover billions of dollars. Mr. Klenov has substantial experience in the areas of Securities, Antitrust, the Commodity Exchange Act ("CEA"), and the Employee Retirement Income Security Act ("ERISA"). Aided by his educational background in economics and financial institutions, Mr. Klenov has handled myriad cases involving financial markets ranging from publicly traded securities and over-the-counter bonds, to foreign currencies and commodity derivatives. He routinely works with economists, econometricians, and market specialists who develop models for estimating market impact and damages using large, complex datasets. Mr. Klenov has also worked closely with experts in many other fields, such as mortgage banking, agriculture, psychology, actuarial science, computer science, environmental science, and various forms of electronic trading and market-making. Mr. Klenov has taken and defended several hundred fact and expert depositions. He is also a prolific writer, having authored well over a hundred briefs filed in federal and state courts, and an effective oral advocate, having argued several dozen motions and first-chaired a federal jury trial to verdict.

**Chad Bell** is a partner in Korein Tillery's Chicago office. Mr. Bell received his B.A. in Economics and Political Science from Northwestern University in 2001 and his J.D. from the University of Virginia School of Law in 2006, where he served on the editorial board of the Virginia Law Review, as a Dillard Fellow teaching assistant for first-year Legal Research and Writing, and participated in the Criminal Defense Legal Clinic. He is currently representing investors in ethanol futures and options seeking to recover losses related to multi-year manipulation of ethanol markets; odd-lot bond investors alleging that large banks participated in a multi-year anticompetitive group boycott of electronic bond trading platforms that would have provided better pricing and more competition when trading bonds, costing those investors billions of dollars annually; a fund damaged by manipulation in violation of the Commodity Exchange Act during the so-called "Volmaggedon" spike in the Cboe's Volatiliaty Index on February 5-6, 2018; and Florida consumers who allege they were harmed in violation of the Florida Deceptive and Unfair Trade Practices Act in connection with their purchase of pre-need cremation services. Mr. Bell was also part of the team of Korein Tillery lawyers who have successfully recovered over $5.2 billion to-date in losses incurred by the National Credit Union Administration (NCUA), and millions of dollars for other insurance clients, arising from misrepresentations made about residential mortgage-backed securities in violation of the Securities Act of 1933 and state law. Mr. Bell is also experienced in matters of e-discovery, and has authored articles on e-discovery issues for the Uniform Commercial Code Law Journal.

**Ryan Cortazar** is a lawyer in Korein Tillery's Chicago office. He has led briefing and argued before multiple federal appeals courts and federal district courts. Mr. Cortazar is the Vice Chair of the City of Chicago Board of Ethics, having been appointed to the board by the mayor and city council in 2021. His practice focuses on antitrust, consumer protection, copyright, and securities and derivatives litigation in federal and state courts. He has experience in all stages of litigation, including pretrial investigations, jury trials, and appeals. He also works pro bono in the areas of voting rights, habeas corpus, prisoners' rights, and

educational rights. Mr. Cortazar served as a law clerk to the Honorable David F. Hamilton of the U.S. Court of Appeals for the Seventh Circuit. He also worked as a Redstone Fellow at the Chicago Lawyers Committee for Civil Rights where he helped shepherd automatic voter registration through the Illinois legislature; trained and led election protection teams; and testified at state and federal hearings. Mr. Cortazar received his A.B. *cum laude* from Harvard College and his J.D. *cum laude* from Harvard Law School where he was an articles editor of the Harvard Law Review.

**Devin Dippold** is an attorney in Korein Tillery's St. Louis office. Prior to joining Korein Tillery in 2016, Devin served as a law clerk to Justice S. Gene Schwarm at the Illinois Appellate Court, Fifth District and Judge Audrey Fleissig at the United States District Court for the Eastern District of Missouri. Devin received his J.D. from Washington University School of Law, where he graduated *magna cum laude* and served as an executive editor on the Washington University Law Review. Devin received his B.A. from McKendree College and his M.A. from Villanova University.

