**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-CV-07956-VKD<br><br>**DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE AND DISTRIBUTION PLAN**<br><br>Date:   February 17, 2026<br>Time:   10:00 a.m.<br>Judge: Hon. Virginia K. DeMarchi |

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

I, Steven Weisbrot, hereby declare as follows:

1. I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.

2. I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3. I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, and the ABA Class Actions and Derivative Suits Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4. I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am a co-author of the Digital Media section of Duke Law School's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions* and George Washington Law School's *Guidelines and Best Practices in Class-Action Litigation*.

5. I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6. Prior to joining Angeion's executive team, I was employed as Director of Class Action Services at Kurtzman Carson Consultants, LLC (now known as Verita Global), an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC &
PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

7.      My notice work comprises a wide range of class actions that include product defects, data breach and privacy matters, false advertising, mass disasters, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9.      By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to class members. The executive profiles as well as the company overview are available at www.angeiongroup.com.

10.     As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services.

11.     Angeion has extensive experience administering landmark settlements involving some of the world's most prominent companies, including:

**In re: Facebook, Inc Consumer Privacy User Profile Litigation**
Case No. 3:18-md-02843-VC (N.D. Cal.)
Meta agreed to pay $725 million to settle allegations that the social media company allowed third parties, including Cambridge Analytica, to access personal information. Angeion undertook an integrated in-app notification and media campaign to a class in the hundreds of millions of individuals and processed 28.6 million claims, the most claims filed in the history of class action. In fact, during the September 7, 2023 Final Approval Hearing, U.S. District Judge Chhabria acknowledged the record number of claims filed, stating, "I was kind of blown away by how many people made claims."

**In re: Apple Inc. Device Performance Litigation**
Case No. 5:18-cv-02827-EJD (N.D. Cal.)
Apple agreed to pay $310 million to settle allegations of diminished performance in iPhone 6s and 7s. Angeion's direct notification efforts were recognized as reaching 99%+ of the current and former owners of 129 million class devices. Millions of claims were processed.

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

**City of Long Beach, et al. v. Monsanto Company, et al.**
Case No. 2:16-cv-03493-FMO-AS (C.D. Cal.)
Bayer agreed to pay $650 million to settle allegations of waterbodies impaired by PCBs. Angeion's notice administration was extraordinarily successful with direct notice delivered to 99.7% of the class. The claims administration included multiple complex claims-filing workflows for different funding allocations, including a separate fund for "special needs" claimants.

**Beckett v. Aetna, Inc.**
Case No. 2:17-cv-03864-JS (E.D. Pa.)
A consolidated data breach class action that arose from the alleged improper disclosure of Protected Health Information by a health insurer and previous claims administrator, including confidential HIV-related information. Angeion provided specialized training to our support team concerning the sensitive nature of the case and underlying health information. Angeion implemented robust privacy protocols to communicate with and verify the claims of the affected class members, including providing anonymized notice packets and allowing claimants to lodge objections under pseudonyms.

12.     Angeion will utilize the substantial experience it has garnered from administering notice plans and settlements in the Northern District of California, including settlements involving prominent companies such as Google, including the settlements below:

| Case Citation | Case No. | Court |
|---|---|---|
| In re: Apple Inc. Device Performance Litigation | 5:18-md-02827 | N.D. Cal. |
| Cameron et al. v. Apple Inc. | 4:19-cv-03074 | N.D. Cal. |
| Frlekin v. Apple Inc. | 3:13-cv-03451 | N.D. Cal. |
| Williams et al. v. Apple Inc. | 3:19-cv-04700 | N.D. Cal. |
| In re: Google Play Developer Antitrust Litigation | 3:20-cv-05792 | N.D. Cal. |
| In re: Facebook, Inc., Consumer Privacy User Profile Litig. | 3:18-md-02843 | N.D. Cal. |
| Lundy et al. v Facebook Inc. | 3:18-cv-06793 | N.D. Cal. |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. |
| Vianu et al. v. AT&T Mobility LLC | 3:19-cv-03602 | N.D. Cal. |
| In re: Plaid Inc. Privacy Litigation | 4:20-cv-03056 | N.D. Cal. |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. |

## SUMMARY OF THE NOTICE PLAN

13.     This declaration will describe the Notice Plan for the Settlement Class that, if approved by the Court, Angeion will implement in this matter, including the considerations that informed the development of the plan and why we believe it will provide due process to Class Members.

