ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
LINDLEY J. BRENZA (*pro hac vice*)
JONATHAN JACOB MARSH (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
PAMELA I. YAACOUB (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs Joseph Taylor,
Mick Cleary, and Jennifer Nelson*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 5:20-CV-07956-VKD

**MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS**

Date:  June 23, 2026
Time:  10:00 a.m.
Judge: Hon. Virginia K. DeMarchi

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on June 23, 2026 at 10:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Magistrate Judge Virginia K. DeMarchi, located at the Robert F. Peckham Federal Building & United States Courthouse, 5th Floor, Courtroom 2, 280 South 1st Street, San Jose, California, 95113, Class Counsel will move the Court, pursuant to Federal Rules of Civil Procedure 23(e), 23(h), and 54(d), for an order: (1) awarding Class Counsel $39,825,000 in attorneys' fees, representing 29.5% of the monetary recovery in the litigation, (2) reimbursing Class Counsel for costs and expenses in the amount of $698,533.50; and (3) awarding Class Representatives Joseph Taylor, Mick Cleary, and Jennifer Nelson incentive awards of $10,000 each.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support of this Motion, declarations and exhibits filed in support thereof, the complete records and files of this action, all other matters of which the Court may take judicial notice, and any other such evidence and oral argument as may be presented at the hearing of this matter.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................7

INTRODUCTION ....................................................................................................................8

BACKGROUND ......................................................................................................................9

I.      Class Counsel's Work on Behalf of the Class ............................................................9

        A.      Investigation and Complaint .........................................................................9

        B.      Dismissal and Successful Appeal ..................................................................9

        C.      Fact and Expert Discovery............................................................................10

        D.      Class Certification and *Daubert* Briefing and Argument ...............................11

II.     Class Counsel's Negotiation of the Settlement..........................................................11

III.    The Settlement Secured by Class Counsel.................................................................12

LEGAL STANDARD.............................................................................................................14

ARGUMENT .........................................................................................................................15

I.      Under California Law, the Court Should Award Class Counsel Attorneys'
        Fees Representing 29.5% of the Common Fund .........................................................15

        A.      Class Counsel Achieved Significant Success for the Class.............................16

        B.      Class Counsel Assumed Significant Risk.......................................................18

        C.      The Difficulty of the Case and Skill of Class Counsel Justify the
                Requested Fee ..............................................................................................19

        D.      The Contingent Nature of the Representation Supports the
                Requested Fee ..............................................................................................20

        E.      An Optional Lodestar Cross-Check Supports the Requested Fee ....................21

II.     The Requested Fee Is Also Appropriate Under Federal Law ......................................23

III.    Class Counsel Should Be Reimbursed for Litigation Costs and Expenses
        Incurred in Prosecuting this Litigation .....................................................................25

IV.     The Court Should Award the Class Representatives Reasonable Incentive
        Awards ...................................................................................................................26

V.      Class Counsel and the Class Representatives Should Be Awarded Interest
        on Any Portion of the Common Fund Awarded to Them ...........................................31

CONCLUSION.......................................................................................................................32

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

**TABLE OF AUTHORITIES**

**Cases**

*AdTrader, Inc. v. Google LLC*,
  No. 17-cv-7082, 2022 WL 16579324 (N.D. Cal. Nov. 1, 2022) .................................................. 30

*Alvarez v. Farmers Ins. Exch.*,
  No. 14-cv-574, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ..................................................... 31

*Amaral v. Cintas Corp. No. 2*,
  163 Cal. App. 4th 1157 (2008) ................................................................................................... 19

*Beaver v. Tarsadia Hotels*,
  No. 11-cv-1842, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ................................................ 15

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) .......................................................................................... 29, 30

*Bernstein v. Virgin Am., Inc.*,
  No. 15-cv-2277, 2023 WL 7284158 (N.D. Cal. Nov. 3, 2023) .................................................. 31

*Burnett v. Nat'l Ass'n of Realtors*,
  No. 19-cv-332, 2024 WL 2842222 (W.D. Mo. May 9, 2024) .................................................... 25

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .................................................................................................... 18

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) .................................................................................. 21, 25

*Chambers v. Whirlpool Corp.*,
  980 F.3d 645 (9th Cir. 2020) ...................................................................................................... 14

*Chavez v. Netflix, Inc.*,
  162 Cal. App. 4th 43 (2008) .................................................................................................. 15, 23

*Chieftain Royalty Co. v. SM Energy Co.*,
  100 F.4th 1147 (10th Cir. 2024) ................................................................................................. 26

*Cott v. Equity Residential*,
  No. 25-cv-2358, 2026 U.S. Dist. LEXIS 4709 (N.D. Cal. Jan. 9, 2026) ................................... 27

*Create-A-Card, Inc. v. Intuit, Inc.*,
  No. 07-cv-6452, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) ................................................ 14

*Curran v. City of Oakland*,
  No. 23-cv-2354, 2025 U.S. Dist. LEXIS 251945 (N.D. Cal. Dec. 4, 2025) .............................. 27

*Elhilu v. Quizno's Franchising Co.*,
  No. 06-cv-7855, 2009 WL 10671939 (C.D. Cal. Dec. 8, 2009) ................................................. 14

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. 08-cv-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................. 28

*Glass v. UBS Fin. Servs., Inc.*,
  No. 06-cv-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*,
  331 F. App'x 452 (9th Cir. 2009) ......................................................................................... 28, 30

*Golba v. Dick's Sporting Goods, Inc.*,
238 Cal. App. 4th 1251 (2015) ................................................................................................ 27

*Hopson v. Hanesbrands Inc.*,
No. 08-cv-844, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ....................................................... 30

*In re Cellphone Fee Termination Cases*,
186 Cal. App. 4th 1380 (2010) ......................................................................................... 25, 27

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .................................................................................................. 21

*In re Google Location Hist. Litig.*,
No. 18-cv-5062, 2024 WL 1975462 (N.D. Cal. May 3, 2024) ................................................. 18

*In re Heritage Bond Litig.*,
No. 02-ml-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................................. 25

*In re Lidoderm Antitrust Litig.*,
No. 14-md-2521, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ....................................... 25, 30

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*,
No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) .................................................. 31

*In re Mego Financial Corp. Securities Litigation*,
213 F.3d 454 (9th Cir. 2000) .................................................................................................. 30

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 16, 23, 24, 25

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................. 14, 27, 30, 31

*In re Telescopes Antitrust Litig.*,
No. 20-cv-3639, 2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) ................................... 17, 23, 24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-md-1827, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011) ............................................. 28

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ..................................................................................... 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .................................................................................................. 21

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) .................................................................................................... 18, 20

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016) ..................................................................................................... *passim*

*Oliveira v. Language Line Servs., Inc.*,
767 F. Supp. 3d 984 (N.D. Cal. 2025) ................................................................................ 14, 15

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................................... 29

5

*Perkins v. LinkedIn Corp.*,
  No. 13-cv-4303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ................................................ 29

*Quezada v. Con-Way Freight*,
  No. 10-cv-100, 2017 WL 6949286 (N.D. Cal. Sept. 29, 2017) .............................................. 28

*Quiruz v. Specialty Commodities, Inc.*,
  No. 17-cv-3300, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ............................................... 23

*Ridgeway v. Wal-Mart Stores Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2017) .................................................................................... 27

*Roes, 1–2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ......................................................................................... 27, 29

*Ross v. U.S. Bank Nat'l Ass'n*,
  No. 07-cv-2951, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ............................................ 29

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
  No. 08-cv-482, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ............................................... 31

*Senne v. Kan. City Royals Baseball Corp.*,
  No. 14-cv-608, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023), *aff'd sub nom.*
  *Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023) ........... 25, 29

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................................... 14, 15, 21, 23

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................... 2, 11

Fed. R. Civ. P. 54 ........................................................................................................................... 2

**Other Authorities**

David Lat, *Resolving The Unresolvable: Kenneth Feinberg*,
  Original Jurisdiction, Substack, October 30, 2025 ................................................................ 12

Richard A. Posner, *Economic Analysis of Law* (4th ed. 1992) ..................................................... 20

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Class Counsel should be awarded fees of $39,825,000, representing 29.5% of the common fund created by their efforts in this litigation on behalf of the Class.

