Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Objector*
Nathan Byars

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, et al., individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br>GOOGLE LLC,<br><br>　　　　　　Defendant. | Case No.: 5:20-cv-07956-VKD<br><br>OBJECTION OF CLASS MEMBER NATHAN BYARS TO PROPOSED CLASS ACTION SETTLEMENT<br><br>Date:　　June 23, 2026<br>Time:　　10:00 a.m.<br>Judge:　Hon. Magistrate Judge<br>　　　　　　Virginia K. DeMarchi<br>Place:　Courtroom 2, 5th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................... 4

II. FACTUAL BACKGROUND ................................................................................. 5

    A.   Nathan Byars Is a Member of the Settlement Class. .......................................... 5

    B.   The Settlement Was Negotiated by the Same Firms Litigating the *Csupo* Action............. 5

    C.   The Class Receives Approximately $1.20 per Member, Capped at $100. ........................ 5

    D.   Class Counsel Filed Their Fee Motion on April 24, 2026................................................. 5

III. LEGAL STANDARD.......................................................................................... 6

IV. GROUND I — THE SETTLEMENT FAILS BECAUSE THE "RELIEF" IS
DETRIMENTAL TO THE CLASS.............................................................................. 6

    A.   Disabling the Toggle Imposes a Detriment, Not Relief....................................... 6

    B.   Ensuring the Settlement Is A Benefit Rather Than A Detriment Cannot Be Based Solely
        on Speculation....................................................................................................... 7

    C.   Even If the Toggle Was Non-Functional, the Settlement Concedes Rather Than Cures. .. 8

V. GROUND II — CLASS COUNSEL'S INTERESTS DIVERGED FROM THOSE OF THE
*TAYLOR* CLASS.......................................................................................................... 8

    A.   Class Counsel Held Three High-Value Litigation Assets..................................... 8

    B.   Class Counsel Chose Certainty Over Magnitude................................................. 10

    C.   The Architecture Tracks a Familiar Agency-Cost Problem. .............................. 10

    D.   The Special Settlement Counsel "Safeguard" Does Not Cure the Structural Problems... 11

    E.   The Special Counsel Attorneys' Fees Are Undisclosed. .................................... 13

    F.   The Bundled Architecture Created a Conflict of Interest Between the *Taylor* and *Csupo*
        Classes That Special Counsel Did Not Address. ............................................... 14

VI. GROUND III — THE COMBINED ATTORNEYS' FEES ACROSS LINKED
SETTLEMENTS EXCEED THE NINTH CIRCUIT BENCHMARK. ...................................... 15

    A.   The *Taylor* and *Csupo* Settlements Should be Considered Together. ........................ 15

    B.   The Combined Fee Is 32.0% on a $485 Million Combined Fund. .................................. 16

    C.   There Are No Grounds for Upward Departure. ................................................. 16

    D.   The Requested 2.6 Multiplier Is Not Justified. .................................................. 16

    E.   Class Counsel's Authorities Are Differentiable. ............................................... 17

VII. GROUND IV — THE SETTLEMENT BARGAINS AWAY THE MOST VALUABLE
RIGHTS OF THE CLASS WITHOUT VALUATION.............................................................. 18

    A.   Surrender of *Csupo* Preclusion and the toggle.................................................. 18

    B.   The Record Lacks Any Valuation of These Assets. ........................................... 19

    C.   Dr. Stec's $599.4 Million Valuation Is Not Achieved by this Settlement........................ 20

VIII. CONCLUSION................................................................................................. 20

ii

**TABLE OF AUTHORITIES**

**Cases**

*In re Apple Inc. Device Performance Litigation*, 50 F.4th 769 (9th Cir. 2022) ...................... 16-17

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)............................14, 18

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)...................................................................20

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ................................................... 17-18

*In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001) .......................................................12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)...................................... 12-13, 19

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007)........................................16

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)...................................................................19

*Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013) ....................... 11, 14-15

*Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002)...................................... 12-13

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) .................................................18

*In re Telescopes Antitrust Litig.*, 2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) .................... 17-18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................................17

**Statutes and Rules**

Fed. R. Civ. P. 23(e) .............................................................................................................. 11-12

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................... 6-7, 20

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................................6

Fed. R. Civ. P. 23(a)(4)...................................................................................................... 14-15

## I. INTRODUCTION

This proposed Settlement cannot withstand heightened scrutiny. Class member Mr. Nathan Byars objects on four independent grounds.

First, the Settlement's primary "relief" is not in the interests of the class, as it would judicially bless Google's very conduct the case challenged, leaving class members in a worse position to control their phone's privacy than before this suit was filed. The meager $1.20 per class member proposed Settlement hardly compensates for the concessions made.

