ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
LINDLEY J. BRENZA (*pro hac vice*)
JONATHAN JACOB MARSH (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
PAMELA I. YAACOUB (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs Joseph Taylor,
Mick Cleary, and Jennifer Nelson*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-CV-07956-VKD<br><br>**CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS**<br><br>Date: June 23, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. Virginia K. DeMarchi |

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................7

ARGUMENT .................................................................................................................8

I.     California Law Controls the Fee Award in this Diversity Action ..................8

II.    California Does Not Recognize a 25% Benchmark, and Awards
       of 33% Are Typical............................................................................... 12

III.   There Is No Rule Requiring a Lower Fee Percentage in
       "Megafund" Cases ................................................................................ 14

IV.    Class Counsel Does Not Seek Fees for Work Performed in *Csupo* .............. 18

V.     The Court Should View Google's Response with Skepticism ...................... 19

CONCLUSION............................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google LLC*,
   No. 17-cv-7082, 2020 WL 1921774 (N.D. Cal. Mar. 24, 2020) ............................................ 21

*Allapattah Servs., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) .................................................... 10, 11, 16, 17

*Amaral v. Cintas Corp. No. 2*,
   163 Cal. App. 4th 1157 (2008) ................................................................................ 19

*Amaro v. Anaheim Arena Mgmt., LLC*,
   69 Cal. App. 5th 521 (2021) .................................................................................... 14

*Andrews v. Plains All Am. Pipeline L.P.*,
   No. 15-cv-4113, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ................................................ 16

*Beaver v. Tarsadia Hotels*,
   No. 11-cv-1842, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ...................................... 14, 19

*Berk v. Choy*,
   607 U.S. 187 (2026) ........................................................................ 7, 11, 12

*Burlington N. R.R. Co. v. Woods*,
   480 U.S. 1 (1987) ................................................................................ 11

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................ 10

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (2008) ................................................................................ 15

*Emmons v. Quest Diagnostics Clinical Lab'ys, Inc.*,
   No. 13-cv-474, 2017 WL 749018 (E.D. Cal. Feb. 27, 2017) ...................................................... 13

*Epic Games v. Google LLC*,
   147 F.4th 917 (9th Cir. 2025) ................................................................................ 20

*Fernandez v. Victoria Secret Stores, LLC*,
   No. 06-cv-4149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) .............................................. 19

*In re Apollo Grp. Inc. Sec. Litig.*,
   No. 04-cv-2147, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................................ 16

*In re Apple Inc. Device Performance Litig.*,
   No. 18-md-2827, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ............................................ 17

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS,
AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

*In re Checking Acct. Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................................................................... 10, 11, 16, 17

*In re Consumer Priv. Cases*,
   175 Cal. App. 4th 545 (2009) .............................................................................................. 12, 13

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021) ........................................................................................ 15

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................................................ 17

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-2521, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................................. 16

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-2420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020),
   *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022)......................................... 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................................... 16

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020) ............................................................................................... 14, 15

*In re Takata Airbag Prods. Liab. Litig.*,
   No. 15-md-2599, 2022 WL 1669038 (S.D. Fla. Apr. 4, 2022) .......................................... 10, 11

*In re Telescopes Antitrust Litig.*,
   No. 20-cv-3639, 2025 WL 1093248 (N.D. Cal. Apr. 11, 2025)................................................ 16

*In re Vitamins Antitrust Litig.*,
   No. 99-mc-197, 2001 WL 34312839 (D.D.C. July 16, 2001) .................................................. 17

*Laffitte v. Robert Half Int'l Inc.*,
   1 Cal. 5th 480 (2016) .................................................................................................... *passim*

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal. App. 4th 19 (2000) .............................................................................................. 15, 19

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ...................................................................................................... 8

*Melendres v. City of Los Angeles*,
   45 Cal. App. 3d 267 (1975) ...................................................................................................... 20

*Norton v. Strategic Staffing Sols., L.C.*,
   No. 23-cv-6648, 2025 WL 1666143 (N.D. Cal. June 12, 2025)................................................ 13

4

*Oliviera v. Language Line Servs., Inc.*,
  767 F. Supp. 3d 984 (N.D. Cal. 2025) ................................................................................ 14

*Ponce v. CH2M Hill Eng'rs, Inc.*,
  No. 23-cv-10797, 2025 WL 2553337 (C.D. Cal. Aug. 19, 2025) .......................................... 13

*Richardson v. THD At-Home Servs., Inc.*,
  No. 14-cv-273, 2016 WL 1366952 (E.D. Cal. Apr. 6, 2016) ................................................. 13

*Sanders v. City of Los Angeles*,
  3 Cal. 3d 252 (1970) ............................................................................................................ 20

*Schiller v. David's Bridal, Inc.*,
  No. 10-cv-616, 2012 WL 2117001 (E.D. Cal. June 11, 2012),
  *R. & R. adopted*, No. 10-cv-616, 2012 WL 13040405 (E.D. Cal. June 28, 2012) ................... 13

