ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
LINDLEY J. BRENZA (*pro hac vice*)
JONATHAN JACOB MARSH (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
PAMELA I. YAACOUB (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs Joseph Taylor,
Mick Cleary, and Jennifer Nelson*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

JOSEPH TAYLOR, MICK CLEARY, and
JENNIFER NELSON, individually and on
behalf of all others similarly situated,

        Plaintiffs,

    v.

GOOGLE LLC,

        Defendant.

Case No. 5:20-CV-07956-VKD

**NOTICE OF MOTION, MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, MEMORANDUM OF
POINTS AND AUTHORITY IN
SUPPORT, AND RESPONSE TO
OBJECTIONS**

Date: June 23, 2026
Time: 10:00 a.m.
Judge: Hon. Virginia K. DeMarchi

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on June 23, 2026 at 10:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Magistrate Judge Virginia K. DeMarchi located at the Robert F. Peckham Federal Building & United States Courthouse, Courtroom 2, 280 South 1st Street, San Jose, CA, 95113, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting final approval of the settlement of this class action lawsuit.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support of this Motion, declarations and exhibits filed in support thereof, the complete records and files of this action, including but not limited to Plaintiffs' Motion for Preliminary Approval, ECF 260, all other matters of which the Court may take judicial notice, and any other such evidence and oral argument as may be made at the hearing of this matter.

Class Counsel's Motion for Fees, Costs, and Incentive Awards, ECF 281 & 309, has been separately noticed and is calendared to be heard simultaneously with the instant Motion.

**STATEMENT OF THE ISSUES TO BE DECIDED**

Plaintiffs move the Court to:

1.    Grant final approval of the proposed Settlement, including the plan of distribution for the $135 million Settlement Fund;

2.    Grant final certification of the class for settlement purposes;

3.    Approve payment of certain notice and settlement administration costs;

4.    Overrule the objections to the proposed Settlement; and

5.    Enter final judgment in accordance with the proposed Settlement.

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................2

STATEMENT OF THE ISSUES TO BE DECIDED ...........................................................3

INTRODUCTION....................................................................................................................9

STATEMENT OF FACTS......................................................................................................9

LEGAL STANDARD ...........................................................................................................11

ARGUMENT..........................................................................................................................12

    I.      The Settlement is Fair, Reasonable, and Adequate ......................................12

          A.      The Strength of the Case and Risks of Litigation..............................12

          B.      The Significant Relief Accorded by the Settlement Favors Final Approval ............................................................................................12

          C.      The Stage of the Proceedings Favors Final Approval ......................13

          D.      The Opinion of Class Counsel Favors Final Approval.....................14

          E.      There Are No Government Objections, and Class Members Have Reacted Positively to the Settlement........................14

          F.      The Notice Campaign Favors Approval .............................................15

          G.      The Administrative Costs and *Pro Rata* Payment............................16

    II.      The Court Should Overrule the Objections ...................................................17

          A.      Adequacy of Monetary Recovery .......................................................18

          B.      Injunctive Relief ...................................................................................22

          C.      Scope of Release...................................................................................24

          D.      Uniform Payment..................................................................................24

          E.      Purported Conflicts of Interest............................................................25

          F.      Attorney's Fees .....................................................................................28

          G.      Incentive Awards ..................................................................................30

          H.      Settlement Administration and Notice.................................................30

          I.      Objectors Who Did Not Initially Receive Notice Emails.................32

          J.      Other Objections ..................................................................................32

    III.     Approval of Payment of Costs of Notice and Settlement Administration ................................................................................................33

CONCLUSION ......................................................................................................................33

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bates v. Union Oil Co. of Cal.*,
944 F.2d 647 (9th Cir. 1991) ................................................................................................ 26

*Bayat v. Bank of the W.*,
No. 13-cv-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ............................................ 20

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) .......................................................................................... 15

*Boblitt v. Boblitt*,
190 Cal. App. 4th 603 (Cal. Ct. App. 2010) ......................................................................... 26

*Burgos v. Sunvalleytek Int'l, Inc.*,
No. 18-cv-6910, 2020 WL 7319354 (N.D. Cal. Dec. 11, 2020) ........................................... 19

*Butt v. State*,
4 Cal. 4th 668 (Cal. 1992) .................................................................................................... 23

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .............................................................................................. 23

*Chatman v. Otani*,
No. 21-cv-268, 2021 WL 5238762 (D. Haw. Nov. 10, 2021) ............................................... 17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........................................................................................ *passim*

*Cottle v. Plaid, Inc.*,
No. 20-cv-3056, 2022 WL 2829882 (N.D. Cal. July 20, 2022) ............................................ 20

*Cunha v. Hansen Nat. Corp.*,
No. 08-cv-1249, 2015 WL 12697627 (C.D. Cal. Jan. 29, 2015) .......................................... 20

*Curtis v. Irwin Indus., Inc.*,
No. 15-cv-2480, 2020 WL 9457057 (C.D. Cal. Dec. 2, 2020) ............................................. 25

*Custom LED, LLC v. eBay, Inc.*,
No. 12-cv-350, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ............................................. 19

*Farrington v. A. Teichert & Son, Inc.*,
59 Cal. App. 2d 468 (1943) .................................................................................................. 22

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

*Foster v. Adams & Assocs., Inc.*,
No. 18-cv-2723, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) .......................................... 13, 14

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co.*,
No. 13-cv-5197, 2015 WL 2406966 (N.D. Cal. May 20, 2015)............................................... 15

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)....................................................................... 15, 17, 21, 33

*In re Anthem, Inc. Data Breach Litig.*,
No. 15-md-2617, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)............................................. 29

*In re Facebook Internet Tracking Litig.*,
No. 12-md-2314, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022)........................................... 29

*In re Google Location Hist. Litig.*,
No. 18-cv-5062, 2024 WL 1975462 (N.D. Cal. May 3, 2024)................................................. 23

*In re Google Plus Profile Litig.*,
No. 18-cv-6164, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021).................................................. 21

*In re Heritage Bond Litig.*,
No. 02-ml-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................................. 20

*In re HP Inkjet Printer Litig.*,
No. 05-cv-3580, 2011 WL 2462475 (N.D. Cal. June 20, 2011)............................................... 32

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)........................................................................................ 14

*In re TD Ameritrade Acct. Holder Litig.*,
No. 07-cv-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ..................................... 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-md-1827, 2011 WL 13152270 (N.D. Cal. Aug. 24, 2011)..................................... 27, 28

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 933 (N.D. Cal. 2015) ................................................................................. 23

*In re Uber FCRA Litig.*,
No. 14-cv-5200, 2017 WL 2806698 (N.D. Cal. June 29, 2017), *final approval at*
2018 WL 2047362 (N.D. Cal. May 2, 2018) ......................................................................... 20

*In re Yahoo Mail Litig.*,
No. 13-cv-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)............................................. 17

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-md-2752, 2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd*,
No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022)....................................................... 21

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 07-cv-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ..................................................... 27

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ..................................................................................................... 21

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................................................................................ 18

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (Cal. 2016)........................................................................................................... 26

*Lo v. Oxnard Eur. Motors, LLC*,
No. 11-cv-1009, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) .................................................. 26

*McKnight v. Hinojosa*,
54 F.4th 1069 (9th Cir. 2022) ..................................................................................................... 16

*Noroma v. Home Point Fin. Corp.*,
No. 17-cv-7205, 2019 WL 1589980 (N.D. Cal. Apr. 12, 2019)................................................... 14

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) .......................................................................................... 11, 13, 25

*Perkins v. LinkedIn Corp.*,
No. 13-cv-4303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016).................................................... 20

*Radcliffe v. Experian Info. Sols. Inc.*,
715 F.3d 1157 (9th Cir. 2013) ..................................................................................................... 27

*Ridge v. Infinity Sales Grp., LLC*,
No. 12-cv-6985, 2014 WL 12589629 (C.D. Cal. July 24, 2014).................................................. 26

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .............................................................................................. 12, 14

