

FILED

JUN 18 2026

CLERK U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Mike Sussman
1686 S FEDERAL HWY #151
DELRAY BEACH, FL 33483
mike.sussman@pm.me
Notice ID: GGT101717178

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA** Joseph Taylor, et al., v. Google LLC
Case No. 20-cv-07956-VKD

RE: Entries 325 and 322 (Objections of Mike Sussman)

**MOTION FOR LEAVE TO INTERVENE; FOR LEAVE TO FILE NON-SEALED EXHIBITS IN SUPPORT OF THE OBJECTION FILED AT ENTRY 325; FOR REINSTATEMENT OF ENTRY 322; FOR FILING OF DOCUMENT ATTACHED TO ENTRY 322 (UNDER SEAL OR NOT UNDER SEAL).**

Because the Clerk of Court has failed to comply with Rule 79(a)(2)(A) and 5(d)(4) by: (1) Failing to file the non-sealed documents that Sussman attached to his objections at Entry 325 and (2) Refusing to file a motion for leave to file temporarily under seal as to an additional exhibit to the objections, Sussman is forced to seek leave to intervene:

1.  Objectors are not required to intervene. Absent class members are entitled to object and to appeal any grant of the final settlement in this case. Devlin v. Scardelletti | 536 U.S. 1 (2002).
2.  Obviously, Objectors are entitled to submit evidence to support their objections.
3.  However, the Clerk stated that objections are not parties and have no "right to file documentation" in the case. See BATES 001.
4.  Based on this opinion of the Clerk, the unsealed exhibits (BATES NOS. 009-025), were not filed despite being attached to the objections. Instead, the Clerk sent them back to Sussman.
5.  Moving along to the next problem, If an Objector has a sensitive document that needs filed as evidence of his objection, the common sense thing to do is for the objector to file a motion for leave to file under seal. This Sussman did.
6.  At ECF 322, Sussman lodged an additional Exhibit to his objections (BATES 004-008) Out of an abundance of caution, Sussman accompanied it with a motion to temporarily seal it (BATES 002-003).
7.  Understand, Sussman's position is that it *should not* be sealed, but as a courtesy to Class Counsel and Class Counsel who was denied leave to file it under seal in the Telescope Class Action, he filed it with the motion in case Angeion Group or the interested parties desired to object to its being placed on the public docket.
8.  The Clerk returned this stating that only Class Counsel can make these contentions. The Clerk referred Sussman to the Federal Rules of Civil Procedure, but cited no particular Rule other than the Deputy Clerk's opinion about what is allowed.
9.  The Deputy Clerk's opinion makes absolutely no sense whatsoever.
10. First, the Clerk has no authority to makes these types of determinations. Their job is ministerial and it is to file documents. See Rule 79(a)(2)(A) and 5(d)(4), etc. They have

no adjudicatory authority to state that Class Counsel must file the motion.

11. Second, it is the job of this Court, not the Clerk, to strike documents, find that they are improperly filed, or issue appropriate Orders in that regard. Again, it is not a function delegated to the Clerk. It is unconstitutional for this Court to delegate this adjudicatory authority to a Deputy Clerk.

12. Third, if the Clerk is correct, so Sussman can perfect his objections, he should be granted leave to intervene so he can file the exhibit to his objections. Otherwise, Sussman's objections will lack the evidentiary support needed to create a record for an appeal.

13. Regardless, this procedural error by the Clerk needs to be on the docket so it also can be raised on appeal if this Court will not intervene. While certain Orders can be entered by a Clerk, there must be a review procedure. In this case, the Clerk's disallowance of exhibit filing and a motion for leave to file under seal is not the type of decision appropriate for a Clerk.

14. Objector ponders whether other class members have tried to file motions and they are not on the docket because the Clerk chose to return them and asks that this Court disclose all such motions.

15. Thus, this Court should allow Sussman to intervene, file his evidence, and reactivate docket 322.

WHEREFORE, Objector Michael Sussman respectfully requests that this Court grant leave to intervene, reactivate ECF 322, direct the clerk to lodge BATES 009-025 as non-sealed ordinary exhibits to ECF 325, to direct the Clerk to lodge BATES 004-008 temporarily under seal until the Court rules on ECF 322 (BATES 002-003), and to enter an Order overruling the Clerk's determination at BATES 001.

In the alternative, this Court should make this document and the attempted exhibited part of the record for any appeal.

Respectfully submitted,

Mike Sussman

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---

www.cand.uscourts.gov

Mark B. Busby                                                    General Court Number
Clerk of Court

June 03, 2026

Mike Sussman
1686 S. Federal Hwy #151
Delray Beach, FL 33483

Mike Sussman,

On June 01, 2026 the Clerk's Office received two documents from you via mail, an "Objection to Class Action Settlement" along with a "Motion to File Under Seal", to be filed in case 5:20-cv-07956-VKD within the U.S. District Court for the Northern District of California. The Objection has been lodged accordingly. Please find enclosed with this letter the "Motion to File Under Seal" document.

The Clerk's Office has returned this document to you for the following reason(s). Upon review of the docket in question, it has been determined that you are not a party to this case and therefore lack the right to file documentation in this action. If you are a class member to this action, then only class counsel can present these contentions to the court.

On the Court's website (www.cand.uscourts.gov) you can access the Federal Rules of Civil Procedure, and the Civil Local Rules for your review. If you have questions regarding how to represent yourself in a case, the Federal Pro Se Program is a resource available to pro se litigants. They can be contacted as follows: (408) 297-1480; Hours: Monday to Thursday 9:00 am - 4:00 pm.

Sincerely,

K. Perez, Deputy Clerk

CM-30281-0115

**001**

Mike Sussman
1686 S FEDERAL HWY #151
DELRAY BEACH, FL 33483
mike.sussman@pm.me
Notice ID: GGT101717178

**FILED**

**JUN 01 2026**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA** Joseph Taylor, et al., v. Google LLC
Case No. 20-cv-07956-VKD

## MOTION TO FILE TEMPORARILY UNDER SEAL AND TO SHOW CAUSE WHY THE DOCUMENT SHOULD NOT BE UNSEALED

Objector Michael Sussman files this motion and states:

1. Attached is a declaration cited in the objections concurrently filed herein.
2. Sussman does not believe the attached Declaration should be sealed and the content does not meet the constitutional or common law standard for a sealed document. As redacted, there are no privacy issues. There are no trade issues and everything in the declaration is also found in other declarations in similar cases. *See* Exhibit A to the Objections (similar SDNY declaration).
3. Class Counsel in the Telescope Antitrust Class Action *In re Telescope* case, **5:20-cv-03639 (NDCal.)**, attempted to file this declaration under seal, but Judge Davila denied the motion. See Entry 463, footnote 2. Class Counsel submitted it under seal in the Ninth Circuit implying it was sealed by Judge Davila, but it never was.
4. Objector is serving this on Class Counsel in this case where Angeion is a party, and on Class Counsel in the Telescope case in case they wish to intervene and show cause.
5. Sussman requests that a show cause be issued demonstrating why it should not be unsealed and that this Court thereafter unseal it. Alternatively, this Court should leave the declaration sealed but consider it along with the objections herewith filed.

WHEREFORE, Movant/Objector respectfully requests that the attached declaration be temporarily sealed and that this Court issue an Order to Show Cause to Class Counsel in this case demonstrating why the declaration should remain sealed.

Respectfully submitted,

Michael Sussman

CM-30281-0115

**002**

CERTIFICATE OF SERVICE

I Michael Sussman certify that I mailed a true copy of the foregoing upon the following persons on this 28th day of May, 2026:

Adam J. Zapala, Esq,
COTCHETT, PITRE & McCARTHY,
840 Malcolm Road
Burlingame, California 94010
azapala@cpmlegal.com  TELESCOPE CASE

Kalpana Srinivasan (Bar No. 237460)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
ksrinivasan@susmangodfrey.com  TELESCOPE CASE

Lin Y. Chan (SBN 255027)
lchan@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, California 94111  TELESCOPE CASE

Angeion Group
Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA19103

Marc A. Wallenstein
**KOREIN TILLERY LLC**
205 North Michigan Ave.      Suite 1950
Chicago, IL 60601

Glen E. Summers
**BARTLIT BECK LLP**
1801 Wewatta St. Suite 1200
Denver, CO 80202

Mike Sussman

**003**

SEALED EXHIBIT RE: SUSSMAN OBJECTIONS IN Joseph Taylor, et al., v. Google LLC. Case No. 5:20-cv-07956-VKD (N.D. Cal.)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| IN RE: TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
|---|---|
| | DECLARATION OF RYAN HALLMAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND |
| THIS DOCUMENT RELATES TO: All Indirect Purchaser Actions | |

I, Ryan Hallman, declare as follows:

DECLARATION OF RYAN HALLMAN; Case No. 5:20-cv-03639-EJD

3273053.2

CM-30281-0115

1. I am the Chief Technology Officer ("CTO") at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion is not providing settlement notice or claims administration services in the above-captioned litigation. It is my understanding that Verita has been the Court-appointed notice and claims administration provider in this litigation.

