

Mike Sussman
1686 S FEDERAL HWY #151
DELRAY BEACH, FL 33483
mike.sussman@pm.me
Notice ID: GGT101717178

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA** Joseph Taylor, et al., v. Google LLC
Case No. 20-cv-07956-VKD

> RE:  Entries 325 and 322 (Objections of Mike Sussman)
>   Entry 332 (motion to file under seal)
>   Entry 330 (motion for approval of settlement)
>   Entry 335 (administrative motion)

**DECLARATION OF MICHAEL SUSSMAN IN RESPONSE TO THE MOTION FOR FINAL APPROVAL (Entry 330), IN REPLY TO HIS OBJECTIONS (322, 325), AND OBJECTION TO MOTION TO SEAL (Entry 332) and ADMINISTRATIVE MOTION (Entry 335)**

I, Michael Sussman, declare and state under the penalty for perjury that the following is true and correct to the best of my knowledge, or where stated, on information and belief (28 USC 1746):

1. Class Counsel first states that I failed to show standing because my Notice ID number listed above is listed to a gmail account registered to the name "Devnuls ." This is the entire problem with this case not having the ability to file a claim form where "users" of Android devices accessed the internet via a cellular network.  For example, since only individuals may file claims, if "Devnuls" was a company, it could not receive compensation and the individuals would have no ability to file a claim form since it does not exist.

2. However, "devnuls" is not a company.  It is a "handle" that I use on the internet based on the term "dev/null" which is a technical term for a blackhole relating to data.  This is described in the Wikipedia article found here:  https://en.wikipedia.org/wiki/Null_device

3. The gmail account I received the notice to was 95441o9292<at>gmail.com .  I have attached a copy of my notice.  The sole user of this gmail account is myself.

4. Class Counsel sent me emails to both the 95441o9292 email and also to an email "devnuls<at>hotmail."  After I inquired why Class Counsel sent me emails to devnuls<at>hotmail, they advised me that they pulled Lexis Nexis risk assessment reports on me and obtained the email.  This demonstrates that they knew that I used the term "devnuls" and that the term "devuls" is clearly associated with me.  Class Counsel omitted and concealed this from their specious assertion that my email listed the name "Devnuls" and not my name.

5. Regardless, it is my email, I received the payment form, I did use an Android device on a

cellular/wireless network, and I am a member of the Class.

6. Class Counsel is correct in that I did not file a request for payment. There are several reasons I did not apply for payment including the reasons stated in the objection, because I did not want my personal data to become part of the Angeion 2.0 consumer reporting database used in other cases without permission from district courts, and because Angeion uses information given to it to investigate objectors, assist class counsel – even in cases where Angeion is not the administrator – in personally attacking objectors, I chose not to provide a request for payment. Indeed, as shown by the response to the objections, Class Counsel and Angeion conducted searches and database inquiries about objectors, touted their alleged criminal histories, etc.

7. Angeion Group is retained by the Court to process claims, not harass, intimidate, and investigate objectors, which they refer to in their marketing documentation as "bad actors." Yet they do so and bill the Class.

8. This Court did not approve Angeion to access its admitted 10 year database of over 100,000,000 claims records from other cases. In addition, this Court did not authorize the claims data from this case to be placed into the Angeion Affirm 2.0 consumer reporting service that contains 10 years of claims data usurped from hundreds of class actions without district court approval or notification.

9. That I did not submit a payment form for the above reasons does not equate to my not being a class member. I obviously am a member, having used an Android device multiple times on cellular networks, and considering that I received a payment ID to my personal email, 95441o9292<at>gmail and/or devnuls<at>gmail.

10. Because I registered the email to my handle does not equate to my not having used the Android devices registered to that email. Obviously, someone used the Android device to have received the payment notification, and since I am the only person that has access to a device using that email, and since it is one of my emails, I am the person that would be entitled to payment.

11. Class Counsel states that I filed objections in the Lithium Ion case "along with" Christopher Andrews and that Andrews sought a settlement of $25,000. This is misstated. Mr. Andrews did file objections to the settlement. I did not. After the settlement, there were distribution issues and I raised them with the Court. The only thing I know about Mr. Andrews is that he successfully appealed several settlements, which Class Counsel omits from his list of "authorities."

12. Class Counsel cites a declaration in the Lithium case where I identified my credentials, then attempts to impeach me by stating I said in a different case that I am on Social Security Disability. I received Social Security Disability assistance after the conclusion of the Lithium case. I did not receive Social Security Disability at the time I filed my objection in that other case. Nothing in the Lithium Declaration is misleading or untrue. All of my technical experience exists and I continue to do tech consulting on a small scale.

13. As to my objections, Class Counsel has not addressed them. Instead, Class Counsel brush off the objections and attack me personally, playing six degrees of separation, especially as to his "supplemental authorities" where he equates a 20 year old frivolous

CM-30281-0116

and false allegation that I threatened a judge as a reason to ignore the flaws in this present settlement.

