ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
LINDLEY J. BRENZA (*pro hac vice*)
JONATHAN JACOB MARSH (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
PAMELA YAACOUB (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs*

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:20-CV-07956-VKD<br><br>**AMENDED [PROPOSED] FINAL ORDER AND JUDGMENT GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Virginia K. DeMarchi |

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson hereby submit the following Amended Proposed Order granting Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF 330) and granting Class Counsel's Motion for Fees, Expenses and Incentive Awards (ECF 281). Plaintiffs have conferred with Defendant Google regarding this Amended Proposed Order. Google agrees that final approval should be granted for the settlement and that all objections should be overruled.

## AMENDED PROPOSED ORDER

Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson move for final approval of their class action settlement. ECF No. 330. Defendant Google LLC ("Google") does not oppose the motion, and has asked the Court to overrule any objections. ECF Nos. 265 and 329.

Also before the Court is Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Awards. ECF No. 281. Defendant Google filed a response to Class Counsel's motion for attorneys' fees, arguing that the Court should award less than the 29.5% sought by Class Counsel, but deferring to the Court regarding the exact amount. ECF No. 292.

Upon consideration of Plaintiffs' Motion for Final Approval of Class Action Settlement, Memorandum of Points and Authority In Support, and Response to Objections (ECF No. 330) declarations, and exhibits filed in support thereof, Defendant Google LLC's Response to Objections to Settlement (ECF No. 329), Plaintiffs' Notice of Supplemental Authorities Regarding Certain Objectors (ECF No. 335-3),[1] the Declaration of Marc A. Wallenstein in Support of Notice of Supplemental Authorities Regarding Certain Objectors (ECF No. 335-4), the Supplemental Declaration of Glen E. Summers In Response to Sur-Reply by Objector Nathan Byars (ECF No. 337-1), the Supplemental Declaration of Graeme W. Bush (ECF No. 337-2), the Declaration of Jonathan P. Shaffer of Angeion Group, LLC Re: Requests for Exclusion & Objections (ECF No. 339), the Declaration of Marc A. Wallenstein Re Three Objectors (ECF No. 345); the Parties' Joint Supplemental Brief Regarding Final Approval of Class Action Settlement (ECF No. 348), the

---

[1] The Court GRANTS Plaintiffs Administrative Motion for Leave to File Notice of Supplemental Authority Regarding Certain Objectors, ECF 335.

complete records and files of this action, and for the reasons discussed at the July 23, 2026, Fairness, Motion for Attorney Fees, and Motion for Settlement Hearing (ECF No. 340), the Court hereby GRANTS Plaintiffs' Motion for the reasons stated herein.

In addition, upon consideration of Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Awards, the Memorandum of Points and Authorities, declarations, and exhibits filed in support thereof, all objections filed with the Court, the complete records and files of this action, and the oral argument presented at the hearing of this matter, the Court hereby GRANTS Class Counsel's Motion for the reasons stated herein.

## I.    Findings of Fact and Conclusions of Law Regarding Class Action Settlement

The Court presumes familiarity with the relevant procedural history of this case as set forth in its Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 270). The Court further finds and concludes as follows:

1.    This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), over the subject matter of this action and over all parties to the Settlement, including all Settlement Class members. Because the Settlement Class includes members of 49 states outside California, and because Google is a citizen of California, this case satisfies CAFA's requirement of minimal diversity of citizenship, and the Court finds that no exception to CAFA jurisdiction applies.

2.    The Court finds that CAFA notice was timely served, that the 90-day waiting period under 28 U.S.C. § 1715(d) has expired, and that no federal or state official has objected to this settlement. The Court therefore overrules the objection from M. Sussman, ECF 325, regarding CAFA notice compliance.

3.    The definition of the class (the "Settlement Class") in the Parties' Settlement Agreement and Release dated December 23, 2025 (the "Settlement Agreement" or "Settlement"), as clarified in the Parties' Joint Supplemental Brief Regarding Final Approval of Class Action Settlement (ECF No. 348), is substantially identical to the definition in the operative complaint.

The class definition used by Plaintiffs in Paragraph 84 of their First Amended Complaint (ECF 60) is:

All natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers.

The class definition in the Parties' Settlement Agreement, as clarified in the Parties' Joint Supplemental Brief Regarding Final Approval of Class Action Settlement (ECF No. 348), is:

All natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order and Judgment, excluding persons who are class members (or who opted out) in *Csupo et al v. Google LLC*, Santa Clara Superior Court Case No. 19CV352557.

The Court finds that the definition of the Settlement Class, as clarified, is substantially identical to the definition in the operative complaint. The *Csupo* case includes all citizens of the State of California who have used mobile devices running the Android operating system.

4.      The Court finds that the numerosity requirement of Rule 23 is met here, as the class list includes more than 129 million class members.

5.      The Court finds that the commonality requirement of Rule 23 is met here for class settlement purposes because resolution of the claim for conversion depends on the common contention that Google used cellular data in a manner inconsistent with class members' rights, through the same software, *i.e.*, GMS Core, which is present on all or virtually all Android devices sold in the United States. There is no dispute that the challenged network transfers involved Google's Android operating system, which resulted in the consumption of each users' cellular data. Plaintiffs' conversion claim is premised on the common contention that this common usage is inconsistent with all class members' rights.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

6.    The Court finds that Rule 23's typicality requirement is met for class settlement purposes, as the class representatives' conversion claim is coextensive with those of the Settlement Class members, who used Android phones running GMS Core.

7.    The Court finds that the adequacy requirement of Rule 23 is met for class settlement purposes. The Court finds that the class representative's interests are aligned with those of the proposed class, because they assert the same claim for conversion based on the same conduct and have the same interests as the absent class members in obtaining redress from Google, as addressed by the Settlement. The Court finds that class counsel have diligently prosecuted this matter on behalf of the class, that class counsel is well-qualified and has extensive experience litigating large, complex matters, including class actions, and that class counsel have vigorously prosecuted this matter on behalf of the proposed class. The Court also finds that neither the class representatives nor class counsel have any conflict of interest, and that they have fairly and adequately protected the interests of the class. As discussed more fully below, the Court further finds that class counsel took appropriate measures to guard against potential conflicts of interest by retaining Special Settlement Counsel for the class (and separate Special Settlement Counsel for the class in the parallel *Csupo* matter). The Court therefore overrules objections that Class Counsel's interests diverged from those of the Class or that any conflicts of interest exist.[2]

8.    The Court finds that the predominance requirement is satisfied for class settlement purposes because all class members share the same, single claim for relief, *i.e.* conversion, and the nature of the alleged injury and the alleged facts giving rise to such injury are the same for all class members. The Court notes that Plaintiffs' claims are based on the alleged conversion of their cellular data by transfers that impact all or substantially all Android users, and the related damages claims are based on the mere unauthorized use of that cellular

---

[2] *See, e.g.*, Objections of: A.R. Hamilton, ECF 297 at 1; M. Krause, ECF 283 at 1–2; D.S. Maynard, ECF 285 at 1–2; J.D. Maynard, ECF 286 at 1–2; N. Byars, ECF No. 288, at 10–11, 14–15; C. Andrews, ECF 302 at 55; J.K. Kirkley, ECF 304 at 2; J. Mccorvey, ECF 312 at 2; C.M. Tepfer, ECF 319 at 2; M.L. Coak, ECF 323 at 3.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

data by Google (which they allege amounts to an act of conversion) without any showing of consequential financial loss (such as overcharges) or performance degradation. The Court therefore overrules the objection from M. Sussman, ECF 325, that there is no means to distinguish injured from uninjured class members.

9. The Court finds that the superiority requirement is satisfied for class settlement purposes because it would be too costly and burdensome for the litigants and the courts to resolve each class member's small claim individually, when the identical legal claims of all class members can be resolved in this one proceeding.

