# EXHIBIT A

Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement and Granting in Part Plaintiffs' Motion for Fees, Costs, and Incentive Awards (ECF No. 397)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOSEPH TAYLOR, et al.,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 20-cv-07956-VKD

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS**

Re: Dkt. Nos. 281, 330, 332, 334, 335, 337, 349

Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson[1] move for final approval of the settlement of this class action. Dkt. No. 330.[2] They also move for an award of attorneys' fees, costs, and expenses, and incentive awards. Dkt. Nos. 281, 309. Defendant Google LLC ("Google") opposes the requested attorneys' fees. Dkt. No. 292. As of the June 23, 2026 final approval hearing, a total of 50 individuals had objected to the settlement. *See* Dkt. Nos. 273-277, 279, 280, 282-291, 293, 294, 296, 297, 300, 301, 302-308, 310, 312-321, 322-325, 327, 328; *see*

[1] The Court granted as unopposed plaintiffs' motion for the withdrawal of named plaintiffs Edward Mlakar and Eugene Alvis. Dkt. No. 256.

[2] The Court finds compelling reasons to grant plaintiffs' motion to seal certain exhibits submitted in connection with their motion for final approval (Dkt. No. 332), as those materials reveal confidential personal identification information implicating privacy interests of non-parties. *See* *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) ("Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy."). None of the sealed information is material to the resolution of the motions addressed in this order. Accordingly, Exhibit 1 to the Burrows declaration (Dkt. No. 330-15) and Exhibit C to the Wallenstein declaration (Dkt. No. 331-3), which were provisionally filed under seal, shall remain sealed.

United States District Court
Northern District of California

*also* Dkt. Nos. 331-6 to 331-10.[3] Plaintiffs and Google filed responses to the objections. *See* Dkt. Nos. 329, 330. Three objectors—Joanne Faber, Michael Focia, and David Mawe—appeared by remote means at the June 23, 2026 final approval hearing. *See* Dkt. No. 346.[4] No objectors appeared at the hearing in person.

After the final approval hearing, and with the Court's leave (Dkt. No. 342), the parties filed a joint supplemental brief (Dkt. No. 348), as well as an amended proposed order (Dkt. No. 356). Additionally, on June 24, 2026, class counsel filed a supplemental declaration advising that one objector[5] withdrew his objections, and confirming the class membership of two other objectors.[6] Dkt. No. 345.[7]

Having considered the moving and responding papers, the objections and responses thereto,[8] as well as the arguments presented at the final approval hearing, the Court grants plaintiffs' motion for final approval of the class action settlement and grants in part plaintiffs' motion for attorneys' fees, costs, and incentive awards.[9]

---

[3] As discussed below, several objectors have since asked to be excluded from the settlement, and one additional objector has withdrawn his objections. Plaintiffs report that others have not established their class membership.

[4] Due to unforeseen technical issues, a portion of the audio recording of the hearing was unintelligible and could not be transcribed.

[5] Dkt. No. 279 (T. Jacobs)

[6] Dkt. No. 302 (C. Andrews); Dkt. No. 327 (M. Focia)

[7] After the final approval hearing, the Court also received additional filings from absent class members, primarily consisting of multiple filings by certain objectors. Dkt. Nos. 347, 349, 351-354, 358-369, 371-372, 374, 376-388, 390, 395, 396. Plaintiffs filed responses. Dkt. Nos. 355, 357, 373, 392, 393. With one exception (Dkt. No. 349), the Court addresses these filings in a separate order.

[8] The Court finds it unnecessary to consider plaintiffs' supplemental materials regarding certain objectors. Dkt. No. 335. The parties' stipulated request for leave to file those materials is denied as moot.

[9] On August 3, 2026, an individual objector purported to file a notice of appeal to the Ninth Circuit, before this Court announced, much less issued, any final decision. *See* Dkt. No. 394. A premature notice of appeal does not divest this Court of jurisdiction to decide the pending motions. *See United States v. Allahyari*, 99 F.4th 486, 491-93 (9th Cir. 2024).



United States District Court
Northern District of California

## I. BACKGROUND

Plaintiffs, each of whom resides and is domiciled outside of the state of California, filed this proposed class action against Google, asserting claims for conversion and quantum meruit based on alleged "passive" data transfers performed by Google over its Android operating system. According to the operative first amended complaint ("FAC"), the challenged data transfers are made without plaintiffs' knowledge or consent, and at times when their mobile devices are idle, stationary, untouched, and with all applications closed. Dkt. No. 60. Plaintiffs claim that through these data transfers, Google transmits significant quantities of information between Android devices and Google's servers, unlawfully consuming Android users' cellular data in the process. Plaintiffs further claim that Google conducts these data transfers for Google's own purposes, without users' knowledge or consent, and without compensating them for the cellular data consumed. Federal jurisdiction is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Plaintiffs filed this action on November 12, 2020. Dkt. No. 1. After the Court granted Google's motion to dismiss the complaint with leave to amend (Dkt. No. 51), plaintiffs filed their FAC (Dkt. No. 60), asserting claims for conversion and quantum meruit against Google, for themselves and on behalf of a proposed class,[10] defined as:

> All natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers.

Dkt. No. 60 ¶ 84.[11] The Court granted Google's motion to dismiss the FAC, without leave to amend. Dkt. No. 74. The Ninth Circuit affirmed the dismissal of plaintiffs' quantum meruit claim and reversed and remanded the matter with respect to plaintiffs' conversion claim. Dkt. No. 79.

Following remand, the litigation proceeded through fact and expert discovery. *See* Dkt.

---

[10] The proposed class expressly excludes: (1) Google, "its officers, directors, management, employees, subsidiaries, and affiliates"; and (2) "any judges or justices involved in this action and any members of their immediate families or their staff." Dkt. No. 60 ¶ 85.

[11] A separate action, filed on behalf of a class of California residents, was filed in the Santa Clara County Superior Court, *Csupo, et al. v. Google LLC*, Case No. 19CV352557.

United States District Court
Northern District of California

Nos. 99, 164, 187, 189. Plaintiffs then moved pursuant to Rule 23 to certify an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3). Dkt. No. 181. The motion sought certification for the period from November 12, 2017 to the present. Google opposed class certification. *See* Dkt. No. 191. The parties also filed *Daubert*[12] motions regarding each side's respective experts. *See* Dkt. Nos. 171, 172, 180. The Court heard the class certification and *Daubert* motions on August 19, 2025. Dkt. Nos. 228, 231.

On August 29, 2025, plaintiffs moved to stay this litigation pending the completion of state court appellate proceedings in the *Csupo* litigation. Dkt. No. 234. At the parties' request, that motion was held in abeyance for a time while they discussed a potential settlement. *See* Dkt. Nos. 241-250. On November 24, 2025, the Court denied plaintiffs' motion for a stay. Dkt. No. 251.

On November 26, 2025, the parties advised that they had reached an agreement on the terms of a proposed settlement. Dkt. No. 252. Following a December 9, 2025 status conference, the Court terminated the pending class certification and *Daubert* motions without prejudice. The Court also set deadlines for plaintiffs' motion for preliminary approval of the settlement. *See* Dkt. Nos. 255, 256.

Plaintiffs moved for preliminary approval of the settlement on January 27, 2026. Dkt. No. 260. The Court held a hearing on that motion on February 17, 2026. *See* Dkt. Nos. 266, 272. With the Court's leave, plaintiffs subsequently filed a supplemental declaration from the proposed settlement administrator, Angeion Group ("Angeion"). Dkt. No. 267.

On March 5, 2026, the Court granted preliminary approval of the proposed settlement of this action and conditionally certified the following class[13] for the purpose of implementing the settlement:

> All natural persons in the United States, who have used mobile

---

[12] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[13] As defined by the settlement agreement, the term "Class Member" specifically excludes (1) Google and "its subsidiaries and affiliates, officers, and directors"; (2) "the judges to whom this case is or has been assigned and any member of the judges' immediate family"; (3) "Class Counsel"; and (4) "any Person who successfully exercises their right to be excluded" from the class. *See* Dkt. No. 260-11 § 1.7.

> devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order, excluding persons who are class members in *Csupo et al v. Google LLC*, Santa Clara Superior Court Case No. 19CV352557.

Dkt. No. 270.

### A. Terms of Settlement

The proposed settlement covers the period from November 12, 2017 to the date of a "Final Order and Judgment," defined as "the final judgment and order to be entered by the Court following the Final Approval Hearing, approving the Settlement set forth in [the December 23, 2025 settlement agreement] under Fed. R. Civ. P. 23(e)." Dkt. No. 260-11 § 1.16.

#### 1. Relief

The settlement contemplates both monetary and injunctive relief in return for a release of claims.

##### a. Monetary Relief

The monetary component of the settlement is non-reversionary and requires a total payment of $135 million to be deposited into an interest-bearing qualified settlement trust no later than 45 days after entry of the Court's preliminary approval order. *See* Dkt. No. 260-11 §§ 3.1, 3.5. From that fund will be deducted any court-approved attorneys' fees, costs, incentive awards, and settlement administration expenses.

After payment of any court-approved attorneys' fees, litigation costs and expenses, incentive awards, and administration expenses from the $135 million fund, the net proceeds will be available for distribution to class members after final approval of the settlement and the expiration of all contingencies. *See* Dkt. No. 260-11 §§ 3.8, 3.9, 3.12. The proposed distribution will be made on a *pro rata* basis, meaning that the amount of the individual payment to each class member will be the net settlement fund divided by the total number of class members. *See* Dkt. No. 260-18 ¶ 48. Although individual settlement payments are capped at $100 per class member (*see* Dkt. No. 260-11 § 3.9), plaintiffs' counsel do not expect the cap to be reached (*see* Dkt. No.



United States District Court
Northern District of California

260 at 14 n.4).[14]

Under the proposed settlement, class members are not required to submit a claim form to receive payment, and are given the option of selecting a form of electronic payment from available payment options, including Zelle, PayPal/Venmo, or Virtual Mastercard. Individual settlement payments will be made to class members via an electronic payment method. *See* Dkt. No. 260-11 § 3.13. Any unclaimed funds remaining after the first distribution will be re-distributed to class members. If a second distribution is not feasible, the remaining funds will be donated to a court-approved *cy pres* recipient. *Id.* § 3.14.

Class counsel seek payment of $39,825,000 in attorneys' fees (i.e., 29.5% of the settlement fund), as well as $698,533.60 in costs and expenses. Additionally, each of the three named plaintiffs request an incentive award of $10,000. *See* Dkt. No. 281; *see also* Dkt. No. 260-11 § 12. As noted below, the current class size (129,974,148) is larger than initially estimated (100 million). Angeion states that as a result, its estimated settlement administration costs have increased from $9.3 million to approximately $12.62 million due to the transaction fees for individual payments to each class member. Dkt. No. 330-2 ¶ 40.

Angeion currently expects that the initial distribution of payments will be $0.64 per class member (net of transaction fees), or approximately $80 million to the class as a whole. *Id.* ¶ 41. Additionally, Angeion states that "[i]f a second round of distributions is conducted (which will be cost-effective only if the payment success rate is approximately 65% or less) the total individual distributions could increase to $1.06 per class member or more." *Id.* & Ex. K (Dkt. No. 330-13).

**b. Injunctive Relief**

The proposed injunctive relief requires Google to disclose the conduct at issue to Android users and to require users to expressly consent to it when they set up new Android phones. Dkt. No. 260-11 § 5. Among other things, Google will be required to change the Google Play Terms of Service to disclose that its "[s]ystem services often require network connectivity and may use your cellular data" and that "[s]ome network communications may happen in the background, when

[14] With respect to filed documents, all pin citations refer to the page number appearing on the ECF header on those documents.



United States District Court
Northern District of California

you are not directly interacting with your device, including when the device's screen is locked." *Id*. at 38. Google will also be required to change the "Learn about Google Play services" Help Center page to explain that "Google Play services causes Android devices to exchange information with Google over cellular networks if the device is not connected to Wi-Fi, meaning Google Play services may use your mobile data" and that these transfers "cannot be turned off." *Id*. at 51. Additionally, Google must revise the screens shown to users when setting up a new Android device (known as the "setup flow"), to include a new section entitled "Use of cellular data" containing the following disclosure:

> By tapping "Accept" at the bottom of this screen and continuing, you agree that software and apps on your device may automatically communicate with Google servers for a range of purposes, including using your cellular data when you are not connected to Wi-Fi—learn more. These purposes include, but are not limited to, safely rolling out new features, fixing problems on your device, maintaining and monitoring your device's health, developing new products, protecting the Android ecosystem, supporting advertising, and automatically downloading and configuring software, possibly using cellular data. Some of these communications may happen in the background, when you are not directly interacting with your device, including when the device's screen is locked. You can control some of the communications through user settings, including the settings on this screen, but some of the communications cannot be turned off. You are responsible for any fees incurred from third parties (such as your mobile carrier) in connection with these cellular communications.

