ELIZABETH M. PIPKIN (243611)
ANN M. RAVEL (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244
epipkin@mcmanislaw.com
aravel@mcmanislaw.com

GLEN E. SUMMERS (176402)
KARMA M. GIULIANELLI (184175)
LINDLEY J. BRENZA (*pro hac vice*)
JONATHAN JACOB MARSH (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

MARC A. WALLENSTEIN (*pro hac vice*)
GEORGE A. ZELCS (*pro hac vice*)
RYAN Z. CORTAZAR (*pro hac vice*)
CHAD E. BELL (*pro hac vice*)
PAMELA I. YAACOUB (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

CAROL L. O'KEEFE (*pro hac vice*)
MICHAEL E. KLENOV (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs Joseph Taylor, Mick Cleary, and Jennifer Nelson*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

JOSEPH TAYLOR, MICK CLEARY, and JENNIFER NELSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 5:20-CV-07956-VKD

**NOTICE OF MOTION, MOTION FOR BOND FOR APPEAL OF NATHAN BYARS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: November 10, 2026
Time: 10:00 a.m.
Judge: Hon. Virginia K. DeMarchi

## NOTICE OF MOTION AND MOTION

Please take notice that Plaintiffs, on behalf of themselves and the certified class, will and hereby do move for an order requiring objector-appellant Nathan Byars to post an appeal bond. Plaintiffs request that this Motion be decided either without oral argument in accordance with Civil Local Rule 7-1(b), or heard on November 10, 2026, at 10:00 a.m., or as soon as practicable, in the courtroom of the Honorable Virginia K. DeMarchi located at the Robert F. Peckham Federal Building and United States Courthouse, Courtroom 2, 280 South 1st Street, San Jose, CA 95113.

This Motion is made pursuant to Federal Rule of Appellate Procedure ("FRAP") 7. This Motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities; the Declaration of Marc A. Wallenstein ("Wallenstein Decl."); the records on file in this action; and any additional argument that may be presented.

## STATEMENT OF THE ISSUES TO BE DECIDED

Plaintiffs move the Court:

1. To find that a bond is warranted under FRAP 7; and
2. To find that Mr. Byars must post a bond of $16,738 as a condition of pursuing his appeal.

## MEMORANDUM OF POINTS AND AUTHORITIES

Objector-appellant Nathan Byars (ECF 401) has filed a meritless appeal that will unnecessarily delay the final resolution of this case.[1] This Court should impose an appeal bond on Mr. Byars pursuant to FRAP 7 in order to protect the class from the likelihood that he will not pay recoverable costs when he loses his appeal.

Class Counsel conservatively estimates that recoverable costs for Mr. Byars's appeal, including the costs of preparing the record and briefs and the transcript fees, will be at least $16,738. Plaintiffs therefore ask the Court to require Mr. Byars to post a bond of $16,738 as a condition of pursuing his appeal. Courts in this District routinely impose appeal bonds of a comparable amount, including in cases involving objector-appellants who claim inability to pay, and in some cases have imposed much higher appeal bonds.

The amount of the requested appeal bond does not include any attorneys' fees that will be incurred because of the appeal. Plaintiffs reserve the right to seek attorneys' fees, along with the interest caused by the delay, as a sanction under 28 U.S.C. § 1912 or § 1927, or under FRAP 38, once Mr. Byars's appeal is resolved on the merits. *See McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981) (proper to award attorneys' fees when the "result is obvious" and to prevent "knee jerk reaction to every unfavorable ruling" (citation omitted)); *Ingle v. Cir. City*, 408 F.3d 592, 595 (9th Cir. 2005) (ordering payment of double costs and attorneys' fees).

Google does not oppose Plaintiffs' Motion and generally agrees that an appeal bond in a reasonable amount should be required in connection with Mr. Byars's appeal. Wallenstein Decl. ¶ 19.

## ARGUMENT

This Court should exercise its discretion to require a $16,738 appeal bond as a condition of Mr. Byars pursuing his appeal. When a litigant appeals a judgment, "the district court may

[1] The Ninth Circuit has docketed Mr. Byars's appeal at No. 26-6253 (*see* ECF 404). Plaintiffs do not concede that Mr. Byars or any objector-appellant has timely or properly filed a notice of appeal, and Plaintiffs reserve the right to move to dismiss based on an improper or untimely notice of appeal, for lack of standing, or for any other reason.

require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "The need for a bond, as well [as] its amount, are left to the discretion of the trial court." *Senne v. Kan. City Royals Baseball Corp.*, No. 14-cv-608, 2023 WL 4238509, at *1 (N.D. Cal. June 27, 2023).

