**ChristopherAndrews**
**PO Box 223**
**Lakeland MI 48143-0223**
**Email: caaloa@gmail.com**
**C. 517-294-6401**

FILED
OCT 19 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE Taylor v Google LLC

Case No.: 5:20-CV-07956-VKD

**OBJECTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR AN APPEAL BOND**

Magistrate Judge: Virginia DeMarchi,
Date: November 10, 2026
Time: 10:00 am

# I. INTRODUCTION

Objector Christopher Andrews, an unnamed class member and objector, submits this Opposition to Plaintiffs' Motion for an Appeal Bond. Plaintiffs request that this Court impose an exorbitant, usurious bond under Federal Rule of Appellate Procedure 7 that is 3700% over the true costs. This demand is not an attempt to secure legitimate appellate costs; rather, it is an unlawful weapon designed to strip a class member of their constitutional right to appellate review. This objection and appeal are brought in good faith and are meritorious as have been shown before and repeated below.

Plaintiffs' underlying lawsuit suffers from a few fatal, structural defects and here is one paradox: by the explicit terms of the class definition, that everyone agreed to, before the claims process opened and months after claims were being filed and only after my objection appeared on the docket, class counsel surreptitiously disclosed the new revised class definition on June 12, 2026, Dkt 330. Out of 153 million members in the class, **not a single class member or named plaintiff has suffered any legal damages using the legally correct class definition, none.** Despite this total absence of injury, Class Counsel seeks a final approval that awards substantial attorneys' fees to themselves while providing the class with $135 million in damages they haven't incurred. Not one named plaintiff has Article III standing because they lack any proof of injury. Because Objector's impending appeal raises meritorious, non-frivolous challenges under binding Supreme Court and Ninth Circuit precedent, and because Plaintiffs' bond demand vastly exceeds what is legally permissible under Rule 7, this Court must deny Plaintiffs' motion.

In addition, numerous other reversible structural and merit, issues require reversal. Issues like the class was undercounted by 50 million plus members defrauding the class of approximately $67-$73 million, the objector was prohibited from speaking at the Final Approval Hearing violating his due process and constitutional rights, the claims administrator illegally lobbied objectors to drop their objections with or without Plaintiffs and defendant's knowledge among other things listed further below. Plaintiffs engaged in fraud by changing the class definition after the fact. The class definition left out few million class members who were excluded based on where they live. (The claims administrator included these class members in the four US terrotories in another class action I am a member in). Next, the named plaintiff's individual claims are invalid, they have suffered no concrete injury, they lack Article III standing so the entire 153 million member class action fails from the outset and the action should be dismissed for lack of subject-matter jurisdiction. The Fairness Hearing Transcript is 90% missing. Since the class definition describes a null set, the class fails Federal Rule of Civil Procedure 23 requirements like predominance and ascertainability and it obviously failes Rule 23(e). All the above are reversible errors. The structural issues alone will reverse this; merits do not even come into play.

## II. LEGAL STANDARD

Federal Rule of Appellate Procedure 7 provides that a district court may require an appellant to file a bond "to ensure the payment of costs on appeal." However, the Ninth Circuit has strictly limited what constitutes "costs" under Rule 7.

In *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), the Ninth Circuit held that the term "costs" under Rule 7 is restricted to taxable costs as defined by 28 U.S.C. § 1920 and FRAP 39 (e.g., copying costs, transcript preparation, and clerk fees). Absent an explicit fee-shifting statute, an appeal bond cannot include anticipated attorneys' fees or administrative expenses caused by settlement delays

Furthermore, the Ninth Circuit has explicitly ruled that imposing a massive appeal bond on an objector to protect against settlement delay or to penalize an appeal is an abuse of discretion. *See In re Magsafe Apple Power Adapter Litig., 577 F. App'x 781 (9th Cir. 2014).*

Appeals are a matter of right. In re American President Lines, Inc., 779 F.2d 714,718 (D.C. Cir. 1985) (citing Coppedge v. United States, 369 U.S. 438, 441-442 (1962)). "Courts accordingly must be wary of orders, even those well-meaning, that might impermissibly encumber that right." Id. (citing North Carolina v. Pearce, 395 U.S. 711,724 (1969) ("[a] court is without right to . . . put a price on an appeal. A party's exercise of a right of appeal must be free and unfettered" (internal quotation and citation omitted)). See Clark v. Universal Builders, Inc., 501 F.2d 324, 341 (7th Cir. 1974) ("any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated"). See also Azizian v. Federated Dep't Stores, Inc., 499 F.3d 950, 961 (9th Cir. 2007) ("[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." (quoting Adsani v. Miller, 139 F.3d 67, 79 (2d Cir. 1998), cert denied, 525 U.S. 875 (1998)).