**Pamela Yaacoub** is an attorney in Korein Tillery's Chicago office, focusing on antitrust, consumer protection, and other complex litigation. Ms. Yaacoub is experienced in all aspects of litigation, including investigating claims, developing litigation strategy, drafting pleadings and dispositive motions, managing discovery, and preparing for trial and argument. She currently represents plaintiffs in *Nessel v. Roku*, No. 25-cv-11221 (E.D. Mich.), *Segal v. Amadeus IT Group*, No. 24-cv-1783 (N.D. Ill.), *Fontenot v. NCAA*, No. 23-cv-3076 (D. Colo.), and *Taylor v. Google*, No. 20-cv-7956 (N.D. Cal.). She also has extensive appellate experience, having briefed appeals before the Seventh Circuit, Federal Circuit, and Illinois Appellate Court.

Ms. Yaacoub clerked for the Honorable Jane Kelly of the United States Court of Appeals for the Eighth Circuit and the Honorable Edmond E. Chang of the United States District Court for the Northern District of Illinois. She also previously worked as a litigation associate at a litigation boutique and at an international law firm in Chicago. Ms. Yaacoub received her J.D. from Harvard Law School, where she represented clients in divorce, custody, and social security benefits proceedings as a member of the Harvard Legal Aid Bureau.

**The Firm's Recent Work:**

**In re GSE Bonds Antitrust Litig**.
Korein Tillery, along with co-counsel, alleged antitrust violations arising from coordinated price-fixing in the secondary market for bonds issued by the government-sponsored entities Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Farm Credit Banks, and Federal Home Loan Banks ("GSE Bonds"). Plaintiffs defeated two motions to dismiss and reached a settlement with all defendants, including Deutsche Bank Securities Inc., First Tennessee Bank, N.A., FTN Financial Securities Corp., Goldman Sachs & Co. LLC, Barclays Capital Inc., BNP Paribas Securities Corp., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., J. P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co., LLC, Nomura Securities International, Inc., SG Americas Securities LLC, TD

Securities (USA) LLC, and UBS Securities LLC. The combined settlement provided $386.5 million to class members and was approved by the court on June 18, 2020.

**Senne v. The Office of the Comm'r of Baseball, No. 14-CV-00608-JCS (N.D. Cal.).**
In this action, Korein Tillery was co-lead counsel for a class of minor league baseball players who alleged that MLB and MLB's member franchises failed to pay the players minimum wage, required overtime pay, or sometimes any wages at all. The players asserted two claims under the federal Fair Labor Standards Act ("FLSA") and an additional thirty-one under the wage-and-hour laws of several states.

On October 20, 2015, the Court granted the players conditional certification of a collective under the Fair Labor Standards Act. *Senne*, 2015 WL 6152476 (N.D. Cal. Oct. 20, 2015). A court-directed notice was sent, and around 2,300 players joined the collective. In March 2017, the court certified a Rule 23 class of minor leaguers who played in California. *Senne*, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017).

The parties cross-appealed, with MLB arguing that no class should have been certified, and the players arguing that the court should have certified additional classes. On August 16, 2019, the Ninth Circuit agreed with the players. It affirmed the certification of the class of players who worked in California, and it certified additional classes for players who worked during spring training and other periods in Arizona and Florida. MLB petitioned the Ninth Circuit for an en banc re-hearing, which was denied, and then petitioned the U.S. Supreme Court for review, which was also denied. 934 F.3d 918 (9th Cir. 2019), cert. denied, 141 S. Ct. 248 (2020).

On March 29, 2023, the Court granted final approval of a $185 million settlement in the case, one of the largest wage-and-hour settlements in history.