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

14.    The proposed Notice Plan provides for direct individual notice to all reasonably identifiable Class Members via email complemented by a state-of-the-art media campaign, and the implementation of a dedicated website and toll-free telephone line where Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

15.    In my professional opinion, the proposed Notice Plan described herein is the best notice practicable under the circumstances, fulfilling all due process requirements and fully comporting with Fed. R. Civ. P. 23 and the Northern District's Procedural Guidance for Class Action Settlements.

### DIRECT NOTICE

**Class Member Contact Information**

16.    Angeion will review and analyze the Class Member data provided by Google. Angeion performs a thorough analysis to identify duplicative records, as well as missing/incomplete data fields. Angeion will then assign identification numbers to each unique Class Member record, which will comprise the Class List.

**Email Notice**

17.    As part of the Notice Plan, Angeion will send direct notice via email ("Email Notice") to all Class Members for whom Google has provided valid email addresses. The Email Notice will be in substantially the same form as **Exhibit B** attached hereto.

18.    Angeion follows best practices to both validate emails and increase deliverability. Specifically, prior to distributing the Email Notice, Angeion subjects the email addresses on the Class List to a cleansing and validation process. The cleansing and validation process removes extra spaces and compares each email address to known bad email addresses.[1] Email addresses that are not designated as a known bad address will then be further verified by contacting the Internet Service Provider ("ISP") to determine if the email address exists.

19.    Further, Angeion designs the Email Notice to avoid many common "red flags" that might

---

[1] Angeion maintains a database of email addresses that were returned as permanently undeliverable, commonly referred to as a hard bounce, from prior notice campaigns. An email address returned as a hard bounce within the last year is designated as a known bad email address.

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

otherwise cause an email recipient's spam filter to block or identify the email notice as spam. For example, Angeion does not include attachments like the Long Form Notice to the Email Notice, because attachments are often interpreted by various Internet Service Providers as spam. Instead, the Email Notice will contain a link to the Settlement Website, where Class Members can learn more about their rights and options under the Settlement.

20.     Angeion also accounts for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete, and after an approximate 24- to 72-hour rest period (which allows any temporary block at the ISP level to expire), Angeion causes a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery.

21.     Angeion has significant experience disseminating electronic notice to voluminous class sizes. Angeion strategically staggers the release of emails, starting with a smaller number of emails and gradually increasing the volume of emails sent to a given domain. In our experience, this form of "priming" or "warming up" minimizes the probability of ISPs blocking email notices. A representative sample of administrations involving the dissemination of tens to hundreds of millions of emails and electronic notices is included below.

| Case | Case No. | Court | Class Size[2] |
|---|---|---|---|
| Katz-Lacabe et al. v. Oracle America, Inc. | 3:22-cv-04792 | N.D. Cal. | 455M+ |
| In re: Facebook, Inc., Consumer Priv. User Profile Litig.[3] | 3:18-md-02843 | N.D. Cal. | 200M+ |
| In re: Google Plus Profile Litigation | 5:18-cv-06164 | N.D. Cal. | 161M+ |
| In re: Facebook Internet Tracking Litigation | 5:12-md-02314 | N.D. Cal. | 124M+ |
| In re: Apple Inc. Device Performance Litigation | 5:18-md-02827 | N.D. Cal. | 90M+ |
| Salinas et al. v. Block, Inc. et al. | 3:22-cv-04823 | N.D. Cal. | 85M+ |
| Kukorinis v. Walmart, Inc. | 8:22-cv-02402 | M.D. Fla. | 81M+ |
| In re: TikTok, Inc., Consumer Privacy Litigation | 1:20-cv-04699 | N.D. Ill. | 80M+ |
| In re: Plaid Inc. Privacy Litigation | 4:20-cv-03056 | N.D. Cal. | 60M+ |
| Esposito et al. v. Cellco P'ship d/b/a Verizon Wireless | MID-L-6360-23 | N.J. Super. Ct. | 59M+ |