2.      Whether Class Counsel should be reimbursed $698,533.50 in out-of-pocket costs and expenses incurred prosecuting this litigation.

3.      Whether Class Representatives Joseph Taylor, Mick Cleary, and Jennifer Nelson should be granted incentive awards of $10,000 each.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

**INTRODUCTION**

For over six years, Class Counsel have zealously prosecuted this litigation on behalf of the Class. In doing so, they assumed significant risk. The claim Class Counsel presented was novel. And they pursued it on a contingent basis, putting their own time and money at risk.

As a result of their skillful advocacy, Class Counsel were able to secure for the Class a settlement that affords the Class both comprehensive injunctive relief and $135 million in monetary relief. In addition, Class Counsel worked hard to minimize the administrative costs associated with the settlement, and to develop a plan of distribution that maximizes the anticipated participation rate.

In view of the risk taken by Class Counsel, their years of diligent work on behalf of the Class, and the excellent result they obtained, a fee representing 29.5% of the common fund is warranted in this case. Such a fee is lower than the 33.3% fee commonly awarded by California courts applying controlling California state law in this diversity action. It also represents only a slight premium to the Ninth Circuit's 25% benchmark, which is justified in this case given the great risk taken by class counsel pursuing a novel claim, the many years they worked on the case, the excellent results obtained, and other factors discussed below.

Class Counsel should also be awarded $698,533.50 in out-of-pocket costs and expenses incurred in prosecuting this case. These costs were actually incurred, necessary to the effective prosecution of the litigation, and reasonable in amount.

Additionally, in view of the time and effort contributed by the Class Representatives for the benefit of the Class, the professional and reputational risks they assumed, the exposure of their personal information to discovery, and the need to incentivize individuals to act as private attorneys general against powerful corporate defendants, the Class Representatives should be granted incentive awards of $10,000 each.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

## BACKGROUND

### I.    Class Counsel's Work on Behalf of the Class

Class Counsel investigated and litigated this case on behalf of the Class for more than six years, including by conducting extensive pre-suit investigation and discovery, briefing and arguing several potentially dispositive motions, winning a Ninth Circuit appeal on issues of first impression, and engaging in over a year of mediations and related settlement negotiations. *See* Joint Decl. ¶¶ 4-40.

#### A.    Investigation and Complaint

Class Counsel began their investigation of the facts underlying this case in early 2019. Joint Decl. ¶ 4. Shortly thereafter, Class Counsel also researched the viability of maintaining a 49-state class action in federal court. Joint Decl. ¶ 7. This factual investigation and legal research required the expenditure of time by attorneys and other professionals, as well as the investment of money to pay technical experts to test the Android software at issue in this case. Joint Decl. ¶ 5. Based on their investigation, Class Counsel determined that plaintiffs had meritorious claims that were potentially viable, notwithstanding the obstacles for maintaining a class action in federal court.

Class Counsel subsequently entered into engagement agreements with the Class Representatives, in which the parties agreed to a 33% contingency fee on any monetary recovery, subject to Court approval. Taylor Decl. Ex. A; Cleary Decl. Ex. A; Nelson Decl. Ex. A.

Class Counsel filed an initial Complaint on November 12, 2020 on behalf of "[a]ll natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data plans provided by mobile carriers." ECF 1, ¶ 54. The Complaint contained detailed factual allegations derived from the extensive pre-suit investigation discussed above.

#### B.    Dismissal and Successful Appeal

In February 2021, Google moved to dismiss Plaintiffs' Complaint. ECF 33, 39, 42, 43. After briefing and oral argument, the Court granted Google's motion on October 1, 2021. ECF 51. Class Counsel then amended the complaint, including by adding a Class Representative with a "limited" cellular data plan, and undertook briefing and argument in opposition to Google's

renewed motion to dismiss. ECF 60, 65, 67, 68. The Court granted Google's renewed motion to dismiss on September 30, 2022. ECF 74.

Class Counsel appealed the dismissal of the First Amended Complaint, briefed the legal issues, and argued them before the Ninth Circuit. *See Taylor v. Google LLC*, No. 22-16654 (9th Cir.), ECF 8, 24, 36, 37. The Ninth Circuit accepted Class Counsel's arguments and reversed the dismissal of Plaintiffs' conversion claim, holding that "[t]he conversion claim was pleaded properly and should not have been dismissed." Mem. at 4–5, *Taylor v. Google, LLC*, No. 22-16654 (9th Cir. Feb. 28, 2024), ECF 38-1.

### C.      Fact and Expert Discovery

On remand from the Ninth Circuit, Class Counsel zealously conducted extensive discovery. Class Counsel served 376 discovery requests, including 150 requests for production, 51 requests for admission, 53 interrogatories, and five Rule 30(b)(6) deposition notices. Joint Decl. ¶ 17. Google strenuously resisted discovery, and Class Counsel responded by pressing numerous discovery issues, including several that were submitted to this Court for resolution. Joint Decl. ¶ 19. By virtue of their advocacy, Class Counsel obtained critical discovery, including more than 64,000 pages of internal and technical Google documents, and billions of pages of data logs from Android users. Joint Decl. ¶ 20. Class Counsel also secured nearly 50 days of critically important in-person review of millions of lines of Google's proprietary source code by Class Counsel's computer science experts. *Id.* The source code reviewed included Google's "GMS Core" codebase, which is the overarching software that operates Google-licensed Android phones. *Id.*

With the benefit of this discovery and other investigation, Class Counsel proceeded to develop expert reports from a total of seven preeminent experts in computer science, telecommunications, economics, social psychology, and consumer surveys. Joint Decl. ¶¶ 22–23. Given the novel challenges presented by the task of quantifying the challenged transfers across a population of over 100 million Android users, and delays in obtaining certain information from Google, certain of the reports were voluminous and were supplemented multiple times. *Id.*

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

The parties took and defended a total of 41 depositions, including 20 depositions of 17 different Google employees, and 17 depositions of 12 experts. Joint Decl. ¶ 23. Nearly all of the depositions in this case involved technical material because the witness was either an expert or a technical fact witness with knowledge of Google's internal software. *Id.* As such, the depositions in this case demanded extensive preparation. *Id*.

The evidence in this case (and the related *Csupo* litigation, which was coordinated for purposes of discovery) was developed independently by Class Counsel, without relying on any prior government investigation or other private litigation. Joint Decl. ¶ 18.