Second, Class Counsel's interests diverged from those of the *Taylor* class during settlement negotiation. Once Class Counsel determined Google would agree to the bare minimum disclosure changes, they prioritized the immediacy of payment of their bundled $155.3 million fee over the longer-term path that would have served the class. The "Special Settlement Counsel" engagement does not attempt to cure the divergence because it was not truly independent, and their lodestar remains undisclosed.

Third, the Court should consider that Class Counsel actually seek 32.0%, not 29.5% as stated, when considering both settlements together. The *Taylor* and *Csupo* Settlements are operationally inseparable, with combined fees of $155,325,000 across a combined $485,000,000 fund, which would result in an award of 32.0% of the combined fund to Class Counsel. Any upward departure from the 25% Ninth Circuit benchmark is not justified by the proposed result in this case.

Fourth, without a proper valuation of the assets, Class Counsel bargained away the *Taylor* class's right to invoke offensive collateral estoppel from the *Csupo* jury verdict and the pre-existing toggle feature in exchange for Google's agreement to settle. However, the record contains no documented analysis of the value of these surrendered assets.

These four grounds independently warrant denial of final approval.

## II. FACTUAL BACKGROUND

### A.    Nathan Byars Is a Member of the Settlement Class.

Mr. Byars is a natural person residing in the United States but outside California who, since November 12, 2017 (the start of the Settlement Class Period defined in ¶ 1.5 of Settlement Agreement Exhibit A § 2, ECF 260-11 at pp. 2-3) ("*Taylor* SA"), has used a mobile device running the Android operating system to access the internet through a cellular data plan provided by a mobile carrier. Declaration of Nathan Byars ¶¶ 4-7. Mr. Byars resides at 1025 Bridlewood, New Braunfels, Texas 78132 and his telephone number is (512) 799-1696. *Id*. ¶ 3. Mr. Byars received notice of the proposed Settlement in this case. *Id*. ¶ 2. Mr. Byars has not opted out of the Settlement Class. *Id*. ¶ 8.

### B.    The Settlement Was Negotiated by the Same Firms Litigating the *Csupo* Action.

The same Class Counsel simultaneously represents the class in this action and the certified California class in *Csupo.* The *Csupo* case proceeded ahead of *Taylor* and resulted in a $314.6 million jury verdict on July 1, 2025 on a damages methodology presented by the same expert testifying in this case, Dr. Jeffery A. Stec. See ECF 260-26 ("Stec Decl.") ¶¶ 6-8. The *Csupo* court awarded Class Counsel a 33% fee on the $350 million *Csupo* Settlement Fund. Fees Motion at 23 n.10.

### C.    The Class Receives Approximately $1.20 per Member, Capped at $100.

The $135 million Settlement Fund, divided among approximately 100 million class members (Prelim. Approval Mot. at p. 34) and reduced by attorneys' fees, costs, and incentive awards, yields a projected average per-member payment of approximately $1.20, capped at $100. ECF 270 ("Prelim. Approval Order") at p. 5, 19. Plaintiffs' damages expert valued an injunction stopping the alleged data conversion at $299.7 million annually or $599.4 million over two years. Stec Decl. ¶¶ 10–11.

### D.    Class Counsel Filed Their Fee Motion on April 24, 2026.

On April 24, 2026, Class Counsel filed their Motion for Fees, Costs, and Incentive Awards. ECF 281 ("Fees Motion"). The motion seeks (i) $39,825,000 in attorneys' fees (29.5% of $135 million); (ii)

$698,533.50 in costs; and (iii) $10,000 incentive awards for each of three class representatives. *Id*. at p. 15. The motion applies for an award of attorneys' fees that constitutes a multiplier of 2.6. Fees Motion at pp. 22-23.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e)(2)(C) requires that a class settlement be approved only after the Court considers, among other factors, whether "the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)–(D).

## IV. GROUND I — THE SETTLEMENT FAILS BECAUSE THE "RELIEF" IS DETRIMENTAL TO THE CLASS.

### A. Disabling the Toggle Imposes a Detriment, Not Relief.

The Settlement does not merely fail to deliver *adequate* relief as required; it imposes a *detriment* on the class by taking away something they currently have, an ability to toggle off Google's challenged data conversion. Under the proposed Settlement, Google will "deactivate the Google Play services mobile background data toggle so that *users cannot 'turn off' the use of mobile data in the background by Google Play services*." *Taylor* SA ¶ 5.1 (emphasis added). Further, Google will post that Google's data collection "cannot be turned off." *Id*. at p. 47. A purported "How to disable Google Play services" subsection will appear explaining that the only way to stop Google's conversion of Plaintiffs' data is one that forfeits the "core device features" the same Help Center page enumerates: the Play Store, Google Maps, emergency services, push notifications, app updates, security patches, location services, Find Hub, autofill, Nearby Share, Fast Pair, and Google and Bluetooth account integration. *Id*. at pp. 44-45.