*Senne v. Kan. City Royals Baseball Corp.*,
  No. 14-cv-608, 2023 WL 2699972 (N.D. Cal. Mar. 29, 2023) .............................................. 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2009) .............................................................................................................. 11

*Van Lith v. iHeartMedia + Ent., Inc.*,
  No. 16-cv-66, 2017 WL 4340337 (E.D. Cal. Sept. 29, 2017) ............................................... 13

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ....................................................................................... *passim*

*Weinberger v. Great N. Nekoosa Corp.*,
  925 F.2d 518 (1st Cir. 1991) ................................................................................................... 9

*Wilson v. Tesla, Inc.*,
  833 F. App'x 59 (9th Cir. 2020) .............................................................................................. 9

**Statutes**

15 U.S.C. § 78aa .......................................................................................................................... 9

28 U.S.C. § 1331 ..................................................................................................................... 9, 10

28 U.S.C. § 1337 ........................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................................... 12

Fed. R. Civ. P. 23 ........................................................................................................................ 11

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

**Other Authorities**

*BTZ, Inc. v. Great N. Nekoosa Corp.*,
No. 92-2219, 1994 WL 16504711 (1st Cir. Mar. 25, 1994) (Brief of Plaintiff-Appellant) ..... 10

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*,
86 Colum. L. Rev. 669 (1986) ............................................................................................. 20

Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*,
58 U. Chi. L. Rev. 1 (1991) ................................................................................................. 19

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

**INTRODUCTION**

In its Response to Class Counsel's Motion for Fees, Costs, and Incentive Awards, Google purports to "raise legal and factual considerations that counsel in favor of reducing Plaintiffs' Counsel's request for an award of 29.5% of the $135 million settlement fund." ECF 292 at 2. But Google's legal arguments are demonstrably wrong, its factual "considerations" are misplaced, and its inability to provide any valid basis to reduce the requested 29.5% fee speaks volumes about the reasonableness of Class Counsel's request.

***First***, Google is incorrect that this Court has "inherent equitable power to award fees based on federal law" in this diversity action. ECF 292 at 3. Ninth Circuit authority holds that state law rather than federal law governs awards of attorneys' fees in diversity cases. This Court is not at liberty to ignore controlling Ninth Circuit authority in favor of unpublished district court decisions from the Southern District of Florida and an inapposite footnote in a First Circuit decision, as Google invites the Court to do.

Google is also wrong in arguing that the Supreme Court's recent decision in *Berk v. Choy* "calls this authority into question." ECF 292 at 4. *Berk* merely reiterates the longstanding principle that when a Federal Rule of Civil Procedure "answers the question in dispute," that rule displaces state law. 607 U.S. 187, 192–93 (2026). There is no Federal Rule of Civil Procedure establishing any particular benchmark for a reasonable fee that would displace California law on the subject.

***Second***, Google incorrectly argues in the alternative that 25% is the governing benchmark under California law. As explained below, the sole California state court decision supporting Google's position pre-dates the California Supreme Court's seminal and controlling opinion *Laffitte v. Robert Half International Inc.*, 1 Cal. 5th 480 (2016). In *Laffitte*, the California Supreme Court affirmed an award of 33.3% of the recovery, and declined to embrace the Ninth Circuit's 25% benchmark. *Id.* at 487, 506. Indeed, multiple courts have expressly rejected the argument that Google makes here, holding that there is no 25% benchmark under California law.

***Third***, Google is also wrong in suggesting that California law embraces the proposition that fee percentages should be lower in "megafund" cases. That is not the law, and both California

and federal courts in the Ninth Circuit have frequently awarded a larger percentage than the fees requested here under comparable circumstances.

*Fourth*, Google is incorrect in suggesting that counsel already received compensation for the discovery conducted in this case in coordination with the *Csupo* matter. Class counsel has not been compensated for the incremental work needed to prosecute this nationwide class action, or for the results achieved in this case. As discussed in the declarations of lead counsel, the lodestar provided to the Court includes only the time billed specifically to this matter, and does not include any time billed to the *Csupo* matter, which was tracked separately. If anything, the resulting multiple of less than 2.6 suggests that Class Counsel's requested fee of 29.5% is on the low end of the appropriate range.

Google's motivation in seeking to reduce Class Counsel's fee is to disincentivize private attorneys from taking the significant risks necessary to uncover, litigate and remedy its wrongdoing. Having lost a pivotal appeal, a parallel jury trial in State court, and now agreeing to pay a significant sum of money and implement a nationwide injunction to remedy its wrongdoing, Google's legally and factually incorrect protestations should carry no weight. Tellingly, despite Google's unlimited resources, intimate familiarity with this litigation, and powerful incentive to deprive class action lawyers of the financial compensation necessary for them to police its misconduct through private litigation, Google is unable to provide the Court with any valid reason to award Class Counsel less than 29.5% of the common fund in this action.