*Samara v. Matar*,
5 Cal. 5th 322 (Cal. 2018)........................................................................................................... 26

*Schofield v. Delta Air Lines, Inc.*,
No. 18-cv-382, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019)...................................................... 20

7

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................................................ 15

*T.K. v. Bytedance Tech. Co.*,
   No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................. 29

*Vataj v. Johnson*,
   No. 19-cv-6996, 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021)................................................ 20

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................................... 30, 32

**Statutes**

Cal. Civ. Code § 3336................................................................................................................ 19

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................................... 2, 15

**Other Authorities**

4 Newberg & Rubenstein on Class Actions § 13:50 (6th ed. 2026) ............................................ 33

Jud. Council of Cal., *2025 Court Statistics Report: Statewide Caseload Trends* (2025)............. 27

Jud. Council of Cal. Civ. Jury Instructions (CACI) No. 2100....................................................... 22

N.D. Cal. Procedural Guidance for Class Action Settlements (Sept. 5, 2024)............................. 30

**INTRODUCTION**

Following this Court's entry of its Order Granting Preliminary Approval, ECF 270 (the "Preliminary Approval Order"), the Parties and Settlement Administrator successfully provided notice to the class in accordance with the approved notice plan. Emails were sent to approximately 134 million unique email addresses provided by Google, and an extensive media campaign was conducted to further increase public awareness of the proposed Settlement.

The response has been resoundingly positive. To date, 395,231 class members have submitted optional payment election forms. In addition, the Settlement Administrator and Class Counsel have received tens of thousands of inquiries from class members seeking to participate. By contrast, only 119 people opted out, and only 51 objections have been received.

In its Preliminary Approval Order, the Court carefully considered the proposed Settlement, and found it to be fair, reasonable and adequate. The objections that have been submitted raise no valid concerns that have not already been carefully vetted by the Court. Given the overwhelmingly positive response to the proposed Settlement, and the absence of any valid new concerns in the objections that have been received, Plaintiffs respectfully submit that the Court should grant final approval to the proposed Settlement.

**STATEMENT OF FACTS**

An overview of the history of this case and summary of the proposed Settlement are provided in Plaintiffs' Motion for Preliminary Approval, ECF 260. As discussed more fully in those papers and the Court's Preliminary Approval Order, the proposed Settlement provides for a $135 million non-reversionary settlement fund, the net proceeds of which will be distributed to a class consisting of "all natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order, excluding persons who are class members in *Csupo et al. v. Google LLC*, Santa Clara Superior Court Case No. 19CV352557."

Under the proposed Settlement, class members are not required to submit a claim form to receive payment. For class members who did not affirmatively elect a payment method using the

optional payment election form, the Settlement Administrator will attempt to automatically push payments to their existing PayPal, Venmo, or Zelle accounts, based on their email address and other information provided by Google. Weisbrot Decl. ¶ 38.

The Settlement provides for injunctive relief that "is significant and provides meaningful value to plaintiffs and the class." ECF 270 at 21. The nationwide injunctive relief requires Google to: (1) disclose the conduct at issue to Android users and ask users to consent to it when they set up new Android phones; (2) update the Google Play Terms of Service and Help Center pages to include clear disclosure of the Challenged Transfers (and that they may consume class members' cellular data); and (3) deactivate the Google Play Services mobile background data toggle, which Plaintiffs believe is misleading. This injunctive relief will remain in effect for at least two years.

Following this Court's Preliminary Approval Order, the parties established an interest-bearing escrow account with J.P. Morgan Chase, and Google transferred the $135 million settlement fund into that escrow account. The parties and Settlement Administrator also implemented the approved notice plan. Pursuant to Section 7.3 of the Settlement Agreement, Google provided the Settlement Administrator with email addresses associated with active Android accounts during the class period. ECF 260-11 at 13. That data included 134,280,577 unique, valid email addresses. Weisbrot Decl. ¶¶ 8-9. After processing the data and assigning a unique identifier to each class member, the Settlement Administrator attempted to transmit email notices to all of the email addresses provided by Google. Emails were successfully sent to 132,788,260 of those email addresses; only 1,492,317 were returned as undeliverable. *Id*. ¶ 13. The resulting deliverability rate of 98.9% is "exceptional and exceeds the results typically achieved in comparable settlement notice programs." *Id*.

In accordance with the approved notice plan, the Settlement Administrator also conducted a media campaign and maintained a public website to further awareness of the proposed Settlement among class members. The media campaign resulted in 13.4 million impressions, which exceeded the 12 million impressions the campaign was designed to deliver, and the website had 1,901,607

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

page views. Weisbrot Decl. ¶¶ 17, 20. The Settlement also received extensive media coverage. Weisbrot Decl. ¶ 18.

Response to the settlement by class members has been extremely positive. To date, 395,231 class members submitted an optional payment election form. Weisbrot Decl. ¶ 27. In addition, 29,340 individuals contacted the Settlement Administrator and/or Class Counsel stating that they were class members and wished to participate in the settlement.[1] *Id*. ¶ 22. By contrast, only 119 persons opted out of the settlement, and just 51 objections have been received, representing less than 0.000095% and 0.000035% of the class, respectively. Weisbrot Decl. ¶¶ 29–30, 32, 34. The opt-out and exclusion rates are among the lowest known to Angeion. *See id.*

## LEGAL STANDARD

In a class action, the "decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625–26 (9th Cir. 1982). The court's focus is to "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 625. The factors that guide this Court's analysis whether the settlement is fair, reasonable, and adequate, include:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

As the Court explained in its Preliminary Approval Order, when the parties reach a settlement before the Court has ruled on class certification, courts must employ extra caution and more rigorous scrutiny. ECF 270 at 7 (citing cases and discussing relevant considerations).

---

[1] Individuals who sought to be included in the class and represented that they had not received email notice were sent (or re-sent) email notice, and/or provided a link to a web form that allowed them to submit proof of their status as class members, and were provided the unique identifier necessary to submit an optional payment election form. Weisbrot Decl. ¶¶ 22–24.

**ARGUMENT**

**I.      The Settlement is Fair, Reasonable, and Adequate**

In its Preliminary Approval Order, the Court carefully considered the relevant factors and found that they favored approval. ECF 270 at 16–35. The class has demonstrated strong support for the Settlement, and the small number of objectors have raised no valid new concerns. Accordingly, the relevant factors continue to show that the Court should approve the Settlement.

**A.      The Strength of the Case and Risks of Litigation**

The first three *Churchill* factors evaluate "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; [and] (3) the risk of maintaining class action status throughout the trial." *Churchill*, 361 F.3d at 575. The Court carefully considered these issues at the preliminary approval stage and correctly held that "[t]hese factors weigh in favor of preliminary approval of the settlement." ECF 270 at 18.

At the time of settlement, class certification and *Daubert* motions were pending, and there were "significant risks, and concomitant costs and delays, from the continued litigation of this case, particularly with respect to [Plaintiffs'] efforts to certify a damages class and their proffered method of proving damages." *Id*. at 16. As the Court observed, there were "substantial risks on summary judgment, at trial, and on any appeal, in establishing elements of liability for conversion," including whether class members had provided consent; whether Plaintiffs could secure a unanimous verdict as required in a federal jury trial; and delay from further litigation. *Id.* at 17. The objections provide no information or argument undermining this conclusion. The first three *Churchill* factors continue to support approval of the Settlement. *Id.* at 16–18.

**B.      The Significant Relief Accorded by the Settlement Favors Final Approval**

The Court also properly considered "the amount offered in settlement" at the preliminary approval stage. *Churchill*, 361 F.3d at 575. The Ninth Circuit has "never prescribed a particular formula" for assessing a settlement's proposed relief, instead holding that the "court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Courts are, however, required to consider the totality of the relief. "It is the complete package taken as a whole,

rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. The Court correctly determined the Settlement's $135 million non-reversionary fund and comprehensive injunctive relief "falls within the range of reasonableness, particularly given the robust injunctive relief that will benefit the class." ECF 270 at 21.