2. In my role as CTO, I am the chief executive at Angeion responsible for building accountable, accurate, and efficient processes through the smart application of technology. In my role as CTO, I have primary responsibility for establishing systems and protocols for detecting and rooting out fraud in the administration of class action settlements.

## REQUEST FOR REDACTION OR FILE UNDER SEAL

3. Angeion respectfully requests that the Court allow for this declaration and attached exhibits to be filed under seal, as specific details regarding our anti-fraud efforts are discussed, and if disclosed, will undermine our ability to combat fraudulent claims submissions by providing insight into the methods and techniques employed by Angeion. Further the details pertaining to our proprietary fraud detection and prevention system, AngeionAffirm 2.0, are competitively sensitive, and if made publicly available, will be detrimental to Angeion in the marketplace.

## COMBATTING AND RESPONDING TO AN EVOLVING FRAUD LANDSCAPE

4. I can confirm that fraud in connection with class action settlements is a significant and growing concern and, due to advancing technology, has become increasingly prevalent in the claims administration process. At Angeion, we have invested substantial resources into detecting and preventing fraud in the administration of class action settlements. This includes the development of Angeion's proprietary fraud detection system, AngeionAffirm 2.0. If desired by the Court, Angeion can provide, for in camera review, additional information about AngeionAffirm2.0, our fraud prevention processes, and additional information relating to this matter.

5. Since the summer of 2023, there has been a significant increase in the volume of attempted fraudulent in class action settlements, accompanied by rapidly evolving and increasingly sophisticated tactics. These schemes span both large-scale operations and smaller, targeted efforts.

**DECLARATION OF RYAN HALLMAN; Case No. 5:20-cv-03639-EJD**
1
3273053.2

6.      Angeion has also observed a growing trend in which individuals engaged in suspected fraudulent activity attempt to communicate not only with counsel but directly with the Court, thereby creating an appearance of legitimacy for their efforts.

**OBJECTORS & ASSOCIATES**

7.      With respect to the above captioned litigation, I understand that Class Counsel for the Indirect Purchaser Plaintiffs ("IPPs") reached a settlement with the Defendants for $32 million. I further understand that in connection with that proposed settlement there were four (4) purported individuals or entities that objected to the settlement and have now appealed the Court's final approval of that settlement over said objections.

8.      After final approval of the IPPs' settlement, Counsel for the IPPs reached out to Angeion to ask whether we had any experience with these purported claimants in class action settlements that Angeion has administered. Those purported claimants include objector 1 objector 2 CORPORATION and objector 3

9.      In addition to these individuals and the entity, Counsel for the IPPs also asked Angeion to research the name attorney X according to background information provided by Counsel, their investigation indicated that the objector identified as objector 3 associated with an individual who purports to be named attorney X

10.     In conjunction with my colleagues, I conducted an investigation into these names and any associated aliases to determine whether they were linked to claims submitted in other class action matters administered by Angeion. As part of this investigation, I queried Angeion's structured databases to obtain the relevant results. These structured databases are maintained as part of Angeion's regularly conducted business activities and constitute business records that we consider reliable. My colleagues and I regularly rely on these databases in performing our duties and fulfilling our business responsibilities.

11.     Objector 3 ngeion's records reflect that an individual using the nam Obj.3 Objector 3 as submitted claims in connection with other settlements that Angeion has administered in the past. Based on a review of Angeion's records and the results of Angeion's fraud detection processes, claims submitted under the name Objector 3 ave been

**DECLARATION OF RYAN HALLMAN; Case No. 5:20-cv-03639-EJD**
2
3273053.2

denied on multiple occasions due to indications of fraudulent activity.

12. [Attorney X] ngeion's records reflect that an individual using the name [redacted] [Atty X] as submitted claims in connection with other settlements that Angeion has administered in the past. Based on a review of those records and the results of Angeion's fraud detection processes, claims submitted under the name [Attorney X] ve been denied due to multiple indicators suggesting potential fraudulent activity.

13. [Objector 2] ngeion's records reflect that an individual using the name [redacted] [Obj 2] s appeared in a substantial number of claims submitted in connection with other settlements administered by Angeion. According to information provided to me by Counsel for the IPPs, [Obj 2] urports to be the CEO of an entity called [Objector 2 CORPORATION] [redacted] which is represented as a class member in the above-captioned litigation and has submitted an objection and appeal in this matter.

14. Based on a review of those records and the results of Angeion's fraud detection processes, claims submitted under the name "[Objector 2] lated to this matter have been denied due to multiple indicators suggesting potential fraudulent activity.

15. Based on my work as a CTO, a review of Angeion's records, and as a general matter, Angeion believes that the named objectors are highly likely to be the same individuals whose prior claims have appeared in Angeion's records and have been denied in other settlements due to multiple indicators suggesting potential fraudulent activity.

**REVIEW OF OBJECTOR** [Objector 3]

16. In addition to reviewing Angeion's internal business records, Angeion personnel conducted a more extensive investigation regarding the objector identified as [Obj 3] s previously noted, Angeion has encountered situations in which individuals suspected of attempting to perpetrate fraudulent activity engage directly with counsel or appeal to the Court concerning fraud prevention practices and claims submission processes implemented by settlement administrators. When such circumstances arise, Angeion performs a more detailed review of the individual involved, utilizing public records, reputable third-party data sources, and proprietary resources to further validate its findings and conclusions.

**DECLARATION OF RYAN HALLMAN; Case No. 5:20-cv-03639-EJD**
3
3273053.2

CM-30281-0115

**007**

17.     Included on the "Objections to the Settlement" is contact information for the objector:

███ Objector 3 ███

18.     Angeion personnel performed a reverse lookup of the telephone number listed for ██Obj 3██ sing the publicly available resource www.whitepages.com. The results of this search indicated that the number is not registered to ██Obj 3██ but to ██Attorney X██

19.     As noted, if desired by Court, Angeion remains available to provide, for in camera review, additional detail about its fraud systems and processes.

## CONCLUSION

20.     Based on my review of Angeion's internal business records, the investigations described above, and my professional experience, it is my opinion that there is substantial information indicating that the objection filed under the name ██████ highly suspicious and is likely associated with an effort to perpetrate fraudulent activity.

a.     The telephone number provided by ██Obj 3██ appears, according to public records, to be registered to ██Attorney X██ whom counsel has identified as a suspected associate of ██Obj 3██

21.     Angeion's investigation has identified numerous connections among these individuals that, taken together, provide significant indicia of coordinated activity, including the objection filed by ██Obj 3██ in this matter. Based on the totality of the evidence reviewed, Angeion believes that it is reasonable to conclude that these individuals are acting in concert, or through related networks, to submit claims or objections exhibiting patterns commonly associated with fraud.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 14th day, July 2025 in Philadelphia, Pennsylvania.

RYAN HALLMAN

**DECLARATION OF RYAN HALLMAN; Case No. 5:20-cv-03639-EJD**
4
3273053.2

CM-30281-0115

Case 7:24-cv-00526-KMK   Document 57-1   Filed 09/04/25   Page 100 of 118

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAYMOND KESSLER, HARTENCE HILL, LAZARO RODRIGUEZ, TERESA HERENDEEN, and BARBARA ABREU individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE QUAKER OATS COMPANY,<br><br>Defendant. | CASE NO. 7:24-CV-00526<br><br><br>DECLARATION OF DEREK BURROWS OF ANGEION GROUP, LLC RE: FRAUD DETECTION & PREVENTION |

I, DEREK BURROWS, hereby declare the following:

1.     I am the Chief Operating Officer with the class action notice and administration firm, Angeion Group, LLC ("Angeion"), located at 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. I am over 21 years of age and am not a party to this action. I am fully familiar with the facts contained herein based upon my personal knowledge, as well as information that has been provided to me by my colleagues in the ordinary course of business at Angeion.