14. I have further reviewed the new information submitted at ECF 330-2, page 5, which indicates that over 16,000,000 people had "invalid" email addresses and did not receive their payment notice. I addressed this in my objections. Relying on email notifications, not having a "claim form" where a person can file a claim despite not having received the email, renders the notification process inadequate. Specifically, Class Counsel admits they excluded 16,000,000 people from the settlement because at some point they, or Google, closed or terminated the email accounts in question.

15. Even if some form of advertising or public awareness campaign existed and these 16,000,000 people learned of the lawsuit, there is no possibility they could file the claim without the code numbers found in the email sent to the "invalid" email address.

16. Class Counsel touts that no government agency objected to the settlement; however, this Court did not approve the list of agencies that notification was sent to by Angeion (despite the statute directing the Defendant to comply). Despite many states having specific departments, Angeion simply sends it to each state's attorney general. I have reviewed what Angeion sent in the past and it included generic form letters addressed to, literally, "appropriate government agency" and "dear official" and did not include copies of the documents or the number of affected persons in each state, but rather provided a link to the website in the letter.

17. Class Counsel also sought to file declarations from Angeion Group under seal without providing them to objectors to comment on, review, or discuss. See ECF 332. These declarations, using carefully worded verbiage, outline a scheme where Angeion Group created a database of over 100,000,000 claimant records in other cases over 10 years without the authorization of the district judges in literally hundreds of class actions. Angeion then compares the prior claims data to the current claim and denies the claim using a cryptic message to "try again" without privacy settings enabled, resulting in claimants attempting to enter the claim multiple times. This information should not be under seal. It is touted in press releases by Angeion and on their website. In addition, I attempted to file a declaration from the Southern District of New York where Angeion describes these processes, but the Clerk sent it back to me. I have attached it to my motion to intervene. The seal on this declaration was removed by the district court and I assume it is similar to the declaration filed in this case. Furthermore, in the Telescope case, the judge denied Class Counsel's motion to file the declaration under seal, which I attempted to file and to give this Court the ability to temporarily seal it. However, the Clerk has refused to file either of these documents in support of my objections with this declaration. It is attached to my motion for leave to intervene. Regardless, the information Class Counsel seeks to seal is already public, so no need to grant ECF 332 exists.

18. In prior cases, Angeion's declarations included a scheme where they, despite purporting to be independent claims administrators, helped class counsel "investigate" objectors through deep data searches such as using "whitepages.com," a website that anyone can join and which the terms specifically state may be inaccurate and should not be relied upon, and Lexis Nexis risk assessments which are informational only as well and specifically prohibited from the terms to be used in making consumer-based decisions.

19. These declarations provide important insight into the appropriateness of the administration of this case, other cases, the theft/misuse of data by Angeion from district court cases wherein they did not receive permission to use the information from the claimants or district judges to deny claims in other cases, and there is a great public interest in class members being able to know how their data is used/misused/retained and/or entered into the Angeion 2.0 consumer reporting database. Class Members had a right to object to entry into the Angeion 2.0 database and to object to the claims administration process pursuant to Rule 23(e)(2)(C)(ii) and 23(e)(2)(D).

20. I have also attached to this Declaration publicly available documents describing Angeion's system. The information in the proposed sealed declarations simply restate the information contained in these public documents.

21. Class Members cannot address these issues fully if the documents are sealed and they are being denied due process by the sealing in the entirety of the declarations.

22. Nothing in the declarations proposed to be sealed constitutes trade secrets and there is no reason the information should be sealed.

23. On June 18, 2026, Class Counsel filed a document at 335-3 purporting to be a statement of authorities. However, it contained no authorities and merely personally attacked various objectors instead of addressing the merits of their objections. Class Counsel now admit I am a class member. However, Class Counsel argues that I have no standing to complain about the fact that people who do not receive the email cannot receive payments because they do not have the code numbers. This situation does affect me because, as Class Counsel demonstrated by originally disavowing my class membership, my email is under the name "Devnuls" and while that is me, I cannot receive a payment to "Devnuls." While I did not file a request for payment solely because of Angeion Group's mass data collection, if this Court imposes restrictions on the use of data prohibiting the data from entering the Angeion 2.0 database, and provides an additional period of time, I would lodge a payment request. Moreover, I am the beneficiary of an Estate entitled to file a claim, but it cannot due to the terms I outlined in my objections including the lack of a claim form and a prohibition on non-personal claims. Finally, I have an interest in several companies entitled to file a claim, which affects me financially, but they are unable to do so because of the lack of a claim form and the prohibition on entity/business claims.

24. Therefore, I ask this Court to deny the motion to seal and deny final approval of the settlement.

Respectfully submitted,

Mike Sussman

https://www.angeiongroup.com/class-action/fraud-prevention (retrieved June 17, 2026)

Class Action

Fraud Prevention

Angeion has revolutionized fraud detection and prevention in Class Action claim filing with AngeionAffirm.