10. Accordingly, the Court finds that certification of this Settlement Class continues to be warranted under Rule 23.

11. The Court finds that the Settlement was negotiated at arm's length, without collusion. The Court finds that the parties negotiated this settlement over more than a year with the aid of neutral, skilled mediators and Special Settlement Counsel for each of the *Taylor* class and the class in the related state-court *Csupo* case, respectively. The court finds that negotiations were conducted at arm's length, and the Court credits Class Counsel's representation that they were, at times, contentious. The settlement does not have a "clear sailing" provision, is non-reversionary, and is not contingent on any award of attorneys' fees or incentive awards, all of which support the Court's conclusion that the Settlement was conducted at arm's length without collusion. The Court further finds that Google's opposition to class counsel's fee request further demonstrates that there is no collusion among counsel for the parties. Finally, the Court finds that none of the objections to this settlement present credible evidence of any collusion or that the settlement was tainted by conflicts of interest.[3]

12. The Court finds that, absent settlement, Plaintiffs would have faced significant litigation risk, including a substantial risk of obtaining no recovery. The Court finds that Plaintiffs faced significant challenges to certifying a damages class in this case, and risks that any damages claims would have been eliminated or significantly reduced based on Google's

---

[3] *See, e.g.,* Objection of B. Lawson, ECF 274 & 287 at ¶¶ 40, 66.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

pending *Daubert* motions, and that Plaintiffs also faced substantial challenges on summary judgment and at a potential trial. The Court further finds that the success of the similar state-court *Csupo* action is not a meaningful indicator of the likelihood of success in this case, because of the differing procedural rules and legal standards.

13.    The Court overrules the objections of Nathan Byars (ECF 288) arguing that the settlement should be rejected and that Plaintiffs should instead continue the litigation and attempt to use the *Csupo* jury verdict to pursue offensive collateral estoppel or issue preclusion in this case. At the time the parties agreed to settle the dispute, class certification and *Daubert* motions had been fully briefed and argued. Plaintiffs faced significant risk of adverse rulings in connection with both sets of motions. Adverse rulings on either of those issues, as a practical matter, would have precluded Plaintiffs from obtaining damages in this action. Because those issues were procedural in nature, and turned on standards differing from the ones governing the *Csupo* matter, issue preclusion could not have avoided significant imminent risks to Plaintiffs' case. Moreover, under California law the *Csupo* verdict could only have preclusive effect after appeals were exhausted. *See, e.g.*, *Samara v. Matar*, 5 Cal. 5th 322, 335 (2018) *Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 606 (2010). The Court finds that Google intended to appeal the *Csupo* verdict and had already filed a protective notice of appeal (ECF 331 ¶ 122 & Ex. R). Once the Court denied Class Counsel's stay motion—which was expressly brought by Plaintiffs in the hope of later seeking issue preclusion—there was no longer any realistic possibility that the *Csupo* judgment would have preclusive effect, because the trial in this case would have occurred before completion of the *Csupo* appeal. The Ninth Circuit and the Supreme Court have cautioned that courts should not exercise their discretion to apply issue preclusion (or offensive non-mutual collateral estoppel) when it would be inconsistent with a previous judgment in favor of the defendant. *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 (9th Cir. 2007); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 776 (9th Cir. 2003); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979)).

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

14.     The Court finds that the relief in this settlement is fair, reasonable, and adequate under Rule 23. The monetary relief of $135 million is significant under the circumstances of this case. Before settlement Google argued, with some persuasive force, that Plaintiffs' proposed damages methodology inappropriately inflates damages based on the average price of all cellular data, rather than the value of the alleged converted property. Google maintained in its *Daubert* and other briefing that the great majority of Android users suffered no damages at all and the relevant value, if any, of the allegedly converted cellular data is its marginal value. The Court finds that Google's arguments presented significant risk that plaintiffs' damages methodology would be excluded under *Daubert*. In light of these circumstances, the $135 million monetary relief in this Settlement represents a substantial amount of Plaintiffs' potential damages, and a significant recovery for the class.

15.     The Court finds that the modest size of the individual payments that will be made to each class member is reasonable and adequate under the circumstances presented here. The size of the *per capita* payments is a function of the nature of this case, which involved the consumption of small amounts of cellular data by Google from a large group of people. Moreover, most payments will occur automatically, which is projected to result in the largest number of payments—between 71.5 and 104 million—in any class action case. This approach is fairer than requiring class members to affirmatively submit a claim form, which would significantly reduce the participation rate and result in the small portion of the class who submitted claim forms receiving disproportionately large awards. The individual awards that will result from the settlement are comparable to *per capita* payments that have been approved in other cases. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-2752, 2020 WL 4212811, at *10–11, *32–33 (N.D. Cal. July 22, 2020); *In re Google Plus Profile Litig.*, No. 18-cv-6164, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021). The Court therefore finds that the monetary relief is fair,

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

reasonable, and adequate and overrules all objections to the sufficiency of the monetary consideration.[4]

16.    The Court further finds that the injunctive relief provided by the settlement is fair, reasonable, and adequate. As described in the Court's Order Granting Preliminary Approval, the Settlement requires Google to disclose the conduct at issue in simple, clear language, including in a new fulsome disclosure that will be displayed when setting up an Android device, in revisions to the Google Play Terms of Service, and in even greater detail in the Google Help Center webpage explaining Google Play services. These new, highly detailed disclosures of the conduct at issue will enable Android users to make informed decisions about whether they wish to continue using Android mobile devices. As discussed in the Court's preliminary approval order, this injunctive relief is robust and comprehensively addresses the issues raised in the complaint. ECF 270 at 20–21. The Court finds that obtaining the injunctive relief now—which class counsel view as a significant victory for transparency—is in the best interests of the class, whereas continued litigation would delay any injunctive relief considerably. The Court notes that class counsel have expressed the view, which the Court credits and finds to be reasonable, that the terms of the injunctive relief afforded by the settlement are as good as Plaintiffs could reasonably expect to achieve, either in a settlement negotiation or through continued litigation. ECF 330–1 at 2–3. The Court also finds that the contemplated injunctive relief will provide

---

[4] *See, e.g.*, Objections of: J. Varga, ECF 273 at ¶ A; C. Long, ECF 276 at 1-2; B. Lawson, ECF 274 & 287, at ¶¶ 1, 7, 17, 31; T.R. Jacobs, ECF 279 at 2; C. Brown, ECF 280 at 2; M. Krause, ECF 283 at 2; D. S. Maynard, ECF 285 at 2; J.D. Maynard, ECF 286 at 2; A. Hawkins Jr., ECF 289 at 2; D. Omabegho, ECF 290 at 2; B.T. Walker, ECF 291 at 1; I. Flournoy, ECF 293 at 1–2; A. Ammon, ECF 296 at 1–2; A.R. Hamilton, ECF 297 at 1–2; M. Peralez, ECF 303 at 1; A. Plotkin, ECF 305 at 2; S. Carpenter, ECF 308 at 1; D. Mawe, ECF 310 at 2; J. Mccorvey, ECF 312 at 1; C. Price, ECF 313 at 1; W.H. Cisson, ECF 314 at 1; M. R. Davidson, ECF 318 at 1; C.M. Tepfer, ECF 319 at 1; J.K. Faber, ECF 316 & 320 at 2; M.L. Coak, ECF 323 at 1–3; D. McCorvey, ECF 324 at 1; M.A. Focia, ECF 327 at 1; T. Scheffler, ECF 328 at 2–4; Wallenstein Decl., Ex. H, Bekendam at 3, ECF 331-8; S.D. Ford, ECF 321 at 2; Wallenstein Decl., Ex. I, N. Castorina at 1, ECF 331-9; Wallenstein Decl., Ex. G, R. Messenger at 1, ECF 331-7.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

meaningful benefit to all or substantially all class members. The Court therefore overrules all objections that the injunctive relief is inadequate.[5]

17.     The Court finds that as a whole, the monetary and injunctive relief contemplated by the Settlement are fair, reasonable, and adequate.

18.     The Court finds that the Release in the Settlement is fair, reasonable, and adequate, and that it complies with applicable Ninth Circuit law. The scope of the release extends to "any and all claims, liabilities, rights, demands, arbitrations, suits, actions, causes of action, obligations, damages, penalties costs, attorneys' fees, losses, and remedies of every kind or description against the Releasees—whether known or unknown, existing or potential or that hereafter may exist or might have existed, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that were asserted in the Action, could have been asserted in the Action, and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s), to the maximum extent allowed by law, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law." The Parties have stipulated in their Joint Supplemental Brief Regarding Final Approval of Class Action Settlement that the later clause reading "and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s)" limits the preceding clause reading "could have been asserted in the Action." ECF No. 348 at 3. The Court concludes that this release extends only to those claims that arise from the same common nucleus of operative fact as the claims Plaintiffs asserted in the operative complaint. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 n.2. (9th Cir. 2005). The Court therefore finds that the release extends no further than permitted by applicable Ninth Circuit law. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1288 (9th Cir.