*Id*. at 56.[15] The settlement also requires Google to "[t]ake the steps technically feasible" to deactivate (or "gray out") the Google Play services mobile background data toggle. *Id.* § 5.1. According to plaintiffs, this toggle was misleading because it purported to give users the ability to turn off Google's use of mobile data in the background but did not disable the data transfers at issue. Plaintiffs say that graying out this toggle avoids creating the false impression that the challenged transfers can be turned off with the toggle. *See* Dkt. No. 260 at 15-16; Dkt. No. 330 at 10.

These changes, including deactivation of the toggle, will remain in effect for at least two

---

[15] As confirmed at the preliminary approval hearing, the "learn more" text in this disclosure will contain a hyperlink to the "Learn About Google Play services" webpage. *See* Dkt. No. 272 at 10:23-11:2, 18-25.

years "from when the changes are implemented in full," subject to reasonable modifications if changes in Google's practices or technologies render the agreed-upon language no longer accurate. Dkt. No. 260-11 § 5.2.

**2. Release**

The scope of the released claims extends to:

> any and all claims, liabilities, rights, demands, arbitrations, suits, actions, causes of action, obligations, damages, penalties costs, attorneys' fees, losses, and remedies of every kind or description against the Releasees—whether known or unknown, existing or potential or that hereafter may exist or might have existed, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that were asserted in the Action, could have been asserted in the Action, and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s), to the maximum extent allowed by law, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law. For the avoidance of doubt, the Released Claims include all claims reasonably related to any alleged use or consumption of cellular data by Defendant "in the background" or when a user is not directly engaging with their Android mobile device(s) or apps, products, or software thereon, and/or in connection with "passive" transfers of any kind between Android mobile devices and Defendant and/or its servers.

*Id.* § 1.33; *see also id.* § 13. The release expressly excludes "any claims relating to the enforcement of the Settlement" and "any claims already specifically alleged in any operative complaint in a pending action that was served on Google as of November 26, 2025, other than this Action." *Id.* § 1.33 *see also id.* § 13.

**B. Class Notice and Claims Administration**

Following the Court's preliminary approval order, plaintiffs reported that the parties established an interest-bearing escrow account with J.P. Morgan Chase, and that Google transferred the $135 million settlement fund into that escrow account. Dkt. No. 330 at 10.

Additionally, Angeion implemented the approved notice plan. Google provided Angeion with email addresses associated with active Android accounts during the class period. *See* Dkt. No. 260-11 § 7. According to Angeion, that data included 134,280,577 unique records with valid email addresses. Dkt. No. 330-2 ¶¶ 8-9. After processing the data and assigning a unique identifier to each class member, Angeion attempted to send email notices to all of the email



United States District Court
Northern District of California

addresses provided by Google. Angeion reports that emails were successfully sent to 132,788,260 of those email addresses, with 1,492,317 emails returned as undeliverable, resulting in a delivery rate of 98.9%. *Id.* ¶ 13.

Angeion further reported that as of June 11, 2026: 395,231 class members submitted an optional payment election form. *Id.* ¶ 27. In addition, 29,340 individuals contacted Angeion and/or class counsel, stating that they were class members, had not received notice, and wished to participate in the settlement. *Id.* ¶ 22. Of those 29,340 individuals, Angeion determined that 14,212 were on the settlement class list and had already been sent a notice. For the remaining 15,128 who sought to be included in the class and represented that they had not received email notice, Angeion (1) sent (or re-sent) email notice, and/or provided a link to a web form that allowed these individuals to submit proof of their status as class members, and (2) provided the unique identifier necessary to submit an optional payment election form. *Id.* ¶¶ 22-24. Of the 15,128 individuals who were provided with the link, Angeion says that 2,724 submitted documentation that was pending review as of June 11, 2026. *Id.* ¶ 24; Dkt. No. 330-14 ¶ 22. The parties have since reported that Angeion expected to complete its review of pending requests for inclusion on the class list by July 10, 2026. *See* Dkt. No. 348 at 4.[16]

On July 10, 2026, plaintiffs advised that there currently are 44 objections to the settlement (including several who did not file their objections with the Court, as required by the settlement notice) and 130 timely requests to opt out from the settlement. *See* Dkt. No. 373; *see also* Dkt. No. 331 ¶¶ 104-113.[17] The Court will address the substance of these objections in its analysis below.

[16] As discussed below, the parties suggest that the Court set a deadline for the submission of requests to be included in the settlement 15 days after entry of the Court's final approval order. Angeion will then email all persons who have been provided an inclusion web form, but have not yet submitted a request, advising them of the submission deadline. The parties report that Angeion expects that it can complete its review of any additional requests for inclusion within 10 days after the submission deadline. *See* Dkt. No. 356 at 26-27.

[17] As of June 22, 2026, Angeion received a total of 125 timely requests to opt out (as well as 12 untimely requests to opt out that have not been included on the exclusion list). Dkt. No. 339. Additionally, the parties advise that five individual objectors asked to be excluded from the settlement, and one additional objector withdrew his objections. *See* Dkt. Nos. 339, 373.

United States District Court
Northern District of California

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, no presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id*., and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement," *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."). The decision to approve or reject a settlement proposal is within the district court's discretion. *Class Plaintiffs*, 955 F.2d at 1276, 1291.

A court may approve a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, courts generally must consider the following factors:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Campbell v. Facebook, Inc*., 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Rule 23(e)(2) requires a court to consider a similar list of factors before approving a settlement, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[18] "[T]he district court must show it has explored comprehensively all Rule 23(e)(2) factors." *In re Apple Inc. Device Performance Litig*., 50 F.4th 769, 782 (9th Cir. 2022) (citation modified; citation omitted).

First, the Court determines whether class treatment remains appropriate under Rule 23(a) and Rule 23(b)(2) and (b)(3). *In re Hyundai and Kia Fuel Economy Litig*., 926 F.3d 539, 556 (9th Cir. 2019); *Staton*, 327 F.3d at 952. Second, the Court evaluates whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined." *Staton*, 327 F.3d at 952 (citation modified; citation omitted); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (same).

**B. Rule 23 Certification**

Plaintiffs bear the burden of establishing, by a preponderance of the evidence, that class certification is appropriate under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties,

[18] This list of factors is not intended to displace any factors identified by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note to 2018 amendment; *see also McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021) ("The amended Rule 23(e) did not 'displace' this court's previous articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness.").



United States District Court
Northern District of California

common questions of law or fact, etc.”). Class certification under Rule 23 requires two steps. First, plaintiffs must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality and adequacy of representation. *Id*. at 349. Additionally, plaintiffs must also show that at least one of the bases for certification under Rule 23(b) is met. *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

“The criteria for class certification are applied differently in litigation classes and settlement classes.” *In re Hyundai*, 926 F.3d at 556. While courts “must be concerned with manageability at trial” when certifying a litigation class, “such manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.” *Id*. at 556-57. “On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses.” *Id*. at 557 (citing *Amchem*, 521 U.S. at 620); *see also Hanlon*, 150 F.3d at 1021 (“District courts must be skeptical of some settlement agreements put before them because they are presented with a ‘bargain proffered for . . . approval without benefit of an adversarial investigation.’”) (quoting *Amchem*, 521 U.S. at 621).

**1. Settlement Class Definition**

At the final fairness hearing, the Court noted that the federal settlement class definition excludes *Csupo* class members, while the *Csupo* certified class definition excludes class members (i.e., California residents) who opted out of the *Csupo* settlement. *See* Dkt. No. 260-11 § 1.5; Dkt. No. 260-13 § 1.5. The Court requested clarification whether the federal settlement class includes California residents who opted out of the *Csupo* settlement and if so, what effect (if any) that might have on CAFA jurisdiction.

The parties have clarified that “it was not their intent to include *Csupo* opt-outs in formulating the class definition set forth in the Parties’ Settlement Agreement at Paragraph 1.5.” Dkt. No. 348 at 2. They propose the following clarified settlement class definition to conform to their mutual intent and the definition in the FAC:

> All natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order and Judgment, excluding persons who are class members **(or who opted out)** in



United States District Court
Northern District of California

United States District Court
Northern District of California

> *Csupo et al v. Google LLC*, Santa Clara Superior Court Case No. 19CV352557."

*Id*. at 3 (emphasis added). The Court adopts the parties' clarified settlement class definition, as it is substantially identical to, and consistent with, the definition in the operative FAC, which excluded California citizens from the federal class (*see* Dkt. No. 60 ¶ 84). No new notice to the class is required, as the adopted modification to the settlement class definition does not adversely affect class members. The record reflects that the *Csupo* settlement provided *Csupo* class members with the same injunctive relief and a higher monetary payment than in the present federal action. *See* Dkt. No. 260-13, § 3.1 ($350 million settlement fund); Dkt. No. 268-1 at 7 (*Csupo* order noting "a class of more than 13 million Android users in California."). There is no reason to conclude that individuals who opted out of the *Csupo* settlement would want to participate in the federal class settlement, which provides identical injunctive relief and lower monetary payment to class members. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018) ("The pertinent question here is whether the changes *adversely* affect class members . . . . The rationale is that class members who received adequate notice of the original settlement and decided not to opt out would not opt out of a more-favorable settlement.").

Even if the federal class included California residents who opted out of the *Csupo* settlement,[19] that would not affect the Court's jurisdiction under CAFA. CAFA requires only minimal diversity, and no exceptions to CAFA jurisdiction apply here. *See* 28 U.S.C. § 1332(d)(2); *see also id*. § 1332(d)(3), (4).

The Court is satisfied that there is no inconsistency between the class definition in the settlement agreement, as clarified, and the class definition in the FAC, and overrules objections to the settlement class definition.[20]

**2. Rule 23(a) Certification**

In its order granting preliminary approval of the settlement, the Court found that the

[19] The parties note that 209 individuals timely opted out of the *Csupo* action. Dkt. No. 348 at 2 n.1.

[20] *See, e.g.,* Dkt. Nos. 274 & 287 ¶ 34 (B. Lawson); Dkt. No. 302 at 16-18, 27, 32, 35, 36, 47 (C. Andrews); Dkt. No. 322 at 10-11, 18-19 & Dkt. No. 325 at 3-4, 11-12 (M. Sussman).

putative class satisfied Rule 23(a)'s numerosity, commonality, typicality and adequacy of representation requirements, as well as Rule 23(b)(3)'s predominance and superiority requirements. Dkt. No. 270. Plaintiffs' motion for final approval does not indicate that there have been any changes that would require the Court to alter its prior analysis or conclusions that the first three requirements of Rule 23(a) are satisfied and that the class action is maintainable under Rule 23(b)(3).

**a. Numerosity, Commonality, and Typicality**

The numerosity requirement is unquestionably met, as the record indicates that there are more than 129 million settlement class members (Dkt. No. 330-2 ¶ 14). *See In re Facebook, Inc. PPC Advertising Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012) (courts generally find that numerosity requirement is satisfied where the class consists of 40 or more members).

The commonality requirement is met because resolution of the class claim for conversion depends on the common contention that Google used cellular data in a manner inconsistent with plaintiffs' and class members' rights, through the same software, i.e., GMS Core, which is present on all or virtually all Android devices (Dkt. No. 175-6 at 28; Dkt. No. 183 at 198). *See* Fed. R. Civ. P. 23(a)(2) (commonality requires "questions of law or fact common to the class"); *Dukes*, 564 U.S. at 349-50 (commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury."); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) ("All questions of fact and law need not be common to satisfy the commonality requirement. The existence of shared legal issues with divergent factual predicates is sufficient.") (citation modified; citation omitted).

The typicality requirement is met, because plaintiffs' conversion claim is coextensive with those of the settlement class members, who used Android phones running GMS Core. *See Staton*, 327 F.3d at 957 ("representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."); *see also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same

course of conduct.") (citation modified; citations omitted); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (same).

**b. Adequacy of Representation**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this factor, the Court addresses two questions: (1) whether plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether plaintiff and their counsel will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957.

The record demonstrates that the named plaintiffs and class counsel vigorously litigated this matter, and that class counsel are well-qualified and experienced in litigating large complex matters, including class actions. *See* Dkt. Nos. 74, 79, 99, 164, 171, 172, 180, 181, 187, 189, 191, 228, 231; Dkt. No. 260-1 ¶¶ 3-11 & Exs. 1-9 (Dkt. Nos. 260-2 to 260-10); Dkt. No. 260-15 ¶¶ 19-31 & Ex. 1 (Dkt. No. 260-16); Dkt. No. 281-2 ¶¶ 3-10 & Annex 1-9 (Dkt. Nos. 281-3 to 281-11); Dkt. No. 281-21 ¶ 4 & Annex 1 (Dkt. No. 281-22); Dkt. No. 330-1 ¶ 3.

The adequacy of representation is challenged by several individuals who object to the settlement, contending that class counsel are acting in their own interests to the detriment of the class in seeking approval of this settlement. Specifically, some objectors express concern that class counsel bargained away the potential preclusive effect of the favorable *Csupo* jury verdict, stripping the present federal class of the benefits of such preclusion in this action.