### I. A Bond Is Required to Protect the Class from the Risk of Nonpayment

The Court should impose an appeal bond as a condition of Mr. Byars's appeal because there is a significant risk that he will otherwise not pay costs taxed against him after his unsuccessful appeal. "The purpose of an appeal bond is to protect an appellee against the risk of nonpayment by an unsuccessful appellant." *Miletak v. Allstate Ins. Co.*, No. 06-cv-3778, 2012 WL 3686785, at *1 (N.D. Cal. Aug. 27, 2012) (citation modified). "Courts in the Ninth Circuit consider the following factors in determining whether a bond is appropriate: (1) the appellants' financial ability to post bond; (2) the risk that appellants will not pay the costs if they lose the appeal; and (3) the likelihood that they will lose the appeal and be subject to costs." *Senne*, 2023 WL 4238509, at *1. This Court may consider the merits of an objector-appellant's arguments under factor (3). *See id.* The Court may also consider an objector-appellant's history of voluminous and duplicative motions practice in evaluating the likelihood of appellate motions practice contributing to costs on appeal. *See id.* at *2 ("Furthermore, based on the conduct of the [objectors] in this Court, it is likely that there will be more motions on appeal than is typical."). However, courts may not impose a bond as a sanction for a frivolous or bad-faith appeal. *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007).

All factors weigh in favor of requiring Mr. Byars to post a bond in the amount requested.

#### A. There Is No Evidence that Mr. Byars Is Unable to Post a Bond

There is no evidence that Mr. Byars is unable to post an appeal bond. "District courts have found this [financial ability] factor weighs in favor of a bond, absent an indication that a plaintiff is financially unable to post bond." *Schulken v. Wash. Mut. Bank*, No. 09-cv-2708, 2013 WL 1345716, at *4 (N.D. Cal. Apr. 2, 2013). "The objector bears the burden of establishing that [they] cannot post an appeal bond." *James v. Uber Techs. Inc.*, No. 19-cv-6462, 2022 WL 6468665, at *3 (N.D. Cal. Oct. 10, 2022) (citation omitted).

Courts in this District impose appeal bonds where, as here, there is no evidence that the objector lacks the financial ability to pay. *See, e.g.*, *Embry v. ACER Am. Corp.*, No. 09-cv-1808, 2012 WL 2055030, at *1–2 (N.D. Cal. June 5, 2012) (imposing appeal bond on objector due to "absence of evidence" of inability to pay); *In re Blackhawk Network Data Breach Litig.*, No. 22-cv-7492, 2024 WL 4700634, at *1, *3 (N.D. Cal. Nov. 5, 2024) (imposing appeal bond where there was no evidence that objectors lacked ability to pay). Accordingly, this factor weighs in favor of imposing a bond.

There is also affirmative evidence that Mr. Byars is able to pay the requested appeal bond. Mr. Byars has paid the Ninth Circuit filing fee for his appeal and is represented by counsel. *See* ECF 401. His payment of the filing fee is evidence of his ability to pay an appeal bond.

Mr. Byars also holds himself out as employed in finance. His public LinkedIn profile identifies him as a "finance officer" at Good Halo Financing. *See* Wallenstein Decl. Ex. 1, LinkedIn, *Nathan A. Byars: Experience*, *available at* https://www.linkedin.com/in/nathan-a-byars-2a1016b0/. His employment as a finance officer is evidence of his ability to pay an appeal bond.

Within the last six years, Mr. Byars was the named plaintiff in two cases also involving his attorney in this case, Mr. Javitch. *See* Wallenstein Decl. Ex. 2, *Morales v. Sunpath Ltd.*, No. 20-cv-1376 (D. Del.), Docket at ECF 1 & 7; Wallenstein Decl. Ex. 3, *Byars v. Bush & Bush Law Grp.*, No. 25-cv-1686 (W.D. Tex.), Docket at ECF 3 & 4. That Mr. Byars has the wherewithal to bring multiple lawsuits, represented by counsel, is further evidence of his ability to pay an appeal bond.