The merits of an appeal are decided by the appellate court and cannot be short circuited by a district court that disapproves of the appeal. In re American Presidential Lines, 779 F.2d 714, 717 (D.C. Cir. 1985) Vaughn v. American Honda Motor Co., Inc., 507F.3d 295, 299 (5th Cir. 2007); Cooter & Gell, 496 U.S. 384, 407 (1990).1

Thus, a district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review." Robert F. Booth Trust v. Crowley, 687 F.3d 314, 318 (7th Cir. 2012). "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting Clark v. UniversalBuilders, Inc., 501 F.2d 324, 341 (7th Cir. 1974)). Azizian, 499 F.3d at 961;

As the Ninth Circuit explained, a district court does not get to prejudge the appeal and "deter" appeals it does not like through excessive appeal bonds. Azizian, 499 F.3d at 961; Vaughn, 507 F.3d at 299; Am. President Lines, 779 F.2d 714; but seeAdsani, 139 F.3d at 79. If a judge improperly chills appeals of its decisions, it could forever avoid review of its rulings. Cf. Robert F. Booth Trust v. Crowley, 687 F.3d 314, 318 (7th Cir. 2012) ("A district judge ought not try to insulate his decisions from appellate review....").

## III. ARGUMENT

### A. Plaintiffs' Demanded Bond Value Extinguishes Legitimate Costs and Acts as an Impermissible Penalty.

Plaintiffs' usurious bond demand completely ignores Ninth Circuit law. Traditional taxable costs on appeal under FRAP 39 rarely exceed $500 to $1,000. Plaintiffs' attempt to inflate the bond amount to include delay costs or Class Counsel's fees

directly violates *Azizian*. Because the underlying claims here do not involve a mandatory fee-shifting statute that categorizes appellate fees as costs against an objector, Plaintiffs' demand is structurally unauthorized.

As the Ninth Circuit noted in *In re Magsafe*, an astronomical bond cannot be weaponized to price an objector out of filing an appeal.

B. The Impending Appeal Is Highly Meritorious Due to a Fatal Lack of Article III Standing and Overbroad Class Certification.

An appeal bond is completely inappropriate where an appeal raises deeply serious, non-frivolous legal issues. Here, the legally valid underlying class definition establishes that not a single class member or named plaintiff has actual damages along with handful of other unaddressed issues that make it clear reversible error and abuse of discretion.

An appeal bond is entirely inappropriate where an appeal raises deeply serious, non-frivolous legal issues. Here, the underlying class definition is legally and factually deficient because it completely fails to restrict recovery to individuals who actually suffered a financial loss.

The approved settlement class definition stated on May 18, 2026 as follows:

*"You are a class member who is part of this Settlement if you are: (1) a natural person in the United States who (2) has used a mobile device running the Android operating system at any time from November 12, 2017 to the date this Settlement receives final approval..." See my objection Dkt 302 appearing on May 18, 2026 page 14 #7. (I cut and pasted the definition as well, so I did not mistype it or delete any words.)*

*The parties and court also agreed to the following as the class definition:*

Complaint (ECF 60, page 26, paragraph 84):All natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carrier.

Preliminary Approval Order (ECF 270, page 2:

All natural persons in the United States (excluding citizens of the State of California) who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carrier. Final Settlement Order (ECF 397, pages 12-13:All natural persons in the United States, who have used mobile devices running the Android operating system to access the internet through cellular data networks operated by mobile carriers from November 12, 2017 (a second time on page 16)

*Then on June 12, 2026 Dkt 302 the parties wrote:*

Angeion Declaration, ECF 330-2, page 4 states, "A true and correct copy of the Long Form Notice available on the case website is attached hereto as Exhibit C." This refers to ECF 330-5, page 2 of 10, which states:

Document 330-5 Page 2 of 10, which is the first page of the Long Form Notice, incorrectly instructs Class Members that they needed to have a cellular data plan opposite to the definition that has been as shown above. It states, "You are a class member who is part of this Settlement if you are: (1) a natural person in the United States who (2) has used a mobile device running the Android operating system **with a**

**cellular data plan**, (3) at any time from November 12, 2017 to the date this Settlement receives final approval, and (4) you are not a class member in Csupo v. Google LLC, Santa Clara County Superior Court, No. 19CV352557, which is a similar lawsuit..."