**In re: Foreign Exchange Benchmark Rates Antitrust Litigation, No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.).**
The global foreign exchange ("FX") market for currency is a $1-trillion-per-day market, with the dominant dealers representing over 90 percent of the global FX market. Beginning as early as 2003 and continuing through 2013, these dealers used communications in multiple secret chat rooms to conspire to fix spot prices in dozens of currency pairs, manipulate FX benchmark rates, and exchange key confidential customer information in an attempt to trigger client stop loss orders and limit orders. These dealers constituted some of the largest financial institutions in the world, including Bank of America, Barclays, BNP Paribas, Citigroup, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan Chase & Co., Morgan Stanley, Royal Bank of Scotland, and UBS.

Korein Tillery, working with co-counsel Scott+Scott Attorneys at Law, LLP and Hausfeld LLP, developed and filed a class action on behalf of individuals who entered into FX transactions in over-the-counter exchanges and/or on exchanges with these dealers, alleging violations of Sections 1 and 3 of the Sherman Antitrust Act and violations of the Commodity Exchange Act. As a result of nearly 6 years of work by Korein Tillery and its co-counsel costing the firms nearly $30 million in case-related expenses, $2.3 billion in court-approved settlements were reached with 15 of the 16 defendants, constituting one of the largest antitrust class action recoveries in history. Mediator Kenneth Feinberg concluded that this settlement would "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and described Korein Tillery and its co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers."

### In re Google Digital Publisher Antitrust Litigation.
Korein Tillery has been appointed interim co-lead counsel representing a class of online publishers that sell ad space on their websites using tools that they purchase from Google. Plaintiffs allege that Google engaged in a series of mutually reinforcing anticompetitive acts in adjoining markets to acquire and maintain monopoly power over the markets for these tools, in violation of the Sherman Act and California's Unfair Competition Law.

### In re: Google Play Consumer Antitrust Litigation.
Korein Tillery, working with co- counsel, filed the first consumer class action in the nation alleging that Google's operation of Google Play Store and Google Play Billing, among other actions, created a wrongful monopoly over the distribution of applications and payment for in-application purchases in the Android ecosystem. Over ten similar complaints followed and are now consolidated before Judge James Donato in the Northern District of California, where Korein Tillery serves as a member of the consumer class steering committee.

### National Credit Union Administration Mortgage-Backed Securities Litigation.
The National Credit Union Administration ("NCUA") is the independent federal agency created by the U.S. Congress to regulate, charter, and supervise federal credit unions. On behalf of the NCUA, Korein Tillery and co-counsel Kellogg, Hansen, Todd, Figel & Frederick filed approximately 20 federal lawsuits throughout 2011-2013 alleging that Wall Street investment banks misled credit unions about the quality of certain residential mortgage-backed securities ("RMBS"), causing billions of dollars of losses that the NCUA insured. More specifically, NCUA alleged that these banks violated the Federal Securities Act by representing in federally-regulated offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines when in fact the majority of the loans did not.

Throughout several years of contentious litigation, involving several successful appeals, Korein Tillery and Kellogg Hansen obtained more than $5.1 billion in legal settlements on NCUA's behalf, including but not limited to:

7

- *NCUA v. JP Morgan Chase Bank*, 2:13-cv-02012-JWL (D. Kan.) (obtained $1.4 billion settlement in Dec. 2013);
- *NCUA v. RBS Sec., Inc.*, 1:13-cv-06726-DLC (S.D.N.Y.) (accepted offer of judgment for $129.6 million plus fees in Sept. 2015);
- *NCUA v. Barclays Capital, Inc.*, 1:13-cv-06727-DLC (S.D.N.Y.) & 2:12-cv-02631-JWL (D. Kan.) (obtained $325 million combined settlement in Oct. 2015);
- *NCUA v. Wachovia Capital Markets LLC*, 1:13-cv-06719-DLC (S.D.N.Y.) & 2:11-cv-02649-JWL (D. Kan.) (obtained $53 million combined settlement in Oct. 2015);
- *NCUA v. Morgan Stanley & Co., Inc.*, 1:13-cv-06705-DLC (S.D.N.Y.) & 2:13-cv-02418-JWL (D. Kan.) (obtained $225 million combined settlement in Dec. 2015);
- *NCUA v. Goldman Sachs and Co.*, 1:13-cv-06721-DLC (S.D.N.Y.) & 2:11-cv-06521-GW-JEM (C.D. Cal.) (obtained $575 million combined settlement in Apr. 2016);
- *NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW-JEM (C.D. Cal.) (obtained $1.1 billion combined settlement in Sept. 2016);
- *NCUA v. UBS Securities, LLC*, 2:12-cv-02591-JWL (D. Kan.) (obtained $445 million settlement in Mar. 2017); and
- *NCUA v. Credit Suisse Sec. (USA) LLC*, 2:12-cv-02648-JWL (D. Kan.) (obtained $400 million settlement in Mar. 2017).