[2] Class Size refers to the number of known Class Members with direct contact information.
[3] Direct electronic notice was disseminated via in-app notice.

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

22. Angeion will cause any email address for which the Email Notice could not be delivered to be subjected to an email change of address search in an attempt to locate an updated email address. Angeion will then send the Email Notice to any updated email addresses obtained via this process.

23. Based on email notice results in the related Csupo matter, the Settlement Administrator anticipates receiving valid email addresses for approximately 77.4% of the Class Members.[4]

**Payment Election Emails**

24. Angeion will cause the Payment Election Email to be disseminated to Class Members whose initial Email Notice was successfully delivered.[5] The Payment Election Email will utilize simplified messaging to remind and encourage Class Members to visit the Settlement Website to select a payment method. Dissemination of the Payment Election Emails will likewise utilize a strategically staggered email dissemination approach, as described above.

25. At the completion of the email campaign, Angeion will be prepared to report to the Court concerning the rate of delivered emails accounting for any emails that are blocked at the ISP level. In short, the Court will possess a detailed, verified account of the success rate of the entire direct email notice campaign.

## MEDIA NOTICE

26. The comprehensive direct email notice efforts described above will be supplemented by state-of-the-art digital notice via Facebook, Instagram, and Threads, and a paid search campaign. The state-of-the-art media campaign is designed to deliver over twelve (12) million impressions.

27. To develop the media notice campaign and to verify its effectiveness, our media team analyzed data from 2025 comScore Multi-Platform/MRI-Simmons USA Fusion[6] to profile the

---

[4] The projected percentage was derived by using the number of "Successfully Delivered" emails (12,669,025) from the most recent email campaign in the *Csupo* matter (December 2025 – January 2026) and dividing that by the total number of class members provided to Angeion (16,365,077). The projected percentage also presupposes that Angeion will receive data that is of similar quality to that received in *Csupo*.

[5] Payment Election Emails will not be sent to any Class Member who unsubscribed from future email notifications after the initial Email Notice was sent.

[6] GfK Mediamark Research and Intelligence LLC ("GfK MRI") provides demographic, brand preference and media-use habits, and captures in-depth information on consumer media choices, attitudes, and consumption of products and services in nearly 600 categories. comSCORE, Inc. ("comSCORE") is a leading cross-platform measurement and analytics company that precisely measures audiences, brands, and consumer behavior, capturing 1.9 trillion global interactions monthly. comSCORE's proprietary digital

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

Settlement Class and arrive at an appropriate Target Audience. Specifically, the following syndicated research definition was used to profile potential Class Members:

- **Smartphone: Type-Android (any brand)** <u>and</u>
- **NOT: Household: Individual State Codes-California**

28.     Digital media platforms provide numerous data segments dedicated to consumer brands. We will rely heavily on that data to help us ensure we reach the most appropriate users, *i.e.*, Android users in the United States but outside of the State of California.

29.     It is important to note that the Target Audience serves as a proxy for, and is distinct from, the Settlement Class definition, as is commonplace in class action notice plans and advertising, generally.[7]

30.     Additionally, the Target Audience is based on objective syndicated data, which is routinely used by advertising agencies and experts to understand the demographics, shopping habits, and attitudes of the consumers that they are seeking to reach.[8] Objective syndicated data tools are ubiquitous tools in a media planner's arsenal and are regularly accepted by courts in evaluating the efficacy of a media plan, or its component parts.