### D.    Class Certification and *Daubert* Briefing and Argument

On March 11, 2025, after the close of discovery, Class Counsel moved for class certification under Rules 23(b)(2) and (3). ECF 181. Google opposed class certification. ECF 191. Google also filed *Daubert* motions to exclude Plaintiffs' experts, and Class Counsel filed extensive opposition papers, as well as their own *Daubert* motion directed at improper opinions by Google's experts. ECF 171–72, 196–97, 227; ECF 180, 213. The *Daubert* issues were complex and highly technical.

This Court held a hearing on Plaintiffs' class certification motion and Google's *Daubert* motions on August 19, 2025. *See* Transcript (Aug. 19, 2025), ECF 231. Class Counsel prepared on the technical factual material and legal arguments underlying their class certification motion and oppositions to Google's *Daubert* motions. The class certification and *Daubert* motions discussed above were fully briefed and argued, and were pending resolution by the Court when the parties entered into the proposed settlement.

## II.    Class Counsel's Negotiation of the Settlement

Class Counsel secured the Settlement Agreement with Google only after protracted, adversarial settlement negotiations conducted over the course of more than a year. ECF 260-1 ¶¶ 12–14. Settlement negotiations required significant energy and attention from Class Counsel, including during periods of briefing and oral argument on critical motions. *Id.* These negotiations included four days of in-person mediation in November 2024 and October 2025, several additional

mediation sessions conducted by video conference, innumerable additional settlement discussions between the parties, and weeks of intensive negotiations in the fall of 2025. *Id*. There were several times during these negotiations when the discussions came to an impasse, only to be resolved after days, weeks, or months of additional effort. Joint Decl. ¶ 39.

Class Counsel put their own funds at risk to maximize the prospects of obtaining a favorable settlement for the Class. In addition to their investment of attorney time, and the costs incurred in traveling to two in-person mediations, the parties hired world-class mediators with a track record of success settling cases of this size and complexity, specifically Kenneth R. Feinberg and Camille S. Biros. ECF 260-1 ¶ 12.[1]

In addition, Class Counsel retained Graeme W. Bush of Zuckerman Spaeder LLP to serve as Special Settlement Counsel to represent exclusively the interests of the Class in this case. ECF 260-1 ¶ 13. Class Counsel paid the fees of Zuckerman Spaeder out of pocket, which was engaged on an hourly basis and had no financial interest in any settlement.[2] *See* Joint Decl. ¶ 40.

As a result of Class Counsel's negotiations, on November 26, 2025, the parties executed a term sheet outlining the principal terms of the proposed Settlement (and a similar term sheet in *Csupo*). ECF 260-1 ¶ 14. On December 23, 2025, after additional negotiations, the parties executed a definitive long-form Settlement Agreement documenting the proposed Settlement (and a similar definitive settlement agreement in *Csupo*). ECF 260-11, 260-13.

**III.    The Settlement Secured by Class Counsel**

As this Court recognized in its order granting preliminary approval, the proposed Settlement secured by Class Counsel includes a comprehensive package of injunctive relief and

---

[1] Mr. Feinberg has been called "America's go-to mediator in times of crisis" for "help[ing] mediate and resolve seemingly intractable crises." David Lat, *Resolving The Unresolvable: Kenneth Feinberg*, Original Jurisdiction, Substack, October 30, 2025, available at https://davidlat.substack.com/p/mediator-kenneth-feinberg-special-master-ken-feinberg-podcast-interview. Mr. Feinberg is "most well-known for how he and his colleague Camille Biros designed and administered the September 11th Victim Compensation Fund." *Id.*

[2] Zuckerman Spaeder and McManis Faulker (which served as local counsel), were both paid on an hourly basis by Class Counsel. The fees paid to those firms have not been included in the litigation costs and expenses for which Class Counsel seeks reimbursement. Their fees will instead be covered by any award of attorneys' fees to Class Counsel.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

significant monetary relief for the Class. ECF 270 at 18–21. In terms of monetary relief, Google will pay $135 million into a non-reversionary common fund for the benefit of the Class. *Id.* at 4. As for injunctive relief, the Settlement requires that Google "disclose the conduct at issue to Android users and to require users to expressly consent to it when they set up new Android phones." *Id.* at 5. Google's disclosures will take several forms designed to be visible to as many Class members as possible, including disclosures in Google's terms of service and online web pages. *See id.* at 5–6 (explaining some of the different disclosures). Most notably, Google will provide new disclosures to every user who sets up an Android phone, explaining in plain language that Google's software will "automatically communicate with Google servers for a range of purposes, including using your cellular data when you are not connected to Wi-Fi," that Google's software may do so "in the background, when you are not directly interacting with your device, including when the device's screen is locked," that "some of the communications cannot be turned off," and that "[y]ou are responsible for any fees incurred" from your cellular carrier "in connection with these cellular communications." *Id.* (quoting Settlement Agreement). In addition, Google will make engineering and software changes to disable a setting on Android devices that Class Counsel believes is misleading to users. *Id.* All these changes will remain in effect for at least two years following full implementation.[3]

Class Counsel worked with the Settlement Administrator to negotiate with multiple payment processors in order to build an automatic payment process that will maximize the number of Class members who receive payment. This was a material provision of the Settlement that Class Counsel negotiated with Google and undertook significant effort to implement. The Settlement Administrator estimates that only 1–5% of Class members will affirmatively file a claim and select a payment method as a result of the Class notice, but that it will be able to provide payments to an additional 50–75% of Class members via this automatic electronic payment process. *See* ECF 260-18 ¶ 67. This anticipated participation rate is substantially higher than the participation rates in

---

[3] These changes are subject to reasonable modifications if changes in Google's practices or technologies render the agreed-upon language no longer accurate.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

comparable class action cases, which typically range from 1.22–22%. *See* ECF 260-17 (Ex. 2 to 01/27/2026 Wallenstein Decl.).

Class Counsel also spent weeks negotiating reduced settlement administration costs. ECF 260-15 ¶ 14. Class Counsel successfully negotiated the lowest per-transaction fees that Class Counsel is aware of in any case. ECF 260-15 ¶ 15.

## LEGAL STANDARD

California law, not federal law, applies to the determination of an appropriate award of attorneys' fees in this diversity case. In cases such as this, "when there has been a settlement as to a diversity-based class action based on state law claims," courts in the Ninth Circuit must "look[] to the law of that state to determine attorneys' fees awards, and to determine the method of calculating the fees." *Elhilu v. Quizno's Franchising Co.*, No. 06-cv-7855, 2009 WL 10671939, at *4 (C.D. Cal. Dec. 8, 2009) (citing, *inter alia*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).[4] This case was brought based on the Court's diversity jurisdiction, and the asserted conversion claim arises exclusively under California state law. Accordingly, "California law governs the award of attorney's fees in this action." *Create-A-Card, Inc. v. Intuit, Inc.*, No. 07-cv-6452, 2009 WL 3073920, at *1 (N.D. Cal. Sept. 22, 2009).

"California has long recognized . . . the propriety of awarding an attorney fee to a party who has recovered or preserved a monetary fund for the benefit of himself or herself and others." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 488–89 (2016). "In California state court, the typical award of attorneys' fees is approximately one third of the common fund." *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1001 (N.D. Cal. 2025).

California law favors awarding Class Counsel a percentage of the recovery in common-fund cases such as this. In *Laffitte*, the seminal California Supreme Court opinion on the subject, the Court held that the percentage-of-recovery method of determining attorneys' fees is favored in

---

[4] The Class Action Fairness Act preempts state law only for "fee awards for coupon settlements." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 657 (9th Cir. 2020). The proposed Settlement provides money, not a coupon, so CAFA's fee provision does not apply. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015).