Although this will be the only way to disable Google's use of Plaintiffs' data, Google itself describes this option as "not recommended" and explains that it produces a device-impact warning. *Id*. at p. 47.

**B.      Ensuring the Settlement Is A Benefit Rather Than A Detriment Cannot Be Based Solely on Speculation.**

Class Counsel's position that the Settlement is meritorious, rather than a complete surrender to Google and against the interests of the class rests entirely on a single undeveloped fact: that the pre-existing toggle was allegedly a misrepresentation that *Taylor* SA ¶ 5.1(A) corrects. On this account, ¶ 5.1(A) is not a concession to Google but a corrective benefit to the class. This theory is the linchpin of the Settlement's justification, because if Class Counsel admit that the toggle did functionally disable Google's use of Plaintiffs' data, they would have to admit that the proposed Settlement is relief for Google and not the Plaintiffs. Class Counsel's justification does not survive scrutiny. The record shows Class Counsel only recently adopted the position, and on the merits, the position fails.

First, the argument that the pre-existing toggle was a misrepresentation does not appear to have any support in the pleadings or the record. The First Amended Complaint did not appear to contemplate that the toggle existed. The FAC pleads that Google "designed its Android operating system and apps to prevent users from changing the settings to disable these transfers" and that Plaintiffs "were given no warning or option to disable them." FAC ¶¶ 7, 8; *see also* ¶¶ 40, 50 (Google "design[ed] and implement[ed] its Android operating system and apps to mandate that transfer"). The record shows an absence of an investigation.

Class Counsel and their Special Counsel rely heavily on only a few words to demonstrate that this Settlement term is in the interest of the class. The entire weight of this belief rests on one speculative paragraph:

> *Plaintiffs understand that*, *until now*, this toggle has purported to give users the ability to turn off Google Play Service's use of mobile data in the background, but generally has not disabled the transfers at issue in this case. By graying out this toggle and not allowing it to be moved by users into the "off" position, this Settlement will require Google to avoid

creating the false impression that the relevant transfers can be turned off with the toggle. These changes will remain in effect for at least two years, subject to reasonable modifications if changes in Google's practices or technologies render the agreed-upon language no longer accurate. Id. § 5.2.

Prelim. Approval Mot. at pp. 15-16. (emphasis added). Class Counsel's position appears based on *understanding*, not evidence. "Plaintiffs understand" is attorney representation, not record evidence. "Until now" concedes that a pre-settlement toggle existed. And "generally has not disabled" indicates that the representation lacks evidentiary foundation. If Class Counsel had investigated, they would have written "did not" or "could not"; "generally has not" is the qualifier of someone who does not know.

### C.      Even If the Toggle Was Non-Functional, the Settlement Concedes Rather Than Cures.

Even if Class Counsel produced record evidence (rather than mere contention) that the toggle was non-functional, the chosen remedy still fails. The remedy that vindicates a deceived user would be making the toggle work — requiring Google to honor the user's election to disable background cellular-data use. This proposal does the opposite.

## V. GROUND II — CLASS COUNSEL'S INTERESTS DIVERGED FROM THOSE OF THE *TAYLOR* CLASS.

### A.      Class Counsel Held Three High-Value Litigation Assets.

The structure of this Settlement is explained by the divergence between Class Counsel's personal financial interests and the class's. As of August 19, 2025, Class Counsel held three litigation assets of substantial value to the class: (i) a $314.6 million *Csupo* jury verdict on identical conduct using identical methodology, *Csupo* Final Order pp. 1–2; (ii) a stated plan to deploy that verdict as offensive collateral estoppel against Google in *Taylor*, Aug. 19, 2025 Hr'g Tr. pp. 129–130 (ECF 260-14) (Summers: "I do think that we will be making a motion for collateral estoppel . . . . This case is all fours with [*Csupo*]. The case was tried. There was a special verdict form. All the issues were decided from whether this was property to the -- to the way to calculate damages. And the jury adopted [Plaintiffs' Expert's] average

price methodology awarding damages, you know, that all four of the categories that we're going to be presenting in this case, the exact quantity of data that we provided to them, and his average industry price"); and (iii) Class Counsel's own damages expert's valuation of the *Taylor*-class harm at $299.7 million per year (Stec Decl. ¶ 10), which over the eight-year class period would be approximately $2.4 billion. The litigation path that served the class was therefore concrete and high-value: pursue the *Csupo* judgment to entry, deploy collateral estoppel in *Taylor*, and prosecute *Taylor* to verdict on the streamlined record — or settle *Taylor* on the strength of preserved preclusion at a figure substantially exceeding the proposed $135 million.