**ARGUMENT**

**I.     California Law Controls the Fee Award in this Diversity Action**

Without citing any Ninth Circuit cases, Google concedes that "current Ninth Circuit authority focuses on applying state law to resolve fee applications in diversity actions." ECF 292 at 3–4. But Google understates the relevant Ninth Circuit authority. The Ninth Circuit has held that in a diversity action, where "[state] law governed the claim, it also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law . . .

in the method of calculating the fees."); *Wilson v. Tesla, Inc.*, 833 F. App'x 59, 61 n.2 (9th Cir. 2020) (same).

Google urges the Court to ignore this binding Ninth Circuit authority and to instead follow a footnote in one First Circuit opinion and three unpublished cases from the Southern District of Florida, which Google describes as having held that "district courts have inherent equitable power to award fees based on federal law, including in diversity actions." ECF 292 at 3–4.

But this Court is bound by Ninth Circuit law and cannot follow Google's contrary out-of-circuit cases. Moreover, Google's cases do not actually support its contention that courts have discretion to apply federal law over state law to lower a fee award in a diversity action. The case Google cites from the First Circuit, *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991), did not involve a common fund or in any way present the issue at hand. *Weinberger* involved the "voluntary discontinuance of a class action suit under circumstances where there is no common fund and the fees are to be paid pursuant to a 'clear sailing' agreement." *Id.* at 520.[1] The question addressed by the First Circuit on appeal was not whether to apply state or federal law in determining the amount of the award. Rather, the question was whether the district court had jurisdiction to address the fee motion given that there was no common fund and the common fund doctrine therefore did not apply. The First Circuit found that the district court had the power to address the fee motion as a matter of federal common law, but did not address whether federal or state substantive law would govern. *Id.* at 522 & n. 5.[2]

[1] *Weinberger* arose out of a hostile takeover, and sought to "challenge[] the constitutionality of Maine's anti-takeover law." *Id.* at 521. When "the hostile takeover came to a friendly conclusion . . . the class action plaintiffs agreed to dismiss their suits as moot." *Id.* In exchange, the acquiror agreed (1) to pay the class plaintiffs' attorneys' fees in the amount determined by the court, and (2) to "not oppose a court-approved award of $2,000,000 or less." *Id.* The plaintiffs then filed a short, unopposed motion seeking $2 million in attorneys' fees, but did not provide any time records or affidavits. *Id.* at 521–22. The district court denied the motion on the ground that it had no evidentiary basis to "properly make an award of reasonable attorneys' fees and expenses *in any amount*." *Id.* at 522 (emphasis added).

[2] The claims in *Weinberger* did not arise exclusively under state law. While the First Circuit noted that "original causes of action" were "state-law claims," *Weinberger*, 925 F.2d at 522 n.5, claims were also presented under "the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) and §§ 1331

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

The decisions cited by Google from the Southern District of Florida are also inapposite. Those cases all arise out of a peculiar tension between Florida law and the laws of the Eleventh Circuit and other states. The Eleventh Circuit has mandated the use of the percentage-of-fund approach as the exclusive method for awarding fees in class actions involving a common fund. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).[3] "Under *Camden I*, courts in [the Eleventh] Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011). By contrast, Florida law requires use of the lodestar-multiplier method as the starting point for fee calculations. *See id.* at 1362 & n.32. In the cases cited by Google, courts in the Southern District of Florida applied the percentage-of-the-recovery method, and objectors urged the courts to instead apply Florida's lodestar-multiplier approach to reduce the fee award. The Southern District of Florida decisions overruled those objections and applied the percentage method. However, all of those cases involved either both state and federal claims, or claims arising under the laws of multiple states. *In re Takata Airbag Products Liability Litigation* involved claims arising both under federal law (RICO and the Magnusson-Moss Warranty Act) and claims brought under multiple states' Lemon Laws. No. 15-md-2599, 2022 WL 1669038, at *9 (S.D. Fla. Apr. 4, 2022). *Allapattah Services, Inc. v. Exxon Corp.* involved claims brought under the laws of 35 different states, where "all of the states, with the possible exception of Florida, either recognize or have no contrary authority against the use of the percentage of the recovery method for the determination of a reasonable fee." 454 F. Supp. 2d 1185, 1193, 1200, 1241 (S.D. Fla. 2006). And *In re Checking* similarly involved claims under multiple states' unfair trade practice laws, all of which were consistent with the Eleventh Circuit's "percentage of the fund" approach, with the sole exception of Florida. 830 F. Supp. 2d at 1362–63. Those cases all involved the complex scenario where the laws of multiple jurisdictions applied, and Florida law was an outlier in requiring

___

and 1337 of the Judicial Code (28 U.S.C. §§ 1331, 1337)." *BTZ, Inc. v. Great N. Nekoosa Corp.*, No. 92-2219, 1994 WL 16504711 (1st Cir. Mar. 25, 1994) (Brief of Plaintiff-Appellant).

[3] The Eleventh Circuit reasoned that the lodestar method encourages inefficiency and that the percentage-of-fund approach more closely aligns the interest of client and attorney and more faithfully adheres to market practice. *Camden I*, 946 F.2d at 773–74.

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

primacy of the lodestar method. In none of those case did the courts do what Google urges here, *reducing* class counsel's fees based on discretionary application of federal law over state law.