The "comprehensive injunctive relief," *id.* at 20, continues to support approval. Google has agreed to significant changes in the disclosures it makes to customers as they set up new Android devices, to its Terms of Service, and to Google's relevant websites, that "clearly inform[ ] users of its practices, including that Google performs certain data transfers that consume users' cellular data," and which will allow "users to make informed decisions about whether they wish to continue using Android mobile devices." *Id.* at 20–21. The settlement will also require Google to deactivate the potentially misleading "background mobile data" toggle. As the Court has held, this injunctive relief is "significant and provides meaningful value to plaintiffs and the class." *Id.* at 21.

## C.    The Stage of the Proceedings Favors Final Approval

The fifth *Churchill* factor requires a court to assess "the extent of discovery completed and the stage of the proceedings." 361 F.3d at 575. "Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation" as "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Foster v. Adams & Assocs., Inc.*, No. 18-cv-2723, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022).

Here, all fact and expert discovery had been completed by the parties, class certification and *Daubert* motions had been fully briefed and argued, Plaintiffs' stay motion had been denied, summary judgment briefing was imminent, and the trial date was just a few months away. In addition, pivotal legal issues had been resolved through a Ninth Circuit appeal, and a month-long jury trial and post-trial briefing had been completed in the parallel *Csupo* action case involving the legal claim, evidence and expert witnesses. "All of this indicates that Plaintiffs were armed with sufficient information about the case to broker a fair settlement." *Foster*, 2022 WL 425559, at * 6. Moreover, the Settlement was reached after multiple, arms-length mediation sessions over more

than a year with renowned mediators Kenneth Feinberg and Camille Biros. *See Noroma v. Home Point Fin. Corp.*, No. 17-cv-7205, 2019 WL 1589980, at *7 (N.D. Cal. Apr. 12, 2019) ("An initial presumption of fairness" applies when "settlement is recommended by class counsel after arm's-length bargaining."). The stage of the proceedings supports final approval.

### D.    The Opinion of Class Counsel Favors Final Approval

The sixth *Churchill* factor requires courts to consider "the experience and views of counsel" in evaluating final approval of a class settlement. 361 F.3d at 575. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F. 3d at 967; *see also Foster*, 2022 WL 425559, at *6 ("Courts grant great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). Here, Class Counsel has extensive experience in complex litigation and class actions, and after six years of litigating the case concluded that this is an excellent outcome for the class. Summers Preliminary Approval Decl., ECF 260-1 ¶¶ 2, 3–11, 16, 21, 26; Wallenstein Preliminary Approval Decl., ECF 260-15 ¶¶ 3, 6–11, 19–32. In addition, Special Settlement Counsel, representing exclusively the interests of the *Taylor* class, concluded that the settlement is "fair, reasonable, adequate, and in the best interests of the proposed Settlement Class" in light of the "significant risk" of a negative outcome. Bush Preliminary Approval Decl., ECF 260-25 ¶¶ 8–10.

### E.    There Are No Government Objections, and Class Members Have Reacted Positively to the Settlement

The Settlement Administrator provided the required notice to government officials pursuant to the Class Action Fairness Act, and no objections were lodged by any such official. Weisbrot Decl. ¶ 7. Because "[n]one of these officials have raised any objection or concern regarding the settlement[,] . . . this factor favors the settlement." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 588–89 (N.D. Cal. 2015).

As discussed above, 395,231 class members have submitted an optional payment election form, and by doing so expressed a desire to participate in the settlement. Tens of thousands more contacted the Settlement Administrator or Class Counsel indicating that they wanted to participate

in the settlement. By contrast, only 51 objections have been received, and only 119 people opted out. This very positive response from class members also favors final approval. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320–21 (N.D. Cal. 2018) (Holding that "the reaction of the Settlement Class Members supports the Court's final approval of the Settlement" where only 28 class members objected, and only 406 opted out, out of 79 million, because "[s]uch low rates of objections and opt-outs are indicia of the approval of the class.").

### F.    The Notice Campaign Favors Approval

For settlement classes, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "The notice must be 'reasonably certain to inform the absent members of the plaintiff class,' but Rule 23 does not require actual notice." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)).

As discussed above, the notice plan approved in the Preliminary Approval Order has been successfully implemented. The Settlement Administrator successfully transmitted email notice to 134,280,522 unique email addresses associated with class members and only 1,492,315 emails were returned undeliverable, representing a success rate of over 98.8%. This was an exceptionally successful email notice campaign. *See Il Fornaio (Am.) Corp. v. Lazzari Fuel Co.*, No. 13-cv-5197, 2015 WL 2406966, at *1–2 (N.D. Cal. May 20, 2015) (approving notice when 13% of notices were undeliverable). Additional class members learned about the settlement through the supplemental media campaign and settlement website. Weisbrot Decl. ¶¶ 16–20.

The notice provided was in accord with the form approved by the Court in its Order. ECF 270; Weisbrot Decl. ¶ 12 & Exs. B, C (as-issued notice materials). The notice summarized the terms of the Settlement and clearly identified the options available to putative class members, including the options to object or opt out. Weisbrot Decl. ¶ 19. The date of the final approval hearing was provided, and an opt-out form was provided in both English and Spanish. *Id*. The class website provided class members with access to important documents (including key case pleadings, the exclusion forms, the optional payment election form, and instructions on how to file objections) and provided answers to frequently asked questions. *Id*. "Notice is satisfactory if it

generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575. The notice provided meets that standard and supports final approval of the settlement.

### G.      The Administrative Costs and *Pro Rata* Payment

With the benefit of the data provided by Google following preliminary approval, we now have additional information about the size of the class. As discussed at the preliminary approval hearing, Class Counsel previously understood that the class consisted of "over 100 million" people. ECF 272, Preliminary Approval Hr'g Tr. 20:8-9, 19:13-14. The data provided by Google, augmented by the persons who have requested inclusion and provided supporting documentation, results in a list of potential class members consisting of 129,974,148 persons. Weisbrot Decl. ¶¶ 14-15. This information provides additional insight regarding the likely range of individual distributions, as well as the likely administrative costs, which are driven largely by fees incurred for each successful electronic distribution. Weisbrot Decl. Ex. K.

At preliminary approval, Angeion estimated that their administrative fees would total $9.27 million. ECF 260-18 at 15 & n.11. This estimate was based on a single round of distributions, a class size of 100 million individuals, and a 68% payment success rate (the midpoint of the Settlement Administrator's estimated range of 55–80% success). Weisbrot Decl. ¶ 40. Given the larger size of the class (129,974,148) relative to the estimated size previously used (100,000,000), the estimated administrative costs are now approximately $12.62 million. *Id.* ¶ 40.

With the size of the class now better known, the amount of the individual payments to be made can now be better estimated. The Settlement Administrator currently anticipates that the initial round of distributions will be a minimum of $0.64 per class member (net of transaction fees). Weisbrot Decl. Ex. K. If a second round of distributions is conducted (which will be cost-effective if the payment success rate is approximately 65% or less) the total individual distributions could increase to $1.06 per class member. *Id.* ¶ 41 & Ex. K.[2]

---

[2] It is not unusual for the exact per-class-member payment to be an estimate at the time of final approval. *See, e.g., McKnight v. Hinojosa*, 54 F.4th 1069, 1075 (9th Cir. 2022). Nor does the fact that individual payment estimates have been revised require additional class notice. *See In re*

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

This additional information concerning the likely size of the individual awards does not change the fairness and adequacy of the settlement.[3] As discussed more fully below, it is inherent in the nature of this case, which involved the consumption of small amounts of cellular data by Google from a large group of people, that individual settlement or damages awards would be small. The aggregate monetary recovery remains substantial, and continues to serve the interests of deterrence and compensation regardless of the size of the individual awards. Moreover, as discussed at the preliminary approval stage, the stipulated injunctive relief is critical to remedy the conduct at issue going forward and has significant value to the class.