2.     Angeion was appointed as Claim Administrator and directed to carry out the Notice Plan in conformance with the Class Action Settlement Agreement And Release (Dkt. No. 13-1) ("Agreement"), and to perform all other tasks required by the Agreement. *See* Preliminary Approval Order (Dkt. No. 34).

3.     The purpose of this declaration is to provide the Parties and the Court with information regarding Angeion's fraud detection and prevention efforts and information pertaining to *pro se* objector, Pat Zhen.

### COURT REQUEST FOR ADDITIONAL DETAIL

4.     This declaration includes anonymized references to information and identity-linked data concerning non-parties, including individuals who are neither objectors nor class members of record.

EXHIBIT A TO OBJECTIONS

Declaration of Derek Burrows of Angeion Group                                                        1

CM-30281-0115

Case 7:24-cv-00526-KMK    Document 751    Filed 09/04/25    Page 108 of 118

5.      Should the Court wish to review the information represented by these anonymized references, the Angeion is prepared to submit additional information regarding the facts at issue for in camera review and to assist in determining what portions, if any, may appropriately be filed publicly. Angeion also stands ready to respond to any requests for additional material about AngeionAffirm 2.0 or Angeion's fraud prevention protocols.

## COMBATTING AND RESPONDING TO AN EVOLVING FRAUD LANDSCAPE

6.      Since the summer of 2023, there has been a significant increase in the volume of attempted fraudulent claim submissions in class action settlement administration. Advancing technology has enabled increasingly sophisticated and rapidly evolving tactics employed, in both large-scale operations and smaller, targeted efforts.

7.      At Angeion, we have invested significant resources into developing and enhancing systems to detect and prevent fraud throughout the administration process. This includes the development of Angeion's proprietary fraud detection system, AngeionAffirm 2.0.

8.      Angeion has also observed an emerging trend in which individuals whose claim activity raises fraud concerns attempt to engage not only with counsel but directly with the Court, potentially lending an appearance of legitimacy to their efforts.

## ANGEIONAFFIRM 2.0

9.      In response to the evolving fraud landscape, Angeion has pioneered real-time fraud detection and prevention technology that is designed to block the submission of fraudulent claims at the time of filing – AngeionAffirm 2.0. This technology increases efficiency and reduces the costs of administration associated with traditional, back-end fraud review processes. Early-stage deployment also provides a truer view of claims volumes as the administration progresses by significantly reducing the possibility of large-scale rejections of claims resulting from delayed review. Angeion continues to invest in the research and development of these systems, responding in real time to new tactics employed by fraud actors.

10.      AngeionAffirm 2.0 is a comprehensive solution to identify fraud based on both state-of-the-art technology and analysis of over a decade of historical claims data. Key highlights of AngeionAffirm 2.0 include (1) implementing enhanced, machine-learning-based fraud prevention

Declaration of Derek Burrows of Angeion Group                                                    2

**010**

CM-30281-0115

Case 7:24-cv-00526-KMK    Document 57-1    Filed 09/04/25    Page 109 of 118

mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities before they enter the claim workflow; (2) employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions to help ensure claims are genuine; (4) analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) leveraging third party identity validation to corroborate the information provided by the claimant; (6) analyzing over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies and known bad actors, that may signify fraudulent intent or deviate from expected claimant profiles; and (7) utilizing multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

11.     Angeion's defense-in-depth approach to fraud prevention seeks to balance robust fraud prevention and ease of use for legitimate claimants. By embedding fraud detection into the claim submission workflow, while simultaneously offering accessible customer support for individuals whose claims are flagged, Angeion strives to preserve both efficiency and fairness in class action administration. This strategy has proven effective; AngeionAffirm 2.0's false positive rate is only 0.064% of all claims submitted.

### COURT RECOGNITION AND APPROVAL OF ANGEIONAFFIRM 2.0

12.     Courts have recognized the success of AngeionAffirm 2.0. By way of example, during an April 8, 2025, Fairness Hearing, the Honorable Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with this settlement"...further stating that "**absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid.**"[1] (Emphasis added).

13.     In addition, the success and effectiveness of Angeion's fraud detection efforts were recognized by United States Magistrate Judge Stewart D. Aaron. In his July 26, 2024, Report and Recommendation, Judge Aaron stated that, "**[t]he Court finds that the claims process**

---

[1] Jimenez v. Artsana USA, Inc., No. 7:21-cv-07933-VB (S.D.N.Y.)

Declaration of Derek Burrows of Angeion Group                                          3

CM-30281-0115

**011**

Case 7:24-cv-00526-KMK   Document 57-1   Filed 07/04/25   Page 10 of 18

administered by Angeion has integrity and has been carried out in a diligent and thorough manner…Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case… Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims."[2] (Emphasis added).

### DESCRIPTION OF ANGEION CLAIM SUBMISSION PROCESS AND INTERACTION WITH ANGEIONAFFIRM 2.0

14.     AngeionAffirm 2.0 identifies indicia of fraud during the online claim submission process. When such indicators are detected, the system generates a real time alert, *i.e.*, the Error 403 message. The real time alert informs the claimant that inconsistencies and/or anomalies were identified and that they can attempt to re-submit their claim (electronically or via paper claim) or contact us for further assistance.

15.     Angeion's staff is trained extensively to assist individuals who receive the real-time alert. In addition, our team is continuously monitoring instances in which the alert is triggered, both to refine detection parameters and to identify any behavioral patterns that may help reduce the likelihood of genuine claimants receiving the alert.

16.     Notably, this alert system has only flagged a fraction of one percent of total submissions from actual individuals. We believe this approach provides a more equitable and fair process for legitimate claimants, while adapting to the increasing sophistication of fraud tactics. This approach also greatly reduces the possibility that a valid claim may be mistakenly rejected during a later stage analysis, when fewer remedial options may be available resolve or cure their claim.

### OBJECTOR PAT ZHEN

17.     Angeion's records reflect that an individual using the name "Pat Zhen" or "Patrick Zhen" has submitted or attempted to submit claims in multiple other settlements that Angeion has administered. Angeion's fraud detection processes flagged the submissions. Based on those assessments, certain submissions were rejected or marked for additional review in accordance with

---

[2] *See* In re: Novartis and Par Antitrust Litigation, No. 1:18-cv-04361-AKH-SDA (S.D.N.Y.), Report and Recommendation, ECF No. 667.

Declaration of Derek Burrows of Angeion Group                                          4

**012**

CM-30281-0115

Case 7:24-cv-00526-KMK   Document 57-1   Filed 07/01/25   Page 11 of 18

the applicable settlement protocols.

18.     In this Settlement, the contact information provided by Pat Zhen with the attempted claim submission differs from the contact information provided in the objection and claim submissions in other matters. The attempted claim submission in this matter was flagged as having indicia of fraud.

19.     The mailing address provided on the attempted claim submission was located but listed as invalid due to missing secondary information, such as an apartment or suite number.

The contact information also differs from other contact information provided by Pat Zhen in various other settlements administered by Angeion. For example, an oft-used mailing address provided by Pat Zhen on attempted claim submissions is not a residential address but rather a commercial mail forwarding service.

20.     Additionally, a phone number frequently associated with Pat Zhen claim submissions, is different from the phone number listed on the objection and attempted claim submission in this Settlement. According to third-party data sources, that number used frequently in other submissions is not associated with Pat Zhen.

21.     When the attempted claim submission was flagged by AngeionAffirm 2.0, the system issued the 403 message (discussed in paragraph 13 above) notifying the user of inconsistencies and with details on how to contact the administrator to resolve issues with the attempted submission. Pat Zhen did not contact or communicate with Angeion in response to this message or the attempted claim submission, nor was a paper claim submitted in this matter.

## FURTHER INVESTIGATION OF PAT ZHEN

22.     As noted, Angeion has previously encountered instances in which individuals whose claims were flagged as potentially fraudulent submissions have engaged directly with counsel or appeal to the Court regarding fraud prevention protocols and claim review procedures. In such circumstances, Angeion conducts additional review using public records, reputable third-party data sources, and proprietary resources to validate its findings and assess any underlying anomalies.