AngeionAffirm is the first and only fraud-prevention solution of its kind. Based on state-of-the-art technology and analysis of over a decade of historical claims data, it uses an innovative approach to tackling fraud.

In a recent settlement, Angeion's innovative fraud detection system identified over 99.9% of false claims during a distinct period, a degree of accuracy far beyond current industry norms.

Machine learning-based fraud prevention

Enhanced machine learning-based fraud prevention mechanisms on all web application firewalls detect and block fraudulent activities before they can infiltrate the system.

AI-based script identification

Advanced artificial intelligence identifies bot and scripted browser traffic to block spam.

Behavioral analysis

A blend of proprietary behavioral analysis techniques identifies abnormal patterns to ensure that claims are genuine and justifiable.

Advanced email verification

Angeion Group analyzes technical characteristics from claimant email addresses and digital fingerprints to determine a claim's propensity for fraud.

Robust IP monitoring

A dynamic IP monitoring system flags suspicious activities across all case engagements.

Historical data analysis

Angeion Group's analysis of over one hundred million claims is instrumental in identifying characteristics, anomalies, and known bad actors that may signify fraudulent intent, and ensures only bona fide claims are approved.

1

CM-30281-0116

# Angeion Group announces AngeionAffirm 2.0

NEWS PROVIDED BY
**Angeion Group** →
Jul 09, 2024, 11:05 ET

PHILADELPHIA, July 9, 2024 /PRNewswire/ -- Angeion Group is excited to announce the launch of AngeionAffirm 2.0, marking a new era in fraud prevention for class action settlement administration. By integrating bank-level fraud detection with our unique data insights, AngeionAffirm 2.0 surpasses the capabilities of any single fraud prevention solution on the market and creates a more enjoyable and just claimant experience.

Continue Reading



Remarkably, during claim submission, AngeionAffirm 2.0 is able to make a real-time determination as to whether the filer is a real person or an electronic fraud which is communicated to the claimant immediately. By utilizing advanced fraud detection at the beginning of the claim process, AngeionAffirm 2.0 also reduces the possibility of unfairly rejecting real class members, which occurs too frequently with other services on the market. Our approach ensures that claim volume reporting is accurate and reflects the flow of legitimate filings, providing increased transparency and better budget management throughout the administration process.  It also cuts down on false positives that invariably irritate legitimate claimants.

**The launch of AngeionAffirm 2.0 marks a new era in fraud prevention for class action settlement administration.**

X  Post this

Angeion Group is not only keeping pace with but winning the arms race against increasingly sophisticated fraudsters. By minimizing fraud and keeping the focus squarely on the claimants' user experience, Angeion Affirm 2.0 sets the new standard in fraud prevention.

**How AngeionAffirm 2.0 Works**

CM-30281-0116

AngeionAffirm 2.0 incorporates an entirely new and novel approach to fraud prevention while avoiding legacy fraud detection methodologies that have proven problematic in large cases, such as relying on IP address analysis.

At a high level, AngeionAffirm 2.0 works by:

1. Reviewing multiple aspects of the claim submission to identify if the information is being submitted programmatically. This analysis is largely based on signatures Angeion has identified through the analysis of over 100M claims.
2. Verifying the veracity of all information provided by the claimant using a bespoke combination of sophisticated services to minimize the likeliness of false positives.

**How AngeionAffirm 2.0 is Different**

Legacy approaches to fraud detection rely on identifying unusual patterns in the submission data. These can vary from sophisticated machine learning techniques to basic IP address groupings. The inherent challenge with these approaches is that it is analogous to profiling a person based merely on their facial appearance. Real, honest claimants may unfairly get marked as fraud under a legacy approach because the claimant unwittingly filed on a mobile network tower or used a standard VPN. We are unwilling to accept that risk.

Angeion's approach is to corroborate the validity of the information being provided at the time of filing. If, and only if, we cannot corroborate identity immediately, do we require claimants to submit additional information. This approach is an industry first because it allows genuine claimants to be notified of potential issues with their filing instantly, whereas, in a legacy analysis, they may have been incorrectly identified as fraudulent and would only be provided the opportunity to cure their claim many months later, if at all.

To truly appreciate this momentous leap forward in both fraud protection and client service that AngeionAffirm 2.0 represents, we invite you to experience it firsthand. Contact Angeion Group to attempt to challenge the robust fraud prevention features, yourself.

For more information, email **marketingteam@angeiongroup.com**.

SOURCE Angeion Group

CM-30281-0116



angeiongroup.com

# AngeionAffirm
## The New Gold Standard in Class Action Fraud Prevention

CM-30281-0116

# The Future of Class Action Integrity

In today's class action landscape, the threat of artificial intelligence (AI)-driven fraud has transformed from an occasional nuisance into a full-scale operational crisis. Millions of false or duplicate claims now flood digital portals, siphoning resources, delaying payouts, and undermining trust in the judicial process. Traditional fraud **detection** methods — focused on after-the-fact cleanup — are no longer enough.