---

[5] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶¶ 4, 5, 6, 13, 18, 24, 30, 33, 48, 72, 77, 89, 90; G.C. Warrington, ECF 277 at 1; C. Brown, ECF 280 at 2; N. Byars, ECF 288 at 4, 8; A. Hawkins Jr., ECF 289 at 2; I. Flournoy, ECF 293 at 2; J.K. Kirkley, ECF 304 at 2; J. Mccorvey, ECF 312 at 2; C.M. Tepfer, ECF 319 at 2; M.L. Coak, ECF 323 at 3; D. McCorvey, ECF 324 at 2; M.A. Focia, ECF 327 at 2; T. Scheffler, ECF 328 at 6–9.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

1992). The Court further finds that the Release is fair in light of the substantial benefit the class obtains in exchange for it. Accordingly, the Court overrules objections to the scope of the release.[6]

19.    The Court finds that the notice of this Settlement was reasonable and adequate, including because the Settlement Administrator successfully transmitted email notice to more than 98.8% of emails associated with class members. The notice was substantially identical to the notice approved by the Court in its Preliminary Approval Order and informed interested parties of the principal terms of the Settlement, as well as the deadlines and procedures for objecting or opting out. The Court also finds that the supplemental media campaign, settlement website, and press coverage further rendered the notice of the Settlement reasonable and adequate. The Court further finds that class members who objected that they did not receive notice emails nonetheless learned about the settlement, and were determined to either be *Csupo* class members (and thus not members of this class) or were provided credentials that would have allowed them to provide evidence of class membership, meaning they no longer have standing to object to not receiving notice.[7] This District requires "at east thirty-five days to opt out or object to the settlement." N.D. Cal. Procedural Guidance for Class Action Settlements, at 4 (Sept. 5, 2024). All class members had a significantly longer period here. The Court finds that class notice began on March 24, 2026 and ended on April 9, 2026. Objections were due on May 29, 2026, between 50 and 66 days later. The Court therefore overrules objections regarding class notice.[8]

---

[6] *See, e.g.*, Objections of: J. Mccorvey, ECF 312 at 1–2; B. Lawson, ECF 274 & 287, ¶¶ 3, 7, 68; N. Byars, ECF 288 at 9, 18–19; A.R. Hamilton, ECF 297 at 2; J.K. Kirkley, ECF 304 at 2; I. Flournoy, ECF 293 at 1; D. Mawe, ECF 294 at 4; W.H. Cisson, ECF 314 at 1; M.L. Coak, ECF 323 at 3; M. Sussman, ECF 325 at 1; T. Scheffler, ECF 328 at 13; S.D. Ford, ECF 321 at 2.
[7] *See* Objections of: R. Aumaitre, ECF 282 at 1–8; G. Dillmann, ECF 317 at 1–2; A.M. Lauderdale, ECF 315 at 1–2; J.K. Faber, ECF 316 & 320 (also claimed to have not received Notice and contacted Class Counsel for assistance in obtaining credentials just after mailing her objection).
[8] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶¶ 8, 11, 12, 14, 19, 29, 38, 39, 52; D. Omabegho, ECF 290 at 3–4; R. Aumaitre, ECF 282 at 2–4; M. Krause, ECF 283 at 2; D.S. Maynard, ECF 285 at 2; J.D. Maynard, ECF 286 at 2; C. Andrews, ECF 302 at 30–45; D. McCorvey, ECF 324 at 1; M. Sussman, ECF 325 at 1, 5.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

20.    The Court finds that the Settlement will fairly distribute the net settlement proceeds to class members, and that the Settlement treats class members equitably relative to each other. After paying attorney's fees, litigation costs, settlement administration costs, and incentive awards, the net settlement fund will be distributed on a pro rata basis to the class. Class members had an opportunity to elect a payment method, and to date approximately 400,000 class members have done so. The vast majority of payments will be sent automatically to class members' existing PayPal, Venmo or Zelle accounts. Although no claim form is required, the Court finds that class members have been afforded an opportunity to request inclusion in the class by completing an on-line webform and providing supporting documentation of ownership of an Android mobile device during the class period, even if they are not on the class list provided by Google. The Settlement Administrator avers, and the Court finds, that approximately _____ individuals have successfully availed themselves of this opportunity to be added to the class list.

21.    The Court finds that this distribution method yields more benefit to the class at lower cost to the class compared to other methods the Court has considered, and that it treats class members equitably in light of the administrative difficulty of calculating individual payment amounts. The Court finds that Google may not have records necessary to determine the length of time class members have had Android phones to calculate individual payments for all class members for the class period, and that in any event, the collection and analysis of such voluminous records would be so costly and time-consuming that it would deplete the class fund. The Court finds that both parties' experts incurred substantial costs to analyze samples of a few thousand class members' cellular data consumption for a limited portion of the class period, which further leads the Court to conclude that a similar analysis of all class members' cellular data consumption for the entire class period would be so costly that it would be a material detriment to the class as a whole and to most, and perhaps all, individual class members. The Court further finds that the system of automatic payment, with no required claim form, is equitable because it is calculated to maximize participation in the settlement, so that payments

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

are not disproportionately provided to a small number of class members who submit claim forms. The Court therefore overrules all objections to the plan of distribution.[9]

22.    The Court further finds that the incentive payments for the class representatives are fair, reasonable, and adequate, including because they are not disproportionate in light of the effort and sacrifice undertaken by the class representatives in pursuing this litigation. Each Class Representative devoted significant time and effort (between 60-80 hours each) working on this case. The Court therefore overrules the objections to the incentive awards.[10]

23.    The Court finds that the attorneys' fees and costs approved in this Order are fair, reasonable, and adequate. The Court finds that the fee award is reasonable under both California and federal law, including because Class Counsel engaged in six years of litigation and discovery, two motions to dismiss, and a successful Ninth Circuit appeal, in a case involving novel claims taken on full contingency. The Court further finds that the costs awarded in this Order were reasonably incurred in pursuit of the claims of the class. The Court therefore overrules the objections to the attorneys' fees and costs.[11]

24.    The Court finds that the reaction of the class to the Settlement has been positive. Of the nearly 130 million class members, only 50 sets of objections were received, and only 122 individuals timely opted out. By contrast, nearly 400,000 class members affirmatively indicated their approval of the settlement by electing a payment method, notwithstanding that it was optional to do so.

---

[9] *See, e.g.*, Objections of: T.R. Jacobs, ECF 279 at 5–7; D. Omabegho, ECF 290 at 2–3; C. Andrews, ECF 302 at 17–18, 27, 35, 37, 45; C.L. Quate, ECF 307 at 1; M. Sussman, ECF 325 at 1, 3–4; B. Lawson, ECF 274 & 287, at ¶ 9; A.R. Hamilton, ECF 297 at 2.

[10] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶ 63; I. Flournoy, ECF 293 at 2; C. Andrews, ECF 302, at 10; J. McCorvey, ECF 312, at 2.

[11] *See, e.g.*, Objections of: J. Varga, ECF 273 at Intro & ¶¶ A–D; B. Lawson, ECF 274 & 287, ¶¶ 2, 22, 71; C. Long, ECF 276 at 1–2; T.R. Jacobs, ECF 279 at 4–5; M. Krause, ECF 283 at 1; J.S. Stoltzfus, ECF 284 at 1; D.S. Maynard, ECF 285 at 1; J.D. Maynard, ECF 286 at 1; A. Hawkins Jr., ECF 289 at 2; D. Omabegho, ECF 290 at 3; B.T. Walker, ECF 291 at 1; I. Flournoy, ECF 293 at 1–2; A.R. Hamilton, ECF 297 at 2; J. Renfort Jr., ECF 301 at 3–6; C. Andrews, ECF 302 at 12, 37, 50; M. Peralez, ECF 303 at 1; J.K. Kirkley, ECF 304 at 2; J.R. Davis, Jr., ECF 306 at 1–4; S.R. Carpenter, ECF 308 at 1; J. Mccorvey, ECF 312 at 2; W.H. Cisson, ECF 314 at 1; J. Faber, ECF 316 & 320 at 1; D. McCorvey, ECF 324 at 1–2; T. Scheffler, ECF 328 at 12.