These and other grounds for objection to the settlement are discussed below in the context of the Court's Rule 23(e) analysis as to whether the settlement is fair, reasonable, and adequate. As explained in that section of this order, the Court concludes that assertions of self-dealing on the part of class counsel are not supported by the record presented, and that class counsel have acted, and continue to act, in the interests of the class as a whole. Accordingly, the adequacy of representation requirement is satisfied.

**3. Rule 23(b)(3) Certification**

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is



United States District Court
Northern District of California

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is satisfied because plaintiffs and class members share the same, single claim for relief, i.e., conversion. The nature of the alleged injury—Google's consumption or use of cellular data without permission—is also the same for all plaintiffs and across the class. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (The "predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation," and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."). A class action is a superior mechanism for adjudicating the claim at issue, in view of the risks of litigation, and the small amount in dispute for individual class members compared to the cost of individual litigation. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). "The alternatives to class certification—approximately [129 million] separate, individual, and time-consuming proceedings, or a complete abandonment of claims by a majority of class members—are not preferable." *See In re Telescopes Antitrust Litig.*, No. 5:20-cv-03639-EJD, 2025 WL 1093248, at *3 (N.D. Cal. Apr. 11, 2025).

* * *

For these reasons, the Court concludes that the Rule 23 requirements for class certification have been met and approves for final certification a Rule 23 class of all natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 to the date of the Final Order and Judgment, excluding persons who are class members (or who opted out) in *Csupo et al v. Google LLC*, Santa Clara Superior Court Case No. 19CV352557. The Court also reaffirms the appointment of class counsel and class representatives pursuant to Rule 23(g) for the reasons identified in its order granting preliminary approval of the settlement. *See* Dkt. No. 270.

### C. Final Approval of Settlement

The Court finds that the settlement is fair, adequate, and reasonable under Rule 23(e)(2).

United States District Court
Northern District of California

**1. Notice to the Class**

Under Federal Rule of Civil Procedure 23(e), courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court finds that the class was given the best notice practicable under the circumstances, including individual notice to all members who could be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, LLC v. Gen'l Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (citation modified; citation omitted); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (stating that the standard for class notice is "best practicable" notice, not "actually received" notice).

Between March 24, 2026 and April 9, 2026, Angeion successfully provided notice to 98.9% of class members. Dkt. No. 330-2 ¶¶ 12, 13. The notice given to class members is substantially identical to the notice the Court approved in its preliminary approval order and clearly and precisely explained the principal terms of the settlement, as well as the deadlines and procedures for objecting or opting out. *See* Dkt. Nos. 260-20, 260-21, 270, 330-2 & Exs. B & C (Dkt. Nos. 330-4, 330-5). Class members had until May 29, 2026 to opt out or object, and thus had well over the minimum 35 days' notice suggested by this District's Procedural Guidance for Class Action Settlements.[21]

The Court further finds that notice is reasonable and adequate, in view of the supplemental media campaign, settlement website, dedicated toll-free phone number, and press coverage regarding the settlement. *See* Dkt. No. 330-2 ¶¶ 16-26 & Exs. D-E (Dkt. Nos. 330-6, 330-7). According to Angeion, as of June 11, 2026, the settlement website had 1.9 million page views and 804,237 individual sessions initiated by all users. *Id.* ¶ 20. The media campaign concluded on April 20, 2026, and resulted in 13.4 million impressions, exceeding the estimated 12 million impressions that the campaign was designed to deliver. *See id.* ¶ 17. Additionally, Angeion

[21] https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements

reports that the settlement garnered attention "through various media outlets, social media[,] and online readership[.]" *Id.* ¶ 18. Angeion "determined that from April 1, 2026 through June 11, 2026," the settlement "received approximately 2,236 total mentions across online, broadcast, and social sources generating an estimated potential reach of approximately 7.27 billion in online readership," although it is unclear how many users reviewed specific coverage of the settlement. *Id.* & Ex. E (Dkt. No. 330-7).

Several objectors stated that they did not receive notice.[22] Some of these individuals were determined to be *Csupo* class members (i.e., not members of the federal class) and were provided information to allow them to register for the *Csupo* settlement. Dkt. No. 331 ¶¶ 6, 101-103. The record reflects that the remaining objectors who complained of lack of notice were provided credentials allowing them to provide evidence of class membership so that they may participate in the settlement. *Id.* ¶ 6; Dkt. No. 330-2 ¶ 33.

Following the final approval hearing, the Court received correspondence from Michael Anhar, who provided a California address and stated no objections, but noted that he had not been provided with credentials to participate in the settlement. Dkt. No. 354. In view of his California address, this individual may be a *Csupo* class member, and it is unclear whether he is a member of the federal class. Nevertheless, class counsel aver that on July 2, 2026, Mr. Anhar was provided with credentials necessary to submit proof of class membership and elect a payment method. Dkt. No. 355.

The Court finds that class members were provided with the best notice practicable, and that such notice was reasonable and adequate.[23] Fed. R. Civ. P. 23(e)(1). The Court therefore overrules objections regarding the settlement administration process and notice.[24]

---

[22] *See* Dkt. No. 282 at 1-8 (R. Aumaitre); Dkt. No. 315 at 1-2 (A.M. Lauderdale); Dkt. No. 317 at 1-2 (G. Dillman). Plaintiffs note that after mailing her objection (*see* Dkt. Nos. 316 & 320), Ms. Faber contacted class counsel for assistance in obtaining credentials regarding class membership. *See* Dkt. No. 330 at 32 n.20.

[23] On June 29, 2026, the Court received a request to belatedly opt out from Harsha Dalal (Dkt. No. 349), which is addressed below. For the reasons discussed, that request for belated opt out does not affect the settlement of this matter.

[24] *See, e.g.,* Dkt. No. 274 & 287 at ¶¶ 8, 11, 12, 14, 19, 29, 38, 39, 52 (B. Lawson); Dkt. No. 282 at



United States District Court
Northern District of California

Additionally, with respect to Angeion and the administration of the settlement, at the preliminary approval hearing, the Court inquired about Angeion's practices and required a supplemental declaration regarding the same. *See* Dkt. No. 272 at 42-56; *see also* Dkt. No. 267. To the extent several individuals appear to object to Angeion and/or to the administration of the settlement,[25] those objections are overruled for reasons stated in the Court's preliminary approval order. *See* Dkt. No. 270 at 32-33. The Court reaffirms the appointment of Angeion, and finds that Angeion has thus far fulfilled its duties under the settlement.

**2. Strength of Plaintiffs' Case and the Risk, Expense, Complexity; Likely Duration of Further Litigation; and Risk of Maintaining Class Action Status Throughout Trial**

As discussed in the Court's preliminary approval order, plaintiffs faced several significant risks, and concomitant costs and delays, from the continued litigation of this case, particularly with respect to their efforts to certify a damages class and their proffered method of proving damages on a classwide basis. *See* Dkt. No. 270 at 16-18. The Court finds no basis to alter its prior analysis or conclusions that absent settlement, plaintiffs would have faced significant litigation risk, including a substantial risk of obtaining no recovery. *Id.*

The Court overrules the objections of Nathan Byars (Dkt. No. 288) and others[26] who argue that, in settling this action, class counsel improperly bargained away the federal class's ability to use the preclusive effect of the *Csupo* jury verdict against Google in the present action.[27] Under California law, judgments have preclusive effect only after appeal. *Samara v. Matar*, 5 Cal. 5th 322, 335 (2018) ("[A]n unsatisfied trial court judgment has no preclusive effect until the appellate

2-4 (R. Aumaitre); Dkt. No. 290 at 3-4 (D. Omabegho); Dkt. No. 302 at 18-45 (C. Andrews); Dkt. No. 322 at 8, 12; Dkt. No. 325 at 1, 5 (M. Sussman).

[25] *See, e.g.,* Dkt. No. 282 at 1-4 (R. Aumaitre); Dkt. No. 283 at 2 (M. Krause); Dkt. No. 285 at 2 (D. Maynard); Dkt. No. 286 at 2 (J. Maynard); Dkt. No. 302 at 6, 7, 9, 16, 36, 38, 39, 41-46 (C. Andrews); Dkt. No. 312 at 2 (J. McCorvey); Dkt. Nos. 322 & 325, *passim* (M. Sussman).

[26] *See, e.g.,* Dkt. No. 301 at 4 (J. Renfort); Dkt. No. 302 at 41-42, 46-47 (C. Andrews); Dkt. No. 312 at 2 (J. McCorvey).

[27] Mr. Byars has not demonstrated that a sur-reply regarding his objections is warranted. In the exercise of its discretion, and because no party or class member will be prejudiced, the Court has nonetheless considered his proposed sur-reply, as well as plaintiffs' supplemental declarations filed in response. *See* Dkt. Nos. 334, 337.



United States District Court
Northern District of California

process is complete."); *Boblitt v. Boblitt*, 190 Cal. App. 4th 603, 606 (2010) ("[A] judgment that is on appeal is not final for purposes of applying the doctrines of claim and issue preclusion."). The record reflects that after the *Csupo* verdict, Google filed a notice of appeal in the state court, stating its intent to appeal that verdict and all prior interlocutory orders and rulings. *See* Dkt. No. 331 ¶ 122 & Ex. R (Dkt. No. 331-18). Plaintiffs state that they sought a stay of the present federal action in the hope that they might later seek issue preclusion at some point in time, assuming the *Csupo* appeal resolved in their favor. Dkt. No. 330 at 26-27; *see also* Dkt. No. 234. However, the Court denied plaintiffs' motion to stay. Dkt. No. 251. At the time the parties agreed to the settlement of this action, the resolution of the *Csupo* appeal remained an unknown and remote prospect in the future, the federal plaintiffs' class certification motion and the parties' respective *Daubert* motions were ripe for adjudication, and trial in this action was scheduled to begin in the spring of 2026. Dkt. Nos. 164, 207.

### 3. Amount Offered in Settlement

When considering the fairness and adequacy of the amount offered in settlement, "[i] is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628; *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (same). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted); *see also Officers for Justice,* 688 F.2d at 628; *Bellinghausen*, 306 F.R.D. at 256. This is particularly true where monetary relief is only one form of relief sought by plaintiffs. *Officers for Justice,* 688 F.2d at 628. For the reasons discussed below, the Court finds that the monetary and injunctive relief offered by the settlement are fair, reasonable, and adequate.

#### a. Monetary Relief

While the amount of the payment to be made to individual class members is small, the size of the individual payments is largely a function of the nature of this case, which (as plaintiffs acknowledge) concerns Google's use of a small amount of cellular data from each of a very large

number of people. *See* Dkt. No. 330 at 20-21. Plaintiffs point out that evidence from the *Csupo* trial showed that Google consumed about 1.6 megabytes per user per day, an amount smaller than the size of a single text message containing a photo. *See* Dkt. No. 331 ¶¶ 119-120 & Exs. P & Q (Dkt. Nos. 331-16, 331-17). Notably, the Court has not been presented with evidence that the challenged data transfers resulted in throttling, overage charges, or other palpably adverse economic consequences to any plaintiff or any class member. Even if plaintiffs were to prevail on class certification and liability, and recovered the full amount of their claimed damages (approximately $2 billion), the record indicates that the individual payment to each class member would be approximately $15, *before* deductions for attorneys' fees, litigation expenses, and settlement administration costs. *Id.* ¶ 121.

As discussed above and in the Court's preliminary approval order (Dkt. No. 270 at 16-18), plaintiffs face substantial hurdles if they continue with litigation through trial, and a real possibility of recovering nothing, absent the settlement. This consideration weighs in favor of approval. *See Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) (approving $4,750,000 settlement in contract action, representing 1.8% to 16% of potential damages, stating that "courts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement"); *see also Bayat v. Bank of the West*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (approving $2,485,914.85 settlement, with net settlement individual payments of $2.85 per class member, in view of litigation risks that could "leav[e] all class members with nothing."). The individual payments that will result from the settlement are comparable to per capita payments that have been approved in other comparable cases. *See, e.g., In re Google Plus Profile Litig.*, No. 18-cv-06164-EJD, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) ($7.5 million settlement with per-claimant values ranging from $0.20 to $29.60, with an average of $2.50 per individual); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752, 2020 WL 4212811, at *10-11, *32-33 (N.D. Cal. July 22, 2020) ($117.5 million settlement for class of 194 million); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 318 ($115 million settlement for class of 79.15 million).

United States District Court
Northern District of California

Some individuals object that the pro rata distribution does not fairly account for differences between users with respect to, for example, the length of time as an Android user or the number of Android phones used. As discussed in the Court's preliminary approval order, the burden and difficulty of calculating individual payments for more than 100 million class members would result in higher settlement administration costs, which would not make sense in view of the relatively modest payments to individual class members. Dkt. No. 270 at 28-29. The proposed calculation and distribution method is intended to pay class members directly and as quickly and efficiently as possible, simplify the calculation of individual class member payments, and lower settlement administration costs, thus yielding a greater benefit to the class as a whole. *Cf. In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1115 (9th Cir. 2021) (affirming district court's determination that it would be infeasible to distribute funds directly to class members where "self-identification would be pure speculation, and any meaningful forensic verification of claims would be prohibitively costly and time-consuming.").