**B. There Is a Substantial Risk that Mr. Byars Will Not Pay Costs After He Loses His Appeal**

Because Mr. Byars does not live in California, there is a substantial risk that he will not satisfy costs taxed against him. "[C]ourts in the Northern District have recognized that collecting costs from out of state appellants may be difficiult [sic]." *Schulken*, 2013 WL 1345716, at *5. "This factor is particularly troubling when an appellant lives outside the jurisdiction of the Ninth Circuit." *Id.*; *Fleury v. Richemont N. Am., Inc.*, No. 05-cv-4525, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008) (imposing bond where objector-appellant was "not a resident of California, nor does she reside in a state within the Ninth Circuit" because this "would make it more difficult for

the Settling Parties to collect their costs”). Mr. Byars resides in Texas (ECF 288 at 5). Because he does not live within the Ninth Circuit, much less in California, it will be very difficult and costly for Plaintiffs to collect costs from him when he loses his appeal. This factor strongly favors the posting of a bond. *See In re Netflix Priv. Litig.*, No. 11-cv-379, 2013 WL 6173772, at *3 (N.D. Cal. Nov. 25, 2013) (issue of risk of non-payment is “weighted more heavily when an appellant lives outside the jurisdiction of the Ninth Circuit”).

**C. Mr. Byars’s Chance of Success on Appeal Is Very Low**

The final factor, the chance of success on appeal, weighs decisively in favor of requiring an appeal bond.

The Court’s order approving the settlement is thorough, procedurally sound, correct on the merits, and highly likely to be affirmed. This Court conducted an extensive and searching analysis of the fairness, reasonableness, and adequacy of the settlement, including considering and ruling on each objection on its merits. *See* ECF 397 (Order Granting Final Approval); ECF 398 (Order re Motions to Intervene & Other Filings); *see also In re Netflix*, 2013 WL 6173772, at *3 (“In issuing its Final Order, the Court engaged in an extensive analysis of the Settlement, including the merits of the objections, and found the Settlement to be fair, adequate, and reasonable,” which “weighs in favor of a bond.”).

The Ninth Circuit’s review of this Court’s reasoning must be “extremely limited,” and the Ninth Circuit will reverse “only upon a strong showing that the district court’s decision was a clear abuse of discretion.” *In re Volkswagen “Clean Diesel” Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 609 (9th Cir. 2018) (citation omitted). In light of this Court’s careful and thorough analysis, it is extremely unlikely that the Ninth Circuit will reverse. *See id.* (explaining that the Ninth Circuit will “rarely overturn an approval of a class action consent decree on appellate review for substantive reasons” if the district court has complied with all procedural requirements (citation omitted)); *Tait v. BSH Home Appliances Corp.*, No. 10-cv-711, 2015 WL 12748268, at *1 (C.D. Cal. Oct. 19, 2015) (“The Court previously considered and rejected [objector] Ameen’s objections. This factor weighs strongly in favor of imposing a bond.” (internal citation omitted)).

Mr. Byars intends to focus his appeal on arguments that both the *Csupo* class and *Taylor* class were represented by the same counsel, according to the Mediation Questionnaire he recently filed with the Ninth Circuit. *See Taylor v. Google*, No. 26-6253, ECF 3 (Ninth Circuit Mediation Questionnaire filed by Nathan Byars) (representing that this is the "principle issue on appeal"). Mr. Byars argues that "one set of counsel made the decision to settle rather than litigate for both classes and divided the recovery between them, with no counsel loyal to the Taylor class alone making that decision for it, and without separate representation, subclasses, or a neutral allocator." *Id.* But that is not true. Class Counsel engaged separate Special Settlement Counsel for each of the *Taylor* and *Csupo* classes. *See* Summers Declarations (ECF 260-1, 330-1, 337-1), Bush Declarations (ECF 260-25, 337-2). The *Taylor* class was represented by Mr. Graeme Bush, the chairman emeritus of Zuckerman Spaeder. *Id.* The *Csupo* class was represented separately by Phillip Korologos, an experienced litigation partner of Boies Schiller. *Id.*

The uncontroverted record is that Mr. Bush was engaged as Special Settlement Counsel "to represent exclusively the interests of the putative class in this matter (and not the separate class in the related case of *Csupo v. Google* pending in California Superior Court)." Bush Declaration (ECF 260-25 ¶ 3); *see also* Summers Declaration (ECF 260-1 ¶ 13) ("In early November 2025, Plaintiffs engaged Mr. Bush to serve as Special Settlement Counsel exclusively for the putative class in this case."). Only after Mr. Bush conducted an "independent evaluation of the merits of the cases, including the potential recoveries and risks to those potential recoveries," and after "weeks of further negotiations," did the parties reach a settlement in this case. Summers Declaration, ECF 260-1 ¶ 13. The record thus flatly contradicts Mr. Byars's representations.