*The parties and court can't retroactively make changes to the class definition approximately three months after the claims period started! There was no court approval to make any changes to the deal and now the bad approval locks everyone into the old definition. This is misrepresentation, bad faith fraud, misconduct and probably criminal. Who does this?*

1. Absence of Financial Injury and Article III Standing: This definition contains a fatal structural defect: it does not require a class member to have paid for their data plan or to have incurred any financial cost due to the alleged background data transfers. 153 million class members included individuals—such as those on unlimited data plans, corporate accounts, or prepaid plans paid by third parties—suffered absolutely zero financial damages. Under the Supreme Court's mandate in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), and the Ninth Circuit's reinforced standard in [*Healy v. Milliman, Inc.*] (9th Cir. 2026), every single absent class member must independently possess concrete Article III standing to maintain a claim for monetary relief. A class certified to distribute funds to uninjured claimants who paid nothing cannot survive appellate scrutiny, like in this case.

At the start of the life cycle of a class action before a class is certified, the parties agreed that only named class members—but not unnamed class members—must demonstrate evidence of standing. To this end, the 9th Circuit has consistently held that

Article III's requirements are satisfied before a class is certified as long as at least one named plaintiff has standing. See In re Zappos.com, Inc., 888 F.3d 1020, 1028 n.11 (9th Cir. 2018); Melendres v. Arpaio, 784 F.3d 1254, 1262 (9th Cir. 2015). We have held that this is the case whether the class action seeks money damages or equitable relief. See Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993) (assessing whether at least one named plaintiff satisfies the standing requirements in a suit for injunctive relief); In re Zappos.com, 888 F.3d at 1028 n.11 (same for class action seeking damages) In this case no one, not even the named plaintiffs can claim damages or standing based on the agreed class definition until the parties illegally changed it on June 12, 2026 without notifying the entire 153 million member class which the Court also did not approve of legally. In TransUnion it states that "[e]very class member must have Article III standing in order to recover individual damages." Id. at 43

2. Structural Unfairness under FRCP 23(e): Because the class definition allows anyone who simply "used an Android phone" to file a claim regardless of injury, it dilutes the settlement fund for any potentially legitimate claimants. This overbreadth primarily serves to pad the claims count to justify Class Counsel's multi-million-dollar attorneys' fee request, a clear violation of the fairness principles established in [*Briseño v. Henderson*], 998 F.3d 1014 (9th Cir. 2021).

The class is owed approximately $67- $73 million in additional compensation (53 million additional class members multiplied by $1.39 equals $73 million using a corrected class definition. All this violates the objector's constitutional right to be heard and to not be defrauded in federal court.

It appears the defendant with the Plaintiff's assistance, intentionally undercounted the true class size to artificially lower a settlement amount and to hide the true number of Android users from competitors and ignored everything. Yet no one says a word at the Final approval Hearing nor does the Court address any of the due process, constitutional, defective class definition, illegal lobbying of objector to drop their objections, illegally changing the class definition etc. This is settlement fraud and fraud on the court and done so to reduce the payout by $67-$73 million and it carries severe legal, financial and criminal consequences for both the defendant, the lawyers on all sides, the defendant and any executives involved. This appears to be a massive financial scheme with the class action administrator, judge, defendant, plaintiffs, and administrator all turning a blind eye to all the major, material issues. In addition, if we go to trial and obtain a judgement similar to Csupo California case at $15 each, that is about $2.2 billion (153 million x $15.00 each), yet we get sold out for $135 million with the same evidence being able to be used in both cases.

In addition, this objector was prohibited from speaking and responding to the parties astounding testimony at the Final Approval Hearing where Plaintiffs acknowledged to the class that the size of the class was not approximately 100 million but rather 150 plus million like the objector stated in his objection. The transcript is missing 90% of what was said in the hearing; that alone requires a reversal. The Court was informed of all of this and did nothing! See Dkt. 396. Since I heard testimony that is not in the transcript, it should be transcribable, another deception by the participants. Another item in a long list of examples proving this is a crooked rigged game like at a carnival and another structural reversible error out of a few. The class is being defrauded, tricked, deceived,

and lied to. Where is the court? The court didn't even compare the amount settled for to the amount they could receive at trial, making the approval reversible under Rule 23, Criminal investigations should be launched. Here is what should happen to all the potentially guilty participants:

1. Immediate Legal Consequences

- Rejection or Revocation of the Settlement: Under Federal Rule of Civil Procedure 23 a judge must approve any class action settlement to ensure it is "fair, reasonable, and adequate." If the fraud is discovered before final approval, the judge will reject it. (Should have). If discovered *after* approval, the court can vacate the entire settlement due to fraud.
- Massive Sanctions and Fines: The court has the inherent power to punish the company. The judge can issue severe monetary sanctions, order the company to pay all of the plaintiffs' additional legal fees, and hold the company in contempt of court.
- Default Judgment: In extreme cases of bad-faith misconduct, a judge can strike the company's legal defenses entirely and enter a default judgment in favor of the plaintiffs, forcing the company to pay maximum damages without trial.