NCUA was the first federal regulatory agency for depository institutions to recover losses from investments in these securities on behalf of failed financial institutions. NCUA uses the net proceeds to reduce Temporary Corporate Credit Union Stabilization Fund (Stabilization Fund) assessments charged to federally insured credit unions to pay for the losses caused by the failure of five corporate credit unions.

Korein Tillery and Kellogg Hansen continue to prosecute several lawsuits on behalf of the NCUA against certain RMBS trustees regarding their alleged failure to perform their duties.

### *Sullivan v. DB Investments, Inc.*
Korein Tillery represented a nationwide class of diamond purchasers in an antitrust case against the country's largest diamond distributor. That case was consolidated with others in the Eastern District of Pennsylvania and Korein Tillery was appointed co-lead counsel. In that role, the firm helped negotiate injunctive relief and a nationwide settlement that created a $323 million fund to compensate diamond purchasers.

### *United States ex rel. Garbe v. Kmart Corp.*, **3:12-cv-00881-NJR-PMF (S.D. Ill.).**
Since 2004, Kmart pharmacies have charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by customers who paid entirely out of their own pockets with no insurance coverage. Since the beginning of the Medicare Part D drug program on January 1, 2006, however, Kmart has charged higher prices—often significantly higher prices—to customers with Medicare Part D coverage than it charges self-paying customers for the same prescription. For example, Kmart charged cash customers $10 for a 60-day supply of 500 mg Naproxen (available in non-prescription strength as Aleve®), but

charged the Government $58.79 for the same prescription.

Korein Tillery and co-counsel Phillips & Cohen filed a False Claims Act case against Kmart after the Government declined to intervene. In the litigation, Kmart never disputed that it charges cash-paying customers lower prices than it charges to the Government. Instead, Kmart contended that it was never required to charge the Government the lower prices because those are not the prices Kmart charges to "the general public." Rather, Kmart claimed its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices, even though as a practical matter the discount prices are the prices Kmart charges to all its cash customers. Kmart also has no record of denying any cash-paying customer "membership" in Kmart's "club." The U.S. District Court for the Southern District of Illinois rejected Kmart's arguments and denied its motions for summary judgment. Kmart appealed, but the Seventh Circuit affirmed the district court in large part. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016). After remand, the case settled in late 2017 with Kmart agreeing to pay approximately $59 million.

### *Lightfoot v. Arkema, Inc. Ret. Benefits Plan,* **CIV. 12-773 JBS/JS (D.N.J.).**
After the court certified a class of present and former retirement benefits plan participants, plaintiffs filed a motion for partial summary judgment on the issue of whether the COLAs the Plan promised to participants who elected annuities were part of participants' "accrued benefit" under ERISA. The Plan countered with a motion for summary judgment arguing the statute of limitations had run on all class members' claims owing to statements in a 1994 Summary Plan Description (SPD) and other plan documents. Although the same judge had previously ruled that the statements in the SPD and Plan were "clear repudiations" in a companion case, Korein Tillery convinced the court to deny the Plan's motion for summary judgment and to grant plaintiffs' motion for partial summary judgment, finding that the COLAs promised annuitants were accrued benefits. 2013 WL 3283951 (D.N.J. June 27, 2013). The case settled in 2014 with the average class member receiving $11,000 in cash that could be rolled into a retirement account.