31.     Understanding the socio-economic characteristics, interests, and practices of a target group aids in the proper selection of media to reach that audience. Based on data from 2025 comScore Multi-Platform/MRI-Simmons USA Fusion, the Target Audience has been reported to have the characteristics below:

- 54.85% are ages 35-64, with a median age of 50.6 years old;

---

audience measurement methodology allows marketers to calculate audience reach in a manner not affected by variables such as cookie deletion and cookie blocking/rejection, allowing these audiences to be reached more effectively. comSCORE operates in more than 75 countries, including the United States, serving over 3,200 clients worldwide.

[7] If the total population base (or class size) is unknown, it is accepted advertising and communication practice to use a proxy-media definition, which is based on accepted media research tools and methods that will allow the notice expert to establish that number. Duke Law School, *Guidelines and Best Practices— Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, at 56, available at https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1003&context=bolch.

[8] The notice plan should include an analysis of the makeup of the class. The target audience should be defined and quantified. This can be established through using a known group of customers, or it can be based on a proxy-media definition. Both methods have been accepted by the courts and, more generally, by the advertising industry, to determine a population base. *Id.*

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

- 53.15% are male;
- 50.54% are married;
- 32.35% have children;
- 38.13% have received a bachelor's or postgraduate degree;
- 47.02% are currently employed full time;
- The median household income is $77,140; and
- 83.32% have used social media in the last 30 days.

32. To identify the best vehicles to deliver messaging to the Target Audience, we reviewed media quintiles, which measure the degree to which an audience uses media relative to the general population. Here, the objective syndicated data shows that members of this Target Audience are heavy internet users, spending an average of nearly 30 hours per week on the internet.

33. Given the strength of digital advertising, as well as our Target Audience's consistent internet and social media use, we recommend utilizing the following social media advertising campaign to reach potential Class Members.

34. The social media campaign will utilize Facebook, Instagram, and Threads, and will engage Target Audience members utilizing strategic tactics to further qualify and deliver impressions to potential Class Members. For example, look-a-like modeling allows the use of consumer characteristics to serve advertisements. Based on these characteristics, we can also build different consumer profile segments to ensure the Notice Plan messaging is delivered to the proper audience of potential Class Members. The social media ads will be targeted nationally (excluding California), with a weighted delivery based on how the audience is geographically spread throughout the country.

35. The social media campaign will further utilize the Facebook Marketing platform to serve advertisements to the Target Audience via a mix of news feed and/or story units to optimize performance via the social media platform's desktop sites, mobile sites, and mobile apps.

**Paid Search Campaign**

36. The media notice campaign also includes a paid search campaign to help drive potential Class Members who are actively searching for information about the Settlement to the dedicated Settlement Website where they can learn more about their rights and options in the Settlement. Paid search ads will complement the social media notice campaign, as search engines are frequently used to locate a specific website, rather than a person typing in the URL. Search terms would relate to not

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC &
PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

only the Settlement itself but also the subject-matter of the litigation. In other words, the paid search ads are driven by the individual user's search activity, such that if that individual searches for (or has recently searched for) the lawsuit, litigation, or other terms related to the Settlement, that individual could be served with an advertisement directing them to the Settlement Website.

## PLAIN LANGUAGE NOTICE DESIGN

37.    The proposed Notice forms used in this matter are designed to be "noticed," reviewed, and, by presenting the information in plain language, understood by members of the Settlement Class. The design of the notices follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The Notice forms contain plain-language summaries of key information about the rights and options of members of the Settlement Class pursuant to the terms of the Settlement. Consistent with normal practice, prior to being delivered and published, all notice documents will undergo a final edit for accuracy.

38.    Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language." Angeion Group maintains a strong commitment to adhering to this requirement, drawing on its experience and expertise to craft notices that effectively convey the necessary information to Class Members in plain language.