California, due to its "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." 1 Cal. 5th at 503. The court there upheld an award of one-third of the common fund resulting from a pre-trial settlement. *Id.* at 506. Following *Laffitte*, "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-cv-1842, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (citing *Laffitte*, 1 Cal. 5th at 506).

## ARGUMENT

Class Counsel respectfully submit that this Court should award Class Counsel a fee of $39,825,000, representing 29.5% of the monetary recovery in this case.

## I.    Under California Law, the Court Should Award Class Counsel Attorneys' Fees Representing 29.5% of the Common Fund

Under California law, "the typical award of attorneys' fees is approximately one third of the common fund." *Oliveira*, 767 F. Supp. 3d at 1001. Under the percentage method that California law favors, "most fee awards" are "33 percent," or "one-third of the recovery." *Id.* (citations omitted). Class Counsel requests a lower percentage, 29.5%, of the common fund.

The objective of the percentage method is "the award of a reasonable fee to compensate counsel for their efforts." *Laffitte*, 1 Cal. 5th at 504. To that end, courts examine several factors including the "risks" taken by counsel in prosecuting the case, the extent to which counsel's fees were on "contingency," the "novelty" and "difficulty" of the matter, and "the skill shown by counsel." *Id.* These factors echo those articulated by the Ninth Circuit in *Vizcaino*. 290 F.3d at 1048–50 (weighing similar factors). *See Laffitte*, 1 Cal. 5th at 495 (citing *Vizcaino* approvingly).

Applying these factors, "California courts routinely award attorneys' fees of one-third of the common fund" in cases like this one. *Beaver*, 2017 WL 4310707, at *9 (awarding 33.3% fee award following settlement and citing the 33% awards in *Laffitte* and *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)); *see Oliveira*, 767 F. Supp. 3d at 1001 (similar). The California Court of Appeal has explained that under the "percentage-of-the-benefit method . . . fee awards in class actions average around one-third of the recovery." *Chavez*, 162 Cal. App. 4th at 66 n.11; *see*

15

*id.* (holding that an "initial award" of "30.3 percent of the benefits" was "not out of line with class action fee awards calculated using the percentage-of-the-benefit method").

Class Counsel does not seek the full 33% that is commonly awarded under California law, but a smaller fee award of 29.5%. Such an award is warranted considering the *Laffitte* factors, including the risks taken by Class Counsel in prosecuting the case, the fact that Class Counsel's fees were entirely on contingency, the novelty and difficulty of the matter, and the skill shown by Class Counsel. Although not required under California law, a lodestar cross-check also confirms the reasonableness of the requested 29.5% fee.

### A.      Class Counsel Achieved Significant Success for the Class

Class Counsel achieved considerable success for the Class. The Settlement will secure for the Class both a substantial nine-figure monetary payment, and "significant" injunctive relief that this Court has determined "provides meaningful value to plaintiffs and the class." ECF 270 at 21.

Class Counsel believe $135 million to be the largest class action settlement ever of a conversion claim in federal court, and one of the largest settlements Google that has ever entered into with private litigants. Those facts alone establish that the proposed Settlement is a noteworthy success.

Furthermore, the $135 million Common Fund represents between 6.8% and 12.9% of the maximum damages that Plaintiffs could have sought at trial, if they had fully prevailed in opposing Google's pending expert motions. Given the nature of the claim at issue, a recovery in that range is "a substantial achievement on behalf of the class." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (finding that "a total award of approximately 9% of the possible damages" in a securities fraud case was a "substantial achievement" warranting a higher fee).

As the Court has recognized, the nine-figure Common Fund "represent[s] a *premium* payment to each class member" over the amount that the Class could have recovered if Google had prevailed on its pending expert motions. ECF 270 at 19. The $135 million Common Fund represents 44.4 to 184.1% of the Plaintiffs' damages under the theory propounded by Google's experts, as discussed in Plaintiffs' Motion for Preliminary Approval. ECF 260 at 23–24. Settlement for an amount that may represent more than 100% of the potential recovery is a "rare

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

and exceptional percentage of recovery" warranting exceptional compensation. *In re Telescopes Antitrust Litig.*, No. 20-cv-3639, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025) (hereinafter "*Telescopes*") (awarding attorneys' fees of one-third of the common fund created by settlement prior to formal class certification).

The exemplary plan of distribution developed by Class Counsel also militates in favor of a higher fee. Unlike many settlements where only a small fraction of the class actually receives payments, the plan of distribution here is designed to maximize the number of Class members participating in the recovery. Class members will not be required to submit any claim form before receiving payment (though they may submit a payment election form specifying their desired method of payment if they wish). ECF 260-18 ¶ 67. By virtue of this distribution plan, an estimated 55–80% of Class members will receive payment automatically via payment methods they already use, such as Venmo or Zelle. *Id.* Such participation rates exceed those in similar cases, which often range from 1.22–22%. ECF 260-17. And as discussed above, Class Counsel also spent weeks negotiating to reduce settlement administration costs. ECF 260-15 ¶ 15.

Significantly, the requested 29.5% fee does not provide Class Counsel any additional compensation for the value of the injunctive relief they achieved. While the Court has stated that it "declines at this time to ascribe any particular monetary value" to the injunctive relief in the Settlement, the Court has recognized that the injunctive relief "is significant and provides meaningful value to plaintiffs and the class."[5] ECF 270 at 21 & n.10.

The injunctive relief that Plaintiffs obtained via the proposed settlement requires Google to disclose the conduct at issue, and the fact that it consumes cellular data. "A significant aspect of plaintiffs' conversion claim is the clandestine nature of Google's alleged conduct, and the surreptitious nature of the alleged conversion of cellular data" by Google. ECF 270 at 20–21. To address this, Google has agreed to add new language that describes, for example, how transfers

---

[5] If the Court were to consider the economic value of the injunctive relief—which Class Counsel's expert, Dr. Jeffery Stec, calculated at $599.4 million for the two years during which the injunctive relief is required to be in place (ECF 260 at 26; ECF 260-26 ¶ 11)—Class Counsel's requested fee would represent a much smaller percentage of the total value obtained by the Class in settlement (5.42%).

occur "in the background, when you are not directly interacting with your device." ECF 260-11 at 34, 47, 50. Google will also expressly disclose that the transfers at issue "may use your cellular data," *id.* at 34, particularly when "the device is not connected to Wi-Fi," *id.* at 47. And Google will disclose that some of the transfers "cannot be turned off." *Id.* at 47, 50. In addition, the proposed Settlement will require Google to take steps to deactivate the "allow background data usage" toggle, to ensure that it is no longer misleading. As this Court recognized, the injunctive relief obtained by Class Counsel in the Settlement Agreement will require Google "to provide information enabling users to make informed decisions about whether they wish to continue using Android mobile devices." ECF 270 at 21.

This is a significant victory for transparency. The Northern District of California has held that public disclosures like these "provide meaningful benefits" and therefore have "significant value for both class members and the general public." *In re Google Location Hist. Litig.*, No. 18-cv-5062, 2024 WL 1975462, at *6 (N.D. Cal. May 3, 2024); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015). This Court should likewise consider the value that such injunctive relief will provide to the Class. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (finding that injunctive relief requiring similar disclosure for only one year "has value" because "it provides information to users about Facebook's message monitoring practices"). While the economic value of the injunctive relief may be difficult to quantify, the injunctive relief undoubtedly provides significant value above and beyond the monetary compensation to the Class, further justifying Class Counsel's requested 29.5% fee.