Class Counsel did not pursue that path. Four months later, on December 23, 2025, they signed the bundled *Taylor*/*Csupo* Settlement architecture. The bundled package accomplishes three things material to the divergence-of-interests analysis: (a) the *Csupo* jury verdict is vacated rather than entered as final judgment (*Csupo* SA ¶ 14.1(B); *Csupo* Final Order pp. 8–11), eliminating the verdict's preclusive effect across all future litigation; (b) the *Taylor* class releases its conversion claims for $135 million (*Taylor* SA ¶ 3.1) and approximately $1.20 per class member; and (c) Class Counsel collect 32%, or $155,325,000, in combined fees — $115,500,000 already awarded in *Csupo* (33% of the $350 million *Csupo* fund) per Fee Motion p. 23 n.10, plus $39,825,000 sought in *Taylor* (29.5% of the $135 million *Taylor* fund) per Fees Motion at 2.

Compare Class Counsel's recovery under the bundled package to Class Counsel's recovery under the alternative path. The bundled package yields $155,325,000 in fees with finality that Google will not appeal. The alternative path — pursuing the *Csupo* judgment to entry, defending it on appeal, and then deploying collateral estoppel in this case— would have produced a fee whose magnitude depends on leveraging the *Csupo* preclusion for the benefit of this class.

BYARS OBJECTION                                    9                                    5:20-cv-07956-VKD

**B.    Class Counsel Chose Certainty Over Magnitude.**

Class Counsel's acceptance of the final bundled package over the alternative path is therefore a preference for *certainty over magnitude*. That preference is rational from Class Counsel's personal-financial standpoint. It is irrational from the class's standpoint, because the class's recovery could have achieved a better result by using the Csupo verdict offensively. Instead, Class Counsel used the preclusion advantage as the currency they paid Google to obtain fee finality.

The cross-contingency architecture is itself the evidence of this divergence. The contractual cross-termination provisions collapse both settlements upon failure of either. Had Class Counsel been confident in a standalone *Csupo* affirmance and a maximalist *Taylor* settlement-or-trial, no cross-contingency would have been needed. The two cases would have proceeded independently and Class Counsel would have collected substantially more in *Taylor* on the strength of preserved preclusion. Even if Plaintiffs in this case did not succeed, other Plaintiffs across the country could have used the *Csupo* verdict in their own case.

That Class Counsel *instead* bargained for the bundled package — and accepted the *Csupo* verdict's vacatur as the price — establishes that they preferred the final $155 million with no risk over the contingent path that would have better served the class. *Taylor* SA ¶ 17.5 is the contractual proof: Google demanded the preclusion waiver as a "material term" without which Google "would not have entered into this Settlement." Class Counsel agreed to that material term, knowing what it eliminated.

**C.    The Architecture Tracks a Familiar Agency-Cost Problem.**

Class Counsel were not bargaining their own assets to obtain Google's agreement; they were bargaining the *Taylor* class's preclusion advantage, which the class never authorized them to trade and for which it received no consideration commensurate with the value surrendered. The *Csupo* class was sacrificed similarly: its $314.6 million jury verdict was vacated as a condition of the bundle. *Csupo* SA ¶

14.1(B). The dual-class sacrifice — though only the *Taylor* harm is remediable here — is structurally probative of how this proposal trades other people's rights to secure fee certainty.

Class Counsel's choice tracks a familiar agency-cost problem. A real-estate broker working on commission has limited incentive to negotiate harder once an acceptable offer arrives: the broker's marginal return on additional negotiating effort is bounded, while the broker's marginal cost of that effort grows. The broker recommends acceptance of the "good enough" offer because the marginal effort does not pay off — for the broker. For the homeowner, the marginal effort would pay off substantially.

Under *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1163–65 (9th Cir. 2013), the duty of adequate representation under Rule 23(e) is breached when class counsel's interests during settlement negotiation diverge from the class's. The divergence documented above — Class Counsel's structural choice to take fee certainty for themselves and pay for it with the class's preclusion advantage — is exactly the breach *Radcliffe* identifies, and is independently sufficient grounds for disapproval.