Notably, all three cases cited by Google approved fee percentages in excess of the 29.5% requested by Class Counsel here, and found those fees to be reasonable under the Eleventh Circuit's equivalent to the *Laffitte* (and *Vizcaino*) factors:

> *Allapattah Servs., Inc. v. Exxon Corp.*, awarded 31.3% attorneys' fees on a $1.06 billion common fund. 454 F. Supp. at 1189–91.
>
> *In re Checking Acct. Overdraft Litig.*, awarded 30% attorneys' fees on a $410 million common fund. 830 F. Supp. 2d at 1335, 1358–68.
>
> - *In re Takata Airbag Prods. Liab. Litig.*, awarded 30% attorneys' fees on a $42 million common fund. 2022 WL 1669038, at *7–9.

And two of those cases (*Allapattah* and *In re Checking*) involved common funds well in excess of the $135 million fund here.

Knowing that this Court is bound to follow controlling Ninth Circuit precedent, Google makes the strained argument that the Supreme Court's recent decision in *Berk* "calls this authority into question." ECF 292 at 4. But *Berk* merely reiterated the longstanding principle that when a Federal Rule of Civil Procedure "answers the question in dispute," that rule displaces state law. 607 U.S. at 192–93 (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2009) (citing *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987))).

Pivoting from one strained argument to the next, Google argues that Federal Rule of Civil Procedure 23(h) requires attorney's fees to be "reasonable" and that this requirement supplants California law. ECF 292 at 4. But Rule 23(h) does not "answer[] the question in dispute" here, as required by *Berk*, because it is undisputed that both California law and federal law require common fund fee awards to be reasonable. Because Rule 23(h) leaves open the question in dispute (whether any particular benchmark should be considered), it does not displace California substantive law on the standards for common fund fee awards.[4]

---

[4] By contrast, *Berk* involved a Delaware state law requiring an affidavit from a medical professional to accompany a complaint in medical malpractice cases. The Supreme Court held that

**II.    California Does Not Recognize a 25% Benchmark, and Awards of 33% Are Typical**

Google argues in the alternative that California law sets a 25% "benchmark" on common fund fees, citing a footnote in the First District Court of Appeal decision *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 n.13 (2009) ("*Consumer Privacy Cases*"). Google is wrong.

As an initial matter, *Consumer Privacy Cases* did not involve a fee award based on a percentage of the recovery, because there was no settlement fund. The settlement in *Consumer Privacy Cases* consisted of a combination of fee waivers, discount vouchers, free services, and *cy pres* distributions. 175 Cal. App. 4th at 550. Accordingly, the trial court "used a lodestar analysis to determine the base fee, and applied a multiplier to calculate the final award." *Id.* at 551, 556. While the *Consumer Privacy Cases* court stated in a lengthy footnote that 25% is the benchmark in common fund cases, that statement was *dicta*, because *Consumer Privacy Cases* did not apply the percentage method, or any 25% benchmark, in its analysis. *Id.* at 557 n.13. Moreover, in that very same footnote, the court acknowledged that the "average" fee award in class action cases is "one-third of the recovery." *Id.*

Google's *dicta* from a footnote in one 2009 opinion from the First District Court of Appeal cannot be viewed as authoritative in view of the California Supreme Court's subsequent 2016 decision in *Laffitte*. *Laffitte* is the seminal California Supreme Court decision on the method of calculating fee awards in common fund cases. 1 Cal. 5th at 504. In *Laffitte*, the California Supreme Court comprehensively reviewed the relevant authorities, established the percentage-of-fund approach as the preferred method of awarding fees in common fund cases, approved the optional use of a lodestar crosscheck, and upheld a fee award of 33.3% of the common fund, without adopting any benchmark in its holding or applying any benchmark in its analysis. *Id.* at 504, 506. Indeed, the California Supreme Court acknowledged that "[t]he Ninth Circuit has approved a 25 percent benchmark." *Id.* at 495. Nevertheless, the Court went on only to approve the percentage-

---

this requirement was "at odds with" Rule 8, which requires only "a short and plain statement," not an affidavit. 607 U.S. at 193–94 (quoting Fed. R. Civ. P. 8). Because the text of Rule 8 "answers the question in dispute" by not requiring an affidavit, the Court held that Rule 8 controls and that it was error for a federal court in a diversity action to require a medical professional to file an affidavit in support of a medical malpractice complaint. *Id.* at 192, 199 (citation omitted).

of-fund approach, and to hold that trial courts have discretion to use a lodestar cross-check. *Id.* at 503–06. Had the California Supreme Court intended to establish a 25% benchmark in common fund cases, it would have done so. It did not.