## II.      The Court Should Overrule the Objections

As discussed above, only 51 objections to the Settlement have been received. All but one of the objections are largely by *pro se* individuals, many of whom misunderstand the underlying claims, relevant facts, or details of the Settlement. For example, some objectors mistakenly believe that unclaimed funds revert to Google. *See, e.g.*, ECF 287 at 3. Other objections appear to misunderstand the case entirely. *See* ECF 305 at 1 (suggesting that Google could be "utilizing the data which they, allegedly, have acquired via the means alleged in this lawsuit to train their AI models"). Courts routinely disregard objections based on a misunderstanding of the case. *See, e.g.*, *Chatman v. Otani*, No. 21-cv-268, 2021 WL 5238762, at *6 (D. Haw. Nov. 10, 2021) (overruling objections that were "based on a misunderstanding of the scope of the release").

While 51 objections have been received, only 22 were timely filed by persons known to be class members. Wallenstein Decl. ¶¶ 7–39. Many of the 51 objectors lack standing because they are not on the class list created from Google's Android account data and have not provided evidence of class membership. *Id.* ¶¶ 40–87, 90–98; *In re Yahoo Mail Litig.*, No. 13-cv-4980, 2016 WL 4474612, at *8 (Koh, J.) (N.D. Cal. Aug. 25, 2016) ("The burden is on the objector to prove

---

*Anthem*, 327 F.R.D. at 331 (no additional class notice required for amendment that "does not fundamentally change the nature of the relief but instead changes only the quantity").

[3] The long form class notice did not provide any specific estimate of the per-class-member payment, and expressly stated that "[a]t this time, it is unknown exactly how much each Settlement Class Member will receive, because it depends in part on how many Settlement Class Members are successfully paid." Weisbrot Decl. Ex. C at 4. The email class notice also included no discussion of the amount of individual payments. Weisbrot Decl. Ex. B.

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

that he has standing to object.") In addition, several objectors have opted out, rendering their objections invalid. Wallenstein Decl. ¶¶ 90–98; *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 n.6 (N.D. Cal. 2017) ("One of these objections is invalid because the objector also opted out."). Also, certain objectors failed to file their objections with the Court as required by the notice, rendering them invalid. Wallenstein Decl. ¶¶ 101–13; *In re TD Ameritrade Acct. Holder Litig.*, No. 07-cv-2852 SBA, 2011 WL 4079226, at *11 (N.D. Cal. Sept. 13, 2011) (objection submitted to class counsel but not "file[d] with the court as required" was invalid). And one objector withdrew her objections. Wallenstein Decl. ¶¶ 88–89. While only 22 of the objectors have standing, Class Counsel nevertheless addresses the merits of all 51 objections.

Grouped into categories, the objections focus on the following subjects: (1) the amount of the monetary recovery, (2) the terms of the injunctive relief, (3) the scope of the release, (4) the issuance of equal payments to all class members, (5) purported conflicts of interest, (6) the amount of the requested attorney's fees, (7) the amount of the requested incentive awards, and (8) the sufficiency of notice. Each of these subjects is discussed below.

### A.      Adequacy of Monetary Recovery

Many of the 48 objectors argue that the monetary consideration is too low, both in the aggregate and on a per-capita basis.[4] However, the Court carefully considered the amount of the $135 million in monetary consideration in its Order Granting Preliminary Approval and found it fair, reasonable and adequate. ECF 270 at 21, 25. The same considerations guiding that analysis resolve these objections.

---

[4] *See, e.g.*, Objections of: J. Varga, ECF 273 at ¶ A; C. Long, ECF 276 at 1-2; B. Lawson, ECF 274 & 287, at ¶¶ 1, 7, 17, 31; T.R. Jacobs, ECF 279 at 2; C. Brown, ECF 280 at 2; M. Krause, ECF 283 at 2; D. S. Maynard, ECF 285 at 2; J.D. Maynard, ECF 286 at 2; A. Hawkins Jr., ECF 289 at 2; D. Omabegho, ECF 290 at 2; B.T. Walker, ECF 291 at 1; I. Flournoy, ECF 293 at 1–2; A. Ammon, ECF 296 at 1–2; A.R. Hamilton, ECF 297 at 1–2; M. Peralez, ECF 303 at 1; A. Plotkin, ECF 305 at 2; S. Carpenter, ECF 308 at 1; D. Mawe, ECF 310 at 2; J. Mccorvey, ECF 312 at 1; C. Price, ECF 313 at 1; W.H. Cisson, ECF 314 at 1; M. R. Davidson, ECF 318 at 1; C.M. Tepfer, ECF 319 at 1; J.K. Faber, ECF 316 & 320 at 2; M.L. Coak, ECF 323 at 1–3; D. McCorvey, ECF 324 at 1; M.A. Focia, ECF 327 at 1; T. Scheffler, ECF 328 at 2–4; Wallenstein Decl., Ex. H, Bekendam at 3; S.D. Ford, ECF 321 at 2; Wallenstein Decl., Ex. I, N. Castorina at 1; Wallenstein Decl., Ex. G, R. Messenger at 1.

**Value of claims:** At the preliminary approval stage, the Court carefully considered the strengths and weakness of Plaintiffs' case, as well as the risks of continued litigation. The Court discussed Google's opposition to class certification, including that Google had argued "with some persuasive force" that Plaintiffs' method for calculating damages "does not account for the wide variety in cellular data plans across the class," and that Plaintiffs' damages model is "grossly overinflated." *Id.* at 16. The Court also assessed Google's *Daubert* challenges to Plaintiffs' experts, including its argument that Plaintiffs' "average price" approach does not account for differences in cellular data plans across the class. *Id.* at 16–17. And the Court noted Google's argument that the measure of damages under California Civil Code § 3336 should be based on the "marginal" value of cellular data, which is "arguably zero." *Id.* at 17. The Court further recognized that Google's approach "would reduce [Plaintiffs'] potential recovery by 71% to 93%" and that "under the marginal value approach, the individual payments . . . represent a *premium* payment to each class member." *Id.* at 19. The Court also discussed "other substantial risks on summary judgment, at trial, and on any appeal, in establishing elements of liability for conversion." *Id.* at 17. And the Court considered the "years of additional litigation and delay" that would occur absent the settlement. *Id.* at 18. Ultimately, the Court correctly concluded that "the proposed class would face meaningful litigation risk—on the merits and on class certification—if the case were to proceed, including a risk of 'going home empty-handed.'" *Id.* at 18 (quoting *Burgos v. Sunvalleytek Int'l, Inc.*, No. 18-cv-6910, 2020 WL 7319354, at *7 (N.D. Cal. Dec. 11, 2020)).

As the Court previously held, the monetary amount of the settlement is fair and reasonable in light of those risks. The $135 million settlement represents approximately 6.8% of the approximately $2 billion that could theoretically be recovered at trial if Plaintiffs were to win the pending *Daubert* motions, were permitted to update their expert reports, won class certification, and survived summary judgment. ECF 260 at 23 & n.10. There is ample authority for the approval of settlements in cases involving similar risks. *See, e.g.*, *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-350, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

real possibility of recovering nothing absent the settlement."); *Cottle v. Plaid, Inc.*, No. 20-cv-3056, 2022 WL 2829882, at *3, *6 (N.D. Cal. July 20, 2022) (approving $58 million settlement representing 1% or less of potential damages over objections due to the "inherently risky" nature of further litigation); *Perkins v. LinkedIn Corp.*, No. 13-cv-4303, 2016 WL 613255, at *2, *5 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement representing 0.83% of potential $1.56 billion in statutory damages "in light of significant risks faced by the class and the delay in any potential recovery from proceeding with litigation"); *Schofield v. Delta Air Lines, Inc.*, No. 18-cv-382, 2019 WL 955288, at *5–6 (N.D. Cal. Feb. 27, 2019) (approving class settlement representing 5.2% of total potential recovery); *In re Uber FCRA Litig.*, No. 14-cv-5200, 2017 WL 2806698, at *5, *7 (N.D. Cal. June 29, 2017) (granting preliminary approval to $7.5 million class settlement representing between 1% and 7.5% of total possible exposure), *final approval at* 2018 WL 2047362, at *4–5 (N.D. Cal. May 2, 2018) (granting final approval where true percentage "could be less than 1%" of total exposure); *Bayat v. Bank of the W.*, No. 13-cv-2376, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (approving class settlement of $2.485 million representing 0.57% of potential $435 million statutory damages as a "good result for the class members" in view of litigation risks and injunctive relief); *Vataj v. Johnson*, No. 19-cv-6996, 2021 WL 1550478, at *9 (N.D. Cal. Apr. 20, 2021) (approving class settlement of $10 million, or 2% of potential damages); *see also In re Heritage Bond Litig.*, No. 02-ml-1475, 2005 WL 1594389, at *8–9 (C.D. Cal. June 10, 2005) (citing study of median recovery in shareholder class actions, 2–3% from 2002 to 2006).