23.     Included in the Zhen objection is the following contact information provided by the

Declaration of Derek Burrows of Angeion Group                                                                5

**013**

Case 7:24-cv-00526-KMK   Document 57-1   Filed 09/04/25   Page 12 of 18

objector:

Pat Zhen
PO Box 366047
San Juan, PR 00936
legal@patzhen.com
(787) 523-8040

24.    Angeion personnel performed a reverse lookup of the telephone number provided. The results of this search indicate that the number is registered to *Individual 1* at a different address from that provided by Zhen in this matter or any other submissions to Angeion ("*Address 1*").

25.    Angeion verified that *Individual 1* was associated with the *Address 1* through records available from the Pennsylvania Department of State Business Search portal, which list *Individual 1* as the President and Treasurer of a corporation, with its registered office at that address.

26.    According to Allegheny County (Pennsylvania) property records, the property is listed as being owned by an estate.

Obituaries for both decedents of the estate list among their survivors an individual named *Individual 2*, who was identified at the time of publication of the obituary as residing in outside of the United States of America.

27.    Publicly available materials confirm that *Individual 2* is connected to *Address 1*.

28.    Additional public court filings reflect that *Individual 2* has been named in multiple legal proceedings over the years, including some involving allegations of fraudulent or deceptive conduct. These include criminal, regulatory, and civil matters, some of which reference *Individual 2's* use of the mail or legal threats in financial disputes. Angeion makes no legal conclusions regarding the disposition or accuracy of those allegations but includes this information solely to contextualize public records involving contact details linked to *Individual 2*.

29.    Angeion also conducted a review of court filings for entries associated with Pat Zhen. Notably in *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143 (N.D. Cal.) ("Optical Disk Drives"), Zhen filed a motion that included a telephone number that, similar to the telephone number provided by Zhen on the objection in this matter is not registered to Zhen. A reverse lookup reveals that the number is registered to *Individual 2*.

30.    Angeion also conducted a deeper review of the contact information provided by Pat Zhen

Declaration of Derek Burrows of Angeion Group                                                    6

**014**

CM-30281-0115

Case 7:24-cv-00526-KMK    Document 57-1    Filed 07/02/25    Page 113 of 118

with the attempted claim submission in this matter. In this instance, a search of publicly available records shows that the telephone number provided by Zhen is registered to Pat Zhen at another address located within the continental United States of America ("Address 2").

31.    Public property records show that Pat Zhen was granted ownership of *Address 2* by warranty deed, in which he listed his contact address as *Address 3* in Puerto Rico. According to publicly available records maintained by the Department of State of Puerto Rico, *Address 3* is associated with a corporation, of which *Individual 1* is identified as the president and treasurer.

32.    Further, a search using the Registration Data Access Protocol[3] shows that the corporation is the registered owner of a particular internet domain. The record lists as the mailing address – *Address 3*. *Individual 1's* telephone number, the number provided by Zhen in the instant objection, is also connected to the corporation's internet domain.

## CONCLUSION

33.    The objection and attempted claim submission by Pat Zhen exhibit several indicia consistent with patterns Angeion has previously observed in connection with submissions later determined to be invalid under applicable review procedures.

34.    As detailed above, the telephone number provided in Pat Zhen's objection appears to be registered to *Individual 1* at *Address 1*, a location confirmed by public records to be associated with *Individual 1*. *Address 1* is owned by the estate of *Individual 2's* parents. Public records indicate that a telephone number used in an objection submitted under the name Pat Zhen in another matter is registered to *Individual 2*. The telephone number provided with Zhen's attempted claim submission can be connected to *Individual 1* through association with *Address 3*.

35.    *Individual 1* also has been associated with Pat Zhen in a separate class action where Pat Zhen's objection to the settlement was overruled.[4] Angeion understands that the objection in that matter was overruled but does not draw any conclusions as to *Individual 1's* role or involvement beyond what is reflected in the record.

36.    Finally, Angeion's records show that other submissions under the name Pat Zhen have used

---

[3] https://lookup.icann.org/en is a domain lookup tool that shows the registration of a domain name.
[4] *See* In re: Telescopes Antitrust Litigation, No. 5:20-cv-03639-EJD (N.D. Cal.), ECF Nos. 419 and 429.

Declaration of Derek Burrows of Angeion Group    7

**015**

Case 7:24-cv-00552-KMK    Document 57-1    Filed 09/04/25    Page 114 of 118

differing and/or invalid mailing addresses and contact information, including some contact information that appears to be associated with other individuals. As a result, certain submissions were rejected or marked for additional review in accordance with the applicable settlement protocols.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 21, 2025

DEREK BURROWS

Declaration of Derek Burrows of Angeion Group

8

**016**

CM-30281-0115

1000388

# E-Sign Disclosure

This E-Sign Disclosure and Consent ("Disclosure"), applies to all Communications for any Account offered through card-activate.com that is not otherwise governed by the terms and conditions of an electronic disclosure and consent.

The words **"we," "us,"** and **"our"** refer to Pathward®, National Association, Member FDIC, with whom you have your Account, and the words **"you"** and **"your"** mean you, the individual(s) or entity identified on the Account(s). As used in this Disclosure, **"Account"** means the account you have with us. **"Communication"** means any customer agreements or amendments thereto, disclosures, notices, responses to claims, transaction history, privacy policies and all other information related to the product or service, including but not limited to information that we are required by law to provide to you in writing.

1. **Scope of Communications to Be Provided in Electronic Form.** When you use a product or service to which this Disclosure applies, you agree that we may provide you with any Communications in electronic format, and that we may discontinue sending paper Communications to you, unless and until you withdraw your consent as described below. Your consent to receive electronic communications and transactions includes, but is not limited to:
   • All legal and regulatory disclosures and communications associated with the product or service available through card-activate.com for your Account
   • Notices or disclosures about a change in the terms of your Account or associated payment feature and responses to claims
   • Privacy policies and notices

2. **Method of Providing Communications to You in Electronic Form.** All Communications that we provide to you in electronic form will be provided either (1) by access to a web site that we will designate in an e-mail notice we send to you at the time the information is available, or (2) to the extent permissible by law, by access to a web site that we generally designate in advance for such purpose.

3. **How to Withdraw Consent.** You may withdraw your consent to receive Communications electronically by contacting Customer Service at 833-249-7650 or writing to us at P.O. Box 9018; Coppell, TX 75019. At our option, we may treat your provision of an invalid e-mail address, or the subsequent malfunction of a previously valid e-mail address, as a withdrawal of your consent to receive electronic Communications; however your access and use of card-activate.com may be terminated. Any withdrawal of your consent to receive electronic Communications will be effective only after we have a reasonable period of time to process your withdrawal. If you withdraw your consent and we have your name and address, we will mail paper versions of all Communications to you at no additional cost. If you have withdrawn your consent and wish to receive electronic Communications again in the future, you may do so by contacting Customer Service at 833-249-7650 or writing to us at P.O. Box 9018; Coppell, TX 75019.

4. **How to Update Your Records.** It is your responsibility to provide us with true, accurate and complete e-mail address, contact, and other information related to this Disclosure and your Account(s), and to maintain and update promptly any changes in this information. You can update information (such as your e-mail address) through card-activate.com or by contacting us at 833-249-7650.

5. **Hardware and Software Requirements.** In order to access, view, and retain electronic Communications that we make available to you, you must have:
   • an Internet browser that supports 128 bit encryption;
   • sufficient electronic storage capacity on your computer's hard drive or other data storage unit;
   • an e-mail account with an Internet service provider and e-mail software in order to participate in our electronic Communications programs;
   • a personal computer (for PC's: Pentium 120 MHz or higher; for Macintosh, Power Mac 9500, Power PC 604 processor: 120-MHz Base or higher), operating system and telecommunications connections to the Internet capable of receiving, accessing, displaying, and either printing or storing Communications received from us in electronic form via a plain text-formatted e-mail or by access to our web site using one of the browsers specified above.