**AngeionAffirm** redefines what's possible. It turns fraud prevention into a real-time, proactive defense that prevents fraudulent activity from entering the claims process or workflow. With unmatched precision and transparency, it ensures that every class member has a fair chance to participate — while protecting settlement funds from exploitation.

## *AngeionAffirm™ sets the benchmark for integrity in class action administration.*



*"The Court finds that the claims process administered by Angeion has integrity and has been carried out in a diligent and thorough manner ... Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case ... Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims."*

— Judge Stewart D. Aaron
United States Magistrate Judge
*In re: Novartis and Par Antitrust Litigation, No. 1:18-cv-04361-AKH-SDA (S.D.N.Y), Report and Recommendation, ECF No. 667*

CM-30281-0116

# Why Detection Alone No Longer Works

For years, most class action administrators have relied on after-submission detection systems to find suspicious activity. These systems scan for patterns like duplicate addresses, reused IPs, or high submission velocity. But this model comes with serious drawbacks:

- **Massive volumes of fraudulent submissions** flood systems before they can be analyzed.

- **False positives** unfairly flag legitimate claimants — particularly those using virtual private networks (VPNs), mobile networks, or shared computers.

- **Administrative costs** compound after fraudulent claims enter the claim workflow, accumulating time for human review, deficiency processes, and post-claim filing fraud analysis.

In short, detection reacts to fraud after it has already done damage. Fraud rings exploit these weaknesses, using automation, synthetic IDs, and AI-generated documents to game the system. Even a 1% pass-through yields a significant payout for fraudsters, diluting valid class member recoveries.



CM-30281-0116

# The Shift: From Detection to Prevention

**Fraud prevention** changes the equation. Instead of cleaning up fraud after the fact, prevention intercepts suspicious submissions in real time, stopping bad actors before they enter the system; while helping legitimate users correct their information and reducing downstream deficiency costs. AngeionAffirm is the first layer — paired with proven detection and review controls throughout the administration for defense in depth.

With AngeionAffirm, prevention isn't theoretical — it's measurable. Because prevention operates in real time, it also allows administrators to identify shifts in bad-actor behavior and adjust controls dynamically, rather than relying on a one-size-fits-all, after-the-fact detection model. The system's real-time validation makes fraud prohibitively expensive for attackers. Fraudsters rely on speed and scale; repeated blocking at submission drives them off.



- Fraudulent actors stop trying after repeated failures because it is no longer economical for them.

- Legitimate users receive instant feedback to correct errors while we have their attention, minimizing drop-off.

- Administrative resources are reserved to serve valid claimants.

Angeion's approach has led to fewer than 0.02% of claimants contacting support due to false positives, compared to common outcomes without this solution above 2.5%.

CM-30281-0116

# Inside AngeionAffirm: Prevention Made Real

**AngeionAffirm** sets the benchmark for real-time fraud prevention in class action administration. It verifies accuracy at the moment of claim submission, using advanced behavioral analysis and proprietary scoring models to identify inconsistencies instantly.

## How It Works

 **Submission**
A claimant completes the online form.

 **Instant Validation**
AngeionAffirm detects data anomalies, such as invalid addresses or mismatched information. This includes identifying manipulated or AI-doctored receipts and other proofs of claim at the point of submission, before they move deeper into the workflow.

 **Real-Time Feedback**
Claimants have a chance to correct their submission while we have their attention, rather than weeks or months later via an email they may or may not see.

 **Documentation**
Every flagged attempt is logged for transparency and compliance.

## The Result

 **20%–30% increase in site-to-claim conversion. More eligible visitors complete filing, with less drop-off.**

 **More than 21 million bot submissions blocked in major settlements.**

 **99.9% fraud detection accuracy before payout.**

 **100 million+ claims analyzed to continuously refine fraud models.**

Courts have called Angeion's systems "robust" for a reason — *because they work.*

 

CM-30281-0116

# The Human Side of Prevention

Fraud prevention isn't a barrier to participation — it's a bridge to fairness.

Traditional fraud detection systems can unintentionally exclude vulnerable populations by relying on rigid algorithms and incomplete data sources. Those most likely to be affected include seniors, low-income individuals, immigrants, or those with unstable housing who may lack consistent documentation. Even more, modern fraud detection solutions on the market may incorrectly flag individuals as fraudulent because a class member chose to use an email address they don't often use or have a desire to protect their identity as they submit into a new website.