25.     The Court credits Class Counsel's view, and the view of Special Settlement Counsel, that the Settlement is fair, reasonable, and adequate, and in the best interests of the class, in view of significant risks proceeding with the litigation through trial, and the substantial monetary and injunctive relief the class obtains in this settlement. Class Counsel and Special Settlement Counsel have substantial experience in complex litigation class actions, including a detailed understanding of the strengths and weaknesses of this case. The Court further finds that this litigation is at an advanced enough stage for class counsel to make a reasoned judgment to settle this case, having completed all discovery, substantial motions practice, and an appeal, spanning roughly six years.

## II.     Findings of Fact and Conclusions of Law Regarding Certain Objections

26.     The Court finds that all of the objections are invalid or otherwise without merit. A number of objectors have not established standing, which is their burden.[12] *See In re Yahoo Mail Litig.*, No. 13-cv-4980, 2016 WL 4474612, at *8 (Koh, J.) (N.D. Cal. Aug. 25, 2016).  Each such objector is not on the class list created from Google's Android account data and have not provided evidence of class membership. Several objectors have requested exclusion, rendering their objections invalid.[13] *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 n.6 (N.D. Cal. 2017).  Other objections are invalid because they were not filed with the Court as required by the notice.[14] *See In re TD Ameritrade Acct. Holder Litig.*, No. 07-cv-2852, 2011 WL 4079226, at *11 (N.D. Cal. Sept. 13, 2011). Two objectors are actually class members in *Csupo*, not this case.[15] And two objectors have withdrawn their objections.[16]

---

[12] *See* Objections of: J. Varga, ECF 273; J. Stoltzfus, ECF 284; B. Walker, ECF 291; D. Mawe, ECF 294; A. Ammon, ECF 296; A. Hamilton, ECF 297; M. Peralez, ECF 303; J. Davis, ECF 306; C. Price, ECF 313; W. Cisson, ECF 314; G. Dillman, ECF 317; C. Brown, ECF 280; R. Davidson, ECF 318; S. Ford, ECF 321.
[13] *See* Objections of: C. Brown, ECF 280; R. Davidson, ECF 318; S. Ford, ECF 321.
[14] *See* ECF 331-6 to 331-11.
[15] *See* Objections of: R. Aumaitre, ECF 282; A.M. Lauderdale, ECF 315.
[16] *See* ECF 331-5 (withdrawal of objections by Myesha Prather, ECF 300); ECF 345-1 (withdrawal of objections by Taylor Ross Jacobs, ECF 279).

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

27. Other objectors fundamentally misunderstand the nature of this lawsuit, which is about cellular data that is purchased from cellular carriers, not about "personal data," *i.e.*, personal information or privacy concerns.[17]

28. While 50 sets of objections were received, only 25 were timely filed (and not withdrawn) by persons known to be class members who did not opt out. The Court nevertheless addresses the merits of all these objections.

29. The Court finds that the objections of **Christopher Andrews (ECF 302)** are unsubstantiated and lack merit.

30. The Court finds that the following documents were made available on the case website on or before May 20, 2026, shortly after Andrews first requested access to them: Defendant's Answer to Plaintiffs' First Amended Complaint, Plaintiffs' Motion for Preliminary Approval, and a Spanish-language version of the exclusion form. ECF 330 at nn. 6, 8; ECF 331 ¶¶ 55-56. The Court finds that this is sufficiently in advance of the May 29 objection deadline for class members to review them.

31. The Court finds that the following additional pleadings were available on the case website throughout the objections period, including: the First Amended Complaint, the Motion for Stay, the Order Denying Plaintiffs' Motion for Stay, and the Order Granting Preliminary Approval. The Court finds that the following pleadings, including their exhibits and supporting materials, were posted to the case website shortly after they were filed, before the objection deadline: Plaintiffs' Motion for Fees, Costs, and Incentive Awards, and Plaintiffs' Motion for Final Approval of Class Action Settlement.

---

[17] *See, e.g.*, Objections of: B. Lawson, ECF 274 & 287 at ¶¶ 18, 33, 57; C. Brown, ECF 280 at 2; B.T. Walker, ECF 291 at 1; A.R. Hamilton, ECF 297 at 2; M. Peralez, ECF 303 at 1; C.L. Quate, ECF 307 at 1; C. Price, ECF 313 at 1; J.K. Faber, ECF 316 & 320 at 3; C.M. Tepfer, ECF 319 at 1; M.L. Coak, ECF 323 at 3; Wallenstein Decl., Ex. H, S. Bekendam at 2–3, ECF 331-8; S.D. Ford, ECF 321 at 2.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

32.    The Court further finds that, as demonstrated by his 50 pages of objections, Mr. Andrews is fluent in English and therefore lacks standing to object on behalf of class members who are not. *Edwards v. Andrews*, 846 F. App'x 538, 539 (9th Cir. 2021).

33.    The Court finds that Mr. Andrews does not claim to be and (has not shown that he is) a resident of a U.S. territory and therefore lacks standing to raise objections on behalf of people who are. In any event, the class definition matches the scope of the release.

34.    The Court finds that Mr. Andrews has not shown that he is a participant in the "Lifeline" program and therefore lacks standing to raise an objection on behalf of people who are. In any event, by his own admission, users of the "lifeline" program have cellular data plans provided by private companies, which are paid or reimbursed through a government program. The fact that these persons' cellular data plans are paid for by the government does not negate such persons' rights to exclusively possess and control their cellular data. Such individuals who otherwise meet the class definition may participate in the Settlement like any other class member.

35.    Andrews further argues that he should not have to "jump through hoops" to participate in the Settlement. ECF 302 at 37. But he can elect a payment method simply by filling out the web form that has been provided to him, which he has not done to date. ECF 331 ¶ 54.

36.    Andrews further argues that the number of class members was under-counted at the preliminary approval stage. Google produced the class list following the grant of preliminary approval, and the number of class members is now fully accurate. There is nothing unusual or improper about reasonably estimating the size of the class at preliminary approval stage, and finalizing the actual number at the final approval stage.

37.    Andrews further argues that the parties' damages expert reports are under seal. That is because they contain the confidential information of Google produced pursuant to protective order. This includes Google's internal records and user data. Google credibly argued that the data itself, as well as the manner that Google stores the data, is confidential and should

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

remain under seal. In any event, the parties' respective damages figures are set forth in the parties' publicly filed motion papers, and "the release of partisan expert views on one side or the other" in any greater detail would not have materially changed class members' knowledge. *In re Lehman Brothers Equity/Debt Securities Litigation*, ECF 1402, Tr. 34:6-35:10, No. 09-md-02017 (S.D.N.Y. Apr. 24, 2014) (overruling same objection by Mr. Andrews in another case).

38.    Andrews has made similar objections in prior cases. The Ninth Circuit affirmed the rejection of Andrews' objections in a prior case that notice was not translated into Spanish, finding that he lacked standing. *Edwards*, 846 F. App'x at 539. The Ninth Circuit rejected a prior objection by Andrews that incentive payments to class representatives created a conflict of interest. *Id.* at 540. The Ninth Circuit also rejected Andrews' argument—similar to one raised here in ECF 351—that the district court violated his due process and First Amendment rights "when it restricted the scope of his oral argument." *Id.*

39.    Although the Court focuses on the merits of Andrews' objections, it is noteworthy that multiple courts have found that Andrews is a serial objector who routinely files unsupported and meritless objections in an effort to extort money. For example, the Sixth Circuit affirmed an award of sanctions against Andrews for vexatious litigation in *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 WL 8791098, at *4 (6th Cir. Dec. 14, 2017). The district court had found that "it is an insult to the judicial system" to "now have Objectors file frivolous appeals in pursuit of a payoff." *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 646 (N.D. Ohio 2016). After Andrews appealed but failed to post his appeal bond (and lost multiple motions for a stay), the district court ultimately imposed $15,303.00 in sanctions because Andrews "had vexatiously used the judicial system either to extort a pay-off from [counsel for the class] or as a delay tactic to prolong his coercion attempt." *In re Polyurethane Foam Antitrust Litig.,* 2017 WL 8791098, at *2 (citation modified). On appeal, the Sixth Circuit affirmed the sanctions awards, holding that:

> Andrews unreasonably and vexatiously multiplied the proceedings through his myriad of repetitive, meritless pleadings contesting the appeal bond and the original

17

sanctions award, as well as through his efforts to impede IPC's collection of sanctions. Andrews knew or should have known that his arguments were frivolous because he continued to assert them after repeated rejections by the district court. Moreover, the arguments that Andrews raises on appeal are unpersuasive.