For the reasons discussed in the Court's preliminary approval order (Dkt. No. 270 at 20), the Court remains satisfied that the disparity between the *Csupo* settlement and the present proposed settlement in this federal action reflects the very different procedural postures of each case, with greater uncertainty attending the outcome of the present action, and with different circumstances and legal standards affecting the risks of proceeding in this litigation.

The Court finds that the monetary relief is fair, reasonable, and adequate and overrules all objections to the sufficiency of the monetary consideration.[28]

[28] *See, e.g.,* Dkt. No. 273 at 2 (J. Varga); Dkt. Nos. 274 & 287, ¶¶ 1, 7, 17, 31, 42 (B. Lawson); Dkt. No. 276 at 1-2 (C. Long); Dkt. No. 279 at 2-4 (T. Jacobs); Dkt. No. 280 at 2 (C. Brown); Dkt. No. 283 at 2 (M. Krause); Dkt. No. 285 at 2 (D. Maynard); Dkt. No. 286 at 2 (J. Maynard); Dkt. No. 288 at 4 (N. Byars); Dkt. No. 289 at 2 (A. Hawkins, Jr.); Dkt. No. 290 at 2 (D. Omabegho); Dkt. No. 291 at 1 (B. Walker); Dkt. No. 293 at 1 (I. Flournoy); Dkt. No. 294 at 3-4 & Dkt. No. 310 at 2 (D. Mawe); Dkt. No. 296 at 1-2 (A. Ammon); Dkt. No. 297 at 1-2 (A. Hamilton);Dkt. No. 300 at 2-3, 6 (M. Prather); Dkt. No. 302 at 7, 20-21, 45-46, 55 (C. Andrews); Dkt. No. 303 at 1 (M. Peralez); Dkt. No. 304 at 1-2 (J. Kirkley); Dkt. No. 305 at 1-2 (A. Plotkin); Dkt. No. 308 at 1 (S. Carpenter); Dkt. No. 312 at 1 (J. McCorvey); Dkt. No. 313 at 1 (C. Price); Dkt. No. 314 at 1 (W. Cisson); Dkt. No. 318 at 1 (M. Davidson); Dkt. No. 319 at 1 (C. Tepfer); Dkt. Nos. 316 & 320 at 3-5 (J. Faber); Dkt. No. 321 at 2 (S. Ford); Dkt. No. 323 at 1, 3 (M. Coak); Dkt. No. 324 at 1 (D. McCorvey); Dkt. No. 327 at 1 (M. Focia); Dkt. No. 328 at 2-6 (T. Scheffler); Dkt. No. 331-7 at 2 (R. Messenger); Dkt. No. 331-8 at 3-4 (H. Bekendam); Dkt. No. 331-9 at 5 (N. Castorina).

**b. Injunctive Relief**

As discussed in the Court's preliminary approval order (Dkt. No. 270 at 20-21), a significant aspect of plaintiffs' conversion claim is the clandestine nature of Google's alleged conduct. Indeed, the surreptitious nature of the alleged conversion of cellular data features prominently in plaintiffs' FAC. *See* Dkt. No. 60 ¶¶ 6, 10, 59-62, 68, 76, 78, 83. The injunctive relief resulting from the settlement requires Google to provide full disclosure regarding the transfers that are the alleged wrongful conversions at issue, thus promoting transparency and enabling users to make informed decisions about whether they wish to consent to the challenged transfers and continue using Android mobile devices. There is no dispute that consent defeats a conversion claim, which is the sole claim at issue in this litigation. *See Farrington v. A. Teichert & Son*, 59 Cal. App. 2d 468, 474 (1943) ("[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property."); *see also Price v. Apple Inc.*, No. 21-cv-02846-HSG, 2022 WL 1032472, at *6 (N.D. Cal. Apr. 6, 2022) (conversion claim foreclosed by plaintiff's consent to defendant's terms of service). Plaintiffs acknowledge that it is the lack of consent that made Google's alleged conduct unlawful. *See* Dkt. No. 330 at 23. The Court finds no reason to alter its prior analysis and conclusions that the settlement provides comprehensive and meaningful injunctive relief to the class. *See* Dkt. No. 270 at 20-21; *In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th at 1117 (in privacy litigation, finding that injunctive relief to class "requires relatively little of Google," but nonetheless extends Google's obligations and "does so in exchange for class members' relinquishment of legal claims that might have been quite difficult to prove and would likely have yielded very little per class member in damages"); *Campbell*, 951 F.3d at 1123 (in privacy litigation, finding that injunctive relief requiring disclosure of defendant's practices for a one-year period "has value . . . making it less likely that users will unwittingly divulge private information to [defendant] or third parties in the course of using [defendant's] messaging platform."); *In re TracFone Unlimited Service Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) (in deceptive marketing practices litigation, finding that injunctive relief requiring defendant to modify its terms and conditions and other practices had "significant value for both class

United States District Court
Northern District of California

members and the general public.").

Several individuals object to the injunctive relief the settlement provides, arguing that it merely requires Google to make disclosures regarding the challenged transfers, but does not prohibit Google from continuing to engage in those transfers. As discussed above, however, plaintiffs do not challenge the transfers in question as *per se* illegal; rather, the focus of their conversion claim is that Google did not disclose to users that the transfers consumed a small amount of users' cellular data in the process. *See* Dkt. No. 60 ¶¶ 6, 10, 59-62, 68, 76, 78, 83. The injunctive relief now requires Google to make such disclosures. The Court credits class counsel's view that the terms of the injunctive relief resulting from the settlement are as good as they could expect to achieve, either in continued litigation and trial or in a negotiated settlement. *See* Dkt. No. 330-1 ¶¶ 6, 8. The Court finds no basis to conclude that the injunctive relief must or should require Google to discontinue the challenged transfers. *See Butt v. State of Cal.*, 4 Cal. 4th 668, 695-96 (1992) (remedies "must be tailored to the harm at issue. . . . A court should always strive for the least disruptive remedy adequate to its legitimate task."). Indeed, Google maintains that that the challenged transfers are necessary to ensure the proper functioning and security of user's Android devices, and that prohibiting the transfers or disabling them entirely will harm (not benefit) users and the Android ecosystem. *See* Dkt. No. 329 at 5-6; Dkt. No. 329-1 ¶¶ 4-7; *see also* Dkt. No. 330-1 ¶ 5.

One objector, Mr. Byars, argues that the injunctive relief requiring Google to disable the Google Play services "background" data toggle imposes a detriment on class members, because it will "tak[e] away something they currently have, an ability to toggle off Google's challenged data conversion." *See* Dkt. No. 288 at 6; *see also* Dkt. No. 334-1 at 4, 12-13. This objection misapprehends the reasons for requiring Google to disable the "background" data toggle. The parties do not dispute that the toggle operates only during "very small windows" of "background" time when GMSCore conducts "its own cleanup tasks." *See* Dkt. No. 331 ¶¶ 114-117 & Exs. K-N (Dkt. Nos. 331-11 to 331-14). The parties' disagreement concerns plaintiffs' contention that the toggle is misleading, principally because an average user might not understand that the toggle's reference to "background" data refers only to these very small windows" of "background" time

United States District Court
Northern District of California

when GMSCore conducts "its own cleanup tasks." *See* Dkt. No. 331 ¶¶ 114-117 & Exs. K-N (Dkt. Nos. 331-11 to 331-14). During the *Csupo* trial, plaintiffs contended that the toggle gave users the false impression that they could use the toggle to turn off the challenged transfers, when the toggle does not actually function that way. *See id.*[29] Indeed, as discussed above, Google maintains that the challenged transfers should not be turned off because they support functionality and security. *See* Dkt. Nos. 329 at 5-6, 329-1 ¶¶ 4-7; *see also* Dkt. No. 330-1 ¶ 5. The settlement's injunctive relief reduces or eliminates any confusion among users who might believe that the toggle can be used to turn off or stop all or most of the challenged transfers, when, in fact, that is not its function.

The Court finds that the injunctive relief is fair, reasonable, and adequate and overrules all objections to the proposed injunctive relief.[30]

**4. Scope of Release**

"[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. at 327 (quoting *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010)); *see also Custom LED*, 2013 WL 6114379, at *4, *7 (granting preliminary approval of release of claims "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action.").

The Court finds that the release provision is fair, reasonable, and adequate, and that it complies with applicable Ninth Circuit law. The scope of the release extends to:

> any and all claims, liabilities, rights, demands, arbitrations, suits,

---

[29] Google notes that "turning the toggle off *currently* reduces Google Play services' usage of cellular data while in the '*background*' to zero, which is consistent with the *current* language accompanying the toggle." Dkt. No. 329 at 6 n.5 (citing Dkt. No. 329-1 ¶ 10) (emphasis added).

[30] *See, e.g.,* Dkt. Nos. 274 & 287 at ¶¶ 4, 5, 6, 13, 18, 24, 30, 33, 48, 72, 77, 89, 90 (B. Lawson); Dkt. No. 277 at 1 (G. Warrington); Dkt. No. 280 at 2 (C. Brown); Dkt. No. 288 at 4, 8 & Dkt. No. 334-1 at 12-15 (N. Byars); Dkt. No. 289 at 2 (A. Hawkins Jr.); Dkt. No. 293 at 2 (I. Flournoy); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 312 at 2 (J. McCorvey); Dkt. No. 319 at 2 (C. Tepfer); Dkt. No. 323 at 3 (M. Coak); Dkt. No. 324 at 2 (D. McCorvey); Dkt. No. 327 at 2 (M. Focia); Dkt. No. 328 at 6-9 (T. Scheffler).

> actions, causes of action, obligations, damages, penalties costs, attorneys' fees, losses, and remedies of every kind or description against the Releasees—whether known or unknown, existing or potential or that hereafter may exist or might have existed, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that were asserted in the Action, could have been asserted in the Action, and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s), to the maximum extent allowed by law, regardless of whether such claims arise under federal, state, and/or local law, statute, ordinance, regulation, common law, or other source of law. For the avoidance of doubt, the Released Claims include all claims reasonably related to any alleged use or consumption of cellular data by Defendant "in the background" or when a user is not directly engaging with their Android mobile device(s) or apps, products, or software thereon, and/or in connection with "passive" transfers of any kind between Android mobile devices and Defendant and/or its servers.

Dkt. No. 260-11 § 1.33; *see also id.* § 13. The Court requested clarification regarding the scope of the release and the use of the disjunctive "and/or" in the phrase ". . . that were asserted in the Action, could have been asserted in the Action, and/or that reasonably relate to or arise from the same predicate facts . . .." In their supplemental joint submission, the parties stipulate that the latter clause stating "and/or that reasonably relate to or arise from the same predicate facts alleged in the Class Action Complaint(s)" limits the preceding clause stating "could have been asserted in the Action." Dkt. No. 348 at 3. The Court concludes that this release extends only to those claims that arise from the same common nucleus of operative fact as the claims plaintiffs asserted in the operative FAC (Dkt. No. 60). *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 n.2. (9th Cir. 2005) (noting, in claim preclusion context, that "the phrase 'claims that were raised or could have been raised,' refers to legal theories arising out of the same transactional nucleus of facts, rather than to distinct causes of action"); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-cv-01376-LHK, 2011 WL 13240287, at *2 (N.D. Cal. Nov. 14, 2011) (approving class action settlement release "limited to claims 'that were asserted, could have been asserted, or that arise out of the same transactions or occurrences as the claims that were asserted, in the action."). The Court further finds that the release is fair in light of the substantial benefit the class obtains in exchange for it. Accordingly, the Court overrules objections to the scope of the



United States District Court
Northern District of California

United States District Court
Northern District of California

release.[31]

### 5. Extent of Discovery Completed, the Stage of the Proceedings, and Arm's Length Negotiations

The focus of the Court's inquiry here is "whether the parties carefully investigated the claims before reaching a resolution," *Bellinghausen*, 306 F.R.D. at 257, and whether the settlement is the result of good faith, arms-length negotiations, or whether there are signs of collusion or self-interest, *In re Bluetooth*, 654 F.3d at 946. Court approval is more likely where "most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723-JSC, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (citation modified; citation omitted).