Mr. Byars also argued in his objections that Special Settlement Counsel merely reviewed and approved the "finished bargain" in this case but did not "negotiat[e] the *Taylor* class's share against the *Csupo* class's." Byars Sur-Reply, ECF 334-1 at 1. But this factual assertion is also incorrect. Supplemental Summers Declaration, ECF 337-1 ¶ 4. The record establishes that Mr. Bush's "role was not limited to reviewing and approving the settlement term sheet or final settlement agreement," and that he was "specifically tasked with independently evaluating the

merits of the respective cases and negotiating a fair and appropriate allocation of the aggregate settlement amount between *Taylor* and *Csupo*" with separate Special Settlement Counsel for the *Csupo* class. Supplemental Bush Declaration ¶ 4. Special Settlement Counsel also made the determinations whether to accept "material terms demanded by Google." *Id.* ¶ 5; *see also* Supplemental Summers Declaration, ECF 337-1 ¶¶ 4–6. This "two-stage" approach to settlement negotiation was designed to follow the Ninth Circuit's guidance that such an approach eliminates any arguable conflict of interest. *See Scholnick v. Pace Am. Grp., Inc.*, No. 96-16208, 1998 WL 20807, at *1 (9th Cir. Jan. 16, 1998). Throughout the entire process, "Special Settlement Counsel provided direction to Class Counsel in the negotiation of the settlement term sheets and final settlement agreements; they did not merely approve a 'finished bargain.'" Supplemental Summers Declaration, ECF 337-1 ¶ 6. Mr. Byars's persistent representations to the contrary are false.

The Court carefully considered and correctly rejected Mr. Byars's arguments in its Final Approval Decision. *See* ECF 397 (Order Granting Final Approval), at 29–31. In so doing, the Court made explicit findings that render meritless Mr. Byars's arguments on appeal. The Court concluded that Mr. Byars's arguments are "not supported by the record," and made the factual finding "that class counsel have acted, and continue to act, in the interests of the class as a whole." *Id.* at 29–30. The Court further found "no basis to conclude that class counsel put their own interests ahead of the class in reaching a coordinated settlement of both the *Csupo* action and this action." *Id.* at 30. For these reasons, and many others, the Court found "that there are well-supported, non-collusive reasons supporting class counsel's decision to agree to the settlement on behalf of the class, which offers the class immediate and certain relief." *Id.* at 30–31. As to Mr. Byars, the Court remarked that "he is mistaken" in asserting "that class counsel 'sold out'" the class. *Id.* at 30.

This Court's factual findings are highly unlikely to be disturbed on appeal. The Ninth Circuit reviews approval of a proposed class action settlement only for "abuse of discretion," and factual findings will be disturbed only if they are "clearly erroneous." *In re Google Location Hist. Litig.*, No. 24-3387, 2026 WL 2509404, at *3 (9th Cir. Aug. 26, 2026). The Court grounded its

findings in reasoned analysis of the detailed record before it, including (but not limited to) multiple declarations attesting to the independence and involvement of Special Settlement Counsel. *See* ECF 397 (Order Granting Final Approval), at 29–31. This Court also had the opportunity to personally observe the tenacity of counsel in negotiating the settlement, which took months of contentious arm's-length bargaining and multiple lengthy impasses. The Court also had the opportunity to assess the real risks of further litigation of this action, which were not present in *Csupo*. The Ninth Circuit is highly unlikely to reverse this Court's reasoned, record-based findings because of Mr. Byars's factually inaccurate accusations and speculations. *See In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1118 (9th Cir. 2021) ("On clear error review, we will not second-guess the district court's factual findings based on speculation about what Google might hypothetically have done absent the settlement agreement.").

Because Mr. Byars's arguments are based on a factually inaccurate premise that is inconsistent with the record, and because this Court carefully considered, addressed, and rejected his arguments, including by making factual findings supported by an uncontroverted record that contradict Mr. Byars's assertions, Mr. Byars's chances of success on appeal are negligible.