2. Criminal Liability

Intentional misrepresentation in court documents is not just a civil issue; it is a crime. The Department of Justice (DOJ) or state attorneys general can and should launch criminal conspiracy investigations investigating everyone involved leading to:

- Perjury: Executives or corporate officers who signed sworn affidavits or declarations verifying the false customer numbers can be charged with perjury.
- Wire and Mail Fraud: If the false numbers were transmitted electronically or via mail to plaintiffs, courts, or claims administrators, it constitutes federal wire or mail fraud.
- Obstruction of Justice: Intentionally misleading a court to alter the outcome of a legal proceeding is a felony. Based on what is taking place in this case, everyone is to be involved in fixing this outcome for an approval regardless of the United Nations number of red flag due process, constitutional violations and the participants ignoring and turning a blind eye to the issues.

3. Financial and Collateral Damage

- New, Much Higher Payouts: The company will not just be forced to pay the missing $67 million plus. The baseline for the *actual* settlement will skyrocket because the company has lost all bargaining leverage and credibility. Check.
- Punitive Damages: If the underlying case goes to trial because the settlement was voided, a jury is highly likely to award massive punitive damages to punish the company for its dishonesty.
- Shareholder Lawsuits: If the company is publicly traded, cheating the class out of $67 million (really up to $2.2 billion at trial even with a company the size of Google) and possibly committing fraud by lawyers standing by and allowing these action to go on, shows they are violating BAR rules. This may cause the stock to drop once exposed. Class members and shareholders should both sue

the lawyers, law firms, executives and board members for breaching their fiduciary duties based on who knew what when.

4. Professional Ruin for the Attorneys

If the company's outside defense counsel *knew* and defendant's inside counsel knew about the undercount and helped hide it, along with the plaintiffs, they face **disbarment**, severe personal sanctions, and potential criminal complicity charges. Lawyers have a strict ethical duty of candor to the tribunal. To establish a federal violation under the Racketeer Influenced and Corrupt Organizations (RICO) Act (18 U.S.C. §§ 1961–1968), prosecutors or civil plaintiffs must satisfy core statutory requirements and there appear to be matches here. The corporate veil protects no one in this case; it's so bad it really should be decertified.

The Parties and Court Intentionally Failed To Address the Structural Defects and the Reversible Errors That Are Not Harmless

Harmless errors are those that "do not affect the substantial rights of the parties." 28 U.S.C. § 2111; see also Fed. R. Civ. P. 61. An error affects a party's substantial rights when it is prejudicial, "which means that there must be a reasonable probability that the error affected the outcome of the [proceeding]." United States v. Marcus, 560 U.S. 258, 262 (2010). This objector was prohibited from speaking at the Final Approval Hearing by the court's deputy and court itself violating his due process rights, the administrator illegally and successfully lobbied objectors to drop objections, the missing 90% of the Final Approval Hearing that is missing claim that nothing else is transcribable is transcribed is a bald face lie because I have notes disproving that claim, the class

definition blocks damages from being awarded, class members lack standing as do the named plaintiffs, the class numbers were intentionally undercounted cheating the class out of $67-$73 million in damages, the lawyers and the court looked the other way and the court rubber stamped a clearly corrupt deal without addressing any of the numerous reversible issues at the Final Approval Hearing or in the Final Approval Order. The objector sees clear BAR violations here and more it's a crime scene.

Objector's impending appeal targets these exact constitutional and procedural and merit defects and issues above. Because the appeal relies on controlling Ninth Circuit law to challenge an indisputably overbroad class, structurally defective and fraudulent approval it is highly meritorious, and Plaintiffs' punitive bond motion must be denied

## IV. CONCLUSION

For the foregoing reasons, Objector respectfully requests that this Court **deny** Plaintiffs' Motion for an Appeal Bond that is approximately 1300% over the actual costs for the objector's appeal would be clearly illegal, retaliatory, abuse of discretion, violates 9th Circuit, Supreme Court rules and common sense and Plaintiffs know this. Alternatively, if this Court finds a bond is necessary, it must be strictly capped at a nominal amount of $300.00, which is the true actual taxable administrative costs at $.10 a page.

I, Christopher Andrews, do certify under penalty of perjury that all of the above is true to the best of my knowledge and belief.

Christopher Andrews
Pro Se, October 14, 2026,

## Certificate Of Service

I certify under penalty of perjury that on this day October 14, 2026 the objector mailed one copy of this document to the Clerk of the Court United States District Court for the Northern District of California 280 South 1st Street, Room 2112 San Jose, CA 95113 via USPS Priority Mail with a copy to Plaintiffs lawyers and to defendant's outside lawyers via first class mail.

Christopher Andrews, Pro se Objector PO Box 223 Lakeland, MI 48143-0223 Email: caaloa@gmail.com, C. 517.294.6401 Dated 10-14-26