### *City of Greenville v. Syngenta Crop Prot., Inc.,* **3:10-CV-188-JPG-PMF (S.D. Ill.).**
On October 23, 2012, the U.S. District Court for the Southern District of Illinois entered an order approving a $105 million class-action settlement designed to compensate Community Water Systems throughout the United States for the cost of removing the pesticide atrazine from public drinking water. The litigation between class members and Syngenta dated back to July 2, 2004, when Holiday Shores Sanitary District filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

Atrazine is used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. Atrazine has been one of the most heavily used pesticides in the U.S. Two of atrazine's key chemical characteristics—that it does not readily bind to soil and that it persists in the environment—dramatically increase atrazine's effectiveness as an herbicide. However, because atrazine does not bind to soil, it easily runs off of fields with rainfall and

contaminates surface waters such as rivers, lakes, and reservoirs that act as drinking-water supplies for public water providers.

Plaintiffs alleged that atrazine had continuously entered their water supplies, and, as a result of this contamination, they had to filter atrazine from their water sources. After eight years of litigation, Korein Tillery secured a $105 million settlement fund to be distributed to several hundred community water systems for costs of filtration of atrazine from their drinking-water supplies. *City of Greenville v. Syngenta Crop Prot., Inc.,* No. 3:10-CV-188-JPG- PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012); *see also* 904 F. Supp. 2d 902 (S.D. Ill. 2012) (granting final approval of settlement and attorneys' fees). The settlement amounted to approximately 76 percent of the $139 million estimated to be the Class's maximum potential recovery.

To facilitate the settlement claims process, Korein Tillery lawyers collected 20 years of atrazine testing data into a database that was made available to each class member through a settlement website. From there, Claimants were able to view the test data already collected for their system and provide additional evidence of atrazine contamination to claim their share of the settlement fund. Although many class actions experience claims rates of less than 15 percent, in this case virtually all settlement funds were distributed to class members.

Public Justice honored the Korein Tillery lawyers representing the plaintiffs in this case as finalists for its Trial Lawyer of the Year award.

### Missouri Utility Tax Litigation.
Since 2007, Korein Tillery has represented Missouri municipalities in class action litigation that sought to recover unpaid license taxes. In suits against wireless and wireline carriers, Korein Tillery attorneys recovered hundreds of millions of dollars of license tax revenues—both retrospectively and prospectively—for more than 350 cities throughout Missouri. Korein Tillery has recovered more than $1 billion for Missouri municipalities. As a result of their work in these cases, the Missouri Lawyers Weekly recognized Korein Tillery partners John W. Hoffman and Douglas R. Sprong with awards in the "largest plaintiff wins" category in 2007, 2009, 2010, 2015, and 2017.

In 2012, Korein Tillery was successful in persuading the Supreme Court of Missouri to issue an extraordinary writ (mandamus) declaring unconstitutional a state statute that sought to sweep away this litigation by barring cities and towns from serving as class representatives. *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589 (Mo. 2012).

### Mansfield v. ALPA, 06-c-6869 (N.D. Ill.).
Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation

method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

Korein Tillery filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the sale of $550 million in convertible notes. Korein Tillery prevailed on a number of complex and novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D. Ill. Oct. 1, 2007). After Korein Tillery also successfully opposed motions for summary judgment, 2009 WL 2386281 (N.D. Ill. Jul. 29, 2009), and to decertify the class, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009), the parties reached a settlement two weeks before trial.

Per the settlement, ALPA funded an aggregate settlement fund of $44 million to be paid directly to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D. Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

**Williams v. Rohm & Haas Pension Plan, 4:04-cv-0078-SEB-WGH (S.D. Ind.).**
Korein Tillery filed this class action in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments (COLA) in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA—$180 million. In 2006, the case was certified and Korein Tillery won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's decision was affirmed on interlocutory appeal. *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert. denied*, 128 S. Ct. 1657 (2008). Settlement approval and the fee award were later affirmed. 658 F.3d 629 (7th Cir. 2011).