## SETTLEMENT WEBSITE & TELEPHONE SUPPORT

39.    The Notice Plan will also implement the creation of a case-specific Settlement Website, where Class Members can easily view general information about this Settlement and review relevant documents, including: (i) the Long Form Notice (in English and Spanish); (ii) the Preliminary Approval Order; (iii) the Settlement Agreement; (iv) the operative Complaint filed in the Litigation; (v) the Exclusion Form; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website will be designed to be user-friendly to make it easy for Class Members to find answers to frequently asked questions and view dates and deadlines. Class Members can also securely submit their preferred payment method online through a secure, customized portal accessible via the Settlement Website. The Long Form Notice, Exclusion Form and online Payment Election Form will be substantially in the same form as **Exhibits C**, **D**, and **E**, respectively.

40.     The Settlement Website will also feature a customized chatbot to streamline responses to Class Members' questions and will have a "Contact Us" page, further allowing Class Members to submit additional questions regarding the Settlement to a dedicated email address.

41.     The Settlement Website will be designed to be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the Settlement Website will be designed to maximize search engine optimization through search engines. Keywords and natural language search terms will be included in the Settlement Website's metadata to maximize search engine rankings.

42.     A toll-free number devoted to this case will be created and provided on the Settlement Website to further apprise Class Members of their rights and options in the Settlement. The toll-free number will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and other essential information regarding the Settlement. The toll-free number will be accessible 24 hours a day, 7 days a week. Class Members will have the ability to request a copy of the Long Form Notice via the toll-free number by leaving a message with their name, address, and document(s) they would like mailed to them.

## FRAUD DETECTION

43.     Angeion has developed and deployed its real-time fraud detection and prevention system, AngeionAffirm2.0 ("AngeionAffirm"), which is a comprehensive solution to identify fraud in real time based on both state-of-the-art technology and analysis of over a decade of historical claims data. AngeionAffirm was developed to combat the rising tide of fraudulent claims in class action settlements and the increasingly sophisticated technologies and techniques used by nefarious actors in their attempt to perpetuate fraud. AngeionAffirm will be implemented to detect any fraudulent payment method selection submissions in this Settlement.

44.     The success of AngeionAffirm has been recognized by courts. In the court's July 26, 2024, Report and Recommendation, U.S. Magistrate Judge Stewart D. Aaron stated, "The Court finds that the claims process administered by Angeion has integrity and has been carried out in a diligent and thorough manner. … Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case. …

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims." Report & Recommendation at 6-8, *In re: Novartis & Par Antitrust Litig.*, No. 1:18-cv-04361-AKH-SDA (S.D.N.Y. July 26, 2024), ECF No. 667.

45.     During an April 8, 2025 Fairness Hearing, U.S. District Judge Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with [claims in] this settlement," further stating that "absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid." Tr. 50:1-11, *Jimenez v. Artsana USA, Inc*., No. 7:21-cv-07933-VB (S.D.N.Y. Apr. 8, 2025), ECF No. 155.

## NOTICE PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005

46.     Within ten (10) days of the filing of the Settlement Agreement with this Court, Angeion will cause notice to be disseminated to the appropriate state and federal officials pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715.

## PROPOSED CALCULATION METHOD AND DISTRIBUTION PROCESS

47.     In accordance with the terms of the Settlement Agreement, Angeion will effectuate the Plan of Allocation described below and set forth in **Exhibit F**, the Notice Plan and Plan of Allocation.