### B. Class Counsel Assumed Significant Risk

One purpose of a fee award representing a percentage of the recovery is to adequately "compensat[e] the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001). Because the fee should "reflect[] the risk that the attorney will not receive payment if the suit does not succeed," it "constitutes earned compensation" for the investment, including the investment's attendant risk. *Id.* at 1138. Higher risk justifies higher fees, particularly where a "case raised a significant number

of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (2008).

Class Counsel assumed considerable risk in bringing this lawsuit. This was not a class action that followed in the path of an existing government investigation that had already revealed the relevant facts and laid the groundwork for recovery. The novelty of this case required Class Counsel to independently develop the facts through their own investigation and discovery of Google's logging and telemetry systems, and to apply those facts to their legal theories of recovery. It also required identifying, retaining, and compensating technical experts who could understand Google's complex internal systems, including GMS Core. Counsel invested significant time, money, and effort to accomplish these ends, with no guarantee of compensation.

Apart from the nature of the claims, the nature of the Defendant also created serious risk. Google has experienced counsel and vast resources. It has vigorously contested liability, damages and class certification. The proposed Settlement represents a significant victory given Google's substantial resources and the challenges facing class action plaintiffs in federal court.

**C.      The Difficulty of the Case and Skill of Class Counsel Justify the Requested Fee**

This was a difficult case. As discussed in greater detail in the Joint Declaration, it required: (1) winning a Ninth Circuit appeal on an issue of first impression; (2) building Class-wide common proof through discovery including hundreds of hours of work studying Google's source code and billions of records from Google's vast databases; (3) quantifying the amount of cellular data that were consumed by certain discrete functions performed by the phone; (4) winning numerous discovery battles; and (5) briefing and arguing technical case-dispositive motions. Because this case intersects with the latest developments in the technology and telecommunications industries, Class Counsel needed to ensure that experts from different industries and areas of knowledge coordinated their work and kept on schedule to meet expert deadlines. Class Counsel also needed to develop their own technical knowledge in these complex areas while grounding the analysis in the relevant legal principles. Joint Decl. ¶¶ 4–40.

Furthermore, it is hard to overstate the skill and tenacity required of Class Counsel to achieve the proposed settlement. Class Counsel engaged in numerous arms-length mediation

sessions and related settlement negotiations over a period spanning more than a year. ECF 260-1 ¶¶ 12–15. Class Counsel zealously negotiated every material term of the proposed settlement, even when doing so resulted in the discussions breaking down numerous times. And Plaintiffs enlisted the assistance of Special Settlement Counsel to focus exclusively on protecting the interests of the Class in this case. *Id.* ¶ 13.

### D.    The Contingent Nature of the Representation Supports the Requested Fee

This case has been pending for nearly six years, and Class Counsel have been working on it for even longer, with no guarantee of any compensation for their time. As this Court is aware, this case has taken a winding path to reach settlement, with risks and challenges at every stage. *See* ECF 270 at 11 (summarizing the past several years of litigation by Class Counsel). So far, Class Counsel have invested over 15,000 hours of professional time and roughly $700,000 of their own funds to bring this litigation to fruition. *See* Summers Decl. ¶¶ 11–15, 28 & Annexes 10 & 11; Wallenstein Decl. ¶¶ 7–11 & Annexes 2 & 3; Pipkin Decl. ¶¶ 6–9 & Annexes 1 & 2.[6] The risk of not receiving any return on that investment due to the contingent nature of this case strongly supports the requested fee award. Both primary firms invested their own money in this case, and neither firm used litigation financing.[7] *See* Summers Decl. ¶ 28; Wallenstein Decl. ¶ 12.

This Court should also consider the time value of money during the nearly six years that this case has been pending. Contingent fee arrangements provide an "economic rationale for fee enhancement" to compensate counsel "not only for the legal services he renders but for the loan of those services." *Ketchum*, 24 Cal. 4th at 1132 (quoting Richard A. Posner, *Economic Analysis of Law* 534, 567 (4th ed. 1992)). "The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." *Id.* (quoting same). Courts should award a higher percentage "to reward counsel for investing 'substantial time, effort, and money, especially in light

---

[6] Each firm has separately reported its own lodestar data in these declarations. A high-level summary of the total is provided at paragraph 28 of the Joint Declaration.

[7] Fees of McManis Faulkner, which served as local counsel, were paid over the course of the litigation by Korein Tillery and Bartlit Beck.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

of the risks of recovering nothing.'" *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1021 (E.D. Cal. 2019) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299–1300 (9th Cir. 1994)).

Additionally, each of the Class Representatives agreed to a 33% contingency fee in the retention agreements they executed with Class Counsel. *See* Taylor Decl. Ex. A; Cleary Decl. Ex. A; Nelson Decl. Ex. A. While these agreements are not dispositive, they are probative evidence of "the market for legal services" for risky, contingency fee engagements like this one. *Laffitte*, 1 Cal. 5th at 494 n.3; *Vizcaino*, 290 F.3d at 1049 (agreements are "somewhat probative of a reasonable rate" when placed in proper context); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"). All three Class Representatives—who personally witnessed and attested to the hard work and skill brought to bear by Class Counsel in sworn declarations—strongly endorse Class Counsel's performance and fully support the requested award of 29.5%, which represents a discount from the 33% contingency rate to which the Class Representatives originally agreed. *See* Taylor Decl. ¶¶ 14–15; Cleary Decl. ¶¶ 15–16; Nelson Decl. ¶¶ 21–22.

### E.    An Optional Lodestar Cross-Check Supports the Requested Fee

The California Supreme Court has held that a lodestar cross-check is not necessary in common-fund cases, and that courts may "use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506. But if this Court chooses in its discretion to apply a lodestar cross-check to this case, it will confirm that the requested fee is reasonable and appropriate.[8]

---

[8] If a trial court chooses to use a lodestar cross-check, it "does not override the trial court's primary determination of the fee as a percentage of the common fund." *Laffitte*, 1 Cal. 5th at 505. However, a cross-check can help to illustrate Class Counsel's "role in the creation of the fund." *Id.* (citation omitted). California courts perform lodestar cross-checks using summaries of attorney time spent. As the California Supreme Court has cautioned, to avoid the "expenditure of judicial resources" involved in examining lodestar submissions, courts applying California law need not "closely scrutinize each claimed attorney-hour," and may "perform[] the cross-check using counsel declarations summarizing overall time spent, rather than demanding and scrutinizing daily time sheets." *Id.*

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

Through April 23, 2026, Class Counsel has invested over $15.3 million worth of professional services in this litigation.[9] *See* Summers Decl. ¶ 11–13, 28 & Annex 10; Wallenstein Decl. ¶¶ 7–9 & Annex 2; Pipkin Decl. ¶¶ 6–8 & Annex 1. The requested 29.5% fee would reflect a lodestar cross-check multiplier of 2.6.