**D.      The Special Settlement Counsel "Safeguard" Does Not Cure the Structural Problems.**

Class Counsel's principal answer to the structural-collusion concerns is that Zuckerman Spaeder LLP was engaged as "Special Settlement Counsel" to "represent exclusively the interests of the putative class in this matter." Prelim. Approval Mot., p. 30; ECF 260-25 ("Bush Decl.") ¶ 3. The Bush Declaration is the documentary basis for that representation. On its face, however, the declaration does not establish independent review of the joint architecture. On the contrary, it establishes the absence of such review.

A settlement reached before formal class certification "require[s] a higher standard of fairness," and the Court must independently determine that the settlement "may not be the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

BYARS OBJECTION                          11                          5:20-cv-07956-VKD

The district judge in the settlement phase of a class action is "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir. 2001) ("Under Rule 23(e), the District Court acts as a fiduciary guarding the rights of absent class members . . . .").

The Bush Declaration on its face shows what Bush did and what Bush did not do. Bush was engaged "to represent exclusively the interests of the putative class in this matter (and not the separate class in the related case of *Csupo v. Google* pending in California Superior Court)." Bush Decl. ¶ 3. The scope of Bush's engagement was, by his own description, the *Taylor* class only. The fiduciary role he undertook was therefore representation of the *Taylor* class's interests in evaluating the bundled Settlement.

The Declaration's substantive content addresses only one question: whether *Taylor*'s risk of an unfavorable outcome at trial, on appeal, or through delay made the proposed monetary recovery preferable to continued litigation. Bush Decl. ¶¶ 6–10. Paragraphs 7–9 catalogue four downside risks — class-certification risk, *Daubert* risk, trial risk, and appeal risk — and conclude that "the risks that the Court would deny class certification . . . were not trivial," that there was "significant risk" Plaintiffs' *Daubert* exposure would reduce damages, and that any recovery "would be years in the future." Bush Decl. ¶¶ 8–9. Paragraph 10 reaches the ultimate "fair, reasonable, adequate" conclusion based on "these many risks." Bush Decl. ¶ 10. The analysis is one-sided downside-risk assessment.

A fiduciary engaged to represent the *Taylor* class's interests would have addressed at minimum: (a) whether the cross-contingency structure linking the two settlements (*Taylor* SA ¶ 16.1(B); *Csupo* SA ¶ 14.1(C)) is fair to the *Taylor* class — i.e., whether the *Taylor* class is providing the consideration that makes the bundled architecture's vacatur of the $314.6 million *Csupo* jury verdict possible (*Csupo* SA ¶ 14.1(B)) without receiving reciprocal value, and whether each class's recovery being conditioned on the other's final approval deprives the *Taylor* class of independent bargaining leverage; (b) the value of the

*Csupo* preclusion right that the *Taylor* class is being asked to surrender via *Taylor* SA ¶ 17.5; (c) whether *Taylor* could have been settled separately on terms more favorable to the *Taylor* class; and (d) the actual value to the *Taylor* class of the disclosure regime under SA ¶ 5.1(A) given that Google's data conversion continues unchanged. The Bush Declaration addresses none of these questions. The materials Bush reviewed (Bush Decl. ¶¶ 4–5) do not include the operative Settlement Agreement, any term sheets, any negotiation correspondence, or any *Csupo* settlement materials. The Declaration does not value what the *Taylor* class is paying for the bundled deal; it values only what continued litigation might yield.

A declaration that analyzes only one side of the bargain — the *Taylor* class's downside if the case is litigated — does not satisfy the fiduciary role Class Counsel asks the Court to credit. *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 279 (7th Cir. 2002) (warning against settlement architectures where "lawyers for the class . . . place their pecuniary self-interest ahead of that of the class"); *Mego*, 213 F.3d at 459 (counsel must develop "sufficient information" about the assets surrendered). On the face of the Declaration, the "safeguard" Class Counsel describe is a one-sided risk assessment, not the fiduciary representation of the *Taylor* class's interests Bush was engaged to provide. The structural problems identified therefore stand uncured.

**E.     The Special Counsel Attorneys' Fees Are Undisclosed.**

The Court's Question 3 asked whether the fees included Special Settlement Counsel. Class Counsel respond at Fees Motion at 12 n.2 that the fees of Special Counsel "will . . . be covered by any award of attorneys' fees to Class Counsel." The response is structurally opaque: it confirms the lodestar excludes the fees of Special Counsel. Fees Motion at 22 n.9. But Fees Motion at 12 n.2 confirms Special Counsel's fees will be paid out of the awarded 29.5% fee numerator. The class is paying these firms through the 29.5% fee but does not disclose how much of the 29.5% will be diverted to them.