Other than the footnote-*dicta* in *Consumer Privacy Cases*, Google cites only three unpublished federal district court decisions as recognizing a 25% benchmark under California law. Two of those cases merely recite the *dicta* in *Consumer Privacy Cases* without analysis. *See Norton v. Strategic Staffing Sols., L.C.*, No. 23-cv-6648, 2025 WL 1666143, at *8 (N.D. Cal. June 12, 2025); *Van Lith v. iHeartMedia + Ent., Inc.*, No. 16-cv-66, 2017 WL 4340337, at *15 (E.D. Cal. Sept. 29, 2017).[5] The third expressly rejects Google's argument, observing that *Consumer Privacy Cases* "did not establish a 'standard,'" and that "there is no dispute that one-third of the common fund is consistent with, and in the range of, awards in other class action lawsuits." *Ponce v. CH2M Hill Eng'rs, Inc.*, No. 23-cv-10797, 2025 WL 2553337, at *1 (C.D. Cal. Aug. 19, 2025).

A number of federal cases in addition to *Ponce* have expressly rejected Google's argument that there is a 25% benchmark under California state law. *See, e.g.*, *Schiller v. David's Bridal, Inc.*, No. 10-cv-616, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012) ) ("California courts do not prescribe the 25-percent benchmark that is established under federal law in the Ninth Circuit as a starting point to evaluate fee requests."), *R. & R. adopted*, No. 10-cv-616, 2012 WL 13040405 (E.D. Cal. June 28, 2012); *Richardson v. THD At-Home Servs., Inc.*, No. 14-cv-273, 2016 WL 1366952, at *7 (E.D. Cal. Apr. 6, 2016) ("California courts, however, do not prescribe the 25% benchmark that is established under federal law in the Ninth Circuit as a starting point to evaluate fee requests."); *Emmons v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 13-cv-474, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) ("Notably, while the California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases.").

---

[5] In *Van Lith*, the court granted a requested 30% fee award for California state law claims, where only limited discovery took place (the deposition of a named plaintiff), no class certification or *Daubert* briefing occurred, and the case settled in only two years. *See* Not. to Fed. Ct., *Van Lith*, No. 16-cv-66 (E.D. Cal. Jan. 14, 2016), ECF 1 at 2; Mem. Mot. Settlement, *Van Lith*, No. 16-cv-66 (E.D. Cal. Dec. 22, 2016), ECF 34-1 at 3.

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

California decisions after *Laffitte* confirm that 33.3% is a typical fee percentage in common fund cases. *See, e.g.*, *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) (stating that "fee awards in class actions average around one-third of the recovery" and upholding 25.9% fee sought by class counsel (citation modified)). Likewise, district courts in the Ninth Circuit have observed that "California courts routinely award attorneys' fees of one-third of the common fund." *Beaver v. Tarsadia Hotels*, No. 11-cv-1842, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017); *Oliviera v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1001 (N.D. Cal. 2025) ("In California state court, the typical award of attorneys' fees is approximately one third of the common fund.").[6]

## III.    There Is No Rule Requiring a Lower Fee Percentage in "Megafund" Cases

Google next argues that "under both Ninth Circuit and California law, even a 25% award is disfavored given the size of the settlement here." ECF 292 at 6. No such rule exists. Both California (via *Laffitte*) and the Ninth Circuit (via *Vizcaino*) require courts to conduct an individualized assessment of the relevant considerations, including the risks, novelty, and difficulty of the matter, the skill shown by counsel, and the contingent nature of the representation. *Laffitte*, 1 Cal. 5th at 504; *Vizcaino*, 290 F.3d at 1048–50.[7]

While "fund size is one relevant circumstance" in assessing fee reasonableness under federal law, *Vizcaino*, 290 F.3d at 1047, the Ninth Circuit has expressly "declined to adopt a bright-line rule requiring the use of sliding-scale fee awards for class counsel in megafund cases." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020) (citing *Vizcaino*, 290 F.3d at 1047).

[6] Even in cases governed by the Ninth Circuit's standards, courts often make an upward adjustment from the 25% benchmark based on the circumstances of the case. For example, in *Vizcaino* itself, the Ninth Circuit approved a 28% fee. *Vizcaino*, 290 F.3d at 1048, 1050.

[7] Google also suggests (ECF 292 at 7 n.6) that because *Vizcaino* affirmed a 28% fee on a $96.885 million fund, a higher percentage on the larger fund here is unwarranted. Nothing in *Vizcaino* caps fees at 28% or even suggests that a higher percentage for a larger award would be inappropriate. To the contrary, under Ninth Circuit law, the 25% benchmark provides only "a starting point." *Vizcaino*, 290 F.3d at 1048. The <2.6 lodestar multiplier here is much lower than the 3.65 in *Vizcaino*, underscoring all the work that Class Counsel did in this case. *Id.* at 1051 & n.6.

Indeed, neither of the two Ninth Circuit decisions cited by Google (ECF 292 at 6–7) hold that lower fee awards were reasonable solely because they involved so-called megafunds. Instead, both cases assessed the reasonableness of fees based on case-specific application of the *Vizcaino* factors. *See In re Optical*, 959 F. 3d at 931–33 ("[W]e have already declined to adopt a bright-line rule requiring the use of sliding-scale fee awards for class counsel in megafund cases . . . ."); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 632–33 (N.D. Cal. 2021) (considering *Vizcaino* factors in reducing fee from requested 16.9% to 15% of $650 million common fund, resulting in reduction of lodestar multiplier from 5.317 to 4.71, which was "more in line with comparable settlements . . . and more reasonable in the circumstances here").