The Court correctly recognized in its Preliminary Approval Order that rejection of the Settlement would expose the class to "a real possibility of recovering nothing." ECF 270 at 19. The objectors have provided no evidence or argument to the contrary. This fact strongly militates in favor of final approval. *See Cunha v. Hansen Nat. Corp.*, No. 08-cv-1249, 2015 WL 12697627, at *4 (C.D. Cal. Jan. 29, 2015) (approving settlement representing 3.89% of damages claim given "significant risk that the ultimate recovery would be *zero*").

**Per-Class-Member Recovery:** To the extent objectors complain about the relatively small size of the individual awards that will be made under the Settlement, that is largely a function of

the nature of this case, which involved the consumption of small amounts of cellular data by Google from a large group of people. Evidence at the *Csupo* trial showed, for example, that Google consumed only 1.6 megabytes per user per day, smaller than the size of a single text message containing a photo. Wallenstein Decl. ¶¶ 119–20 & Exs. P, Q. Class action litigation is designed to remedy small harms suffered by many people. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (the "risks, small recovery" and "individual damages" that "are too small to make litigation cost effective" are "at the heart of why the Federal Rules of Civil Procedure allow class actions"). Even if Plaintiffs were to prevail on class certification, liability, and recover their full claimed damages, the recovery per class member would be less than $15. Wallenstein Decl. ¶ 121.

Courts have granted final approval to settlements resulting in small individual payments under similar circumstances. *See, e.g.*, *In re Anthem*, 327 F.R.D. at 318 (granting final approval to $115 million settlement for a class of 79 million persons, or $1.45 per class member, and explaining that "[w]hether one looks at absolute or per-capita numbers, the size of this fund is significant" and "provides for meaningful consideration"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-2752, 2020 WL 4212811, at *10–11, *32 (N.D. Cal. July 22, 2020) (granting final approval of $117.5 million settlement for a class of approximately 194 million persons, for an average of $0.60 per class member), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022); *In re Google Plus Profile Litig.*, No. 18-cv-6164, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) (approving settlement with an "average of $2.50 per individual").

It is important to keep in mind that most payments in this case will occur automatically, which will allow class members to receive payments even if they do nothing.[5] Weisbrot Decl. ¶ 38. The Settlement Administrator estimates that payments will be successfully made to between 55% and 80% of the Class, or roughly 71.5 million to 104 million class members. *Id.* ¶ 39. The size of the per-class-member payments is, in part, a function of the high participation rates resulting from

---

[5] Depending on the payment processor, class members may need to click on an app notification or follow a hyperlink in an email message to accept the pending payments. Weisbrot Decl. ¶ 38.

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

the automatic payment distribution plan, which is expected to result in exceptionally high participation and the largest number of anticipated payments in class action history. *Id.* ¶ 5.

### B.    Injunctive Relief

Several objectors challenge the adequacy of the injunctive relief, primarily because it requires Google to disclose, but not cease, the network transfers at issue.[6] The Court considered the injunctive relief in its Preliminary Approval Order and correctly found it fair, reasonable and adequate. ECF 270 at 21, 25. As the Court previously found, the injunctive relief "requires Google to disclose the conduct at issue to Android users and to require users to expressly consent to it when they set up new Android phones." *Id.* at 5. In particular, Google "must revise the screens shown to users when setting up a new Android device (known as the 'setup flow'), to include a new section entitled 'Use of cellular data'" that contains a detailed disclosure of the conduct at issue and its consumption of users' cellular data. *Id.* at 5–6. The screen advises users that "By tapping 'Accept' at the bottom of this screen and continuing, you agree" that Google may engage in the conduct at issue. *Id.* And Google must update the Google Play Terms of Service to explain that the conduct at issue "may use your cellular data." *Id*. at 5. The Court described this relief as "comprehensive," because "[a] significant aspect of Plaintiffs' conversion claim is the clandestine nature of Google's alleged conduct." *Id.* at 20–21.

The objections offer no reason to alter this conclusion. The proposed injunctive relief completely remedies Google's misconduct, because it provides full disclosure and express consent. Many objectors appear not to appreciate the nature of the conversion claim that is at issue here, which under California common law has "lack of consent" as an element. *See Farrington v. A. Teichert & Son, Inc.*, 59 Cal. App. 2d 468, 474 (1943) (holding that no conversion occurs where the plaintiff consented to removal of his personal property); Jud. Council of Cal. Civ. Jury Instructions (CACI) No. 2100 (listing plaintiff's lack of consent as an "essential factual element[]"

---

[6] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶¶ 4, 5, 6, 13, 18, 24, 30, 33, 48, 72, 77, 89, 90; G.C. Warrington, ECF 277 at 1; C. Brown, ECF 280 at 2; N. Byars, ECF 288 at 4, 8; A. Hawkins Jr., ECF 289 at 2; I. Flournoy, ECF 293 at 2; J.K. Kirkley, ECF 304 at 2; J. Mccorvey, ECF 312 at 2; C.M. Tepfer, ECF 319 at 2; M.L. Coak, ECF 323 at 3; D. McCorvey, ECF 324 at 2; M.A. Focia, ECF 327 at 2; T. Scheffler, ECF 328 at 6–9.

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

of conversion in pattern jury instructions). It is the fact that Google consumed users' cellular data *without consent* that makes its conduct unlawful.

Moreover, there is no requirement under California law that injunctive relief eliminate the offending conduct in a particular way, such as the cessation (rather than disclosure) of the Challenged Transfers. The California Supreme Court has held that courts must "always strive for the least disruptive remedy" when tailoring an injunction to the harm it seeks to remedy. *Butt v. State*, 4 Cal. 4th 668, 695–96 (Cal. 1992).

Securing accurate disclosure is significant; it is a meaningful victory for transparency and has significant value for the class. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020) (injunctive relief requiring similar disclosure for only one year "had value" because "it provides information to users about Facebook's message monitoring practices")[7]; *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 933, 1005 (N.D. Cal. 2015) (injunctive relief requiring changes to terms and conditions had "significant value for both class members and the general public"); *In re Google Location*, 2024 WL 1975462, at *6 (injunctive relief disclosing that Google has collected certain location information "provides meaningful benefits to the Settlement Class"). As the Court previously found, "the injunctive relief is significant and provides meaningful value to plaintiffs and the class" because it "requires Google to provide information enabling users to make informed decisions about whether they wish to continue using Android mobile devices." ECF 270 at 21.

One objector mistakenly argues that the injunctive relief "imposes a *detriment* on the class by taking away the ability to toggle off Google's challenged data conversion." ECF 288 at 6. To the contrary, Plaintiffs put forward extensive proof at the *Csupo* trial that the toggle doesn't work. Wallenstein Decl. ¶¶ 114–18 (quoting Tr. 1059:8–11). Greying out the toggle stops it from giving

---

[7] One objector argues that *Campbell* involved only injunctive relief. ECF 288 at 18. But other cases that involve monetary recoveries also recognize the significant value of meaningful disclosure. *See, e.g.*, *In re Google Location Hist. Litig.*, No. 18-cv-5062, 2024 WL 1975462, at *6, *14 (N.D. Cal. May 3, 2024) (describing as "excellent" injunctive relief that disclosed to "all Google users" with certain settings enabled explaining "how those features collect Location Information").

users the misleading impression that the relevant transfers can be turned off via the toggle in any meaningful way, when in reality they cannot. *Id*.