6. **Requesting Paper Copies.** We will not send you a paper copy of any communication, unless you request it or we otherwise deem it appropriate to do so. You can obtain a paper copy of an electronic Communication by printing it yourself or by requesting that we mail you a paper copy, provided that such request is made within a reasonable time after we first provided the electronic Communication to you. To request a paper copy, contact Customer Service at 833-249-7650 or write to us at P.O. Box 9018; Coppell, TX 75019. We may charge you a reasonable service charge for the delivery of paper copies (see disclosed Fee Schedule) of any Communication provided to you electronically pursuant to this authorization. We reserve the right, but assume no obligation, to provide a paper (instead of electronic) copy of any Communication that you have authorized us to provide electronically.

7. **Communications in Writing.** All Communications in either electronic or paper format from us to you will be considered "in writing." You should print or download for your records a copy of this Disclosure and any other Communication that is important to you.

EXHIBIT B TO OBJECTIONS

**017**

8. **Federal Law.** You acknowledge and agree that your consent to electronic Communications is being provided in connection with a transaction affecting interstate commerce that is subject to the federal Electronic Signatures in Global and National Commerce Act, and that you and we both intend that the Act apply to the fullest extent possible to validate our ability to conduct business with you by electronic means.

9. **Termination/Changes.** We reserve the right, in our sole discretion, to discontinue the provision of your electronic Communications, or to terminate or change the terms and conditions on which we provide electronic Communications. We will provide you with notice of any such termination or change as required by law.

10. **Consent.** By purchasing or using a card or Account from this site, you hereby give your affirmative consent to provide electronic Communications to you as described herein. You further agree that your computer satisfies the hardware and software requirements specified above and that you have provided us with a current e-mail address at which we may send electronic Communications to you.

**List of all fees ("Long Form")** for Disbursements Prepaid Mastercard Virtual Card

| All fees | Amount | Details |
|---|---|---|
| **Get Started** | | |
| Account Purchase | $0 | |
| **Spend money** | | |
| POS Transactions With PIN | $0 | Per purchase |
| POS Transactions Without PIN | $0 | Per purchase. POS transactions without PIN include both signature-based transactions and all PIN-less transactions without a signature |
| **Get cash** | | |
| ATM withdrawal fee | N/A | Your account cannot be used at ATMs |
| **Information** | | |
| Customer service (automated or live agent) | $0 | |
| ATM balance inquiry – US/Domestic | N/A | Your account cannot be used at ATMs |
| **Other** | | |
| Inactivity Fee | $5.95 | You will be charged $5.95 each month after you have not completed a transaction using your card for 12 months. |
| Convert to Plastic Fee | $3.00 | Applies if you request that we convert your Virtual Card to a plastic card. This feature is not available for all Accounts |
| Card Replacement Fee | $6.95 | Applies only if you have converted your Virtual Card to a plastic card and later ask for a replacement card. |
| Expedited Delivery Fee | $20.00 | Applies only if you have converted your Virtual Card to a plastic card |

If you register you Card your funds are eligible for deposit insurance up to the applicable limits by the Federal Deposit Insurance Corporation ("FDIC"). Your funds will be held at Pathward,

N.A. or placed by Pathward as custodian at one or more participating FDIC-insured banks (each a "Program Bank"). In the event the FDIC were to be appointed as a receiver for Pathward or a Program Bank, your funds, aggregated with any other funds you have on deposit at such institution, would be eligible to be insured up to $250,000 for each legal category of account ownership, subject to compliance with FDIC deposit insurance requirements. You are responsible for monitoring the total amount of all direct or indirect deposits held by you or for you with Pathward and the Program Banks for purposes of monitoring the amount of your funds eligible for coverage by FDIC insurance. To assist with calculating your FDIC deposit insurance coverage, the FDIC has an Electronic Deposit Insurance Estimator available at https://edie.fdic.gov. For more information, see also https://www.fdic.gov/deposit/deposits/prepaid.html.

No overdraft/credit feature.

Contact Customer Service by calling 833-249-7650, by mail at P.O. Box 9018; Coppell, TX 75019, or visit card-activate.com.

For general information about prepaid accounts, visit cfpb.gov/prepaid. If you have a complaint about a prepaid account, call the Consumer Financial Protection Bureau at 1-855-411-2372 or visit cfpb.gov/complaint.

CM-30281-0115

**018**

## Disbursements Prepaid Mastercard Virtual Card Agreement

**CUSTOMER SERVICE CONTACT INFORMATION:**
**Address:** P.O. Box 9018; Coppell, TX 75019
**Website:** card-activate.com
**Phone Number:** 833-249-7650 (toll free in USA); or 339-234-6415 (outside USA)

**IMPORTANT NOTICES:**

(1) PLEASE READ CAREFULLY. THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION ("ARBITRATION CLAUSE" SECTION) REQUIRING ALL CLAIMS TO BE RESOLVED BY WAY OF BINDING ARBITRATION.

(2) ALWAYS KNOW THE EXACT DOLLAR AMOUNT AVAILABLE ON THE VIRTUAL CARD. MERCHANTS MAY NOT HAVE ACCESS TO DETERMINE THE ACCOUNT BALANCE.

(3) BY ACCEPTING OR USING THIS VIRTUAL CARD, YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS CONTAINED IN THIS AGREEMENT.

(4) THIS CARD IS BEING PROVIDED AS THE SOLE METHOD TO RECEIVE YOUR FUNDS DISBURSEMENT. CONSULT THE CORPORATE SPONSOR IF YOU HAVE ANY QUESTIONS REGARDING DISBURSEMENT, AS YOU MAY NOT HAVE RECOURSE IF YOU DISPOSE OF OR CHOOSE NOT TO USE THIS CARD.

(5) BY USING THIS VIRTUAL CARD, YOU ARE ALSO AGREEING TO PATHWARD®, NATIONAL ASSOCIATION'S PRIVACY POLICY. PROGRAM MANAGERS MAY HAVE DIFFERENT PRIVACY PRACTICES, SO IT IS IMPORTANT YOU REVIEW THEIR POLICY AS WELL, IF APPLICABLE.

This Cardholder Agreement **("Agreement")** sets forth the terms and conditions under which the Disbursements Prepaid Mastercard Virtual Card **("Virtual Card")** has been issued to you by Pathward, National Association. **"You"** and **"your"** means the person or persons who have received and are authorized to use the Virtual Card as provided for in this Agreement. **"We," "us,"** and **"our"** mean collectively, Pathward, National Association, a federally chartered bank, member FDIC, and its divisions or assignees, and also includes, unless otherwise indicated, our Program Manager. **"Program Manager"** refers to Blackhawk Network, Inc., who performs certain services related to your Virtual Card on Pathward, National Association's behalf. **"Corporate Sponsor"** means the company who has directly or indirectly established this Virtual Card for the purpose of disbursing funds to you. The Virtual Card is nontransferable, and it may be canceled at any time without prior notice subject to applicable law. Please read this Agreement carefully and keep it for future reference. Your full fee schedule, otherwise known as the **"Long Form,"** is attached to and considered part of this Agreement.

### 1. ABOUT YOUR VIRTUAL CARD

Your Virtual Card is a virtual prepaid card, which allows you to access funds loaded to your Virtual Card by the Corporate Sponsor. Your Account consists of an Account number, a "Valid Thru" date, and a security code, just like those on a plastic card. The Virtual Card is a prepaid Card loaded by the Corporate Sponsor, redeemable to buy goods and services at participating merchants, in the United States which can be found at card-activate.com or call the Customer Service Number. You should treat your Virtual Card with the same care as you would treat cash. Your Virtual Card account is intended for personal, family, or household use and not intended for business purposes. Your Virtual Card account does not constitute a checking or savings account and is not connected in any way to any other account you may have. Your Virtual Card is not a gift card, nor is it intended to be used for gifting purposes. Your Virtual Card is not a credit card. You will not receive any interest on the funds in your Virtual Card account. We may close your Virtual Card or refuse to process any transaction that we believe may violate the terms of this Agreement or represents illegal or fraudulent activity. You are responsible for notifying us immediately upon any change to your address, phone number, or email address. If your address changes to a non-US address, we may cancel your Virtual Card and return funds to you in accordance with this Agreement.