AngeionAffirm corrects this imbalance. By validating information in real time, legitimate claimants are able to resolve any potential issues immediately, instead of being rejected months after they file their claim. This is significant because immediacy predicts participation:

- **High response rates:** Studies consistently show that surveys conducted immediately after an interaction — such as on-site or in person — can achieve response rates as high as 85%-95[1]. In contrast, delayed surveys sent later by email typically see only 6%-25% response rates, with most programs averaging 12%-15%[2]. According to industry research from customer experience leaders such as Qualtrics and Bain & Company (creators of the Net Promoter Score system), immediacy is one of the single strongest predictors of participation and data quality.

- **Dedicated resources:** Users have access to the administrator during the claims filing period.

- **Early insight and control:** Angeion immediately determines if a person is likely to be authentic at the time of filing, not in a post hoc review, which leads to more-accurate claims numbers throughout the claims process.

Additionally, even when class members provide everything correctly, common outcomes with leading identity-provider approaches include double-digit false positives. Angeion has gone to extensive lengths to reduce false positives to less than 0.02% by layering institutional knowledge from hundreds of millions of processed claims with defined indicators that distinguish legitimate claimants from fraudulent actors.

> *The result is **broader access to justice**, reduced exclusion errors, and greater claimant satisfaction.*

1 SightMill, "What is a Good Survey Response Rate?"
2 Delighted (Qualtrics), "Average Survey Response Rate"

CM-30281-0116

# Proof Over Promises: Real Cases, Real Lessons

These threshold cases sparked AngeionAffirm. Angeion saw fraud scaling fast and built prevention-first validation to stay ahead of it.

## Artsana's Claim Surge Exposed the Breaking Point of Detection-Only Systems

When Artsana settled claims related to its Chicco KidFit booster seats, only 875,000 units had been sold — but almost **10 million** claims were submitted. Legacy detection systems were quickly overwhelmed. Of the 153,244 claims that initially appeared valid, more than 91,000 were later identified as fraudulent. The court delayed approval until fraud issues were resolved, frustrating real claimants and driving up costs.

AngeionAffirm was developed to address these challenges — preventing fraudulent claim submissions, protecting the integrity and fairness of the claims process, and accelerating distributions.

*"The extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with [claims in] this settlement … absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid."*
— **Judge Vincent L. Briccetti**
**U.S. District Judge**
*Jimenez v. Artsana USA, Inc., No. 7:21-cv-07933-VB (S.D.N.Y.)*

## Large-Scale Claim Activity Underscored the Value of Prevention-First Validation

In a $6 million settlement involving Grande's lash and hair serum products, more than **6.5 million** claims were submitted. After validation, approximately 110,000 claims were approved — showing how quickly submission volume can outpace eligibility in open-access claims environments.

At this scale, detection-based review must operate at extraordinary capacity, and even well-designed filters can strain, leading to:

- Fraudulent submissions entering the review queue
- Legitimate claims facing added scrutiny as thresholds tighten
- Longer review timelines driven by volume

High-volume environments underscore a key reality: downstream detection alone puts pressure on systems and reviewers, making precision harder to maintain as ineligible submissions dominate.

A prevention-first validation framework reduces unnecessary submissions at the front end — protecting legitimate claimants, improving transparency, and accelerating distribution.

# Why AngeionAffirm Leads the Market

 **Real-Time Accuracy:**
Validates and corrects claims at the moment of submission.

 **Seamless Claimant Experience:**
Keeps legitimate users in the process while blocking fraud.

 **Verified Performance:**
Proven fraud prevention rates above 99.9%.

 **Court-Tested Reliability:**
Judges and clients recognize Angeion's fraud safeguards as industry leading.

## The Proven Impact of AngeionAffirm

| **20%–30%** | **99.9%** | **21+ million** | **100 million+** |
|---|---|---|---|
| increase in site-to-claim conversion | of false claims blocked pre-payout | bot submissions stopped | claims analyzed for fraud patterns |

 **"Robust"** fraud controls recognized by courts

CM-30281-0116

# The Angeion Advantage

Angeion Group is redefining fairness, transparency, and efficiency in class action administration. With AngeionAffirm, prevention isn't just a technical upgrade — it's a fundamental shift in how justice is delivered.

Administrators, counsel, and courts now have the tools to:

- Preserve settlement integrity in real time.

- Protect valid claimants from rejection.

- Better real time view of claims volumes and adminstration metrics.

- Demonstrate compliance and reliability to all stakeholders.

Because AngeionAffirm is embedded within Angeion's claims-administration environment, fraud prevention is not a bolted-on vendor function; it is a core administrative competency integrated with the live workflow, claimant support, and downstream review process.

AngeionAffirm is purpose-built for class action administration, and optimized to reduce the impact on real class members by ensuring access to justice. Fraud controls must balance prevention with access to justice to minimize litigation and approval risk.



CM-30281-0116

# See AngeionAffirm in Action

If you're evaluating fraud prevention tools, see the future firsthand. **Schedule a demo with Angeion Group** to explore how AngeionAffirm integrates directly into your claims-administration workflow.