*Id.* at *3. Mr. Andrews then filed for Chapter 7 bankruptcy and tried to have the monetary obligation to pay the sanctions discharged. *See In re Andrews*, No. 18-31345, 2019 WL 3331604 (Bankr. E.D. Mich. July 23, 2019). He filed an adversary proceeding against the class and the law firm attempting to collect the sanctions, which was dismissed. *See id.*; *Andrews v. Miller LLC*, No. 18-03070 (Bankr. E.D. Mich. Aug. 13, 2019). Years later, the class ultimately settled with Andrews. *See* Notice of Satisfaction and Release, *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-02196 (N.D. Ohio Mar. 15, 2022), ECF 2201.

40.    In *Shane Group Inc. v. BCBS*, the Sixth Circuit affirmed final approval of a $29.99 million settlement and overruled Andrews' objections, "many of them undeveloped, all of them meritless." 833 F. App'x 430, 431 (6th Cir. 2021) (per curiam). The Court noted that Andrews "is a serial objector who in this case unsuccessfully sought a $150,000 payoff to drop his objections." *Id.* The district court in *Shane* found that Mr. Andrews' "submissions are not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." *Shane Grp., Inc. v. BCBS*, No. 10-cv-14360, 2015 WL 1498888, at *20 (E.D. Mich. Mar. 31, 2015) (vacated and remanded on other grounds). The district court observed that "other courts have noted that Andrews is known to be a professional objector who has extorted additional fees from counsel in other cases." *Id.* (citation modified).

41.    At the final approval hearing in *In re Equifax, Inc., Customer Data Security Breach Litigation*, Mr. Andrews stated that he had "filed about ten objections and four or five appeals in various parts of the country." Tr. 64:3–6, No. 17-md-02800 (N.D. Ga. Dec. 20, 2019), ECF 943. After Andrews' objections were denied, the district court also denied Andrews' Motion to Proceed in Forma Pauperis, citing his "propensity to make outrageously false statements in the pleadings" and finding that Andrews was "acting maliciously within the

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

meaning of 28 U.S.C. § 1915(e)(2)(B)(i)." Order at 1–2, *In re Equifax* (May 7, 2020), ECF 1089. The court ultimately concluded: "there can be no question but that Mr. Andrews is acting maliciously and engaged in bad faith litigiousness." *Id.* at 2. The district court in *In re Equifax* ordered Andrews to pay an appeal bond, which he never did. Order at 10 (May 11, 2020), ECF 1094. He filed an appeal anyway. The Eleventh Circuit dismissed Andrews' appeal because he failed to pay the bond, and made an untrue claim of indigence in his application to proceed in forma pauperis. Opinion at 5–6 & nn. 4–5, *In re Equifax*, No. 20-10249 (11th Cir. June 3, 2021), ECF 303-2.

42.    In *In re Lehman Brothers Equity/Debt Securities Litigation*, Andrews objected that expert damages reports were sealed, an objection he also makes here. Judge Kaplan accurately explained to Andrews at the final approval hearing why that objection is misplaced, since it would not "have added greatly to your store of knowledge or mine, to tell you the truth. It's just the way the world works." *Id.* Tr. 34:6–35:10, No. 09-md-02017 (S.D.N.Y. Apr. 24, 2014), ECF 1402.

43.    These are just some of the cases in which Mr. Andrews has objected.[18] His objections date back to at least 2007, where he objected and then withdrew his objection after being paid $25,000 in "consulting fees" by class counsel, on top of $12,000 in such fees that he had already received. Mot. *In re Tyco Sec. Litig.,* No. 02-md-1335 (D. N.H. Oct. 22, 2007), ECF 1146-17, 1147; *see also* Order at 6, *Freudenberg v. E\*Trade Fin. Corp.,* No. 07-cv-8538 (S.D.N.Y. Oct. 22, 2012), ECF 154.

44.    After the final approval hearing in this case, Andrews filed a pleading arguing that he attempted to participate in the hearing but was unable to do so due to technical issues. *See*

---

[18] Andrews has filed objections that were overruled in at least five additional cases. *See In re Packaged Ice Antitrust Litig.*, No. 08-md-1952 (E.D. Mich. May 11, 2017 & Sept. 19, 2017); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 (N.D. Cal. Aug. 22, 2016 & Sept. 7, 2016), ECF 1392 (Objs.), 1438 (Order); *Careathers v. Red Bull GmbH*, No. 13-cv-369 (S.D.N.Y. Apr. 21, 2015 & May 12, 2015), ECF 72 (Objs.), 101 (Order); ECF 539 (Objs.), 569 (Order); *Friedman v. Penson Worldwide, Inc.*, No. 11-cv-2098 (N.D. Tex. Aug. 6, 2013 & Aug. 23, 2013), ECF 92 (Objs.), 101 (Order); *In re Nutella Mktg. & Sales Pracs. Litig.*, No. 11-cv-1086 (D.N.J. June 8, 2012 & July 31, 2012), ECF 78 (Objs.), 104 (Order).

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

ECF 351. The Court finds that Andrews did not attend (or attempt to speak) at the final approval hearing, despite his claims to the contrary in ECF 351. The Court's deputy clerk orally listed all persons present at the videoconference of the hearing, and Andrews was not among them. Another objector, David Mawe, was present at the hearing but was unable to speak—not Andrews. The Court gave each objector who wished to speak an opportunity to do so either in person or via video call, including Andrews. The Court finds that the other objectors who wished to speak were able to and had no problem availing themselves of the Court's procedures.

45.    In any event, the Court has reviewed and considered the materials that Andrews claims he would have presented, which include the written statement he says he could have given. ECF 351, ECF 352, and ECF 353. As the Court has reviewed all of Andrews' objections in writing, including Andrews' prepared statement which he represents he would have read at the Fairness Hearing, the Court finds that there was no prejudice from Andrews failing to speak at the Fairness Hearing. Furthermore, there is no right for objectors to be heard on objections that are frivolous or without substance, and Andrews' objections fall within this category. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 836 (9th Cir. 1976) ("Objections found to be without substance and frivolous require no hearing . . . .").

46.    Andrews argues that the Settlement Administrator sent an "illegal lobbying email" "attempting to get objectors to drop their objections." ECF 351. He seeks to remove the claims administrator for this purported misconduct. ECF 353. The text of the email message from the Settlement Administrator that Andrews filed is as follows:

> Your objection to the settlement in *Taylor v. Google*, No. 5:20-CV-07956-VKD (N.D. Cal.) has been received by the Court. Your objection will be resolved by the Court in due course.
>
> Whatever the Court decides, you will be bound by the Court's decision and will remain part of the settlement.
>
> If you would prefer to not be bound by the Court's decision, you may exclude yourself from the lawsuit, which is sometimes called 'opting out.' If you exclude yourself, you will no longer have the right to object, but you will keep the right to sue Google on your own about the claims in this Lawsuit.

> If you wish to exclude yourself, please fill out the form available at the links below, and mail them to the Court postmarked on or before May 29, 2026.

The email message then provides links to the exclusion form in both English and Spanish. The Court finds that this email message is both factually accurate and fair. It simply informs objectors that they will be bound by the Court's decisions and explains how they may instead exclude themselves if they wish to do so.