As discussed in the Court's preliminary approval order (Dkt. No. 270 at 22-23), the parties have litigated this matter for nearly six years, including two rounds of motion practice regarding the sufficiency of the pleadings, an appeal to the Ninth Circuit, fact and expert discovery, and extensive briefing and a hearing on plaintiffs' motion for class certification and on the parties' respective *Daubert* motions. The parties negotiated this settlement for more than a year with the aid of neutral, skilled mediators and special settlement counsel for the federal class and for the *Csupo* class. *See* Dkt. No. 260-1 ¶¶ 12-15. The Court finds that negotiations were conducted at arm's length, and the Court credits class counsel's and defendant's counsel's representations that the negotiations were, at times, contentious. *See, e.g.,* Dkt. No. 243; Dkt. No. 245; Dkt. No. 260-1 ¶ 15; Dkt. No. 270 at 22-23; Dkt. No. 272 at 4:10-14, 23-25:2, 40:9-16. The settlement does not have a "clear sailing" provision, is non-reversionary, and is not contingent on any award of attorneys' fees or incentive awards—all of which support the Court's conclusion that the settlement was conducted at arm's length without collusion. Google's opposition to class counsel's fee request (Dkt. No. 292) further demonstrates that there is no collusion among counsel

[31] *See, e.g.*, Dkt. Nos. 274 & 287, ¶¶ 3, 7, 68 (B. Lawson); Dkt. No. 279 at 7 (T. Jacobs); Dkt. No. 288 at 9, 18-19 & Dkt. No. 334-1 at 14 (N. Byars); Dkt. No. 293 at 1 (I. Flournoy); Dkt. No. 294 at 4 (D. Mawe); Dkt. No. 297 at 2 (A. Hamilton); Dkt. No. 300 at 6 (M. Prather); Dkt. No. 302 at 7 (C. Andrews); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 312 at 1-2 (J. McCorvey); Dkt. No. 314 at 1 (W. Cisson); Dkt. No. 318 (R. Davidson); Dkt. No. 321 at 2 (S. Ford); Dkt. No. 323 at 3 (M. Coak); Dkt. No. 322 at 8 & Dkt. No. 325 at 1 (M. Sussman); Dkt. No. 328 at 13 (T. Scheffler).

for the parties.

For the reasons discussed further below, none of the objections to this settlement present credible evidence of any collusion or that the settlement was tainted by conflicts of interest.

**6. Experience and Views of Counsel**

As discussed above, the record demonstrates that class counsel are well-qualified and experienced in litigating large complex matters, including class actions. *See* Dkt. No. 260-1 ¶¶ 3-11 & Exs. 1-9 (Dkt. Nos. 260-2 to 260-10); Dkt. No. 260-15 ¶¶ 19-31 & Ex. 1 (Dkt. No. 260-16); Dkt. No. 281-2 ¶¶ 3-10 & Annex 1-9 (Dkt. Nos. 281-3 to 281-11); Dkt. No. 281-21 ¶ 4 & Annex 1 (Dkt. No. 281-22); Dkt. No. 330-1 ¶ 3. The Court credits class counsel's view, and the view of special settlement counsel who represented the interests of the federal class, that the settlement is fair, reasonable, and adequate, and in the best interests of the class, in view of the significant risks of proceeding with the litigation through trial, and the substantial monetary and injunctive relief the class obtains in this settlement. *See Bellinghausen*, 306 F.R.D. at 257; *see also* Dkt. No.260-1 ¶¶ 2, 16, 21, 26; Dkt. No. 260-15 ¶¶ 3, 6-11; Dkt. No. 260-25 ¶¶ 8-10; Dkt. No. 337-1 ¶ 9; Dkt. No. 337-2. The Court further finds that this litigation is at a sufficiently advanced stage for class counsel to make a reasoned judgment to settle this case, having completed all discovery, substantial motions practice, and an appeal, over the course of approximately six years.

**7. No Government Participant**

Plaintiffs have submitted evidence that Angeion provided notice of the settlement to government officials as required by CAFA, 28 U.S.C. § 1715(b). No objections were lodged by any such official. *See* Dkt. No. 330-2 ¶ 7 & Ex. A (Dkt. No. 330-3). Accordingly, this factor favors the settlement. *See In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 588-89 (N.D. Cal. 2015). All objections regarding the required CAFA notice are overruled.[32]

**8. Reaction of the Class Members to the Proposed Settlement**

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class

[32] *See, e.g.,* Dkt. No. 322 at 20-23 & Dkt. No. 325 at 13-16 (M. Sussman).



United States District Court
Northern District of California

members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections and 500 opt-outs out of 90,000 settlement class members was proper).

In view of the six objectors who later opted out or withdrew their objections, plaintiffs advise that there are 44 objections to the settlement (including several who did not file their objections with the Court, as required by the settlement notice) and 130 timely requests to opt out from the settlement. *See* Dkt. No. 373; *see also* Dkt. No. 331 ¶¶ 104-113. As discussed below, the Court will permit one additional opt-out, for a total of 131 opt outs. Objectors and opt-outs are a very small percentage of the class—less than 0.00014%. The extremely small number of opt-outs and objections relative to the size of the class weighs in favor of the settlement.

**9. Adequate Representation**

As discussed above, the record demonstrates that the named plaintiffs and class counsel vigorously litigated this matter, and that class counsel are well-qualified and experienced in litigating large complex matters, including class actions. *See* Dkt. Nos. 74, 79, 99, 164, 171, 172, 180, 181, 187, 189, 191, 228, 231; Dkt. No. 260-1 ¶¶ 3-11 & Exs. 1-9 (Dkt. Nos. 260-2 to 260-10); Dkt. No. 260-15 ¶¶ 19-31 & Ex. 1 (Dkt. No. 260-16); Dkt. No. 281-2 ¶¶ 3-10 & Annex 1-9 (Dkt. Nos. 281-3 to 281-11); Dkt. No. 281-21 ¶ 4 & Annex 1 (Dkt. No. 281-22); Dkt. No. 330-1 ¶ 3.

Several objectors argue that class counsel have not provided adequate representation due to alleged conflicts of interest. For example, Mr. Byars argues that class counsel put their own interests before those of the class by choosing "certainty over magnitude," bargaining away the preclusive effect of the *Csupo* jury verdict, and "bundling" the settlements in *Csupo* and the present federal action, when the two classes have divergent interests. Mr. Byars contends that retaining special settlement counsel did not resolve the conflict, arguing that special settlement counsel merely "reviewed the finished bargain rather than negotiating the *Taylor* class's share against the *Csupo* class's." *See* Dkt. Nos. 288, 334-1.

The Court concludes that assertions of self-dealing on the part of class counsel are not supported by the record presented, and that class counsel have acted, and continue to act, in the



United States District Court
Northern District of California

interests of the class as a whole. For the reasons discussed above, continued litigation poses significant risks to plaintiffs in obtaining class certification and establishing liability and damages. As already explained, the Court denied plaintiffs' motion to stay this proceeding pending proceedings in *Csupo*. At the time the parties agreed to a settlement, the *Csupo* verdict had no preclusive effect in this action, the outcome of Google's appeal in *Csupo* could not be known with any certainty, and Google's appeal likely would not be resolved for at least 17 months. *See* Dkt. No. 330 at 27 n.13. There was and is no guarantee of a favorable judgment here, absent a settlement. To the extent Mr. Byars believes that class counsel "sold out" the federal class in favor of the *Csupo* class because individual members might have gotten around $15 per member (as in *Csupo*) instead of around $1 per member (as here), for the reasons discussed above, he is mistaken about where the bulk of the value of the settlement lies.

The Court finds no basis to conclude that class counsel put their own interests ahead of the class in reaching a coordinated settlement of both the *Csupo* action and this action. With respect to injunctive relief, the settlements in the two actions are *identical*. The present settlement involved comprehensive resolution across both the federal and *Csupo* classes and promotes nationwide uniform disclosures and practices by Google. Class counsel and special settlement counsel aver that special settlement counsel did not merely review and approve a "finished bargain," and that they independently reviewed and evaluated the merits of the respective cases, negotiated what they determined to be a fair and appropriate allocation of the aggregate settlement amount between the two cases, and provided direction on the acceptability of non-financial terms, including settlement contingencies. *See* Dkt. Nos. 260-25, 330-1, 337-1, 337-2.

While the Court has seriously considered the objections made by Google and several class members to the magnitude of class counsel's requested fee recovery compared to the monetary relief that will benefit the class, and has conducted its own independent evaluation of the requested fee (discussed below), the fact that class counsel has made a substantial fee request does not, by itself, suggest that the settlement was motivated by a conflict of interest or collusive behavior.

In sum, the Court finds that there are well-supported, non-collusive reasons supporting class counsel's decision to agree to the settlement on behalf of the class, which offers the class

immediate and certain relief. The Court overrules all objections based on purported conflicts of interest.[33]

**10. Agreements Required to be Identified**

Rule 23(e) requires "parties seeking approval" of the settlement to "file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). In seeking preliminary approval of the settlement, class counsel identified the *Csupo* settlement agreement. *See* Dkt. Nos. 260-13. The Court has considered the *Csupo* settlement agreement and, for the reasons discussed above, finds no basis to alter its prior analysis or conclusions that the settlement is fair, reasonable, and adequate.

**11. Equitable Treatment**

In assessing whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class . . .." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation modified; citation omitted). As noted above, some objectors argue that the pro rata payments do not fairly compensate class members based on, for example, the length of time they have been using Android phones, or the number of phones they use. For the reasons discussed above, the burden and difficulty of calculating individual payments for more than 100 million class members would result in higher settlement administration costs, which would not make sense in view of the relatively modest payments to individual class members. Dkt. No. 270 at 28-29. The proposed calculation method is intended to pay class members directly and as quickly and efficiently as possible, and to simplify the calculation of individual class member payments and lower settlement administration costs, yielding a greater benefit to the class as a whole. The fact that some individuals "would structure the settlement differently does not render it unfair. . . . 'It is an inherent feature of the class-action device that individual class members will often claim differing

[33] *See, e.g.,* Dkt. No. 283 at 1-2 (M. Krause); Dkt. No. 285 at 1-2 (D. Maynard); Dkt. No. 286 at 1-2 (J. Maynard); Dkt. No. 297 at 1-2 (A. Hamilton); Dkt. No. 288, at 10-11, 14-15 & Dkt. No. 334-1 at 4-1- (N. Byars); Dkt. No. 302 at 55 (C. Andrews); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 312 at 2 (J. McCorvey); Dkt. No. 319 at 2 (C. Tepfer); Dkt. No. 323 at 3 (M. Coak).

United States District Court
Northern District of California

amounts of damages—that is why due process requires that individual members of a class certified under Rule 23(b)(3) be given an opportunity to opt out of the settlement class to pursue their claims separately.'" *See Kang v. Wells Fargo Bank, N.A.*, Nos. 17-cv-06220-BLF & 21-cv-00071-BLF, 2021 WL 5826230, at *13 (N.D. Cal. Dec. 8, 2021) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012)). The Court overrules all objections to the issuance of equal payments to all class members.[34]

**12. Potential for Collusion and Attorneys' Fees Award**

Class counsel seek payment of $39,825,000 in attorneys' fees (i.e., 29.5% of the settlement fund). *See* Dkt. No. 281. As discussed below, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. As part of that analysis, the Court must examine the settlement for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. Those signs include (1) class counsel's receipt of a disproportionate distribution of the settlement, (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) an arrangement whereby fees that are not awarded revert to the defendants, rather than being added to the class fund. *Id.*

The second and third *Bluetooth* factors do not present an issue, as the settlement agreement does not contain a "clear sailing" agreement, and the proposed settlement is non-reversionary. There is also no indication that the proposed settlement is conditioned or contingent upon an award of attorneys' fees. The Court addresses the first factor and objections that class counsel seek "a disproportionate distribution of the settlement," *In re Bluetooth*, 654 F.3d at 947, below.

[34] *See, e.g.,* Dkt. No. 274 ¶ 9 (B. Lawson); Dkt. No. 279 at 7 (T. Jacobs); Dkt. No. 290 at 2-3 (D. Omabegho); Dkt. No. 302 at 30-32 (C. Andrews); Dkt. No. 307 at 1 (C. Quate); Dkt. No. 322 at 8, 10-12 and Dkt. No. 325 at 1, 3-5 (M. Sussman).

### D. Objections

Although the Court received 50 sets of objections, plaintiffs state that only about half of those were timely filed (and not withdrawn) by persons known to be class members who did not opt out. The Court has nevertheless considered all of the objections[35] and, with the exception of objections to the requested attorneys' fees and incentive awards (which are addressed below), finds that they are invalid, irrelevant, or otherwise without merit.

Class counsel advised that, as of June 11, 2026, several individuals had not met their burden to establish their standing to object, as they did not provide evidence of class membership and are not on the class list created from Google's Android account data (*see* Dkt. Nos. 330-2 ¶ 33 & 331 ¶¶ 40-52, 58-68).[36] *See In re Yahoo Mail Litig.*, No. 13-cv-04980-LHK, 2016 WL 4474612, at *8 (N.D. Cal. Aug. 25, 2016) ("[O]nly an 'aggrieved class member' has standing to object to a proposed class settlement. The burden is on the objector to 'prove that he has standing to object.'") (citation omitted).

Other objectors have requested to be excluded from the class, rendering their objections invalid (*see* Dkt. No. 373 ¶ 6 & Ex. A (Dkt. No. 373-1).[37] *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 n.6 (N.D. Cal. 2017).

Other objections are invalid, as they were not filed with the Court as required by the notice.[38] *See In re TD Ameritrade Acct. Holder Litig.*, No. 07-cv-2852, 2011 WL 4079226, at *11

---

[35] The Court has considered the initial and resubmitted objections filed by Mr. Sussman. *See* Dkt. Nos. 322, 325. The Court has also considered the objection of Ms. Davidson (Dkt. No. 318), who states, without elaboration, that the objection is "[n]ot fair[.]" Mr. Hawkins submitted a timely objection (Dkt. No. 289), followed by an untimely one (Dkt. No. 333) that largely echoes his prior objection and requests a larger individual payment. Mr. Darold submitted an objection (Dkt. No. 360), which does not state any objections regarding the settlement.