## II. The Bond Should Be Set at $16,738

A bond of $16,738 is appropriate under the circumstances of this case. FRAP 7 provides that an appeal bond should be set in an "amount necessary to ensure payment of costs on appeal." FRAP 7. This amount "includes those costs specified in [FRAP] 39." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-4766, 2017 WL 4581926, at *4 (N.D. Cal. Sept. 13, 2017) (citing *Azizian*, 499 F.3d at 958). "Plaintiffs need not provide an itemized breakdown of the anticipated appellate costs." *Senne*, 2023 WL 4238509, at *2 (quoting *Tait*, 2015 WL 12748268, at *2).

FRAP 39 allows the following recoverable costs:

> (A) the production of necessary copies of a brief or appendix, or copies of records authorized by Rule 39(f);
>
> (B) the docketing fee; and
>
> (C) a filing fee paid in the court of appeals.
>
> * * *
>
> (1) the preparation and transmission of the record;

> (2) the reporter's transcript, if needed to determine the appeal;
>
> (3) premiums paid for a bond or other security to preserve rights pending appeal; and
>
> (4) the fee for filing the notice of appeal.

FRAP 39(e)(1) & (f).[2] When estimating costs, some factors to consider include the number of possible motions on appeal and the length of the relevant record and transcripts. *See, e.g.*, *Senne*, 2023 WL 4238509, at *2.

Plaintiffs estimate that the recoverable FRAP 39 costs in this case will be at least $16,738. Wallenstein Decl. ¶ 6. The current record in this case is approximately 7,624 pages. *Id.* ¶ 10. Based on Class Counsel's past experience, Plaintiffs estimate that they will be required to file supplemental excerpts of record of at least 2,250 pages for Mr. Byars's appeal. *Id.* ¶ 11. These extensive excerpts of record will be necessary to demonstrate the fairness, reasonableness, and adequacy of the settlement, including to show the chances of recovering damages or obtaining injunctive relief absent the settlement. *Id.* ¶ 6. Those questions implicate practically the entire record in this Court.

A reputable appellate printer has provided an estimate of $15,190 for the costs of preparing the required copies of the answering brief and 2,250 pages of supplemental excerpts of record. *Id.* ¶ 12 & Ex. 5, Counsel Press estimate. The cost of preparing reporter's transcripts in this case is $1,548. *Id.* ¶ 13 & Ex. 6, chart detailing actual transcript costs. The total recoverable costs from the excerpts of record, merits briefs, and transcripts will therefore be at least $16,738. *Id.* ¶ 6.

In the prior Ninth Circuit appeal in this case, the actual costs of preparing the briefs and excerpts of record were $4,231, even though the excerpts of record were only 140 pages. *See* Wallenstein Decl. ¶ 8 & Ex. 4, Counsel Press invoices. Mr. Byars's appeal is likely to involve a much larger record (and much higher cost) than the prior appeal, which involved only two motions to dismiss. This appeal involves issues that go to the merits of the case after briefing and argument

---

[2] Before 2025, taxable costs were listed only in FRAP 39(e). FRAP 39 was amended in 2025 to split the list of taxable costs between subdivisions 39(e) and 39(f). *See* FRAP 39 advisory committee's note to 2025 amendment. Cases from before 2025 sometimes refer only to "Rule 39(e)" costs. Such references are not intended to exclude the costs now listed in FRAP 39(f), a subdivision that did not exist at the time.

of numerous dispositive and non-dispositive motions, including a class certification motion, multiple *Daubert* motions, a motion for stay, and motions for preliminary and final approval.

Moreover, two recent appeals handled by Class Counsel involved FRAP 39 costs in excess of $14,000. *See id*. ¶¶ 14–16 & Ex. 7, Counsel Press invoice, *Gibson v. Nat'l Ass'n of Realtors*, No. 24-3473 (8th Cir.); *id.* Ex. 8, Counsel Press invoice, *Burnett v. Nat'l Ass'n of Realtors*, No. 24-3619 (8th Cir.). Each appeal involved much smaller excerpts of record (606 and 801 pages, respectively) than what Class Counsel anticipates will be required in Mr. Byars's appeal. *See id.*