**Parker v. Sears, Roebuck & Co., Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007).**
Korein Tillery brought this action against Sears in 2004 to remedy Sears's failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered, and set-up in customers' homes. In the 1960s and 1970s, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person were to place a turkey roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip

forward, spilling the hot contents onto anyone standing in the vicinity. Children who opened the range and used the door as a step could unwittingly tip boiling liquids onto themselves. Dozens of people had been killed and hundreds had been maimed as a result of this problem.

Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began requiring installation of an anti-tip bracket that could be attached to the wall or floor at the back end of the range, preventing any forward tipping and maintaining complete stability. The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required the installation of anti-tip brackets in all range installations in the United States. Even Sears acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of tipping stoves.

Sears, Roebuck & Company at the time was the largest retail seller of kitchen ranges in the United States—averaging more than 800,000 ranges sold every year. When selling a gas or electric range, Sears generally includes delivery, installation, and hookup in customers' homes; thus, Sears became the largest installer of kitchen ranges in the United States. To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544.5 million.

This settlement was touted by the public interest organization Public Citizen as an example of how consumer class actions benefit society. Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

### *Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007).

In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms. Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100 percent of their out-of-pocket expenses. This case was featured in The American Lawyer, Aruna Viswanatha, *King & Spalding Lawyer Stirs State Judge's Ire*, [29] 1 Am.Law., Jan. 2007, at 50, and mentioned in the National Law Journal. *The Plaintiffs' Hot List*, 30 Nat'l L.J. S8 (Nov. 22, 2007).

**CUNA Mutual Mortgage-Backed Securities Litigation.**
CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company (collectively referred to as "CUNA Mutual") are financial services and insurance firms that offer insurance, investment, and retirement products and services to credit unions and their members. Korein Tillery and Kellogg Hansen filed a series of individual lawsuits in 2011 and 2013 on behalf of CUNA Mutual against eight Wall Street investment banks seeking to recover losses on $300 million of RMBS purchases using the novel common-law theory of contract rescission.

As in NCUA, CUNA Mutual alleged that the banks misrepresented in offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines. CUNA Mutual also alleged that the banks misrepresented that it conducted due diligence to verify the accuracy of its offering document representations. In mid-2015, an appellate court issued a favorable opinion in CUNA Mutual's bellwether case approving of CUNA Mutual's primary litigation arguments. *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015). On remand, the case settled in December 2015 for a confidential amount. CUNA Mutual eventually settled its remaining RMBS cases over the next two years for confidential amounts. *See, e.g.*, *CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 3:14-cv-00249-wmc (W.D. Wis.) (settled in Oct. 2017); *CMFG Life Ins. Co. v. Morgan Stanley & Co., LLC*, 3:13-cv-00577-jdp (W.D. Wis.) (settled in Sept. 2017); *CMFG Life Ins. Co. v. J.P. Morgan Sec, LLC*, 3:13-cv-00580-wmc (W.D. Wis.) (settled in Mar. 2016).

**Axiom Investment Advisors, LLC v. Barclays Bank PLC, No. 15-cv-9323-LGS (S.D.N.Y.).**
From 2008 to 2015, Barclays Bank PLC acted as both a buyer and seller of various foreign and domestic currencies through various trading platforms. Instead of executing foreign exchange orders placed by Barclays' customers on these platforms, Barclays instituted a secret "last look" policy that delayed execution of matched trades for several hundred milliseconds or even several seconds which allowed Barclays to determine through its algorithms whether the trade would be unfavorable to its position. If the matched trade would be unfavorable, Barclays reneged on the agreed price and rejected the trade or placed the order at a worse price. Barclays used last look to reject millions of trades that would otherwise have been executed.

Korein Tillery, along with its co-counsel Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP, filed a class action against Barclays Bank PLC regarding its use of "last look," raising breach of contract and other claims. The court appointed Korein Tillery and Scott+Scott as class counsel. Counsel was successful in securing a $50 million settlement from Barclays on behalf of the class, which the court ultimately approved.