**Calculations**

48.     The Net Settlement Fund shall be allocated to each eligible Class Member on a *pro rata* basis. The amount of the *pro rata* payment to each Class Member will be the Net Settlement Fund, divided by the total number of Class Members. Class Members who affirmatively elect a payment method will be paid via that method. For Class Members who do not elect a payment method, Angeion will attempt to make an automatic payment via one or more of the electronic payment processors. After those efforts are complete, if sufficient funds are left in the Net Settlement Fund to make a second payment economically feasible, Angeion will attempt to make a second payment to Class Members who successfully received payment in the first round of payments, again on a *pro rata* basis. The amount of the second payment to each such Class Member will be determined by taking the amount of the Net Settlement Fund that remains after the first round of payments, and dividing it by the number of Class Members who successfully received payment in the first round

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

of payments, after deducting administrative costs to distribute a second round of payments. Funds remaining after a second distribution, or if a second distribution is not economically feasible, shall be issued to an approved *cy pres* recipient.

**Payment Options**

49.    The notice of settlement shall instruct Class Members to select a payment method, such as Zelle, PayPal, Venmo, ACH transfer, or a Virtual Mastercard. The digital payment options will be presented in a neutral manner without preferencing any form of digital payment.

50.    The digital payment options are reliable, secure, and meet evolving claimant preferences and contemporary payment methodologies. This includes banking solutions (Zelle/ACH), digital-first (Venmo/PayPal), as well as a pre-paid card option for the "unbanked" and "underbanked."

51.    According to a 2019 report by the Federal Reserve, millions of Americans are either unbanked or underbanked.[9] Six (6) percent of adults did not have a checking, savings, or money market account (often referred to as the "unbanked"). Two-fifths of unbanked adults used some form of alternative financial service during 2018—such as a money order, check cashing service, pawn shop loan, auto title loan, payday loan, paycheck advance, or tax refund advance. In addition, sixteen (16) percent of adults were "underbanked": they had a bank account but also used an alternative financial service product associated with unbanked adults.

52.    A 2023 FDIC National Survey of Unbanked and Underbanked Households found that minority households were disproportionately affected compared to white households, with Hispanic and Black Households five times as likely to be unbanked and twice as likely (or more) to be underbanked.[10] The pre-paid card product being offered is designed specifically for class action usage to provide a viable alternative for unbanked and underbanked individuals to receive their Settlement payment without the necessity of having a bank account.

53.    The pre-paid digital payment card product offered to Class Members in this case has many of the features of pre-paid digital payment cards offered outside the class action context, but also

[9] *See* https://www.federalreserve.gov/publications/2019-economic-well-being-of-us-households-in-2018-banking-and-credit.htm (Last visited January 26, 2026).
[10] *See* https://www.fdic.gov/household-survey/2023-fdic-national-survey-unbanked-and-underbanked-households-executive-summary (Last visited January 26, 2026).

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

includes certain additional consumer-friendly features designed specifically for class action usage, including:

> a) No activation or load fees.
> b) The ability of the cardholder to transfer balances at any time and at no cost to the cardholder.
> c) No inactivity fees to the cardholder until after 12 consecutive months of inactivity.
> d) Proactive email reminder to cardholders at 11 months to encourage use.
> e) Refund of inactivity fees if the cardholder re-engages through a use of value on the card following service fee assessment.

54.    Class Members will receive a notification once the payment has been sent, regardless of the payment option selected, which will include information about the payment, so Class Members are able to identify that the payment is from this Settlement.

**Method of Payment**

55.    The method of payment is described in **Exhibit F**, the Notice Plan and Plan of Allocation.

## INFORMATION PURSUANT TO THE NORTHERN DISTRICT'S PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS

**Data Security and Insurance**

56.    Angeion recognizes the critical need to secure our physical and network environments and protect data in our custody. It is our commitment to these matters that has made us the go-to administrator for many of the most prominent data security matters of this decade. We are continuously improving upon our robust policies, procedures, and infrastructure by periodically updating data security policies as well as our approach to managing data security in response to changes to physical environment, new threats and risks, business circumstances, legal and policy implications, and evolving technical environments.