Importantly, these figures reflect only those hours expended exclusively in connection with the *Taylor* case, and do not include or "double count" time expended for the *Csupo* case. *See* Summers Decl. ¶ 12; Wallenstein Decl. ¶ 8; Pipkin Decl. ¶ 7. Throughout this litigation, Class Counsel maintained separate time and expense records for each of the *Csupo* and *Taylor* matters, and took care to bill time, as appropriate, to one matter or the other. *See* Summers Decl. ¶ 12; Wallenstein Decl. ¶ 8; Pipkin Decl. ¶ 7. Moreover, because the *Csupo* case generally proceeded ahead of *Taylor*, a tremendous amount of work performed initially for the *Csupo* case, including discovery and work on expert reports, ultimately benefited both cases but was generally billed solely to the *Csupo* matter (except where the relevant attorney or other professional allocated their time proportionally to each matter). The hours and time summarized above, and described in greater detail in the supporting declarations, represent only the time billed to the *Taylor* case and do not include any time billed to the *Csupo* case, even where time billed to *Csupo* may have inured to the benefit of the *Taylor* Class. *See* Summers Decl. ¶ 12; Wallenstein Decl. ¶ 8.

These figures also do not account for rate increases since the time the work was performed, or for the time-value of money. They are based solely on the hourly rates in effect at the time the services were performed. *See* Summers Decl. ¶ 11; Wallenstein Decl. ¶ 7. These figures also do not include the time Class Counsel will spend going forward obtaining final approval or administering the Settlement. Class Counsel's lodestar is calculated through April 23, 2026. Between that date and the final conclusion of this Settlement, additional work will be required to obtain final approval and to implement and administer the Settlement. This future investment of time will continue to reduce the lodestar multiplier, rendering the requested fee award even more

---

[9] Class Counsel's lodestar totals do not include the time of Zuckerman Spaeder, which served as Special Settlement Counsel.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

reasonable. By the time the proposed settlement is fully consummated, the lodestar will represent a multiple of less than 2.6, perhaps only about 2.5.

Given the substantial investment and considerable risk taken by Class Counsel in prosecuting this case, a multiple of 2.5–2.6 is well within the accepted range.[10] In *Chavez*, the California Court of Appeal affirmed a multiplier of 2.5 and noted that multipliers of "2 to 4 or even higher" may be reasonable under California law. 162 Cal. App. 4th at 66. Similarly, the *Vizcaino* decision, which California courts have cited favorably, held that multipliers of up to 4 may be reasonable, and affirmed a multiplier of 3.65. 290 F.3d at 1051 & n.6 (under Washington state law in diversity).

## II.    The Requested Fee Is Also Appropriate Under Federal Law

Although federal common law does not apply to the determination of an appropriate fee in this diversity case, the requested 29.5% fee would also be proper under federal law. Courts in the Ninth Circuit regularly depart upward from the 25% benchmark and award fees of 30% or more in cases similar to this one. *See, e.g.*, *Telescopes*, 2025 WL 1093248, at *10 (awarding attorneys' fees of one-third of the common fund in a settlement prior to class certification and holding that "33.33% is consistent with Ninth Circuit precedent"); *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-3300, 2020 WL 6562334, at *10 (N.D. Cal. Nov. 9, 2020) (awarding the 31% requested by class counsel and noting that courts within the Ninth Circuit normally award up to 33.3% of the common fund).

First, under federal common law, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision*, 559 F. Supp. 2d at 1046. As explained above, the overall result and benefit to the Class in this case was exceptional. *See supra* Part I.A. The $135 million settlement "provides direct cash relief" to the vast majority of the Class, *Telescopes*, 2025 WL 1093248, at *10, and the injunctive relief provides additional

---

[10] In *Csupo*, the court awarded fees representing 33% of the common fund in that case. Wallenstein Decl. Ex. 13, *Csupo* Order Granting Plaintiffs' Motion for Approval of Attorney's Fees, Expenses and Incentive Awards at 7. In addition, the *Csupo* court found that a lodestar cross-check of 2.36 in that case was "on the lower end of the permissible range." *Id.*

(and perhaps greater) value to all Class members and future Android users. The $135 million common fund is not only an unprecedented settlement for a conversion claim in federal court, but it also represents by one potential measure up to 184.1% of the possible recoverable damages for the Class. ECF 260 at 23–24. In *Telescopes*, the Court evaluated a settlement that represented "between 19% to 110%" of the plaintiffs' possible recovery, and concluded that "the high end of [that range] would be a rare and exceptional percentage of recovery." 2025 WL 1093248, at *10. The court therefore concluded that the settlement was "an excellent result warranting an upward adjustment" to "approximately 33.33%" of the common fund. *Id.*; *see also, e.g.*, *In re Omnivision*, 559 F. Supp. 2d at 1046.

Second, Class Counsel undertook this litigation on full contingency, at substantial risk given the novelty of the claim asserted, and obtained success only through skill and advocacy. The *Telescopes* court concluded that an upward adjustment to 33.33% was warranted because "Class Counsel took on substantial risk in litigating this case on a contingency basis, and [the] case required a high level of skill to achieve a successful result." 2025 WL 1093248, at *10. The same is true here.

Third, this case required a protracted investment of time and money over many years. The *Telescopes* court concluded that an upward departure was warranted because "[t]he Settlement Agreement was reached after more than four years of complex and hard-fought litigation." 2025 WL 1093248, at *10. Here, it was nearly six years. And like in *Telescopes*, the defendant in this case "vigorously defended [its] position throughout, filing multiple motions to dismiss" and numerous other substantive motions. *Id.*

The *Telescopes* court found that "[u]nder these circumstances, an award of 33.33% is consistent with Ninth Circuit precedent." 2025 WL 1093248, at *10. The same circumstances are present here, and likewise support an award of 29.5% to Class Counsel in this case.

An award of 29.5% in this case would not be unusual under federal law. Federal courts in California, including those applying federal common law, frequently award class counsel attorneys' fees representing one-third of the common fund. *See, e.g.*, *Senne v. Kan. City Royals*

24

*Baseball Corp.*, No. 14-cv-608, 2023 WL 2699972, at *19–20 (N.D. Cal. Mar. 29, 2023), *aff'd sub nom. Senne v. Concepcion*, No. 23-15632, 2023 WL 4824938 (9th Cir. June 28, 2023) (30% fee award after $185 million settlement); *Carlin*, 380 F. Supp. 3d at 1023 (33.3% fee award after settlement); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2018 WL 4620695, at *2–4 (N.D. Cal. Sept. 20, 2018) (33% fee award after $104 million settlement); *In re Heritage Bond Litig.*, No. 02-ml-1475, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (33.3% fee award following settlement); *see also Burnett v. Nat'l Ass'n of Realtors*, No. 19-cv-332, 2024 WL 2842222, at *7, *17 (W.D. Mo. May 9, 2024) (approving "one-third" fee award for megafund settlement five years into litigation).

Although federal common law does not apply here, the circumstances present in this case would warrant a modest upward departure from the 25% benchmark to 29.5% or more. Class Counsel has prepared a table identifying other federal and state cases in which courts have awarded 30% or more of the common fund as attorney's fees in so-called "megafund" cases, offering further support for the reasonableness of Class Counsel's request for a 29.5% fee. *See* Wallenstein Decl. Ex. 1 (comparable cases table).

## III.   Class Counsel Should Be Reimbursed for Litigation Costs and Expenses Incurred in Prosecuting this Litigation

Under both Federal and California law, Class Counsel may recover their reasonable litigation costs from the common fund. *See In re Omnivision*, 559 F. Supp. 2d at 1048 ("[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters" from a common fund settlement); *Laffitte*, 1 Cal. 5th at 503 (approving common fund settlement that "net[ted out] specified fees and costs"); *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1388 n.16 (2010) (affirming reimbursement in over $1 million in litigation costs and expenses).