Further, the class has not been informed that they were represented by Special Counsel. The class is being asked to underwrite firms whose existence the class cannot ascertain from the Notice it

received. This is the kind of opacity identified as a structural problem warranting reduced fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

F.    **The Bundled Architecture Created a Conflict of Interest Between the *Taylor* and *Csupo* Classes That Special Counsel Did Not Address.**

The bundled *Taylor/Csupo* architecture created a structural conflict of interest between the two classes. The architecture has multiple features in which a benefit to one class costs the other class something: the *Taylor* class's preclusion waiver under *Taylor* SA ¶ 17.5 is the consideration that makes possible the *Csupo* class's vacatur of the $314.6 million jury verdict (*Csupo* SA ¶ 14.1(B)) and the *Csupo* class's $350 million Settlement Fund; the cross-contingency provisions (*Taylor* SA ¶ 16.1(B); *Csupo* SA ¶ 14.1(C)) condition each class's recovery on the other class's final approval, depriving each class of independent bargaining leverage; and the combined $155 million fee request claims dollars from both classes' funds for work that, on Class Counsel's own description, produced cross-benefit value. Each feature creates an interest in one class that is in tension with the other class's interest — the structural conflict *Radcliffe* identifies. Class Counsel represented both classes simultaneously throughout the bundled negotiation.

The structural conflict creates an inadequate-representation problem under Rule 23(a)(4). *See Radcliffe*, 715 F.3d at 1167 ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.") (internal quotation marks omitted). The "Comprehensive Settlement" bundled architecture's structure — in which one class's preclusion waiver is currency for another class's settlement, in which each class's recovery is held hostage to the other's approval, and in which a single fee pool is allocated across two funds for cross-benefit work — is the textbook situation *Radcliffe* forbids: counsel representing two groups whose interests diverge.

BYARS OBJECTION                                14                                5:20-cv-07956-VKD

Class Counsel's engagement of Bush as Special Settlement Counsel is itself an acknowledgment that the bundled architecture created a conflict requiring an independent counsel for one class. Bush Decl. ¶ 3 (Bush engaged "to represent exclusively the interests of the putative class in this matter (and not the separate class in the related case of *Csupo v. Google*)").

Under *Radcliffe*, the conflict-of-interest analysis is structural, not case-specific. The court asks whether the structure of the agreement created an "unacceptable disconnect between the interests of the contracting representatives and class counsel, on the one hand, and members of the class on the other." 715 F.3d at 1164. The inquiry is not whether "there was an actual injury to the class in the form of a lower settlement amount," but whether the architecture itself creates divergent interests. *Id.* at 1166-67.

Here, the bundled architecture's features create exactly such a structural disconnect between the two classes' interests. The *Taylor* class's preclusion-rights surrender was negotiated by counsel with divided loyalties — meaning the *Taylor* class's own interests were inadequately represented in the architecture's negotiation. The structural conflict therefore independently warrants denial of final approval under Rule 23(a)(4) and *Radcliffe*.

## VI. GROUND III — THE COMBINED ATTORNEYS' FEES ACROSS LINKED SETTLEMENTS EXCEED THE NINTH CIRCUIT BENCHMARK.

### A.     The *Taylor* and *Csupo* Settlements Should be Considered Together.

The Settlement admits that the *Taylor* and *Csupo* settlements are linked in three places. First, *Taylor* SA ¶ 17.5 admits that the elimination of any such preclusion advantage was "a material term of this settlement and that Google would not have entered into this Settlement, but for agreement to this term." Second, *Taylor* SA ¶ 16.1(B) and *Csupo* SA ¶ 14.1(C), under the headings "Comprehensive Settlement," provide that any failure of either Settlement — disapproval, material modification, or objector appeal — collapses both. The cross-termination architecture is the contractual mechanism

implementing Google's "both or neither" demand. Third, the Fee Motion admits that "a tremendous amount of work…ultimately benefited both cases." Fee Motion at p. 22.

### B.    The Combined Fee Is 32.0% on a $485 Million Combined Fund.

Class Counsel were awarded a 33.0% fee in *Csupo* ($115,500,000 on a $350 million fund) and now seek 29.5% in *Taylor* ($39,825,000 on a $135 million fund). Fees Motion at 2. The combined total is $155,325,000 across a combined $485,000,000 fund — a 32.0% combined fee. Class Counsel's request should be considered as a request for 32%, not 29.5%.

### C.    There Are No Grounds for Upward Departure.

However, such a high percentage is not warranted. None of the conventional grounds for upward departure from the 25% benchmark are present here. The combined *Csupo*/*Taylor* architecture means the marginal increase in fund size from *Csupo* alone ($350M) to *Csupo*+*Taylor* combined ($485M) was achieved with comparatively modest additional litigation effort — Class Counsel themselves admit at Fees Motion at 22 that "a tremendous amount of work performed initially for the *Csupo* case . . . ultimately benefited both cases but was generally billed solely to the *Csupo* matter."