Google notes that in *Lealao v. Beneficial California, Inc.*, the First District Court of Appeal stated that "[p]ercentage fees generally decrease as the amount of the recovery increases, on the theory many large recoveries are due merely to the size of the class, which may have no relationship to the efforts of counsel." 82 Cal. App. 4th 19, 49 n.16 (2000). But the $135 million common fund here is merely one consideration of many; the requested fee must also reflect the novel, difficult, and high-risk case that Class Counsel skillfully built and litigated for nearly six years entirely on contingency against one of the world's largest companies. Class Counsel has supported its request with unrebutted evidence satisfying every *Laffitte* (and *Vizcaino*) factor. *See* ECF 281 at 16–21. And the optional lodestar cross-check yields a multiplier of less than 2.6 (ECF 281 at 21–23), which is toward the lower end of the range California and Ninth Circuit courts have determined to be reasonable. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (affirming a multiplier of 2.5 and noting that "multipliers" of "2 to 4 or even higher" may be reasonable under California law); *Vizcaino*, 290 F.3d at 1051 & n.6 (affirming multiplier of 3.65 and holding that multipliers of up to 4 may be reasonable).

As with the Ninth Circuit's 25% benchmark, the California Supreme Court in *Laffitte* expressly discussed the sliding scale approach to megafund settlements adopted by some courts, and deliberately refrained from adopting it. *See* 1 Cal. 5th at 495–97, 503–06.

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

Google's position is also contradicted by the large number of comparable cases with similarly sized recoveries in which fees greater than Class Counsel's requested 29.5% fee percentage have been awarded. *See, e.g.*, *Senne v. Kan. City Royals Baseball Corp.*, No. 14-cv-608, 2023 WL 2699972, at *19–20 (N.D. Cal. Mar. 29, 2023) (approving 30% of $185 million settlement); *Andrews v. Plains All Am. Pipeline L.P.*, No. 15-cv-4113, 2022 WL 4453864, at *1, *5 (C.D. Cal. Sept. 20, 2022) (approving 32% of $230 million common fund where the parties "engaged in almost seven years of hard-fought litigation," conducted extensive fact and expert discovery, and participated in multiple mediations); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2018 WL 4620695, at *3–4 (N.D. Cal. Sept. 20, 2018) (awarding 33.3% of $104 million settlement); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2020 WL 7264559, at *19–23 (N.D. Cal. Dec. 10, 2020) (awarding 30% of $113.45 million settlement)[8], *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022); *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-cv-2147, 2012 WL 1378677, at *5–7, *9 (D. Ariz. Apr. 20, 2012) (awarding 33.3% of $145 million settlement); *In re Checking*, 830 F. Supp. 2d at 1335, 1358–68 (awarding 30% of $410 million); *Allapattah*, 454 F. Supp. 2d at 1189–91 (awarding 31.3% of $1.06 billion). For additional such cases, *see* Wallenstein Decl. Ex. 1, ECF 281-25.[9]

Google attempts to distinguish the fee percentages awarded in *Senne* and in *In re Lidoderm* because those cases settled after classes were certified. ECF 292 at 7–8. But there is no authority for conditioning any particular fee percentage on class certification. In fact, courts in this district have awarded fees over 25%, and as high as one-third of a common fund, for comparable settlements reached prior to class certification. *See, e.g.*, *In re Telescopes Antitrust Litig.*, No. 20-cv-3639, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025) (awarding one-third of the common fund created by settlement prior to class certification); *In re Omnivision Techs., Inc.*, 559 F. Supp.

---

[8] Google argues that the 30% fee on the $113.45 million settlement in *In re Lithium*, resulted in a negative lodestar multiplier (0.82), but that was a function of the "40 firms" that worked "101,408 hours," including considerable time spent "engaged in managing class representative discovery" and "foreign-language document analysis." 2020 WL 7264559 at *19–20. This case does not involve any such inefficiencies.

[9] 31 of the 36 listed cases did not involve a trial, and involved awards of 30% or greater.

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

2d 1036, 1041, 1048–49 (N.D. Cal. 2008) (awarding 28% of $151.8 million common fund where class certification was briefed but still pending); *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827, 2023 WL 2090981, at *1, *13–16 (N.D. Cal. Feb. 17, 2023) (awarding 26% fees of $310 million settlement prior to class certification). These cases make sense because it is the outcome, rather than the procedural posture, that matters to the class. Here, the class received a substantial benefit as a result of counsel's work for half a decade. Even if class certification were a relevant milepost, the class certification and *Daubert* motions in this case were fully briefed and argued, meaning the work justifying and supporting the fee related to class certification had been performed. And here, fact and expert discovery were fully completed, and a successful appeal to the Ninth Circuit had been taken, meaning that as much or more work was done than would typically be done at time of the class certification.