Class Counsel tenaciously negotiated the injunctive relief with Google over a period of months. Class Counsel believes that materially better injunctive relief could not have been obtained through continued litigation. Summers Decl. ¶¶ 6, 8.

### C.    Scope of Release

Some of the objectors challenge the release as overbroad.[8] But the Court scrutinized the release in its Preliminary Approval Order and correctly found that the "scope of the proposed release is appropriate." ECF 270 at 31. The release is carefully limited to claims that "were asserted" or "could have been asserted" or that "reasonably relate to or arise from the same predicate facts" alleged in this case. *Id.* at 6-7, 31 (quoting the Settlement Agreement, ECF 260-11 §§ 1.33, 13). The release expressly excludes claims "already specifically alleged in any operative complaint in a pending action that was served on Google as of November 26, 2025," apart from this case. *Id*. As the Court previously found, "[t]he scope of the release is appropriate" because controlling Ninth Circuit law allows releases with these provisions. *Id.* at 31 (citing cases). Moreover, all class members were free to exclude themselves from the Settlement if they did not wish to release their claims, but only 119 elected to do so.

### D.    Uniform Payment

Certain objectors complain that under the plan of distribution all class members will be paid the same amount.[9] These objectors argue, for example, that class members may have used

---

[8] *See, e.g.*, Objections of: J. Mccorvey, ECF 312 at 1–2; B. Lawson, ECF 274 & 287, ¶¶ 3, 7, 68; N. Byars, ECF 288 at 9, 18–19; A.R. Hamilton, ECF 297 at 2; J.K. Kirkley, ECF 304 at 2; I. Flournoy, ECF 293 at 1; D. Mawe, ECF 294 at 4; W.H. Cisson, ECF 314 at 1; M.L. Coak, ECF 323 at 3; M. Sussman, ECF 325 at 1; T. Scheffler, ECF 328 at 13; S.D. Ford, ECF 321 at 2.

[9] *See, e.g.*, Objections of: T.R. Jacobs, ECF 279 at 5–7; D. Omabegho, ECF 290 at 2–3; C. Andrews, ECF 302 at 17–18, 27, 35, 37, 45; C.L. Quate, ECF 307 at 1; M. Sussman, ECF 325 at 1, 3–4.

differing amounts of data,[10] and that they may have been affected by Google's conduct for differing periods of time,[11] but that they would all receive the same *pro rata* payment.

The Court carefully considered this issue in its Preliminary Approval Order. Calculating individual payments for each class member is not feasible. As the Court explained in its Preliminary Approval Order, "Google may not have the data necessary to determine the length of time for which class members have had Android phones." ECF 270 at 28. Even if such data could be obtained, the Court correctly found that "in view of the magnitude of the class, the burden and difficulty of calculating individual payments for more than 100 million class members would result in higher settlement administration costs," so the distribution plan sensibly chose "to simplify the calculation of individual class member payments and lower settlement administration costs, yielding a greater benefit to the class as a whole." *Id.* at 28–29.

A district court may properly engage in "an amalgam of delicate balancing, gross approximations and rough justice" when approving a class action settlement. *Officers for Justice*, 688 F.2d at 625. A settlement is fair if it "does not provide preferential treatment to any Class Member," particularly where "Class Members will be compensated based on a simple formula allocating funds." *Curtis v. Irwin Indus., Inc.*, No. 15-cv-2480, 2020 WL 9457057, at *6 (C.D. Cal. Dec. 2, 2020). Paying all class members a *pro rata* share of the net settlement fund is reasonable here and does not provide anyone with preferential treatment.

### E.    Purported Conflicts of Interest

A few objectors argue that Class Counsel's interests diverged from those of the class.[12] Objector Byars argues that Class Counsel chose certainty over magnitude in "bundling" the *Csupo* and *Taylor* settlements, and that these two classes have diverging interests. ECF 288 at 10, 14–15. Byars further argues that Class Counsel improperly bargained away the preclusive effect of the

---

[10] B. Lawson, ECF 274 & 287, at ¶ 9.

[11] A.R. Hamilton, ECF 297 at 2.

[12] *See, e.g.*, Objections of: A.R. Hamilton, ECF 297 at 1; M. Krause, ECF 283 at 1–2; D.S. Maynard, ECF 285 at 1–2; J.D. Maynard, ECF 286 at 1–2; N. Byars, ECF No. 288, at 10–11, 14–15; C. Andrews, ECF 302 at 55; J.K. Kirkley, ECF 304 at 2; J. Mccorvey, ECF 312 at 2; C.M. Tepfer, ECF 319 at 2; M.L. Coak, ECF 323 at 3.

jury verdict in *Csupo*, and should instead have used it to pursue offensive collateral estoppel and issue preclusion in this case. *Id.* at 10-11. He calls this an "agency cost problem," analogizing to a real estate broker who takes the first offer rather than holding out for a higher one. *Id.* He further argues that the involvement of Special Settlement Counsel did not cure the conflict. *Id.* at 12.

There was no divergence of interests between the Class and Class Counsel. Both had an incentive to maximize the monetary recovery. Class Counsel has every incentive to recover as much as possible, because Class Counsel's compensation is sought based on the percentage-of-recovery method. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016) (percentage-of-recovery method is favored in California due to its "alignment of incentives between counsel and the class"). Any increase in Class recovery in this case increases the size of the common fund, which in turn increases the potential attorney's fees Class Counsel may seek.

Moreover, the choice of "certainty over magnitude" is inherent in any settlement, and does not necessarily reflect any conflict of interest between the class and class counsel. *See Bates v. Union Oil Co. of Cal.*, 944 F.2d 647, 651 (9th Cir. 1991) (party "traded the uncertainty of an affirmance or reversal for the known result of a settlement"); *Ridge v. Infinity Sales Grp., LLC*, No. 12-cv-6985, 2014 WL 12589629, at *4 (C.D. Cal. July 24, 2014) ("a settling plaintiff class trades certainty for maximum value"); *Lo v. Oxnard Eur. Motors, LLC*, No. 11-cv-1009, 2011 WL 6300050, at *6 (S.D. Cal. Dec. 15, 2011) (settlement is "equitable tradeoff for the certainty of payment rather than having to proceed with costly and uncertain litigation").

Byars is also incorrect that Class Counsel failed to pursue the preclusive effect of *Csupo* in this case. Under California law, judgments have preclusive effect only after appeal. *Samara v. Matar*, 5 Cal. 5th 322, 335 (Cal. 2018) ("[A]n unsatisfied trial court judgment has no preclusive effect until the appellate process is complete."); *Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 606 (Cal. Ct. App. 2010) ("[A] judgment that is on appeal is not final for purposes of applying the doctrines of claim and issue preclusion."). After the *Csupo* verdict, Google announced that it intended to appeal and filed a Notice of Appeal. Wallenstein Decl. ¶ 122 & Ex. R. Plaintiffs sought a stay of proceedings in this case on August 29, 2025 in order to allow Google's appeal in *Csupo* to run its

course so they could seek application of issue preclusion in this case. ECF 234 (Stay Mot.). However, the Court denied Plaintiffs' Stay Motion on November 24, 2025. ECF 251. Once the Court denied the stay motion, there was no longer any realistic possibility that the *Csupo* judgment would have preclusive effect, because the trial in this case would occur before completion of the *Csupo* appeal.[13]

There is no "agency-cost problem." Unlike a hypothetical real estate broker who simply accepts the first offer without pushing for more, Class Counsel engaged in multiple rounds of serious negotiation with Google over more than a year. ECF 260 at 13–14.

Byars is also incorrect in suggesting that this Settlement resembles the one disapproved in *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013), which banned "explicitly conditioning incentive awards to named representatives on their support for the settlement." *Id.* at 1166. Here, there is no such condition.