Pathward, N.A. will act as custodian of your funds upon its receipt of your funds. Once your Card is activated, you will be able to provide Pathward, as custodian, with instructions about the funds accessible through the Card. Activation of the Card authorizes us to hold your funds at Pathward or as custodian to place your funds at one or more participating FDIC-insured banks (each a **"Program Bank"**). Visit www.pathwardprogrambanks.com to find the most up-to-date list of Program Banks. If you do not agree to your funds being held by us at Pathward or placed by Pathward as custodian at other Program Banks, please immediately transfer or spend *all* the funds on your Card. For more information on FDIC deposit insurance limits and related conditions, please refer to the Long Form section at the beginning of this Agreement.

### 2. ACTIVATING YOUR VIRTUAL CARD

You must activate your Virtual Card prior to use by visiting the Website at card-activate.com.

CM-30281-0115

**019**

### 3. BUSINESS DAYS

For purposes of this Agreement, our business days are Monday through Friday, excluding Federal holidays. Customer Service hours may differ.

### 4. USING YOUR VIRTUAL CARD

#### a. Accessing Funds

You have arranged to have funds transferred directly to your Virtual Card from the Corporate Sponsor through Automated Clearing House ("ACH") loads. This is the only load method for your Virtual Card. Each time you use your Virtual Card, you authorize us to reduce the value available on your Virtual Card by the amount of the transaction and applicable fees. You may use your Virtual Card to purchase or lease goods or services wherever your Account is honored as long as you do not exceed the value available on your Virtual Card. Card cannot be used at merchants outside of the United States, including internet and mail/telephone order merchants outside of the United States. Generally, your Virtual Card will allow you to purchase goods or services at online, telephone, or mail order merchants wherever Mastercard debit cards are honored in the United States. You are the only authorized user of the Virtual Card. If you permit someone else to use the Virtual Card, we will treat this as if you have authorized such use, and you will be responsible for any transactions made subject to such use.

**You CANNOT use your Virtual Card to:** (i) exchange your Virtual Card for its cash value; (ii) perform any illegal transactions; (iii) use the bank routing number and account number to make a debit transaction with any item processed as a check (these debits will be declined and your payment will not be processed); (iv) make business-related transactions; or (v) used to make foreign transactions. In addition, YOU ARE NOT PERMITTED TO EXCEED THE AVAILABLE AMOUNT IN YOUR VIRTUAL CARD ACCOUNT THROUGH AN INDIVIDUAL TRANSACTION OR A SERIES OF TRANSACTIONS. Nevertheless, if a transaction exceeds the balance of the funds available in your Virtual Card account, you will remain fully liable to us for the amount of the transaction and agree to pay us promptly for the negative balance. If your Virtual Card has a negative balance, any deposits will be used to offset the negative balance. We may also use any deposit or balance on another card or account you have with us to offset a negative balance on this Virtual Card.

**Split Transactions:** If you do not have enough funds available in your Virtual Card account, you may be able to instruct the merchant to charge a part of the purchase to the Virtual Card and pay the remaining amount with another form of payment. These are called "split transactions." Some merchants do not allow accountholders to split transactions or will only allow you to do a split transaction if you pay the remaining amount in cash. Please note that many online merchants do not support split transactions.

#### b. Limits

| Load, Withdrawal and Spend Limits* | |
|---|---|
| **Load Limitations** | **Limit** |
| Maximum Virtual Card Balance at any time | $1,000 |
| Total number of times the Corporate Sponsor can reload your Virtual Card | If the word "NON-RELOADALBE" is printed on the e-mail you received with your Virtual Card information, the Corporate Sponsor cannot reload your Virtual Card. Otherwise, there are no limits to the number of times the Corporate Sponsor can reload your Virtual Card, but your balance cannot exceed the Maximum Account Balance |
| Maximum amount of Corporate Sponsor loads | $1,000 |
| **Spend Limitations** | **Limit** |
| Maximum amount in Point of Sale Signature or Point of Sale PIN Transactions | There are no specific dollar limitations for POS transactions; however, we may decline any transaction if we reasonably suspect illegal or unauthorized use of your Virtual Card. |
| *Third parties may impose additional limitations. | |

### 5. CONFIDENTIALITY

We may disclose information to third parties about your Virtual Card account or the transactions you make:
(1) Where it is necessary for completing transactions;
(2) In order to verify the existence and condition of your Virtual Card account for a third party, such as merchant;
(3) In order to comply with government agency or court orders, or other legal reporting requirements;
(4) If you give us your written permission;
(5) To our employees, auditors, affiliates, service providers, or attorneys as needed; or
(6) As otherwise necessary to fulfill our obligations under this Agreement.

CM-30281-0115

**020**

## 6. DOCUMENTATION

### a. Receipts
You may be able to get a receipt at the time you make any transfer to or from your account using an ATM or point-of-sale terminals. You may need a receipt in order to verify a transaction with us or the merchant.

### b. Account History and Balance
You may obtain information about your Virtual Card balance by calling Customer Service. This information, along with a 12–month history of account transactions, is also available online at the Website mentioned above.

You also have the right to obtain at least 24 months of written history of account transactions by calling or by writing Customer Service. You will not be charged a fee for this information unless you request it more than once per month.

## 7. TRANSACTIONS AND PREAUTHORIZED TRANSFERS

### a. Right to stop payment and procedure for doing so
You are not permitted to use your Virtual Card to make recurring payments (such as such as recurring bill payments, subscriptions, memberships, rentals, etc.), and we will decline these payments if you attempt to make them.

### b. Our liability for failure to complete transactions
If we do not complete a transaction to or from your Card account on time or in the correct amount according to our Agreement with you, we will be liable for your losses and damages proximately caused by us.  However, there are some exceptions.  We will not be liable, for instance:
(1) If, through no fault of ours, you do not have enough funds available in your Card account to complete the transaction;
(2) If a merchant refuses to accept your Card;
(3) If an ATM where you are making a cash withdrawal does not have enough cash;
(4) If an electronic terminal where you are making a transaction does not operate properly and you knew about the problem when you initiated the transaction;
(5) If access to your Card has been blocked after you reported your Card or PIN lost or stolen;
(6) If there is a hold or your funds are subject to legal process or other encumbrance restricting their use;
(7) If we have reason to believe the requested transaction is unauthorized;
(8) If circumstances beyond our control (such as fire, flood or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that we have taken; or
(9) For any other exception stated in our Agreement with you.

### c. Authorization Holds
With certain types of purchases (such as those made at restaurants, hotels, or similar purchases), your Virtual Card may be "preauthorized" for an amount greater than the transaction amount to cover gratuity or incidental expenses. Any preauthorization amount will place a "hold" on your available funds until the merchant sends us the final payment amount of your purchase. Once the final payment amount is received, the preauthorization amount on hold will be removed. During this time, you will not have access to preauthorized amounts. If you authorize a transaction and then fail to make a purchase of that item as planned, the approval may result in a hold for that amount of funds.

## 8. ADDITIONAL TERMS OF THE AGREEMENT

### a. Personal Identification Number ("PIN")
If you wish to make PIN debit purchases, you may obtain a PIN by visiting the Website or calling the Customer Service Number. **Virtual Cards are not accepted at ATMs and cannot be used to obtain cash in any purchase transaction.** You should not write or keep your PIN with your Virtual Card. Never share your PIN with anyone and do not enter your PIN into any terminal that appears to be modified or suspicious. If you believe that there has been unauthorized access to your PIN, you should contact Customer Service immediately.

### b. Returns and Refunds
If you are entitled to a refund for any reason for goods or services obtained with your Virtual Card the return and refund will be handled by the merchant. If the merchant credits your Virtual Card, the credit may not be immediately available. While merchant refunds post as soon as they are received, please note that we have no control over when a merchant sends a credit transaction and the refund may not be available for a number of days after the date the refund transaction occurs. We are not responsible for the quality, safety, legality, or any other aspect of any goods or services you purchase with your Virtual Card.

### c. Virtual Card Replacement and Expiration
If you need to replace your Virtual Card for any reason, please contact Customer Service to request a new Virtual Card, but note that we will charge a Card Replacement Fee. See Long Form for applicable fees. Please note that your Virtual Card has a "Valid Thru" date. You may not use the Virtual Card after the "Valid Thru" date. However, even if the "Valid Thru" date has passed, the available funds on your Virtual Card do not expire. You will not be charged a fee for replacement cards that we send due to expiration of the Card.