## Questions to Ask When Evaluating Fraud Tooling:

**1** What happens when the fraud solution gets it wrong?

**2** What data do you have to demonstrate the efficacy and accuracy of the fraud solution? Do you have data from a fraud deficiency process showing how many individuals were incorrectly identified as fraudulent?

**3** Who bears the responsibility of cost if fraudsters actively target the settlement website?

**4** Can you test the solution in a live or demo environment?



*AngeionAffirm: Real-time fraud prevention that protects integrity, improves participation, and sets the new gold standard in class action administration.*

CM-30281-0116



# Writing the Rules in Progressive Settlement Administration

**COMPANY HEADQUARTERS**

Angeion Group
1650 Arch St., Suite 2210
Philadelphia, PA 19103

salesteam@angeiongroup.com
Let's connect on LinkedIn

**NEW YORK OFFICE**

Angeion Group
200 Vesey St., 24th Floor
New York, NY 10281

**LONDON OFFICE**

Angeion Group International
8 St. James's Square
London
SW1Y 4JU
United Kingdom

CM-30281-0116

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYMOND KESSLER, HARTENCE
HILL, LAZARO RODRIGUEZ, TERESA
HERENDEEN, and BARBARA ABREU
individually and on behalf of all others
similarly situated,

              Plaintiffs,

v.

THE QUAKER OATS COMPANY,

              Defendant.

CASE NO. 7:24-CV-00526

**DECLARATION OF DEREK BURROWS OF ANGEION GROUP, LLC RE: FRAUD DETECTION & PREVENTION**

I, DEREK BURROWS, hereby declare the following:

1.     I am the Chief Operating Officer with the class action notice and administration firm, Angeion Group, LLC ("Angeion"), located at 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. I am over 21 years of age and am not a party to this action. I am fully familiar with the facts contained herein based upon my personal knowledge, as well as information that has been provided to me by my colleagues in the ordinary course of business at Angeion.

2.     Angeion was appointed as Claim Administrator and directed to carry out the Notice Plan in conformance with the Class Action Settlement Agreement And Release (Dkt. No. 13-1) ("Agreement"), and to perform all other tasks required by the Agreement. *See* Preliminary Approval Order (Dkt. No. 34).

3.     The purpose of this declaration is to provide the Parties and the Court with information regarding Angeion's fraud detection and prevention efforts and information pertaining to *pro se* objector, Pat Zhen.

**COURT REQUEST FOR ADDITIONAL DETAIL**

4.     This declaration includes anonymized references to information and identity-linked data concerning non-parties, including individuals who are neither objectors nor class members of record.

Declaration of Derek Burrows of Angeion Group                 1

5. Should the Court wish to review the information represented by these anonymized references, the Angeion is prepared to submit additional information regarding the facts at issue for in camera review and to assist in determining what portions, if any, may appropriately be filed publicly. Angeion also stands ready to respond to any requests for additional material about AngeionAffirm 2.0 or Angeion's fraud prevention protocols.

## COMBATTING AND RESPONDING TO AN EVOLVING FRAUD LANDSCAPE

6. Since the summer of 2023, there has been a significant increase in the volume of attempted fraudulent claim submissions in class action settlement administration. Advancing technology has enabled increasingly sophisticated and rapidly evolving tactics employed, in both large-scale operations and smaller, targeted efforts.

7. At Angeion, we have invested significant resources into developing and enhancing systems to detect and prevent fraud throughout the administration process. This includes the development of Angeion's proprietary fraud detection system, AngeionAffirm 2.0.

8. Angeion has also observed an emerging trend in which individuals whose claim activity raises fraud concerns attempt to engage not only with counsel but directly with the Court, potentially lending an appearance of legitimacy to their efforts.

## ANGEIONAFFIRM 2.0

9. In response to the evolving fraud landscape, Angeion has pioneered real-time fraud detection and prevention technology that is designed to block the submission of fraudulent claims at the time of filing – AngeionAffirm 2.0. This technology increases efficiency and reduces the costs of administration associated with traditional, back-end fraud review processes. Early-stage deployment also provides a truer view of claims volumes as the administration progresses by significantly reducing the possibility of large-scale rejections of claims resulting from delayed review. Angeion continues to invest in the research and development of these systems, responding in real time to new tactics employed by fraud actors.

10. AngeionAffirm 2.0 is a comprehensive solution to identify fraud based on both state-of-the-art technology and analysis of over a decade of historical claims data. Key highlights of AngeionAffirm 2.0 include (1) implementing enhanced, machine-learning-based fraud prevention

Declaration of Derek Burrows of Angeion Group                                                                    2

CM-30281-0116

mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities before they enter the claim workflow; (2) employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions to help ensure claims are genuine; (4) analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) leveraging third party identity validation to corroborate the information provided by the claimant; (6) analyzing over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies and known bad actors, that may signify fraudulent intent or deviate from expected claimant profiles; and (7) utilizing multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

11.     Angeion's defense-in-depth approach to fraud prevention seeks to balance robust fraud prevention and ease of use for legitimate claimants. By embedding fraud detection into the claim submission workflow, while simultaneously offering accessible customer support for individuals whose claims are flagged, Angeion strives to preserve both efficiency and fairness in class action administration. This strategy has proven effective; AngeionAffirm 2.0's false positive rate is only 0.064% of all claims submitted.