47. Andrews also purports to file a motion for sanctions and to strike certain pleadings that he claims were not served on him, and attaches an email he sent to the Court in which he argues that Class Counsel was required to serve him but failed to do so. ECF 352. Andrews is incorrect. Andrews is not a named party to this case, and has not sought to intervene, and there is thus no requirement that he be served with any pleadings. Rule 5 requires service on *parties*, but absent class members who have not sought leave to intervene are not parties for the purpose of notice and service. *See. Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076–77 (9th Cir. 2017) (rejecting argument that each class member must receive notice that a magistrate judge has been designated). Where a rule "cannot sensibly read to include absent class members," it is not, *see id.*, and Rule 5 cannot sensibly be read to require service on all absent members of a class of more than 129 million people. *See id.* Nor has Andrews cited any law or authority demonstrating that any court rule has been violated or that any standard for sanctions has been met here.

48. Furthermore, because Andrews has not moved to intervene, he is not a named party to this case and may not file motions or other pleadings, apart from his objections. Nor is Andrews' failure to move to intervene a mere foot-fault, as objectors in the Ninth Circuit are "not entitled to intervene" as of right. *Embry v. Acer Am. Corp.*, No. C 09-01808, 2012 WL 13059908, at *1 (N.D. Cal. Jan. 27, 2012) (collecting cases). Andrews' two purported motions, ECF 352 and 353, are therefore denied both because they are meritless and because they were improperly filed by a class member who has not intervened.

49. Accordingly, the Court overrules the objections of Christopher Andrews (ECF 302).

21

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

50.    The Court finds that the objections of **Michael Sussman (ECF 325, 347)** are unsubstantiated and lack merit.

51.    The Court finds that Mr. Sussman received email notice, as he acknowledges in ECF 347 ¶¶ 1-3. Mr. Sussman therefore lacks standing to object on behalf of class members who did not receive email notice. *Edwards* 846 F. App'x at 539 (citing *Hollingsworth v. Perry*, 570 U.S. 693 (2013)). Specifically, Mr. Sussman lacks standing to argue that "no alternative mechanism exists" for class members who did not receive email notice but wish to participate in the settlement. ECF 325 at 1.

52.    The Court further finds that class members who claimed not to have received notice were provided a link to a web form that allowed them to submit proof of their membership in the class and elect a payment method. ECF 330-2 ¶ 24 & Ex. G; ECF 331 ¶¶ 6, 71. The Court finds that this approach is consistent with settlement-administration best-practices. ECF 330-14 ¶ 23. The Class List in this case contains more than 129 million members. Requiring non-listed persons who claim to be class members to affirmatively contact the settlement administrator and provide proof of class membership is a reasonable way to combat false or fraudulent requests for payment. The Settlement Administrator has averred that all objectors who claimed not to have received class notice were provided the information required to make such a submission, and the Court credits that representation. ECF 330-2 ¶ 33.

53.    The Court further finds that Mr. Sussman has not elected to receive payment via a pre-paid MasterCard and therefore lacks standing to raise objections on behalf of class members who have. As Mr. Sussman admits, he chose not to elect a payment method, even though he could have done so, because he received notice. ECF 347 ¶ 23. Under the plan of distribution approved by the Court, prepaid MasterCards are not being issued to Settlement Class members unless that means of payment is expressly requested in the optional payment election form, which was submitted by only approximately 400,000 of the 129 million class members. ECF 330-2 ¶ 27; *see* Supplemental Declaration of Steven Weisbrot of Angeion Group, LLC, ECF No. 267 ¶ 2.

54. The Court further finds that Mr. Sussman does not allege (and has not shown) that he is an executor empowered to act on behalf of any estate. He therefore lacks standing to raise objections on behalf of individuals who are. In any event, the Court is aware of no prohibitions against an executor requesting payment in this case on behalf of an estate.

55. The Court further funds that Mr. Sussman does not have an attorney and therefore lacks standing to raise objections on behalf of class members who do.

56. The Court further finds that Mr. Sussman has not provided any protective order from any other Court that he claims was violated, and has therefore failed to substantiate his claim that any such violation has occurred. In any event, the proper venue for such an issue is with the court that issued the protective order. The Court is not persuaded by Mr. Sussman's argument that the Settlement Administrator improperly utilizes information from one case in other cases and the Court finds that such argument is unsupported by any evidence beyond Mr. Sussman's conclusory statements.

57. The Court accepts into the record all the materials Mr. Sussman has lodged along with his Motion to Intervene, ECF 336, and denies his Motion to Intervene as moot, because it sought only to file those materials, which the Court has now considered.

58. The Court finds that Mr. Sussman has routinely objected to class action settlements, and has filed unsupported and meritless allegations in multiple cases. *See* ECF 331 ¶¶ 72-85; ECF 335-3 at 6-9. For example, Sussman objected that he was unable to submit a claim in *In re Telescopes Antitrust Litig.,* arguing that it was too great an obstacle for him to have to contact the settlement administrator in order to submit a claim—an argument he also raises here. *Telescopes*, No. 20-cv-03639, ECF 403. The *Telescopes* court highlighted how the obstacles to submitting a claim that Sussman identified were actually valid measures to combat fraud:

> As the Court discussed during the Fairness Hearing, the presence of fraudulent class action settlement claims is a growing and serious concern that could jeopardies the integrity of class action settlements. The requirement for Settlement Class Members without a claim number to personally call Verita could be an effective and appropriate way to minimize this risk. *See, e.g., In re Anthem, Inc. Data Breach*

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

*Litig.*, 327 F.R.D. at 329–30 (approving settlement and overruling objections based on difficulties communicating with the settlement administrator and utilizing the claims website).

*Telescopes*, No. 20-cv-03639, ECF 419 at 14 (April 11, 2025).

59.     Sussman appears to have made inconsistent statements in different cases about his employment status. For example, in *In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-2420 (N.D. Cal. 2024), Sussman state in a declaration that he is an "internet technician" who has "provided these services non-stop since 1996" for a number of companies. *Id.* ECF No. 2778-1 at 3. But in *Telescopes*, Sussman represented that "he is on Social Security Disability Insurance, receives less than $1,000 per month, and would have to sell his condominium to make the requested bond." *Telescopes*, No. 20-cv-03639, ECF 483 (Nov. 20, 2025). Sussman argues in ECF 347 that he started receiving Social Security after the former statement but before the latter, but that does not resolve the inconsistency. It is not credible that Sussman has been providing services to major companies "non-stop since 1996" in the year 2024, but lacked the financial wherewithal to post an appeal bond in 2025.

60.     Sussman also filed a FOIA lawsuit seeking records about a "threat investigation" conducted by the U.S. Marshal's Service after Sussman "sent a letter to the home of a federal judge." *Sussman v. U.S. Marshals Serv.*, No. 03-cv-610 (D.D.C.). 808 F. Supp. 2d 192, 194 (D.D.C. 2011) (vacated in part on other grounds on reconsideration).

61.     Sussman and an associate were found to have violated the Anti-Cybersquatting Consumer Protection Act in a lawsuit by DaimlerChrysler involving an extortion scheme. *See DaimlerChrysler v. Net Inc.,* 388 F.3d 201, 203 (6th Cir. 2004) (affirming grant of summary judgment in favor of Plaintiff). The Sixth Circuit held that Sussman and his associate acted "with a bad intent to profit." *Id.* at 207.

62.     Based on a review of pleadings in other cases, Sussman appears to work in concert with a number of other *pro se* objectors and business entities. Counsel in other cases have argued that some of these persons may actually be aliases for Sussman. *See* ECF 331 ¶¶ 72-85; ECF 335-3 at 6-9.

63.     In another case, Sussman appears to have filed a fake ID—specifically a New York driver's license that lists his address as a UPS Store in Florida—as proof of his identity. *See* Sussman Opp. to Bond Mot. at 4, *Filardi v. Mid-America Pet Food, L.L.C.,* (Apr. 24, 2026), ECF 73. The New York Department of Motor Vehicles generally requires proof of legal residency within the state of New York, with limited exceptions for active-duty military personnel and students. See N.Y. Dep't of Motor Vehicles, Driver License: Provide Appropriate Proof of Residency, *available at* https://dmv.ny.gov/driver-license/enhanced-or-realid. Counsel in *Filardi* argued Sussman was linked "to a web of individuals and addresses that are suspected to have been involved in fraudulent activity," Plfs.' Mot. for Final Approval of Settlement at 15, Filardi (Jan. 26, 2026), ECF 60, and that investigations have shown that he is "part of an organized serial objection scam," Plfs.' Letter at 1, Filardi (Mar. 17, 2026), ECF 69.