[36] Dkt. No. 273 (J. Varga); Dkt. No. 280 (C. Brown); Dkt. No. 284 (J. Stoltzfus); Dkt. No. 291 (B. Walker); Dkt. No. 294 (D. Mawe); Dkt. No. 296 (A. Ammon); Dkt. No. 297 (A. Hamilton); Dkt. No. 303 (M. Peralez); Dkt. No. 306 (J. Davis); Dkt. No. 313 (C. Price); Dkt. No. 314 (W. Cisson); Dkt. No. 317 (G. Dillman); Dkt. No. 318 (R. Davidson); Dkt. No. 321 (S. Ford); Dkt. No. 331-6 (E. Ritter); Dkt. No. 331-8 (S. Beckendam); Dkt. No. 331-9 (N. Castorina); Dkt. No. 331-10 (T. Blake).

[37] Dkt. No. 280 (C. Brown); Dkt. No. 318 (R. Davidson); Dkt. No. 321 (S. Ford).

[38] Dkt. No. 331-6 (E. Ritter); Dkt. No. 331-7 (R. Messenger); Dkt. No. 331-8 (S. Bekendam); Dkt. No. 331-9 (N. Castorina); Dkt. No. 331-10 (T. Blake).



United States District Court
Northern District of California

(N.D. Cal. Sept. 13, 2011).

Two individuals were determined to be *Csupo* class members and not members of the class in this action.[39] *See* Dkt. No. 331 ¶¶ 6, 101-103.

Two individuals withdrew their objections.[40]

Several objectors misunderstand the nature of this action, which concerns cellular data that is purchased from cellular carriers, not "personal data," i.e., personal information or data that implicates privacy concerns.[41]

For the reasons discussed above, all objections regarding the settlement class definition,[42] sufficiency of the notice,[43] Angeion and/or the administration of the settlement,[44] the sufficiency

---

[39] Dkt. No. 282 (R. Aumaitre); Dkt. No. 315 (A.M. Lauderdale).

[40] Dkt. No. 300 (M. Prather), withdrawn by Dkt. No. 331-5; Dkt. No. 279 (T. Jacobs), withdrawn by Dkt. No. 345-1.

[41] *See, e.g.,* Dkt. Nos. 274 & 287, ¶¶ 18, 33, 57 (B. Lawson); Dkt. No. 280 at 2 (C. Brown); Dkt. No. 291 at 1 (B. Walker); Dkt. No. 297 at 2 (A. Hamilton); Dkt. No. 303 at 1 (M. Peralez); Dkt. No. 307 at 1 (C. Quate); Dkt. No. 313 at 1 (C. Price); Dkt. Nos. 316 & 320 at 3 (J. Faber); Dkt. No. 319 at 1 (C. Tepfer); Dkt. No. 321 at 2 (S. Ford); Dkt. No. 323 at 3 (M. Coak); Dkt. No. 331-8 at 2-3 (S. Bekendam).

[42] *See, e.g.,* Dkt. Nos. 274 & 287 ¶ 34 (B. Lawson); Dkt. No. 302 at 16-18, 27, 32, 35, 36, 47 (C. Andrews); Dkt. No. 322 at 10-11, 18-19 & Dkt. No. 325 at 3-4, 11-12 (M. Sussman).

[43] *See, e.g.,* Dkt. No. 274 & 287 at ¶¶ 8, 11, 12, 14, 19, 29, 38, 39, 52 (B. Lawson); Dkt. No. 282 at 2-4 (R. Aumaitre); ; Dkt. No. 290 at 3-4 (D. Omabegho); Dkt. No. 302 at 18-45 (C. Andrews); Dkt. No. 322 at 8, 12; Dkt. No. 325 at 1, 5 (M. Sussman).

[44] *See, e.g.,* Dkt. No. 282 at 1-4 (R. Aumaitre); Dkt. No. 283 at 2 (M. Krause); Dkt. No. 285 at 2 (D. Maynard); Dkt. No. 286 at 2 (J. Maynard); Dkt. No. 302 at 6, 7, 9, 16, 36, 38, 39, 41-46 (C. Andrews); Dkt. No. 312 at 2 (J. McCorvey); Dkt. Nos. 322 & 325, *passim* (M. Sussman).



United States District Court
Northern District of California

of the monetary recovery,[45] the terms of the injunctive relief,[46] the scope of the release,[47] the issuance of equal payments to all class members,[48] and purported conflicts of interest,[49] are overruled.

The Court addresses objections to the requested attorneys' fees and the requested incentive awards below.

**E. Request for Belated Opt Out**

On June 29, 2026, the Court received a request to submit a belated opt out from Harsha Dalal. Dkt. No. 349. The request, which is dated June 17, 2026, states that Harsha Dalal received notice of the proposed settlement only after reading an online article about it on June 16, 2026,

---

[45] *See, e.g.,* Dkt. No. 273 at 2 (J. Varga); Dkt. Nos. 274 & 287, ¶¶ 1, 7, 17, 31, 42 (B. Lawson); Dkt. No. 276 at 1-2 (C. Long); Dkt. No. 279 at 2-4 (T. Jacobs); Dkt. No. 280 at 2 (C. Brown); Dkt. No. 283 at 2 (M. Krause); Dkt. No. 285 at 2 (D. Maynard); Dkt. No. 286 at 2 (J. Maynard); Dkt. No. 288 at 4 (N. Byars); Dkt. No. 289 at 2 (A. Hawkins, Jr.); Dkt. No. 290 at 2 (D. Omabegho); Dkt. No. 291 at 1 (B. Walker); Dkt. No. 293 at 1 (I. Flournoy); Dkt. No. 294 at 3-4 & Dkt. No. 310 at 2 (D. Mawe); Dkt. No. 296 at 1-2 (A. Ammon); Dkt. No. 297 at 1-2 (A. Hamilton);Dkt. No. 300 at 2-3, 6 (M. Prather); Dkt. No. 302 at 7, 20-21, 45-46, 55 (C. Andrews); Dkt. No. 303 at 1 (M. Peralez); Dkt. No. 304 at 1-2 (J. Kirkley); Dkt. No. 305 at 1-2 (A. Plotkin); Dkt. No. 308 at 1 (S. Carpenter); Dkt. No. 312 at 1 (J. McCorvey); Dkt. No. 313 at 1 (C. Price); Dkt. No. 314 at 1 (W. Cisson); Dkt. No. 318 at 1 (M. Davidson); Dkt. No. 319 at 1 (C. Tepfer); Dkt. Nos. 316 & 320 at 3-5 (J. Faber); Dkt. No. 321 at 2 (S. Ford); Dkt. No. 323 at 1, 3 (M. Coak); Dkt. No. 324 at 1 (D. McCorvey); Dkt. No. 327 at 1 (M. Focia); Dkt. No. 328 at 2-6 (T. Scheffler); Dkt. No. 331-7 at 2 (R. Messenger); Dkt. No. 331-8 at 3-4 (H. Bekendam); Dkt. No. 331-9 at 5 (N. Castorina).

[46] *See, e.g.,* Dkt. Nos. 274 & 287 at ¶¶ 4, 5, 6, 13, 18, 24, 30, 33, 48, 72, 77, 89, 90 (B. Lawson); Dkt. No. 277 at 1 (G. Warrington); Dkt. No. 280 at 2 (C. Brown); Dkt. No. 288 at 4, 8 & Dkt. No. 334-1 at 12-15 (N. Byars); Dkt. No. 289 at 2 (A. Hawkins Jr.); Dkt. No. 293 at 2 (I. Flournoy); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 312 at 2 (J. McCorvey); Dkt. No. 319 at 2 (C. Tepfer); Dkt. No. 323 at 3 (M. Coak); Dkt. No. 324 at 2 (D. McCorvey); Dkt. No. 327 at 2 (M. Focia); Dkt. No. 328 at 6-9 (T. Scheffler).

[47] *See, e.g.*, Dkt. Nos. 274 & 287, ¶¶ 3, 7, 68 (B. Lawson); Dkt. No. 279 at 7 (T. Jacobs); Dkt. No. 288 at 9, 18-19 & Dkt. No. 334-1 at 14 (N. Byars); Dkt. No. 293 at 1 (I. Flournoy); Dkt. No. 294 at 4 (D. Mawe); Dkt. No. 297 at 2 (A. Hamilton); Dkt. No. 300 at 6 (M. Prather); Dkt. No. 302 at 7 (C. Andrews); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 312 at 1-2 (J. McCorvey); Dkt. No. 314 at 1 (W. Cisson); Dkt. No. 318 (R. Davidson); Dkt. No. 321 at 2 (S. Ford); Dkt. No. 323 at 3 (M. Coak); Dkt. No. 322 at 8 & Dkt. No. 325 at 1 (M. Sussman); Dkt. No. 328 at 13 (T. Scheffler).

[48] Dkt. No. 274 ¶ 9 (B. Lawson); Dkt. No. 279 at 7 (T. Jacobs); Dkt. No. 290 at 2-3 (D. Omabegho); Dkt. No. 302 at 30-32 (C. Andrews); Dkt. No. 307 at 1 (C. Quate); Dkt. No. 322 at 8, 10-12 and Dkt. No. 325 at 1, 3-5 (M. Sussman).

[49] *See, e.g.,* Dkt. No. 283 at 1-2 (M. Krause); Dkt. No. 285 at 1-2 (D. Maynard); Dkt. No. 286 at 1-2 (J. Maynard); Dkt. No. 297 at 1-2 (A. Hamilton); Dkt. No. 288, at 10-11, 14-15 & Dkt. No. 334-1 at 4-1- (N. Byars); Dkt. No. 302 at 55 (C. Andrews); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 312 at 2 (J. McCorvey); Dkt. No. 319 at 2 (C. Tepfer); Dkt. No. 323 at 3 (M. Coak).

i.e., about two weeks after the May 29, 2026 deadline for submitting opt out requests. *See id*. The record indicates Harsha Dalal mailed the present request to the Court from New Jersey on June 22, 2026, one day before the final approval hearing. *Id*.

The Court's discretion in evaluating such requests is informed by (1) "the degree of compliance with the best practicable notice procedures"; (2) "when notice was actually received and if not timely received, why not"; (3) "what caused the delay, and whose responsibility was it"; (4) "how quickly the belated opt out request was made once notice was received"; (5) "how many class members want to opt out"; and (6) "whether allowing a belated opt out would affect either the settlement or finality of the judgment." *Silber*, 18 F.3d at 1455. As noted above, the record reflects that Angeion provided notice to the class with a high degree of compliance with the approved notice plan. There are no details indicating whether Harsha Dalal even is a class member or why notice reportedly was not received. Assuming Harsha Dalal is a class member,[50] and crediting assertions that notice was not received until June 16, 2026 (at which time the record indicates that Harsha Dalal acted relatively quickly to seek relief from the Court), the Court grants the request to submit a belated opt out. In view of the 130 total opt out requests that have been received, allowing Harsha Dalal's belated opt out will not affect the settlement or the finality of any judgment to be entered. As the May 29, 2026 deadline for opting out has long since passed, no further requests to opt out will be entertained.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

### A. Attorneys' Fees

#### 1. Legal Standard and Governing Law

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

[50] Plaintiffs' only response is that the request should be denied because Angeion "has treated other late opt-out requests as untimely and invalid" and class counsel have "directed [Angeion] to do the same here." Dkt. No. 375. However, plaintiffs do not address whether the other individuals who belatedly asked to opt out after the deadline claimed not to have received timely notice.

United States District Court
Northern District of California

Class counsel's motion for attorneys' fees is governed by California law because plaintiffs' conversion claim is based on California law and the Court's subject matter jurisdiction is based on diversity. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Google's citation to *Berk v. Choy*, 607 U.S. 187 (2026) does not compel a contrary conclusion, as Rule 23(h) does not prescribe a presumptively reasonable benchmark for an award of attorneys' fees in Rule 23 class actions. In any event, whether decided under California or federal law, the determination of a fee award is within the Court's discretion and focuses on whether an amount awarded is reasonable in view of the circumstances of the case. *See Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 488 (2016); *see also In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 929 (9th Cir. 2020); *Vizcaino*, 290 F.3d at 1046, 1048.

Under California law, there are two primary methods of determining a reasonable attorney fee in class action litigation. *See Laffitte*, 1 Cal. 5th at 489. "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Id*. "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Id*. (citation modified; citation omitted). "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.* (citation modified; citation omitted). "The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts." *Id*. at 504; *accord Vizcaino*, 290 F.3d at 1047 ("Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."). Whichever method a court uses to calculate a fee award, a court may also use a second method of calculating fees as a cross-check. *See Lafitte*, 1 Cal. 5th at 503-04; *In re Bluetooth*, 654 F.3d at 944-45.

### 2. Findings of Fact and Conclusions of Law

Class counsel request an attorneys' fee award of $39,825,000, representing 29.5% of the

$135 million settlement fund. Dkt. No. 281. The lodestar figure claimed by class counsel through April 23, 2026 is $15,311,284, and thus the requested fee award reflects a multiplier of 2.6. *See* Dkt. No. 281-1 ¶ 41.