Courts in this District routinely impose comparable appeal bonds on objectors who are represented by counsel, including where objectors claimed financial burden. *See, e.g.*, *In re Netflix*, 2013 WL 6173772, at *5 ("each Objector shall either post a $21,519 bond or file a notice of dismissal of his or her appeal" despite claims of financial burden); *Senne*, 2023 WL 4238509, at *5 (imposing appeal bond of $24,000, including $10,000 in Rule 39 costs and $14,000 in costs to depose objectors, despite claims of financial burden); *Miletak*, 2012 WL 3686785, at *2 & n.4 (imposing $60,000 appeal bond, including $10,000 in FRAP 39 appellate costs, where objector claimed she could only afford to pay $500); *In re Apple Inc. Device Performance Litig.*, No. 18-md-2827, 2023 WL 3510393, at *4 (N.D. Cal. May 16, 2023) (imposing $8,500 appeal bond); *Keller v. NCAA*, No. 09-cv-1967, 2015 WL 6178829, at *3 (N.D. Cal. Oct. 21, 2015) (imposing $5,000 appeal bond despite claim of inability to pay that amount); *Fleury*, 2008 WL 4680033, at *10 (imposing $5,000 appeal bond); *Yingling v. eBay, Inc.*, No. 09-cv-1733, 2011 WL 2790181, at *2 (N.D. Cal. July 5, 2011) (imposing $5,000 appeal bond).

Courts in this District also routinely impose comparable appeal bonds even on *pro se* objectors who claim financial hardship and inability to pay. *See, e.g.*, *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Pracs. Litig.*, No. 09-md-2015, 2011 WL 3648508, at * (N.D. Cal. Aug. 18, 2011) (imposing $15,000 appeal bond even though *pro se* objector claimed she lived on "a fixed retirement income and possesses few assets"); *In re Blackhawk*, 2024 WL 4700634, at *2 (Breyer, J.) (imposing $15,000 appeal bond on *pro se* objectors because "courts have found $15,000 to be a reasonable amount for an appeal bond in cases like this one"); *Embry*, 2012 WL

2055030, at *2 (imposing appeal bond of $70,650 on *pro se* objector for "actual costs" of appeal); *see* Wallenstein Decl. Ex. 9, *Embry v. ACER Am. Corp.*, No. 09-cv-1808 (N.D. Cal. Mar. 23, 2012), Docket at ECF 231 (identifying *Embry* objector as "Pro Se"); *Schulken*, 2013 WL 1345716, at *6 (Koh, J.) (imposing $5,000 appeal bond on *pro se* objector for "costs associated with the briefs"); *see also, e.g.*, *Tennille v. W. Union Co.*, 774 F.3d 1249, 1257–58 (10th Cir. 2014) (setting appeal bond for "[e]ach objector" at $5,000 despite claims of inability to pay, where one objector was *pro se* and another was represented by counsel); Order, *Kessler v. Quaker Oats Co.*, No. 24-cv-526 (S.D.N.Y. Oct. 16, 2025) (Karas, J.), ECF 88 (imposing $5,000 appeal bond).

Because the recoverable FRAP 39 costs will be at least $16,738, and appeal bonds between $15,000 and $70,000 are routinely imposed and upheld—including on litigants who claim inability to pay—Plaintiffs request that the Court impose a bond of $16,738 as a condition of Mr. Byars's appeal. That amount is a reasonable estimate of the recoverable costs on appeal, is comparable to or less than the amount imposed in similar cases, and is warranted in this case to protect the class from the risk of nonpayment of lawfully recoverable costs after Mr. Byars loses his appeal.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Court should require Mr. Byars to post an appeal bond in the amount of $16,738 as a condition of pursuing his appeal.

Dated: October 1, 2026

Respectfully submitted,

BARTLIT BECK LLP

*/s/ Glen E. Summers*

Glen E. Summers (176402)
Karma M. Giulianelli (184175)
Lindley J. Brenza (*pro hac vice*)
Jonathan Jacob Marsh (*pro hac vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Marc A. Wallenstein (*pro hac vice*)
George A. Zelcs (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
Chad E. Bell (*pro hac vice*)
Pamela I. Yaacoub (*pro hac vice*)
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Carol L. O'Keefe (*pro hac vice*)
Michael E. Klenov (277028)
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Elizabeth M. Pipkin (243611)
Ann M. Ravel (62139)
McMANIS FAULKNER
50 West San Fernando Street, 10th Floor
San Jose, CA 95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

*Attorneys for Plaintiffs*
*Joseph Taylor, Mick Cleary, and*
*Jennifer Nelson*