57.    Angeion's privacy practices are compliant with the California Consumer Privacy Act, as currently drafted. Consumer data obtained for the delivery of each project is used only for the purposes intended and agreed in advance by all contracted parties, including compliance with orders issued by State or Federal courts as appropriate. Angeion imposes additional data security measures for the protection of Personally Identifiable Information (PII) and Personal Health Information (PHI), including redaction, restricted network and physical access on a need-to-know basis, and

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

network access tracking. Angeion requires background checks of all employees, requires background checks and ongoing compliance audits of its contractors, and enforces standard protocols for the rapid removal of physical and network access in the event of an employee or contractor termination.

58.    Data is transmitted using Transport Layer Security (TLS) 1.3 protocols. Network data is encrypted at rest with the government and financial institution standard of AES 256-bit encryption. We maintain an offline, air-gapped backup copy of all data, ensuring that projects can be administered without interruption.

59.    Further, our team conscientiously monitors the latest compliance requirements, such as GDPR, HIPAA, PCI DSS, and others, to ensure that our organization is meeting all necessary regulatory obligations as well as aligning to industry best practices and standards set forth by frameworks like CIS and NIST. Angeion is cognizant of the ever-evolving digital landscape and continually improves its security infrastructure and processes, including partnering with best-in-class security service providers. Angeion's robust policies and processes cover all aspects of information security to form part of an industry-leading security and compliance program, which is regularly assessed by independent third parties. Angeion is also committed to a culture of security mindfulness. All employees routinely undergo cybersecurity training to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

60.    Angeion currently maintains a comprehensive insurance program, including sufficient Errors & Omissions coverage.

**Estimated Notice and Administration Costs**

61.    Angeion estimates that the cost to provide notice and administration services as described herein will be approximately $9,266,184.[11]

---

[11] The estimate was created based on certain specifications provided to Angeion, such as the size of the Class List for disseminating notice of the Settlement, the manner of disseminating notices, and corresponding assumptions made, including issuing Settlement payments in a single distribution and distribution methods utilized. Actual costs may vary based on deviations from these assumptions. It is Angeion's understanding that a second distribution would be paid out of the residual funds, the administrative costs of which are unknown at this time. This estimated cost includes substantially discounted volume-based rates that have

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

62.     This estimate is based on Angeion's review of, and negotiations regarding, the fee structures offered by each of the payment processors in this case. Each payment processor, *i.e.*, PayPal, Venmo, or Zelle, charges a fee for each payment delivered. Those per-transaction fees comprise a material portion of the overall administrative costs of this matter. As a result of these negotiations, Angeion is able to propose materially more favorable per-transaction pricing across all payment modalities compared to those fees proposed or approved in similar cases. The specific per-transaction rates and other pricing details underlying the administrative cost estimate for this matter are competitively sensitive. Upon request, Angeion will provide its itemized estimate including this information to the Court for *in camera* review.

63.     Angeion has worked on prior cases that involve automatic payments like the ones contemplated in this case (see table below). In addition, Angeion was selected to administer the *In re: Amazon Return Policy Litigation*, No. 2:23-cv-01372-JNW (W.D. Wash.), which provides for a similar plan of distribution.[12] Representative matters include:

| Case Name | Case No. | Court |
| --- | --- | --- |
| Fernandez v CoreLogic Credco, LLC | 3:20-cv-01262 | S.D. Cal. |
| Smith et al. v Apple, Inc. | 4:21-cv-09527 | N.D. Cal. |
| Skrandel v. Costco Wholesale Corporation | 9:21-cv-80826 | S.D. Fla. |

64.     Angeion has negotiated agreements with certain vendors and other service providers that facilitate various aspects of the administration process, including vendors of digital payment solutions. In certain circumstances, some of these agreements may provide revenue to Angeion. Any such revenue to Angeion does not reduce the Settlement Fund or the amounts distributed to Class Members, nor is any such income to Angeion dependent on the extent to which Class Members in this case use or do not use their balances. Each Class Member will receive the full value of their payment under the Settlement Agreement, regardless of these agreements or the payment method chosen.