To date, Class Counsel has incurred $698,533.60 in out-of-pocket costs and expenses in prosecuting this litigation (not including the legal fees paid to local counsel or Special Settlement Counsel). *See* Summers Decl. ¶¶ 14–15 & Annex 11; Wallenstein Decl. ¶¶ 10–11 & Annex 3;

Pipkin Decl. ¶ 9. These expenses directly benefited the Class, and in the judgment of Class Counsel, were both necessary to the prosecution of the case and reasonable in amount. *See* Summers Decl. ¶ 14; Wallenstein Decl. ¶ 10; Pipkin Decl. ¶ 10.

Class Counsel kept careful records of expenses in this case separate from expenses incurred in *Csupo*. *See* Summers Decl. ¶ 15; Wallenstein Decl. ¶ 11; Pipkin Decl. ¶ 9. The largest category of expenses incurred in the litigation were fees for retained experts. Joint Decl. ¶ 48. To litigate this highly technical and complex case, Class Counsel required the assistance of numerous retained expert witnesses. The experts billed at reasonable rates, lower than the rates charged by Google's corresponding experts. Joint Decl. ¶ 48.

Class Counsel hired the same experts in this case as in *Csupo*, and those experts did not double-bill their time to both cases. Joint Decl. ¶ 49. Because *Csupo* proceeded through expert reports and expert discovery prior to the corresponding phases in this case, the experts were able to rely on work they had already completed for the *Csupo* case, which reduced the number of hours required in *Taylor* considerably and resulted in much lower fees for expert reports in this case.[11]

In addition, the class in *Csupo* shared certain costs with the *Taylor* Class for some other items, such as data hosting costs when both cases were active. Joint Decl. ¶ 50. Again, Class Counsel tracked costs and expenses separately for each case, and costs were not billed to *Taylor* to the extent they were already incurred in *Csupo*. *Id.* The efficiencies from litigating this case alongside *Csupo* ultimately saved the *Taylor* Class millions of dollars.

## IV.    The Court Should Award the Class Representatives Reasonable Incentive Awards

Class Counsel respectfully request that the Court award incentive awards of $10,000 to each of Class Representatives Joseph Taylor, Mick Cleary, and Jennifer Nelson. The proposed settlement is not contingent upon the approval of any incentive award.

In federal diversity cases, incentive awards are governed by state law. *See, e.g.*, *Chieftain Royalty Co. v. SM Energy Co.*, 100 F.4th 1147, 1152 (10th Cir. 2024). Federal courts sitting in diversity in California therefore routinely look to California state law when deciding incentive

---

[11] In this case, the fees for expert witnesses were $400,037.20. Joint Decl. ¶ 49. By comparison, the fees of expert witnesses in *Csupo* were over $3.8 million. *Id.*

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

awards. *See, e.g.*, *Cott v. Equity Residential*, No. 25-cv-2358, 2026 U.S. Dist. LEXIS 4709, at *17 n.1 (N.D. Cal. Jan. 9, 2026); *Curran v. City of Oakland*, No. 23-cv-2354, 2025 U.S. Dist. LEXIS 251945, at *23 n.2 (N.D. Cal. Dec. 4, 2025).[12]

Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019) (citation modified); *accord In re Cellphone*, 186 Cal. App. 4th at 1393–94 (approving $10,000 incentive awards). The "proportion of the total settlement that is spent on incentive awards" is more important than the difference in size between the incentive award and payments to individual class members. *In re Online DVD-Rental*, 779 F.3d at 947 ("While it is true that a $5,000 incentive award is roughly 417 times larger than the $12 individual award, we focused less on that fact in *Staton* and more on the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards."). This is particularly true in consumer class actions like *In re Online DVD-Rental* (and this case) that have millions of class members, where any service award will necessarily represent a large multiple of the individual damage awards payable to class members.

The Class Representatives devoted meaningful time and effort to this lawsuit and put their personal information and reputations at risk in a way that many class representatives do not. Wallenstein Decl. ¶ 20. They faced personal questions about sensitive topics at their depositions, *see, e.g.*, Nelson Decl. ¶ 14, and were prepared to risk further disclosure of sensitive information at a potential trial. *See* Wallenstein Decl. ¶ 20 & Ex. 2 (discussing *Csupo* trial testimony about sensitive aspects of personal health). Most importantly, the Class has derived significant benefit from their work, in the form of a large settlement and robust injunctive relief.

---

[12] California state and federal courts are guided by very similar considerations in determining whether to grant incentive awards. *Compare, e.g.*, *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002–03 (N.D. Cal. 2017), *with Golba v. Dick's Sporting Goods, Inc.*, 238 Cal. App. 4th 1251, 1272 (2015).

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

Class Representatives Taylor, Cleary, and Nelson each spent 60–80 hours working on this case to date. *See* Taylor Decl. ¶ 13, Cleary Decl. ¶ 14, Nelson Decl. ¶ 15. Each of them met and corresponded with their attorneys regularly throughout the litigation and actively followed the case's progress, including by reviewing key pleadings. *See* Taylor Decl. ¶¶ 3–10, Cleary Decl. ¶¶ 3–10, Nelson Decl. ¶¶ 3–11. Each were subject to extensive discovery from Google. *See* Taylor Decl. ¶¶ 5–7, Cleary Decl. ¶¶ 5–7, Nelson Decl. ¶¶ 5–8. A significant amount of data from their personal mobile devices—including emails, search history, YouTube watch history, app usage, and information from their Google accounts—was collected, reviewed, and produced. *See* Taylor Decl. ¶ 5, Cleary Decl. ¶ 5, Nelson Decl. ¶ 5. Each was required to respond to interrogatories and requests for admission and production. *See* Taylor Decl. ¶ 6, Cleary Decl. ¶ 6, Nelson Decl. ¶ 7.

Each Class Representative testified by deposition and prepared thoroughly in advance to do so, meeting with counsel multiple times in addition to preparing on their own. *See* Taylor Decl. ¶ 7, Cleary Decl. ¶ 7, Nelson Decl. ¶ 8. In Class Counsel's view, each of them took this case and their obligations to the Class seriously, and they approached preparation for their depositions with an appropriate sense of purpose. *See* Wallenstein Decl. ¶ 17.

The work done by the Class Representatives in this case is comparable to the work done in similar cases, where higher incentive awards were approved. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving $20,000 incentive award for similar work, including a two-day deposition, but no trial); *Quezada v. Con-Way Freight*, No. 10-cv-100, 2017 WL 6949286, at *2 (N.D. Cal. Sept. 29, 2017) (approving two $20,000 incentive awards for similar work, including a deposition but no trial); *Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068, 2007 WL 221862, at *4, *17 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving four $25,000 incentive awards, where "no formal discovery took place prior to settlement" and no trial occurred); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2011 WL 7575003, at *2 (N.D. Cal. Dec. 27, 2011) (approving eleven $15,000 incentive awards for similar work including a deposition, where direct purchaser case settled well in advance of trial); *Ross v. U.S. Bank Nat'l Ass'n*, No. 07-cv-2951,

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010) (approving four $20,000 incentive awards for similar work, including depositions but no trial); *see also Senne*, 2023 WL 2699972, at *21 (approving $15,000 incentive awards for class representatives who sat for depositions and prepared for trial); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267–68 (N.D. Cal. 2015) (approving $10,000 incentive award plus $5,000 payment for release of claims where class representative "spent 73 hours on this case" over "one year and nine months").[13] The underlying declarations—which show that the class representatives in these cases did similar work to the Class Representatives in this case—are attached as exhibits to (and discussed in greater detail in) the Wallenstein Declaration. Wallenstein Decl. ¶¶ 21–36. In light of the above decisions, each of which involve the same or higher incentive awards for similar work, incentive awards of $10,000 in this case are fair and reasonable.