### D.    The Requested 2.6 Multiplier Is Not Justified.

The Court should consider why Class Counsel request nearly the same multiplier in *Taylor* as in *Csupo* despite *Taylor*'s result being so much worse. *Csupo* produced an actual $314.6 million jury verdict — a fully-litigated merits result. Counsel propose to settle this case pre-certification, without a jury verdict, and after surrendering the *Csupo* preclusion right. The multiplier reflects the risk-adjusted result counsel achieved. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Class Counsel claim the same multiplier in a case with the lesser result.

Because this Settlement is prior to certification, the heightened-scrutiny framework articulated in *In re Apple Inc. Device Performance Litigation*, 50 F.4th 769 (9th Cir. 2022), applies to the Court's analysis of Class Counsel's requested fee. There, the Ninth Circuit vacated final approval where the

district court applied a deferential presumption of reasonableness standard, *id.* at 783, holding it was abuse of discretion for the district court to fail to scrutinize whether parallel-litigation hours should be included in the lodestar calculation. *Id.* at 784-85.

Approving the current proposal would be an abuse of discretion under the *Apple* parallel-billing framework. Class Counsel characterizes the parallel-billing structure as a benefit to this class as "free-riding" on *Csupo*-billed work without paying for it again. That framing is exactly inverted. The unfairness is not that the *Taylor* class is being charged for *Csupo* work; it is that Class Counsel are claiming credit, twice, for the same hours. The "savings" are illusory: Class Counsel are not saving the *Taylor* class anything. The "benefit" hours appear in *Csupo*'s lodestar and are then re-characterized as basis for determining a heightened "success" that would support a higher multiplier in this case. Further, the hours incurred by the Special Settlement Counsel are not being disclosed.

### E.    Class Counsel's Authorities Are Differentiable.

Class Counsel rely principally on three cases: *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007); *In re Telescopes Antitrust Litig.*, No. 5:20-cv-03639-EJD, 2025 U.S. Dist. LEXIS 70066, 2025 WL 1093248 (N.D. Cal. Apr. 11, 2025); and *Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020). Each is differentiable on multiple grounds.

First, Class Counsel quote *Omnivision* for the proposition that "9% of possible damages" is a "substantial achievement." Fees Motion at 16. But *Omnivision* awarded 28% and applied a 1.33 multiplier. 559 F. Supp. 2d at 1048. Moreover, *Omnivision* was a PSLRA securities case where the court emphasized that "Plaintiffs have won only three of eleven such cases to reach verdicts since 1996" (*id.* at 1047) — a context-specific risk factor that does not transfer to *Taylor*'s state-law conversion claim where the same damages methodology was already adopted by a California jury in *Csupo*. Finally, *Omnivision* was decided in 2007, applying the outdated deferential "presumption of fairness" framework. More recent authority holds courts must not begin analysis of class action settlements with a

presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) ("a presumption of fairness is not supported by our precedent").

Next, Class Counsel quote *Telescopes* for the proposition that "33.33% is consistent with Ninth Circuit precedent." Fees Motion at 23. But *Telescopes* applied a 0.73 negative multiplier. 2025 U.S. Dist. LEXIS 70066, at *34. The *Telescopes* court expressly held that "Considering the *negative multiplier here*, the Court finds that the lodestar cross-check confirms the reasonableness of the percentage-based calculation." *Id.* at *35 (emphasis added). Therefore, *Telescopes* stands for the proposition that 33.33% is reasonable *when supported by such a low multiplier*. Read properly, *Telescopes* is authority against the percentage Class Counsel seek.

Finally, Class Counsel quote *Campbell* for the proposition that disclosure-based injunctive relief "has value." However, *Campbell* occurred in the context of a class settling claims for injunctive relief only. 951 F.3d at 1113. Here, the Settlement Class must release claims for damages as well as injunctive relief. In the context of an injunctive relief only class, *Campbell* held that *Bluetooth*'s clear-sailing and reversion concerns are "inapplicable to this case because there is no common fund," but the deeper structural reason for that holding was that *Campbell* class members had nothing of monetary value to surrender. *Id*. at 1125. *Campbell* therefore also cuts against Class Counsel's fee request.