Google's own cited cases squarely reject its argument that a "sliding scale" should apply to reduce the fee in this case. *See, e.g.*, *In re Checking*, 830 F. Supp. 2d at 1367 ("[C]ourts nationwide have repeatedly awarded fees of 30 percent or higher in so-called 'megafund' settlements.") (citing *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (33.3% of $510 million); *Allapattah*, 454 F. Supp. 2d at 1189–91 (31.33% of $1.06 billion); *In re Vitamins Antitrust Litig.*, No. 99-mc-197, 2001 WL 34312839 (D.D.C. July 16, 2001) (34.6% of $365 million)).

Reducing the fee percentage in "megafund" cases is wrong because it "fails to appreciate the immense risks undertaken by attorneys in prosecuting complex cases in which there is a great risk of no recovery." *In re Checking*, 830 F. Supp. 2d at 1367 (quoting *Allapattah*, 454 F. Supp. 2d at 1213). Such an approach is "antithetical to the percentage of the recovery method . . . the whole purpose of which is to align the interests of Class Counsel and the Class by rewarding counsel in proportion to the result obtained. By not rewarding Class Counsel for the additional work necessary to achieve a better outcome for the class, the sliding scale approach creates the perverse incentive for Class Counsel to settle too early for too little." *Id.* (quoting *Allapattah*, 454 F. Supp. 2d at 1213).

**IV.      Class Counsel Does Not Seek Fees for Work Performed in *Csupo***

Google's final argument insinuates that Class Counsel is seeking fees in this case for work already performed (and fees recovered) in *Csupo*. Once again, Google is wrong.

Class Counsel seek a fee award in this case based solely on the work done, and results achieved, in this case. All the hours billed to this case were for work that was required for this case. No double counting of counsel's time has occurred. As Class Counsel's initial brief stated: (1) Class Counsel's fees "reflect only those hours expended exclusively in connection with the *Taylor* case, and do not include or 'double count' time expended for the *Csupo* case"; (2) Class Counsel "maintained separate time and expense records for each of the *Csupo* and *Taylor* matters, and took care to bill time, as appropriate, to one matter of the other"; and (3) Class Counsel's "hours and time summarized above, and described in greater detail in the supporting declarations, represent only the time billed to the *Taylor* case and do not include any time billed to the *Csupo* case." ECF 281 at 22. Class Counsel's sworn declarations confirm these facts. ECF 281-2 ¶ 12 (Summers Decl.); ECF 281-21 ¶ 8 (Wallenstein Decl.); ECF 281-38 ¶ 7 (Pipkin Decl.). Class Counsel do not seek fees based on any time billed to, or work performed in, *Csupo*.

It is true that Class Counsel's fee motions in both *Csupo* and *Taylor* identify the extensive discovery that was jointly taken by Class Counsel in both cases, including depositions, documentary discovery, interrogatories, and source code review. ECF 292 at 9. That is because this Court sensibly directed the parties to "not duplicate" discovery. ECF 112 at 14:9–18. That Class Counsel generally used the same discovery in both cases in no way alters the incredible amount of work done in this case, and that was billed to this case. The ultimate proof of the reasonableness of Class Counsel's request for a 29.5% fee can be seen in the resulting lodestar multiple of less than 2.6%. That very reasonable multiple is based solely on the work done in, and billed to, the *Taylor* case.

Google further argues that the injunctive relief "is identical to that achieved for a California class in the *Csupo* settlement" and that "this Court should not consider the value of the injunctive relief in determining the fee award here." ECF 292 at 9. But Google agreed to a nationwide

injunction precisely because this case was pending, covering Android users throughout the United States. As this Court recognized in its preliminary approval order, that injunctive relief "is significant and provides meaningful value to plaintiffs and the class." ECF 270 at 21.

In any event, Class Counsel's requested fees are calculated as a percentage of the monetary recovery only. Taking the value of the injunctive relief into account, the effective fee percentage of Class Counsel's requested fee is materially lower than 29.5%.

## V.        The Court Should View Google's Response with Skepticism

One of the important public policies behind awarding attorneys' fees as a percentage of a common fund is to incentivize appropriately skilled private attorneys to bring meritorious class actions against defendants, in order to privately police their misconduct without requiring government investigation or enforcement. *Lealao*, 82 Cal. App. 4th at 47 ("[A]ttorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior.").[10] To do that, fees must be awarded commensurate with the risk, uncertainty, and delays inherent in being paid only after successfully prosecuting a case to conclusion. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217–18 (2008) ("It is not simply that counsel turned away paid work for a time in order to represent the class, but that counsel risked never receiving compensation *at all.* The [case] raised a significant number of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues and thus would not recover a full fee.").

Defendants like Google have powerful incentives to attempt to deny those benefits to Class Counsel in order to deter the prosecution of private litigation against them. *See* Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U. Chi. L. Rev. 1, 104–05 (1991)

---

[10] "[S]tandard contingency fee rates are 33% if the case settles before trial, 40% if a trial commences, and 50% if trial is completed." *Beaver*, 2017 WL 4310707, at *12 (citing *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-4149, 2008 WL 8150856, at *16 n.59 (C.D. Cal. July 21, 2008) (approving one-third fees)).