Byars next argues that the cross-contingencies between the *Csupo* and *Taylor* settlements create a conflict for Class Counsel because the two classes have diverging interests. ECF 288 at 10, 14–15. There is no conflict. In the negotiations that led to the settlements, it was Google who refused to settle either case without comprehensive resolution, including uniform injunctive relief that would apply nationwide in both cases. ECF 260-11, Settlement Agreement at 21 ("Given the need for nationwide uniformity in the relevant Defendant business practices, and ***Defendant's insistence*** on comprehensive resolution of the issues presented in both cases on a nationwide basis . . . ." (emphasis added)). Class Counsel and Special Settlement Counsel for each class carefully considered the contingencies and ultimately determined that it was the interests of both classes to accept Google's required contingencies to secure the settlements.[14] Summers Decl. ¶ 7.

---

[13] A civil appeal in California typically takes at least 17 months to resolve. *See* Jud. Council of Cal., *2025 Court Statistics Report: Statewide Caseload Trends*, at 40 (2025). If certiorari were granted by the California Supreme Court, that process could take an additional two years or more. The *Taylor* trial was scheduled to begin on April 1, 2026, four months after denial of the Motion for Stay. *See* ECF 234 at 5; ECF 164; ECF 207.

[14] Courts often approve settlement terms that "Defendants insisted on." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 3648478, at *14 (N.D. Cal. July 7, 2016); *see In*

Byars next argues that the involvement of Special Settlement counsel did not safeguard against structural problems because Special Settlement Counsel did not address the "*Csupo* preclusion right." ECF 288 at 12–13. But Special Settlement counsel did take the preclusion issue into account. Special Settlement Counsel was well aware that Plaintiffs sought a stay in this case in the hope of allowing the trial court judgment in *Csupo* to reach finality so they could seek issue preclusion, but that the Court had denied the stay motion, effectively defeating that result. Mr. Bush's declaration makes clear that he reviewed "the parties' briefing on Plaintiffs' motion to stay," which included discussion of the preclusion issue, and "the Court's November 24, 2025 Order denying Plaintiffs' stay motion." Bush Decl., ECF 260-25 ¶ 4.

Byars further argues that Special Settlement Counsel's involvement was not disclosed to the class. But the class was provided notice of Special Settlement Counsel's involvement at the same time the class was provided notice of the Settlement and Class Counsel's involvement. Class Counsel's Motion for Preliminary Approval and Mr. Bush's supporting declaration (ECF 260 and 260-25) were both made available on the Settlement website and expressly discussed his involvement.[15] The Notice sent to class members expressly directed them to the case website for additional information. Weisbrot Decl. Ex. B (email notice), Ex. C (long form notice). Byars provides no authority for the notion that a putative class must be provided notice of the identity of settlement counsel prior to the negotiation of a proposed class action settlement.

### F.    Attorney's Fees

Several of the objectors argue that the requested fee award is too high.[16] Class Counsel have set forth the reasons for their fee request in their Motion, ECF 281, and their Reply, ECF 309. Class Counsel believe this prior briefing largely address these objections.

---

*re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2011 WL 13152270, at *6 n.3 (N.D. Cal. Aug. 24, 2011) ("In fact, most settling defendants insist on this [condition].").

[15] *See* https://www.federalcellularclassaction.com/important-documents.

[16] *See, e.g.*, Objections of: J. Varga, ECF 273 at Intro & ¶¶ A–D; B. Lawson, ECF 274 & 287, ¶¶ 2, 22, 71; C. Long, ECF 276 at 1–2; T.R. Jacobs, ECF 279 at 4–5; M. Krause, ECF 283 at 1; J.S. Stoltzfus, ECF 284 at 1; D.S. Maynard, ECF 285 at 1; J.D. Maynard, ECF 286 at 1; A. Hawkins Jr., ECF 289 at 2; D. Omabegho, ECF 290 at 3; B.T. Walker, ECF 291 at 1; I. Flournoy, ECF 293 at 1–2; A.R. Hamilton, ECF 297 at 2; J. Renfort Jr., ECF 301 at 3–6; C. Andrews, ECF 302 at 12,

To the extent objectors complain that the requested attorney's fees are large in relation to the individual awards that will be made under the Settlement, Courts in the Ninth Circuit routinely approve attorney's fees comparable to those sought here, even in cases involving relatively small monetary recoveries for individual class members. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, No. 12-md-2314, 2022 WL 16902426, at *8, *12 (N.D. Cal. Nov. 10, 2022) (awarding 29% of the common fund with 3.28 lodestar multiplier over objection that "the settlement amount would yield approximately fifty cents per class member after deducting all fees and expenses"); *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-2617, 2018 WL 3960068, at *9–10 (N.D. Cal. Aug. 17, 2018) (awarding 27% of $115 million common fund where projected recovery was $1.45 per class member); *T.K. v. Bytedance Tech. Co.*, No. 19-cv-7915, 2022 WL 888943, at *12, *25 (N.D. Ill. Mar. 25, 2022) (awarding 27.2% of common fund in case where each claimant received $3.06). As discussed above, the relatively small amount of the per-class-member payment in this case is simply a function of the nature of the case. This case has always been about Google's consumption of a relatively small amount of data (by today's standards) from a very large number of people.

Objector Byars argues that the combined fee award across *Csupo* and *Taylor* would result in a 32% fee award for Class Counsel in both cases, which exceeds the Ninth Circuit's 25% benchmark. ECF 288 at 15–16. This argument is without merit. Byars offers no authority that the fee award in this case should be assessed in combination with the fee award in a case in state court where fees have already been decided. Nor does he provide any authority that the Ninth Circuit's 25% benchmark should control. In any event, an average combined fee of 32% would be eminently reasonable under both California and Federal law given the circumstances of this case, which included over six years of hard-fought litigation, two motions to dismiss, a successful Ninth Circuit appeal, and a successful month-long jury trial in a related case, all involving risky, novel claims taken on full contingency. *See* ECF 281 at 23–25. Under such circumstances, a modest upward adjustment from the Ninth Circuit's 25% benchmark is warranted. *See* ECF 281 Parts I-II.

37, 50; M. Peralez, ECF 303 at 1; J.K. Kirkley, ECF 304 at 2; J.R. Davis, Jr., ECF 306 at 1–4; S.R. Carpenter, ECF 308 at 1; J. Mccorvey, ECF 312 at 2; W.H. Cisson, ECF 314 at 1; J. Faber, ECF 316 & 320 at 1; D. McCorvey, ECF 324 at 1–2; T. Scheffler, ECF 328 at 12.

Byars further argues that the Settlement does not meet the risk-multiplier standard in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). But fees are sought here using the percentage-of-recovery method, not the lodestar-multiplier method. The lodestar multiplier is "merely a cross-check" on the reasonableness of the percentage. *Id.* at 1050 n.5.

Byars argues that Plaintiffs' damages expert's valuation of the injunctive relief measures Google's cessation of the Challenged Transfers for two years, but that the injunction does not require Google to cease the challenged data collection, only to disclose it. ECF 288 at 20. Byars argues that the settlement therefore does not achieve Dr. Stec's $599.4 million valuation because the Settlement does not match what Dr. Stec measured. *Id.* at 20. But the Court has already recognized that "the injunctive relief is significant and provides meaningful value to Plaintiffs and the class" without regard to Dr. Stec's economic assessment of the value of the injunctive relief. *See* ECF 270 at 21 & n.10 (declining to rely on Dr. Stec's calculation).

### G.    Incentive Awards

Some objectors challenge the size of the proposed incentive awards.[17] This issue is fully addressed in Class Counsel's Motion for Fees, Costs, and Incentive Awards. ECF 281, Part IV.

### H.    Settlement Administration and Notice

Certain objectors have raised issues regarding the settlement administration process, including the limited time allowed for objections and a purported lack of clarity regarding how to opt out, submit a claim, or receive payment.[18] These objections are without merit.