### d. Converting Your Account to a Plastic Card
You may be able to convert your Virtual Card into a plastic card. This feature is not available for all accounts. To find out

CM-30281-0115

**021**

if a plastic card is available and to request a plastic card, visit the website or call Customer Service. A fee applies for converting your Virtual Card into a plastic card as shown in the Long Form.

### e. Authorized Users

If you allow another person to use the Virtual Card, you will be responsible under this Agreement for all transactions made by that person, regardless of whether you intended to be responsible for all of them, as well as all associated fees and charges, even if any of those transactions, fees or charges caused your balance to go negative.

### f. Communications

You agree that we may monitor and record any calls or other communications between us and you. You also agree that we or our service providers may contact you with any contact information you provide to us, including cellular and wireless phone numbers, landline numbers, and email addresses. You also agree that we or our service providers may contact you by using an automated dialing or email system, by text, or artificial or recorded voice. You agree to pay any service charges assessed by your plan provider for communications we send or make to you or that you send or make to us.

## 9. UNAUTHORIZED TRANSACTIONS

### a. Your Liability for Unauthorized Transactions

If you believe your plastic card (if you requested a plastic card) has been lost or stolen or, your Virtual Card has been compromised, or an unauthorized transaction has been made using the information from your plastic card or Virtual Card without your permission, contact Customer Service IMMEDIATELY. We will ask for the plastic card or Virtual Card number and other identifying details. **We may not be able to assist you if you do not have the Virtual Card or plastic card number, as applicable.** We may not be able to assist you if you do not contact us within 60 days of the unauthorized transaction. If a plastic card was requested and subsequently lost, we will charge a fee as noted in the fee table above (subject to applicable law) for any lost/stolen Card, which will be deducted from the balance on the plastic card, or Virtual Card, as applicable. A reissued plastic card may take up to 30 days to process.

### b. Your registered Virtual Card may have some additional protections against unauthorized use:

Under Mastercard's Zero Liability Policy, if your card is registered at the time of the unauthorized transactions, your liability for unauthorized transactions on your Mastercard-branded Virtual Card is $0.00 if you notify us promptly upon becoming aware of the loss or theft, and you exercised reasonable care in safeguarding your Account from loss, theft, or unauthorized use. This policy limiting your liability does not apply to debit transactions not processed by Mastercard, certain commercial transactions, or unregistered cards.

## 10. LEGAL NOTICES

### a. English Language Controls

Translations of this Agreement that may have been provided are for your convenience only and may not accurately reflect the original English meaning. The meanings of terms, conditions, and representations herein are subject to definitions and interpretations in the English language.

### b. Account Closure

You may close your Virtual Card at any time by contacting Customer Service. Your request for Virtual Card closure will not affect any of our rights or your obligations arising under this Agreement prior to the request. Should your Virtual Card account be closed, we will issue you a credit for any unpaid balances, subject to fees as disclosed in the Long Form. We reserve the right to close your Virtual Card account should you complete or attempt to complete any of the prohibited actions in this Agreement.

### c. Assignability

You may not assign or transfer your Virtual Card or your obligations under this Agreement. We may, however, transfer or assign our rights under this Agreement, including any balances in your Virtual Card account. If we assign our rights, you will get a notification from us.

### d. Legal Process

We will comply with any state or federal legal process, including, without limitation, any writ of attachment, adverse claim, execution, garnishment, tax levy, restraining order, subpoena or warrant we believe to be legally valid relating to you or your Card. You agree that we will honor valid legal process that is served personally, by mail, or by facsimile transmission upon us. You agree that we will have no liability to you for honoring any such legal process. You also agree that you be obligated to assert any claims of exemption you may have under state or federal law and that we will have no obligation to assert the same on your behalf except to the extent required under federal law. We will enforce our right of setoff and security interest against any of your Card accounts in order to reimburse us for any sums owed to us. We may refuse to permit withdrawals or transfers from your account until such legal process is satisfied or dismissed, even if such action results in insufficient funds to satisfy an obligation you may have incurred. You agree to release and indemnify, defend and hold us harmless from all actions, claims, liabilities, losses, costs and damages including, without limitation, attorneys' fees, associated with our compliance with any legal process. When we receive an order instructing us to restrict access to funds in a Card account, we may remove the funds from the account and maintain

them separately.

### e. Other Terms

You will be notified of any change to this Agreement in the manner required by applicable law prior to the effective date of the change. However, if the change is made for security purposes, we can implement such change without prior notice. We do not waive our rights by delaying or failing to exercise them at any time (for example, assessing a fee less than described, or not all, for any reason does not waive our right to begin charging the fee as set forth in this Agreement without notice). If any provision of this Agreement is determined to be invalid or unenforceable under any rule, law, or regulation of any governmental agency, local, state, or federal, the validity or enforceability of any other provision of this Agreement will not be affected. This Agreement will be governed by the law of the state of South Dakota (without regard to the laws regarding conflicts of laws) except to the extent governed by federal law. With the exception of disputes subject to the Arbitration Clause below, any disputes relating to this Agreement shall be subject to the exclusive jurisdiction and venue of the federal and state courts located in the state of South Dakota. You acknowledge and agree that we shall have a right of setoff to apply the funds in your Card Account to any debt that you owe to us. You further grant us a security interest in all of your funds in our possession as collateral for any sums that you owe us under this Agreement. Should your Virtual Card have a remaining balance after a certain period of inactivity, we may be required to remit the remaining funds to the appropriate state agency.

### 11. PRIVACY

We may provide information to our employees, auditors, affiliates, service providers, or attorneys as needed, or to any third party if you give us your written permission. We may also collect: (1) Information about purchases made with the Card, such as date of purchase, amount and place of purchase; (2) Information you provide to us when you register a Card, or for replacement Cards, or when you contact us with customer service issues, such as name, address, phone number.

We may also disclose information about the Card or the transactions you make to third parties in order to: (1) complete transactions; (2) verify the existence and condition of the Card for a third party, such as merchant; (3) provide customer services; (4) process claims for lost or stolen Cards; (5) help protect against fraud and to conduct research and analysis; or (6) comply with government agency or court orders, or other legal reporting requirements.

### 12. JURY TRIAL WAIVER

YOU AND WE ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT BUT MAY BE WAIVED IN CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, YOU AND WE KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS AGREEMENT. THIS JURY TRIAL WAIVER WILL NOT AFFECT OR BE INTERPRETED AS MODIFYING IN ANY FASHION THE ARBITRATION CLAUSE SET FORTH IN THE FOLLOWING SECTION, WHICH CONTAINS ITS OWN JURY TRIAL WAIVER.

### 13. ARBITRATION CLAUSE

We have put this Arbitration Clause in question and answer form to make it easier to follow. However, this Arbitration Clause is part of this Agreement and is legally binding. For purposes of this section, our **"Notice Address"** is: Pathward, N.A., Attn: Customer Service, 5501 S Broadband Ln, Sioux Falls, SD 57108.