### COURT RECOGNITION AND APPROVAL OF ANGEIONAFFIRM 2.0

12.     Courts have recognized the success of AngeionAffirm 2.0. By way of example, during an April 8, 2025, Fairness Hearing, the Honorable Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with this settlement"…further stating that "**absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid.**"[1] (Emphasis added).

13.     In addition, the success and effectiveness of Angeion's fraud detection efforts were recognized by United States Magistrate Judge Stewart D. Aaron. In his July 26, 2024, Report and Recommendation, Judge Aaron stated that, "**[t]he Court finds that the claims process**

---

[1] Jimenez v. Artsana USA, Inc., No. 7:21-cv-07933-VB (S.D.N.Y.)

Declaration of Derek Burrows of Angeion Group                                                    3

administered by Angeion has integrity and has been carried out in a diligent and thorough manner…Based upon the Court's review of the record, the Court finds that Angeion has taken prudent and necessary steps to address the fraudulent claims submitted in this case… Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims."[2] (Emphasis added).

## DESCRIPTION OF ANGEION CLAIM SUBMISSION PROCESS AND INTERACTION WITH ANGEIONAFFIRM 2.0

14. AngeionAffirm 2.0 identifies indicia of fraud during the online claim submission process. When such indicators are detected, the system generates a real time alert, *i.e.*, the Error 403 message. The real time alert informs the claimant that inconsistencies and/or anomalies were identified and that they can attempt to re-submit their claim (electronically or via paper claim) or contact us for further assistance.

15. Angeion's staff is trained extensively to assist individuals who receive the real-time alert. In addition, our team is continuously monitoring instances in which the alert is triggered, both to refine detection parameters and to identify any behavioral patterns that may help reduce the likelihood of genuine claimants receiving the alert.

16. Notably, this alert system has only flagged a fraction of one percent of total submissions from actual individuals. We believe this approach provides a more equitable and fair process for legitimate claimants, while adapting to the increasing sophistication of fraud tactics. This approach also greatly reduces the possibility that a valid claim may be mistakenly rejected during a later stage analysis, when fewer remedial options may be available resolve or cure their claim.

## OBJECTOR PAT ZHEN

17. Angeion's records reflect that an individual using the name "Pat Zhen" or "Patrick Zhen" has submitted or attempted to submit claims in multiple other settlements that Angeion has administered. Angeion's fraud detection processes flagged the submissions. Based on those assessments, certain submissions were rejected or marked for additional review in accordance with

---

[2] *See* In re: Novartis and Par Antitrust Litigation, No. 1:18-cv-04361-AKH-SDA (S.D.N.Y.), Report and Recommendation, ECF No. 667.

Declaration of Derek Burrows of Angeion Group                                             4

CM-30281-0116

the applicable settlement protocols.

18.     In this Settlement, the contact information provided by Pat Zhen with the attempted claim submission differs from the contact information provided in the objection and claim submissions in other matters. The attempted claim submission in this matter was flagged as having indicia of fraud.

19.     The mailing address provided on the attempted claim submission was located but listed as invalid due to missing secondary information, such as an apartment or suite number.

The contact information also differs from other contact information provided by Pat Zhen in various other settlements administered by Angeion. For example, an oft-used mailing address provided by Pat Zhen on attempted claim submissions is not a residential address but rather a commercial mail forwarding service.

20.     Additionally, a phone number frequently associated with Pat Zhen claim submissions, is different from the phone number listed on the objection and attempted claim submission in this Settlement. According to third-party data sources, that number used frequently in other submissions is not associated with Pat Zhen.

21.     When the attempted claim submission was flagged by AngeionAffirm 2.0, the system issued the 403 message (discussed in paragraph 13 above) notifying the user of inconsistencies and with details on how to contact the administrator to resolve issues with the attempted submission. Pat Zhen did not contact or communicate with Angeion in response to this message or the attempted claim submission, nor was a paper claim submitted in this matter.

## FURTHER INVESTIGATION OF PAT ZHEN

22.     As noted, Angeion has previously encountered instances in which individuals whose claims were flagged as potentially fraudulent submissions have engaged directly with counsel or appeal to the Court regarding fraud prevention protocols and claim review procedures. In such circumstances, Angeion conducts additional review using public records, reputable third-party data sources, and proprietary resources to validate its findings and assess any underlying anomalies.