64.     Given that Mr. Sussman has raised similar issues in this case, many of which do not impact him, the Court has significant concerns regarding Mr. Sussman's motives as an objector.

65.     Accordingly, the Court overrules all the objections of Michael Sussman (ECF 325, 347).

66.     An individual named Michael N. Anhar filed a Notice and Declaration, ECF 354, 354-1, in which he explained that he had contacted the Settlement Administrator and Class Counsel in an effort to participate in the settlement but had not been provided the information necessary to do so. The Settlement Administrator has since provided Anhar with a link to the web form and the credentials necessary to provide proof of class membership and elect a payment method. Anhar did not file any objections in this case, timely or otherwise.

67.     The Court finds there is no basis to provide compensation or reimbursement to any objector.[19]

---

[19] *See* Objections of: B. Lawson, ECF 274 & 287 at ¶ 23; T.R. Jacobs, ECF 279; M. Sussman, ECF 325 at 17-18.

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

68. To the extent not specifically addressed herein, the Court finds the objections submitted to be unsubstantiated and without merit and overrules them.

69. The Court therefore finds that the requirements of Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws and rules have been satisfied for this Settlement.

70. The Court further finds the terms of the settlement to be fair, reasonable, and adequate, and in the best interest of the class.

### III.    Approval of Class Action Settlement

The Court GRANTS final approval of the Parties' Settlement Agreement and Release dated December 23, 2025 and each of its terms (as clarified in the Parties' Joint Supplemental Brief Regarding Final Approval of Class Action Settlement, ECF 348) and enters this Final Order and Judgment. The Court further finds and ORDERS as follows:

The Court certifies, for purposes of implementing the settlement only, the following Settlement Class: All natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order and Judgment, excluding persons who are class members (or who opted out) in *Csupo et al. v. Google LLC*, Santa Clara Superior Court Case No. 19CV352557.

The Court ORDERS that the Parties, Settlement Administrator, and Escrow Agent are to implement the Settlement Agreement, and that the Settlement Fund be distributed in accordance with the terms of the parties' Settlement Agreement, and as described in the Plan of Allocation, promptly upon the Escrow Release Date, as defined in Paragraph 1.14 of the Settlement Agreement.

The Court further ORDERS that all requests to participate in this Settlement from any persons who claim not to have received notice shall be submitted on or before 15 days after the entry of this Order ("Participation Request Deadline"). Promptly following entry of this Order, the Settlement Administrator shall email all persons who have been provided the link to the web form described above, but have yet to submit proof of class membership or elect a payment

26

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

method, advising them of the Participation Request Deadline. The Settlement Administrator shall complete the review of all requests for inclusion within 10 days following the Participation Request Deadline.

The Court approves payment from the settlement fund to Angeion, as Settlement Administrator, of $583,623.09 for costs of notice. Such payment shall be made consistent with the Settlement Agreement. The Court further authorizes Class Counsel, following distribution of individual settlement awards, to approve payment from the settlement fund to Angeion of administrative costs consistent with those set forth in Exhibit K to the Weisbrot Declaration. In the event Angeion requests payment of administrative costs materially in excess of those set forth in Exhibit K, Class Counsel shall present the matter to the Court for resolution.

The Court approves the Release set forth in Section 13 of the Settlement Agreement, as clarified in the Parties' Joint Supplemental Brief Regarding Final Approval of Class Action Settlement, ECF No. 348.

If any funds remain after the one or two rounds of distributions described in the Motion for Final Approval, the parties shall return to the Court for approval of a *cy pres* recipient or recipients, in accordance with Section 3.14 of the Settlement Agreement.

The Settlement Agreement allows the Parties to terminate the Settlement under certain defined conditions. For the avoidance of doubt, nothing in this Order is intended to or does abridge those rights. The Settlement Agreement also includes conditions that would prevent the Settlement from becoming effective (and the Escrow Release Date from occurring). Also for the avoidance of doubt, nothing in this Order is intended to modify those conditions.

The Court hereby OVERRULES all objections to the Class Action Settlement for the reasons stated herein and in the pleadings and materials cited herein.

## IV.    Stipulated Injunctive Relief

As of the Escrow Release Date, and only if such date occurs, the Court ORDERS Google as follows:

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

1. Google will perform the following actions no later than 45 days after the Escrow Release Date, as that date is defined in the parties' Settlement Agreement (*see* Settlement Agreement at 1.14):

   a. Revise the relevant portions of the Google Play Terms of Service as shown in Section 1 of Exhibit A to the Settlement Agreement.

   b. Revise the "Learn about Google Play services" Help Center webpage as shown in Section 2 of Exhibit A to the Settlement Agreement.

2. Google will perform the following actions by the date of the release of the first major version (other than a pre-release or beta version) of Android that is released six (6) months or more after the Escrow Release Date:

   a. Take the steps technically feasible by Google to (i) deactivate the Google Play services mobile background data toggle so that users cannot "turn off" the use of mobile data in the background by Google Play services, and (ii) state on the screen bearing the deactivated toggle that users are not able to disable the use of mobile data by Google Play services in the background.

   b. Take the steps technically feasibly by Google to revise the relevant sections of the Android device setup flow on new Google-certified Android devices as shown in Section 3 of Exhibit A to the Settlement Agreement, which may be subject to intervening changes to the setup flow in the ordinary course of business that do not remove the agreed-upon changes contemplated in Exhibit A to the Settlement Agreement.

3. When Google complies with each of the above terms of Section II of this Order, Google shall file with the Court and serve on Plaintiffs' counsel a notice of compliance informing the Court and Plaintiffs of the date upon which it fully complied with each of the foregoing non-monetary terms of this Order.

4. Google shall maintain the changes described above for a period of at least two (2) years from when the changes are implemented in full, but (i) Google may modify

the precise language contemplated in Paragraph 5.1 of the Settlement Agreement and Exhibit A to the Settlement Agreement if changes in Google's practices or technologies render the agreed-upon language no longer accurate, and (ii) Google may make other modifications to the language of the Google Play Terms of Service, "Learn about Google Play services" Help Center webpage, and the relevant sections of the setup flow in the ordinary course of business, so long as such modifications do not remove the agreed-upon changes contemplated above and in Exhibit A to the Settlement Agreement.

5.    The Parties may jointly request modification of this stipulated order for good cause.

6.    The violation of this injunction shall be punishable by any remedies or sanctions available under federal law or principles of equity for violation of a Court order.

## V.    Future Status Report(s)

As noted above, the Settlement is subject to certain contingencies that afford the Parties certain termination rights. Once all contingencies have been satisfied and the "Escrow Release Date" has come to pass (or, alternatively, either Party has terminated the Settlement), the Parties shall file a joint status report informing the Court.

Within 21 days of all funds being paid to class members and (if applicable) to *cy pres* beneficiaries, the Parties shall file a Post-Distribution Accounting with the Court and post it on the Settlement Website, in accordance with the United States District Court for the Northern District of California's Procedural Guidance for Class Action Settlements provisions regarding Post-Distribution Accounting (available at https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements).

## VI.    Class Release

As of the Escrow Release Date, and only if such date occurs, the Releasing Parties, including Plaintiffs and all Class Members, are deemed to have released and discharged the Releasees from all Released Claims. The full terms of the release referred to in this paragraph are

described further in the Settlement Agreement, as clarified in the Parties' Joint Supplemental Brief Regarding Final Approval of Class Action Settlement, ECF No. 348, which terms are incorporated herein.

## VII.    Other Issues

The Settlement Agreement is not an admission by Defendant or by any other Releasee, nor is this order a finding of the validity of any allegations or of any wrongdoing by Defendant or any Releasees. This order, the Settlement Agreement, and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence of an admission of liability.

The transcript of the Fairness Hearing, ECF 346, contains the full argument of each of the objectors who spoke. The arguments of counsel appear not to have been transcribed due to the quality of the audio recording of the hearing. The arguments of counsel raised at the hearing substantially overlap with the written materials available in the record. The Court did not make any oral rulings or factual findings at the hearing that are not reflected in the existing written transcript.

## VIII.    Findings of Fact and Conclusions of Law re Motion for Fees, Costs, and Incentive Awards

With regard to Plaintiffs' Motion for Fees, Costs and Incentive Awards, the Court further finds and concludes as follows:

1.    California law applies to the request for attorneys' fees in this case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (holding that where state law governed a claim, it also governed an award of fees).

2.    The Court finds that Class Counsel achieved significant relief for the class, including substantial monetary relief and comprehensive, robust injunctive relief. The Court finds that the relief is a substantial achievement for the class, and that the monetary relief represents a premium over what Plaintiffs were likely to obtain had they litigated this case to judgment. The Court further finds that the injunctive relief in this case, although it would be difficult to value monetarily, is valuable to the class and warrants compensation.

3.    The Court finds that Class Counsel invested substantial amounts of time, money, and effort to litigate this case, including complex motions practice that was independent of any related case, an appeal, and complex, difficult, and protracted settlement negotiations that were necessary to achieve the result here.

4.    The Court finds that Class Counsel did not attribute to the Class any time that was spent litigating other related actions.

5.    The Court finds that Class Counsel assumed significant risk by litigating a novel theory for several years with no guarantee of any payment, including by investing thousands of hours of professional time and hundreds of thousands of dollars of Class Counsel's own money. The Court further finds that the contingent nature of Class Counsels representation, without any third-party litigation financing, weighs in favor of the fee award the Court has approved.

6.    The Court finds that the difficulties of this case and the skill of class counsel militate in favor of the fee award that the Court has approved. Class Counsel exhibited a high degree of skill in litigating this difficult case on a novel legal theory.

7.    Although a lodestar cross-check is not required under California law, the Court finds that Class Counsel invested over 15,000 hours of professional time in this litigation worth more than $15.3 million at market rates. The Court thus finds that Class Counsel's requested fee would result in a lodestar multiplier of less than 2.6, which is well within the accepted range of 2 to 4. The Court finds that this weighs in favor of granting Class Counsel's requested fee.

8.    The Court therefore concludes that, under the circumstances of this case, Plaintiffs' requested fee award of 29.5% of the common fund is reasonable, authorized by California law, and warranted under the factors that govern awards of attorney's fees in California. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 495, 503-06 (2016) (approving award of 33.3% under California law and identifying factors warranting such fee).

9.    The Court further finds that under local practice, as well as the relevant law, class counsel are entitled to "an award of interest to the extent that interest arises directly out of their

portion of the settlement (i.e., class counsel's fees and expenses award)." *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1458 (N.D. Cal. 1994).

10.     The Court further finds that it would award the same fee if it were to apply federal law rather than California law. *See, e.g.*, *In re Telescopes Antitrust Litig.*, No. 20-3639, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025) (awarding attorneys' fees of 33% plus interest because the settlement represented between 19–110% of potential damages, the litigation lasted more than 4 years, and counsel incurred risk in bringing the action); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (finding that settlement for 9% of possible damages was "substantial achievement on behalf of the class" warranting upward departure to fee of 28% of common fund); *In re Lithium Ion Batteries*, No. 13-MD-2420, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020), *aff'd* 2022 WL 16959377 (9th Cir. 2022) (awarding class counsel 30% of $113.45 million common fund where class settled for 11.7% of potential damages and counsel litigated case on contingency for seven years).

11.     The Court finds that neither California law nor Ninth Circuit law require the use of sliding-scale fee awards for larger common funds, and that both jurisdictions require individualized analysis of the risks of litigation and the results obtained, not the mechanical reduction of fees for larger funds. *Laffitte*, 1 Cal. 5th at 495-97; *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020); *Vizcaino*, 290 F.3d at 1047.

12.     The Court finds that Class Counsel incurred $698,533.50 in out-of-pocket litigation costs, and that such costs were reasonably necessary to the prosecution of this action.

13.     That Court finds that Class Representatives Joseph Taylor, Mick Cleary, and Jennifer Nelson each expended significant time and effort and exposed the private personal information on their Android phones to discovery, for the benefit of the Class and with no guarantee of any compensation.

Therefore, Class Counsel's Motion for Attorneys' Fees, Costs, and Incentive Awards, ECF 281, is GRANTED, and the court ORDERS as follows:

1. Class Counsel are awarded $39,825,000 in attorneys' fees, representing 29.5% of the common fund created by their efforts in this litigation on behalf of the class, to be paid from the settlement fund, plus any interest that has accrued or will accrue on that portion of the common fund after it was placed in escrow.

2. Class Counsel are awarded $698,533.50 in out-of-pocket litigation costs and expenses incurred in prosecuting this action, to be paid from the settlement fund, plus any interest that has accrued or will accrue on that portion of the common fund after it was placed in escrow.

3. Class Representatives Joseph Taylor, Mick Cleary, and Jennifer Nelson are granted incentive awards of $10,000 each, totaling $30,000, to be paid from the settlement fund.

4. The above awards are to be distributed by the Escrow Agent following the Escrow Release Date (as defined in the Settlement Agreement).

5. Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or service awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate, or cancel the Settlement Agreement, or affect or delay the finality of this Final Order and Judgment or the occurrence of the Escrow Release Date.

## IX.    Retention of Jurisdiction

The Court hereby enters this Final Order and Judgment dismissing Plaintiffs' claims with prejudice pursuant to the terms of the Settlement Agreement. Without affecting the finality of this Judgment in any way, the Court hereby retains continuing exclusive jurisdiction over, *inter alia*: (a) interpretation, implementation, enforcement, and administration of this settlement, including over any releases in connection therewith and any distribution to Class Members; (b) resolution of any disputes concerning class membership or entitlement to benefits under the terms of the Settlement Agreement; (c) disposition of the Settlement Fund; (d) the Class Action until the final judgment contemplated hereby has become effective and each and every act agreed

to be performed by the parties all have been performed pursuant to this settlement; and (e) all parties to the Class Action, including Class Members, for the purpose of enforcing and administering the Settlement Agreement and the Action until each and every act agreed to be performed by the Parties has been performed pursuant to the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: _____    _____

HON. VIRGINIA K. DEMARCHI
United States Magistrate Judge

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)

Dated:  July 6, 2026                             Respectfully submitted,


                                                 BARTLIT BECK LLP

                                                 */s/ Glen E. Summers*
                                                 Glen E. Summers (176402)
                                                 Karma M. Giulianelli (184175)
                                                 Lindley J. Brenza (*pro hac vice*)
                                                 Jonathan Jacob Marsh (*pro hac vice*)
                                                 BARTLIT BECK LLP
                                                 1801 Wewatta Street, Suite 1200
                                                 Denver, CO 80202
                                                 Telephone: (303) 592-3100

                                                 Marc A. Wallenstein (*pro hac vice*)
                                                 George A. Zelcs (*pro hac vice*)
                                                 Ryan Z. Cortazar (*pro hac vice*)
                                                 Chad E. Bell (*pro hac vice*)
                                                 Pamela I. Yaacoub (*pro hac vice*)
                                                 KOREIN TILLERY LLC
                                                 205 North Michigan Avenue, Suite 1950
                                                 Chicago, IL 60601
                                                 Telephone: (312) 641-9750
                                                 Facsimile: (312) 641-9751

                                                 Carol L. O'Keefe (*pro hac vice*)
                                                 Michael E. Klenov (277028)
                                                 KOREIN TILLERY LLC
                                                 505 North Seventh Street, Suite 3600
                                                 St. Louis, MO 63101
                                                 Telephone: (314) 241-4844
                                                 Facsimile: (314) 241-3525

                                                 Elizabeth M. Pipkin (243611)
                                                 Ann M. Ravel (62139)
                                                 McMANIS FAULKNER
                                                 50 West San Fernando Street, 10th Floor
                                                 San Jose, CA 95113
                                                 Telephone: (408) 279-8700
                                                 Facsimile: (408) 279-3244

                                                 *Attorneys for Plaintiffs*
                                                 *Joseph Taylor, Mick Cleary, and*
                                                 *Jennifer Nelson*

35

AMENDED [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT (Case No. 5:20-CV-07956-VKD)