Class counsel achieved a notable result for the class. As discussed above, they worked diligently, and with skill and dedication on behalf of the class, including pursuing a successful Ninth Circuit appeal of this Court's dismissal order. While the economic impact of the alleged conversion on individual users is minimal, plaintiffs' claim presented a novel legal question and involved technical complexity. *See* Dkt. No. 281-1 ¶¶ 5, 6, 20, 23-25, 27, 28, 30, 48; Dkt. No. 281-2 ¶ 14 & Annex 11 (Dkt. No. 281-13); Dkt. No. 281-21 ¶ 10 & Annex 3 (Dkt. No. 281-24). Class counsel undertook considerable risk in litigating this matter on a contingency basis for nearly six years. According to their records, class counsel worked more than 15,000 hours and spent approximately $700,000 of their own funds in this litigation. *See* Dkt. No. 281-2 ¶¶ 11-15, 28 & Annex 10, 11 (Dkt. Nos. 281-12, 281-13); Dkt. No. 281-21 ¶¶ 7-11 & Annex 2, 3 (Dkt. Nos. 281-23, 281-24); Dkt. No. 281-38 ¶¶ 6-9 & Annex 1, 2 (Dkt. Nos. 281-39, 281-40).

While a number of objectors argue that the settlement provides individual class members with a disproportionately small monetary sum, it must be noted that the common settlement fund of $135 million for the class as a whole is a substantial sum, and the settlement provides the class with both monetary *and* injunctive relief, which is a relevant circumstance in determining the amount of reasonable fees to be awarded. *See Roes*, 944 F.3d at 1055-56. With respect to monetary relief, even if the class recovered the full amount of its claimed damages, each member of the federal class would obtain approximately $15, before deductions for attorneys' fees, litigation expenses, and settlement administration costs. Dkt. No. 331 ¶ 121. The Court has not been presented with evidence of actual harm in the form of throttling, overage charges, or other palpably adverse economic consequences caused by the network transfers in question. Although plaintiffs alleged significant monetary damages in their FAC, they acknowledge that the amount of cellular data at issue, per user, is small. *See* Dkt. No. 330 at 21; Dkt. No. 331 ¶¶ 119-120 & Exs. P, Q (Dkt. Nos. 331-16 & 331-17). The record thus indicates that the magnitude of the alleged collective damages is largely a function of the fact that the alleged conversion occurred



United States District Court
Northern District of California

United States District Court
Northern District of California

across a very large number of people.

For the reasons discussed above, the settlement's principal value to the class is the non-monetary, injunctive relief requiring disclosures from Google regarding the cellular data usage at issue. While the value of such transparency cannot be easily or accurately quantified,[51] such relief is still significant in that it enables users to make informed decisions about whether to consent to the cellular data usage and continue using Android devices. In this way, the settlement's injunctive relief directly and completely addresses the alleged unlawfulness underlying plaintiffs' conversion claim, i.e., the lack of users' informed consent. The injunctive relief is also meaningful in that it benefits all class members, regardless of whether they opt out or object.

Class counsel's request for 29.5% of the settlement fund is within a range between the 25% benchmark Google notes is customary under federal law and the 30-33% range for fees that class counsel say are typically awarded under California law. Neither Google nor class counsel contends that the Court must conform its award to one or the other of these percentages. Rather, these "benchmarks" are guidelines, and any award based on the percentage method must take into account all circumstances of the case. *See Vizcaino*, 290 F.3d at 1048; *Lafitte*, 1 Cal. 5th at 488.

As the bulk of the value of the settlement lies in the injunctive relief (which cannot be easily or accurately quantified), the Court finds that the best means for assessing class counsel's fee request is the lodestar-multiplier method. Class counsel's request for a fee award of 29.5% of the settlement fund is more than twice their claimed lodestar. Class counsel represent that, through April 23, 2026, they spent 15,093.12 hours on this case, resulting in a lodestar of $15,311,284. This consists of: $9,063,094 and 6,613.44 hours by the Bartlit Beck firm; $6,228,061 and 8,449.88 hours spent by the Korein Tillery firm; and $20,129 and 29.80 hours spent by the McManis Faulkner firm. *See* Dkt. Nos. 281-1 ¶ 41; 281-2 ¶¶ 11-13; 281-12; 281-21 ¶¶ 7-9; 281-23; 281-38 ¶¶ 6-8; 281-39. Class counsel state that the lodestar does not include the time worked by the Zuckerman Spaeder firm, which served as special settlement counsel. *See*

---

[51] Although plaintiffs' expert (*see* Dkt. No. 260-6 ¶ 10) proffers an estimate of the potential monetary value of the injunctive relief, the Court declines to adopt it or to ascribe any particular monetary value to that relief. *See Roes*, 944 F.3d at 1055-56; *Staton v. Boeing Co.*, 327 F.3d at 974; *Vizcaino*, 290 F.3d at 1049.

Dkt. No. 281 at 22.[52]

The lodestar hours have been adequately documented by timekeeper, category of work, hours, and billable rate (*see* Dkt. No. 281 at 22-23; Dkt. No. 281-2 ¶¶ 11-13 & Annex 10 (Dkt. No. 281-12); Dkt. No. 281-21 ¶¶ 7-9 & Annex 2 (Dkt. No. 281-23); Dkt. No. 281-38 ¶ 6 & Annex 1 (Dkt. No. 281-39)). Under California law, "detailed time sheets are not required of class counsel to support fee awards in class action cases, *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 64 (2008), and courts may "approve[] fee awards based on declarations describing the hours worked on various tasks, without providing underlying time records of the hours worked and the type of work performed," *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 987 (N.D. Cal. 2017); The Court finds that class counsel's hours were worked as stated and that they are reasonable. While Google (and some objectors) express concern about potential duplication of effort between the present action and *Csupo* (*see* Dkt. No. 292), the Court accepts class counsel's representations that the lodestar hours reflect only those hours spent exclusively on the present federal action and do not include time spent on the *Csupo* case. *See* Dkt. Nos. 281-2 ¶ 12; Dkt. No. 281-21 ¶ 8; Dkt. No. 281-38 ¶ 7.

With respect to their respective hourly rates, class counsel present evidence of rates charged by other firms that class counsel consider comparable to their own firms. *See* Dkt. No. 281-2 ¶¶ 17-27 & Annex 12-18 (Dkt. Nos. 281-14 to 281-20). That evidence consists of periodic fee statements submitted by other firms in bankruptcy matters in other districts. It is unclear what (if any) relation those rates have to the prevailing rates in this District. Nor have class counsel presented evidence establishing the reasonableness of their respective rates in this District. *See* Dkt. No. 281 at 22-23; Dkt. No. 281-2 ¶¶ 11-13 & Annex 10 (Dkt. No. 281-12); Dkt. No. 281-21 ¶ 7 & Annex 2 (Dkt. No. 281-23); Dkt. No. 281-38 ¶ 6 & Annex 1 (Dkt. No. 281-39). The Court thus looks to hourly rates approved by other judges presiding over similar cases in this District during the relevant time period. *See Ketchum*, 24 Cal. 4th 1122, 1133 (2001) (remarking that "the reasonable value of attorney services is variously defined as the hourly amount to which attorneys

[52] As discussed below, class counsel represent that their requested costs and expenses also do not include the legal fees paid to special settlement counsel. *See* Dkt. No. 281 at 25.



United States District Court
Northern District of California

of like skill in the area would typically be entitled.") (quotations and citation omitted); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("The reasonable hourly rate is that prevailing in the community for similar work."); *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 699 (2014) ("Generally, the courts will look to equally difficult or complex types of litigation to determine which market rates to apply. The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located.") (citation modified; citation omitted); *see also Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) ("Generally, the relevant community is the forum in which the district court sits.").

For the most part, class counsel's billing rates, ranging from $900-$1,850 for partners (Bartlit Beck); $800-$1,750 for partners and $400-$800 for associates (Korein Tillery), and $690-$825 for partners and of counsel (McManus Faulkner), appear to be in line with prevailing rates in this District in similar or comparable litigation. However, the Court finds that the hourly rates of $2,000 or more for Bartlit Beck partners in 2024, 2025, and 2026, as well as the hourly rates exceeding $1,000 in 2024, 2025, and 2026 for a Bartlit Beck associate with five years of experience, are high and beyond those found reasonable in this District in recent years. Although one court in this District recently approved hourly rates of $2,250 for partners in extraordinarily complex and novel litigation, *see Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO, 2026 WL 2087580, at *9 (N.D. Cal. July 7, 2026), for the most part courts in this District find that rates generally ranging up to around $1,625 for partners and senior attorneys, and up to around $850 for associates, are consistent with prevailing market rates in the San Francisco Bay Area.[53] Thus,

[53] *See, e.g., Pardi v. Tricida, Inc.*, No. 21-cv-00076-HSG, 2025 WL 2988737, at *10 (N.D. Cal. Oct. 23, 2025) (in securities class action, finding reasonable hourly rates ranging from $970 to $1,625 for partners, $535 to $640 for associates); *Smith v. Apple Inc.*, No. 21-cv-09527-HSG, 2025 WL 1266927, at *8 (N.D. Cal. May 1, 2025) (in consumer class action, finding reasonable hourly rates of $1,000-$1,300 for senior attorneys and $450-$850 for associates); *Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2025 WL 2494429, at *9 (N.D. Cal. Aug. 29, 2025) (in class action concerning Adwords click costs, finding hourly rates up to $1,300 for partners, $750 for other attorneys within prevailing market rates); *Bernstein v. Gingko Bioworks Holdings, Inc.*, No. 4:21-cv-08943-KAW, 2024 WL 5112227 at *6 n.1 (N.D. Cal. Dec. 13, 2024) (citing Dkt. No. 129) (in securities class action approving $700-1,100 for partners and of counsel, $600 for associates); *In re Lyft Secs. Litig.*, No. 19-cv-02690-HSG, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (in securities class action, finding hourly rates of $900-$1,200 for partners, $375-$605 for associates "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); *In re MacBook Keyboard Litig.*, No. 18-cv-02813-EJD, 2023

instead of the hourly rates of $2,000 or more for partners and $1,000 or more for an associate sought by Bartlit Beck, the Court finds $1,850/hour reasonable for Ms. Giulianelli and Messrs. Summers and Brenza and $850/hour reasonable for Mr. Marsh. These rates are at the high end of the range of prevailing rates, but the Court finds they are warranted, as Bartlit Beck partners argued the principal substantive motions in the case and appeared to assume the responsibilities of lead trial counsel. *See, e.g.,* Dkt. Nos. 228, 266, 340. The billing rate changes the Court adopts result in a modified total lodestar for class counsel of $14,283,757.85.

In evaluating the lodestar, "the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Ketchum*, 24 Cal. 4th at 1132. The purpose of a fee multiplier "for contingent risk is to bring the financial incentives for attorneys . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Id*. "A contingent fee must be higher than a fee for the same legal services paid as they are performed." *Id*. "The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." *Id*. However, "a court cannot rely on the contingent nature of the representation in both setting the lodestar amount *and* in later modifying the lodestar." *Santana v. FCA US, LLC*, 56 Cal. App. 5th 334, 351-52 (2020);

WL 3688452, at *15 (N.D. Cal. May 25, 2023) (in consumer class action, approving rates of up to $1,195 for partners and $850 for associates); *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827-EJD, 2023 WL 2090981, at *17 (N.D. Cal. Feb. 17, 2023) & Dkt. Nos. 469-3 to 469-39; 471 (in consumer multidistrict litigation, approving hourly rates up to $995 for partners with 25 or more years of experience, acknowledging that "Class Counsel in this case are among the very best in their practice area" and "highly regarded in the Northern District."); *In re Facebook Internet Tracking Litig*., 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (in privacy multidistrict litigation, finding hourly rates up to $1,200 for all attorneys "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Fleming v. Impax Labs. Inc.*, No. 16-cv-06557, 2022 WL 2789496, at *9 (N.D. Cal. July 5, 2022) (in securities class action, finding hourly rates of $760-$1,325 for partners, $895-$1,150 for counsel, and $175-$520 for associates "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); *In re Facebook Biometric Info. Privacy Litig*., 522 F. Supp. 3d at 633 & Dkt. Nos. 499-4 to 499-6 (in biometric privacy litigation, finding rates of up to $1,200 for partners "reasonable for the applicable localities and experience levels of the timekeepers.").

*see also In re Bluetooth*, 654 F.3d at 942 n.7 (noting that many of the *Kerr* factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable rate.") (citation modified; citation omitted); *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) ("A multiplier 'may not be awarded based on a factor that is subsumed in the lodestar calculation.'") (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553 (2010)).

Class counsel's diligence and work in the nearly six years of this litigation are already accounted for in the lodestar. It is unclear whether the contingent nature of the litigation is subsumed in the lodestar. Counsel for Bartlit Beck state that while the firm "is a pioneer in the use of alternative fee agreements and insists on non-hourly fee arrangements for significant litigation matters," the firm "[n]evertheless, in the ordinary course of business" maintains hourly rates for its attorneys and other billable professionals. Dkt. No. 281-2 ¶ 16. The Court finds that an enhancement of the lodestar is warranted, in view of the novel legal question presented by plaintiffs' conversion claim and its technical complexity; the notable result obtained for the class; the delay in payment of fees to class counsel for services performed; and the fact that the lodestar does not take into account fees incurred and to be incurred after April 23, 2026. While the principal value of the settlement is in non-monetary injunctive relief, that value cannot be specifically quantified. Although the collective monetary relief is large by virtue of the size of the class, the monetary payments to individual class members is modest. Under these circumstances, the Court finds that class counsel's request for $39,825,000 overcompensates for the value of the non-monetary relief, as well as the other factors not already subsumed in the lodestar. For this reason, the Court applies a multiplier of 2.0, resulting in total fee amount of $28,567,515.70. A 2.0 multiplier is within the range of lodestar multipliers other courts in this District and in the state of California have found reasonable, including in settlements involving injunctive-only relief. *See Vizcaino*, 290 F.3d at 1051 n.6 (recognizing that multipliers ranging from 1 to 4 are typically awarded in common fund cases); *see, e.g., Littlejohn v. Copland*, 819 F. App'x 491 (9th Cir. 2020) (in non-complex food labeling case, affirming award of requested fees at 1.489 multiplier where class members obtained injunctive relief only); Order Granting Motion for Final Approval of Class Action Settlement; Granting in Part Motion for Attorneys' Fees; Granting Sealing Requests;

and Judgment, *In re Google RTB Consumer Privacy Litig.*, No. 4:21-cv-02155-YGR (N.D. Cal. Mar. 26, 2026), Dkt. No. 813 (in privacy litigation, awarding fees at .085 multiplier for settlement court found "adequate, but by no means excellent."); *In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (approving award of fees with 3.28 multiplier in multidistrict litigation concerning alleged interception and tracking of users' internet activity); *In re Facebook Biometric Info. Privacy Litig*., 522 F. Supp. 3d at 633 (in biometric privacy litigation, awarding fees, with 4.71 multiplier); *St. Louis Police Retirement Sys. v. Severson*, No. 12-cv-05086-YGR, 2014 WL 3945655, at *5-6 (N.D. Cal. Aug. 11, 2014) (awarding 1.5 multiplier for non-monetary settlement that "upheld important principles of corporate governance," but where most significant achievements were completed at early stage of litigation and did not involve extraordinary risk, effort, or complexity); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (Cal. Ct. App. 2008) (in settlement involving upgraded DVD rental membership status, 2.5 multiplier found not "'so out of line' with prevailing caselaw"). Dkt. No. 292-3 (*Csupo* order awarding fees reflecting 2.36 multiplier applied to lodestar).

A total fee amount of $28,567,515.70 represents 21% of the settlement fund of $135 million. While this percentage is lower than the 25% and 30-33% benchmarks described above, the Court finds the amount is reasonable, given that the amount of the fund is a function of very small amounts of money distributed to a very large number of class members. *See In re Bluetooth*, 654 F.3d at 942 ("[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead."); *Laffitte*, 1 Cal. 5th at 490 ("Where the class settlement is for a very large amount, a percentage fee may be criticized as providing counsel a windfall in relation to the amount of work performed."); *see also id*. at 496 & n.5, 503 (taking no position on the means employed by other courts to assess fee requests in so-called "megafund" cases, but citing federal law regarding attorneys' fees awards generally with approval).

To address class counsel's concerns about periods of additional delay between this order finally approving the settlement and disbursement of the settlement amounts, the fee award shall also include class counsel's proportional share of interest earned on the settlement fund until any



United States District Court
Northern District of California

United States District Court
Northern District of California

such funds are distributed. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2020 WL 7264559, at *23 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (awarding attorneys' fees on a $113.45 million settlement "together with a proportional share of interest earned on the Settlement Fund for the time period until dispersed.").

In awarding these fees, the Court has considered the objections to class counsel's fee request, most of which express only generalized concerns about the magnitude of the requested fees. The Court has not relied on any of these generalized objections in determining the fees to be awarded to class counsel. Accordingly, the Court overrules all objections to the requested attorneys' fees.[54]

**3. Conclusion re Attorneys' Fees**

For the reasons explained above, the Court awards $28,567,515.70 in attorneys' fees, as well as a proportional share of interest earned on the settlement fund until any such funds are distributed.

**B. Costs and Expenses**

Class counsel seek $698,533.60 in out-of-pocket costs and expenses they incurred in prosecuting this action. Class counsel represent that this sum does not include the legal fees paid to local counsel at the McManus Faulkner firm or to special settlement counsel. *See* Dkt. No. 281 at 25. Attorneys may "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation modified; citation omitted).

Class counsel have submitted declarations showing that the requested expenses were

[54] *See, e.g.,* Dkt. No. 273 at 1-2 (J. Varga); Dkt. Nos. 274, 287 ¶¶ 2, 22, 71 (B. Lawson); Dkt. No. 276 at 1-2 (C. Long); Dkt. No. 279 at 4-5 (T. Jacobs); Dkt. No. 283 at 1 (M. Krause); Dkt. No. 284 at 1 (J. Stoltzfus); Dkt. No. 285 at 1 (D. Maynard); Dkt. No. 286 at 1 (J. Maynard); Dkt. Nos. 288 at 15-16 & 334-1 at 6-7 (N. Byars); Dkt. No. 289 at 2 (A. Hawkins, Jr.); Dkt. No. 290 at 3 (D. Omabegho); Dkt. No. 291 at 1 (B. Walker); Dkt. No. 293 at 1-2 (I. Flournoy); Dkt. No. 297 at 2 (A. Hamilton); Dkt. No. 300 at 6 (M. Prather); Dkt. No. 301 at 3-6 (J. Renfort, Jr.); Dkt. No. 302 at 12, 16, 50-52, 57 (C. Andrews); Dkt. No. 303 at 1 (M. Peralez); Dkt. No. 304 at 2 (J. Kirkley); Dkt. No. 306 at 1-4 (J. Davis); Dkt. No. 308 at 1 (S. Carpenter); Dkt. No. 312 at 2 (J. McCorvey); Dkt. No. 314 at 1 (W. Cisson); Dkt. Nos. 316 & 320 at 2 (J. Faber); Dkt. No. 322 at 13, 19-20 & Dkt. No. 325 at 6, 12-13 (M. Sussman); Dkt. No. 324 at 1-2 (D. McCorvey); Dkt. No. 327 at 2 (M. Focia); Dkt. No. 328 at 9-12 (T. Scheffler).

reasonably incurred. *See* Dkt. No. 281-1 ¶¶ 47-51; Dkt. No. 281-2 ¶¶ 14-15 & Annex 11 (Dkt. No. 281-13); Dkt. No. 281-21 ¶¶ 10-11 & Annex 3 (Dkt. No. 281-24); Dkt. No. 281-38 ¶ 9 & Annex 2 (Dkt. No. 281-40). The most significant expenses comprise the retained experts' fees. *See* Dkt. No. 281-1 ¶ 48; Dkt. No. 281-2 ¶ 15 & Annex 11 (Dkt. No. 281-13); Dkt. No. 281-21 ¶ 11 & Annex 3 (Dkt. No. 281-24). Class counsel aver that those experts, who were also hired for the *Csupo* case, did not double-bill their time to both cases. Dkt. No. 281-1 ¶ 49. Additionally, because the *Csupo* case proceeded through expert reports and discovery first, class counsel aver that the experts were able to rely on their work in *Csupo*, which reduced the hours required for the present action. *Id.*

The Court finds that the expenses were necessary to this litigation, benefitted the class, and are the type of expenses normally billed to paying clients. Based on class counsel's declarations, the Court finds an award of expenses in the amount of $698,533.60 to be reasonable and necessary.

**C. Incentive Awards**

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit," *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013), and "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general," *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). While such awards are permissible and "are fairly typical in class action cases," they are also discretionary, *Rodriguez*, 563 F.3d at 958, and must be reasonable, *Staton*, 327 F.3d at 977. The Ninth Circuit has cautioned that granting incentive awards "should not become routine practice." *Radcliffe*, 715 F.3d at 1163 (citing *Staton*, 327 F.3d at 975). Rather, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives" because incentive awards may also "corrupt the settlement by undermining the adequacy of the class representatives and class counsel." *Id.* at 1164. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen*, 306 F.R.D. at 267; *see also Kang*, 2021 WL 5826230 at *11 (same).



United States District Court
Northern District of California

Each named plaintiff seeks a $10,000 incentive award and submitted a declaration describing the work he or she did. *See* Dkt. Nos. 281-41, 281-42, 281-43; *see also* Dkt. No. 281-21 ¶ 19. Mr. Taylor estimates that he spent 65 hours on this case, while Ms. Nelson estimates she spent 75 hours and Mr. Cleary estimates he spent 80 hours. The work they describe (including review of pleadings, court filings, and other documents; gathering documents and information; meeting with class counsel; responding to written discovery; and submitting to deposition) is typical for a named plaintiff. Each plaintiff notes that he or she had to do without their mobile devices for a day or more, while technicians gathered data, causing disruption to their work and/or personal lives. Each plaintiff notes the invasive and sometimes personally challenging nature of discovery. In particular, plaintiffs state that they each were required to disclose personal information on their devices, including emails, text messages, search history, YouTube watch history, app usage, and information from Google accounts. Ms. Nelson states that she was asked especially personal questions in deposition. Although each plaintiff expresses concern for potential retaliation or reputational harm (namely, from having their names associated with this litigation in online searches), at the hearing, class counsel confirmed that there is no evidence that any plaintiff has experienced any such negative consequence. The Court finds no evidence that the incentive awards are or were conditioned on the plaintiffs' support for final approval of the settlement.

An incentive payment is not meant to provide a windfall and "cannot be so large that it amounts to a preferred position in the settlement, or a salary." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022) (citation modified; citations omitted). Rather, such payments are meant to account for the burden undertaken by the class representatives to achieve the result that benefits the class. *See id*. at 785-86 (common fund "doctrine's fundamental purpose is to spread the burden of a party's litigation expenses among those who are benefited.") (citation modified). While there is a significant disparity between the amount of money that each named plaintiff receives and the amount that each class member receives, the Ninth Circuit has characterized awards between $3,000 and $5,000 as "modest." *See In re Facebook, Inc. Internet Tracking Litig.*, No. 22-16903, 2024 WL 700985, at *2 (9th Cir. Feb. 21,

United States District Court
Northern District of California

2024). Under these circumstances, the Court finds an incentive award of $5,000 to each named plaintiff, as well as a proportional share of interest earned on the settlement fund until any such funds are distributed, is fair, reasonable, and adequate. On this record, an award of $10,000 would overcompensate, and there is insufficient justification for it. In reaching this conclusion, the Court has considered the objections to the incentive awards, all of which express concern about awards conditioned on support of final approval, or the disparity between the amounts received by the named plaintiffs and individual class members. As the Court does not rely on any of these reasons in setting the amount of the award, the objections are overruled.[55]

## IV. CONCLUSION

For the reasons discussed above:

1. The Motion for Final Approval of Class Action Settlement is granted.

2. The Motion for Fees, Costs, and Incentive Awards is granted in part as follows: Counsel are awarded $28,567,515.70 in attorneys' fees and $698,533.60 in costs and expenses. Class representatives are granted incentive awards of $5,000 each. These awards include a proportional share of interest earned on the settlement fund until any such funds are distributed.

3. Any evidence of proof of class membership or election of a payment method that have not yet been submitted, must be submitted by **September 8, 2026**. Angeion shall complete the review of all requests for participation within 10 days following the September 8, 2026 deadline.

4. Funds shall be distributed pursuant to the parties' settlement agreement (Dkt. No. 260-11). The parties shall file a post-distribution accounting in compliance with this District's Procedural Guidance for Class Action Settlements within 21 days after the distribution of the settlement funds and payment of attorneys' fees, costs and expenses, and incentive awards. Unless the parties advise that a different date is appropriate, the Court sets a **November 20, 2026** deadline for the post-distribution accounting.

5. This case is dismissed with prejudice pursuant to the terms of the settlement, the Order

---

[55] *See, e.g.*, Dkt. Nos. 274 & 287 at ¶ 63 (B. Lawson); Dkt. No. 293 at 2 (I. Flournoy); Dkt. No. 302 at 12, 42 (C. Andrews); Dkt. No. 308 at 1 (S. Carpenter); Dkt. No. 312 at 2 (J. McCorvey); Dkt. Nos. 322 at 20 & Dkt. No. 325 at 13 (M. Sussman); Dkt. No. 328 at 14-15 (T. Scheffler); Dkt. No. 334-1 at 5-6 (N. Byars).

Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 270), and this order. The Clerk of Court shall enter judgment and close the file. Without affecting the finality of judgment in any way, the Court retains exclusive jurisdiction to enforce the settlement agreement, including the disbursement of the settlement funds.

**IT IS SO ORDERED.**

Dated: August 21, 2026

Virginia K. DeMarchi
United States Magistrate Judge

United States District Court
Northern District of California