65.     One of the reasons that Angeion can offer its highly labor- and cost-intensive administration

---

been negotiated with digital payment networks. Deviations from assumed volumes may result in increased costs.

[12] The settlement was filed with the Court on January 23, 2026, and is pending preliminary approval.

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

services in this Settlement (such as the comprehensive notice and distribution management program described herein) at the estimated price is based on Angeion's expectation that Angeion's agreements with vendors will generate additional revenue to Angeion at no additional cost to the Settlement Fund.

66.    Angeion's agreements with these vendors and service providers do not alter Angeion's compliance with both the strict terms of the Settlement and any plan of distribution negotiated by counsel for the Parties and approved by the Court.

**Estimated Payment Rate**

67.    As discussed above, Angeion will attempt to send an email to each Class Member, which will link to an online Payment Form that allows them to select their preferred payment method. Angeion estimates that 1-5% of Class Members will affirmatively elect a payment option using this Payment Form and receive payment. For Class Members who do not make an election (or in the event the selected payment method fails), Angeion will attempt to send payments automatically through Zelle, PayPal, and/or Venmo using information provided by Google. Angeion estimates that an additional 50-75% of Class Members will receive automatic payments in this fashion. In total, Angeion estimates that between 55-80% of Class Members will actually receive payment in this case.[13]

**Prior Engagements with Class Counsel**

68.    Angeion has worked with Barlit Beck and Korein Tillery on the following prior cases:

| Korein Tillery - Case Name | Case No. | Court | Date(s) |
| --- | --- | --- | --- |
| Csupo et al. v. Google LLC | 19CV352557 | Cal. Super. Ct. | 12/2023-Ongoing |
| In re: SSA Bonds Antitrust Litigation | 1:16-cv-03711 | S.D.N.Y. | 07/2020-Ongoing |
| Taylor v. Service Corporation International | 0:20-cv-60709 | S.D. Fla. | 09/2022-11/2023 |
| **Bartlit Beck LLP - Case Name** | **Case No.** | **Court** | **Date(s)** |
| Snow v. Align Technology, Inc. | 3:21-cv-03269 | N.D. Cal. | 12/2023-Ongoing |

[13] This estimate was formulated based on digital payment user statistics and Angeion's experience in issuing digital payments. *See* https://www.fdic.gov/analysis/household-survey/index.html; https://www.mckinsey.com/industries/financial-services/our-insights/banking-matters/consumer-trends-in-digital-payments; https://www.spglobal.com/market-intelligence/en/news-insights/research/one-third-of-americans-use-three-or-more-financial-apps; https://newsroom.paypal-corp.com/2022-08-18-Consumers-Are-More-Likely-to-Complete-a-Purchase-with-Venmo-Over-Traditional-Payment-Methods (Last visited January 26, 2026).

DECLARATION OF STEVEN WEISBROT RE: QUALIFICATIONS OF ANGEION GROUP, LLC & PROPOSED NOTICE PLAN (Case No. 20-cv-7956-VKD)

**CONCLUSION**

69.    The Notice Plan outlined above includes direct notice to all reasonably identifiable Class Members via email, complemented by a state-of-the-art media campaign and the implementation of a dedicated Settlement Website and toll-free number to further inform Class Members of their rights and options in the Settlement. Payment Election Emails will only be sent after the Escrow Release Date.

70.    In my professional opinion, the Notice Plan described herein will provide full and proper notice to Class Members and is the best practicable notice under the circumstances, fulfilling all due process requirements, and fully comporting with Fed. R. Civ. P. 23 and the Northern District's Procedural Guidance for Class Action Settlements. After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation to this Court.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: January 27, 2026

_____
STEVEN WEISBROT

Declaration of Steven Weisbrot re: Qualifications of Angeion Group, LLC & Proposed Notice Plan