This case is a textbook example of the need to provide an incentive for regular people "to act as a private attorney general," *Roes 1–2*, 944 F.3d at 1057 (citation omitted). It is no small matter for a private individual to take on a powerful company like Google. Moreover, each Class Representative faced real reputational risks from bringing a lawsuit against Google. They each knew that their name would be public, and that anyone searching online would be able to learn that they were suing Google in a class action. *See* Taylor Decl. ¶ 12, Cleary Decl. ¶ 13, Nelson Decl. ¶ 17. They nevertheless undertook to sue a "high profile" and well-resourced data company, and they deserve recompense for that risk. *Perkins v. LinkedIn Corp.*, No. 13-cv-4303, 2016 WL 613255, at *18 (N.D. Cal. Feb. 16, 2016) (recognizing that "the named Plaintiffs [who did not work for LinkedIn] may still suffer negative consequences in the workplace for filing a lawsuit, especially as the instant case . . . involves a high profile company").[14] *See also AdTrader, Inc. v.*

---

[13] The plaintiff in *Bellinghausen* expected "that his status of class representative will cause him harm in the future—more harm than even the requested incentive award might address–because when future employers or others search for his name online, this case, including the specific allegations, is available on the internet." 306 F.R.D. at 267.

[14] The "gravamen" of the allegations in *Perkins* was "harvesting email addresses from the contact lists of email accounts associated with Plaintiffs' LinkedIn accounts." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1195 (N.D. Cal. 2014).

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

*Google LLC*, No. 17-cv-7082, 2022 WL 16579324, at *8 (N.D. Cal. Nov. 1, 2022) (approving a $10,000 incentive award where class representative was concerned about being "the Named Plaintiff due to potential retaliation by Google").

Decisions in the Northern District of California often state that a $5,000 incentive award is "presumptively reasonable." *See, e.g.*, *Bellinghausen*, 306 F.R.D. at 266. This proposition stems from a case decided 26 years ago called *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000). The *Mego* court approved a $5,000 incentive award, but did not discuss the issue in detail or purport to set a rule about it. *See id.* Subsequent decisions cite *Mego* or cases that, in turn, ultimately rely upon *Mego*. *See, e.g.*, *In re Online DVD-Rental*, 779 F.3d at 947–48 ("[W]e approved an identical incentive fee in *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463."); *Bellinghausen*, 306 F.R.D. at 266–67 (citing *Hopson v. Hanesbrands Inc.*, No. 08-cv-844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (citing *Mego*)). Adjusted for inflation, a $5,000 incentive award in May 2000, when *Mego* was decided, is the equivalent of $9,627.20 today. *See* Wallenstein Decl. ¶ 18.

Courts have approved incentive awards even where no formal discovery occurred, where the class representatives significantly likely did less work than was done by the Class Representatives in this case. *See, e.g.*, *Glass*, 2007 WL 221862, at *4, *17 (approving $25,000 incentive awards where "no formal discovery took place prior to settlement"); *Hopson*, 2009 WL 928133, at *10 (approving $5,000 incentive award where no formal discovery occurred).[15] It follows logically that Class Representatives here, who were required to provide extensive discovery and sit for a deposition, should receive a larger incentive award than those who did less work, under appropriate circumstances.

It is of course true that the payments to individual Class members in this case will be small, and that the requested incentive awards would be large in comparison. But the aggregate recovery for the Class is considerable, and the requested incentive awards represent only **0.02%** of the settlement fund. Courts typically approve reasonable service awards as long as they are less than

---

[15] *See* Wallenstein Decl. ¶¶ 34–36.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

approximately 2% of the common fund. *See, e.g.*, *In re Lidoderm*, 2018 WL 4620695, at *4 (approving nine service awards of $10,000 each, totaling 0.086% of the $104.5 million common fund); *Alvarez v. Farmers Ins. Exch.*, No. 14-cv-574, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (approving nine $10,000 service awards that total were "1.8% of the total settlement value" where class representatives were deposed but no trial occurred); *In re Online DVD-Rental*, 779 F.3d at 947–48 (approving nine incentive awards totaling $45,000 where they made up "a mere .17% of the total settlement fund," and contrasting that with the 237 awards that were rejected in *Staton* that comprised 6% of the total settlement fund); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-cv-482, 2010 WL 2486346, at *9–10 (C.D. Cal. June 15, 2010) (approving $7,500 incentive award where class representative did "33.5 hours" of work where it amounted to "1% of the gross settlement").

In light of the above authorities, the significant effort contributed by the Class Representatives, and the risks they assumed, Class Counsel respectfully submit that an award of $10,000 for each Class Representative is reasonable and warranted. *See* Wallenstein Decl. ¶ 19.

V. **Class Counsel and the Class Representatives Should Be Awarded Interest on Any Portion of the Common Fund Awarded to Them**

Pursuant to Section 3.1 of the Settlement Agreement, the $135 million Settlement Fund will be held pending distribution in an interest-bearing escrow account. Further, pursuant to Section 3.6 of the Settlement Agreement, Class Counsel and the Class Representatives will receive interest on any award of fees, costs/expenses or incentive awards, only to the extent provided by order of this Court.

To the extent interest accrues on the Settlement Fund, Class Counsel and the Class Representatives should be awarded their pro rata share of any interest that accrues on any portion of the common fund the Court allocates to them (whether as attorneys' fees, reimbursement of costs and expenses, or incentive awards) pursuant to this motion up until the date that any such awards are distributed. *See Bernstein v. Virgin Am., Inc.*, No. 15-cv-2277, 2023 WL 7284158, at *1–2 (N.D. Cal. Nov. 3, 2023) (awarding "33% of the Common Fund Judgment" including "the addition of prejudgment and post-judgment interest"); *In re Lithium Ion Batteries Antitrust Litig.*,

31

No. 13-md-2420, 2020 WL 7264559, at *23 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (awarding 30% attorneys' fees on a $113.45 million settlement "together with a proportional share of interest earned on the Settlement Fund for the time period until dispersed").

## CONCLUSION

For the foregoing reasons, Class Counsel's Motion for Fees, Costs, and Incentive Awards should be granted.

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)

Dated:  April 24, 2026

Respectfully submitted,

BARTLIT BECK LLP

*/s/ Glen E. Summers*

Glen E. Summers (176402)
Karma M. Giulianelli (184175)
Lindley J. Brenza (*pro hac vice*)
Jonathan Jacob Marsh (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Marc A. Wallenstein (*pro hac vice*)
George A. Zelcs (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
Chad E. Bell (*pro hac vice*)
Pamela I. Yaacoub (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Carol L. O'Keefe (*pro hac vice*)
Michael E. Klenov (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Elizabeth M. Pipkin (243611)
Ann M. Ravel (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

*Attorneys for Plaintiffs*
*Joseph Taylor, Mick Cleary, and*
*Jennifer Nelson*

MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; MEMORANDUM IN SUPPORT
(Case No. 5:20-CV-07956-VKD)