**VII. GROUND IV — THE SETTLEMENT BARGAINS AWAY THE MOST VALUABLE RIGHTS OF THE CLASS WITHOUT VALUATION.**

    **A.      Surrender of *Csupo* Preclusion and the toggle.**

The *Csupo* verdict establishes, as a matter of preclusive judicial fact, that Google's background cellular use of class-member data was tortious. Under the doctrine of offensive non-mutual collateral estoppel, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-31 (1979), an absent *Taylor* class member who later pursued an individual conversion claim against Google on the same conduct could

invoke the *Csupo* findings to streamline proof on identical issues — Google's liability for the conduct, the wrongfulness of the data appropriation, the breach of the user's rights — without re-litigating them.

Without much explanation from Class Counsel, this Settlement would surrender that right. Taylor SA ¶ 17.5. The provision Google demanded as a "material term" is the elimination of the only mechanism that gives the absent class member's individual claim economic viability.

> **No Preclusion**. The Parties agree that no order, judgment, ruling, or finding entered or made in any other proceeding (including the Csupo Action) shall have any preclusive, collateral estoppel, claim preclusion, or issue preclusion effect on, or be admissible in, any proceeding to enforce or interpret this Settlement Agreement, including but not limited to the Csupo verdict and any related findings or judgments. The Parties agree that the elimination of any such preclusion advantage was a material term of this Settlement, without which Google would not have entered into this Settlement.

Taylor SA ¶ 17.5. Read literally, ¶ 17.5 admits that Class Counsel surrendered this class's ability to invoke the *Csupo* jury verdict as offensive collateral estoppel against Google in any future proceeding. Google's express condition was that this preclusion advantage be eliminated.

**B.    The Record Lacks Any Valuation of These Assets.**

Settlement approval requires the district court to find that class counsel had "sufficient information to make an informed decision about the Settlement." *Mego*, 213 F.3d at 459. Where the record contains no documented analysis of the most valuable assets being surrendered, that finding cannot be made, and Class Counsel cannot cure the record by manufacturing a valuation post hoc.

Class Counsel surrendered the *Csupo* preclusion right. Yet the record contains no documented valuation of that right. The Settlement Motion (ECF 260) is silent on the right's value to the class. Dr. Stec values two-years of injunctive relief at $599.4 million but is silent on the value of the *Csupo* preclusion right. Stec Decl. ¶¶ 9-11.

Class Counsel also failed to value the user's right to toggle off Google's data conversion. Whether the toggle worked or not, the litigation right to compel its functionality was an asset of the class that required valuation before surrender.

### C.   Dr. Stec's $599.4 Million Valuation Is Not Achieved by this Settlement.

Class Counsel's consideration analysis depends on whether Dr. Stec's $599.4 million valuation accurately represents the value of injunctive relief in the Settlement. Stec Decl. ¶¶ 9–11. That valuation purports to measure the value to class members of Google ceasing background cellular-data collection for two years. Stec Decl. ¶ 10 ("an injunction stopping the alleged conversion in this case would be worth approximately $299.7 million per year").

However, Dr. Stec's statement is a non-sequitur as applied to the facts of this case because this Settlement does not actually require Google to cease that data collection, as the declaration assumes. Instead, *Taylor* SA ¶ 5.1(A) requires only that Google deactivate the user-facing toggle and update disclosure language. The data conversion itself continues unchanged.

The class therefore receives two years of disclosures — not two years of cessation. Dr. Stec valued a different deal than the one being approved. The $599.4 million figure, accordingly, cannot establish the "value to the class" of the consideration the class actually receives. A consideration analysis untethered from the Settlement's actual terms cannot satisfy Rule 23(e)(2)(C). *See Briseño v. Henderson*, 998 F.3d 1014, 1029 (9th Cir. 2021) ("The lawyers relied on an expert to provide a rosy number untethered to reality. Courts must stamp out such attempts.") (cleaned up). The Settlement therefore independently fails Rule 23(e)(2)(C).

## VIII. CONCLUSION

For the foregoing reasons, Mr. Byars respectfully requests that the Court deny final approval of the proposed settlement. Mr. Byars does not intend to appear at the Final Approval Fairness Hearing, in person or through counsel.

Dated: May 1, 2026

Respectfully submitted,

**JAVITCH LAW OFFICE**

/s/ Mark L. Javitch
Mark L. Javitch (CA SBN 323729)
3 East 3rd Ave., Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

Attorney for Objector Nathan Byars

**PROOF OF SERVICE**

I, Mark L. Javitch, hereby certify that on May 1, 2026, I caused the foregoing OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT and supporting DECLARATION OF NATHAN BYARS to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered to receive electronic notification through the Court's CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2026, at San Mateo County, California.

/s/ Mark L. Javitch

Mark L. Javitch (CA SBN 323729)

Attorney for Objector Nathan Byars