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

(defendant's attacks on class counsel have the effect of "reducing the amount of class and derivative litigation brought in the first place."). By pushing to reduce the fee here, Google seeks to disincentivize qualified counsel from prosecuting suits against it. *See* John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 690 (1986) (discussing the incentive of corporate defendants to "compel[] their adversaries to incur litigation expenditures beyond the level at which the plaintiff's attorney can expect to profit").

Those concerns are particularly acute with regard to Google. Google has an extensive history of violating the rights of consumers through a range of deceptive conduct, and has often been held responsible for such malfeasance in class action litigation prosecuted by private attorneys.[11] Google has also been found in multiple cases to have engaged in monopolistic and other anti-competitive behavior harming consumers.[12]

Google's desire to deprive private attorneys of the financial incentive necessary to police its misconduct is the obvious motive behind Google's response. Given that the fee award in this case will come from a fixed settlement fund, Google has no financial interest in the amount of Class Counsel's fee award, and lacks standing to object to Class Counsel's fee motion. *Sanders v. City of Los Angeles*, 3 Cal. 3d 252, 263 (1970); *Melendres v. City of Los Angeles*, 45 Cal. App. 3d

---

[11] *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, No. 12-md-2358 (D. Del.) (placing tracking cookies without user consent); *Brown v. Google LLC*, No. 20-cv-3664 (N.D. Cal.) (tracking user activity in "incognito" mode); *Hubbard v. Google LLC*, No. 19-cv-7016 (N.D. Cal.) (collecting minors' personal information); *In re Google Referrer Header Priv. Litig.*, No. 10-cv-4809 (N.D. Cal.) (sending user search queries to advertisers without consent); *In re Google Assistant Priv. Litig.*, No. 19-cv-4286 (N.D. Cal.) (recording private conversations through Google Home); *In re Google Location Hist. Litig.*, No. 18-cv-5062 (N.D. Cal.) (tracking and storing location data); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-md-2184 (N.D. Cal.) (surreptitiously collecting Wi-Fi network data); *In re Google Buzz Priv. Litig.*, No. 10-cv-672 (N.D. Cal.) (divulging social network email contacts).

[12] *See, e.g.*, *United States v. Google LLC*, No. 20-cv-3010 (D.D.C.) (Google held liable in suit by DOJ and multiple states for monopolization of markets for search and search advertising); *United States v. Google LLC*, No. 23-cv-108 (E.D. Va.) (Google held liable in suit by DOJ and multiple states for monopolizing markets for display advertising technology); *Epic Games v. Google LLC*, 147 F.4th 917 (9th Cir. 2025) (affirming jury verdict finding monopolization of Android app distribution and in-app billing markets).

20

267, 273 (1975); *AdTrader, Inc. v. Google LLC*, No. 17-cv-7082, 2020 WL 1921774, at *5 (N.D. Cal. Mar. 24, 2020) (Google conceding that a defendant lacks standing to object to a fee award in a common fund case "because the division of the fund between the class and attorneys is of no concern to the defendant").

**CONCLUSION**

As shown above, all of the "legal and factual considerations" raised by Google in suggesting that Class Counsel's fee should be less than 29.5% are demonstrably incorrect. But what is perhaps more telling is the extent to which Google does not seriously dispute Class Counsel's analysis of the controlling California standards under *Laffitte* (and similar factors under *Vizcaino*). Google does not dispute that: (1) Class Counsel assumed great risk in prosecuting this novel litigation on full contingency, (2) secured an exceptional result for the Class, and (3) prosecuted this case with skill and tenacity for more than six years, through the completion of fact and expert discovery, full briefing and argument of class certification and *Daubert* motions, and a successful appeal to the Ninth Circuit. Google also does not take issue with the lodestar that Class Counsel have invested in this matter, which suggests the requested fee is on the low end of the range of reasonable fees. Given those factors, a fee of 29.5% is well-supported in this case.

For the foregoing reasons, and those set forth in Class Counsel's Motion for Fees, Costs, and Incentive Awards and Memorandum in Support (ECF 281), Class Counsel respectfully submit that the Court should award Class Counsel a fee of $39,825,000, representing 29.5% of the settlement fund created by their work in prosecuting this litigation.

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD

Dated:  May 26, 2026

Respectfully submitted,

KOREIN TILLERY LLC

*/s/ Glen E. Summers*

Glen E. Summers (176402)
Karma M. Giulianelli (184175)
Lindley J. Brenza (*pro hac vice*)
Jonathan Jacob Marsh (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Marc A. Wallenstein (*pro hac vice*)
George A. Zelcs (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
Chad E. Bell (*pro hac vice)*
Pamela I. Yaacoub (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Carol L. O'Keefe (*pro hac vice*)
Michael E. Klenov (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Elizabeth M. Pipkin (243611)
Ann M. Ravel (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

*Attorneys for Plaintiffs*
*Joseph Taylor, Mick Cleary, and Jennifer Nelson*

CLASS COUNSEL'S REPLY TO GOOGLE'S RESPONSE TO CLASS COUNSEL'S MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS; Case No. 5:20-CV-07956-VKD