This District requires "at least thirty-five days to opt out or object to the settlement." N.D. Cal. Procedural Guidance for Class Action Settlements, at 4 (Sept. 5, 2024). All class members had a significantly longer period here. Class notice began on March 24, 2026 and ended on April

---

[17] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶ 63; I. Flournoy, ECF 293 at 2; C. Andrews, ECF 302, at 10; J. Mccorvey, ECF 312, at 2;

[18] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶¶ 8, 11, 12, 14, 19, 29, 38, 39, 52; D. Omabegho, ECF 290 at 3–4; R. Aumaitre, ECF 282 at 2–4; M. Krause, ECF 283 at 2; D.S. Maynard, ECF 285 at 2; J.D. Maynard, ECF 286 at 2; C. Andrews, ECF 302 at 30–45; D. McCorvey, ECF 324 at 1; M. Sussman, ECF 325 at 1, 5.

9, 2026. Weisbrot Decl. ¶ 12. Objections were due on May 29, 2026, between 50 and 66 days later. *Id.* at Ex. B at 4 (email notice stating deadline); *id.* at Ex. C at 2 (long form notice stating deadline).

The Court also correctly approved the notice in its Preliminary Approval Order. *See* ECF 270 at 27–28. The notice provided clear instructions regarding how to opt out, object, and affirmatively elect a payment method.[19] A simple one-page exclusion form was also made available on the case website. Weisbrot Decl. ¶ 19 & Ex. F.

Objector Michael Sussman argues that "no alternative mechanism exists" for class members who did not receive email notice to opt in. ECF 325 at 1. As an initial matter, Sussman lacks standing because he is not on the class list provided by Google and has provided no evidence that he is a member of the class. *See* Wallenstein Decl. ¶¶ 70–71.

Sussman's argument is also incorrect. Any person who claims not to have received notice is provided a link to a web form that allowed them to submit proof of their status as class members, along with a unique identifier necessary to submit an optional payment election form. Weisbrot Decl. ¶ 33; Wallenstein Decl. ¶¶ 70–71. This approach is "consistent with settlement-administration best practices." Burrows Decl. ¶ 23.

Plaintiffs also have significant concerns regarding Mr. Sussman's motives. Mr. Sussman is a serial objector who appears to have a practice of filing non-meritorious objections, often without proof of class membership, in an effort to receive compensation. He appears to work in concert with a number of other *pro se* objectors (or perhaps to submit multiple objections using aliases), to create the impression that there is broader support for his objections. *See* Wallenstein Decl. ¶¶ 57, 69–85. Mr. Sussman's objections also frequently seek to undermine valid measures intended to prevent the submission of fraudulent claims. *See In re Telescopes Antitrust Litig.*, No.

---

[19] *See* Weisbrot Decl. Ex. C at 6 ("If you want to exclude yourself from the Class, you must send a personally signed letter asking to be excluded to the Settlement Administrator."); *id.* at 7 ("To object, you (or an attorney retained by you at your own expense) must file your objections with the Court by mail or electronically through the Court's ECF system, on or before May 29, 2026."); *id.* at 5 ("In order to ensure that your payment is sent to the correct digital account, please select your preferred method of payment online at www.FederalCellularClassAction.com."); *see also id.* at 8 ("The Settlement Administrator will still attempt to send you your payment even if you do nothing . . . .").

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

20-cv-3639 (April 11, 2025), ECF 419 at 14 (Overruling Sussman's objections to a "requirement for persons without a claim number to personally call" the settlement administrator to be added to the class list.).

### I.      Objectors Who Did Not Initially Receive Notice Emails

Several objectors claim not to have received notice.[20] Class Counsel determined that some of these individuals are actually class members in *Csupo*, not this case, and any such individuals have been provided information to allow them to register for the *Csupo* settlement. Wallenstein Decl. ¶¶ 6, 101–103. The remaining objectors in this category have been provided credentials allowing them to provide evidence of class membership so they can participate in the Settlement. *Id*. ¶ 6; Weisbrot Decl. ¶ 33. None have provided such evidence to date. *Id*.

### J.      Other Objections

A few class members have objected that the Settlement does not address their data privacy or data security concerns.[21] These objections misunderstand the nature of the lawsuit.

Objector Brian Lawson objects that there are no provisions for objector compensation.[22] But no such compensation is required. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 ("Because objectors did not increase the fund or otherwise substantially benefit the class members, they were not entitled to fees."); *In re HP Inkjet Printer Litig.*, No. 05-cv-3580, 2011 WL 2462475, at *1 (N.D. Cal. June 20, 2011) (denying motion for objector reimbursement where objectors "have not shown that their objections conferred a substantial benefit on the class").[23]

---

[20] *See* Objections of: R. Aumaitre, ECF 282 at 1–8; G. Dillmann, ECF 317; A.M. Lauderdale, ECF 315 at 1–2; J.K. Faber, ECF 316 & 320 (also claimed to have not received Notice and contacted Class Counsel for assistance in obtaining credentials just after mailing her objection).

[21] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶¶ 18, 33, 57; C. Brown, ECF 280 at 2; B.T. Walker, ECF 291 at 1; A.R. Hamilton, ECF 297 at 2; M. Peralez, ECF 303 at 1; C.L. Quate, ECF 307 at 1; C. Price, ECF 313 at 1; J.K. Faber, ECF 316 & 320 at 3; C.M. Tepfer, ECF 319 at 1; M.L. Coak, ECF 323 at 3; Wallenstein Decl., Ex. H, S. Bekendam at 2–3; S.D. Ford, ECF 321 at 2.

[22] Objection of B. Lawson, ECF 274 & 287 at ¶ 23.

[23] Another objector, T.R. Jacobs (ECF 279), requested reimbursement of extensive "expenses" purportedly incurred in connection with his objections. Wallenstein Decl. ¶¶ 12–14.

Motion for Final Approval of Class Settlement
Case No. 5:20-CV-07956-VKD

Lawson further argues that the Settlement does not contain adequate safeguards against collusion between counsel.[24] There is no evidence of collusion. The extensive discovery and adversarial nature of the litigation are evidence of lack of collusion. *See, e.g.*, *In re Anthem*, 327 F.R.D. at 320; 4 Newberg & Rubenstein on Class Actions § 13:50 (6th ed. 2026).

**III.    Approval of Payment of Costs of Notice and Settlement Administration**

The Settlement Agreement provides that the Settlement Administrator "will be allowed up to one million five hundred thousand dollars ($1,500,000) out of the Settlement Fund to implement the Notice Plan, subject to Court approval." Settlement Agreement § 76.2, ECF 260-11 at 13. To date, Angeion has submitted invoices for $583,623.09 in notice costs. Weisbrot Decl. at 4 n.3. Plaintiffs respectfully request that the Court authorize immediate payment of that amount from the Settlement Fund. In addition, subject to the Court granting final approval of the Settlement, Plaintiffs request that the Court approve the payment of administrative costs associated with the settlement distributions to class members provided they are consistent with the estimates set forth in Exhibit K to the Weisbrot Declaration.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant Plaintiffs' motion for final settlement approval, and enter an order finally approving the Settlement, finally certifying the class for settlement purposes, approving payment of notice and settlement administration costs, and overruling the objections to the proposed Settlement. Plaintiffs further request that the Court promptly enter final judgment in accordance with the proposed Settlement.

---

[24] Objection of B. Lawson, ECF 274 & 287 at ¶¶ 40, 66.

Dated:  June 12, 2026

Respectfully submitted,

BARTLIT BECK LLP

*/s/ Glen E. Summers*

Glen E. Summers (176402)
Karma M. Giulianelli (184175)
Lindley J. Brenza (*pro hac vice*)
Jonathan Jacob Marsh (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Marc A. Wallenstein (*pro hac vice*)
George A. Zelcs (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice)*
Chad E. Bell (*pro hac vice)*
Pamela I. Yaacoub (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Carol L. O'Keefe (*pro hac vice*)
Michael E. Klenov (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Elizabeth M. Pipkin (243611)
Ann M. Ravel (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

*Attorneys for Plaintiffs*
*Joseph Taylor, Mick Cleary, and*
*Jennifer Nelson*