CM-30281-0115

**023**

| Background and Scope. | | |
|---|---|---|
| **Question** | **Short Answer** | **Further Detail** |
| What is arbitration? | An alternative to court | In arbitration, a neutral third-party arbitrator ("Arbitrator") solves Disputes in an informal hearing on an individual basis. |
| Is it different from court and jury trials? | Yes | The hearing is private. There is no jury. It is usually less formal, faster and less expensive than a lawsuit. Pre-hearing fact finding is limited. Appeals are limited. Courts rarely overturn arbitration awards. |
| Can you opt-out of this Arbitration Clause? | Yes, within 60 days | If you do not want this Arbitration Clause to apply, you must send us a signed notice within 60 calendar days after you establish the Virtual Card. You must send the notice in writing (and not electronically) to our Notice Address. Provide your name, address and Virtual Card number. State that you "opt out" of the Arbitration Clause. Opting out will not affect the other provisions of this Agreement. |
| What is this Arbitration Clause about? | The parties' agreement to arbitrate Disputes | Unless prohibited by applicable law and unless you opt out, you and we agree that you or we may elect to arbitrate individually or require individual arbitration of any "Dispute" as defined below. |
| Who does the Arbitration Clause cover? | You, us and certain "Related Parties" | This Arbitration Clause governs you and us. It also covers certain "Related Parties": (1) our parents, subsidiaries, affiliates, and their successors and permitted assigns; (2) our employees, directors, officers, shareholders, members and representatives; and (3) any person or company that is involved in a Dispute you pursue at the same time you pursue a related Dispute with us. |
| What Disputes does the Arbitration Clause cover? | All Disputes (except certain Disputes about this Arbitration Clause) | This Arbitration Clause governs all "Disputes" that would usually be decided in court and are between us (or any Related Party) and you. In this Arbitration Clause, the word "Disputes" has the broadest reasonable meaning. It includes all claims even indirectly related to your Virtual Card or this Agreement or the relationships between you and us and/or "Related Parties" resulting therefrom, including but not limited to, initial claims, counterclaims, crossclaims, third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. It includes claims that seek relief of any type, including damages, and/or injunctive, declaratory, or other equitable relief. It includes claims related to the validity in general of this Agreement. However, **it does not include disputes about the validity, coverage or scope of this Arbitration Clause or any part of this Arbitration Clause. (This includes a Dispute about the rule against class arbitration.) All such disputes are for a court and not an Arbitrator to decide.** |
| Who handles the arbitration? | Usually AAA or JAMS | Arbitrations are conducted under this Arbitration Clause and the rules of the arbitration administrator in effect when the arbitration is started. The arbitration administrator will be either:<br>• The American Arbitration Association ("AAA"), 120 Broadway, 21th Floor, New York, NY 10271, www.adr.org.<br>• JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com<br>• Any other company picked by agreement of the parties.<br>If all the above options are unavailable, a court will pick the administrator. No arbitration may be administered without our consent by any administrator that would permit a class arbitration under this Arbitration Clause. The Arbitrator will be selected under the administrator's rules. However, the Arbitrator must be a lawyer with at least ten years of experience or a retired judge unless you and we otherwise agree. |
| Can Disputes be litigated? | Sometimes | Either party may bring a lawsuit if the other party does not demand arbitration. Also, any individual claim(s) by you or us in which the amount in controversy (exclusive of attorneys' fees and costs if applicable law so provides) is properly within the jurisdiction of a small-claims court may be removed to small-claims court at the election of the opposing party by providing notice within 21 days of receiving the arbitration demand from the other party; however, if that action is transferred, removed or appealed to a different court, a party may elect arbitration.<br>Even if all parties have opted to litigate a Dispute in court, you or we may elect arbitration with respect to any Dispute made by a new party or any Dispute later asserted by a party in that lawsuit or in any related or unrelated lawsuit (including a Dispute initially asserted on an individual basis but modified to be asserted on a class, representative, or multi-party basis). Nothing in that litigation shall constitute a waiver of any rights under this Arbitration Clause. |
| Are you and we giving up any rights? | Yes | For Disputes that are arbitrated under this Arbitration Clause, you and we give up our rights to:<br>1. Have juries decide Disputes.<br>2. Have courts, other than small-claims courts, decide Disputes.<br>3. Serve as a private attorney general or in a representative capacity in court or in arbitration.<br>4. Join a Dispute that you, we, or Related Parties have with a dispute that others have.<br>5. Bring or be a class member in a class action in court or in a class arbitration.<br>The Arbitrator shall have no authority to conduct any arbitration inconsistent with this section or to issue any relief that applies to any person or entity except you or us or Related Parties individually. |
| Can you or another consumer start a class arbitration? | No | **The Arbitrator is not allowed to handle any Dispute on a class or representative basis. All Disputes subject to this Arbitration Clause must be decided in an individual arbitration or an individual small-claims action. You may not pursue any type of collective action or class action against us in arbitration.** |
| What law applies? | The Federal Arbitration Act ("FAA") | This Agreement and the Virtual Card involve interstate commerce. Thus, the FAA governs this Arbitration Clause. The Arbitrator must apply substantive law consistent with the FAA. The Arbitrator must honor statutes of limitation and privilege rights. The Arbitrator is authorized to award all remedies permitted by applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. In the event of any conflict or inconsistency between this Arbitration Clause and the administrator's rules or the Agreement, this Arbitration Clause will govern. |
| Will anything I do make this Arbitration Clause ineffective? | No | This Arbitration Clause stays in force even if: (1) you or we end this Agreement; or (2) we transfer or assign our rights under this Agreement , or (3) a party files for bankruptcy (if bankruptcy law permits). |

**024**

| Process. | | |
|---|---|---|
| What must a party do before starting a lawsuit or arbitration? | Send a written Dispute notice and work to resolve the Dispute | Before starting a lawsuit or arbitration, the complaining party must give the other party written notice of the Dispute. The notice must explain in reasonable detail the nature of the Dispute and any supporting facts. If you are the complaining party, you must send the notice in writing (and not electronically) to our Notice Address. You or an attorney you have personally hired must sign the notice and must provide the Virtual Card number and a phone number where you (or your attorney) can be reached. A letter from us to you will serve as our written notice of a Dispute. Once a Dispute notice is sent, the complaining party must give the other party a reasonable opportunity over the next 30 days to resolve the Dispute on an individual basis. |
| How does an arbitration start? | Mailing a notice | If the parties do not reach an agreement to resolve the Dispute within 30 days after notice of the Dispute is received, the complaining party may commence a lawsuit or an arbitration, subject to the terms of this Arbitration Clause. To start an arbitration, the complaining party picks the administrator and follows the administrator's rules. If one party begins or threatens a lawsuit, the other party can demand arbitration. This demand can be made in court papers, such as a motion to compel arbitration. Once an arbitration demand is made, no lawsuit can be brought and any existing lawsuit must stop unless a court rules otherwise. |
| Will any hearing be held nearby? | Yes | The Arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve a Dispute based on written filings and/or a conference call. However, any in-person arbitration hearing must be held at a place reasonably convenient to you. |
| What about appeals? | Very limited | Appeal rights under the FAA are very limited. The Arbitrator's award will be final and binding. Any appropriate court may enter judgment upon the Arbitrator's award. |

| Arbitration Fees and Awards. | | |
|---|---|---|
| Who bears arbitration fees? | Usually, we do. | We will pay all filing, administrative, hearing and Arbitrator fees if you act in good faith, cannot get a waiver of such fees and ask us to pay. We will always pay amounts required under applicable law or the administrator's rules. |
| When will we cover your legal fees and costs? | If you win | If you win an arbitration, we will pay the reasonable fees and costs for your attorneys, experts and witnesses. We will also pay these amounts if required under applicable law or the administrator's rules or if payment is required to enforce this Arbitration Clause. The Arbitrator shall not limit his or her award of these amounts because your Dispute is for a small amount. |
| Will you ever owe us for arbitration or attorneys' fees? | Only for bad faith | The Arbitrator can require you to pay our fees if (and only if): (1) the Arbitrator finds that you have acted in bad faith (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)); and (2) this power does not make this Arbitration Clause invalid. |
| Can an award be explained? | Yes | A party may request details from the Arbitrator, within 14 days of the ruling. The Arbitrator will determine whether to grant such request. |
| What happens if a part of this Arbitration Clause cannot be enforced? | It depends | If any portion of this Arbitration Clause cannot be enforced, the rest of the Arbitration Clause will continue to apply, except in two instances. First, if a court rules that the Arbitrator can decide a Dispute on a class basis and that ruling is not reversed on appeal, then this entire Arbitration Clause (except for this sentence) will be void. Second, if a claim is brought seeking public injunctive relief and a court determines that the restrictions in this Arbitration Clause prohibiting the Arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such claim (and that determination becomes final after all appeals have been exhausted), then the claim for public injunctive relief will be determined in court and any individual claims seeking monetary relief will be arbitrated. In such a case, the parties will request that the court stay the claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court. In no event will a claim for public injunctive relief be arbitrated. |

Prepaid Virtual Card is Issued by Pathward, National Association, Member FDIC, pursuant to license by Mastercard International Incorporated.
© 2022 - 2023 Pathward, National Association

**025**

CM-30281-0115



**P**

PRIORITY MAIL
U.S. POSTAGE PAID
C2M
eVS

# USPS PRIORITY MAIL®

1001467X1X1XPRI
1646 S Federal
Sussman 151
Delray Beach, FL 33483

Clerk of Court
US DISTRICT COURT
450 Golden Gate Ave Ste 36060
San Francisco, CA 94102-3489

## USPS TRACKING # eVS



9205 5901 5266 1900 2376 5498 60