23.     Included in the Zhen objection is the following contact information provided by the

Declaration of Derek Burrows of Angeion Group                                    5

CM-30281-0116

objector:

Pat Zhen
PO Box 366047
San Juan, PR 00936
legal@patzhen.com
(787) 523-8040

24. Angeion personnel performed a reverse lookup of the telephone number provided. The results of this search indicate that the number is registered to *Individual 1* at a different address from that provided by Zhen in this matter or any other submissions to Angeion ("Address 1").

25. Angeion verified that *Individual 1* was associated with the *Address 1* through records available from the Pennsylvania Department of State Business Search portal, which list *Individual 1* as the President and Treasurer of a corporation, with its registered office at that address.

26. According to Allegheny County (Pennsylvania) property records, the property is listed as being owned by an estate.

Obituaries for both decedents of the estate list among their survivors an individual named *Individual 2*, who was identified at the time of publication of the obituary as residing in outside of the United States of America.

27. Publicly available materials confirm that *Individual 2* is connected to *Address 1*.

28. Additional public court filings reflect that *Individual 2* has been named in multiple legal proceedings over the years, including some involving allegations of fraudulent or deceptive conduct. These include criminal, regulatory, and civil matters, some of which reference *Individual 2's* use of the mail or legal threats in financial disputes. Angeion makes no legal conclusions regarding the disposition or accuracy of those allegations but includes this information solely to contextualize public records involving contact details linked to *Individual 2*.

29. Angeion also conducted a review of court filings for entries associated with Pat Zhen. Notably in *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143 (N.D. Cal.) ("Optical Disk Drives"), Zhen filed a motion that included a telephone number that, similar to the telephone number provided by Zhen on the objection in this matter is not registered to Zhen. A reverse lookup reveals that the number is registered to *Individual 2*.

30. Angeion also conducted a deeper review of the contact information provided by Pat Zhen

Declaration of Derek Burrows of Angeion Group                                              6

with the attempted claim submission in this matter. In this instance, a search of publicly available records shows that the telephone number provided by Zhen is registered to Pat Zhen at another address located within the continental United States of America ("Address 2").

31.     Public property records show that Pat Zhen was granted ownership of *Address 2* by warranty deed, in which he listed his contact address as *Address 3* in Puerto Rico. According to publicly available records maintained by the Department of State of Puerto Rico, *Address 3* is associated with a corporation, of which *Individual 1* is identified as the president and treasurer.

32.     Further, a search using the Registration Data Access Protocol[3] shows that the corporation is the registered owner of a particular internet domain. The record lists as the mailing address – *Address 3*. *Individual 1's* telephone number, the number provided by Zhen in the instant objection, is also connected to the corporation's internet domain.

## CONCLUSION

33.     The objection and attempted claim submission by Pat Zhen exhibit several indicia consistent with patterns Angeion has previously observed in connection with submissions later determined to be invalid under applicable review procedures.

34.     As detailed above, the telephone number provided in Pat Zhen's objection appears to be registered to *Individual 1* at *Address 1*, a location confirmed by public records to be associated with *Individual 1*. *Address 1* is owned by the estate of *Individual 2's* parents. Public records indicate that a telephone number used in an objection submitted under the name Pat Zhen in another matter is registered to *Individual 2*. The telephone number provided with Zhen's attempted claim submission can be connected to *Individual 1* through association with *Address 3*.

35.     *Individual 1* also has been associated with Pat Zhen in a separate class action where Pat Zhen's objection to the settlement was overruled.[4] Angeion understands that the objection in that matter was overruled but does not draw any conclusions as to *Individual 1's* role or involvement beyond what is reflected in the record.

36.     Finally, Angeion's records show that other submissions under the name Pat Zhen have used

---

[3] https://lookup.icann.org/en is a domain lookup tool that shows the registration of a domain name.
[4] *See* In re: Telescopes Antitrust Litigation, No. 5:20-cv-03639-EJD (N.D. Cal.), ECF Nos. 419 and 429.

Declaration of Derek Burrows of Angeion Group                                          7

CM-30281-0116

differing and/or invalid mailing addresses and contact information, including some contact information that appears to be associated with other individuals. As a result, certain submissions were rejected or marked for additional review in accordance with the applicable settlement protocols.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 21, 2025

DEREK BURROWS

Declaration of Derek Burrows of Angeion Group                                                    8



**P**

PRIORITY MAIL
U.S. POSTAGE PAID
C2M
eVS

# USPS PRIORITY MAIL®

1004064X1X1XPRI
Sussman 151
1646 S Federal
Delray Beach, FL 33483

Clerk of court
US District Court
450 Golden Gate Ave Ste 36060
San Francisco, CA 94102-3489

## USPS TRACKING # eVS



**9205 5901 5266 1900 2379 9961 73**





# UNITED STATES POSTAL SERVICE®

# PRIORITY® MAIL

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

# FLAT RATE ENVELOPE
## ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED